Unum

Claim Folder Contents

Claimant Name: Kathy Williams
Claim Number: 14865967

This document is the property of Unum.
Unauthorized access is strictly prohibited.

PERSONAL & CONFIDENTIAL INFORMATION ENCLOSED

Print Date: 4/9/2019

Unum is a registered trademark and marketing brand of
Unum Group and its insuring subsidiaries.

--------------------------------------------------------------------------------

NaviLink Claim No.: 14865967          NaviLink Claim Status: Closed

SI Takeover Indicator: No

Claimant: Kathy  Williams

Claim Process Stage: Claim Closed

Tax ID: Redacted

Dependent:

Claim Security:

Date Received: 05/22/2018        Site: Chattanooga

Claim Owner: Maureen Turner

Base Policy Number:

Legacy Claim No.: 0105199632

Legacy Claim System: BAS      Claim Source: Fax

Policy No.: 382480        Policy System: Merlin

Association Policy Nos.:

Policyholder Name: BLUESCOPE STEEL NORTH AMERICA CORPORATION

Coverage Type: Life

Product: Life        Product Type: AD&D

Funding: Fully Insured

EE Form Date: 05/22/2018      ER Form Date:

AP Form Date:        Auth Form Date:

Auth Signed Date:        ER Verification Status:

Occ Type:        Occ Title:

Primary Dx Code: E928.9 UNSPECIFIED ACCIDENT

Secondary Dx Code:

RTW Date:        RTW Type: Not RTW        CPT Code:

Projected RTW Date:        Projected RTW Type:

Illness/Injury: Illness

Triage Result: Life      Claim Sync Status: Never to be Initiated

Assignment Result: Group Life Benefits      Plan Sync Status:

--------------------------------------------------------------------------------
Claim Folder Information

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000002

--------------------------------------------------------------------------------
**Multiple Claims: No      Integrated Coverages: No**

**Claim Folder Notes: Litigation pending as of 4/8/19. Please do not perform any activity without out contacting Michael Parker in the PTL legal dept.**
**\*\*\*no benefits payable (intoxication) ---- ATTN CCC: claim referred to appeals 10/01 re: attny's request for an appeal extension, awaiting response**
**$360k SP AD&D only**

UA-CL-AD&D-000003

```
                        Claim Profile - Claimant
--------------------------------------------------------------------------
------------------------- Claimant Name -------------------------

Prefix: Ms.

First: Kathy       Middle:       Last: Williams

Suffix:

------------------------- Claimant Information -------------------------

Birth Date: [Redacted]   Marital Status:      Gender: Female

Health Insurance Provider:

Tax ID Type: US-SSN     Tax ID [Redacted]

Language Preference:

------------------------- Dependent Name -------------------------

First:         Middle:       Last:

Suffix:

------------------------- Dependent Information -------------------------

Relationship:

Tax ID Type:       Tax ID:

Birth Date:       Gender:

-------------------- Claimant Contact Information --------------------

                -------------------- Permanent --------------------
Address 1: 18216 E 51st St CT S
Address 2:
City: INDEPENDENCE
State/Prov: Missouri    Postal Code: 64055
Country: United States

Phone Type:         International:       Number:

Fax Type:           International:       Number:

Email Type:         Address:

------------------------- Consumer Preferences -------------------------

Text Preferences: Preferences Not Set
Phone Number:
```

Claim Profile - Eligibility
--------------------------------------------------------------------------------
Policy No.: 382480

Policy Name: BLUESCOPE STEEL NORTH AMERICA CORPORATION

Division: 0117

Group Rate ID (RBCN):        Individual Agreement ID:

Billing Control No. (BCN):

Class/PEG:        Choice:

Contract Type: CXC

Pay Group:        Report Group:        Report Location:

Last Day Worked: 04/27/2018        Disability Date:

As Of Date: 04/27/2018

Hire Date:        Work Status(ER Form):

Hours Worked(ER Form):

Insured Effective Date:        Insured Termination Date:

Insured Reinstatement Date:

Benefit Begin Date:        Future Date Indicator: No

Certified Thru Date:

Earnings/Salary: 1.00        Earnings Mode: Monthly

Auto Complete Responses:

Tax Withholding:        Benefit Amount:

Residence State at Time of Loss: Missouri

EE Contribution %:        Pre/Post Tax:

MVA: No        Work Related: No        Third Party:

Expected Delivery Date:        Actual Delivery Date:

Delivery Type:

1st Treatment Date:

Surgery Date:        Surgery Type:

1st Hospital Date:

1st Hospital End Date:

Youngest Dependent Birth Date:

Prior Coverage:        Prior Carrier:

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000005

Sales Office: Kansas City

LTD Coverage:

Life Coverage:

Spouse Disability:

Created By: Hansom, Ryan

Created Date: 05/22/2018       Create Site: Portland

```
                        Claim Profile - Plan Info
--------------------------------------------------------------------------------
Policy No.: 382480

Policy Name: BLUESCOPE STEEL NORTH AMERICA CORPORATION

Policy Eff Date:           Policy Term Date:

Situs: Missouri

Product: Life

Product Type: AD&D

Contract Series: CXC

Funding: Fully Insured

Product Desc:
                        Applicable Provisions
--------------------------------------------------------------------------------
```

UA-CL-AD&D-000007

```
                    Claim Profile - Common Coverages
--------------------------------------------------------------------------------

Legacy Claim Number:        Claim Owner:
Product:     Product Type:  System:
```

UA-CL-AD&D-000008

--------------------------------------------------------------------------------

**Primary Dx Desc:** UNSPECIFIED ACCIDENT

**Current Age:** 61   **Gender:** Female   **Height:**   **Weight:**

**Occ Title:**

**Occ Type:**   **Last Day Worked:** 04/27/2018

**Disability Date:**

**Expected Delivery Date:**   **Actual Delivery Date:**

**Surgery Date:**

**Definition of Disability:**

**Benefit %:**

**Proof of Loss:**

**CID Date:**   **Benefit Amount:**   **ERISA Indicator:**

**Max Date:**   **Reservation of Rights:**

--------------------------------------------------------------------------------
**Claim Overview:**
--------------------------------------------------------------------------------

**Created By:** Staples, Kristi   **Created Date:** 05/29/2018
**Create Site:** Portland

**Updated By:** Staples, Kristi   **Updated Date:** 07/24/2018
**Update Site:** Portland

UA-CL-AD&D-000009

Action Plan - Key Actions & Rationale
--------------------------------------------------------------------------------

File Direction:

Claim Management Direction: 07/24/18
Per ME/tox, EEs BAC at time of fall was 0.337%- therefore alcohol exclusion applies
and no benefits payable.
kls

Rationale:
Dep SP - AD&D only. DOD 04/27/18. Contrib covg. Premiums current thru DOD per ERS
and EE was actively at work at the time of deps death.

01/01/10 enrollment confirms EE enrolled timely per standard guidelines - no addtl
enrollment needed. 01/01/15 enrollment confirms EE elected to increase AD&D covg to
$600k- no EOI req'd. Increase acceptable. Covg has been in effect for 2+ years, no
TD review needed.

Coding EDOC as merlin div eff date (04/01/17)

Obit indicates EE died due to injuries sustained from a fall. Need me/tox.
kls

_____

_

ET Regs: n/a
Pertinent SH notes: passive ; enrollment only as far back as 01/01/10 ; fax letters
to Amy ; TLS ; dep life added 01/01/09
Link: none
Claim Rec'd Date: 05/22/18
Comp Info Date:  07/16- me/tox rec'd

_____

_

PED: 01/0/99
DOH: 08/01/89
EDOC: 01/01/10 per SH

DOB: EE       Redacted
LDW: n/a
DOD: 04/27/18
Group: Group 1
Premiums PTD: 05/11/18
    **AD&D paid thru DOD?

CDC Rec'd: 05/22/18
ICD: E928.9****

Div / Peg: 117 / 02
Situs: MO
    **WA state small face life policy apply?

Earnings Definition: n/a
Salary Calculation: n/a
EE Benefit Calculation:
Life: 1x earnings basic
AD&D: $25k units --- $600k
Dep Benefit Calculation:
Life: none
AD&D: $600,000 x 60% = $360,000
Age reduction: none

_____

_Claimant Name: Kathy  Williams    Claim #:  14865967_

UA-CL-AD&D-000010

--

Beneficiary: Gary Williams, husband 100%
    MA ICPIP/TX CSLN:  n/a
    Absolute Assignment: none
    FHA:  none
State Interest:  MO
RAA OR Check: RAA >$10k

Ack Letter Sent: 05/30/18
Initial TPC: 05/30/18
Life Planning Sent: 05/30/18


--------------------------------------------------------------------------------

Created By: Staples, Kristi    Created Date: 05/29/2018
Create Site: Portland

Updated By: Staples, Kristi    Updated Date: 07/24/2018
Update Site: Portland

UA-CL-AD&D-000011

```
                    Action Plan - Financial & Offsets
---------------------------------------------------------------------------------

SSDI Indicator:

SSDI Status:

SSDI Assist Type:

SSDI Reason:

SS File Status:

BPO Status:

SSA Auth Status:

SSDI Notes:

Elig Dependents:        Youngest Dep. Current Age: N/A

Spouse DOB:      Spouse Working:


Type:                    Notes:
---------------------------------------------------------------------------------

Created By: Staples, Kristi    Created Date: 05/29/2018
Create Site: Portland

Updated By: Staples, Kristi    Updated Date: 07/24/2018
Update Site: Portland
```

UA-CL-AD&D-000012

```
                         Action Plan - Pre-ex COC
-------------------------------------------------------------------------------

Pre-Ex Invest. Req'd:

Pre-Ex Start Date:          Pre-Ex End Date:

Analysis:

-------------------------------------------------------------------------------

Created By: Staples, Kristi    Created Date: 05/29/2018
Create Site: Portland

Updated By: Staples, Kristi    Updated Date: 07/24/2018
Update Site: Portland
```

UA-CL-AD&D-000013

Action Plan - Actions
--------------------------------------------------------------------------------

---------- Key Activities ----------

  Created Date: 07/17/2018
  Activity Type: Clinical Resource
  Activity Name: Clinical Review
  Activity Subject: AD&D - Fall/Intoxication
  Completed Date: 07/20/2018
  CCS Comments:
  ------------------------------------------------------------------
  Created Date: 10/01/2018
  Activity Type: Appeal
  Activity Name: Appeal Referral
  Activity Subject: Extension request
  Completed Date: 10/02/2018
  CCS Comments:
  ------------------------------------------------------------------
  Created Date: 10/01/2018
  Activity Type: Appeal
  Activity Name: Review - Appeals Staff Use Only
  Activity Subject: New Appeal 9/28/18
  Completed Date: 10/03/2018
  CCS Comments:
  ------------------------------------------------------------------
  Created Date: 11/02/2018
  Activity Type: Appeal
  Activity Name: Review - Appeals Staff Use Only
  Activity Subject: New Appeal 11/1/18
  Completed Date: 01/30/2019
  CCS Comments:
  ------------------------------------------------------------------
  Created Date: 11/02/2018
  Activity Type: Appeal
  Activity Name: Extension
  Activity Subject: Appeal Ext- atty requests
  Completed Date: 12/04/2018
  CCS Comments:
  ------------------------------------------------------------------
  Created Date: 12/14/2018
  Activity Type: Appeal
  Activity Name: Extension
  Activity Subject: Appeal Ext to atty
  Completed Date: 01/16/2019
  CCS Comments:

---------- Additional Documentation ----------
  Action:
  Created Date:
  User Name:
  Comments:


  --------------------------------------------------------------------------

Created By: Staples, Kristi    Created Date: 05/29/2018
Create Site: Portland

Updated By: Staples, Kristi    Updated Date: 07/24/2018
Update Site: Portland

UA-CL-AD&D-000014

```
                            Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018052212070057290E

Entry Date: 05/22/2018 12:07:05

Received Date: 05/22/2018

Date Added to Claim: 05/22/2018

Primary Doc Type: Claim Form

Secondary Doc Type: New Claim

Medical Provider:

Document Notes: ERS, CDC, enrollment

Work Notes:
```

UA-CL-AD&D-000015



**BLUESCOPE BUILDINGS**

BlueScope Buildings North America
BlueScope Steel North America Corporation
6510 Brentwood Street
Kansas City, MO 64120
PO Box 419917
Kansas City, MO 64141-6917
Telephone 816 968 3700
Facsimile 816 968 3785
www.bluescopesteel.com

**To:** Unum　　　　　**From:** BlueScope – HR

**Date:** May 22, 2018

**# of pages (including this one):** 9

**A Hard Copy Will Not Follow by Mail.**

The information contained in this facsimile message contains **CONFIDENTIAL INFORMATION**, which may also be **LEGALLY PRIVILEGED**. It is intended only for the personal use of the individual or entity to whom it is addressed above. If the recipient of this transmittal is not the intended recipient, or an employee or agent res**INFORMATION**, which may also be **LEGALLY PRIVILEGED**. It is intended only deliver it to the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service.

**IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL ME AS SOON AS POSSIBLE.**

*Claimant Name: Kathy Williams　　　Claim #: 14865967*

UA-CL-AD&D-000016



**GROUP LIFE AND/OR ACCIDENTAL DEATH CLAIM FORM**
The Benefits Center
P.O. Box 100158, Columbia, SC 29202-3158
Toll-free: 1-800-445-0402   Fax: 1-800-447-2498
Call toll-free Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time).

## EMPLOYER STATEMENT - To be completed by the Employer (PLEASE PRINT)

### A. Information About the Type of Claim – Please check all that apply and provide the policy and division numbers.

| Type of Coverage Being Claimed | Type of Claim Submitted | Policy Number | Division Number |
|---|---|---|---|
| ☐ Life Insurance | ☐ Employee Death<br>☐ Dependent Death | 00380480 | |
| ☑ Accidental Death & Dismemberment | ☐ Employee Death<br>☑ Dependent Death | | |

Is this claim also being submitted for Accidental Death & Dismemberment?   ☐ Yes   ☐ No

### B. Information About the Employer

Employer Name

| B | l | u | e | S | c | o | p | e | | B | U | i | l | d | i | n | g | s | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Employer Street Address

| 1 | 5 | 4 | 0 | | G | e | n | e | s | s | e | e | | S | t | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

City     State   Zip

| K | a | n | s | a | s | | C | i | t | y | | | | | | | | M | O | | 6 | 4 | 1 | 0 | 2 | - |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Subsidiary/Affiliate/Branch Name     Subsidiary Effective Date (mm/dd/yy)

### C. Information About the Employee – The term "employee" refers to employees, members and/or retirees.

Employee Name (Last Name, Suffix, First Name, MI)

| W | i | l | l | i | a | m | s | | G | a | r | y | | L | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Gender   ☑ Male   ☐ Female

Employee Street Address

| 1 | 8 | 2 | 1 | 6 | | E | | 5 | 1 | s | t | | S | t | r | e | e | t | | C | t | | S | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

City     State   Zip

| I | n | d | e | p | e | n | d | e | n | c | e | | | | | | | | M | O | | 6 | 4 | 0 | 5 | 5 | - |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Date of Birth (mm/dd/yy)     Social Security Number    **Redacted**    Original Date of Hire (mm/dd/yy)    Date of Death (mm/dd/yy)

Original Date of Hire: | 0 | 8 | 0 | 1 | 8 | 9 |

Home Telephone Number

| 8 | 1 | 6 | 3 | 5 | 0 | 8 | 3 | 1 | 7 |
|---|---|---|---|---|---|---|---|---|---|

Cellular Telephone Number

| 8 | 1 | 6 | 4 | 5 | 6 | 1 | 2 | 4 | 7 |
|---|---|---|---|---|---|---|---|---|---|

Date Employee Entered Eligible Class (mm/dd/yy):     Termination & Rehire Dates (mm/dd/yy):<br>Termination:    Rehire:     Acquisition Date (mm/dd/yy):

If this employee is or has been known by another name(s) (such as a nickname, maiden name, etc.), please provide the name(s):

Employment Status: ☑ Full-time   ☐ Part-time   ☐ Retired   ☐ Exempt<br>☐ Bargaining   ☐ Non-Bargaining   ☐ Union   ☐ Non-Union   ☐ Non-Exempt     Hours Worked Per Week: If eligibility is not based on hours worked, please describe:

Salary/Rate of Pay: ☐ Hourly ☑ Salary ☐ Commission ☐ Non-Commission    Job Title/Class:<br>Amount $     ☐ Weekly ☐ Bi-Weekly ☐ Semi-monthly

Please provide the following salary verification/documentation. This information is necessary to accurately determine the amount of the life insurance benefit

| If the definition of annual earnings is: | Then provide, as stated in your policy: |
|---|---|
| W-2 | A copy of the prior year W-2 and the last payroll statement for the same year |
| Salary with commissions and/or bonus | • Payroll records<br>• Documentation of commissions and/or bonuses |

Last Date Physically at Work (mm/dd/yy):     Reason for Stopping Work:

Is the employee receiving any company sponsored retirement benefits?   ☐ Yes   ☑ No   If yes, when did the employee retire (mm/dd/yy)?

If yes, please describe the retirement benefits:

CL-1091 (07/14)     4

---

**Claimant Name: Kathy Williams     Claim #: 14865967**

UA-CL-AD&D-000017

 **unum**

**GROUP LIFE AND/OR ACCIDENTAL DEATH CLAIM FORM**
The Benefits Center
P.O. Box 100158, Columbia, SC 29202-3158
Toll-free: 1-800-445-0402   Fax: 1-800-447-2498
Call toll-free Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time).

## EMPLOYER STATEMENT (Continued)

Employee Name (Last Name, Suffix, First Name, MI)       Date of Birth (mm/dd/yy)

| W | i | l | l | i | a | m | s | | G | a | r | y | | L | | | | | | **Redacted** |

| Amount of Insurance | Basic | Effective Date of Coverage (mm/dd/yy) | Supplemental | Effective Date of Coverage (mm/dd/yy) |
|---|---|---|---|---|
| Life Insurance | $ | | $ | |
| Accidental Death and Dismemberment | $ | | $ | |

| Changes to the Amount of Insurance | Amount of last change | | Date of last change (mm/dd/yy) |
|---|---|---|---|
| Basic Life | $ | ☐ Increase ☐ Decrease | |
| Supplemental Life | $ | ☐ Increase ☐ Decrease | |
| Basic Accidental Death and Dismemberment | $ | ☐ Increase ☐ Decrease | |
| Supplemental Accidental Death and Dismemberment | $ | ☐ Increase ☐ Decrease | |

| Date the premium payment was paid through for this employee (mm/dd/yy): | Was the employee terminated? ☐ Yes ☑ No |
|---|---|
| currently paid through 5/11/18 | If yes, termination date (mm/dd/yy): |

The Accidental Death and Dismemberment policy may provide an education benefit. Does the deceased have any unmarried dependent children currently at the 12th grade level or who are enrolled in an institution of higher learning beyond the 12th grade? ☐ Yes ☐ No   If yes, please provide the following information for each child:

Name: _____ Age: _____

Name: _____ Age: _____

Name: _____ Age: _____

## D. Information About the Dependent – Please complete this section if the claim is for the death of the employee's dependent.

Dependent Name (Last Name, Suffix, First Name, MI)

| W | i | l | l | i | a | m | s | | K | a | t | h | y | | | | | | |

| Relationship to Employee | | Dependent Date of Birth (mm/dd/yy) | Dependent Date of Death (mm/dd/yy) |
|---|---|---|---|
| ☑ Spouse ☐ Civil Union Partner ☐ Domestic Partner ☐ Child | | **Redacted** | 0 4 2 7 1 8 |

| Dependent Social Security Number | Dependent Gender | Dependent Effective Date of Coverage (mm/dd/yy) |
|---|---|---|
| **Redacted** | ☐ Male ☑ Female | 0 1 0 1 1 0 |

| Amount of Insurance | Basic | Effective Date of Coverage (mm/dd/yy) | Supplemental | Effective Date of Coverage (mm/dd/yy) |
|---|---|---|---|---|
| Life Insurance | $ | | $ | |
| Accidental Death and Dismemberment | $ | | $ 600000 | 1/1/10 |

| Changes to the Amount of Dependent Insurance | Amount of last change | | Date of last change (mm/dd/yy) |
|---|---|---|---|
| Basic Life | $ | ☐ Increase ☐ Decrease | |
| Supplemental Life | $ | ☐ Increase ☐ Decrease | |
| Basic Accidental Death and Dismemberment | $ | ☐ Increase ☐ Decrease | |
| Supplemental Accidental Death and Dismemberment | $ 75000 | ☑ Increase ☐ Decrease | 1/1/15 |

| Date the premium was paid through for this dependent (mm/dd/yy): | Was the employee in active employment at the time of the dependent's death? ☑ Yes ☐ No |
|---|---|
| paid through 5/11/18 | |

CL-1091 (07/14)      5

---

**Claimant Name: Kathy Williams     Claim #: 14865967**

UA-CL-AD&D-000018



**GROUP LIFE AND/OR ACCIDENTAL DEATH CLAIM FORM**
The Benefits Center
P.O. Box 100158, Columbia, SC 29202-3158
Toll-free: 1-800-445-0402   Fax: 1-800-447-2498
Call toll-free Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time).

| EMPLOYER STATEMENT (Continued) | |
|---|---|

Employee Name (Last Name, Suffix, First Name, MI)                                         Date of Birth (mm/dd/yy)

| W | i | l | l | i | a | m | s | | G | a | r | y | | L | | | | | | | | | | **Redacted** |

E. **Information About the Employee's Beneficiary(ies)** – If the claim is for the death of the employee, please complete this section. If there are more than three, please provide the following information for each additional beneficiary on a separate sheet of paper and include it with this form. The first beneficiary listed will receive the Life Planning Resources, if the services are provided by this policy.

| Name, Address & Telephone Number | | Relationship | Social Security Number | Date of Birth | Percentage |
|---|---|---|---|---|---|
| Name | | | | | |
| Street | | | | | |
| City, State, Zip | Telephone # | | | | |
| Name | | | | | |
| Street | | | | | |
| City, State, Zip | Telephone # | | | | |
| Name | | | | | |
| Street | | | | | |
| City, State, Zip | Telephone # | | | | |
| | | | | | Total Must Equal 100% |

A copy of the most recent beneficiary designation form is enclosed.   ☐ Yes   ☐ No   If no, please explain:

F. **Information About Minor Beneficiary** – If any of the above beneficiaries are minor children, please complete this section. If there is more than one, please provide the following information for each additional minor beneficiary on a separate sheet of paper and include it with this form.

Name of Minor Child (Last Name, Suffix, First Name, MI)

Adult Representative of Minor Child (Last Name, Suffix, First Name, MI)

Mailing Address of Adult Representative:

| City: | State: | Zip: | Telephone Number of Adult Representative: |
|---|---|---|---|

G. **Information About Payment** – Advise the beneficiary that if the claim is approved the benefit will be paid by check if it is less than $10,000. The benefit will be paid through a Unum Retained Asset Account if it is $10,000 or more and the group policy calls for this method of payment. If the group policy does not call for this method of payment, the benefit will be paid by check. The beneficiary may request the benefit be paid by check regardless of the amount of the benefit by contacting The Benefits Center at the telephone number listed on this form. More information about the Unum Retained Asset Account can be found in section H.

CL-1091 (07/14)                                                    6

UA-CL-AD&D-000019



**GROUP LIFE AND/OR ACCIDENTAL DEATH CLAIM FORM**
The Benefits Center
P.O. Box 100158, Columbia, SC 29202-3158
Toll-free: 1-800-445-0402  Fax: 1-800-447-2498
Call toll-free Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time).

**EMPLOYER STATEMENT (Continued)**

| Employee Name (Last Name, Suffix, First Name, MI) | Date of Birth (mm/dd/yy) |
|---|---|
| W i l l i a m s   G a r y   L | Redacted |

**H.  Information About Unum Retained Asset Accounts** – By placing the funds in a Unum Retained Asset Account the beneficiary will have the time needed to decide how to best manage the insurance proceeds so as not to put his/her investment decisions at risk.  Here's how it works:

- When the claim is approved, a personalized book of bank drafts and an opening account statement will be mailed to the beneficiary.
- He/She will have unlimited access to the balance in the account.
- The entire account balance can be accessed by the use of one draft.
- Drafts can be written for a minimum of $250 up to the full account balance at any time.  There is no limit on the number of withdrawals that can be made from the account.
- No charges will be made to the Unum Retained Asset Account for writing drafts or ordering a new supply of drafts.
- The following charges will be made to the Unum Retained Asset Account for any request for:
    - A copy of a draft or statement ($5);
    - A stop payment of a draft ($15);
    - A draft returned as unpaid, requests for additional statements, and requests for additional copies of IRS Form 1099-INT ($10); and
    - Draft book rush orders ($25).
- A quarterly statement is provided, detailing the account balance, interest rate, accrued interest and account transactions for the statement period.
- Funds in the Unum Retained Asset Account are fully guaranteed by Unum Group.  The funds are not protected by the FDIC, but are protected by state Guaranty Associations.  To learn more about the protections provided by these associations, the beneficiary may contact the National Organization of Life and Health Insurance Guaranty Associations at nolhga.com or 703-481-5206.
- The beneficiary may leave the money in the Unum Retained Asset Account for as long as he/she wishes.  If there is no account activity or any contact with the beneficiary for two years, we will attempt to contact him/her.  If we are unable to contact the beneficiary, we could be required to surrender the account balance to the state of his/her last known residence.

Unum will retain the funds and invest them in its general account for as long as they remain in the Unum Retained Asset Account. Unum guarantees the account balance and will pay a competitive interest rate regardless of the investment performance of Unum's general account.  Unum may derive income from the total gains received on the investment of the balance of the funds in the retained asset account.

The interest rate is determined by monitoring rates of interest offered on similar types of accounts (i.e. checking, savings and money market accounts).  Any changes to the interest rate will be disclosed via a quarterly account statement.

The interest earned on the Unum Retained Asset Account may be taxable.  The beneficiary should consult a tax advisor, an investment advisor, or another financial advisor with any questions.  For further information, the beneficiary should contact his/her state insurance department.

**FRAUD NOTICE:** Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties. This includes Employer portions of the claim form.

**I. Information About and Signature of Benefit Administrator (Please Print)**

The above statements are true and complete to the best of my knowledge and belief.

| Name of Person Completing Form | | |
|---|---|---|
| Molly Cisco | | |

| Title of Person Completing Form | Telephone Number | Fax Number |
|---|---|---|
| Human Resources Manager | 816-968-3713 | (816) 627-8982 |

| Signature | Date Signed |
|---|---|
| X  Molly Cisco | 5/22/18 |

CL-1091 (07/14)                    7

Claimant Name:  Kathy  Williams     Claim #:  14865967

LOCAL REGISTRAR
JACKSON COUNTY HEALTH DEPT
313 S LIBERTY ST
INDEPENDENCE MO 64050



MISSOURI DEPARTMENT OF HEALTH
AND SENIOR SERVICES
FEE RECEIPT
DEATH CERTIFICATION

REGISTRANT(S):

FLORAL HILLS FUNERAL HOME
7000 BLUE RIDGE BLVD.
KANSAS CITY MO  64133

KATHY RAE WILLIAMS
D9999-999999
1 COPY

### YOUR RECENT REQUEST HAS BEEN ACTED UPON AS INDICATED BELOW:

MO 580-0698 (2-12)

| DATE RECEIVED | TOTAL AMOUNT | AMOUNT THIS REQUEST | PROCESSING FEE REQUIRED | REFUND |
|---|---|---|---|---|
| 05/08/2018 | 10.00 | 13.00 | 0.00 | 0.00 |

**UNAPPLIED REMITTANCES ONLY VALID FOR ONE YEAR AFTER RECEIPT.** When you inquire about your request, please return this receipt. If a refund is indicated, it will be mailed within 30 to 60 days.

---

## MISSOURI

### CERTIFICATION OF DEATH

DATE FILED: MAY 8, 2018          STATE FILE NUMBER:  124-18-014772

DECEDENT NAME: KATHY RAE WILLIAMS                    SEX: FEMALE

DATE OF DEATH: APRIL 27, 2018          COUNTY OF DEATH: JACKSON

DATE OF BIRTH: **Redacted**          MARITAL STATUS: MARRIED          EVER IN ARMED FORCES: NO

SOCIAL SECURITY NUMBER: **Redacted**          RESIDENCE ADDRESS: 18216 E 51ST ST CT S INDEPENDENCE,MISSOURI

SURVIVING SPOUSE:
(IF WIFE, MAIDEN NAME):  GARY L WILLIAMS
FUNERAL HOME: FLORAL HILLS FUNERAL HOME
UNDERLYING CAUSE (ICD CODE):          MANNER: ACCIDENT
INTRACRANIAL HEMORRHAGE

ISSUED ON BEHALF OF MO DEPT HEALTH & SENIOR SERVICES:JACKSON

THIS IS A TRUE CERTIFICATION OF NAME AND DEATH FACTS AS RECORDED BY THE BUREAU OF VITAL RECORDS, JEFFERSON CITY, MISSOURI.

DATE ISSUED:   MAY 8, 2018

*Craig B Ward*
Craig B. Ward
State Registrar of Vital Statistics

THE REPRODUCTION OF THIS DOCUMENT IS PROHIBITED BY LAW.
ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATION.

---

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000021

BlueScope Steel North America
1540 Genessee Street
Kansas City, MO 64102



**BLUESCOPE STEEL**

### Your Election Confirmation

This statement confirms the benefits you have
selected. They will be effective as of the date
displayed in the Effective Date column below.
Please review your selections carefully and
compare your deductions to the paycheck after
these elections are in effect.

Gary L. Williams
16216 E 51st Street Ct. S.
Independence, MO 64055

If you need to make any changes during the
enrollment window, log onto the web site at
https://portal.adp.com.
For additional information or assistance, please
contact your local Human Resources Department.

Print Date: 05/21/2018

Pay Frequency: Bi-Weekly

Date of Birth: Redacted

Confirmation Number:

Event Date: 01/01/2011

Event Description: Annual Enrollment

You have elected the benefit plan options listed below. If there are elections listed below that are pending
Evidence of Insurability, complete the Evidence of Insurability Form, which may be downloaded from the
benefits website, and follow the instructions on how to submit the form for review. To locate and print this form,
click on the Benefits Enrollment tab and then click on the My Documents link.

### Benefit Elections

| Benefit | Plan Election | Coverage | Effective Date | Price Per Pay Period | Employer Contribution |
|---|---|---|---|---|---|
| Medical | Anthem HRA Non Tobacco | Employee + Spouse/DP Gary L Williams Kathy Williams | 01/01/2010 | $121.25 | $266.34 |
| Dental | MetLife Dental | Employee + Spouse/DP Gary L Williams Kathy Williams | 01/01/2010 | $10.31 | $24.07 |
| Vision | Waive | | 01/01/2011 | $0.00 | $0.00 |
| Basic Life | Basic Life 1 X Salary | | 01/01/2010 | $0.00 | $9.50 |
| Basic AD&D | Basic AD&D 1 X Salary | | 01/01/2010 | $0.00 | $0.68 |
| Voluntary Life | Voluntary Life 2X Salary | Non Tobacco User | 01/01/2010 | $33.11* | |
| Spouse Life | $50,000.00 | | 01/01/2010 | $9.69* | |
| Voluntary Dependent Life | Waive | | 01/01/2011 | $0.00* | $0.00 |
| Voluntary AD&D | $525,000.00 | Family | 01/01/2010 | $4.12* | |
| Voluntary LTD | LTD | | 01/01/2010 | $7.71* | $7.71 |
| Vacation Buy | Waive | | 01/01/2011 | $0.00 | $0.00 |
| Wellness | No Credit | | 01/01/2011 | $0.00 | $0.00 |
| Health Care FSA | Waive | | 01/01/2011 | $0.00 | |
| Dependent Care FSA | Waive | | 01/01/2011 | $0.00 | |
| HSA | Waive | | 01/01/2011 | $0.00 | |
| | | | Total Before Tax Cost: | $131.56 | |
| | | | Total After Tax Cost: | $54.63 | |
| | | | Total Cost: | $186.19 | |
| | | | Total Employer Contribution: | | $308.30 |

* Options denoted by an asterisk (*) indicate that the cost of your benefits will be taken as a post-tax deduction
(i.e., deducted from your paycheck after taxes are withheld).

Page 1 of 2

**Claimant Name: Kathy Williams      Claim #: 14865967**

UA-CL-AD&D-000022

BlueScope Steel North America
1540 Genessee Street
Kansas City, MO 64102



**BLUESCOPE STEEL**

### Your Election Confirmation

This statement confirms the benefits you have selected. They will be effective as of the date displayed in the Effective Date column below. Please review your selections carefully and compare your deductions to the paycheck after these elections are in effect.

Gary L. Williams
18218 E 51st Street Ct. S.
Independence, MO 64055

If you need to make any changes during the enrollment window, log onto the web site at https://portal.adp.com.
For additional information or assistance, please contact your local Human Resources Department.

**Print Date:** 05/21/2018

**Pay Frequency:** Bi-Weekly

**Date of Birth:** [Redacted]

**Confirmation Number:**

**Event Date:** 01/01/2015

**Event Description:** Annual Enrollment

You have elected the benefit plan options listed below. If there are elections listed below that are pending Evidence of Insurability, complete the Evidence of Insurability Form, which may be downloaded from the benefits website, and follow the instructions on how to submit the form for review. To locate and print this form, click on the Benefits Enrollment tab and then click on the My Documents link.

### Benefit Elections

| Benefit | Plan Election | Coverage | Effective Date | Price Per Pay Period | Employer Contribution |
|---|---|---|---|---|---|
| Medical | Anthem HSA Plus | Employee + Spouse/DP Gary L. Williams Kathy Williams | 01/01/2015 | $76.02 | $344.23 |
| Dental | MetLife Dental | Employee + Spouse/DP Gary L Williams Kathy Williams | 01/01/2012 | $10.64 | $24.83 |
| Vision | Waive | | 01/01/2011 | $0.00 | $0.00 |
| Basic Life | Basic Life 1 X Salary | | 09/02/2014 | $0.00 | $7.17 |
| Basic AD&D | Basic AD&D 1 X Salary | | 09/02/2014 | $0.00 | $0.77 |
| Voluntary Life | Waive | | 01/01/2015 | $0.00* | $0.00 |
| Spouse Life | Waive | | 01/01/2015 | $0.00* | $0.00 |
| Voluntary Dependent Life | Waive | | 01/01/2011 | $0.00* | $0.00 |
| Voluntary AD&D | $600,000.00 | Family | 01/01/2015 | $4.71* | |
| Voluntary LTD | LTD | | 09/02/2014 | $8.73* | $8.73 |
| Vacation Buy | Waive | | 01/01/2011 | $0.00 | $0.00 |
| Health Care FSA | Waive | | 01/01/2015 | $0.00 | |
| Dependent Care FSA | Waive | | 01/01/2015 | $0.00 | |
| HSA | $6,750.00 | | 01/01/2015 | $259.62 | |

|  |  |
|---|---|
| **Total Before Tax Cost:** | **$346.28** |
| **Total After Tax Cost:** | **$13.44** |
| **Total Cost:** | **$359.72** |
| **Total Employer Contribution:** | $385.73 |

* Options denoted by an asterisk (*) indicate that the cost of your benefits will be taken as a post-tax deduction (i.e., deducted from your paycheck after taxes are withheld).

Page 1 of 2

UA-CL-AD&D-000023

ADP Benefits

Welcome, Molly Claas    Day: USX

| Benefit | Name | Relationship | Percent | Designation |
|---|---|---|---|---|
| **Basic Life | Current Coverage - Basic Life 1 X Salary** | | | |
| | Kathy Williams | Spouse | 100% | Primary |
| | Williams Family Trust dated... | Trust | 100% | Contingent |
| **Basic AD&D | Current Coverage - Basic AD&D 1 X Salary** | | | |
| | Kathy Williams | Spouse | 100% | Primary |
| | Williams Family Trust dated... | Trust | 100% | Contingent |
| **Voluntary AD&D | Current Coverage - $600,000.00** | | | |
| | Kathy Williams | Spouse | 100% | Primary |
| | Williams Family Trust dated... | Trust | 100% | Contingent |

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000024

Claim Document
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Type: Reassign

Subject: Desk Reassignment

Priority: No

Status: Completed

Notes: Reassign

Created By: Bailey, Dustyn
Created Date: 05/22/2018 - 14:33:20
Create Site: Portland

Completed By: Bailey, Dustyn
Completed Date: 05/22/2018 - 14:33:20
Complete Site: Portland

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Type: Reassign

Subject: Other

Priority: No

Status: Completed

Notes: 05/22/18-  (New claim) AD&D claimed

Created By: Meserve, Chris
Created Date: 05/26/2018 - 08:44:38
Create Site: Portland

Completed By: McKenzie, Tracy
Completed Date: 05/29/2018 - 05:50:33
Complete Site: Portland

UA-CL-AD&D-000026

Claim Document
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Type: Reassign

Subject: Desk Reassignment

Priority: No

Status: Completed

Notes: ad&d

Created By: McKenzie, Tracy
Created Date: 05/29/2018 - 05:52:44
Create Site: Portland

Completed By: Staples, Kristi-Lee
Completed Date: 05/29/2018 - 07:33:27
Complete Site: Portland

UA-CL-AD&D-000027

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018052907564690FF98

Entry Date: 05/29/2018 07:56:48

Received Date: 05/29/2018

Date Added to Claim: 05/29/2018

Primary Doc Type: Documentation

Secondary Doc Type: Administrative

Medical Provider:

Document Notes: Merlin Dv

Work Notes:

UA-CL-AD&D-000028

```
CI: UM  TRANS: DV       MERLIN DIVISION MAINT - INDICATIVE
FUNCTION: B   GROUP ID: 00 382480   DIVISION ID: 0117              GEN: 00
        NMO Mercer H & B       Sister Policy
NAME1: BLUESCOPE STEEL NORTH AMERICA   GEN ID: BLUESCOPE ST   GEN DT: 04/01/2017
NAME2: CORPORATION                     PHONE: 816 968 3530     LIM DT: 12/31/9999
ADDR1: PO BOX 419917                     EXT:                  FAX: 816 627 8942
ADDR2: 1540 GENESSEE STREET            ALT ADDR: VC       ADDR OPTIONS:
  CITY: KANSAS CITY        STATE: MO        ZIP: 64141-6917   COUNTRY: USA
          1234 5678 9                                       LANGUAGE: en US
      OPTIONS: YG N     D    DIVISION STATUS: A STATUS RSN:   1ST BL STS: N
STATISTICL LOC: 24              RAC CD:                 SIC CD: 3448
   DIV EFF DT: 04/01/2017      TERM DT:            REINSTATE DT:
   INF EFF DT: 03/24/2017  INF TERM DT:            INF REINS DT:
     PORT IND: 35    REWRITTEN TO POL:        DIV:       POL:        DIV:
                        *** BILLING INFO ***
     BILL TYPE: R  BILLS/YR: 12       SYNCH:        DAY TO BILL: 20  1234 567
DUE DAY OF BILL: 1  DH IND:   GRACE PERIOD: 45 DAYS  BILL OPTIONS: M A
   REPORT VER: 00  REMIT TO: A3   EOI IND: NN   BILL FEE(CD/AMT):        .00
     FI FEES: N          SYSDT:              FINAL: N 1ST MO:
LAST BL: 05/01/2018  THRU 05/31/2018  LAST PD: 04/01/2018 LAST APPRVD: 04/01/2018
    CO/FUND: 2132    EBO: A3 CHG RSN: NAME  TEXT DATA PTR:
CORRESPONDENT/TITLE: AMY HUGHES/HEALTH & WELFARE SPECIALIST
WINDOW ID:    WINDOW:
```

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000029

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018052908012955FF98

Entry Date: 05/29/2018 08:01:33

Received Date: 05/29/2018

Date Added to Claim: 05/29/2018

Primary Doc Type: Policy

Secondary Doc Type: Contract

Medical Provider:

Document Notes: BlueScope Steel #4462157

Work Notes:

UA-CL-AD&D-000030

AMENDMENT NO. 30

This amendment forms a part of Group Identification No. 382480 002 issued to the Employer/Applicant:

BlueScope Steel North America Corporation

The entire Summary of Benefits is replaced by the Summary of Benefits attached to this amendment.

The effective date of these changes is January 1, 2015. The changes only apply to deaths and covered losses that occur on or after the effective date.

The Summary of Benefits' terms and provisions will apply other than as stated in this amendment.

Dated at Portland, Maine on July 24, 2017.

Unum Life Insurance Company of America

By *signature*

Secretary

If this amendment is unacceptable, please sign below and return this amendment to Unum Life Insurance Company of America at Portland, Maine within 90 days of July 24, 2017.

**YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF THIS AMENDMENT.**

BlueScope Steel North America Corporation

By _____
Signature and Title of Officer

C.AMEND-1          AMEND-1 (1/1/2015) REV



**GROUP INSURANCE
SUMMARY OF BENEFITS
NON-PARTICIPATING**

| | |
|---|---|
| **IDENTIFICATION NUMBER:** | 382480 002 |
| **EFFECTIVE DATE OF COVERAGE:** | January 1, 1999 |
| **ANNIVERSARY DATE:** | January 1 |
| **GOVERNING JURISDICTION:** | Maine |

**Unum Life Insurance Company of America
insures the lives of**

**BlueScope Steel North America Corporation**

**under the
Select Group Insurance Trust
Policy No. 292000**

Unum Life Insurance Company of America (referred to as Unum) will provide benefits under this Summary of Benefits. Unum makes this promise subject to all of this Summary of Benefits' provisions.

The Employer should read this Summary of Benefits carefully and contact Unum promptly with any questions. This Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

Signed for Unum at Portland, Maine on the Effective Date of Coverage.

President                              Secretary

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

C.FP-2                    C.FP-1  (1/1/2015) REV

# TABLE OF CONTENTS

BENEFITS AT A GLANCE ...................................................................................B@G-LIFE-1

LIFE INSURANCE PLAN ...................................................................................B@G-LIFE-1

BENEFITS AT A GLANCE ...................................................................................B@G-AD&D-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN ......................B@G-AD&D-1

CLAIM INFORMATION ......................................................................................LIFE-CLM-1

LIFE INSURANCE.............................................................................................LIFE-CLM-1

CLAIM INFORMATION ......................................................................................AD&D-CLM-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE ................................AD&D-CLM-1

EMPLOYER PROVISIONS ..................................................................................EMPLOYER-1

CERTIFICATE SECTION ....................................................................................CC.FP-1

GENERAL PROVISIONS .....................................................................................EMPLOYEE-1

LIFE INSURANCE.............................................................................................LIFE-BEN-1

BENEFIT INFORMATION ...................................................................................LIFE-BEN-1

OTHER BENEFIT FEATURES.............................................................................LIFE-OTR-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE ................................AD&D-BEN-1

BENEFIT INFORMATION ...................................................................................AD&D-BEN-1

OTHER BENEFIT FEATURES.............................................................................AD&D-OTR-1

GLOSSARY......................................................................................................GLOSSARY-1

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000033

# BENEFITS AT A GLANCE

## LIFE INSURANCE PLAN

This life insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death. The amount your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**      January 1, 1999

**PLAN YEAR:**

> January 1, 1999 to January 1, 2000 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:**      382480  002

**ELIGIBLE GROUP(S):**

> Group 1
> All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees
>
> Group 2
> All Fairfield Union Employees

**MINIMUM HOURS REQUIREMENT:**

> **All employees except Laurinburg**
> Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.
>
> **All Laurinburg employees**
> Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

> **All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
>
> For employees in an eligible group on or before January 1, 1999:  The greater of the waiting period in effect under the prior Unum plan, if any, or None
>
> For employees entering an eligible group from January 1, 1999 through December 31, 2008: First of the month coincident with or next following date of active employment
>
> For employees entering an eligible group after January 1, 2009:  First of the month coincident with or next following 1 month of continuous active employment
>
> **All Fairfield Union Employees of BlueScope Steel North America**
> For employees in an eligible group on or before October 1, 2010:  90 days of continuous active employment
>
> For employees entering an eligible group after October 1, 2010: 90 days of continuous active employment
>
> **All BlueScope Construction (BSC) Core Field Employees**
> For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

B@G-LIFE-1  (1/1/2015) REV

UA-CL-AD&D-000034

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

## WHO PAYS FOR THE COVERAGE:

### For You:

*Basic Life Insurance Benefit:*

Your Employer pays the cost of your coverage.

*Additional Life Insurance Benefit:*

You pay the cost of your coverage.

### For Your Dependents:

*Basic Life Insurance Benefit:*

**All Fairfield Union Employees of BlueScope Steel North America**
Your Employer pays the cost of your dependent coverage.

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**

No Coverage

*Additional Life Insurance Benefit:*

You pay the cost of your dependent coverage.

## LIFE INSURANCE BENEFIT:

### AMOUNT OF LIFE INSURANCE FOR YOU

#### BASIC LIFE INSURANCE BENEFIT

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**
1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**All Fairfield Union Employees of BlueScope Steel North America**
$30,000

### ADDITIONAL LIFE INSURANCE BENEFIT OPTIONS:

*Option 1*

1 x annual earnings

*Option 2*

2 x annual earnings

B@G-LIFE-2 (1/1/2015) REV

UA-CL-AD&D-000035

*Option 3*

3 x annual earnings

*Option 4*

4 x annual earnings

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**AMOUNT OF LIFE INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED**

If you have reached age 70 but not age 75, your amount of life insurance will be:
- 67% of the amount of life insurance you have prior to age 70; or
- 67% of the amount of life insurance shown above if you become insured on or after age 70 but before age 75.

If you have reached age 75 or more, your amount of life insurance will be:
- 50% of the amount of life insurance you have prior to your first reduction; or
- 50% of the amount of life insurance shown above if you become insured on or after age 75.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR INSURANCE OVER:

- 2 x annual earnings (ADDITIONAL LIFE BENEFITS ONLY); or
- $750,000 (BASIC LIFE AND ADDITIONAL LIFE BENEFITS COMBINED), whichever is lower.

Evidence of Insurability is not required for amounts of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

OVERALL MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$1,000,000

**AMOUNT OF LIFE INSURANCE FOR YOUR DEPENDENTS**

**BASIC LIFE INSURANCE BENEFIT:**

**All Fairfield Union Employees of BlueScope Steel North America**

| Spouse: | Children: |
|---|---|
| $5,000 | Live birth to age 19 or to 25 if a full-time student: $5,000 |

**ADDITIONAL LIFE INSURANCE BENEFIT:**

**Spouse:**
Amounts in $5,000 benefit units as applied for by you and approved by Unum.

All amounts are rounded to the next higher multiple of $5,000, if not already an exact multiple thereof.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR SPOUSE'S INSURANCE OVER:

$50,000

Evidence of Insurability is not required for amounts of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

B@G-LIFE-3  (1/1/2015) REV

---

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000036

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOUR SPOUSE:

The lesser of:
- 100% of your amount of Basic Life and Additional Life Insurance combined; or
- $200,000

ADDITIONAL LIFE INSURANCE BENEFIT:

**Children:**

Live birth to age 19 or to 25
if a full-time student:          $10,000

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Accelerated Benefit

Conversion

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

B@G-LIFE-4 (1/1/2015) REV

# BENEFITS AT A GLANCE

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN

This accidental death and dismemberment insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death or for you in the event of any other covered loss. The amount you or your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death or any other covered loss according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**    January 1, 2009

**PLAN YEAR:**

January 1, 2009 to January 1, 2010 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:**    382480  002

**ELIGIBLE GROUP(S):**

Group 1
All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

Group 2
All Fairfield Union Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before January 1, 2009: The greater of the waiting period in effect under the prior Unum plan, if any, or None

For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All Fairfield Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before October 1, 2010: 90 days of continuous active employment

For employees entering an eligible group after October 1, 2010: 90 days of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

B@G-AD&D-1  (1/1/2015) REV

UA-CL-AD&D-000038

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic AD&D Insurance Benefit:*

Your Employer pays the cost of your coverage.

*Additional AD&D Insurance Benefit:*

You pay the cost of your coverage.

**For Your Dependents:**

*Basic AD&D Insurance Benefit:*

**All Fairfield Union Employees of BlueScope Steel North America**
Your Employer pays the cost of your dependent coverage.

*Additional AD&D Insurance Benefit:*

You pay the cost of your dependent coverage.

**ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT:**

**AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) INSURANCE FOR YOU** (FULL AMOUNT)

**BASIC AD&D INSURANCE BENEFIT**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**
1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**All Fairfield Union Employees of BlueScope Steel North America**
$30,000

**ADDITIONAL AD&D INSURANCE BENEFIT:**

Amounts in $25,000 benefit units as applied for by you and approved by Unum.

OVERALL MAXIMUM BENEFIT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$600,000

**AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOUR DEPENDENTS** (FULL AMOUNT)

**BASIC AD&D INSURANCE BENEFIT:**

**All Fairfield Union Employees of BlueScope Steel North America**

| Spouse: | Children: |
|---|---|
| $5,000 | Live birth to age 19 or to 25 if a full-time student: $5,000 |

B@G-AD&D-2 (1/1/2015) REV

UA-CL-AD&D-000039

**ADDITIONAL AD&D INSURANCE BENEFIT:**

**Spouse:**
60% of your additional amount of AD&D insurance to a maximum benefit of $360,000

**Children:**

Live birth to age 19 or to 25
if a full-time student:  20% of your Additional AD&D benefit amount
to a maximum of $120,000

## REPATRIATION BENEFIT FOR YOU AND YOUR DEPENDENTS

Maximum Benefit Amount:

Up to $15,000

The Repatriation Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Repatriation Benefit, your or your dependent's accidental death benefit must be paid first.

## SEATBELT(S) AND AIR BAG BENEFIT FOR YOU AND YOUR DEPENDENTS

Benefit Amount:

Seatbelt(s):  10% of the Full Amount of your or your dependent's accidental death
and dismemberment insurance benefit.

Air Bag:  5% of the Full Amount of your or your dependent's accidental death
and dismemberment insurance benefit.

Maximum Benefit Payment:

Seatbelt(s):  $50,000

Air bag:  $10,000

The Seatbelt(s) and Air Bag Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Seatbelt(s) and Air Bag Benefit, your or your dependents accidental death benefit must be paid first.

## EDUCATION BENEFIT

Each Qualified Child

Benefit Amount per Academic Year for which a Qualified Child is enrolled:

10% of the Full Amount of the employee's accidental death and dismemberment insurance to a maximum of $10,000.

Maximum Benefit Payments:

4 per lifetime

Maximum Benefit Amount per Each Qualified Child:

$40,000

Maximum Benefit Period:

6 years from the date the first benefit payment has been made.

B@G-AD&D-3  (1/1/2015) REV

UA-CL-AD&D-000040

The Education Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Education Benefit, your accidental death benefit must be paid first.

**EXPOSURE AND DISAPPEARANCE BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount: The Full Amount

**CHILD CARE BENEFIT**

Each Qualified Child

Annual Benefit Amount:

Birth through age 13

The lesser of:

- 10% of the Full Amount of your or your spouse's accidental death and dismemberment insurance; or

- $10,000

Maximum Benefit Amount:

$50,000

Maximum Benefit Period:

5 consecutive years

If, at the time of your or your spouse's death, you have no Qualified Child eligible for the Child Care Benefit, we will pay 10% of the Full Amount to a maximum benefit of $50,000 to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Child Care Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Child Care Benefit, your or your spouse's accidental death benefit must be paid first.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident

**COMA BENEFIT FOR YOU AND YOUR DEPENDENTS**

Monthly Benefit Amount:

1% of the Full Amount of your or your dependents accidental death and dismemberment insurance benefit

Maximum Number of Months:

100 months

**REHABILITATION PHYSICAL THERAPY BENEFIT FOR YOU AND YOUR DEPENDENTS**

Benefit Amount:

10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit

Maximum Benefit Amount:

$10,000

B@G-AD&D-4 (1/1/2015) REV

The Rehabilitation Physical Therapy Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order to receive the Rehabilitation Physical Therapy Benefit, your or your dependent's accidental death and dismemberment must be paid first.

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

B@G-AD&D-5 (1/1/2015) REV

UA-CL-AD&D-000042

# CLAIM INFORMATION

# LIFE INSURANCE

### WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

### WHEN CAN UNUM REQUEST AN AUTOPSY?

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

### HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

LIFE-CLM-1 (1/1/2015) REV

UA-CL-AD&D-000043

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's life claim is at least $10,000, Unum will make available to the beneficiary a **retained asset account** (the Unum Security Account).

Payment for the life claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the life claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the life claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

If you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

LIFE-CLM-2 (1/1/2015) REV

UA-CL-AD&D-000044

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? (Assignability Rights)

The rights provided to you by the plan for life insurance are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

LIFE-CLM-3 (1/1/2015) REV

UA-CL-AD&D-000045

# CLAIM INFORMATION

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

### *WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?*

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### *HOW DO YOU FILE A CLAIM FOR A COVERED LOSS?*

You or your authorized representative and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

### *WHAT INFORMATION IS NEEDED AS PROOF OF CLAIM?*

If claim is based on death or other covered loss, proof of claim for death or covered loss, provided at your or your authorized representative's expense, must show:

- the cause of death or covered loss;
- the extent of the covered loss;
- the date of covered loss; and
- the name and address of any **hospital or institution** where treatment was received, including all attending **physicians**.

Also, in case of death, a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

If a claim is based on the Education Benefit, proof of claim, provided at your authorized representative's expense, must show:

- the date of enrollment of your qualified child in an accredited post-secondary institution of higher learning;
- the name of the institution;
- a list of courses for the current academic term; and
- the number of credit hours for the current academic term.

AD&D-CLM-1 (1/1/2015) REV

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000046

## WHEN CAN UNUM REQUEST AN AUTOPSY?

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

## HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your accidental death and dismemberment insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

## HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's accidental death or dismemberment claim is at least $10,000 Unum will make available to you or your beneficiary a **retained asset account** (the Unum Security Account).

AD&D-CLM-2 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000047

Payment for the accidental death or dismemberment claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the accidental death or dismemberment claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the accidental death claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

The Child Care Benefit will be paid to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Education Benefit will be paid to your qualified child or the qualified child's legal representative.

If you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFITS? (Assignability Rights)

The rights provided to you by the plan(s) for accidental death insurance benefits are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

AD&D-CLM-3 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000048

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

AD&D-CLM-4  (1/1/2015) REV

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000049

# EMPLOYER PROVISIONS

**WHAT DOES THIS SUMMARY OF BENEFITS CONSIST OF FOR THE EMPLOYER?**

This Summary of Benefits consists of:

- all Summary of Benefits' provisions and any amendments and/or attachments issued;
- the Employer's Participation Agreement;
- each employee's application for insurance (employee retains his own copy); and
- the certificate of coverage issued for each employee of the Employer.

This Summary of Benefits may be changed in whole or in part. Only an officer or a registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to this Summary of Benefits. No other person, including an agent, may change this Summary of Benefits or waive any part of it.

**WHAT IS THE COST OF THIS INSURANCE?**

## LIFE INSURANCE

Premium payments are *required* for an insured while he or she is disabled under this plan.

The initial premium for each plan is based on the initial rate(s) shown in the Summary of Benefits effective on the Employer's original plan effective date.

**INITIAL RATE GUARANTEE AND RATE CHANGES**

Refer to the Summary of Benefits effective on the Employer's original plan effective date.

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

The initial premium for each plan is based on the initial rate(s) shown in the Summary of Benefits effective on the Employer's original plan effective date.

The initial premium for each **plan** is based on the initial rate(s) shown in the Rate Information Amendment(s).

**INITIAL RATE GUARANTEE AND RATE CHANGES**

Refer to the Rate Information Amendment(s).

Refer to the Summary of Benefits effective on the Employer's original plan effective date.

**WHEN IS PREMIUM DUE FOR THIS SUMMARY OF BENEFITS?**

Premium Due Dates: Premium due dates are based on the Premium Due Dates shown in the Summary of Benefits effective on the Employer's original plan effective date.

EMPLOYER-1 (1/1/2015) REV

The **Employer** must send all premiums to Unum on or before their respective due date. The premium must be paid in United States dollars.

### WHEN IS PREMIUM DUE FOR THIS SUMMARY OF BENEFITS?

Premium Due Dates: Premium due dates are based on the Premium Due Dates shown in the Rate Information Amendment(s).

The **Employer** must send all premiums to Unum on or before their respective due date. The premium must be paid in United States dollars.

### WHEN ARE INCREASES OR DECREASES IN PREMIUM DUE?

Premium increases or decreases which take effect during an insurance month are adjusted and due on the next premium due date following the change. Changes will not be pro-rated daily.

If premiums are paid on other than a monthly basis, premiums for increases and decreases will result in a monthly pro-rated adjustment on the next premium due date.

Unum will only adjust premium for the current plan year and the prior plan year. In the case of fraud, premium adjustments will be made for all plan years.

### WHAT INFORMATION DOES UNUM REQUIRE FROM THE EMPLOYER?

The Employer must provide Unum with the following on a regular basis:

- information about employees:
  - who are eligible to become insured;
  - whose amounts of coverage change; and/or
  - whose coverage ends;
- occupational information and any other information that may be required to manage a claim; and
- any other information that may be reasonably required.

Employer records that, in Unum's opinion, have a bearing on this Summary of Benefits will be available for review by Unum at any reasonable time.

Clerical error or omission by Unum will not:

- prevent an employee from receiving coverage;
- affect the amount of an insured's coverage; or
- cause an employee's coverage to begin or continue when the coverage would not otherwise be effective.

### WHO CAN CANCEL OR MODIFY THIS SUMMARY OF BENEFITS OR A PLAN UNDER THIS SUMMARY OF BENEFITS?

This Summary of Benefits or a plan under this Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

EMPLOYER-2 (1/1/2015) REV

Unum may cancel or modify this Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to this Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or
- the premium is not paid in accordance with the provisions of this Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger, divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day **grace period.**

If Unum cancels or modifies this Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel this Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify this Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel this Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, this Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels this Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If this Summary of Benefits or a plan is cancelled, the cancellation will not affect a **payable claim.**

### *WHAT HAPPENS TO AN EMPLOYEE'S COVERAGE UNDER THIS SUMMARY OF BENEFITS WHILE HE OR SHE IS ON A FAMILY AND MEDICAL LEAVE OF ABSENCE?*

We will continue the employee's coverage in accordance with the Employer's Human Resource policy on family and medical leaves of absence if premium payments continue and the Employer approved the employee's leave in writing.

EMPLOYER-3  (1/1/2015) REV

UA-CL-AD&D-000052

Coverage will be continued until the end of the latest of:

- the leave period required by the federal Family and Medical Leave Act of 1993, and any amendments; or
- the leave period required by applicable state law; or
- the leave period provided to the employee for injury or sickness.

If the Employer's Human Resource policy doesn't provide for continuation of a plan for an employee during a family and medical leave of absence, the employee's coverage will be reinstated when he or she returns to active employment.

We will not:

- apply a new waiting period; or
- require evidence of insurability.

***DIVISIONS, SUBSIDIARIES OR AFFILIATED COMPANIES INCLUDE:***

*FOR LIFE INSURANCE:*

NAME/LOCATION (CITY AND STATE)

SteelScape
Kansas City, Missouri

BlueScope Construction
Kansas City, Missouri

BlueScope Buildings
Kansas City, Missouri

ASC Profiles
Kansas City, Missouri

*FOR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE:*

NAME/LOCATION (CITY AND STATE)

SteelScape
Kansas City, Missouri

BlueScope Construction
Kansas City, Missouri

BlueScope Buildings
Kansas City, Missouri

ASC Profiles
Kansas City, Missouri

EMPLOYER-4  (1/1/2015) REV

# CERTIFICATE SECTION

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured. You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English. However, a few terms and provisions are written as required by insurance law. If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the Summary of Benefits (issued to the Employer), the Summary of Benefits will govern. The Summary of Benefits may be changed in whole or in part. Only an officer or registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to the Summary of Benefits. Any other person, including an agent, may not change the Summary of Benefits or waive any part of it.

The Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

For purposes of effective dates and ending dates under the group Summary of Benefits, all days begin at 12:01 a.m. and end at 12:00 midnight at the Employer's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000054

# GENERAL PROVISIONS

### WHAT IS THE CERTIFICATE OF COVERAGE?

This certificate of coverage is a written statement prepared by Unum and may include attachments. It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

### WHEN ARE YOU ELIGIBLE FOR COVERAGE?

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period**.

### WHEN DOES YOUR COVERAGE BEGIN?

This plan provides additional life benefit options and additional accidental death and dismemberment benefit units in addition to the basic life and accidental death and dismemberment benefit. When you first become eligible for coverage, you may apply for any additional life and accidental death and dismemberment benefits.

**Evidence of insurability** is required for any amount of life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

Your Employer pays 100% of the cost of your coverage under the basic benefit. You will automatically be covered under the basic benefit at 12:01 a.m. on the later of:

- the date you are eligible for coverage; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

You pay 100% of the cost for the additional benefits. You will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

If you do not apply for additional benefits on or before the 31st day after your eligibility date, you can apply at the next **annual enrollment period** or at anytime during the plan year. Evidence of insurability is required for any amount of insurance.

Coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

EMPLOYEE-1 (1/1/2015) REV

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000055

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

Coverage applied for at any time other than during an annual enrollment period will be effective on the date Unum approved your evidence of insurability form.

## *WHEN CAN YOU CHANGE YOUR COVERAGE?*

You can change your coverage by applying for additional benefits at anytime during the plan year. You can increase your coverage or decrease your coverage by any level. Evidence of insurability is required for any amount of insurance applied for during the plan year. A change in coverage that is made during a plan year will begin at 12:01 a.m. on the date Unum approves your evidence of insurability form.

You can also change your coverage by applying for a different additional benefit during an annual enrollment period.

You can increase or decrease your coverage any number of levels.

Evidence of insurability is required if you increase your coverage by any level. If you are not approved for the increase in your coverage, you will automatically remain at the same amount you had prior to applying for the increase.

Unum and your Employer determine when the annual enrollment period begins and ends. A change in coverage that is made during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

An evidence of insurability form can be obtained from your Employer.

## *IS EVIDENCE OF INSURABILITY REQUIRED IF YOU RECEIVE AN INCREASE IN YOUR ANNUAL EARNINGS?*

If you remain covered for the same basic benefit and the same supplemental benefit option, evidence of insurability is not required for the first $100,000 of increased life amounts due to increased annual earnings accumulated within a plan year.

Evidence of insurability is required for any increased amount of life insurance that exceeds $100,000. However, if you previously were declined coverage, evidence of insurability is required for any increases until Unum approves your evidence of insurability form.

If you are not in active employment due to an injury or sickness, this change in coverage due to a change in your annual earnings will begin on the date you return to active employment.

## *WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?*

If you are absent from work due to **injury**, **sickness**, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

EMPLOYEE-2  (1/1/2015) REV

---

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000056

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to your retirement date.

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If you are on a temporary **layoff**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

### WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?

Once your coverage begins, any increased or additional coverage due to a change in your annual earnings or due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your evidence of insurability form for life insurance, if evidence of insurability is required. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional coverage due to a change in your annual earnings or due to a plan change will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### WHEN DOES YOUR COVERAGE END?

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

### WHEN ARE YOU ELIGIBLE TO ELECT DEPENDENT COVERAGE?

If you elect coverage for yourself or are insured under the plan, you are eligible to elect dependent coverage for your spouse only, your dependent children only or both.

EMPLOYEE-3  (1/1/2015) REV

UA-CL-AD&D-000057

### WHEN ARE YOUR DEPENDENTS ELIGIBLE FOR COVERAGE?

The date your dependents are eligible for coverage is the later of:

- the date your insurance begins; or
- the date you first acquire a dependent.

### WHAT DEPENDENTS ARE ELIGIBLE FOR COVERAGE?

The following dependents are eligible for coverage under the plan:

- Your lawful spouse, including a legally separated spouse. You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee.

- Your unmarried children from live birth but less than age 19. Stillborn children are not eligible for coverage.

- Your unmarried dependent children age 19 or over but under age 25 also are eligible if they are full-time students at an **accredited school**.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

No dependent child may be covered by more than one employee in the plan.

No dependent child can be covered as both an employee and a dependent.

### WHEN DOES YOUR DEPENDENT COVERAGE BEGIN?

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**
This plan provides coverage for your dependents. When your dependents first become eligible for coverage, you may apply for:

- any number of life benefit units for your dependent spouse; however, your dependent spouse cannot be covered for more than the maximum benefit available under the plan; and
- dependent child(ren) life insurance coverage; and
- dependent accidental death and dismemberment benefits.

Evidence of insurability is required if you are applying for any amount of dependent spouse life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

You pay 100% of the cost for your dependent coverage. Your dependents will be covered at 12:01 a.m. on the latest of:

- the date your dependents are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for dependent insurance, if you apply within 31 days after your dependent's eligibility date; or

EMPLOYEE-4 (1/1/2015) REV

- the date Unum approves your dependent's evidence of insurability form, if evidence of insurability is required.

If you do not apply for dependent spouse and/or child coverage on or before the 31st day after your dependent's eligibility date, you can apply at the next annual enrollment period or at anytime during the plan year. Evidence of insurability is required for any amount of dependent life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.

Dependent coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent evidence of insurability form for life insurance.

Dependent coverage applied for at anytime other than during an annual enrollment period year will be at 12:01 a.m. on the later of:

- the date you apply for dependent accidental death and dismemberment insurance; or
- the date Unum approves your dependent's evidence of insurability form for life insurance.

**All Fairfield Union Employees of BlueScope Steel North-America**
This plan provides additional benefits in addition to the basic benefit for your dependents. When your dependents first become eligible for coverage, you may apply for:

- any number of additional life benefit units for your dependent spouse; however, your dependent spouse cannot be covered for more than the maximum benefit available under the plan; and
- additional dependent child(ren) life insurance coverage; and
- dependent accidental death and dismemberment benefits.

Evidence of insurability is required if you are applying for any amount of dependent spouse life insurance over the amount shown in the LIFE INSURANCE "BENEFITS AT A GLANCE" page.

Your Employer pays 100% of the cost for your basic dependent coverage. Your dependents will be covered at 12:01 a.m. on the date your dependents are eligible for coverage.

You pay 100% of the cost for your additional dependent coverage. Your dependents will be covered at 12:01 a.m. on the latest of:

- the date your dependents are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for dependent insurance, if you apply within 31 days after your dependent's eligibility date; or
- the date Unum approves your dependent's evidence of insurability form, if evidence of insurability is required.

EMPLOYEE-5 (1/1/2015) REV

If you do not apply for dependent spouse and/or child coverage on or before the 31st day after your dependent's eligibility date, you can apply at the next annual enrollment period or at anytime during the plan year. Evidence of insurability is required for any amount of dependent life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.

Dependent coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent evidence of insurability form for life insurance.

Dependent coverage applied for at anytime other than during an annual enrollment period will be at 12:01 a.m. on the later of:

- the date you apply for dependent accidental death and dismemberment insurance; or
- the date Unum approves your dependent's evidence of insurability form for life insurance

### WHEN CAN YOU CHANGE YOUR DEPENDENT COVERAGE?

You can change your dependent spouse coverage by applying for additional benefit units at anytime during the plan year. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life Insurance by any amount. Any increase in coverage will being at 12:01 am on the date Unum approves your dependent spouse's evidence of insurability form. A decrease or cancelation in coverage will begin at 12:01 am on the later of:

- the date you provide written notice to your Employer; or
- the last day of the period for which any required contributions are made.

You can also change your dependent spouse life coverage by applying for additional benefit units during an annual enrollment period. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life insurance by any amount.

Unum and your Employer determine when the annual enrollment period begins and ends.

Any increase in dependent spouse life coverage will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent's evidence of insurability form.

EMPLOYEE-6 (1/1/2015) REV

Claimant Name: Kathy Williams      Claim #: 14865967

Any decrease in dependent spouse life coverage or any cancellation of dependent coverage will begin on the first day of the next plan year.

An evidence of insurability form for your dependents can be obtained from your Employer.

### WHAT IF YOUR DEPENDENT IS TOTALLY DISABLED ON THE DATE YOUR DEPENDENT'S COVERAGE WOULD NORMALLY BEGIN?

If your eligible dependent is **totally disabled**, your dependent's coverage will begin on the date your eligible dependent no longer is totally disabled. This provision does not apply to a newborn child while dependent insurance is in effect.

### WHEN WILL CHANGES TO YOUR DEPENDENT'S COVERAGE TAKE EFFECT?

Once your dependent's coverage begins, any increased or additional dependent coverage due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your dependent's evidence of insurability form for life insurance, if evidence of insurability is required, provided your dependent is not totally disabled. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional dependent coverage due to a plan change will begin on the date you return to active employment.

If your dependent is totally disabled, any increased or additional dependent coverage will begin on the date your dependent is no longer totally disabled.

Any decreased coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease.

### WHEN DOES YOUR DEPENDENT'S COVERAGE END?

Your dependent's coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the date of your death;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Coverage for any one dependent will end on the earliest of:

- the date your coverage under a plan ends;
- the date your dependent ceases to be an eligible dependent;
- for a spouse, the date of divorce or annulment.

EMPLOYEE-7 (1/1/2015) REV

UA-CL-AD&D-000061

Unum will provide coverage for a payable claim which occurs while your dependents are covered under the Summary of Benefits or plan.

## *WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?*

You or your authorized representative can start legal action regarding a claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

## *HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?*

Unum considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

As a basis for doing this, we will use only statements made in a signed application by the Employer, or an application or evidence of insurability form signed by you, a copy of which has been given:

- to you; or
- your beneficiary, or a person acting on your behalf, if you:
  - die; or
  - are not competent.

Unum can take action only in the first 2 years coverage is in force.

If an individual's age is misstated:

- the correct age will decide if and in what amounts insurance is valid under the Summary of Benefits; and
- a fair adjustment of the premium will be made.

## *HOW WILL UNUM HANDLE INSURANCE FRAUD?*

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

EMPLOYEE-8 (1/1/2015) REV

*Claimant Name: Kathy Williams        Claim #: 14865967*

UA-CL-AD&D-000062

### *DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?*

For the purposes of the Summary of Benefits, your Employer acts on its own behalf or as your agent.  Under no circumstances will your Employer be deemed the agent of Unum.

EMPLOYEE-9  (1/1/2015) REV

# LIFE INSURANCE

# BENEFIT INFORMATION

### WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT?

Your beneficiary(ies) will receive payment when Unum approves your death claim.

### WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF DEATH?

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

### HOW MUCH WILL UNUM PAY YOU IF UNUM APPROVES YOUR DEPENDENT'S DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IF UNUM APPROVES YOUR DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHAT ARE YOUR ANNUAL EARNINGS?

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

LIFE-BEN-1  (1/1/2015) REV

UA-CL-AD&D-000064

### WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (Conversion Privilege)

When coverage ends under the plan, you and your dependents can convert your coverages to individual life policies, without evidence of insurability. The maximum amounts that you can convert are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

If you convert to an individual life policy, then return to work, and, again, become insured under the plan, you are not eligible to convert to an individual life policy again. However, you do not need to surrender that individual life policy when you return to work.

Converted insurance may be of any type of the level premium whole life plans then in use by Unum. The person may elect one year of Preliminary Term insurance under the level premium whole life policy. The individual policy will not contain disability or other extra benefits.

### WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (Conversion Privilege)

You and your dependents may convert a limited amount of life insurance if you have been insured under your Employer's group plan with Unum for at least five (5) years and the Summary of Benefits or the plan:

- is cancelled with Unum; or
- changes so that you no longer are eligible.

The individual life policy maximum for each of you will be the lesser of:

- $10,000; or
- your or your dependent's coverage amounts under the plan less any amounts that become available under any other group life plan offered by your Employer within 31 days after the date the Summary of Benefits or the plan is cancelled.

### PREMIUMS

Premiums for the converted insurance will be based on:

- the person's then attained age on the effective date of the individual life policy;
- the type and amount of insurance to be converted;
- Unum's customary rates in use at that time; and
- the class of risk to which the person belongs.

If the premium payment has been made, the individual life policy will be effective at the end of the 31 day conversion application period.

LIFE-BEN-2 (1/1/2015) REV

### DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD

If you or your dependents die within the 31 day conversion application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

### EMPLOYER NOTICE

Your Employer must notify each person of their conversion privileges 15 days before the date that person's life insurance terminates.

If your Employer does not notify that person 15 days before that person's life insurance terminates, the time allowed for that person to exercise their life conversion privilege will be extended 15 days from the date your Employer does notify that person.

In no event will the time allowed for a person to exercise their life conversion privilege be extended beyond 60 days from the date that person's life insurance terminates.

Any extended application period provided under this provision does not continue any insurance beyond the period provided in this Summary of Benefits.

### APPLYING FOR CONVERSION

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

### WILL UNUM ACCELERATE YOUR OR YOUR DEPENDENT'S DEATH BENEFIT FOR THE PLAN IF YOU OR YOUR DEPENDENT BECOMES TERMINALLY ILL? (Accelerated Benefit)

If you or your dependent becomes terminally ill while you or your dependent is insured by the plan, Unum will pay you a portion of your or your dependent's life insurance benefit one time. The payment will be based on 75% of your or your dependent's life insurance amount. However, the one-time benefit paid will not be greater than $500,000.

Your or your dependent's right to exercise this option and to receive payment is subject to the following:

- you or your dependent requests this election, in writing, on a form acceptable to Unum;
- you or your dependent must be terminally ill at the time of payment of the Accelerated Benefit;

LIFE-BEN-3 (1/1/2015) REV

UA-CL-AD&D-000066

- your or your dependent's physician must certify, in writing, that you or your dependent is terminally ill and your or your dependent's life expectancy has been reduced to less than 12 months; and
- the physician's certification must be deemed satisfactory to Unum.

The Accelerated Benefit is available on a voluntary basis. Therefore, you or your dependent is not eligible for benefits if:

- you or your dependent is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- you or your dependent is required by a government agency to use this benefit in order to apply for, get, or otherwise keep a government benefit or entitlement.

Premium payments must continue to be paid on the full amount of life insurance.

Also, premium payments must continue to be paid on the full amount of your dependent's life insurance.

If you have assigned your rights under the plan to an assignee or made an irrevocable beneficiary designation, Unum must receive consent, in writing, that the assignee or irrevocable beneficiary has agreed to the Accelerated Benefit payment on your behalf in a form acceptable to Unum before benefits are payable.

An election to receive an Accelerated Benefit will have the following effect on other benefits:

- the death benefit payable will be reduced by any amount of Accelerated Benefit that has been paid; and
- any amount of life insurance that may be available under the conversion privilege will be reduced by the amount of the Accelerated Benefit paid. The remaining life insurance amount will be paid according to the terms of the Summary of Benefits subject to any reduction and termination provisions.

Benefits paid may be taxable. Unum is not responsible for any tax or other effects of any benefit paid. As with all tax matters, you or your dependent should consult your personal tax advisor to assess the impact of this benefit.

### WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any losses where death is caused by, contributed to by, or results from:

- suicide occurring within 12 months after your or your dependent's initial effective date of insurance; and
- suicide occurring within 12 months after the date any increases or additional insurance become effective for you or your dependent.

The suicide exclusion will apply to any amounts of insurance for which you pay all or part of the premium.

The suicide exclusion also will apply to any amount that is subject to evidence of insurability requirements and Unum approves the evidence of insurability form and the amount you or your dependent applied for at that time.

LIFE-BEN-4 (1/1/2015) REV

If you or your dependent dies as a result of a suicide Unum will refund all premium paid for coverage on you or your dependent that became effective within the 12 month period immediately preceding the date of your or your dependent's suicide.

LIFE-BEN-5 (1/1/2015) REV

# LIFE INSURANCE

## OTHER BENEFIT FEATURES

***WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS?  (Portability)***

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves.  However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of life insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of life insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for a child will not be more than:

- the highest amount of life insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents.  If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of life insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

LIFE-OTR-1  (1/1/2015) REV

*Claimant Name: Kathy  Williams      Claim #:  14865967*

## *APPLYING FOR PORTABLE COVERAGE*

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

LIFE-OTR-2  (1/1/2015) REV

UA-CL-AD&D-000070

If we determine that because of an injury or sickness, which has a material effect on life expectancy, you or your dependents were not eligible for portability at the time you or your dependents elected portable coverage, the benefit will be adjusted to the amount of whole life coverage the premium would have purchased under the Conversion Privilege.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of life insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of life insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. All increases are subject to evidence of insurability. Portable coverage will reduce at the ages and amounts shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

LIFE-OTR-3 (1/1/2015) REV

*Claimant Name: Kathy  Williams      Claim #:  14865967*

*PREMIUM RATE CHANGES FOR PORTABLE COVERAGE*

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

*APPLYING FOR CONVERSION, IF PORTABLE COVERAGE ENDS OR IS NOT AVAILABLE*

If you or your dependent is not eligible to apply for portable coverage or portable coverage ends, then you or your dependent may qualify for conversion coverage. Refer to Conversion Privilege under this plan.

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

LIFE-OTR-4 (1/1/2015) REV

UA-CL-AD&D-000072

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## BENEFIT INFORMATION

***WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT IN THE EVENT OF YOUR DEATH IF YOUR DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

Your beneficiary(ies) will receive payment when Unum approves your death claim providing you meet certain conditions.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF YOUR DEPENDENT'S DEATH IF YOUR DEPENDENT'S DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the death claim for your dependent providing certain conditions are met.

***WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF ACCIDENTAL DEATH?***

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF CERTAIN OTHER COVERED LOSSES IF THE LOSS IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the claim.

***HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IN THE EVENT OF YOUR ACCIDENTAL DEATH OR YOU FOR YOUR DEPENDENT'S ACCIDENTAL DEATH OR FOR CERTAIN OTHER COVERED LOSSES?***

If Unum approves the claim, Unum will determine the payment according to the Covered Losses and Benefits List below. The benefit Unum will pay is listed opposite the corresponding covered loss.

The benefit will be paid only if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

| Covered Losses | Benefit Amounts |
|---|---|
| Life | The Full Amount |
| Both Hands or Both Feet or Sight of Both Eyes | The Full Amount |
| One Hand and One Foot | The Full Amount |
| One Hand and Sight of One Eye | The Full Amount |
| One Foot and | |

AD&D-BEN-1 (1/1/2015) REV

UA-CL-AD&D-000073

| | |
|---|---|
| Sight of One Eye | The Full Amount |
| Speech and Hearing | The Full Amount |
| Quadriplegia | The Full Amount |
| Triplegia | Three Quarters The Full Amount |
| Paraplegia | Three Quarters The Full Amount |
| One Hand or One Foot | One Half The Full Amount |
| Sight of One Eye | One Half The Full Amount |
| Speech or Hearing | One Half The Full Amount |
| Hemiplegia | One Half The Full Amount |
| Thumb and Index Finger of Same Hand | One Quarter The Full Amount |
| Uniplegia | One Quarter The Full Amount |

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHAT ARE YOUR ANNUAL EARNINGS?*

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### *WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?*

If you have an accidental bodily injury that results in one or more of the covered losses while you are on a covered layoff or leave of absence, we will use your

AD&D-BEN-2 (1/1/2015) REV

annual earnings from your Employer in effect just prior to the date your absence began.

## WHAT REPATRIATION BENEFIT WILL UNUM PROVIDE?

Unum will pay an additional benefit for the preparation and transportation of your or your dependent's body to a mortuary chosen by you or your authorized representative. Payment will be made if, as the result of a covered accident, you or your dependent suffers loss of life at least 100 miles away from your or your dependent's principal place of residence.

However, when combined with two or more Unum accidental death and dismemberment insurance plans, the combined overall maximum for these plans together cannot exceed the actual expenses for the preparation and transportation of your or your dependent's body to a mortuary.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

## WHAT SEATBELT(S) AND AIR BAG BENEFIT WILL UNUM PROVIDE?

Unum will pay you or your authorized representative an additional benefit if you or your dependent sustains an accidental bodily injury which causes your or your dependent's death while you or your dependent is driving or riding in a **Private Passenger Car**, provided:

For Seatbelt(s):

- the Private Passenger Car is equipped with seatbelt(s); and
- the seatbelt(s) were in actual use and properly fastened at the time of the covered accident; and
- the position of the seatbelt(s) are certified in the official report of the covered accident, or by the investigating officer. A copy of the police accident report must be submitted with the claim.

Also, if such certification is not available, and it is clear that you or your dependent was properly wearing seatbelt(s), then we will pay the additional seatbelt benefit.

However, if such certification is not available, and it is unclear whether you or your dependent was properly wearing seatbelt(s), then we will pay a fixed benefit of $1,000.

We will only pay the seatbelt benefit for the death of a minor, dependent child, if the child is correctly strapped and fastened in the appropriate seat for the child's age and weight as defined by state or federal guidelines. The seatbelt device must also be approved by the state or federal government for the dependent child's age and weight.

An automatic harness seatbelt will not be considered properly fastened unless a lap belt is also used.

For Air Bag:

AD&D-BEN-3 (1/1/2015) REV

UA-CL-AD&D-000075

- the Private Passenger Car is equipped with an air bag for the seat in which you are seated; and
- the seatbelt(s) must be in actual use and properly fastened at the time of the covered accident.

No benefit will be paid if you or your dependent is the driver of the Private Passenger Car and does not hold a current and valid driver's license.

No benefit will be paid if Unum is able to verify that the air bag(s) had been disengaged prior to the accident.

The accident causing your or your dependent's death must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### WHAT EDUCATION BENEFIT WILL UNUM PROVIDE FOR YOUR QUALIFIED CHILDREN?

Unum will pay your authorized representative on behalf of each of your qualified children a lump sum payment if:

- you lose your life:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your accidental bodily injury occurred while you were insured under the plan;
- proof is furnished to Unum that the child is a **qualified child**; and
- the qualified child continues to be enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level.

The benefit amount per academic year, maximum benefit payments, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHEN WILL THE EDUCATION BENEFIT END FOR EACH QUALIFIED CHILD?

The education benefit will terminate for each qualified child on the earliest of the following dates:

- the date your qualified child fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### WHAT COVERAGE FOR EXPOSURE AND DISAPPEARANCE BENEFIT WILL UNUM PROVIDE?

Unum will pay a benefit if you or your dependent sustains an accidental bodily injury and are unavoidably exposed to the elements and suffer a loss.

We will presume you or your dependent suffered loss of life due to an accident if:

AD&D-BEN-4  (1/1/2015) REV

- you or your dependent are riding in a common public passenger carrier that is involved in an accident covered under the Summary of Benefits; and
- as a result of the accident, the common public passenger carrier is wrecked, sinks, is stranded, or disappears; and
- your or your dependent's body is not found within 1 year of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### WHAT CHILD CARE BENEFIT WILL UNUM PROVIDE?

Unum will pay you, your spouse or your or your spouse's authorized representative on behalf of each of your qualified children an annual benefit amount for child care if:

- you or your spouse die:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your or your spouse's accidental bodily injury occurred while you or your spouse was insured under the plan;
- proof is furnished to Unum that the child is a qualified child.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident.

The annual benefit amount, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHEN WILL THE CHILD CARE BENEFIT END FOR EACH QUALIFIED CHILD?

The child care benefit will terminate for each qualified child on the earliest of the following dates:

- the date you, your spouse or your or your spouse's authorized representative fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### WHAT COMA BENEFIT WILL UNUM PROVIDE?

Unum will pay a benefit to your or your dependent's beneficiary if you or your dependents sustain an accidental bodily injury which directly results in your or your dependents being in a **coma** or a (persistent) **vegetative state**. The coma must begin within 31 days of the accident.

No benefits are payable for the first 31 days that you or your dependents are in a coma. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

Also, the accident must occur while you or your dependents are insured under the plan.

AD&D-BEN-5 (1/1/2015) REV

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

The monthly benefit amount and maximum number of months are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT REHABILITATION PHYSICAL THERAPY BENEFIT WILL UNUM PROVIDE?*

Unum will pay you or your dependents an additional benefit for rehabilitative physical therapy that is prescribed by your or your dependent's attending physician if you or your dependents sustain an accidental bodily injury that results in one or more of the covered losses outlined in the Covered Losses and Benefits List.

The benefit amount and maximum benefit amount are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:

- suicide while sane or intentionally self-inflicted injury while sane.
- active participation in a riot.
- an attempt to commit or commission of a crime.
- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol.
- service on full-time active duty in the Armed Forces of any country or international authority.
- travel or flight in any vehicle or device for aerial navigation, including boarding or alighting from it while:
  - it is being used for test or experimental purposes;
  - you or your dependent is operating, learning to operate or serving as a member of the crew;
  - it is being operated by or for or under the direction of any military authority.
  This exclusion does not apply to:
  - transport type aircraft operated by the Military Airlift Command of the United States; or
  - similar air transport service of any other country.
- travel or flight in any aircraft or device for aerial navigation, including boarding or alighting from it, owned or leased by or on behalf of your Employer.
- disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.
- being **intoxicated**.
- bacterial infection. This exclusion does not apply to you or your dependent when the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

AD&D-BEN-6 (1/1/2015) REV

UA-CL-AD&D-000078

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## OTHER BENEFIT FEATURES

### WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of accidental death and dismemberment insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of accidental death and dismemberment insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for a child will not be more than:

- the highest amount of accidental death and dismemberment insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

AD&D-OTR-1 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #: 14865967

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of AD&D insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

### *APPLYING FOR PORTABLE COVERAGE*

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

AD&D-OTR-2 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000080

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of AD&D insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of accidental death and dismemberment insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. Portable coverage will reduce at the ages and amounts shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

AD&D-OTR-3  (1/1/2015) REV

UA-CL-AD&D-000081

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

***PREMIUM RATE CHANGES FOR PORTABLE COVERAGE***

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

AD&D-OTR-4 (1/1/2015) REV

UA-CL-AD&D-000082

# GLOSSARY

**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause.

**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFIT** means the total benefit amount for which an individual is insured under this plan subject to the maximum benefit.

**ACCREDITED SCHOOL** means an accredited post-secondary institution of higher learning for full-time students beyond the 12th grade level.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation.  You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**ACTIVITIES OF DAILY LIVING** means:

- Bathing - the ability to wash oneself either in the tub or shower or by sponge bath with or without equipment or adaptive devices.
- Dressing - the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn.
- Toileting - the ability to get to and from and on and off the toilet; to maintain a reasonable level of personal hygiene, and to care for clothing.
- Transferring - the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
- Continence - the ability to either:
  - voluntarily control bowel and bladder function; or
  - if incontinent, be able to maintain a reasonable level of personal hygiene.
- Eating - the ability to get nourishment into the body.

A person is considered unable to perform an activity of daily living if the task cannot be performed safely without another person's stand-by assistance or verbal cueing.

**ANNUAL EARNINGS** means your annual income received from your Employer as defined in the plan.

**ANNUAL ENROLLMENT PERIOD** means a period of time before the beginning of each plan year.

**COGNITIVELY IMPAIRED** means a person has a deterioration or loss in intellectual capacity resulting from injury, sickness, advanced age, Alzheimer's disease or similar

_Claimant Name: Kathy  Williams      Claim #:  14865967_

UA-CL-AD&D-000083

forms of irreversible dementia and needs another person's assistance or verbal cueing for his or her own protection or for the protection of others.

**COMA** means being in a profound stupor or state of complete and total unconsciousness. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Employer/Applicant named in the Application For Participation in the Select Group Insurance Trust, on the first page of the Summary of Benefits and in all amendments. It includes any division, subsidiary or affiliated company named in the Summary of Benefits.

**EVIDENCE OF INSURABILITY** means a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage. Evidence of insurability will be at Unum's expense.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**HEMIPLEGIA** means total and irreversible paralysis of both limbs on either side of the body (i.e. the right arm and right leg or the left arm and left leg).

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause.

**INSURED** means any person covered under a plan.

**INTOXICATED** means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIFE INSURANCE BENEFIT** means the total benefit amount for which an individual is insured under this plan subject to the maximum benefit.

**LIFE THREATENING CONDITION** is a critical health condition that possibly could result in your dependent's loss of life.

**LOSS OF A FOOT** means that all of the foot is cut off at or above the ankle joint.

**LOSS OF A HAND** means that all four fingers are cut off at or above the knuckles joining each to the hand.

GLOSSARY-2 (1/1/2015) REV

UA-CL-AD&D-000084

**LOSS OF HEARING** means the total and irrecoverable loss of hearing in both ears.

**LOSS OF SIGHT** means the eye is totally blind and that no sight can be restored in that eye.

**LOSS OF SPEECH** means the total and irrecoverable loss of speech.

**LOSS OF THUMB AND INDEX FINGER** means that all of the thumb and index finger are cut off at or above the joint closest to the wrist.

**PARAPLEGIA** means total and irreversible paralysis of both lower limbs.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the Summary of Benefits.

**PHYSICIAN** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Unum will not recognize you, or your spouse, children, parents or siblings as a physician for a claim that you send to us.

**PLAN** means a line of coverage under the Summary of Benefits.

**PRIVATE PASSENGER CAR** means a validly registered four-wheel private passenger car (including Employer-owned cars), station wagons, jeeps, pick-up trucks, and vans that are used only as private passenger cars.

**QUADRIPLEGIA** means total and irreversible paralysis of all four limbs.

**QUALIFIED CHILD** means:

- **for purposes of the Education Benefit**, any of your unmarried dependent children under age 25 who, on the date of your death as a result of an accidental bodily injury, was either:

  - enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level; or
- at the 12th grade level and enrolls as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level within 365 days following the date of your death.

- **for purposes of the Child Care Benefit**, any of your unmarried dependent children under age 14 who, were enrolled in a licensed day care facility, school facility, or other similar program for 90 continuous days before the date of the accident causing your death.  The Child Care Benefit will not be extended to any of your children born after the date of your death unless pregnancy commenced prior to the date of your death.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000085

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

**RETAINED ASSET ACCOUNT** is an interest bearing account established through an intermediary bank in the name of you or your beneficiary, as owner.

**SICKNESS** means:

- **for purposes of Portability**, an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.
- **for all other purposes**, an illness or disease.

**TOTALLY DISABLED** means that, as a result of an injury, a sickness or a disorder, your dependent:

- is confined in a hospital or similar institution;
- is unable to perform two or more activities of daily living (ADLs) because of a physical or mental incapacity resulting from an injury or a sickness;
- is cognitively impaired;
- has a life threatening condition;
- is unable to attend school outside of home provided your dependent is a child and of school age (ages 5-19 years of age); or
- is at a developmental age which is less than half the chronological age by milestones or other pediatric developmental testing (e.g., Denver Developmental Test or similar test) provided your dependent is a child and of pre-school age (up to 6 years of age).

**TRIPLEGIA** means total and irreversible paralysis of three limbs.

**TRUST** means the policyholder trust named on the first page of the Summary of Benefits and all amendments to the policy.

**UNIPLEGIA** means total and irreversible paralysis of one limb.

**VEGETATIVE STATE** means being completely unaware of one's self and the environment with the presence of sleep-awake cycles and at least partial preservation of involuntary brain functions. Such vegetative state must be due to an accidental bodily injury and must begin within 31 days of the date of the accident.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE, US** and **OUR** means Unum Life Insurance Company of America.

**YOU** means an employee who is eligible for Unum coverage.

GLOSSARY-4  (1/1/2015) REV

UA-CL-AD&D-000086

# ERISA

### Additional Summary Plan Description Information

If the Summary of Benefits provides benefits under a Plan which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the following provisions apply. These provisions, together with your certificate of coverage, constitute the summary plan description. The summary plan description and the Summary of Benefits constitute the Plan. Benefit determinations are controlled exclusively by the Summary of Benefits, your certificate of coverage and the information contained in this document.

**Name of Plan:**
  BlueScope Steel North America Corporation Plan

**Name and Address of Employer:**
  BlueScope Steel North America Corporation
  1540 Genessee Street
  Kansas City, Missouri
  64102-1069

**Plan Identification Number:**
  a. Employer IRS Identification #: 23-2081882
  b. Plan #: 501

**Type of Welfare Plan:**
  Life and Accidental Death and Dismemberment

**Type of Administration:**
  The Plan is administered by the Plan Administrator. Benefits are administered by the insurer and provided in accordance with the insurance Summary of Benefits issued to the Plan.

**ERISA Plan Year Ends:**
  December 31

**Plan Administrator, Name,**
**Address, and Telephone Number:**
  BlueScope Steel North America Corporation
  1540 Genessee Street
  Kansas City, Missouri
  64102-1069
  (816) 968-3000

  BlueScope Steel North America Corporation is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties. The Plan Administrator may designate Trustees of the Plan, in which case the Administrator will advise you separately of the name, title and address of each Trustee.

**Agent for Service of**
**Legal Process on the Plan:**
  BlueScope Steel North America Corporation
  1540 Genessee Street
  Kansas City, Missouri
  64102-1069

ADDLSUM-1  (1/1/2015) REV

Service of legal process may also be made upon the Plan Administrator, or a Trustee of the Plan, if any.

**Funding and Contributions:**

The Plan is funded by insurance issued by Unum Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122 (hereinafter referred to as "Unum") under identification number 382480 002. Contributions to the Plan are made as stated under "WHO PAYS FOR THE COVERAGE" in the Certificate of Coverage.

## EMPLOYER'S RIGHT TO AMEND THE PLAN

The Employer reserves the right, in its sole and absolute discretion, to amend, modify, or terminate, in whole or in part, any or all of the provisions of the Plan (including any related documents and underlying policies), at any time and for any reason or no reason. Any amendment, modification, or termination must be in writing and endorsed on or attached to the Plan.

## EMPLOYER'S RIGHT TO REQUEST SUMMARY OF BENEFITS CHANGE

The Employer can request a Summary of Benefits change. Only an officer or registrar of Unum can approve a change. The change must be in writing and endorsed on or attached to the Summary of Benefits.

## MODIFYING OR CANCELLING THE SUMMARY OF BENEFITS OR A PLAN UNDER THE SUMMARY OF BENEFITS

The Summary of Benefits or a plan under the Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

Unum may cancel or modify the Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to the Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or
- the premium is not paid in accordance with the provisions of the Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger,

ADDLSUM-2 (1/1/2015) REV

*Claimant Name: Kathy Williams     Claim #: 14865967*

divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day grace period.

If Unum cancels or modifies the Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel the Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify the Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel the Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, the Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels the Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the Summary of Benefits or a plan is cancelled, the cancellation will not affect a payable claim.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your insurance certificate. To complete your claim filing, Unum must receive the claim information it requests from you (or your authorized representative), your attending physician and your Employer. If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

## CLAIMS PROCEDURES

In the event that your claim is denied, either in full or in part, Unum will notify you in writing within 90 days after your claim was filed. Under special circumstances, Unum is allowed an additional period of not more than 90 days (180 days in total) within which to notify you of its decision. If such an extension is required, you will receive a written notice from Unum indicating the reason for the delay and the date you may expect a final decision. Unum's notice of denial shall include:

- the specific reason or reasons for denial with reference to those Plan provisions on which the denial is based;
- a description of any additional material or information necessary to complete the claim and why that material or information is necessary; and
- a description of the Plan's procedures and applicable time limits for appealing the determination, including a statement of your right to bring a lawsuit under Section 502(a) of ERISA following an adverse determination from Unum on appeal.

ADDLSUM-3 (1/1/2015) REV

UA-CL-AD&D-000089

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

If you or your authorized representative appeal a denied claim, it must be submitted within 90 days after you receive Unum's notice of denial. You have the right to:

- submit a request for review, in writing, to Unum;
- upon request and free of charge, reasonable access to and copies of, all relevant documents as defined by applicable U.S. Department of Labor regulations; and
- submit written comments, documents, records and other information relating to the claim to Unum.

Unum will make a full and fair review of the claim and all new information submitted whether or not presented or available at the initial determination, and may require additional documents as it deems necessary or desirable in making such a review. A final decision on the review shall be made not later than 60 days following receipt of the written request for review. If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension and the date by which the Plan expects to make a decision. If an extension is required due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the necessary information and the date by which you need to provide it to us. The 60-day extension of the appeal review period will begin after you have provided that information.

The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference, again, to those Summary of Benefits' provisions upon which the final decision is based. It will also include a statement describing your access to documents and describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the determination.

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

ADDLSUM-4 (1/1/2015) REV

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

Enforce Your Rights

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, if, for example, it finds your claim is frivolous.

Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

ADDLSUM-5 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000091

## OTHER RIGHTS

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the Summary of Benefits. You agree that Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

## DISCRETIONARY ACTS

The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Once you are deemed to have exhausted your appeal rights under the Plan, you have the right to seek court review under Section 502(a) of ERISA of any benefit determinations with which you disagree. The court will determine the standard of review it will apply in evaluating those decisions.

*Claimant Name: Kathy Williams      Claim #:  14865967*

UA-CL-AD&D-000092

# Our Commitment to Privacy

We understand your privacy is important. We value our relationship with you and are committed to protecting the confidentiality of nonpublic personal information (NPI). This notice explains why we collect NPI, what we do with NPI and how we protect your privacy.

## COLLECTING INFORMATION
We collect NPI about our customers to provide them with insurance products and services. This may include telephone number, address, date of birth, occupation, income and health history. We may receive NPI from your applications and forms, medical providers, other insurers, employers, insurance support organizations and service providers.

## SHARING INFORMATION
We share the types of NPI described above primarily with people who perform insurance, business and professional services for us, such as helping us pay claims and detect fraud. We may share NPI with medical providers for insurance and treatment purposes. We may share NPI with an insurance support organization. The organization may retain the NPI and disclose it to others for whom it performs services. In certain cases, we may share NPI with group policyholders for reporting and auditing purposes. We may share NPI with parties to a proposed or final sale of insurance business or for study purposes. We may also share NPI when otherwise required or permitted by law, such as sharing with governmental or other legal authorities. When legally necessary, we ask your permission before sharing NPI about you. Our practices apply to our former, current and future customers.

Please be assured we do not share your health NPI to market any product or service. We also do not share any NPI to market non-financial products and services. For example, we do not sell your name to catalog companies.

The law allows us to share NPI as described above (except health information) with affiliates to market financial products and services. The law does not allow you to restrict these disclosures. We may also share with companies that help us market our insurance products and services, such as vendors that provide mailing services to us. We may share with other financial institutions to jointly market financial products and services. When required by law, we ask your permission before we share NPI for marketing purposes.

When other companies help us conduct business, we expect them to follow applicable privacy laws. We do not authorize them to use or share NPI except when necessary to conduct the work they are performing for us or to meet regulatory or other governmental requirements.

Unum companies, including insurers and insurance service providers, may share NPI about you with each other. The NPI might not be directly related to our transaction or experience with you. It may include financial or other personal information such as employment history. Consistent with the Fair Credit Reporting Act, we ask your permission before sharing NPI that is not directly related to our transaction or experience with you.

## COVERAGE DECISIONS
If we decide not to issue coverage to you, we will provide you with the specific reason(s) for our decision. We will also tell you how to access and correct certain NPI.

GLB-1  (1/1/2015) REV

## ACCESS TO INFORMATION

You may request access to certain NPI we collect to provide you with insurance products and services. You must make your request in writing and send it to the address below. The letter should include your full name, address, telephone number and policy number if we have issued a policy. If you request, we will send copies of the NPI to you. If the NPI includes health information, we may provide the health information to you through a health care provider you designate. We will also send you information related to disclosures. We may charge a reasonable fee to cover our copying costs.

This section applies to NPI we collect to provide you with coverage. It does not apply to NPI we collect in anticipation of a claim or civil or criminal proceeding.

## CORRECTION OF INFORMATION

If you believe the NPI we have about you is incorrect, please write to us. Your letter should include your full name, address, telephone number and policy number if we have issued a policy. Your letter should also explain why you believe the NPI is inaccurate. If we agree with you, we will correct the NPI and notify you of the correction. We will also notify any person who may have received the incorrect NPI from us in the past two years if you ask us to contact that person.

If we disagree with you, we will tell you we are not going to make the correction. We will give you the reason(s) for our refusal. We will also tell you that you may submit a statement to us. Your statement should include the NPI you believe is correct. It should also include the reason(s) why you disagree with our decision not to correct the NPI in our files. We will file your statement with the disputed NPI. We will include your statement any time we disclose the disputed NPI. We will also give the statement to any person designated by you if we may have disclosed the disputed NPI to that person in the past two years.

## SAFEGUARDING INFORMATION

We have physical, electronic and procedural safeguards that protect the confidentiality and security of NPI. We give access only to employees who need to know the NPI to provide insurance products or services to you.

## CONTACTING US

For additional information about Unum's commitment to privacy and to view a copy of our HIPAA Privacy Notice, please visit unum.com/privacy or coloniallife.com. You may also write to: Privacy Officer, Unum, 2211 Congress Street, C476, Portland, Maine 04122.

*We reserve the right to modify this notice. We will provide you with a new notice if we make material changes to our privacy practices.*

*Unum is providing this notice to you on behalf of the following insuring companies: Unum Life Insurance Company of America, Unum Insurance Company, First Unum Life Insurance Company, Provident Life and Accident Insurance Company, Provident Life and Casualty Insurance Company, Colonial Life & Accident Insurance Company and The Paul Revere Life Insurance Company.*

Copyright 2015 Unum Group. All rights reserved. Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries.

MK-1883 (09/15)

GLB-2  (1/1/2015) REV

*Claimant Name: Kathy  Williams      Claim #:  14865967*

## NOTICE OF PROTECTION PROVIDED BY
## MISSOURI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

This notice provides a **brief summary** of the Missouri Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. This safety net was created under Missouri law, which determines who and what is covered and the amounts of coverage.

The Association was established to provide protection in the unlikely event that your life, annuity, or health insurance company becomes financially unable to meet its obligations and is taken over by its insurance department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Missouri law, with funding from assessments paid by other insurance companies.

The basic protections provided by the Association are as follows:

- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values

- Health Insurance
  - $500,000 in hospital, medical and surgical insurance benefits
  - $300,000 in disability insurance benefits
  - $300,000 in long-term care insurance benefits
  - $100,000 in other types of health insurance benefits

- Annuities
  - $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is as follows:

- $300,000 in aggregate for all types of coverage listed above, with the exception of basic hospital, medical, and surgical insurance or major medical insurance
- $500,000 in aggregate for basic hospital, medical, and surgical insurance or major medical insurance
- $5,000,000 to one policy owner of multiple nongroup policies of life insurance, whether the policy owner is an individual, firm, corporation, or other person, and whether the persons insured are officers, managers, employees, or other persons

**Note: Certain policies and contracts may not be covered or fully covered.** For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Missouri law.

To learn more about the above protections, as well as protections relating to group contracts or retirement plans, please visit the Association's website at www.mo-iga.org, or contact:

Missouri Life and Health Insurance
Guaranty Association
994 Diamond Ridge, Suite 102

Missouri Department of Insurance,
Financial Institutions and Professional
Registration

GUAR-1  (1/1/2015) REV

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000095

Jefferson City, Missouri 65109          301 West High Street, Room 530
(573) 634-8455                          Jefferson City, Missouri 65101
Fax: (573) 634-8488                     (573) 522-6115

**Insurance companies and agents are not allowed by Missouri law to use the existence of the Association or its coverage to encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and Missouri law, then Missouri law will control.**

GUAR-2  (1/1/2015) REV

UA-CL-AD&D-000096

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018052908031453FF98

**Entry Date:** 05/29/2018 08:03:16

**Received Date:** 05/29/2018

**Date Added to Claim:** 05/29/2018

**Primary Doc Type:** Documentation

**Secondary Doc Type:** Administrative

**Medical Provider:**

**Document Notes:** obit

**Work Notes:**

# Kathy Rae Williams

Redacted – APRIL 27, 2018



## KATHY RAE (SHERWOOD) WILLIAMS passed away from injuries sustained from a fall on the 27th of April, 2018 at the age of 60.

Kathy was born on **Redacted** o Bessie Sherwood and the late Charles Sherwood. On July 24th, 1976 she married Gary and they would be celebrating 42 years of marriage this year. They had two daughters, Jessica and Jennifer, who had her beautiful grandchildren. She took great pride in being a homemaker, wife, mother and grandmother.

Kathy was survived by her mother; her brothers Charles Sherwood, Kenny Sherwood, Eddie Sherwood; her sister, Leona Rathbone; her husband, Gary Williams; her children, Jessica (Williams) Palacios and Jennifer Williams; her grandchildren, Madelyn and Adelle Palacios, Josephine and soon-to-be baby boy Williams.

Kathy was a devoted wife and avid gardener. She enjoyed working in her garden, cooking and collecting antiques. She loved animals and enjoyed training the family dogs. . She was a lifelong Missouri resident and previously worked for the Raytown School District in Children Services. She graduated from Metropolitan Community College with an Associate's Degree in Applied Sciences Human Services-Youth Services.

UA-CL-AD&D-000098

Funeral services will be on Thursday May 3rd, 2018 at Floral Hills Funeral Home, 7000 Blue Ridge Blvd., Kansas City, MO 64133. Visitation at 9am; Funeral at 10am. Kathy will be remembered as a loving wife, mother and grandmother.

```
                                    Activity
-------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: General Support/Intake          Name: Add/Change Request
Status: Completed
Original Notify Date: 05/29/2018
Notify Date: 05/29/2018
Due Date:
Subject: mark up new BAS claim
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Brown, Jamie
Action:

Request Fields
-----------------------------------------------------------------------
Request: Staples, Kristi-Lee 05/29/2018 08:15:42: this is a dep SP claim -- please
mark up new BAS claim only
thx


Created By: Staples, Kristi-Lee
Created Date: 05/29/2018 08:15:42          Create Site: Portland

Response Fields
-----------------------------------------------------------------------
Response: Brown, Jamie 05/29/2018 14:29:33: New claim added 0105199632




Completed By: Brown, Jamie
Completed Date: 05/29/2018 14:29:33          Complete Site: Portland
```

_Claimant Name: Kathy Williams      Claim #:  14865967_

UA-CL-AD&D-000100

```
                              Letter Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Other Records and Reports Death

Status: Final

Date: 2018-05-29

Notes: ME Records and Reports Death

Signoff By:

Signoff Status:

------------- Deliveries ---------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Jackson County Medical Examiner
Relationship: Medical Service Provider      Document ID: 2018052916062815291E
Delivery Date: 05/29/2018 16:10:11
Delivery Status: Fax: Sent; Success
```

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Fax: **1-800-447-2498**
www.unum.com



May 29, 2018

JACKSON COUNTY MEDICAL EXAMINER
(816) 881-6641

RE:    Williams, Kathy
       Claim Number:                14865967
       Policy Number:               382480
       Unum Life Insurance Company of America

Dear Sir or Madam:

We are currently reviewing a claim for Group Life and Accidental Death & Dismemberment Insurance benefits for Kathy Williams.  We would appreciate your help in providing additional information.

**What We Need From You**

Kathy Williams died on April 27, 2018 as a result of possible Intracranial Hemorrage in Independence MO.

Please provide us with the following information from the medical examiner's file.  This request for information is being made pursuant to the Freedom of Information Act (5 U.S.C. sec. 551 et.seq.) and any state law that has adopted the provision of this act in whole or in part.

- Autopsy report
- Toxicology report
- Investigative reports
- Inventory of medications and/or drug paraphernalia found at the scene

If there is a fee for providing these records, please attach a statement including to whom the check should be made payable, as well as the tax ID number.  We will promptly reimburse any reasonable and customary fees upon request.

Please respond by June 29, 2018 as consideration of benefits depends on your reply.  If possible, fax this information to 1-800-447-2498.  Privacy is important to everyone, so please be sure you are faxing your response to 1-800-447-2498 to eliminate the potential for any misdirected information.

Thank you for taking the time to provide this information.  If you have any questions about this request, please contact me at 1-800-445-0402, extension 51450.

UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.
1242-03

02875006695296401

```
   Claimant Name: Kathy  Williams     Claim #:  14865967
```

Sincerely,

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D


UA-CL-AD&D-000103

Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call            Name: Phone Call Details
Status: Completed
Original Notify Date: 05/29/2018
Notify Date: 05/29/2018
Due Date:
Subject: TPC to ME
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Young, Wayne
Action:

Request Fields
--------------------------------------------------------------------------------
Request: Staples, Kristi-Lee 05/29/2018 08:10:52: Insured died in Jackson county MO
due to injuries sustained from a fall
please contact ME & obtain any and all reports
little info is known at this time (i.e. location of death, location of injury etc.)
thx!

Created By: Staples, Kristi-Lee
Created Date: 05/29/2018 08:10:52        Create Site: Portland

Response Fields
--------------------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Medical Provider
Reason for Call: Specific Question
Call Outcome: Contact Successful
Comments: Young, Wayne 05/29/2018 16:07:59: Call Placed on 5/29/18 04:06 PM
Placed Call To:  Jackson County Medical Examiner
Number Dialed: (816) 881-6600
Call Outcome: Live Answer
Spoke With: Kelly

Notes: …0…

DOD 4/27/18

ME & obtain any and all reports = She advised we would need to send our request to
fax # 816 881 6641, Updated contacts faxed request to ME and set 30 day flup




Completed By: Young, Wayne
Completed Date: 05/29/2018 16:07:59        Complete Site: Portland




_Claimant Name: Kathy  Williams    Claim #:  14865967_

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Phone Call        Name: Phone Call Details
Status: Completed
Original Notify Date: 05/30/2018
Notify Date: 05/30/2018
Due Date:
Subject: TPC to EE
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
--------------------------------------------------------------------
Request: Staples, Kristi-Lee 05/30/2018 13:18:27: TPC to EE

Created By: Staples, Kristi-Lee
Created Date: 05/30/2018 13:18:27        Create Site: Portland

Response Fields
--------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Claimant (Employee, Insured)
Reason for Call: Claim Status Update
Call Outcome: Contact Successful
Comments: Staples, Kristi-Lee 05/30/2018 13:18:27: 05/30/18 1250p
816-456-1247

Spoke w/ Gary
Reviewing claim for Kathy
Expressed condolences
Claim rec'd & under review
No addtl info needed from him at this time
Confirmed address
Adv due need ME/tox report
Provided 800#
Adv will send letter today w. contact info
Adv to call w/ questions
Mutual thanks & ended call
kls


Completed By: Staples, Kristi-Lee
Completed Date: 05/30/2018 13:18:27        Complete Site: Portland

---

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Document Detail
--------------------------------------------------------------------------------
**Checked/Unchecked Indicator:** No

**Document ID:** 2018053013205342FF98

**Entry Date:** 05/30/2018 13:20:54

**Received Date:** 05/30/2018

**Date Added to Claim:** 05/30/2018

**Primary Doc Type:** Documentation

**Secondary Doc Type:** Administrative

**Medical Provider:**

**Document Notes:** ca ws initial letter

**Work Notes:**

---

UA-CL-AD&D-000106

# CLAIMS ASSISTANT INITIAL (5-10 DAY) STATUS LETTER WORKSHEET

Deceased's Name: **KATHY WILLIAMS**    Insuring Entity: **Unum-America**
☐ 2-Claims Other Claim/Policy #

☐ Life    ☒ ADD    ☐ Life & ADD

CC:
☐ EMAIL:    ☐ PASSWORD:    ☐ ENCRYPT    ☐ TLS
☒ Fax: **Amy Hughes**

☒ Dependent    ☐ SU Dependent    ☐ Accelerated-EE    ☐ Accelerated-DEP

| Name of Recipient | Deceased is the Recipient's... | Payment Type | Respond Date (POF, CA RAA) |
|---|---|---|---|
| Gary Williams | wife | **CXC STD Non CA** | |
| | | **Must Select One Option** | |
| | | **Must Select One Option** | |
| | | **Must Select One Option** | |
| | | **Must Select One Option** | |

**Special Instructions:** pending ME/tox report

☐ Include Return Envelope Columbia (18506)
☐ FedEx - Recipient Phone #
☐ Certified Mail – Scan tracking receipt into claim

☐ UDB Date of Death
☐ UDB Escheat State         ☐ You or ☐ Bene recover funds from State

☐ Enhancements    ☐ Repatriation - Mileage
☐ Child Care    ☐ Thru or    ☐ Up to Age 13    ☐ Education Age

☐ TX Child Support Lien         ☐ CA Situs/Resident Word-ADD Only – Attach Form Image

☐ Respond by Text – Respond by Date
LBS Extension #    ☐ Spanish Intro Paragraph
☒ Customize Bene Gary    Call Date 5/30/2018    ☒ Talk    ☐ Attempt Call

☐ **Additional Information Needed**    ☒ **No Additional Information Needed**

☐ CDC    ☐ Amend CDC
☐ CDC w/ Cause/Manner    ☐ Amend CDC w/ Cause/Manner

☐ FOP-No Bene on File: Need Employer Name

☐ FOP-Predeceased Bene: Original Bene Name(s)
Deceased Relationship to Orig Bene

☐ FOP-Postdeceased Bene: Original Bene Name(s)
Deceased Relationship to Orig Bene
Include This Name on the FOP Form

☐ Affidavit Trustee: Name of Trust
☐ Affidavit Relationship: Date of Death         County         State

☐ Medical Treatment Form: Dates         to

☐ Death Outside the US Questionnaire

☐ Auth Bene/EE Signature    ☐ Auth Non-Related Bene    ☐ Auth Minor Bene
☐ Special Auth

☐ UTMA   ☐ Non CXC-NY   ☐ All Others   State Regulated $          Respond by Date
The UTMA Form: $          State

☐ APS Form
☐ Dismemberment EE Statement
☐ Beneficiary Designation
☐ Current Plan Year Enroll Form
☐ Current Enroll & Any Other Form

**Other Requests:**

☐ DeKalb 5 Day Status Letter
☐ DeKalb SIB Questionnaire Form CU-5681
☐ New Mexico Protected Person Initial Notification Letter to:          **(Select Choice)**
*Must Enclose*: PDF New Mexico Domestic Abuse Selection Form (1102-02)

☐ Non-Resident Alien   IRS Form Request Letter          ; Respond by Date
*Enclose*: Sub W-8BEN, W-9 (Non-Resident Alien); Operations Tax Envelope (ST-1077)

**Accelerated Disclosure:**

☐ NY Disclosure Statement Wording (Use All Other States Disclosure)
Life Expectancy Per Policy          Months or Less
Payable Amount ☐ Is or ☐ Is Up to the Lesser of          % or Max Benefit Amount $
Life Amt $          Accelerated Amt $          Remaining Amt $
☐ Work/Life Balance (Earphone)

```
                                    Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Auto-generated          Name: Service Standard 5 Day
Status: Cancelled
Original Notify Date: 05/27/2018
Notify Date: 05/30/2018
Due Date:
Subject: Five day Reminder
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
------------------------------------------------------------------------
Request: Hansom, Ryan 05/22/2018 13:06:24: 5 days have elapsed since claim receipt.

Created By: Hansom, Ryan
Created Date: 05/22/2018 13:06:24      Create Site: Portland

Response Fields
------------------------------------------------------------------------



Completed By: Staples, Kristi-Lee
Completed Date: 05/30/2018 13:21:19      Complete Site: Portland
```

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Initial Status (Life and AD and D)

Status: Final

Date: 2018-05-30

Notes: Initial Status (Life and AD and D)

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To       Addressee Name: Williams, Gary
Relationship: Family - Other       Document ID: 2018053013400194290E
Delivery Date: 05/30/2018 15:13:02
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: CC       Addressee Name: Hughes, Amy
Relationship: Employer       Document ID:
Delivery Date: 05/30/2018 13:43:56
Delivery Status: Fax: Sent; Success

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Fax: **1-800-447-2498**
www.unum.com



May 30, 2018

GARY WILLIAMS
18216 E 51ST ST CT S
INDEPENDENCE, MO 64055

RE:     Williams, Kathy
        Claim Number:              14865967
        Policy Number:             382480
        Unum Life Insurance Company of America

Dear Mr. Williams:

Please accept our sincere condolences on the loss of your wife, Kathy Williams.  During this difficult time, we are committed to providing you with responsive, compassionate service.

Thank you for taking the time to speak with me on May 30, 2018 about the Group Accidental Death & Dismemberment claim.  If you have any questions about this information, please do not hesitate to contact us at the number listed at the end of this letter.

**Current Status**

At this time we are beginning our evaluation of the claim.  We have requested a Medical Examiner report and toxicology report and are waiting for a response.  As our review continues, we will keep you informed about the status.

**What to Expect Next**

If the claim is approved:
- The benefit will be paid by check if it is less than $10,000.
- The benefit will be paid through a Unum Retained Asset Account if it is $10,000 or more.

**The Unum Retained Asset Account**

By placing the funds in a Unum Retained Asset Account the beneficiary will have the time needed to decide how to best manage the insurance proceeds so as not to put his/her investment decisions at risk.  Here's how it works:

- If the claim is approved, a personalized book of bank drafts and an opening account statement will be sent to the beneficiary.  These items will be delivered by the United Parcel Service using the street, city and state on file with the claim.  A signature will be required

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000111

upon delivery. If the address on file is a P.O. Box rather than a street address, the benefit will be paid via check.

- He/She will have unlimited access to the balance in the account.
- The entire account balance can be accessed by the use of one draft.
- Drafts can be written for a minimum of $250 up to the full account balance at any time. There is no limit on the number of withdrawals that can be made from the account.
- No charges will be made to the Unum Retained Asset Account for writing drafts or ordering a new supply of drafts.
- The following charges will be made to the Unum Retained Asset Account for any request for:
  - A copy of a draft or statement ($5);
  - A stop payment of a draft ($15);
  - A draft returned as unpaid, requests for additional statements, and requests for additional copies of IRS Form 1099-INT ($10); and
  - Draft book rush orders ($25).
- A quarterly statement is provided, detailing the account balance, interest rate, accrued interest and account transactions for the statement period.
- Funds in the Unum Retained Asset Account are fully guaranteed by Unum Group. The funds are not protected by the FDIC, but are protected by state Guaranty Associations. To learn more about the protections provided by these associations, the beneficiary may contact the National Organization of Life and Health Insurance Guaranty Associations at nolhga.com or 703-481-5206.
- The beneficiary may leave the money in the Unum Retained Asset Account for as long as he/she wishes. If there is no account activity or any contact with the beneficiary for two years, we will attempt to contact him/her. If we are unable to contact the beneficiary, we could be required to surrender the account balance to the state of his/her last known residence.

Unum will retain the funds and invest them in its general account for as long as they remain in the Unum Retained Asset Account. Unum guarantees the account balance and will pay a competitive interest rate regardless of the investment performance of Unum's general account. Unum may derive income from the total gains received on the investment of the balance of the funds in the retained asset account.

The current interest rate set by Unum is 0.25%. The interest rate is determined by monitoring rates of interest offered on similar types of accounts (i.e. checking, savings and money market accounts). Any changes to the interest rate will be disclosed via a quarterly account statement.

The interest earned on the Unum Retained Asset Account may be taxable. The beneficiary should consult a tax advisor, an investment advisor, or another financial advisor with any questions. For further information, the beneficiary should contact his/her state insurance department.

If you do not want the benefit paid through a Unum Retained Asset Account, please notify us by calling 1-800-445-0402.

**How to Contact Us**

If you have questions about this claim or this process, please call our Contact Center at 1-800-445-0402, 8 a.m. to 8 p.m. Eastern time, Monday through Friday. Any of our representatives

*Claimant Name: Kathy Williams     Claim #: 14865967*

have access to the claim documentation and will be able to assist you.  We will identify the claim by your wife's Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D

CC:            Amy Hughes/Bluescope Steel (without enclosures)

```
                                    Activity
-------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Claims Assistant - Life/AD&D          Name: Written correspondence
Status: Completed
Original Notify Date: 05/30/2018
Notify Date: 05/30/2018
Due Date:
Subject: initial letter
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Whitehead, Clay
Action:

Request Fields
-----------------------------------------------------------------------
Request: Staples, Kristi-Lee 05/30/2018 13:21:10: see attached
thx

Created By: Staples, Kristi-Lee
Created Date: 05/30/2018 13:21:10          Create Site: Portland

Response Fields
-----------------------------------------------------------------------
Response: Whitehead, Clay 05/30/2018 13:40:08: Done



Completed By: Whitehead, Clay
Completed Date: 05/30/2018 13:40:08          Complete Site: Chattanooga


Linked Document ID: (Primary Doc Type - Secondary Doc Type)
-----------------------------------------------------------------------
2018053013205342FF98: Documentation - Administrative
```

```
                              Letter Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Life Planning

Status: Final

Date: 2018-05-31

Notes: Life Planning

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Williams, Gary
Relationship: Family - Other      Document ID: 2018053111375033247E
Delivery Date: 05/31/2018 12:23:29
Delivery Status: Mail: Sent from Central Print
```

UA-CL-AD&D-000115

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Fax: 1-800-447-2498
www.unum.com



May 31, 2018

GARY WILLIAMS
18216 E 51ST ST CT S
INDEPENDENCE, MO 64055

RE:     Williams, Kathy
        Claim Number:              14865967
        Policy Number:             382480
        Unum Life Insurance Company of America

Dear Mr. Williams:

Please accept our sincere condolences on the loss of Kathy Williams.  During this difficult time,
we are committed to providing you with responsive, compassionate service.

**Information About an Additional Benefit Available to You**

As an additional service under the Group Life Insurance policy, we offer free financial and legal
counseling services through a program called Life Planning.  This program is provided by
LifeWorks.

During this difficult time, you may face the need to make important, complex and time sensitive
financial decisions.  The LifeWorks Life Planning program provides caring professionals who
can offer confidential support and practical solutions to assist you in making those decisions.
The enclosed brochure provides information about the Life Planning program and the support
LifeWorks can offer.

We have asked one of the Life Planning counselors to contact you.  Their counselors are highly
trained and can answer questions or offer impartial advice about your financial and legal
planning at no cost to you.

**How to Contact Us**

Mr. Williams, if you have questions about your claim or this process, please call our Contact
Center at 1-800-445-0402, 8 a.m. to 8 p.m., Monday through Friday Eastern Time.  Any of our
representatives have access to the claim documentation and will be able to assist you.  We will
identify the claim by Kathy Williams's Social Security number or claim number, so please have
one of these numbers available when you call.

Sincerely,

Claimant Name: Kathy  Williams      Claim #:   14865967

UA-CL-AD&D-000116

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D

Enclosures:    Financial Counseling brochure (EN-1963)

```
                                        Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Claims Assistant - Life/AD&D          Name: Written correspondence
Status: Completed
Original Notify Date: 05/30/2018
Notify Date: 05/30/2018
Due Date:
Subject: life planning
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Morrison, Nicole J
Action:

Request Fields
------------------------------------------------------------------------
Request: Staples, Kristi-Lee 05/30/2018 13:21:35: Gary Williams - sp - std

Created By: Staples, Kristi-Lee
Created Date: 05/30/2018 13:21:35        Create Site: Portland

Response Fields
------------------------------------------------------------------------
Response: Morrison, Nicole J 05/31/2018 11:44:14: done


Completed By: Morrison, Nicole J
Completed Date: 05/31/2018 11:44:14         Complete Site: Portland
```

*Claimant Name: Kathy Williams    Claim #:  14865967*

Document Detail
--------------------------------------------------------------------------------
**Checked/Unchecked Indicator: No**

**Document ID: 2018062707375339FF98**

**Entry Date: 06/27/2018 07:37:54**

**Received Date: 06/27/2018**

**Date Added to Claim: 06/27/2018**

**Primary Doc Type: Documentation**

**Secondary Doc Type: Actions**

**Medical Provider:**

**Document Notes: ca ws 30 day**

**Work Notes:**

UA-CL-AD&D-000119

**CLAIMS ASSISTANT STATUS (30 DAY) LETTER WORKSHEET**

Deceased's Name: **KATHY WILLIAMS**  Insuring Entity: **Unum-America**
☐ 2-Claims Other Claim/Policy #

☐ Life  ☒ ADD  ☐ Life & ADD

CC:  ☐ Email:  ☐ Password:  ☐ Encrypt  ☐ TLS
☒ Fax: **Amy Hughes**

☒ Dependent  ☐ SU Dependent  ☐ Accelerated-EE  ☐ Accelerated-DEP

| Name of Recipient | Deceased is the Recipient's... |
|---|---|
| Gary Williams | wife |
|  |  |
|  |  |
|  |  |

**Special Instructions:**
☐ Include Return Envelope Columbia (18506)
☐ FedEx - Recipient Phone #
☐ Certified Mail - Scan tracking receipt into claim
☐ UDB Date of Death
☐ UDB Escheat State  ☐ You or ☐ Bene recover funds from State
☐ Respond by Text-Date
☐ LBS Extension #  ☐ Spanish Intro Paragraph

**Other Letters:**
☐ ER Status Letters to PH
☐ UDB Life Intake Flup (Claim/Bene Forms)-Send Claim Form-Prev Date

**Letter Options-Must Select an Option for Both Condolence & Status:**
☐ Full Condolence  ☒ 2nd Condolence  ☐ Service Commitment
☐ Explain Status  ☐ Additional Info is Needed
☐ Explain Status-UDB Potential Claim  ☐ Additional Info is Needed-UDB Potential Claim

**Letter Options:**
☒ Waiting for items from third party and *no* action required by beneficiary
☐ Waiting for items from third party and action required by beneficiary
**If waiting for items from third party/bene, must list here if not listed below: pending ME & tox reports**
☐ Reviewing Claim
☐ CA Situs/Residence Wording-ADD Only-Attach Form Image

**What is Needed from Recipient of Letter:**
☐ First Request  ☐ Second Request: Previous Request Date
☐ CDC  ☐ Amend CDC
☐ CDC with Cause/Manner  ☐ Amend CDC with Cause/Manner
☐ FOP-No Bene on File:  Need Employer Name
☐ FOP-Predeceased Bene:  Need Original Bene Name(s)

*Claimant Name: Kathy  Williams      Claim #:  14865967*

| Deceased Relationship to Original Bene |
| --- |
| ☐ FOP-Post Deceased Bene:  Need Original Bene Name(s)<br>Deceased Relationship to Orig Bene<br>Include This Name on the FOP Form |
| ☐ Affidavit Trustee:  Need Name of Trust<br>☐ Affidavit Relationship:  Date of Death          County          State |
| ☐ Medical Treatment Form:  Dates          to |
| ☐ Death Outside the US Questionnaire |
| ☐ Auth Bene/EE Signature   ☐ Auth Non-Related Bene   ☐ Auth Minor Bene<br>☐ Special Auth |
| ☐ APS Form<br>☐ Dismemberment EE Statement |
| ☐ Beneficiary Designation<br>☐ Current Plan Year Enroll Form<br>☐ Current Enroll & Any Other Form |

| Other Requests: |
| --- |
| ☐ DeKalb 30 Day Status Letter<br>☐ DeKalb SIB Questionnaire Form CU-5681 |

```
                          Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: 30-Day Status (Life and AD and D)

Status: Final

Date: 2018-06-27

Notes: 30-Day Status (Life and AD and D)

Signoff By:

Signoff Status:

------------ Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To       Addressee Name: Williams, Gary
Relationship: Family - Other      Document ID: 2018062708490037290E
Delivery Date: 06/27/2018 10:25:34
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: CC       Addressee Name: Hughes, Amy
Relationship: Employer       Document ID:
Delivery Date: 06/27/2018 08:52:02
Delivery Status: Fax: Sent; Success
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Fax: 1-800-447-2498
www.unum.com



June 27, 2018

GARY WILLIAMS
18216 E 51ST ST CT S
INDEPENDENCE, MO 64055

RE:     Williams, Kathy
        Claim Number:              14865967
        Policy Number:             382480
        Unum Life Insurance Company of America

Dear Mr. Williams:

Please, once again, accept our sincere condolences on the loss of your wife, Kathy Williams. During this difficult time, we are committed to providing you with responsive, compassionate service.

Additional information is needed to continue our evaluation of the claim for Accidental Death & Dismemberment benefits.  If you have any questions about this request for additional information, please do not hesitate to contact us at the number listed at the end of this letter.

**Information We Requested from Others**

We have requested and are waiting for the following information that is needed to complete our evaluation of the claim.

- Pending Medical Examiner and Toxicology Reports

You do not need to do anything at this time.  We will continue to keep you informed about the status of the claim.

**How to Contact Us**

If you have questions about this claim or this process, please call our Contact Center at 1-800-445-0402, 8 a.m. to 8 p.m. Eastern time, Monday through Friday.  Any of our representatives have access to the claim documentation and will be able to assist you.  We will identify the claim by your wife's Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

1242-03     UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy  Williams      Claim #:   14865967

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D

CC:            Amy Hughes/Bluescope Steel (without enclosures)

UA-CL-AD&D-000124

```
                                    Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Claims Assistant - Life/AD&D          Name: Written correspondence
Status: Completed
Original Notify Date: 06/27/2018
Notify Date: 06/27/2018
Due Date:
Subject: 30 day
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Young, Wayne
Action:

Request Fields
------------------------------------------------------------------------
Request: Staples, Kristi-Lee 06/27/2018 07:38:03: see attached
thx

Created By: Staples, Kristi-Lee
Created Date: 06/27/2018 07:38:03      Create Site: Portland

Response Fields
------------------------------------------------------------------------
Response: Young, Wayne 06/27/2018 08:49:02: done


Completed By: Young, Wayne
Completed Date: 06/27/2018 08:49:02      Complete Site: Portland


Linked Document ID: (Primary Doc Type - Secondary Doc Type)
------------------------------------------------------------------------
2018062707375339FF98: Documentation - Actions
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000125

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 06/29/2018
Notify Date: 06/29/2018
Due Date:
Subject: TPC to ME
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Whitehead, Clay
Action:

Request Fields
------------------------------------------------------------------------
Request: Young, Wayne 05/29/2018 16:07:54:
sent request to ME on 05/29...response rec'd?
Placed Call To:  Jackson County Medical Examiner
Number Dialed: (816) 881-6600
DOD 4/27/18


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - ---------------

Staples, Kristi-Lee,05/29/2018 08:10:52 AM:
Insured died in Jackson county MO due to injuries sustained from a fall
please contact ME & obtain any and all reports
little info is known at this time (i.e. location of death, location of injury etc.)
thx!



Created By: Young, Wayne
Created Date: 05/29/2018 16:07:54        Create Site: Portland

Response Fields
------------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Medical Provider
Reason for Call: Requested Information
Call Outcome: Contact Successful
Comments: Whitehead, Clay 06/29/2018 14:44:41: Call Placed on 6/29/18 02:43 PM
Placed Call To:  Jackson County ME
Number Dialed: (816) 881-6600
Call Outcome: Live Answer
Spoke With: Georgann

Notes: Georgann stated they have our request and will be sending us out an invoice
early next week.
Flup ME report - invoice expected
Daniel Whitehead - Ext. 43310




Completed By: Whitehead, Clay
Completed Date: 06/29/2018 14:44:41        Complete Site: Chattanooga

--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 07/04/2018
Notify Date: 07/04/2018
Due Date:
Subject: ATTN CCC TPC to ME #2
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Whitehead, Clay
Action:

Request Fields
------------------------------------------------------------------------
Request: Whitehead, Clay 06/29/2018 14:44:37:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - ---------------

Young, Wayne,05/29/2018 04:07:54 PM:

sent request to ME on 05/29...response rec'd?
Placed Call To:  Jackson County Medical Examiner
Number Dialed: (816) 881-6600
DOD 4/27/18

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - ---------------

Staples, Kristi-Lee,05/29/2018 08:10:52 AM:
Insured died in Jackson county MO due to injuries sustained from a fall
please contact ME & obtain any and all reports
little info is known at this time (i.e. location of death, location of injury etc.)
thx!




Created By: Whitehead, Clay
Created Date: 06/29/2018 14:44:37          Create Site: Chattanooga

Response Fields
------------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Medical Provider
Reason for Call: Requested Information
Call Outcome: Contact Successful
Comments: Whitehead, Clay 06/29/2018 14:44:37: Call Placed on 6/29/18 02:43 PM
Placed Call To:  Jackson County ME
Number Dialed: (816) 881-6600
Call Outcome: Live Answer
Spoke With: Georgann

Notes: Georgann stated they have our request and will be sending us out an invoice
early next week.
Flup ME report - invoice expected
Daniel Whitehead - Ext. 43310

--------------------------------------------------------------------------------

*Claimant Name: Kathy  Williams     Claim #:  14865967*

```
          ---------------------------------------------------------
              Whitehead, Clay 07/05/2018 15:29:53: Call Placed on 7/5/18 03:29 PM
Placed Call To:   Jackson County ME
Number Dialed: (816) 881-6600
Call Outcome: Live Answer
Spoke With: Angie

Notes: Angie stated the case is still pending as they require the PD to sign off on
releasing the reports.
ME report - pending
Daniel Whitehead - Ext. 43310




Completed By: Whitehead, Clay
Completed Date: 07/05/2018 15:29:53        Complete Site: Chattanooga
```

```
                          Document Detail
-------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018070614441066291E

Entry Date: 07/06/2018 14:44:12

Received Date: 07/06/2018

Date Added to Claim: 07/09/2018

Primary Doc Type: Communication

Secondary Doc Type: Information Received

Medical Provider:

Document Notes: invoice

Work Notes:
```

UA-CL-AD&D-000129



# FAX TRANSMISSION

## *OFFICE OF THE JACKSON COUNTY MEDICAL EXAMINER*

950 East 21st Street
Kansas City, Missouri 64108
VOICE: (816) 881-6600
FAX: (816) 881-6641

*~Diane Peterson, M.D.*
Chief Medical Examiner
*~Robert Pietak, M.D.*
Deputy Medical Examiner
*~Marius Tarau, M.D.*
Deputy Medical Examiner
*~Lindsey Haldiman, D.O.*
Deputy Medical Examiner

**FROM THE DESK OF:**　*Georgianne Bear*

**SENDER'S CONTACT NUMBER:**　*(816) 881-6600*

**DATE: 07-06-18**

**RECIPIENT:**　Kristi-Lee Staples w/Unum Group Life

**RECIPIENT'S FAX NUMBER:  800-447-2498**

**COMMENTS / INSTRUCTIONS:**

**Re: Kathy R. Williams, see the attached invoice.**

**TOTAL PAGES INCLUDING THE COVER SHEET:  2**

| Please contact our office at 816-881-6600 if you have any questions regarding this fax. |
| --- |

*Claimant Name: Kathy　Williams　　Claim #:　14865967*

UA-CL-AD&D-000130



### *Jackson County Medical Examiner's Office*

950 East 21st Street
Kansas City, MO 64108
816-881-6600
816-881-6641 fax

July 6, 2018

SENT VIA FACSIMILE TO  800-447-2498

Unum Group Life
Attn:  Kristi-Lee Staples
PO Box 100158
Columbia, SC  29202-3158

Re:  Kathy R. Williams
Date of Death:  04-27-18
JCMEO #18-3200

Ms. Staples:

I have copied 11 pages of documents for you.  There is a $10.00 hourly fee for preparation of the documents and a fee of $.10 per page.  The total amount payable to the Jackson County Manager of Finance is $11.10.

If you have any questions you can call me at 816-881-6602 between the hours of 8:30 am and 4:30 pm, Monday through Friday.

Sincerely,

Georgianne Dear
Administrative Assistant

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

```
                                Activity
-------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Claims Assistant - Life/AD&D        Name: Administrative
Status: Completed
Original Notify Date: 07/09/2018
Notify Date: 07/09/2018
Due Date:
Subject: invoice
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Hodgson, Peter
Action:

Request Fields
-------------------------------------------------------------------------
Request: Staples, Kristi-Lee 07/09/2018 09:58:49: please pay the attached for
me/tox
thx


Created By: Staples, Kristi-Lee
Created Date: 07/09/2018 09:58:49        Create Site: Portland

Response Fields
-------------------------------------------------------------------------
Response: Hodgson, Peter 07/09/2018 10:59:07: Paid via FRT



Completed By: Hodgson, Peter
Completed Date: 07/09/2018 10:59:07        Complete Site: Chattanooga


Linked Document ID: (Primary Doc Type - Secondary Doc Type)
-------------------------------------------------------------------------
2018070614441066291E: Communication - Information Received
```

UA-CL-AD&D-000132

Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Financial Requests Team          Name: Walker Check Request
Status: Completed
Original Notify Date: 07/09/2018
Notify Date: 07/09/2018
Due Date:
Subject: Walker Check Request
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Lee, Victoria T
Action:

Request Fields
--------------------------------------------------------------------------------
Request: Hodgson, Peter 07/09/2018 10:58:48; Ck Amt:    $11.10    Cost Code:
8729
Payable To:    Jackson County Medical Examiner's Office     Tax Id:
Address:    950 East 21st Street Kansas City, MO 64108    Rep/Case#:    18-3200
Special Inst:    Please print linked invoice and send w/ check to ME. Thanks!
SASE Needed:         No



Created By: Hodgson, Peter
Created Date: 07/09/2018 10:58:48        Create Site: Chattanooga

Response Fields
--------------------------------------------------------------------------------
Response: Lee, Victoria T 07/09/2018 14:28:35; Processed payment ~ For questions
regarding this payment use Check Request # 35638

Printed LINKED INVOICE and sent as an attachment via Electronic Shared Documents to
Chattanooga. Attachment will be mailed with payment from Chattanooga



Completed By: Lee, Victoria T
Completed Date: 07/09/2018 14:28:35        Complete Site: Portland

Linked Document ID: (Primary Doc Type - Secondary Doc Type)
--------------------------------------------------------------------------------
2018070614441066291E: Communication - Information Received

---

_Claimant Name: Kathy  Williams     Claim #:  14865967_

UA-CL-AD&D-000133

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018071709125609D7AE

Entry Date: 07/16/2018 17:18:42

Received Date: 07/16/2018

Date Added to Claim: 07/17/2018

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider: Jackson County Medical Examiner

Document Notes: ME/tox

Work Notes:



# FAX TRANSMISSION

## *OFFICE OF THE JACKSON COUNTY MEDICAL EXAMINER*

950 East 21st Street
Kansas City, Missouri 64108
VOICE: (816) 881-6600                    *~Diane Peterson, M.D.*
FAX: (816) 881-6641                          Chief Medical Examiner
                                         *~Robert Pietak, M.D.*
                                             Deputy Medical Examiner
                                         *~Marius Tarau, M.D.*
                                             Deputy Medical Examiner
                                         *~Lindsey Haldiman, D.O.*
                                             Deputy Medical Examiner

**FROM THE DESK OF:**   *Georgianne Bear*

**SENDER'S CONTACT NUMBER:**   *(816) 881-6600*

**DATE: 07-16-18**

**RECIPIENT:   Kristi-Lee Staples w/Unum Group Life**

**RECIPIENT'S FAX NUMBER:   800-447-2498**

**COMMENTS / INSTRUCTIONS:**

**Per your request see the attached investigative report, investigative summary, toxicology report, and medication log sheet of Kathy R. Williams.  Your policy number is: 382480.**

**TOTAL PAGES INCLUDING THE COVER SHEET:   12**

| |
|---|
| **Please contact our office at 816-881-6600 if you have any questions regarding this fax.** |

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000135



**Jackson County Medical Examiner**
**Investigative Report**
969 E. 21st St.
Kansas City, MO 64108



(816)881-6600
FAX (816)881-6641
Dr. Diane Peterson
Chief Medical Examiner

## Investigative Report

### Call Information

| | | | |
|---|---|---|---|
| REPORT NUMBER: 18-03200 | AJ: Yes | AJ/DJ Reason: Violent | COUNTY: Jackson |
| NOTIFIED BY: Ofc. Jenne | | DATE / TIME: 04/27/2018 17:39 | |

### DECEDENT

| | | |
|---|---|---|
| NAME: Kathy Rae Williams | | AKA: |
| AGE: 60 Years | SEX: Female | RACE: White |
| DATE OF BIRTH: Redacted | | MARITAL STATUS: Married |
| RESIDENCE: 18216 E 51st St Ct S, Independence, Missouri 64055 | | |

### CONTACTS

| | |
|---|---|
| NAME: Gary Williams | RELATIONSHIP: Spouse |
| ADDRESS: 18216 E 51st St Ct S, Independence, Missouri 64055 | |
| HOME PHONE: (816) 456-1247 | WORK PHONE: | CELL PHONE: |

### DEATH

| | |
|---|---|
| ADDRESS: 18216 E 51st St Ct S, Independence, Missouri 64055 | HOSPITAL: |
| DATE AND TIME: 04/27/2018 0:00 | WHO PRONOUNCED: | PRN LOCATION: Dead on Scene |

### DEATH EVENT DATA

| | |
|---|---|
| DATE/TIME OF INJURY-ILLNESS-DISCOVERY: 04/27/2018 16:50 | PLACE OF INJURY: Residential |
| LOCATION OF INJURY-ILLNESS-DISCOVERY: 18216 E 51st St Ct S, Independence, Missouri 64055 | |
| HOW INJURY OCCURED: | |

### MEDICAL HISTORY

| | |
|---|---|
| LAST KNOWN DATE/TIME: 04/28/2018 12:00 | HOSPITAL ADMIT DATE/TIME: |
| INFORMANT: Gary Williams | INFORMANT ADDRESS: , , |
| INFORMANT PHONE: | RELATIONSHIP: Spouse |
| | PREGNANT IN LAST 90 Days: No |

### PAST MEDICAL HISTORY

| Illness | Site |
|---|---|
| Vertigo | |
| EtOH Abuse | |

| |
|---|
| MEDICAL HISTORY NOTES: |
| SURGERY HISTORY NOTES: |
| SOCIAL AND DRUG HISTORY NOTES: |
| PSYCHOLOGICAL HISTORY NOTES: |
| SOCIAL HISTORY NOTES: |
| FAMILY HISTORY NOTES: |

| | | |
|---|---|---|
| DEPART DATE/TIME: 04/27/2018 17:55 | ARRIVAL DATE/TIME: 04/27/2018 18:40 | SCENE TURN: 45 |
| SCENE PHOTOS: Yes | INSIDE TEMP: | OUTDOOR TEMP: |

*Claimant Name: Kathy  Williams    Claim #:  14865967*

UA-CL-AD&D-000136



**Jackson County Medical Examiner**
**Investigative Report**

(816)881-6600
FAX (816)881-6641

960 E. 21st St.
Kansas City, MO 64108

Dr. Diane Peterson
Chief Medical Examiner

| HUMIDITY: | | RIGOR: No | | LIVOR TYPE: Blanching | |
|---|---|---|---|---|---|
| INVESTIGATOR: Christina Hawkins | | | | | |
| GENERAL SCENE OBSERVATION: | | | CLOTHING EFFECTS: | | |
| TRAUMA: | | | POSITION: | | |
| DECOMPOSITION & ARTIFACTS: No | | | OTHER OBSERVATIONS: | | |

| INCIDENT | | |
|---|---|---|
| INV AGENCY ON SCENE: Independence PD | OFFICER ASSIGNED: Ofc. Jenne | |
| AGENCY PHONE: (816) 325-7300 | AGENCY FAX: | |
| INCIDENT AT WORK: No | EMPLOYER: | |
| EMPLOYER PHONE: | EMPLOYER ADDRESS: | |
| INCIDENT LOCATION: Single Family Home | INCIDENT ADDRESS: 18216 E 51st St Ct S Independence Missouri 64055 | |
| IMPLEMENT: | FIREARM TYPE: | CALIBER: |
| PROJECTILE TYPE: | AMMO BRAND: | BULLET SIZE: |
| BARREL LENGTH: | COMMENTS: | |
| SUICIDE NOTE FOUND: | SUICIDE WITNESSED: | HANDEDNESS: |
| WEAPON LOCATION | PRIOR ATTEMPTS: | |
| HISTORY OF MENTAL DISEASE: | | |
| DRUG PARAPHERNALIA FOUND: No | PARAPHERNALIA DESCRIPTION: | |

| MVA | | |
|---|---|---|
| MVA CLASSIFICATION: | WEAR SEATBELT: | WEAR HELMET: |
| AIRBAG DEPLOYED: | DECEDENT EJECTED: | SEAT POSITION: |
| | ROAD CONDITION: | VEHICLE TYPE: |
| MAKER: | MODEL: | YEAR: 0 |
| INFORMATION ON SECOND VEHICLE: | VEHICLE TYPE: | |
| MAKER: | MODEL: | YEAR: 0 |

| AUTOPSY | | |
|---|---|---|
| EXAM DATE/TIME: Apr 28 2018 12:00AM | STAFF PATHOLOGIST: Dr. B. Robert Pietak | EXAM TYPE: Investigator Exam |
| IMMEDIATE CAUSE: Intracranial hemorrhage | | |
| DUE TO: | | |
| DUE TO: | | |
| DUE TO: | | |
| OTHER SIG CONDITIONS: | | |
| MANNER: Accident | | INJURY @ WORK: No |
| OTHER PROCEDURES AND PENDING: Other Procedure: Toxicology, Other Procedure: FTA Card, Other Procedure: Fingerprints | | |
| INCIDENT PLACE: Single Family Home | INCIDENT ADDRESS: 18216 E 51st St Ct S, Independence, Missouri 64055 | TIME OF DEATH: |

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000137

07/16/2018 MON 16:09 FAX 8168816641    Ø004/012



**Jackson County Medical Examiner**
**Investigative Report**

960 E. 21st St.
Kansas City, MO 64108

(816)881-6600
FAX (816)881-6641
Dr. Diane Peterson
Chief Medical Examiner

NARRATIVE: This is an AJ case- Sudden

On 04/27/2018 at 1739, I received a call from IPD in reference to the death of Kathy Williams, a 60-year-old white female. The subject had a medical history of vertigo and EtOH abuse. The subject was under the care of Dr. Dean Mundhenke with Blue River Medical Group. Medication found on scene included sertraline and gabapentin. The medication was photographed and collected by JCMEO.

On 04/27/2018 around 1650 the subject was found unresponsive by her spouse. The spouse last spoke to the subject on the phone around 1200. The spouse stated the subject has been drinking heavily the past year. The spouse tried to call the subject around 1500 but received no answer. When the spouse got off work he headed home to check on the subject. The residence was secure and the spouse found the subject at the bottom of the stairs. 911 was called. IPD and AMR EMS responded to the scene. EMS initiated the following interventions: ET tube, IO, IV lines and defib pads. EMS never regained any rhythmic activity and confirmed death on scene. IPD contacted JCMEO for further investigation.

On scene, I observed the subject lying supine on the basement floor. The subject was found in a prone position but moved for ACLS. The subject was clad in blue pajama pants, underwear, yellow plaid button up shirt and bra. The subject was warm to the touch. Rigor was absent. Lividity was posterior, purple and blanching. The subject's eyes were closed and corneas clear. Both eyes were congested. I observed a hole in the wall of the staircase. It appeared the subject was holding a glass as she was walking down the stairs. There was broken glass around the subject and broken glass located in the right hand. I observed multiple lacerations to the right hand and face. Blood was noted from the mouth and nose. The subject was placed in a white body bag with tag number 085417 and transported to JCMEO for further evaluation.

| MEDICAL INVESTIGATOR: Christina Hawkins | APPROVED BY: |
|---|---|
| (SIGNATURE) | (SIGNATURE) |

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000138



## OFFICE OF THE
## JACKSON COUNTY MEDICAL EXAMINER

960 E. 21st St.
Kansas City, MO 64108



(816)881-6600
FAX (816)881-6641
Dr. Diane Peterson
Chief Medical Examiner

### *Investigative Summary*

The information on this page reflects information by the Medical Examiner's Investigator who
responded to the initial report of death to the Medical Examiner.

| | |
|---|---|
| CASE NUMBER................ | 18-03200 |
| LAST NAME..................... | Williams |
| FIRST NAME.................... | Kathy |
| MIDDLE NAME................. | Rae |
| AGE.............................. | 60 years |
| RACE............................. | White |
| SEX.............................. | Female |
| DATE OF BIRTH............... | Redacted |
| HOME ADDRESS.............. | 18216 E 51st St Ct S, Independence, Missouri, 64055 |

| | |
|---|---|
| INCIDENT ADDRESS.......... | 18216 E 51st St Ct S, Independence, Missouri, 64055 |
| DATE DEATH | 04/27/2018 |
| TIME DEATH | 17:39:00 PM |
| POLICE JURISDICTION........ | Independence PD |
| POLICE CASE NUMBER...... | 2018-29429 |
| REPORTING PERSON......... | Ofc. Jenne |
| REPORTING AGENCY......... | Independence PD |
| PHONE NUMBER............... | (816) 325-7300 |
| COUNTY OF DEATH.......... | Jackson |
| DECEDENT STATUS.......... | Married |

| | |
|---|---|
| DISPOSITION OF BODY..... | To Morgue for Exam |
| SCENE INVESTIGATION?... | Yes |

NARRATIVE DESCRIPTION:

MTD: 5/2/2018 12:52:10 PM

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000139



**OFFICE OF THE**
**JACKSON COUNTY MEDICAL EXAMINER**

(816)881-6600
FAX (816)881-6641

980 E. 21st St.
Kansas City, MO 64108

Dr. Diane Peterson
Chief Medical Examiner

**This is an AJ case- Sudden**

On 04/27/2018 at 1739, I received a call from IPD in reference to the death of Kathy Williams, a 60-year-old white female. The subject had a medical history of vertigo and EtOH abuse. The subject was under the care of Dr. Dean Mundhenke with Blue River Medical Group. Medication found on scene included sertraline and gabapentin. The medication was photographed and collected by JCMEO.

On 04/27/2018 around 1650 the subject was found unresponsive by her spouse. The spouse last spoke to the subject on the phone around 1200. The spouse stated the subject has been drinking heavily the past year. The spouse tried to call the subject around 1500 but received no answer. When the spouse got off work he headed home to check on the subject. The residence was secure and the spouse found the subject at the bottom of the stairs. 911 was called. IPD and AMR EMS responded to the scene. EMS initiated the following interventions: ET tube, IO, IV lines and defib pads. EMS never regained any rhythmic activity and confirmed death on scene. IPD contacted JCMEO for further investigation.

On scene, I observed the subject lying supine on the basement floor. The subject was found in a prone position but moved for ACLS. The subject was clad in blue pajama pants, underwear, yellow plaid button up shirt and bra. The subject was warm to the touch. Rigor was absent. Lividity was posterior, purple and blanching. The subject's eyes were closed and corneas clear. Both eyes were congested. I observed a hole in the wall of the staircase. It appeared the subject was holding a glass as she was walking down the stairs. There was broken glass around the subject and broken glass located in the right hand. I observed multiple lacerations to the right hand and face. Blood was noted from the mouth and nose. The subject was placed in a white body bag with tag number 086417 and transported to JCMEO for further evaluation.

CASE NUMBER.................. **18-03200**
LAST NAME....................... **Williams**
FIRST NAME...................... **Kathy**

THE INFORMATION ON THIS PAGE REFLECTS INFORMATION OBTAINED BY THE MEDICAL EXAMINER'S INVESTAGTOR WHEN THE DEATH WAS INITIALLY REPORTED TO THE JACKSON COUNTY MEDICAL EXAMINER.

MEDICAL EXAMINER'S INVESTIGATOR:

MTD: 5/2/2018 12:52:10 PM

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000140

07/16/2018 MON 16:10  FAX 8168816641                                          ☒007/012



**OFFICE OF THE**
**JACKSON COUNTY MEDICAL EXAMINER**                        (816)881-6600
                                                          FAX (816)881-6641
360 E. 21st St.                                           Dr. Diane Peterson
Kansas City, MO 64108                                     Chief Medical Examiner

Past Medical History:

History is unknown

*Claimant Name: Kathy Williams      Claim #:  14865967*

UA-CL-AD&D-000141



**Children's Mercy**

Children's Mercy Hospital
Department of Pathology and Laboratory Medicine
2401 Gillham Road
Kansas City, MO 64108
Phone: (816) 234-3836 Fax: (816) 983-6534

| | | | | | |
|---|---|---|---|---|---|
| Patient Name: | Williams, Kathy | | Acct: | 433911500 | |
| Location: | Lab Client | | MRN: | 01914662 | |
| Attending Provider: | Pletak,MD,Boguslaw R | | DOB / Sex | Redacted | / Female |
| Client | Jackson County Medical Examiner | | Outreach ID: | 1803200 | |

## Drug Screens/Toxicology

| | Collection Date | 4/28/2018 | | | |
|---|---|---|---|---|---|
| | Collection Time | 10:50 CDT | | | |
| Procedure | | | Reference Range | Units | |
| Comp Autopsy Drug Screen Drug #1 | Sertraline | | | | |
| Comp Autopsy Drug Screen Drug #2 | Norsertraline | | | | |
| Comp Autopsy Drug Screen Drug #3 | Caffeine | | | | |
| Comp Autopsy Drug Screen Comment | See Below T1 | | | | |

**Textual Results**
T1:     4/28/2018 10:50 CDT (Comp Autopsy Drug Screen Comment)
       Drugs reported positive are by a screening method only. We recommend that confirmation
       should be requested on all positive drug of abuse results and other positives if indicated.

## Drug Levels & Confirmations/Toxicology

| | Collection Date | 4/28/2018 | 4/28/2018 | 4/28/2018 | | |
|---|---|---|---|---|---|---|
| | Collection Time | 10:50 CDT | 10:50 CDT | 10:50 CDT | | |
| Procedure | | | | | Reference Range | Units |
| Methanol Vitreous | <10 | - | - | <=10 | mg/dL | |
| Ethanol Vitreous | 430 H R1 | - | - | <=10 | mg/dL | |
| Isopropanol Vitreous | <10 | - | - | <=10 | mg/dL | |
| Acetone Vitreous | <10 | - | - | <=10 | mg/dL | |
| Methanol WB | - | - | <10 | <=10 | mg/dL | |
| Ethanol WB | - | - | 337 C R2 | <=10 | mg/dL | |
| Isopropanol WB | - | - | <10 | <=10 | mg/dL | |
| Acetone WB | - | - | <10 | <=10 | mg/dL | |
| Forensic Signature | See Below T2 | - | - | | | |
| Ref Lab Misc (Toxicology) | See Below T3 | See Below T4 | - | | | |

**Textual Results**
T2:     4/28/2018 10:50 CDT (Forensic Signature)
       SUBCLAVIAN BLOOD USED FOR VOLATILE PANEL TESTING AND AUTOPSY DRUG SCREEN

       Case #: 18-03200

       Results reviewed and approved by: _CArel_  6/5/18
T3:     4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))

                        Legend:      A=Abnormal     C=Critical     L=Low     H=High

Report Request ID: 91101226                                    Print Date/Time:  6/4/2018 14:36 CDT
Printed By:        Frazee,Clinton C

                                        Page 1 of 3

---

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000142

## Drug Levels & Confirmations/Toxicology

Textual Results
T3:   4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))
***SUBCLAVIAN BLOOD SERTRALINE AND METABOLITE QUANTITATION***

SERTRALINE = 130 NG/ML                    RPT. LIMIT:  10 NG/ML
DESMETHYLSERTRALINE = 680 NG/ML           RPT. LIMIT:  20 NG/ML

REFERENCE COMMENTS (PERIPHERAL BLOOD):

1.   SERTRALINE IS A SELECTIVE SEROTONIN REUPTAKE INHIBITOR USED IN THE TREATMENT
     OF DEPRESSION.  THE INITIAL ADULT DOSAGE IS 50 MG DAILY AND CAN BE INCREASED TO
     A MAXIMUM OF 200 MG DAILY. SERTRALINE IS SUBJECT TO SIGNIFICANT FIRST PASS
     METABOLISM WITH DESMETHYLSERTRALINE AS THE PRINCIPAL METABOLITE.  OVERDOSE
     WITH SERTRALINE MAY CAUSE SLEEPINESS, NAUSEA, TACHYCARDIA, AND MYDRIASIS.
     FIFTEEN ADULTS TAKING 200 MG DAILY SERTRALINE HAD MEAN TROUGH SERUM
     CONCENTRATIONS OF 29 NG/ML (RANGE 9-82 NG/ML) SERTRALINE.  THE BLOOD TO
     PLASMA RATIO FOR SERTRALINE IS APPROXIMATELY 1.2.

     IN A REPORT OF SEVEN POSTMORTEM CASES IN WHICH SERTRALINE WAS NOT RELATED
     TO THE CAUSE OF DEATH, SERTRALINE CONCENTRATIONS WERE 230-460 NG/ML IN HEART
     BLOOD. POSTMORTEM BLOOD SERTRALINE CONCENTRATIONS GREATER THAN 1,500
     NG/ML WERE CONSIDERED TO BE CONTRIBUTORY TO DEATH IN A REVIEW OF 75 CASES.  A
     PATIENT SURVIVED AN ACUTE OVERDOSE WITH A SERUM CONCENTRATION OF 2,900
     NG/ML SERTRALINE.  HER SYMPTOMS INCLUDED CONFUSION, AGITATION, FEVER AND
     SEIZURES.

2.   DESMETHYLSERTRALINE IS THE PRINCIPAL METABOLITE OF SERTRALINE AND HAS
     ABOUT 10 TO 20 % OF THE PHARMACOLOGIC ACTIVITY OF THE PARENT COMPOUND.
     FIFTEEN ADULTS TAKING 200 MG DAILY SERTRALINE HAD MEAN TROUGH SERUM
     CONCENTRATIONS OF 67 NG/ML DESMETHYLSERTRALINE (RANGE 40-189 NG/ML).  THE
     BLOOD TO PLASMA RATIO FOR DESMETHYLSERTRALINE IS NOT KNOWN.

     IN A REPORT OF SEVEN POSTMORTEM CASES IN WHICH SERTRALINE WAS NOT RELATED
     TO THE CAUSE OF DEATH, DESMETHYLSERTRALINE CONCENTRATIONS WERE 80-990
     NG/ML IN HEART BLOOD. A PATIENT SURVIVED AN ACUTE OVERDOSE WITH A SERUM
     CONCENTRATION OF 1700 NG/ML DESMETHYLSERTRALINE.  HER SYMPTOMS INCLUDED
     CONFUSION, AGITATION, FEVER AND SEIZURES.

--ANALYSIS BY LC-MS/MS

Testing Performed at:

National Medical Services
3701 Welsh Rd,
Willow Grove, PA 19090

*********************************************************************************************
T4:   4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))

                    Legend:    A=Abnormal     C=Critical      L=Low     H=High

Patient Name:       Williams, Kathy                         Print Date/Time:  6/4/2018 14:36 CDT
Report Request ID:  91101226                                MRN:              01914662
                                        Page 2 of 3

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000143

## *Drug Levels & Confirmations/Toxicology*

Textual Results
T4:     4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))
        ***EXPOSURE PANEL***

        HBsAG Cadaver/Hemolyzed, S = Negative

        HCV Ab Cadaver/Hemolyzed Screen, S = Negative

        HIV-1/-2 Cadaver/Hemolyzed, S = Negative

        **Testing performed at:**

        Mayo Clinic Laboratories--Rochester Superior Drive
        3050 Superior Dr. NW
        Rochester, MN 55901
        *************************************************************

Result Comments
R1:     Ethanol Vitreous
        PERFORMED AT 2X DILUTION
R2:     Ethanol WB
        WHOLE BLOOD ETHANOL has been confirmed by an alternate technique utilizing an independent chemical
        principle.

                        Legend:     A=Abnormal      C=Critical      L=Low      H=High

Patient Name:        Williams, Kathy                        Print Date/Time:  6/4/2018 14:36 CDT
Report Request ID:  91101226                                MRN:              01914662
                                        Page 3 of 3

                                                                        UA-CL-AD&D-000144



Toxicology Laboratory

List of Detectable Drugs in Blood

The following list of drugs represents those drugs which are commonly detected by our laboratory. It does not list all of the possible drugs which may be detected by our methodology (GC/MS).

| | | | |
|---|---|---|---|
| Acetaminophen | Doxylamine | Methaqualone | Procyclidine |
| Alprazolam | Duloxetine | Methsuximide | Promethazine |
| Amantadine | Ecgonine Methyl Ester | Methylone | Propofol |
| Amitriptyline | Ethotoin | Methylphenidate | Propoxyphene |
| Amobarbital | Fenfluramine | Methypryon | Propranolol |
| Amoxapine | Flecainide | Metoclopramide | Protriptyline |
| Amphetamine | Fluconazole | Metoprolol | Pseudoephedrine |
| Atomoxetine | Fluoxetine | Metronidazole | Pyrilamine |
| Benztropine | Flurazepam | Mexiletine | Quetiapine metabolite |
| Bupivacaine | Fluvoxamine | Midazolam | Quinine |
| Bupropion | Gabapentin | Mirtazepine | Quinidine |
| Butabarbital | Glutethimide | Modafinil | Ranitidine |
| Butalbital | Guaifenesin | Morphine | Salicylates |
| Cannabinoids | Hydrocodone | Nicotine | Secobarbital |
| Carbamazepine | Imipramine | Nordiazepam | Sertraline |
| Carisoprodol | Ibuprofen | Norfluoxetine | Tapentadol |
| Chlordiazepoxide | Ketamine | Normeperidine | Temazepam |
| Chlorpheniramine | Lavamisole | Norpropoxyphene | Theophylline |
| Chlorpromazine | Levetiracetam | Nortriptyline | Thiopental |
| Chlorprothixene | Lidocaine | Norvenlafaxine | Timolol |
| Citalopram | Loxapine | Olanzapine | Thioridazine |
| Clomipramine | Maprotiline | Orphenadrine | Tramadol |
| Clonazepam | MDA | Oxazepam | Trazodone |
| Clozapine | MDEA | Oxcarbazepine | Trifluoperizine |
| Cocaethylene | MDMA | Oxycodone | Trimethobenzamide |
| Cocaine | Meclizine | Papaverine | Trimethoprim |
| Codeine | Medazepam | Paroxetine | Trimipramine |
| Cyclobenzaprine | Meperidine | Pentazocine | Triprolidine |
| Desmethyltramadol | Mephenytoin | Pentobarbital | Valproic Acid |
| Desipramine | Mephobarbital | Phencyclidine | Venlafaxine |
| Dextromethorphan | Mepivacaine | Phenobarbital | Verapamil |
| Diazepam | Meprobamate | Phensuximide | Warfarin |
| Dihydrocodeine | Mesoridazine | Phentermine | Zolpidem |
| Diltiazem | Methadone | Phenytoloxamine | Zonisamide |
| Diphenhydramine | Methohexital | Phenytoin | |
| Disopyramide | Methamphetamine | Phenylpropanolamine | |
| Doxepin | Methapyrilene | Procainamide | |

Note: This list does not include all drugs and/or their metabolites which may be detected. Some drugs may only be detectable at toxic or lethal concentrations. For information on detectable levels for a specific drug, please contact our laboratory

poddrug list

Claimant Name: Kathy　Williams　　Claim #:　14865967

UA-CL-AD&D-000145



**Jackson County Medical Examiner**
**Medication Log**

660 E. 21st St.
Kansas City, MO 64108



(816)881-6600
FAX (816)881-6641

Dr. Diane Petersen
Chief Medical Examiner

**Case#: 18-03200**

Name: Kathy Rae Williams          Race: White

Gender: Female                    Age: 60 years

| Medication | Strength | Regimen Dosage | Pharmacy Phone# | RX Date | Quantity Prescribed | Quantity Remaining | Prescribing Doctor | Prescribed To | Recount |
|---|---|---|---|---|---|---|---|---|---|
| Triamterene-HCTZ | | | | | | | | | |
| Celecoxib | | | | | | | | | |
| Ondansetron | | | | | | | | | |
| Hydromorphone | | | | | | | | | |
| Gabapentin | | | | | | | | | |
| Sertraline Hydrochloride | | | | | | | | | |
| Lorazepam | | | | | | | | | |
| **TOTALS** | | | | | | | | | |

Signature                                   Date

MTD: 7/16/2018 2:53:32 PM

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000146

Activity
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Clinical Resource        Name: Clinical Review
Status: Completed
Original Notify Date: 07/17/2018
Notify Date: 07/17/2018
Due Date: 07/31/2018
Subject: AD&D - Fall/Intoxication
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Webb, Marnie P
Action: Return to DBS

Request Fields
------------------------------------------------------------------------
Request: Staples, Kristi-Lee 07/17/2018 11:27:45: Consulting Medical Referral

Cause & Date of Death/Dismemberment: intracranial hemorrhage, 04/27/18

EDOC (For TD only): n/a

Port Application Date (For Port Only): n/a

Pertinent medically related policy provisions:

WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?
Your plan does not cover any accidental losses caused by, contributed to by, or
resulting from:

...
- the use of any prescription or non-prescription drug, poison, fume, or other
chemical substance unless used according to the prescription or direction of your
or your dependent's physician. This exclusion will not apply to you or your
dependent if the chemical substance is ethanol.

...
- disease of the body or diagnostic, medical or surgical treatment or mental
disorder as set forth in the latest edition of the Diagnostic and Statistical
Manual of Mental Disorders.
- being intoxicated.
- bacterial infection. This exclusion does not apply to you or your dependent when
the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

ACCIDENTAL BODILY INJURY means bodily harm resulting from accident and
independently of all other cause.

Questions:
Based on the available toxicology results, what was the insured's blood alcohol
concentration at the time of the accident?

Based on the information provided, did her being intoxicated cause, contribute to
or result in the insured's death?

Created By: Staples, Kristi-Lee
Created Date: 07/17/2018 11:27:45          Create Site: Portland

Response Fields
----------------------------------------------------------------------
Response: Webb, Marnie P 07/20/2018 11:43:18: Clmt: Kathy Williams
NL#: 14865967

Data Reviewed:
I have reviewed the Jackson County Medical Examiner's Investigative Report,
Children's Mercy Hospital Toxicology Report, and the CDC.

Summary of Clinical Findings:
The insured, a 60-year-old with a history of vertigo and alcohol abuse (with
reported heavy drinking in the past year), was found unresponsive, lying prone at
the foot of a staircase in her home on 4/27/18 around 4:50 p.m. by her husband. Her
husband reported he had spoken to the insured at 12 p.m. that day and had tried to
call at 3 p.m. but received no answer. EMS responded but she reportedly never
regained a heart rhythm. The medical examiner's investigator observed a hole in the
wall of the staircase (no documentation that the age of the hole was confirmed) and
noted it appeared the insured had been holding a glass in her hand as she was
walking down the stairs because she was found with broken glass in her right hand
and around her. The insured's body was warm to the touch, rigor was absent, and
lividity was posterior with blanching. There were lacerations to the right hand and
face and blood was coming from the mouth and nose.

Autopsy was not performed. Toxicology showed ethanol in blood at 0.337% and in
vitreous at 0.430%. It also showed therapeutic levels of sertraline at 130
nanograms per milliliter (ng/mL) and its metabolite desmethylsertraline at 680
ng/mL.

The medical examiner opined cause of death was intracranial hemorrhage and manner
of death was accident.

LBS Questions:
1. Based on the available toxicology results, what was the insured's blood alcohol
concentration at the time of the accident?

-----Given that the fall was unwitnessed, the time of the fall is unclear, and
therefore, the specific BAC at the time of the fall is unknown. The insured's BAC
at the time of death was 0.337%, which is within the possibly fatal range (0.31%
and higher). She had last been known alive at 12 p.m. and was found dead at 4:50
p.m. If the insured survived for a period of time in a comatose state, her alcohol
level may have been higher or lower at the time of the fall, depending on whether
she was in an absorptive or post-absorptive stage of alcohol metabolism and the
time elapsed between the fall and death.

2. Based on the information provided, did her being intoxicated cause, contribute
to or result in the insured's death?

-----Based on the available medical information, the cause of death of intracranial
hemorrhage is an assumed cause of death based on scene findings. Although the
circumstances of being found at the foot of a staircase with blood from the nose
and mouth could indicate brain injury, blood from the nose and mouth could have
been caused by non-fatal nose and mouth trauma without significant underlying brain
injury. Neither autopsy nor diagnostic testing was performed to confirm that the
insured sustained intracranial hemorrhage; therefore, the cause of death of

_Claimant Name: Kathy Williams      Claim #: 14865967_

UA-CL-AD&D-000148

intracranial hemorrhage cannot be confirmed. In addition, because an autopsy was not performed, neither disease of the body nor acute alcohol intoxication can be excluded as cause of death.

Regardless of cause of death, given that the insured's BAC was extremely elevated at more than four times the level generally accepted as legal intoxication and within the possibly fatal range (0.31% plus), it is reasonable that being intoxicated contributed to, if not caused, the insured's death as supported by the analysis below.

If the insured died immediately or within a short period of time after the fall, the BAC of 0.337% is a reasonable estimation of the BAC at the time of the fall. A BAC of 0.337% would result, at a minimum, in significant impairment in coordination, attention, reaction time, and balance that reasonably would have affected the insured's ability to navigate stairs safely, but alternatively could have resulted in a loss of consciousness that caused a fall or could have resulted in death in and of itself, resulting in terminal collapse with fall.

If the insured sustained a brain injury, as assumed by the medical examiner, that was not severe enough to result in immediate death, and the insured survived for a period in a comatose state, it is reasonable that whether the BAC was increasing or decreasing during the comatose state, given the insured's extreme level of intoxication at time of death, the possibly fatal alcohol level at a minimum, contributed to any respiratory and circulatory depression caused by the assumed brain injury and, therefore, contributed to the insured's death, or alternatively, if the brain trauma was mild, the extreme level of intoxication resulted in respiratory and circulatory impairment that actually caused death.

The insured had a history of heavy alcohol use and, therefore, could have had underlying disease of the body, including heart and/or liver disease. It is reasonable that the insured's extreme level of intoxication would have contributed to any cardiorespiratory dysfunction caused by any underlying disease of the body.

The insured had a history of vertigo, which is disease of the body, and could have contributed to the fall. The medical examiner did not document the status of this condition and there are no past medical records available for review to determine if this condition contributed to death. This condition would not have been expected to result in death in and of itself; therefore, alcohol intoxication would have been expected to contribute to death, as detailed above, in this instance also.

Marnie Webb, RN, Sr. CC
7/20/18

Completed By: Webb, Marnie P
Completed Date: 07/20/2018 11:43:18          Complete Site: Portland

Linked Document ID: (Primary Doc Type - Secondary Doc Type)
----------------------------------------------------------------------
20180522120700057290E: Claim Form - New Claim
2018071709125609D7AE: Medical - Records

*Claimant Name: Kathy Williams     Claim #:  14865967*

```
                            Activity
----------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Legal        Name: Atty-Client Privileged Consult-Other
Status: Completed
Original Notify Date: 07/20/2018
Notify Date: 07/20/2018
Due Date:
Subject: AD&D - Unwitnessed Fall
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Kirby, Kyle
Action:
```

# Attorney-Client Privileged

```
Created By: Staples, Kristi-Lee
Created Date: 07/20/2018 11:57:30        Create Site: Portland

Response Fields
```

# Attorney-Client Privileged

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000150

# Attorney-Client Privileged

Completed By: Kirby, Kyle
Completed Date: 07/23/2018 09:03:59      Complete Site: Portland

```
                                   Activity
---------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Letter Review           Name: Letter Review
Status: Completed
Original Notify Date: 07/23/2018
Notify Date: 07/23/2018
Due Date:
Subject: Letter Review Request
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Perceval, Thomas B
Action:

Request Fields
----------------------------------------------------------------------
Request: Staples, Kristi-Lee 07/23/2018 13:43:48: please review adverse - thx

Created By: Staples, Kristi-Lee
Created Date: 07/23/2018 13:43:48         Create Site: Portland

Response Fields
----------------------------------------------------------------------
Response: Perceval, Thomas B 07/24/2018 11:08:53: Agree w/ AD&D adverse decision,
letter reviewed, appropriate to proceed.  Please ensure BAS is fully marked up,
including comp info date, prior to closure.  T Perceval, Mngr GLB 7/24/18.



Completed By: Perceval, Thomas B
Completed Date: 07/24/2018 11:08:53       Complete Site: Portland

                                   Follow Up
---------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Status: Cancelled
Date: 07/30/2018
Follow Up Owner: Staples, Kristi-Lee
Subject: Letter Review Request
Mark As Priority: No
Notes: Followup on Letter Review
Created By: Staples, Kristi-Lee
Created Date: 07/23/2018
Create Site: Portland
Completed By: Perceval, Thomas B
Complete Date: 07/24/2018
Complete Site: Portland
```

---

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Claim Document
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator: No**

**Type: Close Claim**

**Subject: Claim Closed: 14865967**

**Priority: No**

**Status: Completed**

**Notes: x**

**Created By: Staples, Kristi-Lee**
**Created Date: 07/24/2018 - 13:07:48**
**Create Site: Portland**

**Completed By: Staples, Kristi-Lee**
**Completed Date: 07/24/2018 - 13:07:48**
**Complete Site: Portland**

UA-CL-AD&D-000153

```
                                        Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Personal          Name: General
Status: Cancelled
Original Notify Date: 06/20/2018
Notify Date: 07/25/2018
Due Date:
Subject: 60 day
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
    ----------------------------------------------------------------------
Request: Staples, Kristi-Lee 05/30/2018 13:21:59: x

Created By: Staples, Kristi-Lee
Created Date: 05/30/2018 13:21:59        Create Site: Portland

Response Fields
    ----------------------------------------------------------------------


Completed By: Staples, Kristi-Lee
Completed Date: 07/24/2018 13:08:18        Complete Site: Portland
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000154

```
                              Letter Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: AD and D Intoxication Non-MVA  Adverse Decision

Status: Final

Date: 2018-07-24

Notes: AD and D Intoxication Non-MVA  Adverse D

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Williams, Gary
Relationship: Family - Other      Document ID: 2018072413082217290E
Delivery Date: 07/24/2018 15:11:03
Delivery Status: Mail: Sent from Central Print
```

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Phone: **1-800-445-0402**
Fax: **1-800-447-2498**
www.unum.com



July 24, 2018

GARY WILLIAMS
18216 E 51ST ST CT S
INDEPENDENCE, MO 64055

RE:  Williams, Kathy
Claim Number:      14865967
Policy Number:      382480
Unum Life Insurance Company of America

Dear Mr. Williams:

Please accept our sincere condolences on the loss of your wife, Kathy. During this difficult time, we are committed to providing you with responsive, compassionate service.

We are writing about her Group Accidental Death Insurance claim.  This letter is to inform you we are unable to approve the benefits.

This letter includes the following:

- Our claim decision and the reason for the decision

- A list of the information we reviewed during our evaluation of the claim

- The provisions of BlueScope Steel North America Corporation's Accidental Death & Dismemberment policy that are applicable to our decision

- Next steps available to you if you disagree with our decision

The following pages will help you understand how we reached this decision.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000156

## The Claim Decision / Reasons for the Decision

Accidental Death benefits are not payable when the death is not accidental and independent of any other cause.

In addition, there is an exclusion in the policy that applies to this claim. The exclusion states that benefits are not payable when the loss was caused by, contributed to by or resulted from intoxication.

At the time of your wife's fall, she had a blood alcohol content (BAC) of 0.337%. We have determined that based on the known impairments caused by an elevated blood alcohol level, her death was caused by, contributed to by or resulted from her intoxication; it was not accidental and independent of any other cause.

### Information We Reviewed

According to our medical review, a non-tolerant individual with a blood alcohol content of 0.27% through 0.40% will likely experience symptoms of stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor.

The medical examiner's report indicates that your wife had a history of alcohol abuse with reported heavy drinking in the past year. At the time of her passing, her BAC was more than four times the level generally accepted as legal intoxication, and within the possibly fatal range (0.31% and higher).

We reviewed the following information in our evaluation of the claim:

- Group Life and Accidental Death Claim form
- BlueScope Steel North America Corporation's Group Life & Accidental Death policy
- Certified Death Certificate
- Jackson County Medical Examiner's & Toxicology Report

### Policy Provisions Applicable to Our Decision

The provisions in BlueScope Steel North America Corporation's contract applicable to our decision state:

"**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause."

*"WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:
…
- being **intoxicated**…"

UA-CL-AD&D-000157

This claim decision was based on the provisions listed above, and we reserve our right to enforce other provisions of the policy.

**Next Steps Available to You**

If you disagree with our decision, you have the right to request an appeal.

**What is an Appeal?**

An appeal is your written disagreement with our claim decision and a request for a review of that decision.

**How do you request an Appeal?**

You will need to submit a written letter of appeal outlining the basis for your disagreement. To ensure handling of your appeal without delay, please include any additional information you would like considered. This information may include written comments, documents, or other information in support of your appeal.

**What information is available to you?**

Upon your written request, we will provide you with all documents, records and other information relevant to your claim for benefits.

**How much time do you have to request an Appeal?**

You have 90 days from after you receive Unum's notice of denial.

If we do not receive your written appeal within 90 days from after you receive Unum's notice of denial, our claim determination will be final.

**Where do you mail or fax your written request for an Appeal?**

The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Fax Number: 1-207-575-2354

Our Appeals Unit will send you a letter acknowledging receipt of your appeal including your Appeals Specialist's contact information.

**How does the Appeal process work?**

An Appeals Specialist will review your entire claim, including any new information you submitted and may consult medical and vocational experts or other resources. The Appeal Specialist will make an independent decision on your claim.

*Claimant Name: Kathy Williams    Claim #:  14865967*

**How much time does the Appeal review take?**

We are committed to making an appeal decision within 60 days after we receive your written appeal. There may be special circumstances in which the review can take longer. We will notify you if more time is needed.

**What if you continue to disagree with the determination after the appeal is decided?**

You will have the right to have a court review the appeal determination by bringing a civil action under section 502(a) of the Employee Retirement Income Security Act (ERISA).

**How to Contact Us**

If you have questions about this claim or this process, please call our Contact Center at 1-800-445-0402, 8 a.m. to 8 p.m. Eastern time, Monday through Friday. Any of our representatives have access to the claim documentation and will be able to assist you. We will identify the claim by your wife's Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D

UA-CL-AD&D-000159

```
                              Letter Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name:  ER Adverse Decision

Status: Final

Date: 2018-07-24

Notes: ER Adverse Decision

Signoff By:

Signoff Status:

------------ Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Hughes, Amy
Relationship: Employer      Document ID: 2018072413103513248E
Delivery Date: 07/24/2018 13:13:06
Delivery Status: Fax: Sent; Success
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000160

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Phone: **1-800-445-0402**
Fax: **1-800-447-2498**
www.unum.com



July 24, 2018

AMY HUGHES
BLUESCOPE STEEL
P/C
1540 GENESSEE ST
KANSAS CITY, MO 64102

RE:    Williams, Kathy
        Claim Number:    14865967
        Policy Number:    382480
        Unum Life Insurance Company of America

Dear Ms. Hughes:

Thank you for selecting Unum Life Insurance Company of America's Group Accidental Death Insurance for your employees.

We are writing about the Group Accidental Death claim submitted for Kathy Williams. This letter is to inform you we are unable to approve benefits. We notified your employee of our decision and provided instructions for filing an appeal. Due to state privacy laws that restrict the disclosure of personal financial or health information by insurers to third parties, we are unable to provide you with a copy of that letter or additional details regarding the basis of our adverse decision without the written authorization of your employee.

**How to Contact Us**

If you have questions about the claim or this process please call our Contact Center at 1-800-445-0402, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. Any of our representatives have access to the claim documentation and will be able to assist you. We will identify the claim by Kathy Williams's Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy Williams    Claim #: 14865967

```
                              Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 08/03/2018
Notify Date: 08/03/2018
Due Date:
Subject: Flup TPC to ME #1
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Thayer, Rachel
Action:

Request Fields
------------------------------------------------------------------------
Request: Whitehead, Clay 07/05/2018 15:29:50:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - ---------------

Whitehead, Clay,06/29/2018 02:44:37 PM:


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - ---------------

Young, Wayne,05/29/2018 04:07:54 PM:

sent request to ME on 05/29...response rec'd?
Placed Call To:  Jackson County Medical Examiner
Number Dialed: (816) 881-6600
DOD 4/27/18

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - ---------------

Staples, Kristi-Lee,05/29/2018 08:10:52 AM:
Insured died in Jackson county MO due to injuries sustained from a fall
please contact ME & obtain any and all reports
little info is known at this time (i.e. location of death, location of injury etc.)
thx!

***
Call Placed on 7/5/18 03:29 PM
Placed Call To:  Jackson County ME
Number Dialed: (816) 881-6600
Call Outcome: Live Answer
Spoke With: Angie

Notes: Angie stated the case is still pending as they require the PD to sign off on
releasing the reports.
ME report - pending
Daniel Whitehead - Ext. 43310




Created By: Whitehead, Clay
```

---

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Created Date: 07/05/2018 15:29:50          Create Site: Chattanooga

Response Fields
------------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Medical Provider
Reason for Call: Received Information
Call Outcome: Contact Successful
Comments: Thayer, Rachel 08/03/2018 09:19:06: reports are in the file


Completed By: Thayer, Rachel
Completed Date: 08/03/2018 09:19:06          Complete Site: Chattanooga

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000163

```
                               Activity
------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Direct Services          Name: RTC Request
Status: Completed
Original Notify Date: 08/02/2018
Notify Date: 08/03/2018
Due Date:
Subject: 1009a CCC SP 03 CB
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
----------------------------------------------------------------------
Request: Kazy, Johnnie 08/02/2018 10:11:44: Claim Documentation Form
Call Received From     Gary Williams     Relationship to Insured     SP
Telephone     8164561247
Message     Sp called to speak with LBS. He is questioning the exclusion being in
the policy.  He requests a RTC.



Created By: Kazy, Johnnie
Created Date: 08/02/2018 10:11:44          Create Site: Portland

Response Fields
----------------------------------------------------------------------
Response: Staples, Kristi-Lee 08/03/2018 16:27:03: see call doc
kls



Completed By: Staples, Kristi-Lee
Completed Date: 08/03/2018 16:27:03          Complete Site: Portland
```

UA-CL-AD&D-000164

```
                                     Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 08/03/2018
Notify Date: 08/03/2018
Due Date:
Subject: RTC to EE
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
-----------------------------------------------------------------------
Request: Staples, Kristi-Lee 08/03/2018 16:29:23: RTC to EE

Created By: Staples, Kristi-Lee
Created Date: 08/03/2018 16:29:23      Create Site: Portland

Response Fields
-----------------------------------------------------------------------
Call Type: Returned Call From
Person Contacted: Claimant (Employee, Insured)
Reason for Call: Claim Status Update
Call Outcome: Contact Successful
Comments: Staples, Kristi-Lee 08/03/2018 16:29:23: 08/03/18 425p
816-456-1247

Spoke w/ Gary
Returning his call
He adv he just wanted a copy of the policy to look thru
He adv he wasnt aware there were exclusions and just wanted to 'see for himself'
Adv I will send a copy out today - confirmed address
Adv its a large document so if he has any questions, I will be happy to go thru it
with him
He thanked me & ended call
kls



Completed By: Staples, Kristi-Lee
Completed Date: 08/03/2018 16:29:23      Complete Site: Portland
```

_Claimant Name: Kathy  Williams     Claim #:  14865967_

UA-CL-AD&D-000165

Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Free Form

Status: Final

Date: 2018-08-06

Notes: Free Form  Request for Policy Copy

Signoff By:

Signoff Status:

------------- Deliveries ---------------
Email Contacts Overridden:

To/CC/MCC: To        Addressee Name: Williams, Gary
Relationship: Family - Other      Document ID: 2018080610573701291E
Delivery Date: 08/06/2018 11:05:43
Delivery Status: Mail: Sent from CHT03L07

UA-CL-AD&D-000166

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Phone: **1-800-445-0402**
Fax: **1-800-447-2498**
www.unum.com



August 6, 2018

GARY WILLIAMS
18216 E 51ST ST CT S
INDEPENDENCE, MO 64055

RE:    Williams, Kathy
       Claim Number:    14865967
       Policy Number:    382480
       Unum Life Insurance Company of America

Dear Mr. Williams:

Enclosed is a printed copy of the Life policy that was requested.

Mr. Williams, if you have any questions, please feel free to contact me at 1-800-445-0402.

Sincerely,

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D

Enclosures:    Policy: Contract

Claimant Name: Kathy  Williams     Claim #:   14865967

Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Claims Assistant - Life/AD&D          Name: Written correspondence
Status: Completed
Original Notify Date: 08/03/2018
Notify Date: 08/03/2018
Due Date:
Subject: policy copy
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Coffelt, Judy M
Action:

Request Fields
-------------------------------------------------------------------------
Request: Staples, Kristi-Lee 08/03/2018 16:29:53: please mail copy of attached
policy to EE Gary
thx!

Created By: Staples, Kristi-Lee
Created Date: 08/03/2018 16:29:53          Create Site: Portland

Response Fields
-------------------------------------------------------------------------
Response: Coffelt, Judy M 08/06/2018 11:10:35: created cover letter
printed hard copy of policy
mailed to EE Gary to address in contacts tab


Completed By: Coffelt, Judy M
Completed Date: 08/06/2018 11:10:35          Complete Site: Chattanooga


Linked Document ID: (Primary Doc Type - Secondary Doc Type)
-------------------------------------------------------------------------
2018052908012955FF98: Policy - Contract

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000168

```
                                  Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Direct Services          Name: Claims Status No RTC
Status: Completed
Original Notify Date: 09/06/2018
Notify Date: 09/06/2018
Due Date:
Subject: 0510p CCC ATTY 04
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Thomas, Tiffany
Action:

Request Fields
------------------------------------------------------------------------
Request: Thomas, Tiffany 09/06/2018 17:11:48: Claim Documentation Form
Call Received From     Benjamin Blakeman     Relationship to Insured     ATTY
Telephone    2136299922
Message    He looked at a summary plan description in a benefit manual from ER the
2018 benefit guide and it doesn't says anything about exclusion for intoxication or
at least he didn't see it. His question is was there a document that the EE was
given when they signed up for the benefits or any document that discuss the
exclusion? IAC that I am unable to connect with a specialist with out a letter of
representation on file. IAC to fax the letter of representation to 18004472498 attn
claim#. advised caller that faxes may take 24 hours to register in our system. IAC
to include a brief description of what he is requesting and he will be contacted by
a LBS to discuss. He will fax the requested info in.



Created By: Thomas, Tiffany
Created Date: 09/06/2018 17:11:48        Create Site: Portland

Response Fields
------------------------------------------------------------------------
Response: Thomas, Tiffany 09/06/2018 17:11:48: Created by Direct Services



Completed By: Thomas, Tiffany
Completed Date: 09/06/2018 17:11:48       Complete Site: Portland
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator: No**

**Document ID: 2018090617451656300E**

**Entry Date: 09/06/2018 17:45:20**

**Received Date: 09/06/2018**

**Date Added to Claim: 09/06/2018**

**Primary Doc Type: Communication**

**Secondary Doc Type: Information Received**

**Medical Provider:**

**Document Notes: letter of rep / policy request**

**Work Notes:**

UA-CL-AD&D-000170

## BLAKEMAN LAW

*Life Insurance, investment, and financial elder abuse litigation*

8383 Wilshire Blvd., Ste. 510
Los Angeles, California 90017

Phone: 213-629-9922
Fax:　 213-232-3230
email: ben@lifeinsurance-law.com



**September 6, 2018**

<u>**Via Facsimile 800-447-2498**</u>
Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158

Attention: Claims Specialist

> **Re:　Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

Dear Sir or Madam:

This office has been retained to represent Gary Williams in connection with the claim for accidental death benefits on the life of Kathy Williams.

Please be so kind as to forward the Trust Document (commonly known as the "Plan Document"), Summary Plan Description (SPD) (and any amendments thereto since the inception of the Plan), and Form 5500. The authority for this request is found at 29 U.S.C.A. §1024(b)(4).

In addition, I would like to know when and manner in which the SPD and amendments, if any, were provided to the Blue Scope employees.

Thank you for your anticipated cooperation with this request.

BLAKEMAN LAW

_____
Benjamin Blakeman

cc: Gary Williams

---

Claimant Name: Kathy Williams　　　Claim #: 14865967

UA-CL-AD&D-000171

```
                              Document Detail
---------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018091008551598FF98

Entry Date: 09/10/2018 08:55:16

Received Date: 09/10/2018

Date Added to Claim: 09/10/2018

Primary Doc Type: Communication

Secondary Doc Type: Conversations

Medical Provider:

Document Notes: email w/ FO

Work Notes:
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000172

| | |
|---|---|
| **From:** | Staples, Kristi-Lee |
| **Sent:** | Monday, September 10, 2018 8:55 AM |
| **To:** | Ashley, Kimberly E |
| **Cc:** | Villani, Wendy; NCG MW Service Requests |
| **Subject:** | RE: Bluescope Steel #382480 |

We don't have access to iServices.

This was an AD&D only claim, $360k dep SP. EE was Gary Williams, wife Kathy- died 04/27/18. Claim was submitted under Bluescope Buildings (Kansas City, MO) by HR Manager Molly Cisco.

We were just contacted by the lawyer last Thursday, so I have not contacted the group yet.

Thanks-

*Kristi Staples*

Senior Life Benefits Specialist – AD&D
Unum Life Insurance Company of America
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

**From:** Ashley, Kimberly E
**Sent:** Friday, September 07, 2018 11:38 AM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** Villani, Wendy <WVillani@UNUM.COM>; NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** Re: Bluescope Steel #382480

You should be looking at Iservices everything is out there that the employer would have.

When was this denied? How much and who for? DOD and any other pertinent information would be helpful. Has employer been notified of counsel and which location/name at employer have you been dealing with?

Thanks

Sent from my iPhone

1

UA-CL-AD&D-000173

On Sep 7, 2018, at 8:31 AM, Staples, Kristi-Lee <KStaples@UNUM.COM> wrote:

Hi Kim-

I had a spouse AD&D claim that was denied due to the alcohol exclusion in the policy. The employee has retained a lawyer who is requesting several documents from me. Basically he is looking for copies of any SPD or summary booklet that would have been provided to Bluescope EEs outlining the policy exclusions – the EE is claiming that he was never told about any possible exclusion.

Do you have any copies of any SPDs that we would have provided to Bluescope in recent years? Is there a broker who provides this information? Should he reach out to Bluescope directly?

I'm just trying to nip this before if escalates. I'm sure an Appeal is forthcoming so I want to do as much as we can now.

Thanks!
Kristi

RE NL# 14865967

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com

unum

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000174

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018091014311782FF98

**Entry Date:** 09/10/2018 14:31:19

**Received Date:** 09/10/2018

**Date Added to Claim:** 09/10/2018

**Primary Doc Type:** Communication

**Secondary Doc Type:** Conversations

**Medical Provider:**

**Document Notes:** email from FO

**Work Notes:**

UA-CL-AD&D-000175

**Staples, Kristi-Lee**

| | |
|---|---|
| **From:** | NCG MW Service Requests |
| **Sent:** | Monday, September 10, 2018 2:13 PM |
| **To:** | Ashley, Kimberly E. Staples, Kristi-Lee |
| **Cc:** | NCG MW Service Requests |
| **Subject:** | RE: Ashley/Bluescope/Re: Bluescope Steel #382480/older AD&D docs |
| **Attachments:** | BlueScope 382480 x012 booklet - FT Salaried Non-Union.pdf |

Hi Kristi,

The most recent booklet in Magic is the one that the ER would have access to on iServices as well, which they should be sharing with employees.  I've attached a copy for you.

Thank you,

*Crystal Harriman*
Client Specialist | Midwest Region
**Unum | National Client Group**

**From:** Ashley, Kimberly E
**Sent:** Monday, September 10, 2018 8:59 AM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** Ashley/Bluescope/Re: Bluescope Steel #382480/older AD&D docs

I guess I didn't realize they could do that under our contract.

Thanks.

Sent from my iPhone

On Sep 10, 2018, at 7:58 AM, Staples, Kristi-Lee <KStaples@UNUM.COM> wrote:

> The employee elected AD&D only, no life covg.
>
> *Kristi Staples*

1

UA-CL-AD&D-000176

Senior Life Benefits Specialist – AD&D
Unum Life Insurance Company of America
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

**From:** Ashley, Kimberly E
**Sent:** Monday, September 10, 2018 8:58 AM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** Villani, Wendy <WVillani@UNUM.COM>; NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** Re: Bluescope Steel #382480

How could there be add no death claim? NCG MW please send her what the employer has on Iservices.

Sent from my iPhone

On Sep 10, 2018, at 7:54 AM, Staples, Kristi-Lee <KStaples@UNUM.COM> wrote:

> We don't have access to iServices.
>
> This was an AD&D only claim, $360k dep SP. EE was Gary Williams, wife Kathy- died 04/27/18. Claim was submitted under Bluescope Buildings (Kansas City, MO) by HR Manager Molly Cisco.
>
> We were just contacted by the lawyer last Thursday, so I have not contacted the group yet.
>
> Thanks-
>
> *Kristi Staples*
>
> Senior Life Benefits Specialist – AD&D
> Unum Life Insurance Company of America
> ph: (800) 445-0402 | fax: (800) 447-2498
> kstaples@unum.com
> unum
>
> **From:** Ashley, Kimberly E
> **Sent:** Friday, September 07, 2018 11:38 AM

2

UA-CL-AD&D-000177

**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** Villani, Wendy <WVillani@UNUM.COM>; NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** Re: Bluescope Steel #382480

You should be looking at Iservices everything is out there that the employer would have.

When was this denied? How much and who for? DOD and any other pertinent information would be helpful. Has employer been notified of counsel and which location/name at employer have you been dealing with?

Thanks

Sent from my iPhone

On Sep 7, 2018, at 8:31 AM, Staples, Kristi-Lee <KStaples@UNUM.COM> wrote:

> Hi Kim-
>
> I had a spouse AD&D claim that was denied due to the alcohol exclusion in the policy. The employee has retained a lawyer who is requesting several documents from me. Basically he is looking for copies of any SPD or summary booklet that would have been provided to Bluescope EEs outlining the policy exclusions - the EE is claiming that he was never told about any possible exclusion.
>
> Do you have any copies of any SPDs that we would have provided to Bluescope in recent years? Is there a broker who provides this information? Should he reach out to Bluescope directly?
>
> I'm just trying to nip this before if escalates. I'm sure an Appeal is forthcoming so I want to do as much as we can now.
>
> Thanks!
> Kristi
>
> RE NL# 14865967
>
> *Kristi Staples*
>
> Senior Life Benefits Specialist – AD&D
> Unum Life Insurance Company of America
> ph: (800) 445-0402 | fax: (800) 447-2498

3

UA-CL-AD&D-000178

kstaples@unum.com

unum

4

UA-CL-AD&D-000179

```
                              Document Detail
-------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018091014322444FF98

Entry Date: 09/10/2018 14:32:28

Received Date: 09/10/2018

Date Added to Claim: 09/10/2018

Primary Doc Type: Policy

Secondary Doc Type: Other

Medical Provider:

Document Notes: Booklet - 2017

Work Notes:
```



**BlueScope Steel North America
Corporation**

Your Group Life and Accidental Death
and Dismemberment Plan

Identification No. 382480 012

Underwritten by Unum Life Insurance Company of America

7/24/2017

*Claimant Name: Kathy Williams      Claim #: 14865967*



# CERTIFICATE OF COVERAGE

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured. You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English. However, a few terms and provisions are written as required by insurance law. If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the Summary of Benefits (issued to the Employer), the Summary of Benefits will govern. The Summary of Benefits may be changed in whole or in part. Only an officer or registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to the Summary of Benefits. Any other person, including an agent, may not change the Summary of Benefits or waive any part of it.

The Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

For purposes of effective dates and ending dates under the group Summary of Benefits, all days begin at 12:01 a.m. and end at 12:00 midnight at the Employer's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

CC.FP-2    CC.FP-1  (1/1/2015) REV    1

UA-CL-AD&D-000183

# TABLE OF CONTENTS

BENEFITS AT A GLANCE ................................................................................B@G-LIFE-1

LIFE INSURANCE PLAN ...............................................................................B@G-LIFE-1

BENEFITS AT A GLANCE ...............................................................................B@G-AD&D-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN .....................B@G-AD&D-1

CLAIM INFORMATION .....................................................................................LIFE-CLM-1

LIFE INSURANCE.............................................................................................LIFE-CLM-1

CLAIM INFORMATION ....................................................................................AD&D-CLM-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE ..............................AD&D-CLM-1

GENERAL PROVISIONS ...................................................................................EMPLOYEE-1

LIFE INSURANCE.............................................................................................LIFE-BEN-1

BENEFIT INFORMATION .................................................................................LIFE-BEN-1

OTHER BENEFIT FEATURES...........................................................................LIFE-OTR-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE...............................AD&D-BEN-1

BENEFIT INFORMATION ................................................................................AD&D-BEN-1

OTHER BENEFIT FEATURES..........................................................................AD&D-OTR-1

GLOSSARY ....................................................................................................GLOSSARY-1

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000184

# BENEFITS AT A GLANCE

## LIFE INSURANCE PLAN

This life insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death. The amount your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:** January 1, 1999

**PLAN YEAR:**

January 1, 1999 to January 1, 2000 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:** 382480 012

**ELIGIBLE GROUP(S):**

All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before January 1, 1999: The greater of the waiting period in effect under the prior Unum plan, if any, or None
For employees entering an eligible group from January 1, 1999 through December 31, 2008: First of the month coincident with or next following date of active employment
For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic Life Insurance Benefit:*

Your Employer pays the cost of your coverage.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000185

*Additional Life Insurance Benefit:*

> You pay the cost of your coverage.

**For Your Dependents:**

*Basic Life Insurance Benefit:*

> No Coverage

*Additional Life Insurance Benefit:*

> You pay the cost of your dependent coverage.

**LIFE INSURANCE BENEFIT:**

**AMOUNT OF LIFE INSURANCE FOR YOU**

**BASIC LIFE INSURANCE BENEFIT**

1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**ADDITIONAL LIFE INSURANCE BENEFIT OPTIONS:**

*Option 1*

1 x annual earnings

*Option 2*

2 x annual earnings

*Option 3*

3 x annual earnings

*Option 4*

4 x annual earnings

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**AMOUNT OF LIFE INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED**

If you have reached age 70 but not age 75, your amount of life insurance will be:
- 67% of the amount of life insurance you have prior to age 70; or
- 67% of the amount of life insurance shown above if you become insured on or after age 70 but before age 75.

If you have reached age 75 or more, your amount of life insurance will be:
- 50% of the amount of life insurance you have prior to your first reduction; or
- 50% of the amount of life insurance shown above if you become insured on or after age 75.

**EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR INSURANCE OVER:**

- 2 x annual earnings (ADDITIONAL LIFE BENEFITS ONLY); or
- $750,000 (BASIC LIFE AND ADDITIONAL LIFE BENEFITS COMBINED), whichever is lower.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000186

Evidence of Insurability is not required for amounts of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

OVERALL MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$1,000,000

## AMOUNT OF LIFE INSURANCE FOR YOUR DEPENDENTS

**Spouse:**

**BASIC LIFE INSURANCE BENEFIT:**

No Coverage

**ADDITIONAL LIFE INSURANCE BENEFIT:**

Amounts in $5,000 benefit units as applied for by you and approved by Unum.

All amounts are rounded to the next higher multiple of $5,000, if not already an exact multiple thereof.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR SPOUSE'S INSURANCE OVER:

$50,000

Evidence of Insurability is not required for amounts of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOUR SPOUSE:

The lesser of:
- 100% of your amount of Basic Life and Additional Life Insurance combined; or
- $200,000

**Children:**

**BASIC LIFE INSURANCE BENEFIT:**

No Coverage

**ADDITIONAL LIFE INSURANCE BENEFIT:**
Live birth to age 19 or to 25
if a full-time student:                    $10,000

## SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.

## OTHER FEATURES:

Accelerated Benefit

UA-CL-AD&D-000187

Conversion

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

UA-CL-AD&D-000188

# BENEFITS AT A GLANCE

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN

This accidental death and dismemberment insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death or for you in the event of any other covered loss. The amount you or your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death or any other covered loss according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:** January 1, 2009

**PLAN YEAR:**

January 1, 2009 to January 1, 2010 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:** 382480 012

**ELIGIBLE GROUP(S):**

All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before January 1, 2009: The greater of the waiting period in effect under the prior Unum plan, if any, or None

For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic AD&D Insurance Benefit:*

Your Employer pays the cost of your coverage.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000189

*Additional AD&D Insurance Benefit:*

> You pay the cost of your coverage.

**For Your Dependents:**

*Basic AD&D Insurance Benefit:*

> No Coverage

*Additional AD&D Insurance Benefit:*

> You pay the cost of your dependent coverage.

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT:

### AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) INSURANCE FOR YOU (FULL AMOUNT)

#### BASIC AD&D INSURANCE BENEFIT

1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

#### ADDITIONAL AD&D INSURANCE BENEFIT:

Amounts in $25,000 benefit units as applied for by you and approved by Unum.

OVERALL MAXIMUM BENEFIT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$600,000

### AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOUR DEPENDENTS (FULL AMOUNT)

**Spouse:**

**BASIC AD&D INSURANCE BENEFIT**

No Coverage

**ADDITIONAL AD&D INSURANCE BENEFIT:**

60% of your additional amount of AD&D insurance to a maximum benefit of $360,000

**Children:**

**BASIC AD&D INSURANCE BENEFIT**

No Coverage

**ADDITIONAL AD&D INSURANCE BENEFIT:**
Live birth to age 19 or to 25
if a full-time student:    20% of your Additional AD&D benefit amount
to a maximum of $120,000

UA-CL-AD&D-000190

**REPATRIATION BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount:

Up to $15,000

The Repatriation Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Repatriation Benefit, your or your dependent's accidental death benefit must be paid first.

**SEATBELT(S) AND AIR BAG BENEFIT FOR YOU AND YOUR DEPENDENTS**

Benefit Amount:

Seatbelt(s): 10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit.

Air Bag: 5% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit.

Maximum Benefit Payment:

Seatbelt(s): $50,000

Air bag: $10,000

The Seatbelt(s) and Air Bag Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Seatbelt(s) and Air Bag Benefit, your or your dependents accidental death benefit must be paid first.

**EDUCATION BENEFIT**

Each Qualified Child

Benefit Amount per Academic Year for which a Qualified Child is enrolled:

10% of the Full Amount of the employee's accidental death and dismemberment insurance to a maximum of $10,000.

Maximum Benefit Payments:

4 per lifetime

Maximum Benefit Amount per Each Qualified Child:

$40,000

Maximum Benefit Period:

6 years from the date the first benefit payment has been made.

The Education Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Education Benefit, your accidental death benefit must be paid first.

**EXPOSURE AND DISAPPEARANCE BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount: The Full Amount

**CHILD CARE BENEFIT**

Each Qualified Child

Annual Benefit Amount:

Claimant Name: Kathy Williams        Claim #: 14865967

UA-CL-AD&D-000191

Birth through age 13

The lesser of:

- 10% of the Full Amount of your or your spouse's accidental death and dismemberment insurance; or

- $10,000

Maximum Benefit Amount:

$50,000

Maximum Benefit Period:

5 consecutive years

If, at the time of your or your spouse's death, you have no Qualified Child eligible for the Child Care Benefit, we will pay 10% of the Full Amount to a maximum benefit of $50,000 to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Child Care Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Child Care Benefit, your or your spouse's accidental death benefit must be paid first.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident

**COMA BENEFIT FOR YOU AND YOUR DEPENDENTS**

Monthly Benefit Amount:

1% of the Full Amount of your or your dependents accidental death and dismemberment insurance benefit

Maximum Number of Months:

100 months

**REHABILITATION PHYSICAL THERAPY BENEFIT FOR YOU AND YOUR DEPENDENTS**

Benefit Amount:

10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit

Maximum Benefit Amount:

$10,000

The Rehabilitation Physical Therapy Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order to receive the Rehabilitation Physical Therapy Benefit, your or your dependent's accidental death and dismemberment must be paid first.

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000192

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000193

# CLAIM INFORMATION

## LIFE INSURANCE

### WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

### WHEN CAN UNUM REQUEST AN AUTOPSY?

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

### HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

UA-CL-AD&D-000194

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's life claim is at least $10,000, Unum will make available to the beneficiary a **retained asset account** (the Unum Security Account).

Payment for the life claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the life claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the life claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

If you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

LIFE-CLM-2 (1/1/2015) REV                                         13

UA-CL-AD&D-000195

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? (Assignability Rights)

The rights provided to you by the plan for life insurance are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000196

# CLAIM INFORMATION

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

### WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### HOW DO YOU FILE A CLAIM FOR A COVERED LOSS?

You or your authorized representative and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

### WHAT INFORMATION IS NEEDED AS PROOF OF CLAIM?

If claim is based on death or other covered loss, proof of claim for death or covered loss, provided at your or your authorized representative's expense, must show:

- the cause of death or covered loss;
- the extent of the covered loss;
- the date of covered loss; and
- the name and address of any **hospital or institution** where treatment was received, including all attending **physicians**.

Also, in case of death, a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

If a claim is based on the Education Benefit, proof of claim, provided at your authorized representative's expense, must show:

- the date of enrollment of your qualified child in an accredited post-secondary institution of higher learning;
- the name of the institution;
- a list of courses for the current academic term; and
- the number of credit hours for the current academic term.

### WHEN CAN UNUM REQUEST AN AUTOPSY?

Claimant Name: Kathy Williams        Claim #: 14865967

UA-CL-AD&D-000197

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

## HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your accidental death and dismemberment insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

## HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's accidental death or dismemberment claim is at least $10,000 Unum will make available to you or your beneficiary a **retained asset account** (the Unum Security Account).

Payment for the accidental death or dismemberment claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

UA-CL-AD&D-000198

If the accidental death or dismemberment claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the accidental death claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

The Child Care Benefit will be paid to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Education Benefit will be paid to your qualified child or the qualified child's legal representative.

If you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### *WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?*

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### *WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFITS? (Assignability Rights)*

The rights provided to you by the plan(s) for accidental death insurance benefits are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000199

# GENERAL PROVISIONS

### WHAT IS THE CERTIFICATE OF COVERAGE?

This certificate of coverage is a written statement prepared by Unum and may include attachments. It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

### WHEN ARE YOU ELIGIBLE FOR COVERAGE?

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period**.

### WHEN DOES YOUR COVERAGE BEGIN?

This plan provides additional life benefit options and additional accidental death and dismemberment benefit units in addition to the basic life and accidental death and dismemberment benefit. When you first become eligible for coverage, you may apply for any additional life and accidental death and dismemberment benefits.

**Evidence of insurability** is required for any amount of life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

Your Employer pays 100% of the cost of your coverage under the basic benefit. You will automatically be covered under the basic benefit at 12:01 a.m. on the later of:

- the date you are eligible for coverage; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

You pay 100% of the cost for the additional benefits. You will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

If you do not apply for additional benefits on or before the 31st day after your eligibility date, you can apply at the next **annual enrollment period** or at anytime during the plan year. Evidence of insurability is required for any amount of insurance.

Coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000200

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

Coverage applied for at any time other than during an annual enrollment period will be effective on the date Unum approved your evidence of insurability form.

## WHEN CAN YOU CHANGE YOUR COVERAGE?

You can change your coverage by applying for additional benefits at anytime during the plan year. You can increase your coverage or decrease your coverage by any level. Evidence of insurability is required for any amount of insurance applied for during the plan year. A change in coverage that is made during a plan year will begin at 12:01 a.m. on the date Unum approves your evidence of insurability form.

You can also change your coverage by applying for a different additional benefit during an annual enrollment period.

You can increase or decrease your coverage any number of levels.

Evidence of insurability is required if you increase your coverage by any level. If you are not approved for the increase in your coverage, you will automatically remain at the same amount you had prior to applying for the increase.

Unum and your Employer determine when the annual enrollment period begins and ends. A change in coverage that is made during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

An evidence of insurability form can be obtained from your Employer.

## IS EVIDENCE OF INSURABILITY REQUIRED IF YOU RECEIVE AN INCREASE IN YOUR ANNUAL EARNINGS?

If you remain covered for the same basic benefit and the same supplemental benefit option, evidence of insurability is not required for the first $100,000 of increased life amounts due to increased annual earnings accumulated within a plan year.

Evidence of insurability is required for any increased amount of life insurance that exceeds $100,000. However, if you previously were declined coverage, evidence of insurability is required for any increases until Unum approves your evidence of insurability form.

If you are not in active employment due to an injury or sickness, this change in coverage due to a change in your annual earnings will begin on the date you return to active employment.

## WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?

If you are absent from work due to **injury**, **sickness**, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000201

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to your retirement date.

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If you are on a temporary **layoff**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

### WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?

Once your coverage begins, any increased or additional coverage due to a change in your annual earnings or due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your evidence of insurability form for life insurance, if evidence of insurability is required. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional coverage due to a change in your annual earnings or due to a plan change will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### WHEN DOES YOUR COVERAGE END?

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

### WHEN ARE YOU ELIGIBLE TO ELECT DEPENDENT COVERAGE?

If you elect coverage for yourself or are insured under the plan, you are eligible to elect dependent coverage for your spouse only, your dependent children only or both.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000202

### WHEN ARE YOUR DEPENDENTS ELIGIBLE FOR COVERAGE?

The date your dependents are eligible for coverage is the later of:

- the date your insurance begins; or
- the date you first acquire a dependent.

### WHAT DEPENDENTS ARE ELIGIBLE FOR COVERAGE?

The following dependents are eligible for coverage under the plan:

- Your lawful spouse, including a legally separated spouse. You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee.

- Your unmarried children from live birth but less than age 19. Stillborn children are not eligible for coverage.

- Your unmarried dependent children age 19 or over but under age 25 also are eligible if they are full-time students at an **accredited school**.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

No dependent child may be covered by more than one employee in the plan.

No dependent child can be covered as both an employee and a dependent.

### WHEN DOES YOUR DEPENDENT COVERAGE BEGIN?

This plan provides coverage for your dependents. When your dependents first become eligible for coverage, you may apply for:

- any number of life benefit units for your dependent spouse; however, your dependent spouse cannot be covered for more than the maximum benefit available under the plan; and
- dependent child(ren) life insurance coverage; and
- dependent accidental death and dismemberment benefits.

Evidence of insurability is required if you are applying for any amount of dependent spouse life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

You pay 100% of the cost for your dependent coverage. Your dependents will be covered at 12:01 a.m. on the latest of:

- the date your dependents are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for dependent insurance, if you apply within 31 days after your dependent's eligibility date; or
- the date Unum approves your dependent's evidence of insurability form, if evidence of insurability is required.

_Claimant Name: Kathy  Williams      Claim #:  14865967_

UA-CL-AD&D-000203

If you do not apply for dependent spouse and/or child coverage on or before the 31st day after your dependent's eligibility date, you can apply at the next annual enrollment period or at anytime during the plan year. Evidence of insurability is required for any amount of dependent life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.

Dependent coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent evidence of insurability form for life insurance.

Dependent coverage applied for at anytime other than during an annual enrollment period year will be at 12:01 a.m. on the later of:

- the date you apply for dependent accidental death and dismemberment insurance; or
- the date Unum approves your dependent's evidence of insurability form for life insurance.

### WHEN CAN YOU CHANGE YOUR DEPENDENT COVERAGE?

You can change your dependent spouse coverage by applying for additional benefit units at anytime during the plan year. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life Insurance by any amount. Any increase in coverage will being at 12:01 am on the date Unum approves your dependent spouse's evidence of insurability form. A decrease or cancelation in coverage will begin at 12:01 am on the later of:

- the date you provide written notice to your Employer; or
- the last day of the period for which any required contributions are made.

You can also change your dependent spouse life coverage by applying for additional benefit units during an annual enrollment period. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life insurance by any amount.

Unum and your Employer determine when the annual enrollment period begins and ends.

Any increase in dependent spouse life coverage will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000204

- the date Unum approves your dependent's evidence of insurability form.

Any decrease in dependent spouse life coverage or any cancellation of dependent coverage will begin on the first day of the next plan year.

An evidence of insurability form for your dependents can be obtained from your Employer.

### WHAT IF YOUR DEPENDENT IS TOTALLY DISABLED ON THE DATE YOUR DEPENDENT'S COVERAGE WOULD NORMALLY BEGIN?

If your eligible dependent is **totally disabled**, your dependent's coverage will begin on the date your eligible dependent no longer is totally disabled. This provision does not apply to a newborn child while dependent insurance is in effect.

### WHEN WILL CHANGES TO YOUR DEPENDENT'S COVERAGE TAKE EFFECT?

Once your dependent's coverage begins, any increased or additional dependent coverage due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your dependent's evidence of insurability form for life insurance, if evidence of insurability is required, provided your dependent is not totally disabled. You must **be** in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional dependent coverage due to a plan change will begin on the date you return to active employment.

If your dependent is totally disabled, any increased or additional dependent coverage will begin on the date your dependent is no longer totally disabled.

Any decreased coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease.

### WHEN DOES YOUR DEPENDENT'S COVERAGE END?

Your dependent's coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the date of your death;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Coverage for any one dependent will end on the earliest of:

- the date your coverage under a plan ends;
- the date your dependent ceases to be an eligible dependent;
- for a spouse, the date of divorce or annulment.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000205

Unum will provide coverage for a payable claim which occurs while your dependents are covered under the Summary of Benefits or plan.

### *WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?*

You or your authorized representative can start legal action regarding a claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

### *HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?*

Unum considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

As a basis for doing this, we will use only statements made in a signed application by the Employer, or an application or evidence of insurability form signed by you, a copy of which has been given:

- to you; or
- your beneficiary, or a person acting on your behalf, if you:
  - die; or
  - are not competent.

Unum can take action only in the first 2 years coverage is in force.

If an individual's age is misstated:

- the correct age will decide if and in what amounts insurance is valid under the Summary of Benefits; and
- a fair adjustment of the premium will be made.

### *HOW WILL UNUM HANDLE INSURANCE FRAUD?*

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000206

### DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For the purposes of the Summary of Benefits, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000207

# LIFE INSURANCE

## BENEFIT INFORMATION

### WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT?

Your beneficiary(ies) will receive payment when Unum approves your death claim.

### WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF DEATH?

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

### HOW MUCH WILL UNUM PAY YOU IF UNUM APPROVES YOUR DEPENDENT'S DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IF UNUM APPROVES YOUR DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHAT ARE YOUR ANNUAL EARNINGS?

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000208

### WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (Conversion Privilege)

When coverage ends under the plan, you and your dependents can convert your coverages to individual life policies, without evidence of insurability. The maximum amounts that you can convert are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

If you convert to an individual life policy, then return to work, and, again, become insured under the plan, you are not eligible to convert to an individual life policy again. However, you do not need to surrender that individual life policy when you return to work.

Converted insurance may be of any type of the level premium whole life plans then in use by Unum. The person may elect one year of Preliminary Term insurance under the level premium whole life policy. The individual policy will not contain disability or other extra benefits.

### WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (Conversion Privilege)

You and your dependents may convert a limited amount of life insurance if you have been insured under your Employer's group plan with Unum for at least five (5) years and the Summary of Benefits or the plan:

- is cancelled with Unum; or
- changes so that you no longer are eligible.

The individual life policy maximum for each of you will be the lesser of:

- $10,000; or
- your or your dependent's coverage amounts under the plan less any amounts that become available under any other group life plan offered by your Employer within 31 days after the date the Summary of Benefits or the plan is cancelled.

### PREMIUMS

Premiums for the converted insurance will be based on:

- the person's then attained age on the effective date of the individual life policy;
- the type and amount of insurance to be converted;
- Unum's customary rates in use at that time; and
- the class of risk to which the person belongs.

If the premium payment has been made, the individual life policy will be effective at the end of the 31 day conversion application period.

LIFE-BEN-2  (1/1/2015) REV                                      27

UA-CL-AD&D-000209

### *DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD*

If you or your dependents die within the 31 day conversion application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

### *EMPLOYER NOTICE*

Your Employer must notify each person of their conversion privileges 15 days before the date that person's life insurance terminates.

If your Employer does not notify that person 15 days before that person's life insurance terminates, the time allowed for that person to exercise their life conversion privilege will be extended 15 days from the date your Employer does notify that person.

In no event will the time allowed for a person to exercise their life conversion privilege be extended beyond 60 days from the date that person's life insurance terminates.

Any extended application period provided under this provision does not continue any insurance beyond the period provided in this Summary of Benefits.

### *APPLYING FOR CONVERSION*

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

### *WILL UNUM ACCELERATE YOUR OR YOUR DEPENDENT'S DEATH BENEFIT FOR THE PLAN IF YOU OR YOUR DEPENDENT BECOMES TERMINALLY ILL? (Accelerated Benefit)*

If you or your dependent becomes terminally ill while you or your dependent is insured by the plan, Unum will pay you a portion of your or your dependent's life insurance benefit one time. The payment will be based on 75% of your or your dependent's life insurance amount. However, the one-time benefit paid will not be greater than $500,000.

Your or your dependent's right to exercise this option and to receive payment is subject to the following:

- you or your dependent requests this election, in writing, on a form acceptable to Unum;
- you or your dependent must be terminally ill at the time of payment of the Accelerated Benefit;

LIFE-BEN-3 (1/1/2015) REV                    28

UA-CL-AD&D-000210

- your or your dependent's physician must certify, in writing, that you or your dependent is terminally ill and your or your dependent's life expectancy has been reduced to less than 12 months; and
- the physician's certification must be deemed satisfactory to Unum.

The Accelerated Benefit is available on a voluntary basis. Therefore, you or your dependent is not eligible for benefits if:

- you or your dependent is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- you or your dependent is required by a government agency to use this benefit in order to apply for, get, or otherwise keep a government benefit or entitlement.

Premium payments must continue to be paid on the full amount of life insurance.

Also, premium payments must continue to be paid on the full amount of your dependent's life insurance.

If you have assigned your rights under the plan to an assignee or made an irrevocable beneficiary designation, Unum must receive consent, in writing, that the assignee or irrevocable beneficiary has agreed to the Accelerated Benefit payment on your behalf in a form acceptable to Unum before benefits are payable.

An election to receive an Accelerated Benefit will have the following effect on other benefits:

- the death benefit payable will be reduced by any amount of Accelerated Benefit that has been paid; and
- any amount of life insurance that may be available under the conversion privilege will be reduced by the amount of the Accelerated Benefit paid. The remaining life insurance amount will be paid according to the terms of the Summary of Benefits subject to any reduction and termination provisions.

Benefits paid may be taxable. Unum is not responsible for any tax or other effects of any benefit paid. As with all tax matters, you or your dependent should consult your personal tax advisor to assess the impact of this benefit.

## WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any losses where death is caused by, contributed to by, or results from:

- suicide occurring within 12 months after your or your dependent's initial effective date of insurance; and
- suicide occurring within 12 months after the date any increases or additional insurance become effective for you or your dependent.

The suicide exclusion will apply to any amounts of insurance for which you pay all or part of the premium.

The suicide exclusion also will apply to any amount that is subject to evidence of insurability requirements and Unum approves the evidence of insurability form and the amount you or your dependent applied for at that time.

UA-CL-AD&D-000211

If you or your dependent dies as a result of a suicide Unum will refund all premium paid for coverage on you or your dependent that became effective within the 12 month period immediately preceding the date of your or your dependent's suicide.

LIFE-BEN-5  (1/1/2015) REV                                    30

UA-CL-AD&D-000212

# LIFE INSURANCE

## OTHER BENEFIT FEATURES

***WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)***

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of life insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of life insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for a child will not be more than:

- the highest amount of life insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of life insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

*Claimant Name: Kathy Williams        Claim #:  14865967*

UA-CL-AD&D-000213

## APPLYING FOR PORTABLE COVERAGE

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000214

If we determine that because of an injury or sickness, which has a material effect on life expectancy, you or your dependents were not eligible for portability at the time you or your dependents elected portable coverage, the benefit will be adjusted to the amount of whole life coverage the premium would have purchased under the Conversion Privilege.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of life insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of life insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. All increases are subject to evidence of insurability. Portable coverage will reduce at the ages and amounts shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000215

### PREMIUM RATE CHANGES FOR PORTABLE COVERAGE

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

### APPLYING FOR CONVERSION, IF PORTABLE COVERAGE ENDS OR IS NOT AVAILABLE

If you or your dependent is not eligible to apply for portable coverage or portable coverage ends, then you or your dependent may qualify for conversion coverage. Refer to Conversion Privilege under this plan.

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine  04122-1350
1-800-343-5406

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000216

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## BENEFIT INFORMATION

***WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT IN THE EVENT OF YOUR DEATH IF YOUR DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

Your beneficiary(ies) will receive payment when Unum approves your death claim providing you meet certain conditions.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF YOUR DEPENDENT'S DEATH IF YOUR DEPENDENT'S DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the death claim for your dependent providing certain conditions are met.

***WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF ACCIDENTAL DEATH?***

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF CERTAIN OTHER COVERED LOSSES IF THE LOSS IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the claim.

***HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IN THE EVENT OF YOUR ACCIDENTAL DEATH OR YOU FOR YOUR DEPENDENT'S ACCIDENTAL DEATH OR FOR CERTAIN OTHER COVERED LOSSES?***

If Unum approves the claim, Unum will determine the payment according to the Covered Losses and Benefits List below. The benefit Unum will pay is listed opposite the corresponding covered loss.

The benefit will be paid only if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

| Covered Losses | Benefit Amounts |
|---|---|
| Life | The Full Amount |
| Both Hands or Both Feet or Sight of Both Eyes | The Full Amount |
| One Hand and One Foot | The Full Amount |
| One Hand and Sight of One Eye | The Full Amount |
| One Foot and | |

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000217

| | |
|---|---|
| Sight of One Eye | The Full Amount |
| Speech and Hearing | The Full Amount |
| Quadriplegia | The Full Amount |
| Triplegia | Three Quarters The Full Amount |
| Paraplegia | Three Quarters The Full Amount |
| One Hand or One Foot | One Half The Full Amount |
| Sight of One Eye | One Half The Full Amount |
| Speech or Hearing | One Half The Full Amount |
| Hemiplegia | One Half The Full Amount |
| Thumb and Index Finger of Same Hand | One Quarter The Full Amount |
| Uniplegia | One Quarter The Full Amount |

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

## *WHAT ARE YOUR ANNUAL EARNINGS?*

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

## *WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?*

If you have an accidental bodily injury that results in one or more of the covered losses while you are on a covered layoff or leave of absence, we will use your

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000218

annual earnings from your Employer in effect just prior to the date your absence began.

### *WHAT REPATRIATION BENEFIT WILL UNUM PROVIDE?*

Unum will pay an additional benefit for the preparation and transportation of your or your dependent's body to a mortuary chosen by you or your authorized representative.  Payment will be made if, as the result of a covered accident, you or your dependent suffers loss of life at least 100 miles away from your or your dependent's principal place of residence.

However, when combined with two or more Unum accidental death and dismemberment insurance plans, the combined overall maximum for these plans together cannot exceed the actual expenses for the preparation and transportation of your or your dependent's body to a mortuary.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHAT SEATBELT(S) AND AIR BAG BENEFIT WILL UNUM PROVIDE?*

Unum will pay you or your authorized representative an additional benefit if you or your dependent sustains an accidental bodily injury which causes your or your dependent's death while you or your dependent is driving or riding in a **Private Passenger Car**, provided:

For Seatbelt(s):

- the Private Passenger Car is equipped with seatbelt(s); and
- the seatbelt(s) were in actual use and properly fastened at the time of the covered accident; and
- the position of the seatbelt(s) are certified in the official report of the covered accident, or by the investigating officer.  A copy of the police accident report must be submitted with the claim.

Also, if such certification is not available, and it is clear that you or your dependent was properly wearing seatbelt(s), then we will pay the additional seatbelt benefit.

However, if such certification is not available, and it is unclear whether you or your dependent was properly wearing seatbelt(s), then we will pay a fixed benefit of $1,000.

We will only pay the seatbelt benefit for the death of a minor, dependent child, if the child is correctly strapped and fastened in the appropriate seat for the child's age and weight as defined by state or federal guidelines.  The seatbelt device must also be approved by the state or federal government for the dependent child's age and weight.

An automatic harness seatbelt will not be considered properly fastened unless a lap belt is also used.

For Air Bag:

UA-CL-AD&D-000219

- the Private Passenger Car is equipped with an air bag for the seat in which you are seated; and
- the seatbelt(s) must be in actual use and properly fastened at the time of the covered accident.

No benefit will be paid if you or your dependent is the driver of the Private Passenger Car and does not hold a current and valid driver's license.

No benefit will be paid if Unum is able to verify that the air bag(s) had been disengaged prior to the accident.

The accident causing your or your dependent's death must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### WHAT EDUCATION BENEFIT WILL UNUM PROVIDE FOR YOUR QUALIFIED CHILDREN?

Unum will pay your authorized representative on behalf of each of your qualified children a lump sum payment if:

- you lose your life:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your accidental bodily injury occurred while you were insured under the plan;
- proof is furnished to Unum that the child is a **qualified child**; and
- the qualified child continues to be enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level.

The benefit amount per academic year, maximum benefit payments, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHEN WILL THE EDUCATION BENEFIT END FOR EACH QUALIFIED CHILD?

The education benefit will terminate for each qualified child on the earliest of the following dates:

- the date your qualified child fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### WHAT COVERAGE FOR EXPOSURE AND DISAPPEARANCE BENEFIT WILL UNUM PROVIDE?

Unum will pay a benefit if you or your dependent sustains an accidental bodily injury and are unavoidably exposed to the elements and suffer a loss.

We will presume you or your dependent suffered loss of life due to an accident if:

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000220

- you or your dependent are riding in a common public passenger carrier that is involved in an accident covered under the Summary of Benefits; and
- as a result of the accident, the common public passenger carrier is wrecked, sinks, is stranded, or disappears; and
- your or your dependent's body is not found within 1 year of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### WHAT CHILD CARE BENEFIT WILL UNUM PROVIDE?

Unum will pay you, your spouse or your or your spouse's authorized representative on behalf of each of your qualified children an annual benefit amount for child care if:

- you or your spouse die:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your or your spouse's accidental bodily injury occurred while you or your spouse was insured under the plan;
- proof is furnished to Unum that the child is a qualified child.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident.

The annual benefit amount, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHEN WILL THE CHILD CARE BENEFIT END FOR EACH QUALIFIED CHILD?

The child care benefit will terminate for each qualified child on the earliest of the following dates:

- the date you, your spouse or your or your spouse's authorized representative fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### WHAT COMA BENEFIT WILL UNUM PROVIDE?

Unum will pay a benefit to your or your dependent's beneficiary if you or your dependents sustain an accidental bodily injury which directly results in your or your dependents being in a **coma** or a (persistent) **vegetative state**. The coma must begin within 31 days of the accident.

No benefits are payable for the first 31 days that you or your dependents are in a coma. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

Also, the accident must occur while you or your dependents are insured under the plan.

Claimant Name: Kathy Williams     Claim #:   14865967

UA-CL-AD&D-000221

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

The monthly benefit amount and maximum number of months are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT REHABILITATION PHYSICAL THERAPY BENEFIT WILL UNUM PROVIDE?*

Unum will pay you or your dependents an additional benefit for rehabilitative physical therapy that is prescribed by your or your dependent's attending physician if you or your dependents sustain an accidental bodily injury that results in one or more of the covered losses outlined in the Covered Losses and Benefits List.

The benefit amount and maximum benefit amount are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:

- suicide while sane or intentionally self-inflicted injury while sane.
- active participation in a riot.
- an attempt to commit or commission of a crime.
- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol.
- service on full-time active duty in the Armed Forces of any country or international authority.
- travel or flight in any vehicle or device for aerial navigation, including boarding or alighting from it while:
  - it is being used for test or experimental purposes;
  - you or your dependent is operating, learning to operate or serving as a member of the crew;
  - it is being operated by or for or under the direction of any military authority.
  This exclusion does not apply to:
  - transport type aircraft operated by the Military Airlift Command of the United States; or
  - similar air transport service of any other country.
- travel or flight in any aircraft or device for aerial navigation, including boarding or alighting from it, owned or leased by or on behalf of your Employer.
- disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.
- being **intoxicated**.
- bacterial infection. This exclusion does not apply to you or your dependent when the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

AD&D-BEN-6 (1/1/2015) REV                40

UA-CL-AD&D-000222

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## OTHER BENEFIT FEATURES

### WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of accidental death and dismemberment insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of accidental death and dismemberment insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for a child will not be more than:

- the highest amount of accidental death and dismemberment insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000223

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of AD&D insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

### *APPLYING FOR PORTABLE COVERAGE*

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000224

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of AD&D insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of accidental death and dismemberment insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. Portable coverage will reduce at the ages and amounts shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000225

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

***PREMIUM RATE CHANGES FOR PORTABLE COVERAGE***

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000226

# GLOSSARY

**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause.

**ACCREDITED SCHOOL** means an accredited post-secondary institution of higher learning for full-time students beyond the 12th grade level.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**ACTIVITIES OF DAILY LIVING** means:

- Bathing - the ability to wash oneself either in the tub or shower or by sponge bath with or without equipment or adaptive devices.
- Dressing - the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn.
- Toileting - the ability to get to and from and on and off the toilet; to maintain a reasonable level of personal hygiene, and to care for clothing.
- Transferring - the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
- Continence - the ability to either:
  - voluntarily control bowel and bladder function; or
  - if incontinent, be able to maintain a reasonable level of personal hygiene.
- Eating - the ability to get nourishment into the body.

A person is considered unable to perform an activity of daily living if the task cannot be performed safely without another person's stand-by assistance or verbal cueing.

**ANNUAL EARNINGS** means your annual income received from your Employer as defined in the plan.

**ANNUAL ENROLLMENT PERIOD** means a period of time before the beginning of each plan year.

**COGNITIVELY IMPAIRED** means a person has a deterioration or loss in intellectual capacity resulting from injury, sickness, advanced age, Alzheimer's disease or similar forms of irreversible dementia and needs another person's assistance or verbal cueing for his or her own protection or for the protection of others.

UA-CL-AD&D-000227

**COMA** means being in a profound stupor or state of complete and total unconsciousness. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Employer/Applicant named in the Application For Participation in the Select Group Insurance Trust, on the first page of the Summary of Benefits and in all amendments. It includes any division, subsidiary or affiliated company named in the Summary of Benefits.

**EVIDENCE OF INSURABILITY** means a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage. Evidence of insurability will be at Unum's expense.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**HEMIPLEGIA** means total and irreversible paralysis of both limbs on either side of the body (i.e. the right arm and right leg or the left arm and left leg).

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause.

**INSURED** means any person covered under a plan.

**INTOXICATED** means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIFE THREATENING CONDITION** is a critical health condition that possibly could result in your dependent's loss of life.

**LOSS OF A FOOT** means that all of the foot is cut off at or above the ankle joint.

**LOSS OF A HAND** means that all four fingers are cut off at or above the knuckles joining each to the hand.

**LOSS OF HEARING** means the total and irrecoverable loss of hearing in both ears.

**LOSS OF SIGHT** means the eye is totally blind and that no sight can be restored in that eye.

*Claimant Name: Kathy Williams        Claim #: 14865967*

UA-CL-AD&D-000228

**LOSS OF SPEECH** means the total and irrecoverable loss of speech.

**LOSS OF THUMB AND INDEX FINGER** means that all of the thumb and index finger are cut off at or above the joint closest to the wrist.

**PARAPLEGIA** means total and irreversible paralysis of both lower limbs.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the Summary of Benefits.

**PHYSICIAN** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Unum will not recognize you, or your spouse, children, parents or siblings as a physician for a claim that you send to us.

**PLAN** means a line of coverage under the Summary of Benefits.

**PRIVATE PASSENGER CAR** means a validly registered four-wheel private passenger car (including Employer-owned cars), station wagons, jeeps, pick-up trucks, and vans that are used only as private passenger cars.

**QUADRIPLEGIA** means total and irreversible paralysis of all four limbs.

**QUALIFIED CHILD** means:

- **for purposes of the Education Benefit**, any of your unmarried dependent children under age 25 who, on the date of your death as a result of an accidental bodily injury, was either:

  - enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level; or
  - at the 12th grade level and enrolls as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level within 365 days following the date of your death.

- **for purposes of the Child Care Benefit**, any of your unmarried dependent children under age 14 who, were enrolled in a licensed day care facility, school facility, or other similar program for 90 continuous days before the date of the accident causing your death. The Child Care Benefit will not be extended to any of your children born after the date of your death unless pregnancy commenced prior to the date of your death.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000229

**RETAINED ASSET ACCOUNT** is an interest bearing account established through an intermediary bank in the name of you or your beneficiary, as owner.

**SICKNESS** means:

- **for purposes of Portability**, an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.
- **for all other purposes**, an illness or disease.

**TOTALLY DISABLED** means that, as a result of an injury, a sickness or a disorder, your dependent:

- is confined in a hospital or similar institution;
- is unable to perform two or more activities of daily living (ADLs) because of a physical or mental incapacity resulting from an injury or a sickness;
- is cognitively impaired;
- has a life threatening condition;
- is unable to attend school outside of home provided your dependent is a child and of school age (ages 5-19 years of age); or
- is at a developmental age which is less than half the chronological age by milestones or other pediatric developmental testing (e.g., Denver Developmental Test or similar test) provided your dependent is a child and of pre-school age (up to 6 years of age).

**TRIPLEGIA** means total and irreversible paralysis of three limbs.

**TRUST** means the policyholder trust named on the first page of the Summary of Benefits and all amendments to the policy.

**UNIPLEGIA** means total and irreversible paralysis of one limb.

**VEGETATIVE STATE** means being completely unaware of one's self and the environment with the presence of sleep-awake cycles and at least partial preservation of involuntary brain functions.  Such vegetative state must be due to an accidental bodily injury and must begin within 31 days of the date of the accident.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE**, **US** and **OUR** means Unum Life Insurance Company of America.

**YOU** means an employee who is eligible for Unum coverage.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000230

# ERISA

## Additional Summary Plan Description Information

If the Summary of Benefits provides benefits under a Plan which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the following provisions apply. These provisions, together with your certificate of coverage, constitute the summary plan description. The summary plan description and the Summary of Benefits constitute the Plan. Benefit determinations are controlled exclusively by the Summary of Benefits, your certificate of coverage and the information contained in this document.

**Name of Plan:**
BlueScope Steel North America Corporation Plan

**Name and Address of Employer:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

**Plan Identification Number:**
a. Employer IRS Identification #: 23-2081882
b. Plan #: 501

**Type of Welfare Plan:**
Life and Accidental Death and Dismemberment

**Type of Administration:**
The Plan is administered by the Plan Administrator. Benefits are administered by the insurer and provided in accordance with the insurance Summary of Benefits issued to the Plan.

**ERISA Plan Year Ends:**
December 31

**Plan Administrator, Name, Address, and Telephone Number:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069
(816) 968-3000

BlueScope Steel North America Corporation is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties. The Plan Administrator may designate Trustees of the Plan, in which case the Administrator will advise you separately of the name, title and address of each Trustee.

**Agent for Service of Legal Process on the Plan:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000231

Service of legal process may also be made upon the Plan Administrator, or a Trustee of the Plan, if any.

**Funding and Contributions:**

The Plan is funded by insurance issued by Unum Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122 (hereinafter referred to as "Unum") under identification number 382480 012. Contributions to the Plan are made as stated under "WHO PAYS FOR THE COVERAGE" in the Certificate of Coverage.

## EMPLOYER'S RIGHT TO AMEND THE PLAN

The Employer reserves the right, in its sole and absolute discretion, to amend, modify, or terminate, in whole or in part, any or all of the provisions of the Plan (including any related documents and underlying policies), at any time and for any reason or no reason. Any amendment, modification, or termination must be in writing and endorsed on or attached to the Plan.

## EMPLOYER'S RIGHT TO REQUEST SUMMARY OF BENEFITS CHANGE

The Employer can request a Summary of Benefits change. Only an officer or registrar of Unum can approve a change. The change must be in writing and endorsed on or attached to the Summary of Benefits.

## MODIFYING OR CANCELLING THE SUMMARY OF BENEFITS OR A PLAN UNDER THE SUMMARY OF BENEFITS

The Summary of Benefits or a plan under the Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

Unum may cancel or modify the Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to the Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or
- the premium is not paid in accordance with the provisions of the Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger,

*Claimant Name: Kathy Williams      Claim #:  14865967*

UA-CL-AD&D-000232

divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day grace period.

If Unum cancels or modifies the Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel the Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify the Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel the Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, the Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels the Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the Summary of Benefits or a plan is cancelled, the cancellation will not affect a payable claim.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your insurance certificate. To complete your claim filing, Unum must receive the claim information it requests from you (or your authorized representative), your attending physician and your Employer. If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

## CLAIMS PROCEDURES

In the event that your claim is denied, either in full or in part, Unum will notify you in writing within 90 days after your claim was filed. Under special circumstances, Unum is allowed an additional period of not more than 90 days (180 days in total) within which to notify you of its decision. If such an extension is required, you will receive a written notice from Unum indicating the reason for the delay and the date you may expect a final decision. Unum's notice of denial shall include:

- the specific reason or reasons for denial with reference to those Plan provisions on which the denial is based;
- a description of any additional material or information necessary to complete the claim and why that material or information is necessary; and
- a description of the Plan's procedures and applicable time limits for appealing the determination, including a statement of your right to bring a lawsuit under Section 502(a) of ERISA following an adverse determination from Unum on appeal.

UA-CL-AD&D-000233

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

If you or your authorized representative appeal a denied claim, it must be submitted within 90 days after you receive Unum's notice of denial. You have the right to:

- submit a request for review, in writing, to Unum;
- upon request and free of charge, reasonable access to and copies of, all relevant documents as defined by applicable U.S. Department of Labor regulations; and
- submit written comments, documents, records and other information relating to the claim to Unum.

Unum will make a full and fair review of the claim and all new information submitted whether or not presented or available at the initial determination, and may require additional documents as it deems necessary or desirable in making such a review. A final decision on the review shall be made not later than 60 days following receipt of the written request for review. If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension and the date by which the Plan expects to make a decision. If an extension is required due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the necessary information and the date by which you need to provide it to us. The 60-day extension of the appeal review period will begin after you have provided that information.

The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference, again, to those Summary of Benefits' provisions upon which the final decision is based. It will also include a statement describing your access to documents and describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the determination.

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

UA-CL-AD&D-000234

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

Enforce Your Rights

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, if, for example, it finds your claim is frivolous.

Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

UA-CL-AD&D-000235

## OTHER RIGHTS

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the Summary of Benefits. You agree that Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

## DISCRETIONARY ACTS

The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Once you are deemed to have exhausted your appeal rights under the Plan, you have the right to seek court review under Section 502(a) of ERISA of any benefit determinations with which you disagree. The court will determine the standard of review it will apply in evaluating those decisions.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000236

## NOTICE OF PROTECTION PROVIDED BY
## MISSOURI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

This notice provides a **brief summary** of the Missouri Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. This safety net was created under Missouri law, which determines who and what is covered and the amounts of coverage.

The Association was established to provide protection in the unlikely event that your life, annuity, or health insurance company becomes financially unable to meet its obligations and is taken over by its insurance department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Missouri law, with funding from assessments paid by other insurance companies.

The basic protections provided by the Association are as follows:

- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values

- Health Insurance
  - $500,000 in hospital, medical and surgical insurance benefits
  - $300,000 in disability insurance benefits
  - $300,000 in long-term care insurance benefits
  - $100,000 in other types of health insurance benefits

- Annuities
  - $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is as follows:

- $300,000 in aggregate for all types of coverage listed above, with the exception of basic hospital, medical, and surgical insurance or major medical insurance
- $500,000 in aggregate for basic hospital, medical, and surgical insurance or major medical insurance
- $5,000,000 to one policy owner of multiple nongroup policies of life insurance, whether the policy owner is an individual, firm, corporation, or other person, and whether the persons insured are officers, managers, employees, or other persons

**Note: Certain policies and contracts may not be covered or fully covered.** For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Missouri law.

To learn more about the above protections, as well as protections relating to group contracts or retirement plans, please visit the Association's website at www.mo-iga.org, or contact:

Missouri Life and Health Insurance
Guaranty Association
994 Diamond Ridge, Suite 102

Missouri Department of Insurance,
Financial Institutions and Professional
Registration

GUAR-1 (1/1/2015) REV                                          55

UA-CL-AD&D-000237

Jefferson City, Missouri 65109         301 West High Street, Room 530
(573) 634-8455                              Jefferson City, Missouri 65101
Fax: (573) 634-8488                    (573) 522-6115

**Insurance companies and agents are not allowed by Missouri law to use the existence of the Association or its coverage to encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and Missouri law, then Missouri law will control.**

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000238

```
                              Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Claims Assistant - Life/AD&D          Name: Administrative
Status: Completed
Original Notify Date: 09/13/2018
Notify Date: 09/13/2018
Due Date:
Subject: fax request
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Morrison, Nicole J
Action:

Request Fields
------------------------------------------------------------------------
Request: Staples, Kristi-Lee 09/13/2018 09:29:50: please fax a copy of the attached
policy & booklet to attny Ben Blakeman as requested
thx

Created By: Staples, Kristi-Lee
Created Date: 09/13/2018 09:29:50          Create Site: Portland

Response Fields
------------------------------------------------------------------------
Response: Morrison, Nicole J 09/13/2018 13:40:36: done



Completed By: Morrison, Nicole J
Completed Date: 09/13/2018 13:40:36          Complete Site: Portland


Linked Document ID: (Primary Doc Type - Secondary Doc Type)
------------------------------------------------------------------------
2018052908012955FF98: Policy - Contract
2018091014322444FF98: Policy - Other
```

UA-CL-AD&D-000239

```
                              Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018091313561027D4CF

Entry Date: 09/13/2018 13:56:24

Received Date: 09/13/2018

Date Added to Claim: 09/13/2018

Primary Doc Type: Communication

Secondary Doc Type: Information Request

Medical Provider:

Document Notes: info emailed to atty

Work Notes:
```

UA-CL-AD&D-000240

---

**From:** Morrison, Nikki
**Sent:** Thursday, September 13, 2018 1:53:01 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** ben@lifeinsurance-law.com
**Cc:** Unum Customer and Benefits Support
**Subject:** Communication from Unum-Copied

If you need to reply to this message please hit "reply all".

Dear Valued Customer,

Enclosed are copies of policies related to claim number 14865967. We attempted to fax them to you, however the fax file was too large and would not go through. The attached file may contain personal non-public information. If you have any questions or concerns, please contact the specialist who signed the attached document.

Nikki Morrison
Unum Customer and Benefits Support
Phone: 1-800-445-0402
Fax: 1-800-447-2498

*Unum is pleased to offer an e-mail transmission service for your convenience in communicating information regarding your Unum policy. By using this service, the customer understands and agrees that these e-mail transmissions may contain personal and confidential data and that the transmission of such data via e-mail does not ensure or warrant the security or integrity of any information when sent via e-mail. Further, the customer assumes all risk associated with the use of this e-mail transmission and agrees that Unum Corporation shall not be liable for any loss, claim, or damage that may result from the customer's decision to transmit data to Unum Corporation via e-mail.

---

*Claimant Name: Kathy Williams    Claim #:  14865967*

AMENDMENT NO. 30

This amendment forms a part of Group Identification No. 382480 002 issued to the Employer/Applicant:

BlueScope Steel North America Corporation

The entire Summary of Benefits is replaced by the Summary of Benefits attached to this amendment.

The effective date of these changes is January 1, 2015. The changes only apply to deaths and covered losses that occur on or after the effective date.

The Summary of Benefits' terms and provisions will apply other than as stated in this amendment.

Dated at Portland, Maine on July 24, 2017.

Unum Life Insurance Company of America

By _____

Secretary

If this amendment is unacceptable, please sign below and return this amendment to Unum Life Insurance Company of America at Portland, Maine within 90 days of July 24, 2017.

**YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF THIS AMENDMENT.**

BlueScope Steel North America Corporation

By _____
Signature and Title of Officer

C.AMEND-1            AMEND-1  (1/1/2015) REV

Claimant Name: Kathy Williams    Claim #:  14865967

UA-CL-AD&D-000242



**GROUP INSURANCE
SUMMARY OF BENEFITS
NON-PARTICIPATING**

**IDENTIFICATION NUMBER:**    382480 002

**EFFECTIVE DATE OF
COVERAGE:**    January 1, 1999

**ANNIVERSARY DATE:**    January 1

**GOVERNING JURISDICTION:**    Maine

**Unum Life Insurance Company of America
insures the lives of**

**BlueScope Steel North America Corporation**

**under the
Select Group Insurance Trust
Policy No. 292000**

Unum Life Insurance Company of America (referred to as Unum) will provide benefits under this Summary of Benefits.  Unum makes this promise subject to all of this Summary of Benefits' provisions.

The Employer should read this Summary of Benefits carefully and contact Unum promptly with any questions.  This Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

Signed for Unum at Portland, Maine on the Effective Date of Coverage.

President                          Secretary

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

C.FP-2                    C.FP-1  (1/1/2015) REV

# TABLE OF CONTENTS

BENEFITS AT A GLANCE .................................................................................................B@G-LIFE-1

LIFE INSURANCE PLAN ................................................................................................B@G-LIFE-1

BENEFITS AT A GLANCE ...............................................................................................B@G-AD&D-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN .......................B@G-AD&D-1

CLAIM INFORMATION ....................................................................................................LIFE-CLM-1

LIFE INSURANCE............................................................................................................LIFE-CLM-1

CLAIM INFORMATION ....................................................................................................AD&D-CLM-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE....................................AD&D-CLM-1

EMPLOYER PROVISIONS ..............................................................................................EMPLOYER-1

CERTIFICATE SECTION ................................................................................................CC.FP-1

GENERAL PROVISIONS..................................................................................................EMPLOYEE-1

LIFE INSURANCE............................................................................................................LIFE-BEN-1

BENEFIT INFORMATION ...............................................................................................LIFE-BEN-1

OTHER BENEFIT FEATURES.........................................................................................LIFE-OTR-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE....................................AD&D-BEN-1

BENEFIT INFORMATION ...............................................................................................AD&D-BEN-1

OTHER BENEFIT FEATURES.........................................................................................AD&D-OTR-1

GLOSSARY ......................................................................................................................GLOSSARY-1

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000244

# BENEFITS AT A GLANCE

## LIFE INSURANCE PLAN

This life insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death. The amount your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**    January 1, 1999

**PLAN YEAR:**

January 1, 1999 to January 1, 2000 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:**    382480 002

**ELIGIBLE GROUP(S):**

Group 1
All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

Group 2
All Fairfield Union Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**

For employees in an eligible group on or before January 1, 1999: The greater of the waiting period in effect under the prior Unum plan, if any, or None

For employees entering an eligible group from January 1, 1999 through December 31, 2008: First of the month coincident with or next following date of active employment

For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All Fairfield Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before October 1, 2010: 90 days of continuous active employment

For employees entering an eligible group after October 1, 2010: 90 days of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

B@G-LIFE-1 (1/1/2015) REV

*Claimant Name: Kathy  Williams     Claim #:  14865967*

For employees entering an eligible group after January 1, 2015. First of the month following 1,000 hours worked

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic Life Insurance Benefit:*

Your Employer pays the cost of your coverage.

*Additional Life Insurance Benefit:*

You pay the cost of your coverage.

**For Your Dependents:**

*Basic Life Insurance Benefit:*

**All Fairfield Union Employees of BlueScope Steel North America**
Your Employer pays the cost of your dependent coverage.

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**

No Coverage

*Additional Life Insurance Benefit:*

You pay the cost of your dependent coverage.

**LIFE INSURANCE BENEFIT:**

**AMOUNT OF LIFE INSURANCE FOR YOU**

**BASIC LIFE INSURANCE BENEFIT**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**
1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**All Fairfield Union Employees of BlueScope Steel North America**
$30,000

**ADDITIONAL LIFE INSURANCE BENEFIT OPTIONS:**

*Option 1*

1 x annual earnings

*Option 2*

2 x annual earnings

B@G-LIFE-2 (1/1/2015) REV

UA-CL-AD&D-000246

*Option 3*

3 x annual earnings

*Option 4*

4 x annual earnings

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

AMOUNT OF LIFE INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED

If you have reached age 70 but not age 75, your amount of life insurance will be:
- 67% of the amount of life insurance you have prior to age 70; or
- 67% of the amount of life insurance shown above if you become insured on or after age 70 but before age 75.

If you have reached age 75 or more, your amount of life insurance will be:
- 50% of the amount of life insurance you have prior to your first reduction; or
- 50% of the amount of life insurance shown above if you become insured on or after age 75.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR INSURANCE OVER:

- 2 x annual earnings (ADDITIONAL LIFE BENEFITS ONLY); or
- $750,000 (BASIC LIFE AND ADDITIONAL LIFE BENEFITS COMBINED), whichever is lower.

Evidence of Insurability is not required for amounts of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

OVERALL MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$1,000,000

**AMOUNT OF LIFE INSURANCE FOR YOUR DEPENDENTS**

**BASIC LIFE INSURANCE BENEFIT:**

**All Fairfield Union Employees of BlueScope Steel North America**
| | |
|---|---|
| **Spouse:** | **Children:** |
| $5,000 | Live birth to age 19 or to 25 |
| | if a full-time student: $5,000 |

**ADDITIONAL LIFE INSURANCE BENEFIT:**

**Spouse:**
Amounts in $5,000 benefit units as applied for by you and approved by Unum.

All amounts are rounded to the next higher multiple of $5,000, if not already an exact multiple thereof.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR SPOUSE'S INSURANCE OVER:

$50,000

Evidence of Insurability is not required for amounts of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

B@G-LIFE-3 (1/1/2015) REV

Claimant Name: Kathy Williams      Claim #:  14865967

UA-CL-AD&D-000247

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOUR SPOUSE:

The lesser of:
- 100% of your amount of Basic Life and Additional Life Insurance combined; or
- $200,000

ADDITIONAL LIFE INSURANCE BENEFIT:

**Children:**

Live birth to age 19 or to 25
if a full-time student:          $10,000

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Accelerated Benefit

Conversion

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

B@G-LIFE-4  (1/1/2015) REV

UA-CL-AD&D-000248

# BENEFITS AT A GLANCE

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN

This accidental death and dismemberment insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death or for you in the event of any other covered loss. The amount you or your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death or any other covered loss according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**     January 1, 2009

**PLAN YEAR:**

January 1, 2009 to January 1, 2010 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:**     382480  002

**ELIGIBLE GROUP(S):**

Group 1
All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

Group 2
All Fairfield Union Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before January 1, 2009: The greater of the waiting period in effect under the prior Unum plan, if any, or None

For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All Fairfield Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before October 1, 2010: 90 days of continuous active employment

For employees entering an eligible group after October 1, 2010: 90 days of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

B@G-AD&D-1  (1/1/2015) REV

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000249

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic AD&D Insurance Benefit:*

Your Employer pays the cost of your coverage.

*Additional AD&D Insurance Benefit:*

You pay the cost of your coverage.

**For Your Dependents:**

*Basic AD&D Insurance Benefit:*

**All Fairfield Union Employees of BlueScope Steel North America**
Your Employer pays the cost of your dependent coverage.

*Additional AD&D Insurance Benefit:*

You pay the cost of your dependent coverage.

**ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT:**

**AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) INSURANCE FOR YOU**
(FULL AMOUNT)

**BASIC AD&D INSURANCE BENEFIT**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**
1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**All Fairfield Union Employees of BlueScope Steel North America**
$30,000

**ADDITIONAL AD&D INSURANCE BENEFIT:**

Amounts in $25,000 benefit units as applied for by you and approved by Unum.

OVERALL MAXIMUM BENEFIT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$600,000

**AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOUR DEPENDENTS** (FULL AMOUNT)

**BASIC AD&D INSURANCE BENEFIT:**

**All Fairfield Union Employees of BlueScope Steel North America**

| Spouse: | Children: |
|---|---|
| $5,000 | Live birth to age 19 or to 25 if a full-time student: $5,000 |

B@G-AD&D-2  (1/1/2015) REV

UA-CL-AD&D-000250

**ADDITIONAL AD&D INSURANCE BENEFIT:**

**Spouse:**
60% of your additional amount of AD&D insurance to a maximum benefit of $360,000

**Children:**

Live birth to age 19 or to 25
if a full-time student:          20% of your Additional AD&D benefit amount
                                 to a maximum of $120,000

## REPATRIATION BENEFIT FOR YOU AND YOUR DEPENDENTS

Maximum Benefit Amount:

Up to $15,000

The Repatriation Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Repatriation Benefit, your or your dependent's accidental death benefit must be paid first.

## SEATBELT(S) AND AIR BAG BENEFIT FOR YOU AND YOUR DEPENDENTS

Benefit Amount:

Seatbelt(s):  10% of the Full Amount of your or your dependent's accidental death
              and dismemberment insurance benefit.

Air Bag:       5% of the Full Amount of your or your dependent's accidental death
              and dismemberment insurance benefit.

Maximum Benefit Payment:

Seatbelt(s): $50,000

Air bag:      $10,000

The Seatbelt(s) and Air Bag Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Seatbelt(s) and Air Bag Benefit, your or your dependents accidental death benefit must be paid first.

## EDUCATION BENEFIT

Each Qualified Child

Benefit Amount per Academic Year for which a Qualified Child is enrolled:

10% of the Full Amount of the employee's accidental death and dismemberment insurance to a maximum of $10,000.

Maximum Benefit Payments:

4 per lifetime

Maximum Benefit Amount per Each Qualified Child:

$40,000

Maximum Benefit Period:

6 years from the date the first benefit payment has been made.

B@G-AD&D-3  (1/1/2015) REV

---

UA-CL-AD&D-000251

The Education Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Education Benefit, your accidental death benefit must be paid first.

**EXPOSURE AND DISAPPEARANCE BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount:     The Full Amount

**CHILD CARE BENEFIT**

<u>Each Qualified Child</u>

Annual Benefit Amount:

Birth through age 13

The lesser of:

- 10% of the Full Amount of your or your spouse's accidental death and dismemberment insurance; or

- $10,000

Maximum Benefit Amount:

$50,000

Maximum Benefit Period:

5 consecutive years

If, at the time of your or your spouse's death, you have no Qualified Child eligible for the Child Care Benefit, we will pay 10% of the Full Amount to a maximum benefit of $50,000 to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Child Care Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Child Care Benefit, your or your spouse's accidental death benefit must be paid first.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident

**COMA BENEFIT FOR YOU AND YOUR DEPENDENTS**

Monthly Benefit Amount:

1% of the Full Amount of your or your dependents accidental death and dismemberment insurance benefit

Maximum Number of Months:

100 months

**REHABILITATION PHYSICAL THERAPY BENEFIT FOR YOU AND YOUR DEPENDENTS**

Benefit Amount:

10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit

Maximum Benefit Amount:

$10,000

B@G-AD&D-4  (1/1/2015) REV

UA-CL-AD&D-000252

The Rehabilitation Physical Therapy Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order to receive the Rehabilitation Physical Therapy Benefit, your or your dependent's accidental death and dismemberment must be paid first.

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

# CLAIM INFORMATION

# LIFE INSURANCE

### *WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?*

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### *WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?*

Proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

### *WHEN CAN UNUM REQUEST AN AUTOPSY?*

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

### *HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)*

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

LIFE-CLM-1  (1/1/2015) REV

UA-CL-AD&D-000254

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's life claim is at least $10,000, Unum will make available to the beneficiary a **retained asset account** (the Unum Security Account).

Payment for the life claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the life claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the life claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

If you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

LIFE-CLM-2 (1/1/2015) REV

Claimant Name: Kathy Williams      Claim #:  14865967

UA-CL-AD&D-000255

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? (Assignability Rights)

The rights provided to you by the plan for life insurance are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

LIFE-CLM-3  (1/1/2015) REV

UA-CL-AD&D-000256

# CLAIM INFORMATION

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

### *WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?*

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### *HOW DO YOU FILE A CLAIM FOR A COVERED LOSS?*

You or your authorized representative and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

### *WHAT INFORMATION IS NEEDED AS PROOF OF CLAIM?*

If claim is based on death or other covered loss, proof of claim for death or covered loss, provided at your or your authorized representative's expense, must show:

- the cause of death or covered loss;
- the extent of the covered loss;
- the date of covered loss; and
- the name and address of any **hospital or institution** where treatment was received, including all attending **physicians.**

Also, in case of death, a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

If a claim is based on the Education Benefit, proof of claim, provided at your authorized representative's expense, must show:

- the date of enrollment of your qualified child in an accredited post-secondary institution of higher learning;
- the name of the institution;
- a list of courses for the current academic term; and
- the number of credit hours for the current academic term.

AD&D-CLM-1  (1/1/2015) REV

UA-CL-AD&D-000257

### WHEN CAN UNUM REQUEST AN AUTOPSY?

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

### HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your accidental death and dismemberment insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's accidental death or dismemberment claim is at least $10,000 Unum will make available to you or your beneficiary a **retained asset account** (the Unum Security Account).

AD&D-CLM-2  (1/1/2015) REV

UA-CL-AD&D-000258

Payment for the accidental death or dismemberment claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the accidental death or dismemberment claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the accidental death claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

The Child Care Benefit will be paid to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Education Benefit will be paid to your qualified child or the qualified child's legal representative.

If you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFITS? (Assignability Rights)

The rights provided to you by the plan(s) for accidental death insurance benefits are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

AD&D-CLM-3  (1/1/2015) REV

UA-CL-AD&D-000259

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

AD&D-CLM-4  (1/1/2015) REV

UA-CL-AD&D-000260

# EMPLOYER PROVISIONS

**WHAT DOES THIS SUMMARY OF BENEFITS CONSIST OF FOR THE EMPLOYER?**

This Summary of Benefits consists of:

- all Summary of Benefits' provisions and any amendments and/or attachments issued;
- the Employer's Participation Agreement;
- each employee's application for insurance (employee retains his own copy); and
- the certificate of coverage issued for each employee of the Employer.

This Summary of Benefits may be changed in whole or in part. Only an officer or a registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to this Summary of Benefits. No other person, including an agent, may change this Summary of Benefits or waive any part of it.

**WHAT IS THE COST OF THIS INSURANCE?**

## LIFE INSURANCE

Premium payments are *required* for an insured while he or she is disabled under this plan.

The initial premium for each plan is based on the initial rate(s) shown in the Summary of Benefits effective on the Employer's original plan effective date.

**INITIAL RATE GUARANTEE AND RATE CHANGES**

Refer to the Summary of Benefits effective on the Employer's original plan effective date.

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

The initial premium for each plan is based on the initial rate(s) shown in the Summary of Benefits effective on the Employer's original plan effective date.

The initial premium for each **plan** is based on the initial rate(s) shown in the Rate Information Amendment(s).

**INITIAL RATE GUARANTEE AND RATE CHANGES**

Refer to the Rate Information Amendment(s).

Refer to the Summary of Benefits effective on the Employer's original plan effective date.

**WHEN IS PREMIUM DUE FOR THIS SUMMARY OF BENEFITS?**

Premium Due Dates: Premium due dates are based on the Premium Due Dates shown in the Summary of Benefits effective on the Employer's original plan effective date.

EMPLOYER-1 (1/1/2015) REV

The **Employer** must send all premiums to Unum on or before their respective due date. The premium must be paid in United States dollars.

### WHEN IS PREMIUM DUE FOR THIS SUMMARY OF BENEFITS?

Premium Due Dates: Premium due dates are based on the Premium Due Dates shown in the Rate Information Amendment(s).

The **Employer** must send all premiums to Unum on or before their respective due date. The premium must be paid in United States dollars.

### WHEN ARE INCREASES OR DECREASES IN PREMIUM DUE?

Premium increases or decreases which take effect during an insurance month are adjusted and due on the next premium due date following the change. Changes will not be pro-rated daily.

If premiums are paid on other than a monthly basis, premiums for increases and decreases will result in a monthly pro-rated adjustment on the next premium due date.

Unum will only adjust premium for the current plan year and the prior plan year. In the case of fraud, premium adjustments will be made for all plan years.

### WHAT INFORMATION DOES UNUM REQUIRE FROM THE EMPLOYER?

The Employer must provide Unum with the following on a regular basis:

- information about employees:
  - who are eligible to become insured;
  - whose amounts of coverage change; and/or
  - whose coverage ends;
- occupational information and any other information that may be required to manage a claim; and
- any other information that may be reasonably required.

Employer records that, in Unum's opinion, have a bearing on this Summary of Benefits will be available for review by Unum at any reasonable time.

Clerical error or omission by Unum will not:

- prevent an employee from receiving coverage;
- affect the amount of an insured's coverage; or
- cause an employee's coverage to begin or continue when the coverage would not otherwise be effective.

### WHO CAN CANCEL OR MODIFY THIS SUMMARY OF BENEFITS OR A PLAN UNDER THIS SUMMARY OF BENEFITS?

This Summary of Benefits or a plan under this Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

EMPLOYER-2 (1/1/2015) REV

UA-CL-AD&D-000262

Unum may cancel or modify this Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to this Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or
- the premium is not paid in accordance with the provisions of this Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger, divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day **grace period**.

If Unum cancels or modifies this Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel this Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify this Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel this Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, this Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels this Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If this Summary of Benefits or a plan is cancelled, the cancellation will not affect a **payable claim**.

## *WHAT HAPPENS TO AN EMPLOYEE'S COVERAGE UNDER THIS SUMMARY OF BENEFITS WHILE HE OR SHE IS ON A FAMILY AND MEDICAL LEAVE OF ABSENCE?*

We will continue the employee's coverage in accordance with the Employer's Human Resource policy on family and medical leaves of absence if premium payments continue and the Employer approved the employee's leave in writing.

EMPLOYER-3 (1/1/2015) REV

UA-CL-AD&D-000263

Coverage will be continued until the end of the latest of:

- the leave period required by the federal Family and Medical Leave Act of 1993, and any amendments; or
- the leave period required by applicable state law; or
- the leave period provided to the employee for injury or sickness.

If the Employer's Human Resource policy doesn't provide for continuation of a plan for an employee during a family and medical leave of absence, the employee's coverage will be reinstated when he or she returns to active employment.

We will not:

- apply a new waiting period; or
- require evidence of insurability.

### DIVISIONS, SUBSIDIARIES OR AFFILIATED COMPANIES INCLUDE:

*FOR LIFE INSURANCE:*

NAME/LOCATION (CITY AND STATE)

SteelScape
Kansas City, Missouri

BlueScope Construction
Kansas City, Missouri

BlueScope Buildings
Kansas City, Missouri

ASC Profiles
Kansas City, Missouri

*FOR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE:*

NAME/LOCATION (CITY AND STATE)

SteelScape
Kansas City, Missouri

BlueScope Construction
Kansas City, Missouri

BlueScope Buildings
Kansas City, Missouri

ASC Profiles
Kansas City, Missouri

EMPLOYER-4  (1/1/2015) REV

# CERTIFICATE SECTION

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured. You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English. However, a few terms and provisions are written as required by insurance law. If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the Summary of Benefits (issued to the Employer), the Summary of Benefits will govern. The Summary of Benefits may be changed in whole or in part. Only an officer or registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to the Summary of Benefits. Any other person, including an agent, may not change the Summary of Benefits or waive any part of it.

The Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

For purposes of effective dates and ending dates under the group Summary of Benefits, all days begin at 12:01 a.m. and end at 12:00 midnight at the Employer's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

CC.FP-1  (1/1/2015) REV

UA-CL-AD&D-000265

# GENERAL PROVISIONS

## *WHAT IS THE CERTIFICATE OF COVERAGE?*

This certificate of coverage is a written statement prepared by Unum and may include attachments.  It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

## *WHEN ARE YOU ELIGIBLE FOR COVERAGE?*

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period**.

## *WHEN DOES YOUR COVERAGE BEGIN?*

This plan provides additional life benefit options and additional accidental death and dismemberment benefit units in addition to the basic life and accidental death and dismemberment benefit.  When you first become eligible for coverage, you may apply for any additional life and accidental death and dismemberment benefits.

**Evidence of insurability** is required for any amount of life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

Your Employer pays 100% of the cost of your coverage under the basic benefit.  You will automatically be covered under the basic benefit at 12:01 a.m. on the later of:

- the date you are eligible for coverage; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

You pay 100% of the cost for the additional benefits.  You will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

If you do not apply for additional benefits on or before the 31st day after your eligibility date, you can apply at the next **annual enrollment period** or at anytime during the plan year.  Evidence of insurability is required for any amount of insurance.

Coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

EMPLOYEE-1  (1/1/2015) REV

UA-CL-AD&D-000266

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

Coverage applied for at any time other than during an annual enrollment period will be effective on the date Unum approved your evidence of insurability form.

### WHEN CAN YOU CHANGE YOUR COVERAGE?

You can change your coverage by applying for additional benefits at anytime during the plan year. You can increase your coverage or decrease your coverage by any level. Evidence of insurability is required for any amount of insurance applied for during the plan year. A change in coverage that is made during a plan year will begin at 12:01 a.m. on the date Unum approves your evidence of insurability form.

You can also change your coverage by applying for a different additional benefit during an annual enrollment period.

You can increase or decrease your coverage any number of levels.

Evidence of insurability is required if you increase your coverage by any level. If you are not approved for the increase in your coverage, you will automatically remain at the same amount you had prior to applying for the increase.

Unum and your Employer determine when the annual enrollment period begins and ends. A change in coverage that is made during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

An evidence of insurability form can be obtained from your Employer.

### IS EVIDENCE OF INSURABILITY REQUIRED IF YOU RECEIVE AN INCREASE IN YOUR ANNUAL EARNINGS?

If you remain covered for the same basic benefit and the same supplemental benefit option, evidence of insurability is not required for the first $100,000 of increased life amounts due to increased annual earnings accumulated within a plan year.

Evidence of insurability is required for any increased amount of life insurance that exceeds $100,000. However, if you previously were declined coverage, evidence of insurability is required for any increases until Unum approves your evidence of insurability form.

If you are not in active employment due to an injury or sickness, this change in coverage due to a change in your annual earnings will begin on the date you return to active employment.

### WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?

If you are absent from work due to **injury**, **sickness**, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

EMPLOYEE-2 (1/1/2015) REV

UA-CL-AD&D-000267

### *ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?*

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to your retirement date.

### *ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?*

If you are on a temporary **layoff**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

### *WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?*

Once your coverage begins, any increased or additional coverage due to a change in your annual earnings or due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your evidence of insurability form for life insurance, if evidence of insurability is required. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional coverage due to a change in your annual earnings or due to a plan change will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### *WHEN DOES YOUR COVERAGE END?*

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

### *WHEN ARE YOU ELIGIBLE TO ELECT DEPENDENT COVERAGE?*

If you elect coverage for yourself or are insured under the plan, you are eligible to elect dependent coverage for your spouse only, your dependent children only or both.

EMPLOYEE-3 (1/1/2015) REV

UA-CL-AD&D-000268

## *WHEN ARE YOUR DEPENDENTS ELIGIBLE FOR COVERAGE?*

The date your dependents are eligible for coverage is the later of:

- the date your insurance begins; or
- the date you first acquire a dependent.

## *WHAT DEPENDENTS ARE ELIGIBLE FOR COVERAGE?*

The following dependents are eligible for coverage under the plan:

- Your lawful spouse, including a legally separated spouse.  You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee.

- Your unmarried children from live birth but less than age 19.  Stillborn children are not eligible for coverage.

- Your unmarried dependent children age 19 or over but under age 25 also are eligible if they are full-time students at an **accredited school**.

Children include your own natural offspring, lawfully adopted children and stepchildren.  They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship.  A child will be considered adopted on the date of placement in your home.

No dependent child may be covered by more than one employee in the plan.

No dependent child can be covered as both an employee and a dependent.

## *WHEN DOES YOUR DEPENDENT COVERAGE BEGIN?*

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees**
This plan provides coverage for your dependents.  When your dependents first become eligible for coverage, you may apply for:

- any number of life benefit units for your dependent spouse; however, your dependent spouse cannot be covered for more than the maximum benefit available under the plan; and
- dependent child(ren) life insurance coverage; and
- dependent accidental death and dismemberment benefits.

Evidence of insurability is required if you are applying for any amount of dependent spouse life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

You pay 100% of the cost for your dependent coverage.  Your dependents will be covered at 12:01 a.m. on the latest of:

- the date your dependents are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for dependent insurance, if you apply within 31 days after your dependent's eligibility date; or

UA-CL-AD&D-000269

- the date Unum approves your dependent's evidence of insurability form, if evidence of insurability is required.

If you do not apply for dependent spouse and/or child coverage on or before the 31st day after your dependent's eligibility date, you can apply at the next annual enrollment period or at anytime during the plan year. Evidence of insurability is required for any amount of dependent life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.

Dependent coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent evidence of insurability form for life insurance.

Dependent coverage applied for at anytime other than during an annual enrollment period year will be at 12:01 a.m. on the later of:

- the date you apply for dependent accidental death and dismemberment insurance; or
- the date Unum approves your dependent's evidence of insurability form for life insurance.

**All Fairfield Union Employees of BlueScope Steel North-America**
This plan provides additional benefits in addition to the basic benefit for your dependents. When your dependents first become eligible for coverage, you may apply for:

- any number of additional life benefit units for your dependent spouse; however, your dependent spouse cannot be covered for more than the maximum benefit available under the plan; and
- additional dependent child(ren) life insurance coverage; and
- dependent accidental death and dismemberment benefits.

Evidence of insurability is required if you are applying for any amount of dependent spouse life insurance over the amount shown in the LIFE INSURANCE "BENEFITS AT A GLANCE" page.

Your Employer pays 100% of the cost for your basic dependent coverage. Your dependents will be covered at 12:01 a.m. on the date your dependents are eligible for coverage.

You pay 100% of the cost for your additional dependent coverage. Your dependents will be covered at 12:01 a.m. on the latest of:

- the date your dependents are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for dependent insurance, if you apply within 31 days after your dependent's eligibility date; or
- the date Unum approves your dependent's evidence of insurability form, if evidence of insurability is required.

EMPLOYEE-5 (1/1/2015) REV

UA-CL-AD&D-000270

If you do not apply for dependent spouse and/or child coverage on or before the 31st day after your dependent's eligibility date, you can apply at the next annual enrollment period or at anytime during the plan year. Evidence of insurability is required for any amount of dependent life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.

Dependent coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent evidence of insurability form for life insurance.

Dependent coverage applied for at anytime other than during an annual enrollment period will be at 12:01 a.m. on the later of:

- the date you apply for dependent accidental death and dismemberment insurance; or
- the date Unum approves your dependent's evidence of insurability form for life insurance

### *WHEN CAN YOU CHANGE YOUR DEPENDENT COVERAGE?*

You can change your dependent spouse coverage by applying for additional benefit units at anytime during the plan year. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life Insurance by any amount. Any increase in coverage will being at 12:01 am on the date Unum approves your dependent spouse's evidence of insurability form. A decrease or cancelation in coverage will begin at 12:01 am on the later of:

- the date you provide written notice to your Employer; or
- the last day of the period for which any required contributions are made.

You can also change your dependent spouse life coverage by applying for additional benefit units during an annual enrollment period. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life insurance by any amount.

Unum and your Employer determine when the annual enrollment period begins and ends.

Any increase in dependent spouse life coverage will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent's evidence of insurability form.

EMPLOYEE-6 (1/1/2015) REV

UA-CL-AD&D-000271

Any decrease in dependent spouse life coverage or any cancellation of dependent coverage will begin on the first day of the next plan year.

An evidence of insurability form for your dependents can be obtained from your Employer.

### *WHAT IF YOUR DEPENDENT IS TOTALLY DISABLED ON THE DATE YOUR DEPENDENT'S COVERAGE WOULD NORMALLY BEGIN?*

If your eligible dependent is **totally disabled**, your dependent's coverage will begin on the date your eligible dependent no longer is totally disabled. This provision does not apply to a newborn child while dependent insurance is in effect.

### *WHEN WILL CHANGES TO YOUR DEPENDENT'S COVERAGE TAKE EFFECT?*

Once your dependent's coverage begins, any increased or additional dependent coverage due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your dependent's evidence of insurability form for life insurance, if evidence of insurability is required, provided your dependent is not totally disabled. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional dependent coverage due to a plan change will begin on the date you return to active employment.

If your dependent is totally disabled, any increased or additional dependent coverage will begin on the date your dependent is no longer totally disabled.

Any decreased coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease.

### *WHEN DOES YOUR DEPENDENT'S COVERAGE END?*

Your dependent's coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the date of your death;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Coverage for any one dependent will end on the earliest of:

- the date your coverage under a plan ends;
- the date your dependent ceases to be an eligible dependent;
- for a spouse, the date of divorce or annulment.

EMPLOYEE-7  (1/1/2015) REV

UA-CL-AD&D-000272

Unum will provide coverage for a payable claim which occurs while your dependents are covered under the Summary of Benefits or plan.

### WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You or your authorized representative can start legal action regarding a claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

### HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?

Unum considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

As a basis for doing this, we will use only statements made in a signed application by the Employer, or an application or evidence of insurability form signed by you, a copy of which has been given:

- to you; or
- your beneficiary, or a person acting on your behalf, if you:
  - die; or
  - are not competent.

Unum can take action only in the first 2 years coverage is in force.

If an individual's age is misstated:

- the correct age will decide if and in what amounts insurance is valid under the Summary of Benefits; and
- a fair adjustment of the premium will be made.

### HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud.  Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

EMPLOYEE-8  (1/1/2015) REV

UA-CL-AD&D-000273

### *DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?*

For the purposes of the Summary of Benefits, your Employer acts on its own behalf or as your agent.  Under no circumstances will your Employer be deemed the agent of Unum.

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000274

# LIFE INSURANCE

# BENEFIT INFORMATION

### *WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT?*

Your beneficiary(ies) will receive payment when Unum approves your death claim.

### *WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF DEATH?*

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

### *HOW MUCH WILL UNUM PAY YOU IF UNUM APPROVES YOUR DEPENDENT'S DEATH CLAIM?*

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### *HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IF UNUM APPROVES YOUR DEATH CLAIM?*

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHAT ARE YOUR ANNUAL EARNINGS?*

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### *WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?*

If you become disabled while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

LIFE-BEN-1  (1/1/2015) REV

UA-CL-AD&D-000275

### WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (Conversion Privilege)

When coverage ends under the plan, you and your dependents can convert your coverages to individual life policies, without evidence of insurability. The maximum amounts that you can convert are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

If you convert to an individual life policy, then return to work, and, again, become insured under the plan, you are not eligible to convert to an individual life policy again. However, you do not need to surrender that individual life policy when you return to work.

Converted insurance may be of any type of the level premium whole life plans then in use by Unum. The person may elect one year of Preliminary Term insurance under the level premium whole life policy. The individual policy will not contain disability or other extra benefits.

### WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (Conversion Privilege)

You and your dependents may convert a limited amount of life insurance if you have been insured under your Employer's group plan with Unum for at least five (5) years and the Summary of Benefits or the plan:

- is cancelled with Unum; or
- changes so that you no longer are eligible.

The individual life policy maximum for each of you will be the lesser of:

- $10,000; or
- your or your dependent's coverage amounts under the plan less any amounts that become available under any other group life plan offered by your Employer within 31 days after the date the Summary of Benefits or the plan is cancelled.

### PREMIUMS

Premiums for the converted insurance will be based on:

- the person's then attained age on the effective date of the individual life policy;
- the type and amount of insurance to be converted;
- Unum's customary rates in use at that time; and
- the class of risk to which the person belongs.

If the premium payment has been made, the individual life policy will be effective at the end of the 31 day conversion application period.

LIFE-BEN-2 (1/1/2015) REV

UA-CL-AD&D-000276

### DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD

If you or your dependents die within the 31 day conversion application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

### EMPLOYER NOTICE

Your Employer must notify each person of their conversion privileges 15 days before the date that person's life insurance terminates.

If your Employer does not notify that person 15 days before that person's life insurance terminates, the time allowed for that person to exercise their life conversion privilege will be extended 15 days from the date your Employer does notify that person.

In no event will the time allowed for a person to exercise their life conversion privilege be extended beyond 60 days from the date that person's life insurance terminates.

Any extended application period provided under this provision does not continue any insurance beyond the period provided in this Summary of Benefits.

### APPLYING FOR CONVERSION

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

### WILL UNUM ACCELERATE YOUR OR YOUR DEPENDENT'S DEATH BENEFIT FOR THE PLAN IF YOU OR YOUR DEPENDENT BECOMES TERMINALLY ILL? (Accelerated Benefit)

If you or your dependent becomes terminally ill while you or your dependent is insured by the plan, Unum will pay you a portion of your or your dependent's life insurance benefit one time. The payment will be based on 75% of your or your dependent's life insurance amount. However, the one-time benefit paid will not be greater than $500,000.

Your or your dependent's right to exercise this option and to receive payment is subject to the following:

- you or your dependent requests this election, in writing, on a form acceptable to Unum;
- you or your dependent must be terminally ill at the time of payment of the Accelerated Benefit;

LIFE-BEN-3 (1/1/2015) REV

UA-CL-AD&D-000277

- your or your dependent's physician must certify, in writing, that you or your dependent is terminally ill and your or your dependent's life expectancy has been reduced to less than 12 months; and
- the physician's certification must be deemed satisfactory to Unum.

The Accelerated Benefit is available on a voluntary basis. Therefore, you or your dependent is not eligible for benefits if:

- you or your dependent is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- you or your dependent is required by a government agency to use this benefit in order to apply for, get, or otherwise keep a government benefit or entitlement.

Premium payments must continue to be paid on the full amount of life insurance.

Also, premium payments must continue to be paid on the full amount of your dependent's life insurance.

If you have assigned your rights under the plan to an assignee or made an irrevocable beneficiary designation, Unum must receive consent, in writing, that the assignee or irrevocable beneficiary has agreed to the Accelerated Benefit payment on your behalf in a form acceptable to Unum before benefits are payable.

An election to receive an Accelerated Benefit will have the following effect on other benefits:

- the death benefit payable will be reduced by any amount of Accelerated Benefit that has been paid; and
- any amount of life insurance that may be available under the conversion privilege will be reduced by the amount of the Accelerated Benefit paid. The remaining life insurance amount will be paid according to the terms of the Summary of Benefits subject to any reduction and termination provisions.

Benefits paid may be taxable. Unum is not responsible for any tax or other effects of any benefit paid. As with all tax matters, you or your dependent should consult your personal tax advisor to assess the impact of this benefit.

### *WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any losses where death is caused by, contributed to by, or results from:

- suicide occurring within 12 months after your or your dependent's initial effective date of insurance; and
- suicide occurring within 12 months after the date any increases or additional insurance become effective for you or your dependent.

The suicide exclusion will apply to any amounts of insurance for which you pay all or part of the premium.

The suicide exclusion also will apply to any amount that is subject to evidence of insurability requirements and Unum approves the evidence of insurability form and the amount you or your dependent applied for at that time.

LIFE-BEN-4 (1/1/2015) REV

UA-CL-AD&D-000278

If you or your dependent dies as a result of a suicide Unum will refund all premium paid for coverage on you or your dependent that became effective within the 12 month period immediately preceding the date of your or your dependent's suicide.

LIFE-BEN-5 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000279

# LIFE INSURANCE

## OTHER BENEFIT FEATURES

### *WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)*

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### *PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE*

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of life insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of life insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for a child will not be more than:

- the highest amount of life insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of life insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

LIFE-OTR-1 (1/1/2015) REV

---

Claimant Name: Kathy   Williams      Claim #:   14865967

UA-CL-AD&D-000280

### APPLYING FOR PORTABLE COVERAGE

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

LIFE-OTR-2  (1/1/2015) REV

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000281

If we determine that because of an injury or sickness, which has a material effect on life expectancy, you or your dependents were not eligible for portability at the time you or your dependents elected portable coverage, the benefit will be adjusted to the amount of whole life coverage the premium would have purchased under the Conversion Privilege.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of life insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of life insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. All increases are subject to evidence of insurability. Portable coverage will reduce at the ages and amounts shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

LIFE-OTR-3 (1/1/2015) REV

UA-CL-AD&D-000282

***PREMIUM RATE CHANGES FOR PORTABLE COVERAGE***

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies.  Unum will notify the insured in writing at least 31 days before a premium rate is changed.

***APPLYING FOR CONVERSION, IF PORTABLE COVERAGE ENDS OR IS NOT AVAILABLE***

If you or your dependent is not eligible to apply for portable coverage or portable coverage ends, then you or your dependent may qualify for conversion coverage. Refer to Conversion Privilege under this plan.

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine  04122-1350
1-800-343-5406

LIFE-OTR-4  (1/1/2015) REV

UA-CL-AD&D-000283

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## BENEFIT INFORMATION

***WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT IN THE EVENT OF YOUR DEATH IF YOUR DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

Your beneficiary(ies) will receive payment when Unum approves your death claim providing you meet certain conditions.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF YOUR DEPENDENT'S DEATH IF YOUR DEPENDENT'S DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the death claim for your dependent providing certain conditions are met.

***WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF ACCIDENTAL DEATH?***

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF CERTAIN OTHER COVERED LOSSES IF THE LOSS IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the claim.

***HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IN THE EVENT OF YOUR ACCIDENTAL DEATH OR YOU FOR YOUR DEPENDENT'S ACCIDENTAL DEATH OR FOR CERTAIN OTHER COVERED LOSSES?***

If Unum approves the claim, Unum will determine the payment according to the Covered Losses and Benefits List below. The benefit Unum will pay is listed opposite the corresponding covered loss.

The benefit will be paid only if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

| Covered Losses | Benefit Amounts |
|---|---|
| Life | The Full Amount |
| Both Hands or Both Feet or Sight of Both Eyes | The Full Amount |
| One Hand and One Foot | The Full Amount |
| One Hand and Sight of One Eye | The Full Amount |
| One Foot and | |

AD&D-BEN-1 (1/1/2015) REV

| Sight of One Eye | The Full Amount |
| Speech and Hearing | The Full Amount |
| Quadriplegia | The Full Amount |
| Triplegia | Three Quarters The Full Amount |
| Paraplegia | Three Quarters The Full Amount |
| One Hand or One Foot | One Half The Full Amount |
| Sight of One Eye | One Half The Full Amount |
| Speech or Hearing | One Half The Full Amount |
| Hemiplegia | One Half The Full Amount |
| Thumb and Index Finger of Same Hand | One Quarter The Full Amount |
| Uniplegia | One Quarter The Full Amount |

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHAT ARE YOUR ANNUAL EARNINGS?*

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### *WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?*

If you have an accidental bodily injury that results in one or more of the covered losses while you are on a covered layoff or leave of absence, we will use your

AD&D-BEN-2 (1/1/2015) REV

annual earnings from your Employer in effect just prior to the date your absence began.

### WHAT REPATRIATION BENEFIT WILL UNUM PROVIDE?

Unum will pay an additional benefit for the preparation and transportation of your or your dependent's body to a mortuary chosen by you or your authorized representative. Payment will be made if, as the result of a covered accident, you or your dependent suffers loss of life at least 100 miles away from your or your dependent's principal place of residence.

However, when combined with two or more Unum accidental death and dismemberment insurance plans, the combined overall maximum for these plans together cannot exceed the actual expenses for the preparation and transportation of your or your dependent's body to a mortuary.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHAT SEATBELT(S) AND AIR BAG BENEFIT WILL UNUM PROVIDE?

Unum will pay you or your authorized representative an additional benefit if you or your dependent sustains an accidental bodily injury which causes your or your dependent's death while you or your dependent is driving or riding in a **Private Passenger Car**, provided:

For Seatbelt(s):

- the Private Passenger Car is equipped with seatbelt(s); and
- the seatbelt(s) were in actual use and properly fastened at the time of the covered accident; and
- the position of the seatbelt(s) are certified in the official report of the covered accident, or by the investigating officer. A copy of the police accident report must be submitted with the claim.

Also, if such certification is not available, and it is clear that you or your dependent was properly wearing seatbelt(s), then we will pay the additional seatbelt benefit.

However, if such certification is not available, and it is unclear whether you or your dependent was properly wearing seatbelt(s), then we will pay a fixed benefit of $1,000.

We will only pay the seatbelt benefit for the death of a minor, dependent child, if the child is correctly strapped and fastened in the appropriate seat for the child's age and weight as defined by state or federal guidelines. The seatbelt device must also be approved by the state or federal government for the dependent child's age and weight.

An automatic harness seatbelt will not be considered properly fastened unless a lap belt is also used.

For Air Bag:

AD&D-BEN-3 (1/1/2015) REV

UA-CL-AD&D-000286

- the Private Passenger Car is equipped with an air bag for the seat in which you are seated; and
- the seatbelt(s) must be in actual use and properly fastened at the time of the covered accident.

No benefit will be paid if you or your dependent is the driver of the Private Passenger Car and does not hold a current and valid driver's license.

No benefit will be paid if Unum is able to verify that the air bag(s) had been disengaged prior to the accident.

The accident causing your or your dependent's death must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT EDUCATION BENEFIT WILL UNUM PROVIDE FOR YOUR QUALIFIED CHILDREN?*

Unum will pay your authorized representative on behalf of each of your qualified children a lump sum payment if:

- you lose your life:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your accidental bodily injury occurred while you were insured under the plan;
- proof is furnished to Unum that the child is a **qualified child**; and
- the qualified child continues to be enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level.

The benefit amount per academic year, maximum benefit payments, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHEN WILL THE EDUCATION BENEFIT END FOR EACH QUALIFIED CHILD?*

The education benefit will terminate for each qualified child on the earliest of the following dates:

- the date your qualified child fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### *WHAT COVERAGE FOR EXPOSURE AND DISAPPEARANCE BENEFIT WILL UNUM PROVIDE?*

Unum will pay a benefit if you or your dependent sustains an accidental bodily injury and are unavoidably exposed to the elements and suffer a loss.

We will presume you or your dependent suffered loss of life due to an accident if:

AD&D-BEN-4  (1/1/2015) REV

UA-CL-AD&D-000287

- you or your dependent are riding in a common public passenger carrier that is involved in an accident covered under the Summary of Benefits; and
- as a result of the accident, the common public passenger carrier is wrecked, sinks, is stranded, or disappears; and
- your or your dependent's body is not found within 1 year of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### WHAT CHILD CARE BENEFIT WILL UNUM PROVIDE?

Unum will pay you, your spouse or your or your spouse's authorized representative on behalf of each of your qualified children an annual benefit amount for child care if:

- you or your spouse die:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your or your spouse's accidental bodily injury occurred while you or your spouse was insured under the plan;
- proof is furnished to Unum that the child is a qualified child.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident.

The annual benefit amount, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHEN WILL THE CHILD CARE BENEFIT END FOR EACH QUALIFIED CHILD?

The child care benefit will terminate for each qualified child on the earliest of the following dates:

- the date you, your spouse or your or your spouse's authorized representative fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### WHAT COMA BENEFIT WILL UNUM PROVIDE?

Unum will pay a benefit to your or your dependent's beneficiary if you or your dependents sustain an accidental bodily injury which directly results in your or your dependents being in a **coma** or a (persistent) **vegetative state**. The coma must begin within 31 days of the accident.

No benefits are payable for the first 31 days that you or your dependents are in a coma. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

Also, the accident must occur while you or your dependents are insured under the plan.

<center>AD&D-BEN-5 (1/1/2015) REV</center>

UA-CL-AD&D-000288

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

The monthly benefit amount and maximum number of months are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT REHABILITATION PHYSICAL THERAPY BENEFIT WILL UNUM PROVIDE?*

Unum will pay you or your dependents an additional benefit for rehabilitative physical therapy that is prescribed by your or your dependent's attending physician if you or your dependents sustain an accidental bodily injury that results in one or more of the covered losses outlined in the Covered Losses and Benefits List.

The benefit amount and maximum benefit amount are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:

- suicide while sane or intentionally self-inflicted injury while sane.
- active participation in a riot.
- an attempt to commit or commission of a crime.
- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol.
- service on full-time active duty in the Armed Forces of any country or international authority.
- travel or flight in any vehicle or device for aerial navigation, including boarding or alighting from it while:
  - it is being used for test or experimental purposes;
  - you or your dependent is operating, learning to operate or serving as a member of the crew;
  - it is being operated by or for under the direction of any military authority.
  This exclusion does not apply to:
  - transport type aircraft operated by the Military Airlift Command of the United States; or
  - similar air transport service of any other country.
- travel or flight in any aircraft or device for aerial navigation, including boarding or alighting from it, owned or leased by or on behalf of your Employer.
- disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.
- being **intoxicated**.
- bacterial infection. This exclusion does not apply to you or your dependent when the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

AD&D-BEN-6 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000289

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## OTHER BENEFIT FEATURES

### *WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)*

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### *PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE*

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of accidental death and dismemberment insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of accidental death and dismemberment insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for a child will not be more than:

- the highest amount of accidental death and dismemberment insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

AD&D-OTR-1  (1/1/2015) REV

UA-CL-AD&D-000290

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of AD&D insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

### *APPLYING FOR PORTABLE COVERAGE*

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

AD&D-OTR-2  (1/1/2015) REV

UA-CL-AD&D-000291

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of AD&D insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of accidental death and dismemberment insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. Portable coverage will reduce at the ages and amounts shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

AD&D-OTR-3 (1/1/2015) REV

UA-CL-AD&D-000292

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

***PREMIUM RATE CHANGES FOR PORTABLE COVERAGE***

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

AD&D-OTR-4 (1/1/2015) REV

UA-CL-AD&D-000293

# GLOSSARY

**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause.

**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFIT** means the total benefit amount for which an individual is insured under this plan subject to the maximum benefit.

**ACCREDITED SCHOOL** means an accredited post-secondary institution of higher learning for full-time students beyond the 12th grade level.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**ACTIVITIES OF DAILY LIVING** means:

- Bathing - the ability to wash oneself either in the tub or shower or by sponge bath with or without equipment or adaptive devices.
- Dressing - the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn.
- Toileting - the ability to get to and from and on and off the toilet; to maintain a reasonable level of personal hygiene, and to care for clothing.
- Transferring - the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
- Continence - the ability to either:
  - voluntarily control bowel and bladder function; or
  - if incontinent, be able to maintain a reasonable level of personal hygiene.
- Eating - the ability to get nourishment into the body.

A person is considered unable to perform an activity of daily living if the task cannot be performed safely without another person's stand-by assistance or verbal cueing.

**ANNUAL EARNINGS** means your annual income received from your Employer as defined in the plan.

**ANNUAL ENROLLMENT PERIOD** means a period of time before the beginning of each plan year.

**COGNITIVELY IMPAIRED** means a person has a deterioration or loss in intellectual capacity resulting from injury, sickness, advanced age, Alzheimer's disease or similar

*Claimant Name: Kathy Williams     Claim #:  14865967*

forms of irreversible dementia and needs another person's assistance or verbal cueing for his or her own protection or for the protection of others.

**COMA** means being in a profound stupor or state of complete and total unconsciousness. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Employer/Applicant named in the Application For Participation in the Select Group Insurance Trust, on the first page of the Summary of Benefits and in all amendments. It includes any division, subsidiary or affiliated company named in the Summary of Benefits.

**EVIDENCE OF INSURABILITY** means a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage. Evidence of insurability will be at Unum's expense.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**HEMIPLEGIA** means total and irreversible paralysis of both limbs on either side of the body (i.e. the right arm and right leg or the left arm and left leg).

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause.

**INSURED** means any person covered under a plan.

**INTOXICATED** means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIFE INSURANCE BENEFIT** means the total benefit amount for which an individual is insured under this plan subject to the maximum benefit.

**LIFE THREATENING CONDITION** is a critical health condition that possibly could result in your dependent's loss of life.

**LOSS OF A FOOT** means that all of the foot is cut off at or above the ankle joint.

**LOSS OF A HAND** means that all four fingers are cut off at or above the knuckles joining each to the hand.

GLOSSARY-2 (1/1/2015) REV

UA-CL-AD&D-000295

**LOSS OF HEARING** means the total and irrecoverable loss of hearing in both ears.

**LOSS OF SIGHT** means the eye is totally blind and that no sight can be restored in that eye.

**LOSS OF SPEECH** means the total and irrecoverable loss of speech.

**LOSS OF THUMB AND INDEX FINGER** means that all of the thumb and index finger are cut off at or above the joint closest to the wrist.

**PARAPLEGIA** means total and irreversible paralysis of both lower limbs.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the Summary of Benefits.

**PHYSICIAN** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Unum will not recognize you, or your spouse, children, parents or siblings as a physician for a claim that you send to us.

**PLAN** means a line of coverage under the Summary of Benefits.

**PRIVATE PASSENGER CAR** means a validly registered four-wheel private passenger car (including Employer-owned cars), station wagons, jeeps, pick-up trucks, and vans that are used only as private passenger cars.

**QUADRIPLEGIA** means total and irreversible paralysis of all four limbs.

**QUALIFIED CHILD** means:

- **for purposes of the Education Benefit**, any of your unmarried dependent children under age 25 who, on the date of your death as a result of an accidental bodily injury, was either:

  - enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level; or
  - at the 12th grade level and enrolls as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level within 365 days following the date of your death.

- **for purposes of the Child Care Benefit**, any of your unmarried dependent children under age 14 who, were enrolled in a licensed day care facility, school facility, or other similar program for 90 continuous days before the date of the accident causing your death. The Child Care Benefit will not be extended to any of your children born after the date of your death unless pregnancy commenced prior to the date of your death.

GLOSSARY-3  (1/1/2015) REV

UA-CL-AD&D-000296

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

**RETAINED ASSET ACCOUNT** is an interest bearing account established through an intermediary bank in the name of you or your beneficiary, as owner.

**SICKNESS** means:

- **for purposes of Portability**, an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.
- **for all other purposes**, an illness or disease.

**TOTALLY DISABLED** means that, as a result of an injury, a sickness or a disorder, your dependent:

- is confined in a hospital or similar institution;
- is unable to perform two or more activities of daily living (ADLs) because of a physical or mental incapacity resulting from an injury or a sickness;
- is cognitively impaired;
- has a life threatening condition;
- is unable to attend school outside of home provided your dependent is a child and of school age (ages 5-19 years of age); or
- is at a developmental age which is less than half the chronological age by milestones or other pediatric developmental testing (e.g., Denver Developmental Test or similar test) provided your dependent is a child and of pre-school age (up to 6 years of age).

**TRIPLEGIA** means total and irreversible paralysis of three limbs.

**TRUST** means the policyholder trust named on the first page of the Summary of Benefits and all amendments to the policy.

**UNIPLEGIA** means total and irreversible paralysis of one limb.

**VEGETATIVE STATE** means being completely unaware of one's self and the environment with the presence of sleep-awake cycles and at least partial preservation of involuntary brain functions. Such vegetative state must be due to an accidental bodily injury and must begin within 31 days of the date of the accident.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE, US** and **OUR** means Unum Life Insurance Company of America.

**YOU** means an employee who is eligible for Unum coverage.

UA-CL-AD&D-000297

# ERISA

## Additional Summary Plan Description Information

If the Summary of Benefits provides benefits under a **Plan** which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the following provisions apply. These provisions, together with your certificate of coverage, constitute the summary plan description. The summary plan description and the Summary of Benefits constitute the Plan. Benefit determinations are controlled exclusively by the Summary of Benefits, your certificate of coverage and the information contained in this document.

**Name of Plan:**
BlueScope Steel North America Corporation Plan

**Name and Address of Employer:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

**Plan Identification Number:**
a. Employer IRS Identification #: 23-2081882
b. Plan #: 501

**Type of Welfare Plan:**
Life and Accidental Death and Dismemberment

**Type of Administration:**
The Plan is administered by the Plan Administrator. Benefits are administered by the insurer and provided in accordance with the insurance Summary of Benefits issued to the Plan.

**ERISA Plan Year Ends:**
December 31

**Plan Administrator, Name,**
**Address, and Telephone Number:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069
(816) 968-3000

BlueScope Steel North America Corporation is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties. The Plan Administrator may designate Trustees of the Plan, in which case the Administrator will advise you separately of the name, title and address of each Trustee.

**Agent for Service of**
**Legal Process on the Plan:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

ADDLSUM-1 (1/1/2015) REV

UA-CL-AD&D-000298

Service of legal process may also be made upon the Plan Administrator, or a Trustee of the Plan, if any.

**Funding and Contributions:**
The Plan is funded by insurance issued by Unum Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122 (hereinafter referred to as "Unum") under identification number 382480 002. Contributions to the Plan are made as stated under "WHO PAYS FOR THE COVERAGE" in the Certificate of Coverage.

## EMPLOYER'S RIGHT TO AMEND THE PLAN

The Employer reserves the right, in its sole and absolute discretion, to amend, modify, or terminate, in whole or in part, any or all of the provisions of the Plan (including any related documents and underlying policies), at any time and for any reason or no reason. Any amendment, modification, or termination must be in writing and endorsed on or attached to the Plan.

## EMPLOYER'S RIGHT TO REQUEST SUMMARY OF BENEFITS CHANGE

The Employer can request a Summary of Benefits change. Only an officer or registrar of Unum can approve a change. The change must be in writing and endorsed on or attached to the Summary of Benefits.

## MODIFYING OR CANCELLING THE SUMMARY OF BENEFITS OR A PLAN UNDER THE SUMMARY OF BENEFITS

The Summary of Benefits or a plan under the Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

Unum may cancel or modify the Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to the Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or
- the premium is not paid in accordance with the provisions of the Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger,

ADDLSUM-2 (1/1/2015) REV

UA-CL-AD&D-000299

divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day grace period.

If Unum cancels or modifies the Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel the Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify the Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel the Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, the Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels the Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the Summary of Benefits or a plan is cancelled, the cancellation will not affect a payable claim.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your insurance certificate. To complete your claim filing, Unum must receive the claim information it requests from you (or your authorized representative), your attending physician and your Employer. If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

## CLAIMS PROCEDURES

In the event that your claim is denied, either in full or in part, Unum will notify you in writing within 90 days after your claim is filed. Under special circumstances, Unum is allowed an additional period of not more than 90 days (180 days in total) within which to notify you of its decision. If such an extension is required, you will receive a written notice from Unum indicating the reason for the delay and the date you may expect a final decision. Unum's notice of denial shall include:

- the specific reason or reasons for denial with reference to those Plan provisions on which the denial is based;
- a description of any additional material or information necessary to complete the claim and why that material or information is necessary; and
- a description of the Plan's procedures and applicable time limits for appealing the determination, including a statement of your right to bring a lawsuit under Section 502(a) of ERISA following an adverse determination from Unum on appeal.

ADDLSUM-3 (1/1/2015) REV

UA-CL-AD&D-000300

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

If you or your authorized representative appeal a denied claim, it must be submitted within 90 days after you receive Unum's notice of denial. You have the right to:

- submit a request for review, in writing, to Unum;
- upon request and free of charge, reasonable access to and copies of, all relevant documents as defined by applicable U.S. Department of Labor regulations; and
- submit written comments, documents, records and other information relating to the claim to Unum.

Unum will make a full and fair review of the claim and all new information submitted whether or not presented or available at the initial determination, and may require additional documents as it deems necessary or desirable in making such a review. A final decision on the review shall be made not later than 60 days following receipt of the written request for review. If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension and the date by which the Plan expects to make a decision. If an extension is required due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the necessary information and the date by which you need to provide it to us. The 60-day extension of the appeal review period will begin after you have provided that information.

The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference, again, to those Summary of Benefits' provisions upon which the final decision is based. It will also include a statement describing your access to documents and describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the determination.

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

ADDLSUM-4 (1/1/2015) REV

UA-CL-AD&D-000301

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

Enforce Your Rights

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, if, for example, it finds your claim is frivolous.

Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

ADDLSUM-5 (1/1/2015) REV

UA-CL-AD&D-000302

## OTHER RIGHTS

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the Summary of Benefits. You agree that Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

## DISCRETIONARY ACTS

The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Once you are deemed to have exhausted your appeal rights under the Plan, you have the right to seek court review under Section 502(a) of ERISA of any benefit determinations with which you disagree. The court will determine the standard of review it will apply in evaluating those decisions.

ADDLSUM-6 (1/1/2015) REV

UA-CL-AD&D-000303

## Our Commitment to Privacy

We understand your privacy is important. We value our relationship with you and are committed to protecting the confidentiality of nonpublic personal information (NPI). This notice explains why we collect NPI, what we do with NPI and how we protect your privacy.

**COLLECTING INFORMATION**
We collect NPI about our customers to provide them with insurance products and services. This may include telephone number, address, date of birth, occupation, income and health history. We may receive NPI from your applications and forms, medical providers, other insurers, employers, insurance support organizations and service providers.

**SHARING INFORMATION**
We share the types of NPI described above primarily with people who perform insurance, business and professional services for us, such as helping us pay claims and detect fraud. We may share NPI with medical providers for insurance and treatment purposes. We may share NPI with an insurance support organization. The organization may retain the NPI and disclose it to others for whom it performs services. In certain cases, we may share NPI with group policyholders for reporting and auditing purposes. We may share NPI with parties to a proposed or final sale of insurance business or for study purposes. We may also share NPI when otherwise required or permitted by law, such as sharing with governmental or other legal authorities. When legally necessary, we ask your permission before sharing NPI about you. Our practices apply to our former, current and future customers.

Please be assured we do not share your health NPI to market any product or service. We also do not share any NPI to market non-financial products and services. For example, we do not sell your name to catalog companies.

The law allows us to share NPI as described above (except health information) with affiliates to market financial products and services. The law does not allow you to restrict these disclosures. We may also share with companies that help us market our insurance products and services, such as vendors that provide mailing services to us. We may share with other financial institutions to jointly market financial products and services. When required by law, we ask your permission before we share NPI for marketing purposes.

When other companies help us conduct business, we expect them to follow applicable privacy laws. We do not authorize them to use or share NPI except when necessary to conduct the work they are performing for us or to meet regulatory or other governmental requirements.

Unum companies, including insurers and insurance service providers, may share NPI about you with each other. The NPI might not be directly related to our transaction or experience with you. It may include financial or other personal information such as employment history. Consistent with the Fair Credit Reporting Act, we ask your permission before sharing NPI that is not directly related to our transaction or experience with you.

**COVERAGE DECISIONS**
If we decide not to issue coverage to you, we will provide you with the specific reason(s) for our decision. We will also tell you how to access and correct certain NPI.

GLB-1 (1/1/2015) REV

UA-CL-AD&D-000304

## ACCESS TO INFORMATION

You may request access to certain NPI we collect to provide you with insurance products and services. You must make your request in writing and send it to the address below. The letter should include your full name, address, telephone number and policy number if we have issued a policy. If you request, we will send copies of the NPI to you. If the NPI includes health information, we may provide the health information to you through a health care provider you designate. We will also send you information related to disclosures. We may charge a reasonable fee to cover our copying costs.

This section applies to NPI we collect to provide you with coverage. It does not apply to NPI we collect in anticipation of a claim or civil or criminal proceeding.

## CORRECTION OF INFORMATION

If you believe the NPI we have about you is incorrect, please write to us. Your letter should include your full name, address, telephone number and policy number if we have issued a policy. Your letter should also explain why you believe the NPI is inaccurate. If we agree with you, we will correct the NPI and notify you of the correction. We will also notify any person who may have received the incorrect NPI from us in the past two years if you ask us to contact that person.

If we disagree with you, we will tell you we are not going to make the correction. We will give you the reason(s) for our refusal. We will also tell you that you may submit a statement to us. Your statement should include the NPI you believe is correct. It should also include the reason(s) why you disagree with our decision not to correct the NPI in our files. We will file your statement with the disputed NPI. We will include your statement any time we disclose the disputed NPI. We will also give the statement to any person designated by you if we may have disclosed the disputed NPI to that person in the past two years.

## SAFEGUARDING INFORMATION

We have physical, electronic and procedural safeguards that protect the confidentiality and security of NPI. We give access only to employees who need to know the NPI to provide insurance products or services to you.

## CONTACTING US

For additional information about Unum's commitment to privacy and to view a copy of our HIPAA Privacy Notice, please visit unum.com/privacy or coloniallife.com. You may also write to: Privacy Officer, Unum, 2211 Congress Street, C476, Portland, Maine 04122.

*We reserve the right to modify this notice. We will provide you with a new notice if we make material changes to our privacy practices.*

*Unum is providing this notice to you on behalf of the following insuring companies: Unum Life Insurance Company of America, Unum Insurance Company, First Unum Life Insurance Company, Provident Life and Accident Insurance Company, Provident Life and Casualty Insurance Company, Colonial Life & Accident Insurance Company and The Paul Revere Life Insurance Company.*

Copyright 2015 Unum Group. All rights reserved. Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries.

MK-1883 (09/15)

GLB-2 (1/1/2015) REV

---

Claimant Name: Kathy Williams     Claim #:  14865967

## NOTICE OF PROTECTION PROVIDED BY
## MISSOURI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

This notice provides a **brief summary** of the Missouri Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. This safety net was created under Missouri law, which determines who and what is covered and the amounts of coverage.

The Association was established to provide protection in the unlikely event that your life, annuity, or health insurance company becomes financially unable to meet its obligations and is taken over by its insurance department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Missouri law, with funding from assessments paid by other insurance companies.

The basic protections provided by the Association are as follows:

- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values

- Health Insurance
  - $500,000 in hospital, medical and surgical insurance benefits
  - $300,000 in disability insurance benefits
  - $300,000 in long-term care insurance benefits
  - $100,000 in other types of health insurance benefits

- Annuities
  - $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is as follows:

- $300,000 in aggregate for all types of coverage listed above, with the exception of basic hospital, medical, and surgical insurance or major medical insurance
- $500,000 in aggregate for basic hospital, medical, and surgical insurance or major medical insurance
- $5,000,000 to one policy owner of multiple nongroup policies of life insurance, whether the policy owner is an individual, firm, corporation, or other person, and whether the persons insured are officers, managers, employees, or other persons

**Note: Certain policies and contracts may not be covered or fully covered.** For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Missouri law.

To learn more about the above protections, as well as protections relating to group contracts or retirement plans, please visit the Association's website at www.mo-iga.org, or contact:

Missouri Life and Health Insurance
Guaranty Association
994 Diamond Ridge, Suite 102

Missouri Department of Insurance,
Financial Institutions and Professional
Registration

GUAR-1 (1/1/2015) REV

Claimant Name: Kathy Williams     Claim #:  14865967

Jefferson City, Missouri 65109
(573) 634-8455
Fax: (573) 634-8488

301 West High Street, Room 530
Jefferson City, Missouri 65101
(573) 522-6115

**Insurance companies and agents are not allowed by Missouri law to use the existence of the Association or its coverage to encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and Missouri law, then Missouri law will control.**

GUAR-2  (1/1/2015) REV

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000307



**BlueScope Steel North America
Corporation**

Your Group Life and Accidental Death
and Dismemberment Plan

Identification No. 382480 012

Underwritten by Unum Life Insurance Company of America

7/24/2017

Claimant Name: Kathy Williams     Claim #: 14865967



Claimant Name: Kathy  Williams    Claim #:  14865967

UA-CL-AD&D-000309

# CERTIFICATE OF COVERAGE

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured. You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English. However, a few terms and provisions are written as required by insurance law. If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the Summary of Benefits (issued to the Employer), the Summary of Benefits will govern. The Summary of Benefits may be changed in whole or in part. Only an officer or registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to the Summary of Benefits. Any other person, including an agent, may not change the Summary of Benefits or waive any part of it.

The Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

For purposes of effective dates and ending dates under the group Summary of Benefits, all days begin at 12:01 a.m. and end at 12:00 midnight at the Employer's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000310

# TABLE OF CONTENTS

BENEFITS AT A GLANCE ...............................................................................B@G-LIFE-1

LIFE INSURANCE PLAN ................................................................................B@G-LIFE-1

BENEFITS AT A GLANCE ..............................................................................B@G-AD&D-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN .......................B@G-AD&D-1

CLAIM INFORMATION .....................................................................................LIFE-CLM-1

LIFE INSURANCE.............................................................................................LIFE-CLM-1

CLAIM INFORMATION .....................................................................................AD&D-CLM-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE.................................AD&D-CLM-1

GENERAL PROVISIONS...................................................................................EMPLOYEE-1

LIFE INSURANCE.............................................................................................LIFE-BEN-1

BENEFIT INFORMATION ..................................................................................LIFE-BEN-1

OTHER BENEFIT FEATURES............................................................................LIFE-OTR-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE.................................AD&D-BEN-1

BENEFIT INFORMATION ..................................................................................AD&D-BEN-1

OTHER BENEFIT FEATURES............................................................................AD&D-OTR-1

GLOSSARY ....................................................................................................GLOSSARY-1

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000311

# BENEFITS AT A GLANCE

## LIFE INSURANCE PLAN

This life insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death. The amount your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**     January 1, 1999

**PLAN YEAR:**

January 1, 1999 to January 1, 2000 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:**     382480 012

**ELIGIBLE GROUP(S):**

All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before January 1, 1999: The greater of the waiting period in effect under the prior Unum plan, if any, or None
For employees entering an eligible group from January 1, 1999 through December 31, 2008: First of the month coincident with or next following date of active employment
For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic Life Insurance Benefit:*

Your Employer pays the cost of your coverage.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000312

*Additional Life Insurance Benefit:*

    You pay the cost of your coverage.

**For Your Dependents:**

*Basic Life Insurance Benefit:*

    No Coverage

*Additional Life Insurance Benefit:*

    You pay the cost of your dependent coverage.

**LIFE INSURANCE BENEFIT:**

    **AMOUNT OF LIFE INSURANCE FOR YOU**

        **BASIC LIFE INSURANCE BENEFIT**

        1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

        **ADDITIONAL LIFE INSURANCE BENEFIT OPTIONS:**

        *Option 1*

        1 x annual earnings

        *Option 2*

        2 x annual earnings

        *Option 3*

        3 x annual earnings

        *Option 4*

        4 x annual earnings

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

AMOUNT OF LIFE INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED

If you have reached age 70 but not age 75, your amount of life insurance will be:
- 67% of the amount of life insurance you have prior to age 70; or
- 67% of the amount of life insurance shown above if you become insured on or after age 70 but before age 75.

If you have reached age 75 or more, your amount of life insurance will be:
- 50% of the amount of life insurance you have prior to your first reduction; or
- 50% of the amount of life insurance shown above if you become insured on or after age 75.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR INSURANCE OVER:

- 2 x annual earnings (ADDITIONAL LIFE BENEFITS ONLY); or
- $750,000 (BASIC LIFE AND ADDITIONAL LIFE BENEFITS COMBINED), whichever is lower.

UA-CL-AD&D-000313

Evidence of Insurability is not required for amounts of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan, or
- The amount(s) of life insurance over the amount shown above.

OVERALL MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$1,000,000

**AMOUNT OF LIFE INSURANCE FOR YOUR DEPENDENTS**

**Spouse:**

**BASIC LIFE INSURANCE BENEFIT:**

No Coverage

**ADDITIONAL LIFE INSURANCE BENEFIT:**

Amounts in $5,000 benefit units as applied for by you and approved by Unum.

All amounts are rounded to the next higher multiple of $5,000, if not already an exact multiple thereof.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR SPOUSE'S INSURANCE OVER:

$50,000

Evidence of Insurability is not required for amounts of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOUR SPOUSE:

The lesser of:
- 100% of your amount of Basic Life and Additional Life Insurance combined; or
- $200,000

**Children:**

**BASIC LIFE INSURANCE BENEFIT:**

No Coverage

**ADDITIONAL LIFE INSURANCE BENEFIT:**
Live birth to age 19 or to 25
if a full-time student:          $10,000

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Accelerated Benefit

B@G-LIFE-3  (1/1/2015) REV                                    5

UA-CL-AD&D-000314

Conversion

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000315

# BENEFITS AT A GLANCE

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN

This accidental death and dismemberment insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death or for you in the event of any other covered loss. The amount you or your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death or any other covered loss according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**      January 1, 2009

**PLAN YEAR:**

   January 1, 2009 to January 1, 2010 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:**        382480  012

**ELIGIBLE GROUP(S):**

   All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

**MINIMUM HOURS REQUIREMENT:**

   **All employees except Laurinburg**
   Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

   **All Laurinburg employees**
   Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

   **All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
   For employees in an eligible group on or before January 1, 2009:  The greater of the waiting period in effect under the prior Unum plan, if any, or None

   For employees entering an eligible group after January 1, 2009:  First of the month coincident with or next following 1 month of continuous active employment

   **All BlueScope Construction (BSC) Core Field Employees**
   For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

   For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

**REHIRE:**

   If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period.  All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

   **For You:**

   *Basic AD&D Insurance Benefit:*

   Your Employer pays the cost of your coverage.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000316

*Additional AD&D Insurance Benefit:*

You pay the cost of your coverage.

**For Your Dependents:**

*Basic AD&D Insurance Benefit:*

No Coverage

*Additional AD&D Insurance Benefit:*

You pay the cost of your dependent coverage.

### ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT:

**AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) INSURANCE FOR YOU (FULL AMOUNT)**

**BASIC AD&D INSURANCE BENEFIT**

1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

**ADDITIONAL AD&D INSURANCE BENEFIT:**

Amounts in $25,000 benefit units as applied for by you and approved by Unum.

OVERALL MAXIMUM BENEFIT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$600,000

**AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOUR DEPENDENTS (FULL AMOUNT)**

**Spouse:**

**BASIC AD&D INSURANCE BENEFIT**

No Coverage

**ADDITIONAL AD&D INSURANCE BENEFIT:**

60% of your additional amount of AD&D insurance to a maximum benefit of $360,000

**Children:**

**BASIC AD&D INSURANCE BENEFIT**

No Coverage

**ADDITIONAL AD&D INSURANCE BENEFIT:**
Live birth to age 19 or to 25
if a full-time student:      20% of your Additional AD&D benefit amount
                             to a maximum of $120,000

B@G-AD&D-2  (1/1/2015) REV                               8

UA-CL-AD&D-000317

**REPATRIATION BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount:

Up to $15,000

The Repatriation Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Repatriation Benefit, your or your dependent's accidental death benefit must be paid first.

**SEATBELT(S) AND AIR BAG BENEFIT FOR YOU AND YOUR DEPENDENTS**

Benefit Amount:

Seatbelt(s): 10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit.

Air Bag: 5% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit.

Maximum Benefit Payment:

Seatbelt(s): $50,000

Air bag: $10,000

The Seatbelt(s) and Air Bag Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Seatbelt(s) and Air Bag Benefit, your or your dependents accidental death benefit must be paid first.

**EDUCATION BENEFIT**

Each Qualified Child

Benefit Amount per Academic Year for which a Qualified Child is enrolled:

10% of the Full Amount of the employee's accidental death and dismemberment insurance to a maximum of $10,000.

Maximum Benefit Payments:

4 per lifetime

Maximum Benefit Amount per Each Qualified Child:

$40,000

Maximum Benefit Period:

6 years from the date the first benefit payment has been made.

The Education Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Education Benefit, your accidental death benefit must be paid first.

**EXPOSURE AND DISAPPEARANCE BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount: The Full Amount

**CHILD CARE BENEFIT**

Each Qualified Child

Annual Benefit Amount:

UA-CL-AD&D-000318

Birth through age 13

The lesser of:

- 10% of the Full Amount of your or your spouse's accidental death and dismemberment insurance; or

- $10,000

Maximum Benefit Amount:

$50,000

Maximum Benefit Period:

5 consecutive years

If, at the time of your or your spouse's death, you have no Qualified Child eligible for the Child Care Benefit, we will pay 10% of the Full Amount to a maximum benefit of $50,000 to you, your spouse, your beneficiary or you or your spouse's authorized representative.

The Child Care Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Child Care Benefit, your or your spouse's accidental death benefit must be paid first.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident

## COMA BENEFIT FOR YOU AND YOUR DEPENDENTS

Monthly Benefit Amount:

1% of the Full Amount of your or your dependents accidental death and dismemberment insurance benefit

Maximum Number of Months:

100 months

## REHABILITATION PHYSICAL THERAPY BENEFIT FOR YOU AND YOUR DEPENDENTS

Benefit Amount:

10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit

Maximum Benefit Amount:

$10,000

The Rehabilitation Physical Therapy Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order to receive the Rehabilitation Physical Therapy Benefit, your or your dependent's accidental death and dismemberment must be paid first.

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

Claimant Name: Kathy Williams       Claim #: 14865967

UA-CL-AD&D-000319

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

B@G-AD&D-5  (1/1/2015) REV                    11

UA-CL-AD&D-000320

## CLAIM INFORMATION

## LIFE INSURANCE

### WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

### WHEN CAN UNUM REQUEST AN AUTOPSY?

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

### HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

UA-CL-AD&D-000321

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's life claim is at least $10,000, Unum will make available to the beneficiary a **retained asset account** (the Unum Security Account).

Payment for the life claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the life claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the life claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

If you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000322

You must reimburse us in full.  We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE?  (Assignability Rights)

The rights provided to you by the plan for life insurance are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

UA-CL-AD&D-000323

# CLAIM INFORMATION

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

### *WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?*

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### *HOW DO YOU FILE A CLAIM FOR A COVERED LOSS?*

You or your authorized representative and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

### *WHAT INFORMATION IS NEEDED AS PROOF OF CLAIM?*

If claim is based on death or other covered loss, proof of claim for death or covered loss, provided at your or your authorized representative's expense, must show:

- the cause of death or covered loss;
- the extent of the covered loss;
- the date of covered loss; and
- the name and address of any **hospital or institution** where treatment was received, including all attending **physicians.**

Also, in case of death, a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

If a claim is based on the Education Benefit, proof of claim, provided at your authorized representative's expense, must show:

- the date of enrollment of your qualified child in an accredited post-secondary institution of higher learning;
- the name of the institution;
- a list of courses for the current academic term; and
- the number of credit hours for the current academic term.

### *WHEN CAN UNUM REQUEST AN AUTOPSY?*

UA-CL-AD&D-000324

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

### HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? *(Beneficiary Designation)*

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your accidental death and dismemberment insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's accidental death or dismemberment claim is at least $10,000 Unum will make available to you or your beneficiary a **retained asset account** (the Unum Security Account).

Payment for the accidental death or dismemberment claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

AD&D-CLM-2 (1/1/2015) REV 16

UA-CL-AD&D-000325

If the accidental death or dismemberment claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the accidental death claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

The Child Care Benefit will be paid to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Education Benefit will be paid to your qualified child or the qualified child's legal representative.

If you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFITS? (Assignability Rights)

The rights provided to you by the plan(s) for accidental death insurance benefits are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

UA-CL-AD&D-000326

# GENERAL PROVISIONS

## *WHAT IS THE CERTIFICATE OF COVERAGE?*

This certificate of coverage is a written statement prepared by Unum and may include attachments. It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

## *WHEN ARE YOU ELIGIBLE FOR COVERAGE?*

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period**.

## *WHEN DOES YOUR COVERAGE BEGIN?*

This plan provides additional life benefit options and additional accidental death and dismemberment benefit units in addition to the basic life and accidental death and dismemberment benefit. When you first become eligible for coverage, you may apply for any additional life and accidental death and dismemberment benefits.

**Evidence of insurability** is required for any amount of life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

Your Employer pays 100% of the cost of your coverage under the basic benefit. You will automatically be covered under the basic benefit at 12:01 a.m. on the later of:

- the date you are eligible for coverage; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

You pay 100% of the cost for the additional benefits. You will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

If you do not apply for additional benefits on or before the 31st day after your eligibility date, you can apply at the next **annual enrollment period** or at anytime during the plan year. Evidence of insurability is required for any amount of insurance.

Coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000327

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

Coverage applied for at any time other than during an annual enrollment period will be effective on the date Unum approved your evidence of insurability form.

### *WHEN CAN YOU CHANGE YOUR COVERAGE?*

You can change your coverage by applying for additional benefits at anytime during the plan year. You can increase your coverage or decrease your coverage by any level. Evidence of insurability is required for any amount of insurance applied for during the plan year. A change in coverage that is made during a plan year will begin at 12:01 a.m. on the date Unum approves your evidence of insurability form.

You can also change your coverage by applying for a different additional benefit during an annual enrollment period.

You can increase or decrease your coverage any number of levels.

Evidence of insurability is required if you increase your coverage by any level. If you are not approved for the increase in your coverage, you will automatically remain at the same amount you had prior to applying for the increase.

Unum and your Employer determine when the annual enrollment period begins and ends. A change in coverage that is made during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

An evidence of insurability form can be obtained from your Employer.

### *IS EVIDENCE OF INSURABILITY REQUIRED IF YOU RECEIVE AN INCREASE IN YOUR ANNUAL EARNINGS?*

If you remain covered for the same basic benefit and the same supplemental benefit option, evidence of insurability is not required for the first $100,000 of increased life amounts due to increased annual earnings accumulated within a plan year.

Evidence of insurability is required for any increased amount of life insurance that exceeds $100,000. However, if you previously were declined coverage, evidence of insurability is required for any increases until Unum approves your evidence of insurability form.

If you are not in active employment due to an injury or sickness, this change in coverage due to a change in your annual earnings will begin on the date you return to active employment.

### *WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?*

If you are absent from work due to **injury, sickness,** temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000328

### *ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?*

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to your retirement date.

### *ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?*

If you are on a temporary **layoff**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

### *WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?*

Once your coverage begins, any increased or additional coverage due to a change in your annual earnings or due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your evidence of insurability form for life insurance, if evidence of insurability is required. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional coverage due to a change in your annual earnings or due to a plan change will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### *WHEN DOES YOUR COVERAGE END?*

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

### *WHEN ARE YOU ELIGIBLE TO ELECT DEPENDENT COVERAGE?*

If you elect coverage for yourself or are insured under the plan, you are eligible to elect dependent coverage for your spouse only, your dependent children only or both.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000329

### WHEN ARE YOUR DEPENDENTS ELIGIBLE FOR COVERAGE?

The date your dependents are eligible for coverage is the later of:

- the date your insurance begins; or
- the date you first acquire a dependent.

### WHAT DEPENDENTS ARE ELIGIBLE FOR COVERAGE?

The following dependents are eligible for coverage under the plan:

- Your lawful spouse, including a legally separated spouse. You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee.

- Your unmarried children from live birth but less than age 19. Stillborn children are not eligible for coverage.

- Your unmarried dependent children age 19 or over but under age 25 also are eligible if they are full-time students at an **accredited school**.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

No dependent child may be covered by more than one employee in the plan.

No dependent child can be covered as both an employee and a dependent.

### WHEN DOES YOUR DEPENDENT COVERAGE BEGIN?

This plan provides coverage for your dependents. When your dependents first become eligible for coverage, you may apply for:

- any number of life benefit units for your dependent spouse; however, your dependent spouse cannot be covered for more than the maximum benefit available under the plan; and
- dependent child(ren) life insurance coverage; and
- dependent accidental death and dismemberment benefits.

Evidence of insurability is required if you are applying for any amount of dependent spouse life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

You pay 100% of the cost for your dependent coverage. Your dependents will be covered at 12:01 a.m. on the latest of:

- the date your dependents are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for dependent insurance, if you apply within 31 days after your dependent's eligibility date; or
- the date Unum approves your dependent's evidence of insurability form, if evidence of insurability is required.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000330

If you do not apply for dependent spouse and/or child coverage on or before the 31st day after your dependent's eligibility date, you can apply at the next annual enrollment period or at anytime during the plan year. Evidence of insurability is required for any amount of dependent life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.

Dependent coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent evidence of insurability form for life insurance.

Dependent coverage applied for at anytime other than during an annual enrollment period year will be at 12:01 a.m. on the later of:

- the date you apply for dependent accidental death and dismemberment insurance; or
- the date Unum approves your dependent's evidence of insurability form for life insurance.

### WHEN CAN YOU CHANGE YOUR DEPENDENT COVERAGE?

You can change your dependent spouse coverage by applying for additional benefit units at anytime during the plan year. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life Insurance by any amount. Any increase in coverage will being at 12:01 am on the date Unum approves your dependent spouse's evidence of insurability form. A decrease or cancelation in coverage will begin at 12:01 am on the later of:

- the date you provide written notice to your Employer; or
- the last day of the period for which any required contributions are made.

You can also change your dependent spouse life coverage by applying for additional benefit units during an annual enrollment period. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life insurance by any amount.

Unum and your Employer determine when the annual enrollment period begins and ends.

Any increase in dependent spouse life coverage will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000331

- the date Unum approves your dependent's evidence of insurability form.

Any decrease in dependent spouse life coverage or any cancellation of dependent coverage will begin on the first day of the next plan year.

An evidence of insurability form for your dependents can be obtained from your Employer.

### WHAT IF YOUR DEPENDENT IS TOTALLY DISABLED ON THE DATE YOUR DEPENDENT'S COVERAGE WOULD NORMALLY BEGIN?

If your eligible dependent is **totally disabled**, your dependent's coverage will begin on the date your eligible dependent no longer is totally disabled. This provision does not apply to a newborn child while dependent insurance is in effect.

### WHEN WILL CHANGES TO YOUR DEPENDENT'S COVERAGE TAKE EFFECT?

Once your dependent's coverage begins, any increased or additional dependent coverage due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your dependent's evidence of insurability form for life insurance, if evidence of insurability is required, provided your dependent is not totally disabled. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional dependent coverage due to a plan change will begin on the date you return to active employment.

If your dependent is totally disabled, any increased or additional dependent coverage will begin on the date your dependent is no longer totally disabled.

Any decreased coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease.

### WHEN DOES YOUR DEPENDENT'S COVERAGE END?

Your dependent's coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the date of your death;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Coverage for any one dependent will end on the earliest of:

- the date your coverage under a plan ends;
- the date your dependent ceases to be an eligible dependent;
- for a spouse, the date of divorce or annulment.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000332

Unum will provide coverage for a payable claim which occurs while your dependents are covered under the Summary of Benefits or plan.

### WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You or your authorized representative can start legal action regarding a claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

### HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?

Unum considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

As a basis for doing this, we will use only statements made in a signed application by the Employer, or an application or evidence of insurability form signed by you, a copy of which has been given:

- to you; or
- your beneficiary, or a person acting on your behalf, if you:
  - die; or
  - are not competent.

Unum can take action only in the first 2 years coverage is in force.

If an individual's age is misstated:

- the correct age will decide if and in what amounts insurance is valid under the Summary of Benefits; and
- a fair adjustment of the premium will be made.

### HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000333

### DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For the purposes of the Summary of Benefits, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000334

# LIFE INSURANCE

## BENEFIT INFORMATION

### *WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT?*

Your beneficiary(ies) will receive payment when Unum approves your death claim.

### *WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF DEATH?*

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

### *HOW MUCH WILL UNUM PAY YOU IF UNUM APPROVES YOUR DEPENDENT'S DEATH CLAIM?*

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### *HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IF UNUM APPROVES YOUR DEATH CLAIM?*

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHAT ARE YOUR ANNUAL EARNINGS?*

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### *WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?*

If you become disabled while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000335

**WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? *(Conversion Privilege)***

When coverage ends under the plan, you and your dependents can convert your coverages to individual life policies, without evidence of insurability. The maximum amounts that you can convert are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

If you convert to an individual life policy, then return to work, and, again, become insured under the plan, you are not eligible to convert to an individual life policy again. However, you do not need to surrender that individual life policy when you return to work.

Converted insurance may be of any type of the level premium whole life plans then in use by Unum. The person may elect one year of Preliminary Term insurance under the level premium whole life policy. The individual policy will not contain disability or other extra benefits.

**WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? *(Conversion Privilege)***

You and your dependents may convert a limited amount of life insurance if you have been insured under your Employer's group plan with Unum for at least five (5) years and the Summary of Benefits or the plan:

- is cancelled with Unum; or
- changes so that you no longer are eligible.

The individual life policy maximum for each of you will be the lesser of:

- $10,000; or
- your or your dependent's coverage amounts under the plan less any amounts that become available under any other group life plan offered by your Employer within 31 days after the date the Summary of Benefits or the plan is cancelled.

**PREMIUMS**

Premiums for the converted insurance will be based on:

- the person's then attained age on the effective date of the individual life policy;
- the type and amount of insurance to be converted;
- Unum's customary rates in use at that time; and
- the class of risk to which the person belongs.

If the premium payment has been made, the individual life policy will be effective at the end of the 31 day conversion application period.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000336

### DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD

If you or your dependents die within the 31 day conversion application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

### EMPLOYER NOTICE

Your Employer must notify each person of their conversion privileges 15 days before the date that person's life insurance terminates.

If your Employer does not notify that person 15 days before that person's life insurance terminates, the time allowed for that person to exercise their life conversion privilege will be extended 15 days from the date your Employer does notify that person.

In no event will the time allowed for a person to exercise their life conversion privilege be extended beyond 60 days from the date that person's life insurance terminates.

Any extended application period provided under this provision does not continue any insurance beyond the period provided in this Summary of Benefits.

### APPLYING FOR CONVERSION

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

### WILL UNUM ACCELERATE YOUR OR YOUR DEPENDENT'S DEATH BENEFIT FOR THE PLAN IF YOU OR YOUR DEPENDENT BECOMES TERMINALLY ILL? (Accelerated Benefit)

If you or your dependent becomes terminally ill while you or your dependent is insured by the plan, Unum will pay you a portion of your or your dependent's life insurance benefit one time. The payment will be based on 75% of your or your dependent's life insurance amount. However, the one-time benefit paid will not be greater than $500,000.

Your or your dependent's right to exercise this option and to receive payment is subject to the following:

- you or your dependent requests this election, in writing, on a form acceptable to Unum;
- you or your dependent must be terminally ill at the time of payment of the Accelerated Benefit;

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000337

- your or your dependent's physician must certify, in writing, that you or your dependent is terminally ill and your or your dependent's life expectancy has been reduced to less than 12 months; and
- the physician's certification must be deemed satisfactory to Unum.

The Accelerated Benefit is available on a voluntary basis. Therefore, you or your dependent is not eligible for benefits if:

- you or your dependent is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- you or your dependent is required by a government agency to use this benefit in order to apply for, get, or otherwise keep a government benefit or entitlement.

Premium payments must continue to be paid on the full amount of life insurance.

Also, premium payments must continue to be paid on the full amount of your dependent's life insurance.

If you have assigned your rights under the plan to an assignee or made an irrevocable beneficiary designation, Unum must receive consent, in writing, that the assignee or irrevocable beneficiary has agreed to the Accelerated Benefit payment on your behalf in a form acceptable to Unum before benefits are payable.

An election to receive an Accelerated Benefit will have the following effect on other benefits:

- the death benefit payable will be reduced by any amount of Accelerated Benefit that has been paid; and
- any amount of life insurance that may be available under the conversion privilege will be reduced by the amount of the Accelerated Benefit paid. The remaining life insurance amount will be paid according to the terms of the Summary of Benefits subject to any reduction and termination provisions.

Benefits paid may be taxable. Unum is not responsible for any tax or other effects of any benefit paid. As with all tax matters, you or your dependent should consult your personal tax advisor to assess the impact of this benefit.

### *WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any losses where death is caused by, contributed to by, or results from:

- suicide occurring within 12 months after your or your dependent's initial effective date of insurance; and
- suicide occurring within 12 months after the date any increases or additional insurance become effective for you or your dependent.

The suicide exclusion will apply to any amounts of insurance for which you pay all or part of the premium.

The suicide exclusion also will apply to any amount that is subject to evidence of insurability requirements and Unum approves the evidence of insurability form and the amount you or your dependent applied for at that time.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000338

If you or your dependent dies as a result of a suicide Unum will refund all premium paid for coverage on you or your dependent that became effective within the 12 month period immediately preceding the date of your or your dependent's suicide.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000339

# LIFE INSURANCE

## OTHER BENEFIT FEATURES

**WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS?  (Portability)**

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves.  However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of life insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of life insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for a child will not be more than:

- the highest amount of life insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents.  If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of life insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000340

### APPLYING FOR PORTABLE COVERAGE

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000341

If we determine that because of an injury or sickness, which has a material effect on life expectancy, you or your dependents were not eligible for portability at the time you or your dependents elected portable coverage, the benefit will be adjusted to the amount of whole life coverage the premium would have purchased under the Conversion Privilege.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of life insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of life insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. All increases are subject to evidence of insurability. Portable coverage will reduce at the ages and amounts shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

LIFE-OTR-3 (1/1/2015) REV                                    33

Claimant Name: Kathy Williams       Claim #: 14865967

UA-CL-AD&D-000342

**PREMIUM RATE CHANGES FOR PORTABLE COVERAGE**

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

**APPLYING FOR CONVERSION, IF PORTABLE COVERAGE ENDS OR IS NOT AVAILABLE**

If you or your dependent is not eligible to apply for portable coverage or portable coverage ends, then you or your dependent may qualify for conversion coverage. Refer to Conversion Privilege under this plan.

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

UA-CL-AD&D-000343

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## BENEFIT INFORMATION

***WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT IN THE EVENT OF YOUR DEATH IF YOUR DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

Your beneficiary(ies) will receive payment when Unum approves your death claim providing you meet certain conditions.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF YOUR DEPENDENT'S DEATH IF YOUR DEPENDENT'S DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the death claim for your dependent providing certain conditions are met.

***WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF ACCIDENTAL DEATH?***

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF CERTAIN OTHER COVERED LOSSES IF THE LOSS IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the claim.

***HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IN THE EVENT OF YOUR ACCIDENTAL DEATH OR YOU FOR YOUR DEPENDENT'S ACCIDENTAL DEATH OR FOR CERTAIN OTHER COVERED LOSSES?***

If Unum approves the claim, Unum will determine the payment according to the Covered Losses and Benefits List below. The benefit Unum will pay is listed opposite the corresponding covered loss.

The benefit will be paid only if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

| Covered Losses | Benefit Amounts |
| --- | --- |
| Life | The Full Amount |
| Both Hands or Both Feet or Sight of Both Eyes | The Full Amount |
| One Hand and One Foot | The Full Amount |
| One Hand and Sight of One Eye | The Full Amount |
| One Foot and | |

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000344

| | |
|---|---|
| Sight of One Eye | The Full Amount |
| Speech and Hearing | The Full Amount |
| Quadriplegia | The Full Amount |
| Triplegia | Three Quarters The Full Amount |
| Paraplegia | Three Quarters The Full Amount |
| One Hand or One Foot | One Half The Full Amount |
| Sight of One Eye | One Half The Full Amount |
| Speech or Hearing | One Half The Full Amount |
| Hemiplegia | One Half The Full Amount |
| Thumb and Index Finger of Same Hand | One Quarter The Full Amount |
| Uniplegia | One Quarter The Full Amount |

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHAT ARE YOUR ANNUAL EARNINGS?*

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### *WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?*

If you have an accidental bodily injury that results in one or more of the covered losses while you are on a covered layoff or leave of absence, we will use your

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000345

annual earnings from your Employer in effect just prior to the date your absence began.

### WHAT REPATRIATION BENEFIT WILL UNUM PROVIDE?

Unum will pay an additional benefit for the preparation and transportation of your or your dependent's body to a mortuary chosen by you or your authorized representative. Payment will be made if, as the result of a covered accident, you or your dependent suffers loss of life at least 100 miles away from your or your dependent's principal place of residence.

However, when combined with two or more Unum accidental death and dismemberment insurance plans, the combined overall maximum for these plans together cannot exceed the actual expenses for the preparation and transportation of your or your dependent's body to a mortuary.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHAT SEATBELT(S) AND AIR BAG BENEFIT WILL UNUM PROVIDE?

Unum will pay you or your authorized representative an additional benefit if you or your dependent sustains an accidental bodily injury which causes your or your dependent's death while you or your dependent is driving or riding in a **Private Passenger Car**, provided:

For Seatbelt(s):

- the Private Passenger Car is equipped with seatbelt(s); and
- the seatbelt(s) were in actual use and properly fastened at the time of the covered accident; and
- the position of the seatbelt(s) are certified in the official report of the covered accident, or by the investigating officer. A copy of the police accident report must be submitted with the claim.

Also, if such certification is not available, and it is clear that you or your dependent was properly wearing seatbelt(s), then we will pay the additional seatbelt benefit.

However, if such certification is not available, and it is unclear whether you or your dependent was properly wearing seatbelt(s), then we will pay a fixed benefit of $1,000.

We will only pay the seatbelt benefit for the death of a minor, dependent child, if the child is correctly strapped and fastened in the appropriate seat for the child's age and weight as defined by state or federal guidelines. The seatbelt device must also be approved by the state or federal government for the dependent child's age and weight.

An automatic harness seatbelt will not be considered properly fastened unless a lap belt is also used.

For Air Bag:

UA-CL-AD&D-000346

- the Private Passenger Car is equipped with an air bag for the seat in which you are seated; and
- the seatbelt(s) must be in actual use and properly fastened at the time of the covered accident.

No benefit will be paid if you or your dependent is the driver of the Private Passenger Car and does not hold a current and valid driver's license.

No benefit will be paid if Unum is able to verify that the air bag(s) had been disengaged prior to the accident.

The accident causing your or your dependent's death must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT EDUCATION BENEFIT WILL UNUM PROVIDE FOR YOUR QUALIFIED CHILDREN?*

Unum will pay your authorized representative on behalf of each of your qualified children a lump sum payment if:

- you lose your life:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your accidental bodily injury occurred while you were insured under the plan;
- proof is furnished to Unum that the child is a **qualified child**; and
- the qualified child continues to be enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level.

The benefit amount per academic year, maximum benefit payments, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHEN WILL THE EDUCATION BENEFIT END FOR EACH QUALIFIED CHILD?*

The education benefit will terminate for each qualified child on the earliest of the following dates:

- the date your qualified child fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### *WHAT COVERAGE FOR EXPOSURE AND DISAPPEARANCE BENEFIT WILL UNUM PROVIDE?*

Unum will pay a benefit if you or your dependent sustains an accidental bodily injury and are unavoidably exposed to the elements and suffer a loss.

We will presume you or your dependent suffered loss of life due to an accident if:

AD&D-BEN-4 (1/1/2015) REV                    38

UA-CL-AD&D-000347

- you or your dependent are riding in a common public passenger carrier that is involved in an accident covered under the Summary of Benefits; and
- as a result of the accident, the common public passenger carrier is wrecked, sinks, is stranded, or disappears; and
- your or your dependent's body is not found within 1 year of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT CHILD CARE BENEFIT WILL UNUM PROVIDE?*

Unum will pay you, your spouse or your or your spouse's authorized representative on behalf of each of your qualified children an annual benefit amount for child care if:

- you or your spouse die:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your or your spouse's accidental bodily injury occurred while you or your spouse was insured under the plan;
- proof is furnished to Unum that the child is a qualified child.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident.

The annual benefit amount, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHEN WILL THE CHILD CARE BENEFIT END FOR EACH QUALIFIED CHILD?*

The child care benefit will terminate for each qualified child on the earliest of the following dates:

- the date you, your spouse or your or your spouse's authorized representative fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### *WHAT COMA BENEFIT WILL UNUM PROVIDE?*

Unum will pay a benefit to your or your dependent's beneficiary if you or your dependents sustain an accidental bodily injury which directly results in your or your dependents being in a **coma** or a (persistent) **vegetative state**. The coma must begin within 31 days of the accident.

No benefits are payable for the first 31 days that you or your dependents are in a coma. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

Also, the accident must occur while you or your dependents are insured under the plan.

Claimant Name: Kathy Williams      Claim #: 14865967

UA-CL-AD&D-000348

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

The monthly benefit amount and maximum number of months are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT REHABILITATION PHYSICAL THERAPY BENEFIT WILL UNUM PROVIDE?*

Unum will pay you or your dependents an additional benefit for rehabilitative physical therapy that is prescribed by your or your dependent's attending physician if you or your dependents sustain an accidental bodily injury that results in one or more of the covered losses outlined in the Covered Losses and Benefits List.

The benefit amount and maximum benefit amount are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:

- suicide while sane or intentionally self-inflicted injury while sane.
- active participation in a riot.
- an attempt to commit or commission of a crime.
- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol.
- service on full-time active duty in the Armed Forces of any country or international authority.
- travel or flight in any vehicle or device for aerial navigation, including boarding or alighting from it while:
  - it is being used for test or experimental purposes;
  - you or your dependent is operating, learning to operate or serving as a member of the crew;
  - it is being operated by or for or under the direction of any military authority.
  This exclusion does not apply to:
  - transport type aircraft operated by the Military Airlift Command of the United States; or
  - similar air transport service of any other country.
- travel or flight in any aircraft or device for aerial navigation, including boarding or alighting from it, owned or leased by or on behalf of your Employer.
- disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.
- being **intoxicated**.
- bacterial infection. This exclusion does not apply to you or your dependent when the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

AD&D-BEN-6 (1/1/2015) REV                    40

UA-CL-AD&D-000349

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## OTHER BENEFIT FEATURES

### WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of accidental death and dismemberment insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of accidental death and dismemberment insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for a child will not be more than:

- the highest amount of accidental death and dismemberment insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000350

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of AD&D insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

### *APPLYING FOR PORTABLE COVERAGE*

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000351

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of AD&D insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of accidental death and dismemberment insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. Portable coverage will reduce at the ages and amounts shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000352

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

***PREMIUM RATE CHANGES FOR PORTABLE COVERAGE***

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000353

# GLOSSARY

**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause.

**ACCREDITED SCHOOL** means an accredited post-secondary institution of higher learning for full-time students beyond the 12th grade level.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**ACTIVITIES OF DAILY LIVING** means:

- Bathing - the ability to wash oneself either in the tub or shower or by sponge bath with or without equipment or adaptive devices.
- Dressing - the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn.
- Toileting - the ability to get to and from and on and off the toilet; to maintain a reasonable level of personal hygiene, and to care for clothing.
- Transferring - the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
- Continence - the ability to either:
  - voluntarily control bowel and bladder function; or
  - if incontinent, be able to maintain a reasonable level of personal hygiene.
- Eating - the ability to get nourishment into the body.

A person is considered unable to perform an activity of daily living if the task cannot be performed safely without another person's stand-by assistance or verbal cueing.

**ANNUAL EARNINGS** means your annual income received from your Employer as defined in the plan.

**ANNUAL ENROLLMENT PERIOD** means a period of time before the beginning of each plan year.

**COGNITIVELY IMPAIRED** means a person has a deterioration or loss in intellectual capacity resulting from injury, sickness, advanced age, Alzheimer's disease or similar forms of irreversible dementia and needs another person's assistance or verbal cueing for his or her own protection or for the protection of others.

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000354

**COMA** means being in a profound stupor or state of complete and total unconsciousness. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Employer/Applicant named in the Application For Participation in the Select Group Insurance Trust, on the first page of the Summary of Benefits and in all amendments. It includes any division, subsidiary or affiliated company named in the Summary of Benefits.

**EVIDENCE OF INSURABILITY** means a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage. Evidence of insurability will be at Unum's expense.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**HEMIPLEGIA** means total and irreversible paralysis of both limbs on either side of the body (i.e. the right arm and right leg or the left arm and left leg).

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause.

**INSURED** means any person covered under a plan.

**INTOXICATED** means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIFE THREATENING CONDITION** is a critical health condition that possibly could result in your dependent's loss of life.

**LOSS OF A FOOT** means that all of the foot is cut off at or above the ankle joint.

**LOSS OF A HAND** means that all four fingers are cut off at or above the knuckles joining each to the hand.

**LOSS OF HEARING** means the total and irrecoverable loss of hearing in both ears.

**LOSS OF SIGHT** means the eye is totally blind and that no sight can be restored in that eye.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000355

**LOSS OF SPEECH** means the total and irrecoverable loss of speech.

**LOSS OF THUMB AND INDEX FINGER** means that all of the thumb and index finger are cut off at or above the joint closest to the wrist.

**PARAPLEGIA** means total and irreversible paralysis of both lower limbs.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the Summary of Benefits.

**PHYSICIAN** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Unum will not recognize you, or your spouse, children, parents or siblings as a physician for a claim that you send to us.

**PLAN** means a line of coverage under the Summary of Benefits.

**PRIVATE PASSENGER CAR** means a validly registered four-wheel private passenger car (including Employer-owned cars), station wagons, jeeps, pick-up trucks, and vans that are used only as private passenger cars.

**QUADRIPLEGIA** means total and irreversible paralysis of all four limbs.

**QUALIFIED CHILD** means:

- **for purposes of the Education Benefit**, any of your unmarried dependent children under age 25 who, on the date of your death as a result of an accidental bodily injury, was either:

  - enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level; or
  - at the 12th grade level and enrolls as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level within 365 days following the date of your death.

- **for purposes of the Child Care Benefit**, any of your unmarried dependent children under age 14 who, were enrolled in a licensed day care facility, school facility, or other similar program for 90 continuous days before the date of the accident causing your death. The Child Care Benefit will not be extended to any of your children born after the date of your death unless pregnancy commenced prior to the date of your death.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

Claimant Name: Kathy   Williams      Claim #:  14865967

UA-CL-AD&D-000356

**RETAINED ASSET ACCOUNT** is an interest bearing account established through an intermediary bank in the name of you or your beneficiary, as owner.

**SICKNESS** means:

- **for purposes of Portability**, an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.
- **for all other purposes**, an illness or disease.

**TOTALLY DISABLED** means that, as a result of an injury, a sickness or a disorder, your dependent:

- is confined in a hospital or similar institution;
- is unable to perform two or more activities of daily living (ADLs) because of a physical or mental incapacity resulting from an injury or a sickness;
- is cognitively impaired;
- has a life threatening condition;
- is unable to attend school outside of home provided your dependent is a child and of school age (ages 5-19 years of age); or
- is at a developmental age which is less than half the chronological age by milestones or other pediatric developmental testing (e.g., Denver Developmental Test or similar test) provided your dependent is a child and of pre-school age (up to 6 years of age).

**TRIPLEGIA** means total and irreversible paralysis of three limbs.

**TRUST** means the policyholder trust named on the first page of the Summary of Benefits and all amendments to the policy.

**UNIPLEGIA** means total and irreversible paralysis of one limb.

**VEGETATIVE STATE** means being completely unaware of one's self and the environment with the presence of sleep-awake cycles and at least partial preservation of involuntary brain functions. Such vegetative state must be due to an accidental bodily injury and must begin within 31 days of the date of the accident.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE**, **US** and **OUR** means Unum Life Insurance Company of America.

**YOU** means an employee who is eligible for Unum coverage.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000357

# ERISA

### Additional Summary Plan Description Information

If the Summary of Benefits provides benefits under a Plan which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the following provisions apply. These provisions, together with your certificate of coverage, constitute the summary plan description. The summary plan description and the Summary of Benefits constitute the Plan. Benefit determinations are controlled exclusively by the Summary of Benefits, your certificate of coverage and the information contained in this document.

**Name of Plan:**
BlueScope Steel North America Corporation Plan

**Name and Address of Employer:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

**Plan Identification Number:**
a. Employer IRS Identification #: 23-2081882
b. Plan #: 501

**Type of Welfare Plan:**
Life and Accidental Death and Dismemberment

**Type of Administration:**
The Plan is administered by the Plan Administrator. Benefits are administered by the insurer and provided in accordance with the insurance Summary of Benefits issued to the Plan.

**ERISA Plan Year Ends:**
December 31

**Plan Administrator, Name,**
**Address, and Telephone Number:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069
(816) 968-3000

BlueScope Steel North America Corporation is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties. The Plan Administrator may designate Trustees of the Plan, in which case the Administrator will advise you separately of the name, title and address of each Trustee.

**Agent for Service of**
**Legal Process on the Plan:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000358

Service of legal process may also be made upon the Plan Administrator, or a Trustee of the Plan, if any.

**Funding and Contributions:**
The Plan is funded by insurance issued by Unum Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122 (hereinafter referred to as "Unum") under identification number 382480 012. Contributions to the Plan are made as stated under "WHO PAYS FOR THE COVERAGE" in the Certificate of Coverage.

## EMPLOYER'S RIGHT TO AMEND THE PLAN

The Employer reserves the right, in its sole and absolute discretion, to amend, modify, or terminate, in whole or in part, any or all of the provisions of the Plan (including any related documents and underlying policies), at any time and for any reason or no reason. Any amendment, modification, or termination must be in writing and endorsed on or attached to the Plan.

## EMPLOYER'S RIGHT TO REQUEST SUMMARY OF BENEFITS CHANGE

The Employer can request a Summary of Benefits change. Only an officer or registrar of Unum can approve a change. The change must be in writing and endorsed on or attached to the Summary of Benefits.

## MODIFYING OR CANCELLING THE SUMMARY OF BENEFITS OR A PLAN UNDER THE SUMMARY OF BENEFITS

The Summary of Benefits or a plan under the Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

Unum may cancel or modify the Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to the Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or
- the premium is not paid in accordance with the provisions of the Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger,

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000359

divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day grace period.

If Unum cancels or modifies the Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel the Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify the Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel the Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, the Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels the Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the Summary of Benefits or a plan is cancelled, the cancellation will not affect a payable claim.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your insurance certificate. To complete your claim filing, Unum must receive the claim information it requests from you (or your authorized representative), your attending physician and your Employer. If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

## CLAIMS PROCEDURES

In the event that your claim is denied, either in full or in part, Unum will notify you in writing within 90 days after your claim is filed. Under special circumstances, Unum is allowed an additional period of not more than 90 days (180 days in total) within which to notify you of its decision. If such an extension is required, you will receive a written notice from Unum indicating the reason for the delay and the date you may expect a final decision. Unum's notice of denial shall include:

- the specific reason or reasons for denial with reference to those Plan provisions on which the denial is based;
- a description of any additional material or information necessary to complete the claim and why that material or information is necessary; and
- a description of the Plan's procedures and applicable time limits for appealing the determination, including a statement of your right to bring a lawsuit under Section 502(a) of ERISA following an adverse determination from Unum on appeal.

Claimant Name: Kathy Williams      Claim #: 14865967

UA-CL-AD&D-000360

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

If you or your authorized representative appeal a denied claim, it must be submitted within 90 days after you receive Unum's notice of denial. You have the right to:

- submit a request for review, in writing, to Unum;
- upon request and free of charge, reasonable access to and copies of, all relevant documents as defined by applicable U.S. Department of Labor regulations; and
- submit written comments, documents, records and other information relating to the claim to Unum.

Unum will make a full and fair review of the claim and all new information submitted whether or not presented or available at the initial determination, and may require additional documents as it deems necessary or desirable in making such a review. A final decision on the review shall be made not later than 60 days following receipt of the written request for review. If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension and the date by which the Plan expects to make a decision. If an extension is required due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the necessary information and the date by which you need to provide it to us. The 60-day extension of the appeal review period will begin after you have provided that information.

The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference, again, to those Summary of Benefits' provisions upon which the final decision is based. It will also include a statement describing your access to documents and describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the determination.

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

UA-CL-AD&D-000361

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

Enforce Your Rights

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, if, for example, it finds your claim is frivolous.

Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000362

## OTHER RIGHTS

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the Summary of Benefits. You agree that Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

## DISCRETIONARY ACTS

The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Once you are deemed to have exhausted your appeal rights under the Plan, you have the right to seek court review under Section 502(a) of ERISA of any benefit determinations with which you disagree. The court will determine the standard of review it will apply in evaluating those decisions.

UA-CL-AD&D-000363

## NOTICE OF PROTECTION PROVIDED BY
## MISSOURI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

This notice provides a **brief summary** of the Missouri Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. This safety net was created under Missouri law, which determines who and what is covered and the amounts of coverage.

The Association was established to provide protection in the unlikely event that your life, annuity, or health insurance company becomes financially unable to meet its obligations and is taken over by its insurance department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Missouri law, with funding from assessments paid by other insurance companies.

The basic protections provided by the Association are as follows:

- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values

- Health Insurance
  - $500,000 in hospital, medical and surgical insurance benefits
  - $300,000 in disability insurance benefits
  - $300,000 in long-term care insurance benefits
  - $100,000 in other types of health insurance benefits

- Annuities
  - $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is as follows:

- $300,000 in aggregate for all types of coverage listed above, with the exception of basic hospital, medical, and surgical insurance or major medical insurance
- $500,000 in aggregate for basic hospital, medical, and surgical insurance or major medical insurance
- $5,000,000 to one policy owner of multiple nongroup policies of life insurance, whether the policy owner is an individual, firm, corporation, or other person, and whether the persons insured are officers, managers, employees, or other persons

**Note: Certain policies and contracts may not be covered or fully covered.** For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Missouri law.

To learn more about the above protections, as well as protections relating to group contracts or retirement plans, please visit the Association's website at www.mo-iga.org, or contact:

Missouri Life and Health Insurance
Guaranty Association
994 Diamond Ridge, Suite 102

Missouri Department of Insurance,
Financial Institutions and Professional
Registration

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000364

Jefferson City, Missouri 65109
(573) 634-8455
Fax: (573) 634-8488

301 West High Street, Room 530
Jefferson City, Missouri 65101
(573) 522-6115

**Insurance companies and agents are not allowed by Missouri law to use the existence of the Association or its coverage to encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and Missouri law, then Missouri law will control.**

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000365

```
                                Activity
-----------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 09/28/2018
Notify Date: 09/28/2018
Due Date:
Subject: RTC to attny
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
---------------------------------------------------------------------
Request: Staples, Kristi-Lee 09/28/2018 15:49:31: RTC to attny

Created By: Staples, Kristi-Lee
Created Date: 09/28/2018 15:49:31        Create Site: Portland

Response Fields
---------------------------------------------------------------------
Call Type: Returned Call From
Person Contacted: Attorney
Reason for Call: Claim Status Update
Call Outcome: Left Message
Comments: Staples, Kristi-Lee 09/28/2018 15:49:31: 09/28/18 348p
213-629-9922

Left VM for Attny Blakeman
Returning his call
Left 800# and NL#
kls



Completed By: Staples, Kristi-Lee
Completed Date: 09/28/2018 15:49:31        Complete Site: Portland
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000366

```
                               Activity
-------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Direct Services          Name: RTC Request
Status: Completed
Original Notify Date: 09/28/2018
Notify Date: 09/28/2018
Due Date:
Subject: 215p CCC OTH 03CB
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
-----------------------------------------------------------------------
Request: Miles, DaVida 09/28/2018 14:16:29: Claim Documentation Form
Call Received From    Benjamin Blakeman    Relationship to Insured    Attorney for
the bene
Telephone    213-629-9922
Message    Benjamin called in to speak with the LBS, however she was unavailable.
Benjamin would like a call back.



Created By: Miles, DaVida
Created Date: 09/28/2018 14:16:29        Create Site: Portland

Response Fields
-----------------------------------------------------------------------
Response: Staples, Kristi-Lee 09/28/2018 15:49:38: see call doc
kls



Completed By: Staples, Kristi-Lee
Completed Date: 09/28/2018 15:49:38       Complete Site: Portland
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Document Detail
--------------------------------------------------------------------------------
**Checked/Unchecked Indicator: No**

**Document ID: 2018092817460735248E**

**Entry Date: 09/28/2018 17:46:14**

**Received Date: 09/28/2018**

**Date Added to Claim: 09/28/2018**

**Primary Doc Type: Appeals**

**Secondary Doc Type: Other**

**Medical Provider:**

**Document Notes: letter from attny req'ing extension**

**Work Notes:**

# FAX COVER SHEET

| TO | Claims Specialist Unum |
| --- | --- |
| COMPANY | |
| FAX NUMBER | 18004472498 |
| FROM | Benjamin Blakeman |
| DATE | 2018-09-28 21:39:09 GMT |
| RE | Claim No. 14865967 |

COVER MESSAGE

Please deliver immediately to Kristi-Lee Staples

Claimant Name: Kathy  Williams    Claim #:  14865967

UA-CL-AD&D-000369

# BLAKEMAN LAW

*Life insurance, and financial elder abuse litigation*

**611 Wilshire Blvd., Ste. 1208**
**Los Angeles, California 90017**

**Phone: 213-629-9922**
*Fax:   213-232-3230*
web: www.lifeinsurance-law.com

**September 28, 2018**

**Via Facsimile 800-447-2498**
Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158

Attention: Kristi-Lee Staples

> **Re:   Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

Dear Ms. Staples:

On September 6, 2018, I faxed a letter of representation regarding the above-referenced matter and requested copies of the Trust Document (commonly known as the "Plan Document"), Summary Plan Description (SPD) (and any amendments thereto since the inception of the Plan), and Form 5500.

I also requested information as to when and manner in which the SPD and amendments, if any, were provided to the Blue Scope employees.

To date, I have received no response to those requests.

This morning, I called Unum to follow up. I was told you were the person in charge of this claim, but that you were unavailable and would call me back. You called back during my lunch hour and left a message, but you did not leave your extension number. When I tried to return your call, the voice response system informed me there would be a 15-minute wait to speak with a representative. I was on hold for over 17 minutes when I gave up. I then called back and left a callback number, but no one called me back.

I want you to understand I consider this to be a serious matter and I expect your company to treat it as such. Your failure to respond to my initial request for over three weeks and the fact that I am unable to reach you with reasonable efforts is very frustrating.

---

Kristi-Lee Staples
September 28, 2018
Page **2** of **2**

At this point, we have been delayed considerably in filing the appeal we intend to file to Unum's denial of this claim, and we are requesting additional time for the appeal to compensate for this delay.

I look forward to your prompt reply to these requests.

BLAKEMAN LAW

_____

Benjamin Blakeman

cc: Gary Williams

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/01/2018
Notify Date: 10/01/2018
Due Date:
Subject: TPC to attny
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Staples, Kristi-Lee
Action:

Request Fields
----------------------------------------------------------------------
Request: Staples, Kristi-Lee 10/01/2018 13:10:30: TPC to attny

Created By: Staples, Kristi-Lee
Created Date: 10/01/2018 13:10:30          Create Site: Portland

Response Fields
----------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Attorney
Reason for Call: Claim Status Update
Call Outcome: Contact Successful
Comments: Staples, Kristi-Lee 10/01/2018 13:10:30: 10/01/18 1254p
213-629-9922

Spoke w/ Atty Blakeman
Calling in resp to his letter
Apologized for any delay
Adv we would not have any info as to how/when the SPD were provided to the EEs
Adv this is group covg- BlueScope would be responsible for providing these
documents
Adv we do not send anything directly to the EEs
Adv the info I was able to provide him was info we have here on file
I am not sure BlueScopes process on providing this to the EEs
Adv we do not send out any correspondence until time of claim
He asked if I handled the appeal- adv no, that would go to our appeals dept
He asked if I was the plan admin- adv no, that is Bluescope
He adv the appeal should only be handled by the PA, and if I am not the PA, the
appeal needs to go to BlueScope
Explained our appeal process - 90days from notice of denial of letter (roughly end
of July)
He adv EE is entitled to receive the plan docs prior to submitting his appeal
Adv to reach out to BlueScope for this information
He requested an extension for filing the appeal - adv I will have to get back to
him, unclear of that process
Provided fax # for Amy & Molly at BlueScope HR
Adv I will reach out to ER and make them aware of his request
He thanked me & ended call
kls




Completed By: Staples, Kristi-Lee
Completed Date: 10/01/2018 13:10:30          Complete Site: Portland




Claimant Name: Kathy  Williams     Claim #:  14865967

----------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018100113232513FF98

**Entry Date:** 10/01/2018 13:23:26

**Received Date:** 10/01/2018

**Date Added to Claim:** 10/01/2018

**Primary Doc Type:** Communication

**Secondary Doc Type:** Conversations

**Medical Provider:**

**Document Notes:** email w. CM

**Work Notes:**

UA-CL-AD&D-000373

**Staples, Kristi-Lee**

| | |
|---|---|
| **From:** | Ashley, Kimberly E |
| **Sent:** | Monday, October 01, 2018 1:17 PM |
| **To:** | Staples, Kristi-Lee |
| **Cc:** | NCG MW Service Requests |
| **Subject:** | RE: Bluescope Steel #382480 |

She is the overall and I will send a note to them now as well.

Thanks!

Kim Ashley
**National Client Manager**
**4001 W. 114th Street**
**Suite 100**
**Leawood, KS 66211**

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com

**From:** Staples, Kristi-Lee
**Sent:** Monday, October 01, 2018 12:16 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

Kim,

I wanted to loop back around on this. I just spoke with the attorney and he is working on submitting an appeal. Just as an FYI in case you hear from the admin – he wanted specific info as to how/when the EEs are provided access to any and all plan documents & summaries. I directed him to contact BlueScope to see what their specific process is and what resources their EEs are provided when it comes to

UA-CL-AD&D-000374

enrollment. He is arguing that his client was not made aware of any exclusions in the AD&D policy. I did provide him with the policy and SPD that we have but he is looking for more specifics.

I advised him that I would contact the PH and let him know ahead of time that he is requesting this additional info. He was reasonable to speak with so I don't think this will escalate further- I just want to give the PH a heads up.

The most recent email we have for Amy at Bluescope is amy.hughes@bluescopesteelna.com. Is she still our corporate contact? And is this still a valid email for her?

Thanks
Kristi

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

**From:** Ashley, Kimberly E
**Sent:** Tuesday, September 18, 2018 4:35 PM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

Thanks, I gave the overall plan admin a heads up too.

**From:** Staples, Kristi-Lee
**Sent:** Tuesday, September 18, 2018 3:34 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

No. The information requested was sent to the attorney. We have not heard anything further. I will let you know if this continues to escalate or an appeal is filed.

Thanks for checking!!

*Kristi Staples*

2

UA-CL-AD&D-000375

Senior Life Benefits Specialist — AD&D
Unum Life Insurance Company of America
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

**From:** Ashley, Kimberly E
**Sent:** Tuesday, September 18, 2018 4:32 PM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

Ok, where are we on this one, have they appealed?

**From:** Staples, Kristi-Lee
**Sent:** Monday, September 10, 2018 7:58 AM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Cc:** Villani, Wendy <WVillani@UNUM.COM>; NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

The employee elected AD&D only, no life covg.

*Kristi Staples*

Senior Life Benefits Specialist — AD&D
Unum Life Insurance Company of America
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

**From:** Ashley, Kimberly E
**Sent:** Monday, September 10, 2018 8:58 AM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** Villani, Wendy <WVillani@UNUM.COM>; NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** Re: Bluescope Steel #382480

How could there be add no death claim?  NCG MW please send her what the employer has on Iservices.

3

UA-CL-AD&D-000376

Sent from my iPhone

On Sep 10, 2018, at 7:54 AM, Staples, Kristi-Lee <KStaples@UNUM.COM> wrote:

We don't have access to iServices.

This was an AD&D only claim, $360k dep SP. EE was Gary Williams, wife Kathy- died 04/27/18. Claim was submitted under Bluescope Buildings (Kansas City, MO) by HR Manager Molly Cisco.

We were just contacted by the lawyer last Thursday, so I have not contacted the group yet.

Thanks-

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

**From:** Ashley, Kimberly E
**Sent:** Friday, September 07, 2018 11:38 AM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** Villani, Wendy <WVillani@UNUM.COM>; NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** Re: Bluescope Steel #382480

You should be looking at Iservices everything is out there that the employer would have.

When was this denied?  How much and who for?  DOD and any other pertinent information would be helpful.  Has employer been notified of counsel and which location/name at employer have you been dealing with?

Thanks

Sent from my iPhone

4

UA-CL-AD&D-000377

On Sep 7, 2018, at 8:31 AM, Staples, Kristi-Lee <KStaples@UNUM.COM> wrote:

Hi Kim-

I had a spouse AD&D claim that was denied due to the alcohol exclusion in the policy. The employee has retained a lawyer who is requesting several documents from me. Basically he is looking for copies of any SPD or summary booklet that would have been provided to Bluescope EEs outlining the policy exclusions - the EE is claiming that he was never told about any possible exclusion.

Do you have any copies of any SPDs that we would have provided to Bluescope in recent years? Is there a broker who provides this information? Should he reach out to Bluescope directly?

I'm just trying to nip this before if escalates. I'm sure an Appeal is forthcoming so I want to do as much as we can now.

Thanks!
Kristi

RE NL# 14865967

*Kristi Staples*
**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

UA-CL-AD&D-000378

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018100113234241FF98

**Entry Date:** 10/01/2018 13:23:43

**Received Date:** 10/01/2018

**Date Added to Claim:** 10/01/2018

**Primary Doc Type:** Communication

**Secondary Doc Type:** Conversations

**Medical Provider:**

**Document Notes:** email to PH

**Work Notes:**

**Staples, Kristi-Lee**

| | |
|---|---|
| From: | Staples, Kristi-Lee |
| Sent: | Monday, October 01, 2018 1:23 PM |
| To: | amy.hughes@bluescopesteelna.com |
| Subject: | Unum 14865967 |

Hi Amy-

I know Kim had reached out to you previously, but I also wanted to send a quick note. I just received a call from Attorney Benjamin Blakeman who is representing Mr. Gary Williams re: the denial of his wife's AD&D claim (Kathy Williams, claim #14865967). He is working on submitting an appeal and wanted specific information as to how/when employees are provided access to any and all plan documents/summaries. I did provide him with the policy and SPD that we have, but he is looking for more specifics. He is arguing that his client was not made aware of any exclusions in the AD&D policy. You should also be hearing from him about this soon, so I wanted to make you aware.

He was reasonable to speak with so I don't think this will escalate further, but I just want to give you a heads up.

I explained to him that he would need to submit the appeal to us within 90 days of his client receiving notice of our decision- approx. the end of July- so he should submit the appeal but month's end. He requested an extension and I am waiting to hear back from our Appeals department.

Please let me know if you have any questions.

Thank you,
Kristi

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
**ph: (800) 445-0402 | fax: (800) 447-2498**
**kstaples@unum.com**
unum

1

UA-CL-AD&D-000380

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018100116521688FF98

Entry Date: 10/01/2018 16:52:17

Received Date: 10/01/2018

Date Added to Claim: 10/01/2018

Primary Doc Type: Communication

Secondary Doc Type: Conversations

Medical Provider:

Document Notes: email from ER

Work Notes:

UA-CL-AD&D-000381

**Staples, Kristi-Lee**

| | |
|---|---|
| **From:** | Hughes, Amy E. <Amy.Hughes@bluescopesteelna.com> |
| **Sent:** | Monday, October 01, 2018 1:26 PM |
| **To:** | Staples, Kristi-Lee |
| **Cc:** | Wilson, Christine P. |
| **Subject:** | RE: Unum 14865967 |

This message originated outside of Unum. Use caution when opening attachments, clicking links or responding to requests for information.

Thank you for the information. I am happy to provide the information he is asking for as the plan documents are all posted on our enrollment website for employees to access at any time.

Thank you,
Amy

**From:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Sent:** Monday, October 1, 2018 12:23 PM
**To:** Hughes, Amy E. <Amy.Hughes@bluescopesteelna.com>
**Subject:** Unum 14865967

Hi Amy-

I know Kim had reached out to you previously, but I also wanted to send a quick note. I just received a call from Attorney Benjamin Blakeman who is representing Mr. Gary Williams re: the denial of his wife's AD&D claim (Kathy Williams, claim #14865967). He is working on submitting an appeal and wanted specific information as to how/when employees are provided access to any and all plan documents/summaries. I did provide him with the policy and SPD that we have, but he is looking for more specifics. He is arguing that his client was not made aware of any exclusions in the AD&D policy. You should also be hearing from him about this soon, so I wanted to make you aware.

He was reasonable to speak with so I don't think this will escalate further, but I just want to give you a heads up.

I explained to him that he would need to submit the appeal to us within 90 days of his client receiving notice of our decision- approx. the end of July- so he should submit the appeal but month's end. He requested an extension and I am waiting to hear back from our Appeals department.

Please let me know if you have any questions.

Thank you,
Kristi

1

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000382

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
**ph: (800) 445-0402 | fax: (800) 447-2498**
kstaples@unum.com

unum

NOTICE - This message and any attached files may contain information that is confidential, legally privileged or proprietary. It is intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error. Any dissemination, copying, use or re-transmission of this message or attachment, or the disclosure of any information therein, is strictly forbidden. BlueScope Steel Limited does not represent or guarantee that this message or attachment is free of errors, virus or interference.

If you have received this message in error please notify the sender immediately and delete the message. Any views expressed in this email are not necessarily the views of BlueScope Steel Limited

UA-CL-AD&D-000383

```
                                    Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Appeal          Name: Appeal Referral
Status: Completed
Original Notify Date: 10/01/2018
Notify Date: 10/01/2018
Due Date:
Subject: Extenstion request
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Bickford, Tabatha
Action:

Request Fields
-------------------------------------------------------------------------
Request: Staples, Kristi-Lee 10/01/2018 15:30:51: Claim denied 7/24/18. Policy has
standard 90day appeal window from receipt of notice. Per attached letter from
attny, he is requesting an extension for which to file the appeal - he is
requesting addtl info from the PH. Please advise.
thx

Created By: Staples, Kristi-Lee
Created Date: 10/01/2018 15:30:51        Create Site: Portland

Response Fields
-------------------------------------------------------------------------
Response: Bickford, Tabatha 10/02/2018 08:34:41: appeal/ext req received.  waiting
to be assigned



Completed By: Bickford, Tabatha
Completed Date: 10/02/2018 08:34:41      Complete Site: Chattanooga


Linked Document ID: (Primary Doc Type - Secondary Doc Type)
-------------------------------------------------------------------------
2018092817460735248E: Appeals - Other
```

_Claimant Name: Kathy  Williams     Claim #:  14865967_

UA-CL-AD&D-000384

Claim Document
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Type: Reassign

Subject: Desk Reassignment

Priority: No

Status: Completed

Notes: new appeal

Created By: Michaud, Lydia
Created Date: 10/02/2018 - 13:53:07
Create Site: Portland

Completed By: Turner, Maureen
Completed Date: 10/02/2018 - 13:53:45
Complete Site: Chattanooga

UA-CL-AD&D-000385

```
                                  Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/02/2018
Notify Date: 10/02/2018
Due Date:
Subject: OTC to atty- left vmm
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 10/02/2018 14:42:23: OTC to atty- left vmm

Created By: Turner, Maureen
Created Date: 10/02/2018 14:42:23      Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Attorney
Reason for Call: Initial Contact
Call Outcome: Left Message
Comments: Turner, Maureen 10/02/2018 14:42:23: 10/2/18, 2:40pm-
Called Mr. Blakeman (213-629-9922) to discuss his 9/28/18 letter. Received vm- left
a message requesting a return call.

Maureen Turner


Completed By: Turner, Maureen
Completed Date: 10/02/2018 14:42:23      Complete Site: Chattanooga
```

*Claimant Name: Kathy Williams      Claim #: 14865967*

--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/02/2018
Notify Date: 10/02/2018
Due Date:
Subject: RTC from atty
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
-----------------------------------------------------------------------
Request: Turner, Maureen 10/02/2018 15:28:36: RTC from atty

Created By: Turner, Maureen
Created Date: 10/02/2018 15:28:36        Create Site: Chattanooga

Response Fields
-----------------------------------------------------------------------
Call Type: Received Call From
Person Contacted: Attorney
Reason for Call: Specific Question
Call Outcome: Contact Successful
Comments: Turner, Maureen 10/02/2018 15:28:36: 10/2/18, 3:12pm-
Received a return call from Mr. Blakeman. He confirmed he is not requesting an
appeal at this time. He is still waiting to receive info that was previously
requested. I asked if he received the policy and certificate that was emailed to
him on 9/13/18. He said he never received that and after discussing the # of pages
attached, sent as pdf, he said it was likely too large and never went through. He
will try to set up a dropbox and send me the link so we can forward the documents.
Confirmed his intent to appeal and date by which we must receive his appeal
request, which is 11/1/18. I stated we cannot extend the time to submit an appeal
request. He must submit an appeal request by 11/1/18. If he needs additional time
to submit additional info to be considered on appeal, he can request and extension
with his appeal request. He said he understood. If we need to send the documents
another way, he will let me know.
He asked to confirm the plan administrator and I noted that is BlueScope as stated
at the back of the policy.
No other questions and we ended our call.

Maureen Turner


Completed By: Turner, Maureen
Completed Date: 10/02/2018 15:28:36        Complete Site: Chattanooga


*Claimant Name: Kathy Williams     Claim #: 14865967*

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018100307410740D724

**Entry Date:** 10/03/2018 07:41:08

**Received Date:** 10/03/2018

**Date Added to Claim:** 10/03/2018

**Primary Doc Type:** Appeals

**Secondary Doc Type:** Other

**Medical Provider:**

**Document Notes:** Appeals-email from atty; forw to admin

**Work Notes:**

## Turner, Maureen

**From:** Turner, Maureen
**Sent:** Wednesday, October 03, 2018 7:38 AM
**To:** Morrison, Nikki
**Subject:** FW: Benjamin is requesting files from you

**From:** Benjamin via Dropbox <no-reply@dropbox.com>
**Sent:** Tuesday, October 02, 2018 3:32 PM
**To:** Turner, Maureen <maturner@unum.com>
**Subject:** Benjamin is requesting files from you

This message originated outside of Unum. Use caution when opening attachments, clicking links or responding to requests for information.



Hi there,

Benjamin Blakeman sent you a request titled "Insurance policy and plan description."

You can upload files to Dropbox so that Benjamin can see them, even if you don't have an account. Learn more



Best,
- The Dropbox Team

© 2018 Dropbox

1

UA-CL-AD&D-000389

```
                                   Document Detail
-----------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018100307413704D724

Entry Date: 10/03/2018 07:41:37

Received Date: 10/03/2018

Date Added to Claim: 10/03/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeals- email from atty

Work Notes:
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000390

**Turner, Maureen**

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Tuesday, October 02, 2018 3:37 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Gary Williams appeal |

This message originated outside of Unum. Use caution when opening attachments, clicking links or responding to requests for information.

Hi Maureen: I sent you a dropbox request for the files. You can forward the link to the person with the files, and they can upload them to the dropbox, I think. Let me know if there are any issues. Thanks.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile: 213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000391

```
                            Document Detail
-----------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018100307515806D724

Entry Date: 10/03/2018 07:51:58

Received Date: 10/03/2018

Date Added to Claim: 10/03/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal email- files to atty

Work Notes:
```

UA-CL-AD&D-000392

**Turner, Maureen**

Great. Thank you so much!

**From:** Morrison, Nikki
**Sent:** Wednesday, October 03, 2018 7:50 AM
**To:** Turner, Maureen <maturner@unum.com>
**Subject:** FW: Your files were uploaded to "Insurance policy and plan description"

Maureen,

It looks like the files went through ok via dropbox. Just let me know if you hear anything different.

Thanks,

**From:** Dropbox <no-reply@dropbox.com>
**Sent:** Wednesday, October 03, 2018 7:47 AM
**To:** Morrison, Nikki <nthibeault@unum.com>
**Subject:** Your files were uploaded to "Insurance policy and plan description"

This message originated outside of Unum. Use caution when opening attachments, clicking links or responding to requests for information.

Hi there,

Here's what you uploaded to "Insurance policy and plan description":

Nikki Morrison - 14865967.pdf
Nikki Morrison - 14865967 (2).pdf

Best,

- The Dropbox Team

1

*Claimant Name: Kathy  Williams     Claim #:  14865967*

P.S. Need a place for all your files? Create a free Dropbox account.

© 2018 Dropbox

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000394

Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Response to Intent to Appeal

Status: Final

Date: 2018-10-03

Notes: Response to Intent to Appeal

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018100308085068291E
Delivery Date: 10/03/2018 10:25:42
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018100308085068291E
Delivery Date: 10/03/2018 08:11:19
Delivery Status: Fax: Sent; Success

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000395

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



October 3, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:    Williams, Kathy
       Claim Number:     14865967
       Policy Number:     382480
       Unum Life Insurance Company of America

Dear Mr. Blakeman:

Thank you for sending us your letter dated September 28, 2018, stating that you disagree with the decision that has been made on the dependent Group Accidental Death Insurance claim submitted by Gary Williams for his wife Kathy Williams. In your letter, you outlined your intent to appeal that decision.

The decision letter dated July 24, 2018, outlined the process required to request an appeal. You will need to submit a written letter of appeal outlining the basis of your disagreement. Please include any additional information you would like considered with your letter of appeal. The timeframe for requesting an appeal is 90 days from the date your client received our decision letter or by November 01, 2018.

Mr. Blakeman, if you have questions about this claim, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

Claimant Name: Kathy  Williams    Claim #:  14865967

```
                              Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Appeal          Name: Review - Appeals Staff Use Only
Status: Completed
Original Notify Date: 10/01/2018
Notify Date: 10/01/2018
Due Date: 11/15/2018
Subject: New Appeal 9/28/18
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Turner, Maureen
Action: IA -    Intent to Appeal

Request Fields
------------------------------------------------------------------------
Area Rendering Decision: Other
Request: Cook, Ellen 10/01/2018 16:28:47: New appeal

Created By: Cook, Ellen
Created Date: 10/01/2018 16:28:47      Create Site: Chattanooga

Response Fields
------------------------------------------------------------------------
Secondary Decision Code: NOT REQUIRED
Appeal Date: 09/28/2018
Type of Mgmt/AQCC Review: No Review
Appeal Type: Appeal Info
Insuring Entity/Company Fund: Unum Life Insurance Company of America
Claim Number(s): 14865967
ERISA: ERISA 2002
Attorney Name: Blakeman, Benjamin
Appeal Specialist: Turner, Maureen
Response: Cook, Ellen 10/01/2018 16:28:47: New Appeal Extension received via fax
from ATTY.  Pre-Erisa.  Referred by DBS Kristi-Lee Staples.  IU - AD&D.
         --------------------------------------------------------
         Bickford, Tabatha 10/02/2018 08:34:02: New ***Extension request***
received via fax from ATTY.  Referred by DBS Kristi-Lee Staples.  IU - AD&D.

Eligibility - 1: NA
Disability - 1: NA
Financial - 1: NA
Policy Limit/Exclusion - 1: NA



Completed By: Turner, Maureen
Completed Date: 10/03/2018 08:09:36      Complete Site: Chattanooga
```

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018100309080870FF98

**Entry Date:** 10/03/2018 09:08:10

**Received Date:** 10/03/2018

**Date Added to Claim:** 10/03/2018

**Primary Doc Type:** Communication

**Secondary Doc Type:** Conversations

**Medical Provider:**

**Document Notes:** email w/ ER

**Work Notes:**

UA-CL-AD&D-000398

**Staples, Kristi-Lee**

| | |
|---|---|
| **From:** | Staples, Kristi-Lee |
| **Sent:** | Wednesday, October 03, 2018 9:05 AM |
| **To:** | Wilson, Christine P. |
| **Cc:** | Ashley, Kimberly E |
| **Subject:** | RE: Bluescope Steel #382480 |

Good morning Christine-

Mr. Blakeman spoke with our Appeals department yesterday and the files were sent to him via Dropbox. Given the size of the files, the original fax might have failed. But he should be all set now.

Thank you,
Kristi

*Kristi Staples*

Senior Life Benefits Specialist – AD&D
Unum Life Insurance Company of America
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com

unum

**From:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Sent:** Tuesday, October 02, 2018 3:13 PM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Cc:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

Hi Kristi,
I just spoke to Mr. Blakeman and he said that he did not receive the fax. Do you have the confirmation? Can you re-fax? The fax number he provide is 213-232-3230.

Thank you,
Christine

1

UA-CL-AD&D-000399

**From:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Sent:** Tuesday, October 2, 2018 1:56 PM
**To:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Cc:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

Hi Christine-

I faxed a copy of the policy and the attached SPD/booklet to Mr. Blakeman on 09/13/18. When I spoke with him, he was wanting to know when and how these documents are provided to the employees. We (Unum) do not have any additional booklets to offer him, so I'm not sure if he is confused and thinking you have separate booklets?

As an FYI this claim is now with our appeals unit.

Thanks,
Kristi

*Kristi Staples*

Senior Life Benefits Specialist – AD&D
Unum Life Insurance Company of America
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

**From:** Ashley, Kimberly E
**Sent:** Tuesday, October 02, 2018 1:45 PM
**To:** Staples, Kristi-Lee <KStaples@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

Please advise.

**From:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Sent:** Tuesday, October 02, 2018 12:42 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

This message originated outside of Unum. Use caution when opening attachments, clicking links or responding to requests for information.

2

UA-CL-AD&D-000400

Hi Kim,
I did receive a call from the attorney yesterday.

He stated that he was not provided the plan document from UNUM and that UNUM stated they were not the administrator of the plan. This completely contradicts the email below so I want to make sure I understand how the document were shared with him. Were they emailed of snail mailed?

Thanks,
Christine

---

**From:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Sent:** Monday, October 1, 2018 12:18 PM
**To:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Subject:** FW: Bluescope Steel #382480

FYI on that ad&d claim that we denied due to the alcohol exclusion.

Kim Ashley
National Client Manager
4001 W. 114th Street
Suite 100
Leawood, KS 66211

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unurn.com

**From:** Staples, Kristi-Lee
**Sent:** Monday, October 01, 2018 12:16 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

Kim,

3

UA-CL-AD&D-000401

I wanted to loop back around on this. I just spoke with the attorney and he is working on submitting an appeal. Just as an FYI in case you hear from the admin – he wanted specific info as to how/when the EEs are provided access to any and all plan documents & summaries. I directed him to contact BlueScope to see what their specific process is and what resources their EEs are provided when it comes to enrollment. He is arguing that his client was not made aware of any exclusions in the AD&D policy. I did provide him with the policy and SPD that we have but he is looking for more specifics.

I advised him that I would contact the PH and let him know ahead of time that he is requesting this additional info. He was reasonable to speak with so I don't think this will escalate further- I just want to give the PH a heads up.

The most recent email we have for Amy at Bluescope is amy.hughes@bluescopesteelna.com. Is she still our corporate contact? And is this still a valid email for her?

Thanks-
Kristi

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

---

NOTICE - This message and any attached files may contain information that is confidential, legally privileged or proprietary. It is intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error. Any dissemination, copying, use or re-transmission of this message or attachment, or the disclosure of any information therein, is strictly forbidden. BlueScope Steel Limited does not represent or guarantee that this message or attachment is free of errors, virus or interference.

If you have received this message in error please notify the sender immediately and delete the message. Any views expressed in this email are not necessarily the views of BlueScope Steel Limited

---

NOTICE - This message and any attached files may contain information that is confidential, legally privileged or proprietary. It is intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error. Any dissemination, copying, use or re-transmission of this message or attachment, or the disclosure of any information therein, is strictly forbidden. BlueScope Steel Limited does not represent or guarantee that this message or attachment is free of errors, virus or interference.

If you have received this message in error please notify the sender immediately and delete the message. Any views expressed in this email are not necessarily the views of BlueScope Steel Limited

Claimant Name: Kathy Williams    Claim #: 14865967

```
                              Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/03/2018
Notify Date: 10/03/2018
Due Date:
Subject: OTC to atty- left vmm
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 10/03/2018 11:11:02: OTC to atty- left vmm

Created By: Turner, Maureen
Created Date: 10/03/2018 11:11:02      Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Attorney
Reason for Call: Specific Question
Call Outcome: Left Message
Comments: Turner, Maureen 10/03/2018 11:11:02: 10/3/18, 11:05am-
Called attorney Benjamin Blakeman (213-629-9922) to confirm he received the info he
requested via dropbox. Received vm- left a message asking for a return call if he
did not receive the info or if he has any other questions.


Maureen Turner



Completed By: Turner, Maureen
Completed Date: 10/03/2018 11:11:02       Complete Site: Chattanooga
```

--------------------------------------------------------------------------------

**Checked/Unchecked Indicator: No**
**Type: Phone Call          Name: Phone Call Details**
**Status: Completed**
**Original Notify Date: 10/03/2018**
**Notify Date: 10/03/2018**
**Due Date:**
**Subject: ITC from atty**
**Upon Completion Notify Linked Claim Owner(s): No**
**Mark As Priority: No**
**Activity Owner: Turner, Maureen**
**Action:**

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 10/03/2018 13:48:08: ITC from atty

Created By: Turner, Maureen
Created Date: 10/03/2018 13:48:08          Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
**Call Type: Received Call From**
**Person Contacted: Attorney**
**Reason for Call: Specific Question**
**Call Outcome: Contact Successful**
**Comments:** Turner, Maureen 10/03/2018 13:48:08: 10/3/18, 1:35pm-
**Received a call from Mr. Blakeman. He received the email and attachments. He noted**
**that the two attachments look identical and he thinks he was provided with the same**
**info twice. I noted that once is the policy and the other is the**
**certificate/booklet, which is provided to the employer to make available to the**
**employees. He said he understood and sees now that they are two separate documents.**
**He will contact the employer for additional info on how this was made available to**
**employees. No other questions and we ended our call.**

Maureen Turner


Completed By: Turner, Maureen
Completed Date: 10/03/2018 13:48:08          Complete Site: Chattanooga

--------------------------------------------------------------------------------

*Claimant Name: Kathy  Williams      Claim #:  14865967*

```
                              Activity
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Direct Services          Name: Claims Status No RTC
Status: Completed
Original Notify Date: 10/10/2018
Notify Date: 10/10/2018
Due Date:
Subject: 229p CCC OTH 04
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Miles, DaVida
Action:

Request Fields
------------------------------------------------------------------------
Request: Miles, DaVida 10/10/2018 14:33:50: Claim Documentation Form
Call Received From    Benjamin Blakeman    Relationship to Insured    Attorney for
the bene
Telephone    213-629-9922
Message    Benjamin called in to see if there is any documents that were reviewed
that he did not receive. Benjamin states that theres a portion of the letter that
describes a state of stooper when a person is intixicated and he wants to know
where that portion of the letter came from, meaning, what resource did that excerpt
of the letter come from. Benjamin would like a call back regarding this.



Created By: Miles, DaVida
Created Date: 10/10/2018 14:33:50      Create Site: Portland

Response Fields
------------------------------------------------------------------------
Response: Miles, DaVida 10/10/2018 14:33:50: Created by Direct Services



Completed By: Miles, DaVida
Completed Date: 10/10/2018 14:33:50      Complete Site: Portland
```

--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/10/2018
Notify Date: 10/10/2018
Due Date:
Subject: OTC/Atty  ITC/Atty
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: White, David R
Action:

Request Fields
----------------------------------------------------------------------
Request: White, David R 10/10/2018 16:11:04: OTC/Atty  ITC/Atty

Created By: White, David R
Created Date: 10/10/2018 16:11:04          Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Call Type: Returned Call From
Person Contacted: Attorney
Reason for Call: Decision Information
Call Outcome: Contact Successful
Comments: White, David R 10/10/2018 16:11:04: OTC/Atty, Blakeman at 213-629-9922 -
he was on another line and will call me back

ITC/Atty - he asked about "medical review" mentioned in 7/24/18 denial letter. He
asked what this was. I explained the file was reviewed by a CC, RN and it appears
this is referring to her 7/20/18 review. He stated he does not have a copy of
this. I noted information was emailed to him on 10/03/18. He again stated he did
not receive this review. I explained I will let Ms. Turner know and she will be
back in the office on 10/15/18.




Completed By: White, David R
Completed Date: 10/10/2018 16:11:30          Complete Site: Chattanooga




_Claimant Name: Kathy  Williams    Claim #:  14865967_

UA-CL-AD&D-000406

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018101510001962DB7C

Entry Date: 10/15/2018 10:00:21

Received Date: 10/15/2018

Date Added to Claim: 10/15/2018

Primary Doc Type: Communication

Secondary Doc Type: Other

Medical Provider:

Document Notes: Email from atty- req for info

Work Notes:

Turner, Maureen

**From:** Benjamin Blakeman <ben@lifeinsurance-law.com>
**Sent:** Wednesday, October 10, 2018 2:37 PM
**To:** Turner, Maureen
**Subject:** Claim No. 14865967 - Kathy Williams

This message originated outside of Unum. Use caution when opening attachments, clicking links or responding to requests for information.

Hi Maureen: In reviewing the denial letter of July 24, 2018, I focused on the language of the letter on the second page under the heading "Information We Reviewed" which stated:

"According to our medical review, a non-tolerant individual with a blood alcohol content of 0.27% through 0.40% will likely experience symptoms of stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor."

This statement apparently was based on a document that did not appear in the list of information reviewed. Would you please provide us with the document from which you obtained the information in the quoted paragraph?

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile: 213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

1

Claimant Name: Kathy Williams     Claim #:  14865967

```
                          Document Detail
------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018101510430126DB7C

Entry Date: 10/15/2018 10:43:02

Received Date: 10/15/2018

Date Added to Claim: 10/15/2018

Primary Doc Type: Medical

Secondary Doc Type: Clinical Analysis

Medical Provider:

Document Notes: 7/20/18 CC review copy for atty

Work Notes:
```

UA-CL-AD&D-000409

------------------------------------------------------------------------------

Claimant: Williams, Kathy
State/Prov: Missouri      Tax ID: [Redacted]
Phone:

NaviLink Claim No.: 14865967      Claim Owner: Maureen Turner
Legacy Claim No.: 0105199632
Legacy Claim System: BAS      Claim Status: Closed
Policy No.: 382480      Policy Name: BLUESCOPE STEEL NORTH AMERICA CORPORATION
Product: Life      Prod Type: AD&D
------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Clinical Resource      Name: Clinical Review
Status: Completed
Original Notify Date: 07/17/2018
Notify Date: 07/17/2018
Due Date: 07/31/2018
Subject: AD&D - Fall/Intoxication
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Webb, Marnie P
Action: Return to DBS

Request Fields
------------------------------------------------------------------------------
Request: Staples, Kristi-Lee 07/17/2018 11:27:45: Consulting Medical Referral

Cause & Date of Death/Dismemberment: intracranial hemorrhage, 04/27/18

EDOC (For TD only): n/a

Port Application Date (For Port Only): n/a

Pertinent medically related policy provisions:

WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?
Your plan does not cover any accidental losses caused by, contributed to by, or
resulting from:

- the use of any prescription or non-prescription drug, poison, fume, or other
chemical substance unless used according to the prescription or direction of your
or your dependent's physician. This exclusion will not apply to you or your
dependent if the chemical substance is ethanol.

- disease of the body or diagnostic, medical or surgical treatment or mental
disorder as set forth in the latest edition of the Diagnostic and Statistical
Manual of Mental Disorders.
- being intoxicated.
- bacterial infection. This exclusion does not apply to you or your dependent when
the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

ACCIDENTAL BODILY INJURY means bodily harm resulting from accident and
independently of all other cause.

Questions:
Based on the available toxicology results, what was the insured's blood alcohol
concentration at the time of the accident?

Based on the information provided, did her being intoxicated cause, contribute to

UA-CL-AD&D-000410

or result in the insured's death?

Created By: Staples, Kristi-Lee
Created Date: 07/17/2018 11:27:45          Create Site: Portland

Response Fields
-----------------------------------------------------------------------
Response: Webb, Marnie P 07/20/2018 11:43:18: Clmt: Kathy Williams
NL#: 14865967

Data Reviewed:
I have reviewed the Jackson County Medical Examiner's Investigative Report,
Children's Mercy Hospital Toxicology Report, and the CDC.

Summary of Clinical Findings:
The insured, a 60-year-old with a history of vertigo and alcohol abuse (with
reported heavy drinking in the past year), was found unresponsive, lying prone at
the foot of a staircase in her home on 4/27/18 around 4:50 p.m. by her husband. Her
husband reported he had spoken to the insured at 12 p.m. that day and had tried to
call at 3 p.m. but received no answer. EMS responded but she reportedly never
regained a heart rhythm. The medical examiner's investigator observed a hole in the
wall of the staircase (no documentation that the age of the hole was confirmed) and
noted it appeared the insured had been holding a glass in her hand as she was
walking down the stairs because she was found with broken glass in her right hand
and around her. The insured's body was warm to the touch, rigor was absent, and
lividity was posterior with blanching. There were lacerations to the right hand and
face and blood was coming from the mouth and nose.

Autopsy was not performed. Toxicology showed ethanol in blood at 0.337% and in
vitreous at 0.430%. It also showed therapeutic levels of sertraline at 130
nanograms per milliliter (ng/mL) and its metabolite desmethylsertraline at 680
ng/mL.

The medical examiner opined cause of death was intracranial hemorrhage and manner
of death was accident.

LBS Questions:
1. Based on the available toxicology results, what was the insured's blood alcohol
concentration at the time of the accident?

-----Given that the fall was unwitnessed, the time of the fall is unclear, and
therefore, the specific BAC at the time of the fall is unknown. The insured's BAC
at the time of death was 0.337%, which is within the possibly fatal range (0.31%
and higher). She had last been known alive at 12 p.m. and was found dead at 4:50
p.m. If the insured survived for a period of time in a comatose state, her alcohol
level may have been higher or lower at the time of the fall, depending on whether
she was in an absorptive or post-absorptive stage of alcohol metabolism and the
time elapsed between the fall and death.

UA-CL-AD&D-000411

2. Based on the information provided, did her being intoxicated cause, contribute to or result in the insured's death?

-----Based on the available medical information, the cause of death of intracranial hemorrhage is an assumed cause of death based on scene findings. Although the circumstances of being found at the foot of a staircase with blood from the nose and mouth could indicate brain injury, blood from the nose and mouth could have been caused by non-fatal nose and mouth trauma without significant underlying brain injury. Neither autopsy nor diagnostic testing was performed to confirm that the insured sustained intracranial hemorrhage; therefore, the cause of death of intracranial hemorrhage cannot be confirmed. In addition, because an autopsy was not performed, neither disease of the body nor acute alcohol intoxication can be excluded as cause of death.

Regardless of cause of death, given that the insured's BAC was extremely elevated at more than four times the level generally accepted as legal intoxication and within the possibly fatal range (0.31% plus), it is reasonable that being intoxicated contributed to, if not caused, the insured's death as supported by the analysis below.

If the insured died immediately or within a short period of time after the fall, the BAC of 0.337% is a reasonable estimation of the BAC at the time of the fall. A BAC of 0.337% would result, at a minimum, in significant impairment in coordination, attention, reaction time, and balance that reasonably would have affected the insured's ability to navigate stairs safely, but alternatively could have resulted in a loss of consciousness that caused a fall or could have resulted in death in and of itself, resulting in terminal collapse with fall.

If the insured sustained a brain injury, as assumed by the medical examiner, that was not severe enough to result in immediate death, and the insured survived for a period in a comatose state, it is reasonable that whether the BAC was increasing or decreasing during the comatose state, given the insured's extreme level of intoxication at time of death, the possibly fatal alcohol level at a minimum, contributed to any respiratory and circulatory depression caused by the assumed brain injury and, therefore, contributed to the insured's death, or alternatively, if the brain trauma was mild, the extreme level of intoxication resulted in respiratory and circulatory impairment that actually caused death.

The insured had a history of heavy alcohol use and, therefore, could have had underlying disease of the body, including heart and/or liver disease. It is reasonable that the insured's extreme level of intoxication would have contributed to any cardiorespiratory dysfunction caused by any underlying disease of the body.

The insured had a history of vertigo, which is disease of the body, and could have contributed to the fall. The medical examiner did not document the status of this condition and there are no past medical records available for review to determine if this condition contributed to death. This condition would not have been expected to result in death in and of itself; therefore, alcohol intoxication would have been expected to contribute to death, as detailed above, in this instance also.

Marnie Webb, RN, Sr. CC
7/20/18

Completed By: Webb, Marnie P
Completed Date: 07/20/2018 11:43:18          Complete Site: Portland

---

*Claimant Name: Kathy Williams     Claim #: 14865967*

```
Linked Document ID: (Primary Doc Type - Secondary Doc Type)
-----------------------------------------------------------------------------
2018052212070057290E: Claim Form - New Claim
2018071709125609D7AE: Medical - Records
```

UA-CL-AD&D-000413

```
                              Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeal - Response to Request for Copy

Status: Final

Date: 2018-10-15

Notes: Appeal - Response to Request for Copy

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018101510493391290E
Delivery Date: 10/15/2018 10:56:33
Delivery Status: Fax: Sent; Success
```

UA-CL-AD&D-000414

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



October 15, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:   Williams, Kathy
       Claim Number:       14865967
       Policy Number:       382480
       Unum Life Insurance Company of America

Dear Mr. Blakeman:

We are writing to acknowledge receipt of your request for a copy of file information concerning
the Group Accidental Death Insurance claim submitted for Mrs. Williams.

We have attached a copy of The Benefits Center's medical review per your request.

Mr. Blakeman, if you have any questions, please contact me at 1-800-858-6843, extension
41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

Enclosures:      Medical: Clinical Analysis

1242-03     UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Direct Services          Name: Claims Status No RTC
Status: Completed
Original Notify Date: 10/18/2018
Notify Date: 10/18/2018
Due Date:
Subject: 0223p CCC ATTY 04
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Thomas, Tiffany
Action:

Request Fields
-----------------------------------------------------------------------
Request: Thomas, Tiffany 10/18/2018 14:43:08: Claim Documentation Form
Call Received From    Benjamin Blakeman    Relationship to Insured    Atty
Telephone    213-629-9922
Message    He cannot find the medical review that was sent to him in the past. IAC
it was faxed and he found it but cannot read it well please email . LBS will email
in a few minutes  as pdf. ben@lifeinsurance-law.com


Created By: Thomas, Tiffany
Created Date: 10/18/2018 14:43:08      Create Site: Portland

Response Fields
-----------------------------------------------------------------------
Response: Thomas, Tiffany 10/18/2018 14:43:08: Created by Direct Services


Completed By: Thomas, Tiffany
Completed Date: 10/18/2018 14:43:08      Complete Site: Portland

_Claimant Name: Kathy  Williams    Claim #:  14865967_

```
                              Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018101814500738D3FF

Entry Date: 10/18/2018 14:50:07

Received Date: 10/18/2018

Date Added to Claim: 10/18/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeals- med review emailed to atty

Work Notes:
```

UA-CL-AD&D-000417

## Turner, Maureen

| | |
|---|---|
| **From:** | Turner, Maureen |
| **Sent:** | Thursday, October 18, 2018 2:49 PM |
| **To:** | 'ben@lifeinsurance-law.com' |
| **Subject:** | Per your request |
| **Attachments:** | Medical review referral.pdf |
| | |
| **Categories:** | Gateway Encryption |

Mr. Blakeman,
This copy should be more clear than the fax you received. Please let me know if you have any questions.
Thank you,
Maureen

Maureen Turner
Lead Appeals Specialist, Appeals
Unum Life Insurance Company of America
Ph#: 800-858-6843, x41307
Fax#: 800-447-2498

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000418

```
                              Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018101815003865D3FF

Entry Date: 10/18/2018 15:00:38

Received Date: 10/18/2018

Date Added to Claim: 10/18/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal- email confirmation from atty

Work Notes:
```

UA-CL-AD&D-000419

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Thursday, October 18, 2018 2:52 PM |
| **To:** | Turner, Maureen |
| **Subject:** | RE: You have a new encrypted message from "Turner, Maureen" <maturner@unum.com> |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile: 213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

**From:** Turner, Maureen <maturner@unum.com>
**Sent:** Thursday, October 18, 2018 11:49 AM
**To:** Benjamin Blakeman <ben@lifeinsurance-law.com>
**Subject:** You have a new encrypted message from "Turner, Maureen" <maturner@unum.com>

Unum Secure Email                                            ☒

"Turner, Maureen" <maturner@unum.com> has sent you an encrypted message via Unum Secure Email.

Subject : Per your request

1

Sent : October 18, 2018 2:49:12 PM, EDT

Expires : November 17, 2018 1:49:20 PM, EST

Please note: Emails will expire and be deleted after 30 days.
Please ensure that you save any important messages and attachments.

<u>Click here to open</u>

To upload your PGP or S/MIME certificate visit <u>https://ml.ssm.echoworx.net/anonymous/anonymCertUpload.htm</u>.

If you do not see a HTML-formatted email above, simply use the link below (or copy and paste it into a browser):

<u>https://us.pbe.encryption.symantec.com/login.html?msgUserId=97a8ae0bf066abe&enterprise=unum&locale=en_US</u>

2

Claimant Name: Kathy Williams      Claim #:  14865967

UA-CL-AD&D-000421

--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/22/2018
Notify Date: 10/22/2018
Due Date:
Subject: ITC from atty
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
--------------------------------------------------------------------
Request: Turner, Maureen 10/22/2018 14:07:52: ITC from atty

Created By: Turner, Maureen
Created Date: 10/22/2018 14:07:52        Create Site: Chattanooga

Response Fields
--------------------------------------------------------------------
Call Type: Received Call From
Person Contacted: Attorney
Reason for Call: Specific Question
Call Outcome: Contact Successful
Comments: Turner, Maureen 10/22/2018 14:07:52: 10/22/18, 1:27pm-
Received a vm message from Mr. Blakeman. He said the issue is that they are seeking
an expert medical opinion, which is going to take a while to get and they need an
extension to include that within the claim and also discuss it in the appeal. The
11/1/18 deadline is looming and they are not ready to file a complete appeal by
then. He doesn't have anything in writing to confirm that they can supplement the
appeal. He requested a return call at 213-629-9922.

1:55pm-
Returned Mr. Blakeman's call. I noted that I cannot provide him with an extension
to submit an appeal request. I must have his written letter of appeal no later than
11/1/18. However, within his appeal letter, he can request additional time, or an
extension, to submit additional information. He confirmed my fax and email and said
he would be sure to submit an appeal by 11/1/18.
No other questions and we ended our call.

Maureen Turner

Completed By: Turner, Maureen
Completed Date: 10/22/2018 14:07:52        Complete Site: Chattanooga

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018102407350172DC19

**Entry Date:** 10/24/2018 07:35:02

**Received Date:** 10/24/2018

**Date Added to Claim:** 10/24/2018

**Primary Doc Type:** Appeals

**Secondary Doc Type:** Other

**Medical Provider:**

**Document Notes:** Appeal- email from atty

**Work Notes:**

UA-CL-AD&D-000423

**Turner, Maureen**

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Monday, October 22, 2018 7:50 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Appeal request for additional time Claim No. 14865967 |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Maureen:

I am slightly unclear about the procedure on this. I have the contact you gave me in our telephone call this morning and another fax number and address for the appeal itself. Are we supposed to request the additional time in a separate letter to you. I was under the impression that it was to be requested with the appeal.

I also noticed we did not ever receive a copy of the original claim form you reviewed or the Plan Document or form 5500 requested in my original letter.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510
Beverly Hills, CA 90211
Telephone: 213-629-9922
Facsimile: 213-232-3230
Email: ben@lifeinsurance-law.com
Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000424

```
                                    Activity
------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/24/2018
Notify Date: 10/24/2018
Due Date:
Subject: OTC to atty- left vmm
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
--------------------------------------------------------------------
Request: Turner, Maureen 10/24/2018 11:44:00: OTC to atty- left vmm

Created By: Turner, Maureen
Created Date: 10/24/2018 11:44:00       Create Site: Chattanooga

Response Fields
--------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Attorney
Reason for Call: Specific Question
Call Outcome: Left Message
Comments: Turner, Maureen 10/24/2018 11:44:00: 10/24/18, 11:40am-
Called Mr. Blakeman at 213-629-9922. Received his vm- left a message requesting a
return call.

Maureen Turner



Completed By: Turner, Maureen
Completed Date: 10/24/2018 11:44:00       Complete Site: Chattanooga
```

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000425

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018102413560756DC19

**Entry Date:** 10/24/2018 13:56:08

**Received Date:** 10/24/2018

**Date Added to Claim:** 10/24/2018

**Primary Doc Type:** Appeals

**Secondary Doc Type:** Other

**Medical Provider:**

**Document Notes:** Appeals- email from atty; file copy req

**Work Notes:**

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000426

**Turner, Maureen**

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Please send me by email if possible a copy of the entire claim file in this matter. Thank you.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile:** *213-232-3230*
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

*Claimant Name: Kathy   Williams     Claim #:   14865967*

UA-CL-AD&D-000427

```
                              Activity
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/24/2018
Notify Date: 10/24/2018
Due Date:
Subject: ITC from atty
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
--------------------------------------------------------------------------
Request: Turner, Maureen 10/24/2018 14:27:16: ITC from atty

Created By: Turner, Maureen
Created Date: 10/24/2018 14:27:16      Create Site: Chattanooga

Response Fields
--------------------------------------------------------------------------
Call Type: Received Call From
Person Contacted: Attorney
Reason for Call: Specific Question
Call Outcome: Contact Successful
Comments: Turner, Maureen 10/24/2018 14:27:16: 10/24/18, 1:31pm-
Received a vm message from Mr. Blakeman stating he is returning my call. His number
is 213-629-9922.

1:41pm-
Returned Mr. Blakeman's call. He said he was unclear if he needed to request
additional time in a separate letter. We discussed that at this time, we do not
have an appeal request. He needs to submit a written request for an appeal to be
received by us no later than 11/1/18.  Within that letter, he can also request
additional time to submit information to be considered on appeal. We can provide
him with an extension of time to provide additional info. Our appeal timeframe will
begin when the info is received, or the approved extension time expires, whichever
comes first. He said he understood.
I also noted that his email stated he did not receive a copy of the original claim
form. I stated that his original request asked for a copy of the policy/SPD, which
was provided. He later requested a copy of the medical review, which was also
provided. He asked if he could get a copy of the complete claim file and I said
yes, however, he never requested this. He will email a request.
No other questions and we ended our call.

Maureen Turner


Completed By: Turner, Maureen
Completed Date: 10/24/2018 14:27:16      Complete Site: Chattanooga
```

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000428

```
                              Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Direct Services          Name: Claims Status No RTC
Status: Completed
Original Notify Date: 10/24/2018
Notify Date: 10/24/2018
Due Date:
Subject: 612p CCC ATTY 04
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Benson, Donita I
Action:

Request Fields
------------------------------------------------------------------------
Request: Benson, Donita I 10/24/2018 18:17:50: Claim Documentation Form
Call Received From    Benjamin    Relationship to Insured   ATTy
Telephone    3236533900
Message    Atty stated he was asking a policy question - adv I cannot answer a
contract question he would need to speak to appeal spec  he said he already left vm
for her and she's gone for the day  wanted me to explain some policy language as it
applied to the claim - adv that would need to come from specialist he is working
with  Said language might be same for group and for ind contract - adv I couldn't
speculate and need to wait for call back from VM he left for appeal specialist



Created By: Benson, Donita I
Created Date: 10/24/2018 18:17:50        Create Site: Portland

Response Fields
------------------------------------------------------------------------
Response: Benson, Donita I 10/24/2018 18:17:50: Created by Direct Services



Completed By: Benson, Donita I
Completed Date: 10/24/2018 18:17:50        Complete Site: Portland
```

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000429

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 10/25/2018
Notify Date: 10/25/2018
Due Date:
Subject: ITC from atty
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
--------------------------------------------------------------------
Request: Turner, Maureen 10/25/2018 14:30:58: ITC from atty

Created By: Turner, Maureen
Created Date: 10/25/2018 14:30:58          Create Site: Chattanooga

Response Fields
--------------------------------------------------------------------
Call Type: Received Call From
Person Contacted: Attorney
Reason for Call: Specific Question
Call Outcome: Contact Successful
Comments: Turner, Maureen 10/25/2018 14:30:58: 10/24/18, 5:50pm-
Received a vm message from Mr. Blakeman requesting a call at 213-629-9922.

**10/25/18, 11:00am (8:00am, PDT)-**
Returned Mr. Blakeman's call. Received vm- left a message requesting a return call.

**10/25/18, 1:28pm-**
Received a vm message from Mr. Blakeman. He is in his office now. Requested that I
call him back.

**2:15pm-**
Returned Mr. Blakeman's call. He said he has 2 questions. The first is can he
submit the appeal by email or fax only or do we also need a hard copy? I said we do
not need a hard copy and consider an appeal request sent via email or fax as
received. He asked if he could email directly to me and I said that is fine.

He said his section question is concerning the exclusions. The 4th bullet point
states the use of any prescription or non-prescriptions drug…….. This exclusion will
not apply to you or your dependent if the chemical substance is ethanol. He wanted
to know what this means since further down a bullet point states being intoxicated.
He argues that this is ambiguous and does not make sense as no provider would
prescribe alcohol. I noted that that specific bullet point is addressing drugs,
medications, prescriptions, etc. That specific bullet point is not referring to
ethanol and also notes prescription or non-prescription. Another exclusion/bullet
point addresses being intoxicated and the policy is very clear that accidental
losses, including death, that are caused by, contributed to by or resulting from
being intoxicated are not covered.
He asserted it is not clear. I stated I could not offer any further explanation and
he could outline his disagreement or argument in his letter and we will address on
appeal.
He said he will submit the appeal.  No other questions and we ended our call.

Maureen Turner

--------------------------------------------------------------------------------
*Claimant Name: Kathy  Williams     Claim #:  14865967*

Completed By: Turner, Maureen
Completed Date: 10/25/2018 14:30:58          Complete Site: Chattanooga

```
                              Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeal - Response to Request for Copy

Status: Final

Date: 2018-10-26

Notes: Appeal - Response to Request for Copy

Signoff By:

Signoff Status:

------------ Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To       Addressee Name: Blakeman, Benjamin
Relationship: Attorney       Document ID: 2018102607291390290E
Delivery Date: 10/26/2018 07:29:17
Delivery Status: Mail: Sent from UNPRINTER
```

UA-CL-AD&D-000432

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



October 26, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:    Williams, Kathy
       Claim Number:    14865967
       Policy Number:    382480
       Unum Life Insurance Company of America

Dear Mr. Blakeman:

We are writing to acknowledge receipt of your request for a copy of your client's Group Accidental Death Insurance claim file.

We have enclosed a copy of your client's claim file. To the extent their file included attorney-client privileged documents (or other documents that we are not required to provide your client), if any, we have not provided them. In the event we have inadvertently provided any such documents to you, we reserve the right to require their return.

You will need a password to open the file. You will receive that password in a separate letter.

Mr. Blakeman, if you have any questions, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy  Williams    Claim #:  14865967

```
                            Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeals Claim File CD Password

Status: Final

Date: 2018-10-26

Notes: Appeals Claim File CD Password

Signoff By:

Signoff Status:

------------- Deliveries ---------------
Email Contacts Overridden:

To/CC/MCC: To       Addressee Name: Blakeman, Benjamin
Relationship: Attorney       Document ID: 2018102607350015253E
Delivery Date: 10/26/2018 07:35:07
Delivery Status: Mail: Sent from ORHL541H
```

UA-CL-AD&D-000434

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



October 26, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:    Williams, Kathy
       Claim Number:        14865967
       Policy Number:        382480
       Unum Life Insurance Company of America

Dear Mr. Blakeman:

We are writing to provide you with the password to access the CD which contains a copy of your client Kathy Williams's Group Accidental Death Insurance claim file. The CD will be mailed to you under a separate cover to protect your client's privacy.

The password to open the claim file is **Redacted** (case sensitive).

If you have any questions regarding the password or CD or if you have not received the CD, please feel free to contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.
1242-03

0287500697 4625201

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000435

```
                                Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Personal          Name: General
Status: Completed
Original Notify Date: 10/24/2018
Notify Date: 10/24/2018
Due Date:
Subject: File Copy Request
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Kempskie, Janice M
Action:

Request Fields
-----------------------------------------------------------------------
Request: Turner, Maureen 10/24/2018 14:51:39: Please send a copy of the complete
claim file to the attorney. Draft letter has been created.
Thank you,
Maureen


Created By: Turner, Maureen
Created Date: 10/24/2018 14:51:39        Create Site: Chattanooga

Response Fields
-----------------------------------------------------------------------
Response: Kempskie, Janice M 10/26/2018 07:37:06: file has been reviewed, attorney
client priv. doc has been redacted, encrypted and burned to CD.  CD with response
letter has been sent to Attorney Blakeman.  Password letter has been sent as well.

password: unum967ams   434 pgs



Completed By: Kempskie, Janice M
Completed Date: 10/26/2018 07:37:06        Complete Site: Worcester
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000436

```
                                    Activity
------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Personal          Name: General
Status: Completed
Original Notify Date: 10/29/2018
Notify Date: 10/29/2018
Due Date:
Subject: f/u on file copy request
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 10/24/2018 14:51:55: sent?

Created By: Turner, Maureen
Created Date: 10/24/2018 14:51:55        Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Turner, Maureen 10/29/2018 09:38:43: sent 10/26/18



Completed By: Turner, Maureen
Completed Date: 10/29/2018 09:38:43        Complete Site: Chattanooga
```

UA-CL-AD&D-000437

```
                              Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018110116464472292E

Entry Date: 11/01/2018 16:46:55

Received Date: 11/01/2018

Date Added to Claim: 11/02/2018

Primary Doc Type: Appeals

Secondary Doc Type: Notice of Appeal

Medical Provider:

Document Notes: 16pg fax from Atty

Work Notes:
```

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000438

# FAX COVER SHEET

| TO | Benefits Center Appeals Unit |
| --- | --- |
| COMPANY | Unum |
| FAX NUMBER | 12075752354 |
| FROM | Benjamin Blakeman |
| DATE | 2018-11-01 20:31:24 GMT |
| RE | Claim 14865967 |

## COVER MESSAGE

Please deliver to Maureen Turner.

Claimant Name: Kathy Williams    Claim #:  14865967

UA-CL-AD&D-000439

## BLAKEMAN LAW

*Life Insurance, investment, and financial*
*elder abuse litigation*
web: www.lifeinsurance-law.com

8383 Wilshire Blvd., Ste. 510
Beverly Hills, California 90211

Phone: 213-629-9922
Fax:    213-232-3230
email: ben@lifeinsurance-law.com



**November 1, 2018**

**Via Fax to 207-575-2354**
Appeals Unit
PO Box 9548
Portland, ME 04104-5058

Re:    **Claim No. 14865967**
       **Policy No. 382480**
       **Insured: Kathy Williams**
       **Claimant: Gary Williams**

**To the Administrator:**

Claimant, Gary Williams, hereby appeals the denial of his claim for death benefits for
the accidental death of Kathy Williams, for the reasons set forth herein. Claimant
requests additional time within which to supplement this appeal with medical
expert testimony in response to the Medical Review Referral on which the denial
was based, which was provided to claimant on or about October 15, 2018.

The appeal was first sent by email along with the exhibits and appendix referenced
herein, pursuant to the representation of Maureen Turner that this would be
acceptable. However, Ms. Turner is evidently out of the office, and I was unable to
obtain an alternative email address. Therefore, this faxed version is being sent
without the exhibits or the appendix referenced herein, due to their length. Please
advise whether those were received via email.

### I. FACTUAL BACKGROUND

On April 27, 2018, Kathy Williams fell down a flight of stairs in her home and died as
the result of an intracranial hemorrhage according to the investigative report of the
Jackson County Medical Examiner. Her husband, Gary Williams, discovered her in a
comatose state at approximately 4:50 p.m. when he returned from work. He had last

*Claimant Name: Kathy Williams       Claim #: 14865967*

Unum Appeal
November 1, 2018
Page 2

spoken with her around noon of the same day. Emergency services (EMS) were called and arrived on the scene. Ms. Williams was found at the bottom of the stairway with broken glass in her right hand. She had multiple lacerations to the right hand and face. Blood was noted from the mouth and nose. She was dressed in night clothes. EMS attempted to intervene but were unable to revive her.

She was placed in a body bag and transported to the Jackson County Medical Examiner's Office for evaluation.

A toxicology test apparently performed on April 28, 2018 at 10:50 CDT listed Ms. Williams' blood alcohol content of .337. Ms. Williams had a history of alcohol usage in the year prior to her death. She also had a history of vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk, sleepwalking, and lyme disease. She was on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision.

Her Death Certificate issued on May 8 listed the manner of death as "Accident" and the underlying cause as "Intracranial Hemorrhage". No contributing causes were listed. No autopsy was performed.

## II. THE CLAIM

Her husband, claimant Gary Williams, filed a claim for accidental death benefits under a group accidental death policy issued through his employment at Blue Scope Steel. The plan administrator and claims payer was Unum Life Insurance Company of America ("Unum"). A copy of the claim was not provided in advance of this appeal. On July 24, 2018, Unum denied the claim on the ground that in their opinion, "her death was caused by, contributed to by or resulted from intoxication; it was not accidental and independent of any other cause." A copy of the denial letter is attached hereto as **Exhibit 1**.[1]

The denial letter stated under the heading "**The Claim Decision/Reasons for the Decision**":

> "Accidental Death benefits are not payable when the death is not accidental and independent of any other cause.

_____

[1] All Exhibits are in a PDF binder and are bookmarked for convenience. A list of the exhibits appears on the first page of the binder. The binder was sent via email to Maureen Turner.

UA-CL-AD&D-000441

Unum Appeal
November 1, 2018
Page 3

> In addition, there is an exclusion in the policy that applies to this claim. The exclusion states that benefits are not payable when the loss was caused by, contributed to by or resulted from intoxication.

> At the time of your wife's fall, she had a blood alcohol content (SAC) of 0.337%. We have determined that based on the known impairments caused by an elevated blood alcohol level, her death was caused by, contributed to by or resulted from her intoxication; it was not accidental and independent of any other cause."

Under the heading "**Information We Reviewed**", the letter continued:

> "According to our medical review, a _non-tolerant individual_ with a blood alcohol content of 0.27% through 0.40% will likely experience symptoms of stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor." (Emphasis added)

There is no evidence that the decedent had in fact suffered any of the symptoms listed in this paragraph. It is important to note that the last paragraph quoted above does not appear anywhere in the documents provided to counsel. It is unknown where this information came from. Significantly, the decedent was not a "non-tolerant individual" and any analysis based on the assumption that she was a "non-tolerant individual" would likely be inaccurate.

The only information actually listed in the denial letter as having been reviewed reviewed consisted of the Group Life and Accident Death Claim form, the Group Life & Accidental Death policy, the Death Certificate, and the Jackson County Medical Examiner's and Toxicology Report.

A copy of the version of the policy purportedly made available online to Blue Scope employees is attached hereto as **Exhibit 2.** A copy of the Death Certificate is attached as **Exhibit 3.** A copy of the Jackson County Medical Examiner Investigative Report is attached as **Exhibit 4.** A copy of the Toxicology report is attached hereto as **Exhibit 5.**

Significantly, Unum had the right to request an autopsy but did not do so (See Exhibit 2 p. 12 and Exhibit 7 p. 2).

Unum Appeal
November 1, 2018
Page 4

On September 6, 2018, claimant's counsel faxed a letter of representation to Unum
and requested a copy of the Plan Document, Summary Plan Description ("SPD") and
amendments, and Form 5500, and requested to know "when and [the] manner in
which the SPD was provided to Blue Scope employees." A copy of the September 6,
2018 letter requesting these documents and information and stating the authority
for the request is attached hereto as **Exhibit 6**.

No copy of the medical review was included with the denial letter, but a copy of a
document entitled "Consulting Medical Referral" written by Marnie Webb, RN, Sr. CC
on July 20, 2018 was provided to claimant's counsel upon his request on October 18,
2018 and is attached hereto as **Exhibit 7**.

In further response, Unum provided a copy of the policy and a copy of what it
referred to as the SPD, a 58-page document without a usable table of contents
(Exhibit 2). No separate document purporting to be the plan document of form 5500
were ever provided. A Unum representative told counsel for the claimant that it was
up to the plan administrator to distribute the SPD to employees, and that he should
contact Blue Scope directly.

On September 28, 2016, having not received the requested documents, counsel
wrote a second letter which requested additional time for the appeal, which he was
informed had to be filed by November 1, 2018. A copy of that letter is attached
hereto as **Exhibit 8**. In response, counsel was told that we could add information to
the appeal, but the appeal date could not be extended. On October 3, 2018, Maureen
Turner of Unum sent a letter confirming that the last date for filing the appeal was
November 1. A copy of that letter is attached hereto as **Exhibit 9**.

In a telephone conversation on October 9, 2018, Amy Hughes, the director of
compensation for Blue Scope, told counsel that the plan description document had
been made available online to the employees, but it was not distributed to them. The
only document affirmatively distributed was a document entitled "Benefit Manual",
which contains only a one-page description of the Accidental Death Benefit plan,
does not describe any exclusions or limitations, and does not contain information
regarding the plan administrator or the appeals process. A copy of the title page of
the manual and the page that describes the accidental death plan is attached hereto
as **Exhibit 10**. Ms. Hughes also stated subsequently that the only SPD ever made
available to the employees was the one provided to counsel by Unum (Exhibit 2)
that according to her was made available to plan participants online.

---

Claimant Name: Kathy Williams       Claim #:  14865967

Unum Appeal
November 1, 2018
Page 5

The table of contents of Exhibit 2 does not refer to page numbers. Anyone seeking to discover the exclusions in that document would have to go through it page by page. (The copy of the exhibit in the binder was bookmarked by counsel for the claimant.) This document does not appear to satisfy the ERISA requirement that a summary description of the plan that can be understood by the average employee.

Counsel emailed a letter to Blue Scope outlining his belief that the documents provided to employees regarding the accidental death benefit plan did not comply with the requirements of ERISA and the statutory and case law support for that position. A copy of that letter is attached hereto as **Exhibit 11**. Counsel did not receive any response to that letter.

The claimant has engaged a medical expert to review this case, but his report will not be available until after the appeal deadline has passed. Although Unum has stated they will permit claimant to add any further evidence to the appeal after the deadline, they have continued to refuse to extend the deadline itself. This may have the effect of not permitting claimant to include arguments in the appeal based on the medical opinion, which in turn could prejudice the result of the appeal.

The fact that counsel did not receive a legible copy of the medical referral document until nearly three months after the claim was denied, and the fact that counsel has still not received copies of the form 5500 requested in early September should have been more than an adequate justification for postponing the appeal date in this matter.

### III. Factual Bases of the Appeal

A. The denial of the claim was based on incomplete and inaccurate information; it is therefore not substantially justified

According to the denial letter, the denial was based in part upon the assumption that the decedent was a "non-tolerant" individual. It was assumed, apparently, that she experienced symptoms of "stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor." However, in the case of someone who consumes alcohol on a regular basis (i.e. a "tolerant" individual) the symptoms experienced are substantially different and considerably less severe. There is no evidence that this particular individual had any of the symptoms listed in the denial letter.

Claimant Name: Kathy   Williams     Claim #:  14865967

UA-CL-AD&D-000444

Unum Appeal
November 1, 2018
Page 6

In addition, it was apparently assumed that Ms. Williams' fall was caused in significant part by her having been intoxicated. However, her medical records indicate that she also had a history of vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk, sleepwalking, and lyme disease; she was also on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision. The complete medical records were apparently never sought or reviewed.

Any one of these causes, none of which were excluded by the policy, or any combination of them, could have caused or significantly contributed to Ms. Williams' fall. The administrator did not obtain or review Ms. Williams medical records and therefore did no analysis of the extent to which the consumption of alcohol, as opposed to other causes, was (or were) the predominant cause of her fall.

Unum had the right to request an autopsy, but apparently did not do so according to the Medical Review. Exhibit 7 p. 2. We are therefore deprived of the information that would have been available if a full autopsy had been performed. It is virtually certain that such a procedure would have resulted in a much more information as to the cause of death. In any event, the Medical Examiner (ME) listed the immediate cause of death was an "Intracranial Hemorrhage", and the manner of death as "Accident" on the investigative report and on the Death Certificate. He did not list alcohol consumption or intoxication as a contributory cause or as a significant condition on either of these documents. The ME would obviously have the greatest opportunity to determine the cause of death and was presumptively qualified to make that determination. However, Unum's medical reviewer and claims administrator dismissed the ME's conclusions with virtual aplomb.

Unum's conclusion that the fall and/or Ms. Williams death was caused by intoxication was based solely on incomplete records, speculation by a medical reviewer, no autopsy, and is directly contrary to the conclusion of the ME. It is not justified and should be reversed.

### B.  The policy language is ambiguous

The policy benefit is payable if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

Claimant Name: Kathy  Williams     Claim #:  14865967

Unum Appeal
November 1, 2018
Page 7

The plan "does not cover any accidental losses caused by, contributed to by, or resulting from:

...

- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. *This exclusion will not apply to you or your dependent if the chemical substance is ethanol.* [italics added.]

...

- being intoxicated." (Exhibit 2 p. 40)

....

"INTOXICATED means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred." (Exhibit 2 p. 46).

The confusion arises from the italicized language indicating that an accidental bodily injury caused by the ingestion of ethanol as opposed to other non-prescribed chemical or medication, *will be covered under the plan.* Since ethanol is the same substance that causes one to be intoxicated, it is not clear how ethanol as a cause can be covered, but an accident caused by or contributed by "being intoxicated" (resulting from ethanol) is not covered.

If being intoxicated at the time of any accident is an exclusion, then the language indicating the exclusion will not apply if the accident is caused by an unprescribed chemical and the chemical is ethanol becomes meaningless.

There is also a body of case law that calls into serious question whether the policy language excluding intoxication is enforceable as written. This issue will be discussed in a separate section of the appeal.

### C. The denial was not based on substantial evidence

The denial letter states:

"At the time of your wife's fall, she had a blood alcohol content (SAC) of 0.337%. We have determined that based on the known impairments caused by an elevated blood alcohol level, her death was caused by,

---

*Claimant Name: Kathy Williams      Claim #: 14865967*

Unum Appeal
November 1, 2018
Page 8

contributed to by or resulted from her intoxication; it was not accidental and independent of any other cause.

**Information We Reviewed**

According to our medical review, a non-tolerant individual with a blood alcohol content of 0.27% through 0.40% will likely experience symptoms of stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor.

The medical examiner's report indicates that your wife had a history of alcohol abuse with reported heavy drinking in the past year. At the time of her passing, her BAC was more than four times the level generally accepted as legal intoxication, and within the possibly fatal range (0.31 % and higher).

We reviewed the following information in our evaluation of the claim:

- Group life and Accidental Death Claim form
- Bluescope Steel North America Corporation's Group life & Accidental Death policy
- Certified Death Certificate
- Jackson County Medical Examiner's & Toxicology Report

There is no indication that Unum reviewed any medical records other than those listed. The administrator nevertheless concluded that Ms. Williams' death was caused by or contributed by her intoxication. Without anyone having witnessed the accident, without an autopsy, and without knowing her complete medical history, that conclusion amounts to no more than a guess.

Unum could have ordered an autopsy but did not do so. There can be little doubt that a complete autopsy by a licensed pathologist would have far more detail and certainty as to the cause of death than the analysis of Unum's medical reviewer, a Registered Nurse, based only upon the incomplete information she reviewed.

Ms. Williams' medical history, as noted previously, included chronic vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk,

_Claimant Name: Kathy Williams    Claim #: 14865967_

Unum Appeal
November 1, 2018
Page 9

sleepwalking, and lyme disease, and that she was on medication including
gabapentin, the side effects of which include sleepiness, dizziness, fatigue,
clumsiness while walking, and visual changes, including double vision.

Any one of these causes, or any combination of them, could have caused or
significantly contributed to the fall. The administrator did not obtain or review Ms.
Williams medical records and therefore did no analysis of the extent to which the
consumption of alcohol, as opposed to these other causes, was the predominant
cause of her fall. The analysis was therefore based on speculation as to what the
cause of death might have been, rather than any informed analysis of what it
actually was.

The Medical Review (Exhibit 7) contains numerous instances of uncertainty that
support our view that its conclusion was speculative, including the following:

> "2. Based on the information provided, did her being intoxicated cause,
> contribute to or result in the insured's death?
>
> -----Based on the available medical information, the cause of death of
> intracranial *hemorrhage is an assumed cause of death* based on scene
> findings. Although the circumstances of being found at the foot of a
> staircase with blood from the nose and mouth *could indicate* brain
> injury, blood from the nose and mouth *could have been caused* by non-
> fatal nose and mouth trauma without significant underlying brain
> injury. *Neither autopsy nor diagnostic testing was performed to confirm
> that the insured sustained intracranial hemorrhage*; therefore, the *cause
> of death of intracranial hemorrhage cannot be confirmed.* In addition,
> *because an autopsy was not performed, neither disease of the body nor
> acute alcohol intoxication can be excluded as cause of death.* (Exhibit 7
> p. 2; italics added)

From this it appears that what the reviewer is downplaying the ME's conclusion by
pointing out its uncertainty <u>due to the fact that no autopsy was performed
(something that Unum could have requested)</u>, and to introduce the possibility that
acute alcohol intoxication *cannot be excluded.* But the conclusion that an excluded
cause cannot be <u>ruled out</u> as a cause of death hardly rises to the level of certainty
required to establish that it was the cause of death or even that it contributed to the
death. It is speculation, not a considered opinion.

_Claimant Name: Kathy Williams     Claim #: 14865967_

UA-CL-AD&D-000448

Unum Appeal
November 1, 2018
Page 10

The review continued:

> "Regardless of cause of death, given that the insured's BAC was extremely elevated at more than four times the level generally accepted as legal intoxication and within the possibly fatal range (0.31% plus), it is reasonable that being intoxicated contributed to, if not caused, the insured's death as supported by the analysis below.

> • *If the insured died immediately or within a short period of time after the fall, the BAC of 0.337% is a reasonable estimation* of the BAC at the time of the fall. A BAC of 0.337% would result, at a minimum, in significant impairment in coordination, attention, reaction time, and balance that reasonably would have affected the insured's ability to navigate stairs safely, but alternatively could have resulted in a loss of consciousness that caused a fall or could have resulted in death in and of itself, resulting in terminal collapse with fall. (Italics added.)

Comment: This point starts out with "If the insured died immediately or within a short time", then her BAC would have affected her ability to navigate stairs or <u>could have</u> resulted in loss of consciousness. But clearly, none of these things is known. It is pure speculation. This point also confused the issue – the cause of death, as opposed to the cause of the fall, is what matters.

> • If the insured sustained a brain injury, as assumed by the medical examiner, that was not severe enough to result in immediate death, and the insured survived for a period in a comatose state, it is reasonable that whether the BAC was increasing or decreasing during the comatose state, given the insured's extreme level of intoxication at time of death, the possibly fatal alcohol level at a minimum, contributed to any respiratory and circulatory depression caused by the assumed brain injury and, therefore, contributed to the insured's death, or alternatively, if the brain trauma was mild, the extreme level of intoxication resulted in respiratory and circulatory impairment that actually caused death.

Comment: The Reviewer starts this point by speculating that *if* there was a brain injury, *and if* it was not severe enough to cause immediate death and the insured survived for a period of time, that alcohol contributed to respiratory and circulatory depression and contributed to death or caused death. <u>But none of the assumed facts are known.</u> The only things that are

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000449

Unum Appeal
November 1, 2018
Page 11

<u>known</u> here are the fact that she fell down the stairs, which is an accident, and the fact that she died. This again is speculation.

> • The insured had a history of heavy alcohol use and, therefore, *could have had underlying disease* of the body, including heart and/or liver disease. It is reasonable that the insured's extreme level of intoxication would have contributed to any cardiorespiratory dysfunction caused by any underlying disease of the body.

Comment: Neither heart or liver disease was established in any way, nor was any cardiorespiratory dysfunction identified by anyone. This is pure speculation.

> • The insured had a history of *vertigo, which is disease of the body, and could have contributed to the fall*. The medical examiner did not document the status of this condition and there are no past medical records available for review to determine if this condition contributed to death. This condition would not have been expected to result in death in and of itself; therefore, alcohol intoxication would have been expected to contribute to death, as detailed above, in this instance also.

Comment: Here, the reviewer is again confusing contribution to the *fall* with contributing to the *death*. Vertigo, however, is <u>not an excluded cause</u>, and in any case, surely did not contribute to Ms. Williams death. If it *did contribute to her fall*, as we suggest it might have, the benefit should have been paid (see discussion of legal issues below).

Claimant will submit a medical opinion by an expert within the next two weeks in support of his position that the cause of death was the accident, and that the Medical Reviewer's analysis was speculation that forms an insufficient basis to deny the claim. The report is not available as of the deadline to submit this appeal, and therefore cannot be included.

### IV. LEGAL ISSUES PRESENTED

**D. The claimant relied on incomplete and erroneous information provided to him by the plan and was thereby prejudiced**

Because the so-called SPD was never distributed to the claimant and because it was written in a manner that made it very difficult to understand, claimant was unaware

Claimant Name: Kathy   Williams     Claim #:   14865967

UA-CL-AD&D-000450

Unum Appeal
November 1, 2018
Page 12

of the limitations and exclusions buried within the language of the document. The only description he ever saw was Exhibit 10, which describes only the benefits of the plan. Since claimant knew of his wife's alcohol abuse, if he had known there was such an exclusion in the policy, he would have sought other insurance to cover the risk that she would be accidentally killed or disabled. Instead, he relied on Unum's plan, not suspecting that if he ever had to make a claim, he would be faced with such an obstacle. He was deprived of that opportunity because he was never provided with a summary plan description as required by the U.S. Code. The so-called SPD provided to counsel by Unum does not satisfy the requirements of ERISA. Under 29 U.S.C.A. §1021(a), employers are required to furnish to each participant covered under the plan a summary plan description written in a manner calculated to be understood by the average plan participant. See Exhibit 11, p. 2. This was simply never done.

### E. The claimant was given insufficient time to prepare and submit the appeal

The claim was denied on July 24, 2018. Claimant was not able to obtain legal representation until early September. Critical documents were not provided until October. Claimant was unable to locate a medical expert until mid-October. Given these delays, claimant's request for an extension of the time to appeal should have been granted but was not. As a result, this appeal is incomplete. In particular, it does not include analysis based on the conclusions of claimant's own medical expert, who has not yet completed his report.

### F. The policy definition was contrary to law. If the correct standard had been applied, the claim would have been granted

The federal courts have developed a significant body of law concerning the interpretation of insurance contracts and the administration of claim under ERISA since its enactment in 1974. It is well-established that the plan administrator and the claims administrator are plan fiduciaries who are obligated to deal fairly and honestly with all plan members. *See, e.g. Kalda v. Sioux Valley Physician Partners, Inc.* (8th Cir. 2007) 481 F.3d 639. While the burden on the claimant is to provide evidence that the accident is covered, the administrator has to establish the existence of any exclusion that applies. *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658 (8th Cir.1992).

As the law has evolved, courts have interpreted the common language appearing in accidental death policies which states "if an employee is injured as a result of an

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000451

Unum Appeal
November 1, 2018
Page 13

accident independent of all other causes" or similar language to mean that it is the injury, rather than the accident itself, that had to be independent of sickness and other causes. Thus, for example, a court found that even if a plan participant diagnosed with epilepsy had a seizure before drowning in a swimming pool, his death was covered by an accidental death plan, since the cause of death was accidental drowning, *regardless of whether the cause of the drowning itself was seizure or any other cause. Ferguson v. United of Omaha Life Ins. Co.* (2014) 3 F. Supp. 3d 474.

A 2008 case decided in the Tenth Circuit held that an insurer could not rely on the physical illness exclusion in a policy to deny an accidental death claim in a case where a seizure precipitated a car accident that resulted in the death of the participant, reasoning that it was a skull fracture that caused his death – even though a seizure had apparently caused the crash itself. *Kellogg v. Metropolitan Life Ins. Co.* (2008) 549 F. 3d 818 [45 Employee Benefits Cas. 2132].

A 2014 case decided by the Eighth Circuit held that the death of a plan participant from a mixed prescription drug intoxication was accidental and covered by an accidental death plan where the cause of death had been undetermined, based on the following ruling that the test of whether an injury is accidental is whether the decedent subjectively expected to suffer that injury. If he/she did not have such a subjective expectation, the injury suffered is deemed to be accidental. *Nichols v. Unicare Life and Health Ins. Co.* (2014) 739 F. 3d 1176. The Eighth Circuit Court of Appeals in *Nichols* cited to *McClelland v. Life Insurance Company of North America* (8th Cir. 2012), 679 F. 3d 755, in which the court overturned an administrative denial of a claim in which the insured decedent died driving a motorcycle at high speeds with an elevated blood alcohol level (.20) based on evidence of the insured's subjective state of mind (submitted in the form of affidavits from family, friends, and witnesses) that *he had no intention to die and did not believe death was likely to occur from his behavior from his motorcycle ride.*

The *Nichols* opinion reasoned that the intoxication exclusion should not apply for the following reasons:

"C. Intoxication Exclusion

UniCare's final argument is that it can avoid paying benefits due to the plan's intoxication exclusion. The exclusion states that no benefit will be paid for a death that results from being intoxicated. "Intoxicated" is defined in the plan as "legally intoxicated as determined by the laws of

UA-CL-AD&D-000452

Unum Appeal
November 1, 2018
Page 14

> the jurisdiction where the accident occurred." Because it is an
> exception to coverage, UniCare has the burden of proving that the
> exclusion applies. *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658
> (8th Cir.1992). We agree with the district court that UniCare did not
> meet this burden. Arkansas law defines intoxication with reference
> only to the public offenses of drunk driving and public intoxication.
> *Jones Truck Lines, Inc. v. Letsch*, 245 Ark. 982, 436 S.W.2d 282, 284
> (1969). Dana's death involved neither. We view the common and
> ordinary meaning of the policy language as a reasonable person in the
> position of the plan participant would have understood the words to
> mean. *Adams v. Cont'l Cas. Co.*, 364 F.3d 952, 954 (8th Cir.2004). A
> reasonable plan participant would have understood that the plan's
> intoxication exclusion *is intended to apply to death caused by
> committing acts, such as driving, while intoxicated;* not to situations
> where the immediate cause of death is ingestion of a lethal mixture of
> drugs that have been prescribed for use by the decedent. *See Sheehan*,
> 372 F.3d at 967 (finding that exclusion for loss resulting from being
> under the influence of a controlled substance was "intended to apply to
> death caused by, for example, driving while intoxicated, not to the
> accidental ingestion of a controlled substance"). The district court
> correctly found that UniCare had not proven that the exclusion should
> be used to deny coverage." *Id.* at 1103-4.

As in *Nichols*, the claimant in this case met his burden to establish his entitlement to
the accidental death benefit. Unum, on the other hand, has brought forth no
evidence to show that Kathy Williams intended to harm herself. She was behaving in
a manner similar to her usual custom over the past year prior to her death. She was
found with a broken glass which she was apparently holding when she fell down the
stairs. There is no reason whatsoever that could support the idea that she intended
to harm herself that day.

An appendix including the *Nichols, Kellogg, and Ferguson* opinions was included
with the brief and exhibit binder emailed to Maureen Turner earlier on this date.

Both the decedent in the *Nichols* case and in this case were "intoxicated" as defined
by their respective policies. But the critical issue courts have identified in these
cases is the subjective state of mind of the decedent/insured, *not* whether they were
legally intoxicated. The manner of death determined by the medical examiner on the
Death Certificate was "accident". Exhibit 3. There is no substantial reason to
conclude that Ms. Williams' death was caused by anything other than her fall.

UA-CL-AD&D-000453

Unum Appeal
November 1, 2018
Page 15

### G. The ambiguity in policy language requires the policy to be interpreted as a reasonable person in the position of the plan participant would have understood it.

The *Kellogg* case, cited above confirms the requirement under ERISA that where there is ambiguous language in the policy:

> "'[i]nsurance contracts, because of the inequality of the bargaining position of the parties, are construed strictly against the insurer.'
>
> ...the proper inquiry is not what [the insurer] intended a term to signify; rather, we consider the common and ordinary meaning as a reasonable person in the position of the [plan] participant would have understood the words to mean." *Kellogg, supra.* at p. 830.

The participant in this case had the right to assume based upon the information he was given and the ambiguous language contained in the exclusion section, discussed previously, that the accidental death plan covered his wife in the event she died as the result of an accident. Falling down stairs is an accident. The only reliable evidence is that Kathy Williams died as a result of falling down the stairs, that her fall was accidental, and that she would not have died except for that accident. The plan should therefore cover the death of Kathy Williams.

### V. CONCLUSION

For the reasons stated herein, the denial of this claim was arbitrary and not supported by substantial evidence. It was therefore unjustified, either factually or legally. It should be reversed, and the benefit paid.

BLAKEMAN LAW

_____

Benjamin Blakeman
Counsel for Claimant, Gary Williams

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018110207134345FA5F

Entry Date: 11/02/2018 07:13:44

Received Date: 11/02/2018

Date Added to Claim: 11/02/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal- email from atty w/attachments

Work Notes:

## Turner, Maureen

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Thursday, November 01, 2018 2:50 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Williams Appeal [Claim No. 14865967 |
| **Attachments:** | Appeal of Denial of Claim.pdf; EXHIBIT BINDER.pdf; APPENDIX OF CASES.pdf |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Turner: The appeal of Gary Williams is attached hereto, along with a bookmarked Exhibit Binder and Appendix of cases. Please confirm your receipt of these documents.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile: 213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000456

Document Detail
--------------------------------------------------------------------------------
**Checked/Unchecked Indicator: No**

**Document ID: 2018110207152086FA5F**

**Entry Date: 11/02/2018 07:15:21**

**Received Date: 11/02/2018**

**Date Added to Claim: 11/02/2018**

**Primary Doc Type: Appeals**

**Secondary Doc Type: Notice of Appeal**

**Medical Provider:**

**Document Notes: Appeal letter**

**Work Notes:**

*Claimant Name: Kathy Williams    Claim #:  14865967*

**BLAKEMAN LAW**

**8383 Wilshire Blvd., Ste. 510**
**Los Angeles, California 90017**



*Life Insurance, investment, and financial*
*elder abuse litigation*
web: www.lifeinsurance-law.com

**Phone: 213-629-9922**
**Fax:   213-232-3230**
**email: ben@lifeinsurance-law.com**

<div align="center">

November 1, 2018

</div>

**Via Email to: maturner@unum.com**
The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058

ATTN: Maureen Turner

> **Re:   Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

**To the Administrator:**

Claimant, Gary Williams, hereby appeals the denial of his claim for death benefits for the accidental death of Kathy Williams, for the reasons set forth herein. Claimant requests additional time within which to supplement this appeal with medical expert testimony in response to the Medical Review Referral on which the denial was based, which was provided to claimant on or about October 15, 2018.

The appeal is filed by email pursuant to the representation of the recipient that this is acceptable.

<div align="center">

## I. FACTUAL BACKGROUND

</div>

On April 27, 2018, Kathy Williams fell down a flight of stairs in her home and died as the result of an intracranial hemorrhage according to the investigative report of the Jackson County Medical Examiner. Her husband, Gary Williams, discovered her in a comatose state at approximately 4:50 p.m. when he returned from work. He had last spoken with her around noon of the same day. Emergency services (EMS) were

UA-CL-AD&D-000458

called and arrived on the scene. Ms. Williams was found at the bottom of the stairway with broken glass in her right hand. She had multiple lacerations to the right hand and face. Blood was noted from the mouth and nose. She was dressed in night clothes. EMS attempted to intervene but were unable to revive her.

She was placed in a body bag and transported to the Jackson County Medical Examiner's Office for evaluation.

A toxicology test apparently performed on April 28, 2018 at 10:50 CDT listed Ms. Williams' blood alcohol content of .337. Ms. Williams had a history of alcohol usage in the year prior to her death. She also had a history of vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk, sleepwalking, and lyme disease. She was on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision.

Her Death Certificate issued on May 8 listed the manner of death as "Accident" and the underlying cause as "Intracranial Hemorrhage". No contributing causes were listed. No autopsy was performed.

## II. THE CLAIM

Her husband, claimant Gary Williams, filed a claim for accidental death benefits under a group accidental death policy issued through his employment at Blue Scope Steel. The plan administrator and claims payer was Unum Life Insurance Company of America ("Unum"). A copy of the claim was not provided in advance of this appeal. On July 24, 2018, Unum denied the claim on the ground that in their opinion, "her death was caused by, contributed to by or resulted from intoxication; it was not accidental and independent of any other cause." A copy of the denial letter is attached hereto as **Exhibit 1**.[1]

The denial letter stated under the heading "**The Claim Decision/Reasons for the Decision**":

> "Accidental Death benefits are not payable when the death is not
> accidental and independent of any other cause.

---

[1] All Exhibits are in a PDF binder and are bookmarked for convenience. A list of the exhibits appears on the first page of the binder.

*Claimant Name: Kathy Williams      Claim #:  14865967*

> In addition, there is an exclusion in the policy that applies to this claim. The exclusion states that benefits are not payable when the loss was caused by, contributed to by or resulted from intoxication.
>
> At the time of your wife's fall, she had a blood alcohol content (SAC) of 0.337%. We have determined that based on the known impairments caused by an elevated blood alcohol level, her death was caused by, contributed to by or resulted from her intoxication; it was not accidental and independent of any other cause."

Under the heading "**Information We Reviewed**", the letter continued:

> "According to our medical review, a *non-tolerant individual* with a blood alcohol content of 0.27% through 0.40% will likely experience symptoms of stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor." (Emphasis added)

There is no evidence that the decedent had in fact suffered any of the symptoms listed in this paragraph. It is important to note that the last paragraph quoted above does not appear anywhere in the documents provided to counsel. It is unknown where this information came from. Significantly, the decedent was not a "non-tolerant individual" and any analysis based on the assumption that she was a "non-tolerant individual" would likely be inaccurate.

The only information actually listed in the denial letter as having been reviewed reviewed consisted of the Group Life and Accident Death Claim form, the Group Life & Accidental Death policy, the Death Certificate, and the Jackson County Medical Examiner's and Toxicology Report.

A copy of the version of the policy purportedly made available online to Blue Scope employees is attached hereto as **Exhibit 2**. A copy of the Death Certificate is attached as **Exhibit 3**. A copy of the Jackson County Medical Examiner Investigative Report is attached as **Exhibit 4**. A copy of the Toxicology report is attached hereto as **Exhibit 5.**

Significantly, Unum had the right to request an autopsy but did not do so (See Exhibit 2 p. 12 and Exhibit 7 p. 2).

UA-CL-AD&D-000460

On September 6, 2018, claimant's counsel faxed a letter of representation to Unum and requested a copy of the Plan Document, Summary Plan Description ("SPD") and amendments, and Form 5500, and requested to know "when and [the] manner in which the SPD was provided to Blue Scope employees." A copy of the September 6, 2018 letter requesting these documents and information and stating the authority for the request is attached hereto as **Exhibit 6**.

No copy of the medical review was included with the denial letter, but a copy of a document entitled "Consulting Medical Referral" written by Marnie Webb, RN, Sr. CC on July 20, 2018 was provided to claimant's counsel upon his request on October 18, 2018 and is attached hereto as **Exhibit 7**.

In further response, Unum provided a copy of the policy and a copy of what it referred to as the SPD, a 58-page document without a usable table of contents (Exhibit 2). No separate document purporting to be the plan document of form 5500 were ever provided. A Unum representative told counsel for the claimant that it was up to the plan administrator to distribute the SPD to employees, and that he should contact Blue Scope directly.

On September 28, 2016, having not received the requested documents, counsel wrote a second letter which requested additional time for the appeal, which he was informed had to be filed by November 1, 2018. A copy of that letter is attached hereto as **Exhibit 8**. In response, counsel was told that we could add information to the appeal, but the appeal date could not be extended. On October 3, 2018, Maureen Turner of Unum sent a letter confirming that the last date for filing the appeal was November 1. A copy of that letter is attached hereto as **Exhibit 9**.

In a telephone conversation on October 9, 2018, Amy Hughes, the director of compensation for Blue Scope, told counsel that the plan description document had been made available online to the employees, but it was not distributed to them. The only document affirmatively distributed was a document entitled "Benefit Manual", which contains only a one-page description of the Accidental Death Benefit plan, does not describe any exclusions or limitations, and does not contain information regarding the plan administrator or the appeals process. A copy of the title page of the manual and the page that describes the accidental death plan is attached hereto as **Exhibit 10**. Ms. Hughes also stated subsequently that the only SPD ever made available to the employees was the one provided to counsel by Unum (Exhibit 2) that according to her was made available to plan participants online.

---

*Claimant Name: Kathy Williams        Claim #:  14865967*

The table of contents of Exhibit 2 does not refer to page numbers. Anyone seeking to discover the exclusions in that document would have to go through it page by page. (The copy of the exhibit in the binder was bookmarked by counsel for the claimant.) This document does not appear to satisfy the ERISA requirement that a summary description of the plan that can be understood by the average employee.

Counsel emailed a letter to Blue Scope outlining his belief that the documents provided to employees regarding the accidental death benefit plan did not comply with the requirements of ERISA and the statutory and case law support for that position. A copy of that letter is attached hereto as **Exhibit 11**. Counsel did not receive any response to that letter.

The claimant has engaged a medical expert to review this case, but his report will not be available until after the appeal deadline has passed. Although Unum has stated they will permit claimant to add any further evidence to the appeal after the deadline, they have continued to refuse to extend the deadline itself. This may have the effect of not permitting claimant to include arguments in the appeal based on the medical opinion, which in turn could prejudice the result of the appeal.

The fact that counsel did not receive a legible copy of the medical referral document until nearly three months after the claim was denied, and the fact that counsel has still not received copies of the form 5500 requested in early September should have been more than an adequate justification for postponing the appeal date in this matter.

### III. Factual Bases of the Appeal

A. The denial of the claim was based on incomplete and inaccurate information; it is therefore not substantially justified

According to the denial letter, the denial was based in part upon the assumption that the decedent was a "non-tolerant" individual. It was assumed, apparently, that she experienced symptoms of "stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor." However, in the case of someone who consumes alcohol on a regular basis (i.e. a "tolerant" individual) the symptoms experienced are substantially different and considerably less severe. There is no evidence that this particular individual had any of the symptoms listed in the denial letter.

*Claimant Name: Kathy Williams     Claim #: 14865967*

In addition, it was apparently assumed that Ms. Williams' fall was caused in significant part by her having been intoxicated. However, her medical records indicate that she also had a history of vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk, sleepwalking, and lyme disease; she was also on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision. The complete medical records were apparently never sought or reviewed.

Any one of these causes, none of which were excluded by the policy, or any combination of them, could have caused or significantly contributed to Ms. Williams' fall. The administrator did not obtain or review Ms. Williams medical records and therefore did no analysis of the extent to which the consumption of alcohol, as opposed to other causes, was (or were) the predominant cause of her fall.

Unum had the right to request an autopsy, but apparently did not do so according to the Medical Review. Exhibit 7 p. 2. We are therefore deprived of the information that would have been available if a full autopsy had been performed. It is virtually certain that such a procedure would have resulted in a much more information as to the cause of death. In any event, the Medical Examiner (ME) listed the immediate cause of death was an "Intracranial Hemorrhage", and the manner of death as "Accident" on the investigative report and on the Death Certificate. He did not list alcohol consumption or intoxication as a contributory cause or as a significant condition on either of these documents. The ME would obviously have the greatest opportunity to determine the cause of death and was presumptively qualified to make that determination. However, Unum's medical reviewer and claims administrator dismissed the ME's conclusions with virtual aplomb.

Unum's conclusion that the fall and/or Ms. Williams death was caused by intoxication was based solely on incomplete records, speculation by a medical reviewer, no autopsy, and is directly contrary to the conclusion of the ME. It is not justified and should be reversed.

## B. The policy language is ambiguous

The policy benefit is payable if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

UA-CL-AD&D-000463

The plan "does not cover any accidental losses caused by, contributed to by, or resulting from:

...

- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. *This exclusion will not apply to you or your dependent if the chemical substance is ethanol.* [italics added.]

...

- being intoxicated." (Exhibit 2 p. 40)

....

"INTOXICATED means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred." (Exhibit 2 p. 46).

The confusion arises from the italicized language indicating that an accidental bodily injury caused by the ingestion of ethanol as opposed to other non-prescribed chemical or medication, *will be covered under the plan*. Since ethanol is the same substance that causes one to be intoxicated, it is not clear how ethanol as a cause can be covered, but an accident caused by or contributed by "being intoxicated" (resulting from ethanol) is not covered.

If being intoxicated at the time of any accident is an exclusion, then the language indicating the exclusion will not apply if the accident is caused by an unprescribed chemical and the chemical is ethanol becomes meaningless.

There is also a body of case law that calls into serious question whether the policy language excluding intoxication is enforceable as written. This issue will be discussed in a separate section of the appeal.

### C. The denial was not based on substantial evidence

The denial letter states:

"At the time of your wife's fall, she had a blood alcohol content (SAC) of 0.337%. We have determined that based on the known impairments caused by an elevated blood alcohol level, her death was caused by,

*Claimant Name: Kathy Williams      Claim #: 14865967*

contributed to by or resulted from her intoxication; it was not accidental and independent of any other cause.

**Information We Reviewed**

According to our medical review, a non-tolerant individual with a blood alcohol content of 0.27% through 0.40% will likely experience symptoms of stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor.

The medical examiner's report indicates that your wife had a history of alcohol abuse with reported heavy drinking in the past year. At the time of her passing, her BAC was more than four times the level generally accepted as legal intoxication, and within the possibly fatal range (0.31 % and higher).

We reviewed the following information in our evaluation of the claim:

• Group life and Accidental Death Claim form
• Bluescope Steel North America Corporation's Group life & Accidental Death policy
• Certified Death Certificate
• Jackson County Medical Examiner's & Toxicology Report

There is no indication that Unum reviewed any medical records other than those listed. The administrator nevertheless concluded that Ms. Williams' death was caused by or contributed by her intoxication. Without anyone having witnessed the accident, without an autopsy, and without knowing her complete medical history, that conclusion amounts to no more than a guess.

Unum could have ordered an autopsy but did not do so. There can be little doubt that a complete autopsy by a licensed pathologist would have far more detail and certainty as to the cause of death than the analysis of Unum's medical reviewer, a Registered Nurse, based only upon the incomplete information she reviewed.

Ms. Williams' medical history, as noted previously, included chronic vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk,

*Claimant Name: Kathy Williams      Claim #: 14865967*

sleepwalking, and lyme disease, and that she was on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision.

Any one of these causes, or any combination of them, could have caused or significantly contributed to the fall. The administrator did not obtain or review Ms. Williams medical records and therefore did no analysis of the extent to which the consumption of alcohol, as opposed to these other causes, was the predominant cause of her fall. The analysis was therefore based on speculation as to what the cause of death might have been, rather than any informed analysis of what it actually was.

The Medical Review (Exhibit 7) contains numerous instances of uncertainty that support our view that its conclusion was speculative, including the following:

> "2. Based on the information provided, did her being intoxicated cause, contribute to or result in the insured's death?

> -----Based on the available medical information, the cause of death of intracranial *hemorrhage is an assumed cause of death* based on scene findings. Although the circumstances of being found at the foot of a staircase with blood from the nose and mouth *could indicate* brain injury, blood from the nose and mouth *could have been caused* by non-fatal nose and mouth trauma without significant underlying brain injury. *Neither autopsy nor diagnostic testing was performed to confirm that the insured sustained intracranial hemorrhage;* therefore, the *cause of death of intracranial hemorrhage cannot be confirmed.* In addition, *because an autopsy was not performed, neither disease of the body nor acute alcohol intoxication can be excluded as cause of death.* (Exhibit 7 p. 2; italics added)

From this it appears that what the reviewer is downplaying the ME's conclusion by pointing out its uncertainty due to the fact that no autopsy was performed (something that Unum could have requested), and to introduce the possibility that acute alcohol intoxication *cannot be excluded.* But the conclusion that an excluded cause cannot be ruled out as a cause of death hardly rises to the level of certainty required to establish that it was the cause of death or even that it contributed to the death. It is speculation, not a considered opinion.

The review continued:

> "Regardless of cause of death, given that the insured's BAC was extremely elevated at more than four times the level generally accepted as legal intoxication and within the possibly fatal range (0.31% plus), it is reasonable that being intoxicated contributed to, if not caused, the insured's death as supported by the analysis below.
>
> • *If the insured died immediately or within a short period of time after the fall, the BAC of 0.337% is a reasonable estimation* of the BAC at the time of the fall. A BAC of 0.337% would result, at a minimum, in significant impairment in coordination, attention, reaction time, and balance that reasonably would have affected the insured's ability to navigate stairs safely, but alternatively could have resulted in a loss of consciousness that caused a fall or could have resulted in death in and of itself, resulting in terminal collapse with fall. (Italics added.)

Comment: This point starts out with "If the insured died immediately or within a short time", then her BAC would have affected her ability to navigate stairs or <u>could have</u> resulted in loss of consciousness. But clearly, none of these things is known. It is pure speculation. This point also confused the issue – the cause of death, as opposed to the cause of the fall, is what matters.

> • If the insured sustained a brain injury, as assumed by the medical examiner, that was not severe enough to result in immediate death, and the insured survived for a period in a comatose state, it is reasonable that whether the BAC was increasing or decreasing during the comatose state, given the insured's extreme level of intoxication at time of death, the possibly fatal alcohol level at a minimum, contributed to any respiratory and circulatory depression caused by the assumed brain injury and, therefore, contributed to the insured's death, or alternatively, if the brain trauma was mild, the extreme level of intoxication resulted in respiratory and circulatory impairment that actually caused death.

Comment: The Reviewer starts this point by speculating that *if* there was a brain injury, *and if* it was not severe enough to cause immediate death and the insured survived for a period of time, that alcohol contributed to respiratory and circulatory depression and contributed to death or caused death. <u>But none of the assumed facts are known</u>. The only things that are

UA-CL-AD&D-000467

known here are the fact that she fell down the stairs, which is an accident, and the fact that she died. This again is speculation.

> • The insured had a history of heavy alcohol use and, therefore, *could have had underlying disease* of the body, including heart and/or liver disease. It is reasonable that the insured's extreme level of intoxication would have contributed to any cardiorespiratory dysfunction caused by any underlying disease of the body.

Comment: Neither heart or liver disease was established in any way, nor was any cardiorespiratory dysfunction identified by anyone. This is pure speculation.

> • The insured had a history of *vertigo, which is disease of the body, and could have contributed to the fall*. The medical examiner did not document the status of this condition and there are no past medical records available for review to determine if this condition contributed to death. This condition would not have been expected to result in death in and of itself; therefore, alcohol intoxication would have been expected to contribute to death, as detailed above, in this instance also.

Comment: Here, the reviewer is again confusing contribution to the *fall* with contributing to the *death*. Vertigo, however, is not an excluded cause, and in any case, surely did not contribute to Ms. Williams death. If it *did contribute to her fall*, as we suggest it might have, the benefit should have been paid (see discussion of legal issues below).

Claimant will submit a medical opinion by an expert within the next two weeks in support of his position that the cause of death was the accident, and that the Medical Reviewer's analysis was speculation that forms an insufficient basis to deny the claim. The report is not available as of the deadline to submit this appeal, and therefore cannot be included.

## IV. LEGAL ISSUES PRESENTED

### D. The claimant relied on incomplete and erroneous information provided to him by the plan and was thereby prejudiced

Because the so-called SPD was never distributed to the claimant and because it was written in a manner that made it very difficult to understand, claimant was unaware

UA-CL-AD&D-000468

of the limitations and exclusions buried within the language of the document. The only description he ever saw was Exhibit 10, which describes only the benefits of the plan. Since claimant knew of his wife's alcohol abuse, if he had known there was such an exclusion in the policy, he would have sought other insurance to cover the risk that she would be accidentally killed or disabled. Instead, he relied on Unum's plan, not suspecting that if he ever had to make a claim, he would be faced with such an obstacle. He was deprived of that opportunity because he was never provided with a summary plan description as required by the U.S. Code. The so-called SPD provided to counsel by Unum does not satisfy the requirements of ERISA. Under 29 U.S.C.A. §1021(a), employers are required to furnish to each participant covered under the plan a summary plan description written in a manner calculated to be understood by the average plan participant. See Exhibit 11, p. 2. This was simply never done.

### E. The claimant was given insufficient time to prepare and submit the appeal

The claim was denied on July 24, 2018. Claimant was not able to obtain legal representation until early September. Critical documents were not provided until October. Claimant was unable to locate a medical expert until mid-October. Given these delays, claimant's request for an extension of the time to appeal should have been granted but was not. As a result, this appeal is incomplete. In particular, it does not include analysis based on the conclusions of claimant's own medical expert, who has not yet completed his report.

### F. The policy definition was contrary to law. If the correct standard had been applied, the claim would have been granted

The federal courts have developed a significant body of law concerning the interpretation of insurance contracts and the administration of claim under ERISA since its enactment in 1974. It is well-established that the plan administrator and the claims administrator are plan fiduciaries who are obligated to deal fairly and honestly with all plan members. *See, e.g. Kalda v. Sioux Valley Physician Partners, Inc.* (8th Cir. 2007) 481 F.3d 639. While the burden on the claimant is to provide evidence that the accident is covered, the administrator has to establish the existence of any exclusion that applies. *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658 (8th Cir.1992).

As the law has evolved, courts have interpreted the common language appearing in accidental death policies which states "if an employee is injured as a result of an

UA-CL-AD&D-000469

accident independent of all other causes" or similar language to mean that it is the injury, rather than the accident itself, that had to be independent of sickness and other causes. Thus, for example, a court found that even if a plan participant diagnosed with epilepsy had a seizure before drowning in a swimming pool, his death was covered by an accidental death plan, since the cause of death was accidental drowning, *regardless of whether the cause of the drowning itself was seizure or any other cause. Ferguson v. United of Omaha Life Ins. Co.* (2014) 3 F. Supp. 3d 474.

A 2008 case decided in the Tenth Circuit held that an insurer could not rely on the physical illness exclusion in a policy to deny an accidental death claim in a case where a seizure precipitated a car accident that resulted in the death of the participant, reasoning that it was a skull fracture that caused his death – even though a seizure had apparently caused the crash itself. *Kellogg v. Metropolitan Life Ins. Co.* (2008) 549 F. 3d 818 [45 Employee Benefits Cas. 2132].

A 2014 case decided by the Eighth Circuit held that the death of a plan participant from a mixed prescription drug intoxication was accidental and covered by an accidental death plan where the cause of death had been undetermined, based on the following ruling that the test of whether an injury is accidental is whether the decedent subjectively expected to suffer that injury. If he/she did not have such a subjective expectation, the injury suffered is deemed to be accidental. *Nichols v. Unicare Life and Health Ins. Co.* (2014) 739 F. 3d 1176. The Eighth Circuit Court of Appeals in *Nichols* cited to *McClelland v. Life Insurance Company of North America* (8th Cir. 2012), 679 F. 3d 755, in which the court overturned an administrative denial of a claim in which the insured decedent died driving a motorcycle at high speeds with an elevated blood alcohol level (.20) based on evidence of the insured's subjective state of mind (submitted in the form of affidavits from family, friends, and witnesses) that *he had no intention to die and did not believe death was likely to occur from his behavior from his motorcycle ride.*

The *Nichols* opinion reasoned that the intoxication exclusion should not apply for the following reasons:

> **"C. Intoxication Exclusion**
>
> UniCare's final argument is that it can avoid paying benefits due to the plan's intoxication exclusion. The exclusion states that no benefit will be paid for a death that results from being intoxicated. "Intoxicated" is defined in the plan as "legally intoxicated as determined by the laws of

UA-CL-AD&D-000470

the jurisdiction where the accident occurred." Because it is an
exception to coverage, UniCare has the burden of proving that the
exclusion applies. *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658
(8th Cir.1992). We agree with the district court that UniCare did not
meet this burden. Arkansas law defines intoxication with reference
only to the public offenses of drunk driving and public intoxication.
*Jones Truck Lines, Inc. v. Letsch,* 245 Ark. 982, 436 S.W.2d 282, 284
(1969). Dana's death involved neither. We view the common and
ordinary meaning of the policy language as a reasonable person in the
position of the plan participant would have understood the words to
mean. *Adams v. Cont'l Cas. Co.,* 364 F.3d 952, 954 (8th Cir.2004). A
reasonable plan participant would have understood that the plan's
intoxication exclusion *is intended to apply to death caused by
committing acts, such as driving, while intoxicated;* not to situations
where the immediate cause of death is ingestion of a lethal mixture of
drugs that have been prescribed for use by the decedent. *See Sheehan,*
372 F.3d at 967 (finding that exclusion for loss resulting from being
under the influence of a controlled substance was "intended to apply to
death caused by, for example, driving while intoxicated, not to the
accidental ingestion of a controlled substance"). The district court
correctly found that UniCare had not proven that the exclusion should
be used to deny coverage." *Id.* at 1183-4.

As in *Nichols,* the claimant in this case met his burden to establish his entitlement to
the accidental death benefit. Unum, on the other hand, has brought forth no
evidence to show that Kathy Williams intended to harm herself. She was behaving in
a manner similar to her usual custom over the past year prior to her death. She was
found with a broken glass which she was apparently holding when she fell down the
stairs. There is no reason whatsoever that could support the idea that she intended
to harm herself that day.

An appendix including the *Nichols, Kellogg, and Ferguson* opinions is included with
the brief and exhibit binder.

Both the decedent in the *Nichols* case and in this case were "intoxicated" as defined
by their respective policies. But the critical issue courts have identified in these
cases is the subjective state of mind of the decedent/insured, *not* whether they were
legally intoxicated. The manner of death determined by the medical examiner on the
Death Certificate was "accident". Exhibit 3. There is no substantial reason to
conclude that Ms. Williams' death was caused by anything other than her fall.

UA-CL-AD&D-000471

### G. The ambiguity in policy language requires the policy to be interpreted as a reasonable person in the position of the plan participant would have understood it.

The *Kellogg* case, cited above confirms the requirement under ERISA that where there is ambiguous language in the policy:

> "'[i]nsurance contracts, because of the inequality of the bargaining position of the parties, are construed strictly against the insurer.'
>
> ...the proper inquiry is not what [the insurer] intended a term to signify; rather, we consider the common and ordinary meaning as a reasonable person in the position of the [plan] participant would have understood the words to mean." *Kellogg, supra.* at p. 830.

The participant in this case had the right to assume based upon the information he was given and the ambiguous language contained in the exclusion section, discussed previously, that the accidental death plan covered his wife in the event she died as the result of an accident. Falling down stairs is an accident. The only reliable evidence is that Kathy Williams died as a result of falling down the stairs, that her fall was accidental, and that she would not have died except for that accident. The plan should therefore cover the death of Kathy Williams.

### V. CONCLUSION

For the reasons stated herein, the denial of this claim was arbitrary and not supported by substantial evidence. It was therefore unjustified, either factually or legally. It should be reversed, and the benefit paid.

BLAKEMAN LAW

Benjamin Blakeman
Counsel for Claimant, Gary Williams

*Claimant Name: Kathy Williams     Claim #:   14865967*

```
                            Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018110207170138FA5F

Entry Date: 11/02/2018 07:17:02

Received Date: 11/02/2018

Date Added to Claim: 11/02/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Exhibits to appeal

Work Notes:
```

UA-CL-AD&D-000473

## EXHIBITS TO APPEAL

1. Denial letter
2. "Summary Plan Description" (policy)
3. Death Certificate
4. Investigative Report
5. Toxicology Report
6. Sept 6 letter requesting documents
7. Medical Review
8. Sept 28 letter requesting additional time
9. Unum letter confirming date for filing appeal
10. Accidental death plan description
11. Letter to Blue Scope

Unum
GROUP LIFE/SPECIAL RISK BENEFITS
PO BOX 100158
COLUMBIA, SC 29202-3158

|ı|ııı|ıdıdııdbı|ılılıdbııllı|ıdlllllıbıllıllıqdıl|ıl|ıl|

AT 001 000831 UNLTAAY1 000000

GARY WILLIAMS
18216 E 51st Street Ct S
Independence MO 64055-6985

# EXHIBIT 1

Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158
Phone: 1-800-445-0402
Fax: 1-800-447-2498
www.unum.com



July 24, 2018

GARY WILLIAMS
18216 E 51ST ST CT S
INDEPENDENCE, MO 64055

RE: Williams, Kathy
   Claim Number:    14865967
   Policy Number:   382480
   Unum Life Insurance Company of America

Dear Mr. Williams:

Please accept our sincere condolences on the loss of your wife, Kathy. During this difficult time, we are committed to providing you with responsive, compassionate service.

We are writing about her Group Accidental Death Insurance claim. This letter is to inform you we are unable to approve the benefits.

This letter includes the following:

- Our claim decision and the reason for the decision

- A list of the information we reviewed during our evaluation of the claim

- The provisions of BlueScope Steel North America Corporation's Accidental Death & Dismemberment policy that are applicable to our decision

- Next steps available to you if you disagree with our decision

The following pages will help you understand how we reached this decision.

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy  Williams    Claim #:  14865967

UA-CL-AD&D-000476

**The Claim Decision / Reasons for the Decision**

Accidental Death benefits are not payable when the death is not accidental and independent of any other cause.

In addition, there is an exclusion in the policy that applies to this claim. The exclusion states that benefits are not payable when the loss was caused by, contributed to by or resulted from intoxication.

At the time of your wife's fall, she had a blood alcohol content (BAC) of 0.337%. We have determined that based on the known impairments caused by an elevated blood alcohol level, her death was caused by, contributed to by or resulted from her intoxication; it was not accidental and independent of any other cause.

**Information We Reviewed**

According to our medical review, a non-tolerant individual with a blood alcohol content of 0.27% through 0.40% will likely experience symptoms of stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor.

The medical examiner's report indicates that your wife had a history of alcohol abuse with reported heavy drinking in the past year. At the time of her passing, her BAC was more than four times the level generally accepted as legal intoxication, and within the possibly fatal range (0.31% and higher).

We reviewed the following information in our evaluation of the claim:

- Group Life and Accidental Death Claim form
- BlueScope Steel North America Corporation's Group Life & Accidental Death policy
- Certified Death Certificate
- Jackson County Medical Examiner's & Toxicology Report

**Policy Provisions Applicable to Our Decision**

The provisions in BlueScope Steel North America Corporation's contract applicable to our decision state:

"**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause."

"*WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?*

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:
...
- being **intoxicated...**"

UA-CL-AD&D-000477

This claim decision was based on the provisions listed above, and we reserve our right to enforce other provisions of the policy.

## Next Steps Available to You

If you disagree with our decision, you have the right to request an appeal.

### What is an Appeal?

An appeal is your written disagreement with our claim decision and a request for a review of that decision.

### How do you request an Appeal?

You will need to submit a written letter of appeal outlining the basis for your disagreement. To ensure handling of your appeal without delay, please include any additional information you would like considered. This information may include written comments, documents, or other information in support of your appeal.

### What information is available to you?

Upon your written request, we will provide you with all documents, records and other information relevant to your claim for benefits.

### How much time do you have to request an Appeal?

You have 90 days from after you receive Unum's notice of denial.

If we do not receive your written appeal within 90 days from after you receive Unum's notice of denial, our claim determination will be final.

### Where do you mail or fax your written request for an Appeal?

The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Fax Number: 1-207-575-2354

Our Appeals Unit will send you a letter acknowledging receipt of your appeal including your Appeals Specialist's contact information.

### How does the Appeal process work?

An Appeals Specialist will review your entire claim, including any new information you submitted and may consult medical and vocational experts or other resources. The Appeal Specialist will make an independent decision on your claim.

UA-CL-AD&D-000478

### How much time does the Appeal review take?

We are committed to making an appeal decision within 60 days after we receive your written appeal. There may be special circumstances in which the review can take longer. We will notify you if more time is needed.

### What if you continue to disagree with the determination after the appeal is decided?

You will have the right to have a court review the appeal determination by bringing a civil action under section 502(a) of the Employee Retirement Income Security Act (ERISA).

### How to Contact Us

If you have questions about this claim or this process, please call our Contact Center at 1-800-445-0402, 8 a.m. to 8 p.m. Eastern time, Monday through Friday. Any of our representatives have access to the claim documentation and will be able to assist you. We will identify the claim by your wife's Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

*Kristi-Lee Staples*

Kristi-Lee Staples
Senior Life Benefits Specialist, AD&D



**BlueScope Steel North America
Corporation**


Your Group Life and Accidental Death
and Dismemberment Plan


Identification No. 382480 012


Underwritten by Unum Life Insurance Company of America

7/24/2017

**EXHIBIT 2**

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000480

UA-CL-AD&D-000481

# CERTIFICATE OF COVERAGE

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured. You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English. However, a few terms and provisions are written as required by insurance law. If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the Summary of Benefits (issued to the Employer), the Summary of Benefits will govern. The Summary of Benefits may be changed in whole or in part. Only an officer or registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to the Summary of Benefits. Any other person, including an agent, may not change the Summary of Benefits or waive any part of it.

The Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

For purposes of effective dates and ending dates under the group Summary of Benefits, all days begin at 12:01 a.m. and end at 12:00 midnight at the Employer's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

CC.FP-2                 CC.FP-1  (1/1/2015) REV                 1

UA-CL-AD&D-000482

# TABLE OF CONTENTS

BENEFITS AT A GLANCE ........................................................................................ B@G-LIFE-1

LIFE INSURANCE PLAN ........................................................................................ B@G-LIFE-1

BENEFITS AT A GLANCE ........................................................................................ B@G-AD&D-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN .................... B@G-AD&D-1

CLAIM INFORMATION ........................................................................................ LIFE-CLM-1

LIFE INSURANCE. ........................................................................................ LIFE-CLM-1

CLAIM INFORMATION ........................................................................................ AD&D-CLM-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE ............................ AD&D-CLM-1

GENERAL PROVISIONS ........................................................................................ EMPLOYEE-1

LIFE INSURANCE. ........................................................................................ LIFE-BEN-1

BENEFIT INFORMATION ........................................................................................ LIFE-BEN-1

OTHER BENEFIT FEATURES. ........................................................................................ LIFE-OTR-1

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE ............................ AD&D-BEN-1

BENEFIT INFORMATION ........................................................................................ AD&D-BEN-1

OTHER BENEFIT FEATURES. ........................................................................................ AD&D-OTR-1

GLOSSARY ........................................................................................ GLOSSARY-1

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000483

# BENEFITS AT A GLANCE

## LIFE INSURANCE PLAN

This life insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death. The amount your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**    January 1, 1999

**PLAN YEAR:**

January 1, 1999 to January 1, 2000 and each following January 1 to January 1

**IDENTIFICATION**
**NUMBER:**    382480-012

**ELIGIBLE GROUP(S):**

All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before January 1, 1999: The greater of the waiting period in effect under the prior Unum plan, if any, or None
For employees entering an eligible group from January 1, 1999 through December 31, 2008: First of the month coincident with or next following date of active employment
For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic Life Insurance Benefit:*

Your Employer pays the cost of your coverage.

Claimant Name: Kathy  Williams    Claim #:  14865967

UA-CL-AD&D-000484

*Additional Life Insurance Benefit:*

You pay the cost of your coverage.

**For Your Dependents:**

*Basic Life Insurance Benefit:*

No Coverage

*Additional Life Insurance Benefit:*

You pay the cost of your dependent coverage.

**LIFE INSURANCE BENEFIT:**

### AMOUNT OF LIFE INSURANCE FOR YOU

#### BASIC LIFE INSURANCE BENEFIT

1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

#### ADDITIONAL LIFE INSURANCE BENEFIT OPTIONS:

*Option 1*

1 x annual earnings

*Option 2*

2 x annual earnings

*Option 3*

3 x annual earnings

*Option 4*

4 x annual earnings

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

AMOUNT OF LIFE INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED

If you have reached age 70 but not age 75, your amount of life insurance will be:
- 67% of the amount of life insurance you have prior to age 70; or
- 67% of the amount of life insurance shown above if you become insured on or after age 70 but before age 75.

If you have reached age 75 or more, your amount of life insurance will be:
- 50% of the amount of life insurance you have prior to your first reduction; or
- 50% of the amount of life insurance shown above if you become insured on or after age 75.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR INSURANCE OVER:

- 2 x annual earnings (ADDITIONAL LIFE BENEFITS ONLY); or
- $750,000 (BASIC LIFE AND ADDITIONAL LIFE BENEFITS COMBINED), whichever is lower.

UA-CL-AD&D-000485

Evidence of Insurability is not required for amounts of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance you had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

OVERALL MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

$1,000,000

**AMOUNT OF LIFE INSURANCE FOR YOUR DEPENDENTS**

**Spouse:**

**BASIC LIFE INSURANCE BENEFIT:**

No Coverage

**ADDITIONAL LIFE INSURANCE BENEFIT:**

Amounts in $5,000 benefit units as applied for by you and approved by Unum.

All amounts are rounded to the next higher multiple of $5,000, if not already an exact multiple thereof.

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR SPOUSE'S INSURANCE OVER:

$50,000

Evidence of Insurability is not required for amounts of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan.

Evidence of Insurability is required for amounts of life insurance in excess of the greater of:

- The amount(s) of life insurance your spouse had in force with your Employer's prior carrier on the termination date of the prior carrier's plan; or
- The amount(s) of life insurance over the amount shown above.

MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOUR SPOUSE:

The lesser of:
- 100% of your amount of Basic Life and Additional Life Insurance combined; or
- $200,000

**Children:**

**BASIC LIFE INSURANCE BENEFIT:**

No Coverage

**ADDITIONAL LIFE INSURANCE BENEFIT:**
Live birth to age 19 or to 25
if a full-time student:            $10,000

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Accelerated Benefit

UA-CL-AD&D-000486

Conversion

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.** The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

Claimant Name: Kathy  Williams       Claim #:  14865967

UA-CL-AD&D-000487

# BENEFITS AT A GLANCE

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN

This accidental death and dismemberment insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death or for you in the event of any other covered loss. The amount you or your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death or any other covered loss according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN
EFFECTIVE DATE:**     January 1, 2009

**PLAN YEAR:**

January 1, 2009 to January 1, 2010 and each following January 1 to January 1

**IDENTIFICATION
NUMBER:**     382480 012

**ELIGIBLE GROUP(S):**

All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America and All BlueScope Construction (BSC) Core Field Employees

**MINIMUM HOURS REQUIREMENT:**

**All employees except Laurinburg**
Employees must be working at least a minimum of 32 hours per week averaged over a 12 month period.

**All Laurinburg employees**
Employees must be working at least a minimum of 20 hours per week averaged over a 12 month period.

**WAITING PERIOD:**

**All Full-Time Salaried and Non-Union Employees of BlueScope Steel North America**
For employees in an eligible group on or before January 1, 2009: The greater of the waiting period in effect under the prior Unum plan, if any, or None

For employees entering an eligible group after January 1, 2009: First of the month coincident with or next following 1 month of continuous active employment

**All BlueScope Construction (BSC) Core Field Employees**
For employees in an eligible group on or before January 1, 2015: First of the month following 1,000 hours worked

For employees entering an eligible group after January 1, 2015: First of the month following 1,000 hours worked

**REHIRE:**

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

**WHO PAYS FOR THE COVERAGE:**

**For You:**

*Basic AD&D insurance Benefit:*

Your Employer pays the cost of your coverage.

B@G-AD&D-1 (1/1/2015) REV                              7

UA-CL-AD&D-000488

*Additional AD&D Insurance Benefit:*

    You pay the cost of your coverage.

**For Your Dependents:**

*Basic AD&D Insurance Benefit:*

    No Coverage

*Additional AD&D Insurance Benefit:*

    You pay the cost of your dependent coverage.

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT:

### AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) INSURANCE FOR YOU (FULL AMOUNT)

#### BASIC AD&D INSURANCE BENEFIT

1 x annual earnings to a maximum of $200,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

#### ADDITIONAL AD&D INSURANCE BENEFIT:

Amounts in $25,000 benefit units as applied for by you and approved by Unum.

OVERALL MAXIMUM BENEFIT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

    $600,000

### AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR YOUR DEPENDENTS (FULL AMOUNT)

**Spouse:**

**BASIC AD&D INSURANCE BENEFIT**

No Coverage

**ADDITIONAL AD&D INSURANCE BENEFIT:**

60% of your additional amount of AD&D insurance to a maximum benefit of $360,000

**Children:**

**BASIC AD&D INSURANCE BENEFIT**

No Coverage

**ADDITIONAL AD&D INSURANCE BENEFIT:**

Live birth to age 19 or to 25
if a full-time student.    20% of your Additional AD&D benefit amount
to a maximum of $120,000

UA-CL-AD&D-000489

**REPATRIATION BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount:

Up to $15,000

The Repatriation Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Repatriation Benefit, your or your dependent's accidental death benefit must be paid first.

**SEATBELT(S) AND AIR BAG BENEFIT FOR YOU AND YOUR DEPENDENTS**

Benefit Amount:

Seatbelt(s):  10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit.

Air Bag:  5% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit.

Maximum Benefit Payment:

Seatbelt(s):  $50,000

Air bag:  $10,000

The Seatbelt(s) and Air Bag Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Seatbelt(s) and Air Bag Benefit, your or your dependents accidental death benefit must be paid first.

**EDUCATION BENEFIT**

Each Qualified Child

Benefit Amount per Academic Year for which a Qualified Child is enrolled:

10% of the Full Amount of the employee's accidental death and dismemberment insurance to a maximum of $10,000.

Maximum Benefit Payments:

4 per lifetime

Maximum Benefit Amount per Each Qualified Child:

$40,000

Maximum Benefit Period:

6 years from the date the first benefit payment has been made.

The Education Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Education Benefit, your accidental death benefit must be paid first.

**EXPOSURE AND DISAPPEARANCE BENEFIT FOR YOU AND YOUR DEPENDENTS**

Maximum Benefit Amount:          The Full Amount

**CHILD CARE BENEFIT**

Each Qualified Child

Annual Benefit Amount:

B@G-AD&D-3  (1/1/2015) REV                              9

UA-CL-AD&D-000490

Birth through age 13

The lesser of:

- 10% of the Full Amount of your or your spouse's accidental death and dismemberment insurance; or

- $10,000

Maximum Benefit Amount:

$50,000

Maximum Benefit Period:

5 consecutive years

If, at the time of your or your spouse's death, you have no Qualified Child eligible for the Child Care Benefit, we will pay 10% of the Full Amount to a maximum benefit of $50,000 to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Child Care Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Child Care Benefit, your or your spouse's accidental death benefit must be paid first.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident

### COMA BENEFIT FOR YOU AND YOUR DEPENDENTS

Monthly Benefit Amount:

1% of the Full Amount of your or your dependents accidental death and dismemberment insurance benefit

Maximum Number of Months:

100 months

### REHABILITATION PHYSICAL THERAPY BENEFIT FOR YOU AND YOUR DEPENDENTS

Benefit Amount:

10% of the Full Amount of your or your dependent's accidental death and dismemberment insurance benefit

Maximum Benefit Amount:

$10,000

The Rehabilitation Physical Therapy Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order to receive the Rehabilitation Physical Therapy Benefit, your or your dependent's accidental death and dismemberment must be paid first.

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

Portability

NOTE: Portability under this plan is available to an insured spouse in the event of divorce from an insured employee, subject to all terms and conditions otherwise applicable to ported spouse coverage.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000491

The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section. The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

B@G-AD&D-5 (1/1/2015) REV                    11

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000492

# CLAIM INFORMATION

## LIFE INSURANCE

### WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

### WHEN CAN UNUM REQUEST AN AUTOPSY?

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law

### HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000493

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's life claim is at least $10,000, Unum will make available to the beneficiary a **retained asset account** (the Unum Security Account).

Payment for the life claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the life claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the life claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

If you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

LIFE-CLM-2  (1/1/2015) REV                                    13

UA-CL-AD&D-000494

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? *(Assignability Rights)*

The rights provided to you by the plan for life insurance are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000495

# CLAIM INFORMATION

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

### *WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?*

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

### *HOW DO YOU FILE A CLAIM FOR A COVERED LOSS?*

You or your authorized representative and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

### *WHAT INFORMATION IS NEEDED AS PROOF OF CLAIM?*

If claim is based on death or other covered loss, proof of claim for death or covered loss, provided at your or your authorized representative's expense, must show:

- the cause of death or covered loss;
- the extent of the covered loss;
- the date of covered loss; and
- the name and address of any **hospital or institution** where treatment was received, including all attending **physicians.**

Also, in case of death, a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim. Unum will deny your claim if the appropriate information is not submitted.

If a claim is based on the Education Benefit, proof of claim, provided at your authorized representative's expense, must show:

- the date of enrollment of your qualified child in an accredited post-secondary institution of higher learning;
- the name of the institution;
- a list of courses for the current academic term; and
- the number of credit hours for the current academic term.

### *WHEN CAN UNUM REQUEST AN AUTOPSY?*

UA-CL-AD&D-000496

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

### HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? *(Beneficiary Designation)*

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your accidental death and dismemberment insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

In addition, if you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

### HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's accidental death or dismemberment claim is at least $10,000 Unum will make available to you or your beneficiary a **retained asset account** (the Unum Security Account).

Payment for the accidental death or dismemberment claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

AD&D-CLM-2 (1/1/2015) REV                    16

UA-CL-AD&D-000497

If the accidental death or dismemberment claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the accidental death claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

The Child Care Benefit will be paid to you, your spouse, your beneficiary or your or your spouse's authorized representative.

The Education Benefit will be paid to your qualified child or the qualified child's legal representative.

If you do not survive your spouse, and dependent accidental death and dismemberment coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

### WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFITS? (Assignability Rights)

The rights provided to you by the plan(s) for accidental death insurance benefits are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

UA-CL-AD&D-000498

# GENERAL PROVISIONS

## *WHAT IS THE CERTIFICATE OF COVERAGE?*

This certificate of coverage is a written statement prepared by Unum and may include attachments. It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

## *WHEN ARE YOU ELIGIBLE FOR COVERAGE?*

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period**.

## *WHEN DOES YOUR COVERAGE BEGIN?*

This plan provides additional life benefit options and additional accidental death and dismemberment benefit units in addition to the basic life and accidental death and dismemberment benefit. When you first become eligible for coverage, you may apply for any additional life and accidental death and dismemberment benefits.

**Evidence of insurability** is required for any amount of life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

Your Employer pays 100% of the cost of your coverage under the basic benefit. You will automatically be covered under the basic benefit at 12:01 a.m. on the later of:

- the date you are eligible for coverage; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

You pay 100% of the cost for the additional benefits. You will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

If you do not apply for additional benefits on or before the 31st day after your eligibility date, you can apply at the next **annual enrollment period** or at anytime during the plan year. Evidence of insurability is required for any amount of insurance.

Coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000499

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

Coverage applied for at any time other than during an annual enrollment period will be effective on the date Unum approved your evidence of insurability form.

### WHEN CAN YOU CHANGE YOUR COVERAGE?

You can change your coverage by applying for additional benefits at anytime during the plan year. You can increase your coverage or decrease your coverage by any level. Evidence of insurability is required for any amount of insurance applied for during the plan year. A change in coverage that is made during a plan year will begin at 12:01 a.m. on the date Unum approves your evidence of insurability form.

You can also change your coverage by applying for a different additional benefit during an annual enrollment period.

You can increase or decrease your coverage any number of levels.

Evidence of insurability is required if you increase your coverage by any level. If you are not approved for the increase in your coverage, you will automatically remain at the same amount you had prior to applying for the increase.

Unum and your Employer determine when the annual enrollment period begins and ends. A change in coverage that is made during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form.

An evidence of insurability form can be obtained from your Employer.

### IS EVIDENCE OF INSURABILITY REQUIRED IF YOU RECEIVE AN INCREASE IN YOUR ANNUAL EARNINGS?

If you remain covered for the same basic benefit and the same supplemental benefit option, evidence of insurability is not required for the first $100,000 of increased life amounts due to increased annual earnings accumulated within a plan year.

Evidence of insurability is required for any increased amount of life insurance that exceeds $100,000. However, if you previously were declined coverage, evidence of insurability is required for any increases until Unum approves your evidence of insurability form.

If you are not in active employment due to an injury or sickness, this change in coverage due to a change in your annual earnings will begin on the date you return to active employment.

### WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?

If you are absent from work due to **injury**, **sickness**, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000500

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to your retirement date.

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If you are on a temporary **layoff**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

### WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?

Once your coverage begins, any increased or additional coverage due to a change in your annual earnings or due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your evidence of insurability form for life insurance, if evidence of insurability is required. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional coverage due to a change in your annual earnings or due to a plan change will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### WHEN DOES YOUR COVERAGE END?

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

### WHEN ARE YOU ELIGIBLE TO ELECT DEPENDENT COVERAGE?

If you elect coverage for yourself or are insured under the plan, you are eligible to elect dependent coverage for your spouse only, your dependent children only or both.

<div align="center">EMPLOYEE-3 (1/1/2015) REV    20</div>

UA-CL-AD&D-000501

### WHEN ARE YOUR DEPENDENTS ELIGIBLE FOR COVERAGE?

The date your dependents are eligible for coverage is the later of:

- the date your insurance begins; or
- the date you first acquire a dependent.

### WHAT DEPENDENTS ARE ELIGIBLE FOR COVERAGE?

The following dependents are eligible for coverage under the plan:

- Your lawful spouse, including a legally separated spouse. You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee.

- Your unmarried children from live birth but less than age 19. Stillborn children are not eligible for coverage.

- Your unmarried dependent children age 19 or over but under age 25 also are eligible if they are full-time students at an **accredited school**.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

No dependent child may be covered by more than one employee in the plan.

No dependent child can be covered as both an employee and a dependent.

### WHEN DOES YOUR DEPENDENT COVERAGE BEGIN?

This plan provides coverage for your dependents. When your dependents first become eligible for coverage, you may apply for:

- any number of life benefit units for your dependent spouse; however, your dependent spouse cannot be covered for more than the maximum benefit available under the plan; and
- dependent child(ren) life insurance coverage; and
- dependent accidental death and dismemberment benefits.

Evidence of insurability is required if you are applying for any amount of dependent spouse life insurance over the amount shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

You pay 100% of the cost for your dependent coverage. Your dependents will be covered at 12:01 a.m. on the latest of:

- the date your dependents are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for dependent insurance, if you apply within 31 days after your dependent's eligibility date; or
- the date Unum approves your dependent's evidence of insurability form, if evidence of insurability is required.

EMPLOYEE-4 (1/1/2015) REV                    21

UA-CL-AD&D-000502

If you do not apply for dependent spouse and/or child coverage on or before the 31st day after your dependent's eligibility date, you can apply at the next annual enrollment period or at anytime during the plan year. Evidence of insurability is required for any amount of dependent life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.

Dependent coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your dependent evidence of insurability form for life insurance.

Dependent coverage applied for at anytime other than during an annual enrollment period year will be at 12:01 a.m. on the later of:

- the date you apply for dependent accidental death and dismemberment insurance; or
- the date Unum approves your dependent's evidence of insurability form for life insurance.

### WHEN CAN YOU CHANGE YOUR DEPENDENT COVERAGE?

You can change your dependent spouse coverage by applying for additional benefit units at anytime during the plan year. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life Insurance by any amount. Any increase in coverage will being at 12:01 am on the date Unum approves your dependent spouse's evidence of insurability form. A decrease or cancelation in coverage will begin at 12:01 am on the later of:

- the date you provide written notice to your Employer; or
- the last day of the period for which any required contributions are made.

You can also change your dependent spouse life coverage by applying for additional benefit units during an annual enrollment period. You can increase or decrease your dependent spouse life coverage any number of benefit units. In addition, you can cancel your dependent child life benefit and your dependent spouse and child accidental death and dismemberment benefits.

Evidence of insurability is required if you increase your dependent spouse life insurance by any amount.

Unum and your Employer determine when the annual enrollment period begins and ends.

Any increase in dependent spouse life coverage will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000503

- the date Unum approves your dependent's evidence of insurability form.

Any decrease in dependent spouse life coverage or any cancellation of dependent coverage will begin on the first day of the next plan year.

An evidence of insurability form for your dependents can be obtained from your Employer.

### WHAT IF YOUR DEPENDENT IS TOTALLY DISABLED ON THE DATE YOUR DEPENDENT'S COVERAGE WOULD NORMALLY BEGIN?

If your eligible dependent is **totally disabled**, your dependent's coverage will begin on the date your eligible dependent no longer is totally disabled. This provision does not apply to a newborn child while dependent insurance is in effect.

### WHEN WILL CHANGES TO YOUR DEPENDENT'S COVERAGE TAKE EFFECT?

Once your dependent's coverage begins, any increased or additional dependent coverage due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your dependent's evidence of insurability form for life insurance, if evidence of insurability is required, provided your dependent is not totally disabled. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional dependent coverage due to a plan change will begin on the date you return to active employment.

If your dependent is totally disabled, any increased or additional dependent coverage will begin on the date your dependent is no longer totally disabled.

Any decreased coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease.

### WHEN DOES YOUR DEPENDENT'S COVERAGE END?

Your dependent's coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the date of your death;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Coverage for any one dependent will end on the earliest of:

- the date your coverage under a plan ends;
- the date your dependent ceases to be an eligible dependent;
- for a spouse, the date of divorce or annulment.

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000504

Unum will provide coverage for a payable claim which occurs while your dependents are covered under the Summary of Benefits or plan.

### WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You or your authorized representative can start legal action regarding a claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

### HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?

Unum considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

As a basis for doing this, we will use only statements made in a signed application by the Employer, or an application or evidence of insurability form signed by you, a copy of which has been given:

- to you; or
- your beneficiary, or a person acting on your behalf, if you:
  - die; or
  - are not competent.

Unum can take action only in the first 2 years coverage is in force.

If an individual's age is misstated:

- the correct age will decide if and in what amounts insurance is valid under the Summary of Benefits; and
- a fair adjustment of the premium will be made.

### HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

EMPLOYEE-7 (1/1/2015) REV                    24

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000505

### DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For the purposes of the Summary of Benefits, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000506

# LIFE INSURANCE

## BENEFIT INFORMATION

### WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT?

Your beneficiary(ies) will receive payment when Unum approves your death claim.

### WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF DEATH?

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

### HOW MUCH WILL UNUM PAY YOU IF UNUM APPROVES YOUR DEPENDENT'S DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IF UNUM APPROVES YOUR DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHAT ARE YOUR ANNUAL EARNINGS?

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000507

### WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (Conversion Privilege)

When coverage ends under the plan, you and your dependents can convert your coverages to individual life policies, without evidence of insurability. The maximum amounts that you can convert are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

If you convert to an individual life policy, then return to work, and, again, become insured under the plan, you are not eligible to convert to an individual life policy again. However, you do not need to surrender that individual life policy when you return to work.

Converted insurance may be of any type of the level premium whole life plans then in use by Unum. The person may elect one year of Preliminary Term insurance under the level premium whole life policy. The individual policy will not contain disability or other extra benefits.

### WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (Conversion Privilege)

You and your dependents may convert a limited amount of life insurance if you have been insured under your Employer's group plan with Unum for at least five (5) years and the Summary of Benefits or the plan:

- is cancelled with Unum; or
- changes so that you no longer are eligible.

The individual life policy maximum for each of you will be the lesser of:

- $10,000; or
- your or your dependent's coverage amounts under the plan less any amounts that become available under any other group life plan offered by your Employer within 31 days after the date the Summary of Benefits or the plan is cancelled.

### PREMIUMS

Premiums for the converted insurance will be based on:

- the person's then attained age on the effective date of the individual life policy;
- the type and amount of insurance to be converted;
- Unum's customary rates in use at that time; and
- the class of risk to which the person belongs.

If the premium payment has been made, the individual life policy will be effective at the end of the 31 day conversion application period.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000508

### DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD

If you or your dependents die within the 31 day conversion application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

### EMPLOYER NOTICE

Your Employer must notify each person of their conversion privileges 15 days before the date that person's life insurance terminates.

If your Employer does not notify that person 15 days before that person's life insurance terminates, the time allowed for that person to exercise their life conversion privilege will be extended 15 days from the date your Employer does notify that person.

In no event will the time allowed for a person to exercise their life conversion privilege be extended beyond 60 days from the date that person's life insurance terminates.

Any extended application period provided under this provision does not continue any insurance beyond the period provided in this Summary of Benefits.

### APPLYING FOR CONVERSION

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

### WILL UNUM ACCELERATE YOUR OR YOUR DEPENDENT'S DEATH BENEFIT FOR THE PLAN IF YOU OR YOUR DEPENDENT BECOMES TERMINALLY ILL? (Accelerated Benefit)

If you or your dependent becomes terminally ill while you or your dependent is insured by the plan, Unum will pay you a portion of your or your dependent's life insurance benefit one time. The payment will be based on 75% of your or your dependent's life insurance amount. However, the one-time benefit paid will not be greater than $500,000.

Your or your dependent's right to exercise this option and to receive payment is subject to the following:

- you or your dependent requests this election, in writing, on a form acceptable to Unum;
- you or your dependent must be terminally ill at the time of payment of the Accelerated Benefit;

LIFE-BEN-3  (1/1/2015) REV                                28

UA-CL-AD&D-000509

- your or your dependent's physician must certify, in writing, that you or your
  dependent is terminally ill and your or your dependent's life expectancy has been
  reduced to less than 12 months; and
- the physician's certification must be deemed satisfactory to Unum.

The Accelerated Benefit is available on a voluntary basis. Therefore, you or your
dependent is not eligible for benefits if:

- you or your dependent is required by law to use this benefit to meet the claims of
  creditors, whether in bankruptcy or otherwise; or
- you or your dependent is required by a government agency to use this benefit in
  order to apply for, get, or otherwise keep a government benefit or entitlement.

Premium payments must continue to be paid on the full amount of life insurance.

Also, premium payments must continue to be paid on the full amount of your
dependent's life insurance.

If you have assigned your rights under the plan to an assignee or made an
irrevocable beneficiary designation, Unum must receive consent, in writing, that the
assignee or irrevocable beneficiary has agreed to the Accelerated Benefit payment
on your behalf in a form acceptable to Unum before benefits are payable.

An election to receive an Accelerated Benefit will have the following effect on other
benefits:

- the death benefit payable will be reduced by any amount of Accelerated Benefit
  that has been paid; and
- any amount of life insurance that may be available under the conversion privilege
  will be reduced by the amount of the Accelerated Benefit paid. The remaining life
  insurance amount will be paid according to the terms of the Summary of Benefits
  subject to any reduction and termination provisions.

Benefits paid may be taxable. Unum is not responsible for any tax or other effects of
any benefit paid. As with all tax matters, you or your dependent should consult your
personal tax advisor to assess the impact of this benefit.

### WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any losses where death is caused by, contributed to by, or
results from:

- suicide occurring within 12 months after your or your dependent's initial effective
  date of insurance; and
- suicide occurring within 12 months after the date any increases or additional
  insurance become effective for you or your dependent.

The suicide exclusion will apply to any amounts of insurance for which you pay all or
part of the premium.

The suicide exclusion also will apply to any amount that is subject to evidence of
insurability requirements and Unum approves the evidence of insurability form and
the amount you or your dependent applied for at that time.

Claimant Name: Kathy Williams    Claim #:  14865967

UA-CL-AD&D-000510

If you or your dependent dies as a result of a suicide Unum will refund all premium paid for coverage on you or your dependent that became effective within the 12 month period immediately preceding the date of your or your dependent's suicide.

LIFE-BEN-5  (1/1/2015) REV                    30

UA-CL-AD&D-000511

# LIFE INSURANCE

## OTHER BENEFIT FEATURES

### *WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)*

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### *PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE*

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of life insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of life insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life plans combined,

whichever is less.

The amount of portable coverage for a child will not be more than:

- the highest amount of life insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of life insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000512

### APPLYING FOR PORTABLE COVERAGE

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000513

If we determine that because of an injury or sickness, which has a material effect on life expectancy, you or your dependents were not eligible for portability at the time you or your dependents elected portable coverage, the benefit will be adjusted to the amount of whole life coverage the premium would have purchased under the Conversion Privilege.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of life insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of life insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. All increases are subject to evidence of insurability. Portable coverage will reduce at the ages and amounts shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan. Evidence of insurability is required.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000514

### PREMIUM RATE CHANGES FOR PORTABLE COVERAGE

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

### APPLYING FOR CONVERSION, IF PORTABLE COVERAGE ENDS OR IS NOT AVAILABLE

If you or your dependent is not eligible to apply for portable coverage or portable coverage ends, then you or your dependent may qualify for conversion coverage. Refer to Conversion Privilege under this plan.

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000515

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## BENEFIT INFORMATION

***WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT IN THE EVENT OF YOUR DEATH IF YOUR DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

Your beneficiary(ies) will receive payment when Unum approves your death claim providing you meet certain conditions.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF YOUR DEPENDENT'S DEATH IF YOUR DEPENDENT'S DEATH IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the death claim for your dependent providing certain conditions are met.

***WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF ACCIDENTAL DEATH?***

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

***WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF CERTAIN OTHER COVERED LOSSES IF THE LOSS IS THE DIRECT RESULT OF AN ACCIDENT?***

You will receive payment when Unum approves the claim.

***HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IN THE EVENT OF YOUR ACCIDENTAL DEATH OR YOU FOR YOUR DEPENDENT'S ACCIDENTAL DEATH OR FOR CERTAIN OTHER COVERED LOSSES?***

If Unum approves the claim, Unum will determine the payment according to the Covered Losses and Benefits List below. The benefit Unum will pay is listed opposite the corresponding covered loss.

The benefit will be paid only if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

| Covered Losses | Benefit Amounts |
|---|---|
| Life | The Full Amount |
| Both Hands or Both Feet or Sight of Both Eyes | The Full Amount |
| One Hand and One Foot | The Full Amount |
| One Hand and Sight of One Eye | The Full Amount |
| One Foot and | |

AD&D-BEN-1 (1/1/2015) REV                    35

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000516

| | |
|---|---|
| Sight of One Eye | The Full Amount |
| Speech and Hearing | The Full Amount |
| Quadriplegia | The Full Amount |
| Triplegia | Three Quarters The Full Amount |
| Paraplegia | Three Quarters The Full Amount |
| One Hand or One Foot | One Half The Full Amount |
| Sight of One Eye | One Half The Full Amount |
| Speech or Hearing | One Half The Full Amount |
| Hemiplegia | One Half The Full Amount |
| Thumb and Index Finger of Same Hand | One Quarter The Full Amount |
| Uniplegia | One Quarter The Full Amount |

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE "**BENEFITS AT A GLANCE**" page.

### *WHAT ARE YOUR ANNUAL EARNINGS?*

"Annual Earnings" means your gross annual income from your Employer in effect just prior to your date of the loss. It includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account or Health Savings Accounts. It includes income actually received from commissions but does not include shift differential, renewal commissions, bonuses, overtime pay, or any other extra compensation, or income received from sources other than your Employer.

Commissions will be adjusted annually on October 1st and will be averaged for the lesser of:

a. the 24 full calendar month period of your employment with your Employer just prior to the year in which the loss begins; or

b. the period of actual employment with your Employer just prior to the year in which the loss begins.

### *WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?*

If you have an accidental bodily injury that results in one or more of the covered losses while you are on a covered layoff or leave of absence, we will use your

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000517

annual earnings from your Employer in effect just prior to the date your absence began.

### WHAT REPATRIATION BENEFIT WILL UNUM PROVIDE?

Unum will pay an additional benefit for the preparation and transportation of your or your dependent's body to a mortuary chosen by you or your authorized representative. Payment will be made if, as the result of a covered accident, you or your dependent suffers loss of life at least 100 miles away from your or your dependent's principal place of residence.

However, when combined with two or more Unum accidental death and dismemberment insurance plans, the combined overall maximum for these plans together cannot exceed the actual expenses for the preparation and transportation of your or your dependent's body to a mortuary.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHAT SEATBELT(S) AND AIR BAG BENEFIT WILL UNUM PROVIDE?

Unum will pay you or your authorized representative an additional benefit if you or your dependent sustains an accidental bodily injury which causes your or your dependent's death while you or your dependent is driving or riding in a **Private Passenger Car**, provided:

For Seatbelt(s):

- the Private Passenger Car is equipped with seatbelt(s); and
- the seatbelt(s) were in actual use and properly fastened at the time of the covered accident; and
- the position of the seatbelt(s) are certified in the official report of the covered accident, or by the investigating officer. A copy of the police accident report must be submitted with the claim.

Also, if such certification is not available, and it is clear that you or your dependent was properly wearing seatbelt(s), then we will pay the additional seatbelt benefit.

However, if such certification is not available, and it is unclear whether you or your dependent was properly wearing seatbelt(s), then we will pay a fixed benefit of $1,000.

We will only pay the seatbelt benefit for the death of a minor, dependent child, if the child is correctly strapped and fastened in the appropriate seat for the child's age and weight as defined by state or federal guidelines. The seatbelt device must also be approved by the state or federal government for the dependent child's age and weight.

An automatic harness seatbelt will not be considered properly fastened unless a lap belt is also used.

For Air Bag:

UA-CL-AD&D-000518

- the Private Passenger Car is equipped with an air bag for the seat in which you are seated; and
- the seatbelt(s) must be in actual use and properly fastened at the time of the covered accident.

No benefit will be paid if you or your dependent is the driver of the Private Passenger Car and does not hold a current and valid driver's license.

No benefit will be paid if Unum is able to verify that the air bag(s) had been disengaged prior to the accident.

The accident causing your or your dependent's death must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT "BENEFITS AT A GLANCE" page.

### WHAT EDUCATION BENEFIT WILL UNUM PROVIDE FOR YOUR QUALIFIED CHILDREN?

Unum will pay your authorized representative on behalf of each of your qualified children a lump sum payment if:

- you lose your life:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your accidental bodily injury occurred while you were insured under the plan;
- proof is furnished to Unum that the child is a **qualified child**; and
- the qualified child continues to be enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level.

The benefit amount per academic year, maximum benefit payments, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHEN WILL THE EDUCATION BENEFIT END FOR EACH QUALIFIED CHILD?

The education benefit will terminate for each qualified child on the earliest of the following dates:

- the date your qualified child fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### WHAT COVERAGE FOR EXPOSURE AND DISAPPEARANCE BENEFIT WILL UNUM PROVIDE?

Unum will pay a benefit if you or your dependent sustains an accidental bodily injury and are unavoidably exposed to the elements and suffer a loss.

We will presume you or your dependent suffered loss of life due to an accident if:

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000519

- you or your dependent are riding in a common public passenger carrier that is involved in an accident covered under the Summary of Benefits; and
- as a result of the accident, the common public passenger carrier is wrecked, sinks, is stranded, or disappears; and
- your or your dependent's body is not found within 1 year of the accident.

Also, the accident must occur while you or your dependent is insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### *WHAT CHILD CARE BENEFIT WILL UNUM PROVIDE?*

Unum will pay you, your spouse or your or your spouse's authorized representative on behalf of each of your qualified children an annual benefit amount for child care if:

- you or your spouse die:
  - as a result of an accidental bodily injury; and
  - within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your or your spouse's accidental bodily injury occurred while you or your spouse was insured under the plan;
- proof is furnished to Unum that the child is a qualified child.

This benefit will only be paid once per accident, even if you and your spouse suffers an injury in the same accident.

The annual benefit amount, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### *WHEN WILL THE CHILD CARE BENEFIT END FOR EACH QUALIFIED CHILD?*

The child care benefit will terminate for each qualified child on the earliest of the following dates:

- the date you, your spouse or your or your spouse's authorized representative fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

### *WHAT COMA BENEFIT WILL UNUM PROVIDE?*

Unum will pay a benefit to your or your dependent's beneficiary if you or your dependents sustain an accidental bodily injury which directly results in your or your dependents being in a **coma** or a (persistent) **vegetative state**. The coma must begin within 31 days of the accident.

No benefits are payable for the first 31 days that you or your dependents are in a coma. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

Also, the accident must occur while you or your dependents are insured under the plan.

AD&D-BEN-5 (1/1/2015) REV  39

UA-CL-AD&D-000520

The most Unum will pay for any combination of Covered Losses from any one accident is the full amount.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

The monthly benefit amount and maximum number of months are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### WHAT REHABILITATION PHYSICAL THERAPY BENEFIT WILL UNUM PROVIDE?

Unum will pay you or your dependents an additional benefit for rehabilitative physical therapy that is prescribed by your or your dependent's attending physician if you or your dependents sustain an accidental bodily injury that results in one or more of the covered losses outlined in the Covered Losses and Benefits List.

The benefit amount and maximum benefit amount are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT **"BENEFITS AT A GLANCE"** page.

### WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:

- suicide while sane or intentionally self-inflicted injury while sane.
- active participation in a riot.
- an attempt to commit or commission of a crime.
- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol.
- service on full-time active duty in the Armed Forces of any country or international authority.
- travel or flight in any vehicle or device for aerial navigation, including boarding or alighting from it while:
  - it is being used for test or experimental purposes;
  - you or your dependent is operating, learning to operate or serving as a member of the crew;
  - it is being operated by or for under the direction of any military authority.
  This exclusion does not apply to:
  - transport type aircraft operated by the Military Airlift Command of the United States; or
  - similar air transport service of any other country.
- travel or flight in any aircraft or device for aerial navigation, including boarding or alighting from it, owned or leased by or on behalf of your Employer.
- disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.
- being **intoxicated**.
- bacterial infection. This exclusion does not apply to you or your dependent when the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

AD&D-BEN-6 (1/1/2015) REV                    40

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000521

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## OTHER BENEFIT FEATURES

### *WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)*

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself and your dependents.

In case of your death, your insured dependents also may elect portable coverage for themselves. However, children cannot become insured for portable coverage unless the spouse also becomes insured for portable coverage.

### *PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE*

The portable insurance coverage will be the current coverage and amounts that you and your dependents are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of accidental death and dismemberment insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for your spouse will not be more than:

- the highest amount of accidental death and dismemberment insurance available for spouses under the plan; or
- 100% of your amount of portable coverage; or
- $750,000 from all Unum group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The amount of portable coverage for a child will not be more than:

- the highest amount of accidental death and dismemberment insurance available for children under the plan; or
- 100% of your amount of portable coverage; or
- $20,000,

whichever is less.

AD&D-OTR-1  (1/1/2015) REV                                    41

UA-CL-AD&D-000522

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The minimum amount of coverage that can be ported is $5,000 for you and $1,000 for your dependents. If the current amounts under the plan are less than $5,000 for you and $1,000 for your dependents you and your dependents may port the lesser amounts.

Your or your dependent's amount of AD&D insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

### *APPLYING FOR PORTABLE COVERAGE*

You must apply for portable coverage for yourself and your dependents and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

Your dependents must apply for portable coverage and pay the first premium within 31 days after the date you die.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**. under the terms of this plan. which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

You are not eligible to apply for portable coverage for a dependent if:

- you do not elect portable coverage for yourself;
- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your dependent has an injury or sickness, under the terms of this plan, which has **a material effect** on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

In case of your death, your spouse is not eligible to apply for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your spouse.

AD&D-OTR-2 (1/1/2015) REV                    42

UA-CL-AD&D-000523

In case of your death, your child is not eligible for portable coverage if:

- your surviving spouse is not insured under this plan;
- your surviving spouse is insured under this plan and chooses not to elect portable coverage;
- your surviving spouse has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- your child has an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan for your child.

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You or your dependents may increase or decrease the amount of AD&D insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of accidental death and dismemberment insurance coverage cannot be decreased below $5,000 for you and $1,000 for your dependents. Portable coverage will reduce at the ages and amounts shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE **"BENEFITS AT A GLANCE"** page.

### ADDING PORTABLE COVERAGE FOR DEPENDENTS

If you choose not to enroll your dependents when your dependents were first eligible for portable coverage, you may enroll your dependents at any time for the amounts allowed under the group plan.

You may enroll newly acquired dependents at any time for the amounts allowed under the group plan.

### WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a spouse will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

Portable coverage for a child will end for the following reasons:

- the date you fail to pay any required premium;
- the date your surviving spouse fails to pay any required premium;
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates);
- the date your child no longer qualifies as a dependent; or
- the date the surviving spouse dies.

AD&D-OTR-3 (1/1/2015) REV 43

UA-CL-AD&D-000524

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

### PREMIUM RATE CHANGES FOR PORTABLE COVERAGE

Unum may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to Unum's underwriting risk studies. Unum will notify the insured in writing at least 31 days before a premium rate is changed.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000525

# GLOSSARY

**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause.

**ACCREDITED SCHOOL** means an accredited post-secondary institution of higher learning for full-time students beyond the 12th grade level.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**ACTIVITIES OF DAILY LIVING** means:

- Bathing - the ability to wash oneself either in the tub or shower or by sponge bath with or without equipment or adaptive devices.
- Dressing - the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn.
- Toileting - the ability to get to and from and on and off the toilet; to maintain a reasonable level of personal hygiene, and to care for clothing.
- Transferring - the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
- Continence - the ability to either:
  - voluntarily control bowel and bladder function; or
  - if incontinent, be able to maintain a reasonable level of personal hygiene.
- Eating - the ability to get nourishment into the body.

A person is considered unable to perform an activity of daily living if the task cannot be performed safely without another person's stand-by assistance or verbal cueing.

**ANNUAL EARNINGS** means your annual income received from your Employer as defined in the plan.

**ANNUAL ENROLLMENT PERIOD** means a period of time before the beginning of each plan year.

**COGNITIVELY IMPAIRED** means a person has a deterioration or loss in intellectual capacity resulting from injury, sickness, advanced age, Alzheimer's disease or similar forms of irreversible dementia and needs another person's assistance or verbal cueing for his or her own protection or for the protection of others.

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000526

**COMA** means being in a profound stupor or state of complete and total unconsciousness. We will use the Rancho Los Amigos Levels of Cognitive Functioning scale to evaluate the coma.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Employer/Applicant named in the Application For Participation in the Select Group Insurance Trust, on the first page of the Summary of Benefits and in all amendments. It includes any division, subsidiary or affiliated company named in the Summary of Benefits.

**EVIDENCE OF INSURABILITY** means a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage. Evidence of insurability will be at Unum's expense.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**HEMIPLEGIA** means total and irreversible paralysis of both limbs on either side of the body (i.e. the right arm and right leg or the left arm and left leg).

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause.

**INSURED** means any person covered under a plan.

**INTOXICATED** means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIFE THREATENING CONDITION** is a critical health condition that possibly could result in your dependent's loss of life.

**LOSS OF A FOOT** means that all of the foot is cut off at or above the ankle joint.

**LOSS OF A HAND** means that all four fingers are cut off at or above the knuckles joining each to the hand.

**LOSS OF HEARING** means the total and irrecoverable loss of hearing in both ears.

**LOSS OF SIGHT** means the eye is totally blind and that no sight can be restored in that eye.

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000527

**LOSS OF SPEECH** means the total and irrecoverable loss of speech.

**LOSS OF THUMB AND INDEX FINGER** means that all of the thumb and index finger are cut off at or above the joint closest to the wrist.

**PARAPLEGIA** means total and irreversible paralysis of both lower limbs.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the Summary of Benefits.

**PHYSICIAN** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Unum will not recognize you, or your spouse, children, parents or siblings as a physician for a claim that you send to us.

**PLAN** means a line of coverage under the Summary of Benefits.

**PRIVATE PASSENGER CAR** means a validly registered four-wheel private passenger car (including Employer-owned cars), station wagons, jeeps, pick-up trucks, and vans that are used only as private passenger cars.

**QUADRIPLEGIA** means total and irreversible paralysis of all four limbs.

**QUALIFIED CHILD** means:

- **for purposes of the Education Benefit**, any of your unmarried dependent children under age 25 who, on the date of your death as a result of an accidental bodily injury, was either:

  - enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level; or
  - at the 12th grade level and enrolls as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level within 365 days following the date of your death.

- **for purposes of the Child Care Benefit**, any of your unmarried dependent children under age 14 who, were enrolled in a licensed day care facility, school facility, or other similar program for 90 continuous days before the date of the accident causing your death. The Child Care Benefit will not be extended to any of your children born after the date of your death unless pregnancy commenced prior to the date of your death.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

GLOSSARY-3 (1/1/2015) REV                    47

UA-CL-AD&D-000528

**RETAINED ASSET ACCOUNT** is an interest bearing account established through an intermediary bank in the name of you or your beneficiary, as owner.

**SICKNESS** means:

- **for purposes of Portability**, an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.
- **for all other purposes**, an illness or disease.

**TOTALLY DISABLED** means that, as a result of an injury, a sickness or a disorder, your dependent:

- is confined in a hospital or similar institution;
- is unable to perform two or more activities of daily living (ADLs) because of a physical or mental incapacity resulting from an injury or a sickness;
- is cognitively impaired;
- has a life threatening condition;
- is unable to attend school outside of home provided your dependent is a child and of school age (ages 5-19 years of age); or
- is at a developmental age which is less than half the chronological age by milestones or other pediatric developmental testing (e.g., Denver Developmental Test or similar test) provided your dependent is a child and of pre-school age (up to 6 years of age).

**TRIPLEGIA** means total and irreversible paralysis of three limbs.

**TRUST** means the policyholder trust named on the first page of the Summary of Benefits and all amendments to the policy.

**UNIPLEGIA** means total and irreversible paralysis of one limb.

**VEGETATIVE STATE** means being completely unaware of one's self and the environment with the presence of sleep-awake cycles and at least partial preservation of involuntary brain functions. Such vegetative state must be due to an accidental bodily injury and must begin within 31 days of the date of the accident.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE**, **US** and **OUR** means Unum Life Insurance Company of America.

**YOU** means an employee who is eligible for Unum coverage.

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000529

# ERISA

## Additional Summary Plan Description Information

If the Summary of Benefits provides benefits under a Plan which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the following provisions apply. These provisions, together with your certificate of coverage, constitute the summary plan description. The summary plan description and the Summary of Benefits constitute the Plan. Benefit determinations are controlled exclusively by the Summary of Benefits, your certificate of coverage and the information contained in this document.

**Name of Plan:**
BlueScope Steel North America Corporation Plan

**Name and Address of Employer:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

**Plan Identification Number:**
a. Employer IRS Identification #: 23-2081882
b. Plan #: 501

**Type of Welfare Plan:**
Life and Accidental Death and Dismemberment

**Type of Administration:**
The Plan is administered by the Plan Administrator. Benefits are administered by the insurer and provided in accordance with the insurance Summary of Benefits issued to the Plan.

**ERISA Plan Year Ends:**
December 31

**Plan Administrator, Name,**
**Address, and Telephone Number:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069
(816) 968-3000

BlueScope Steel North America Corporation is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties. The Plan Administrator may designate Trustees of the Plan, in which case the Administrator will advise you separately of the name, title and address of each Trustee.

**Agent for Service of**
**Legal Process on the Plan:**
BlueScope Steel North America Corporation
1540 Genessee Street
Kansas City, Missouri
64102-1069

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000530

Service of legal process may also be made upon the Plan Administrator, or a Trustee of the Plan, if any.

**Funding and Contributions:**
The Plan is funded by insurance issued by Unum Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122 (hereinafter referred to as "Unum") under identification number 382480 012. Contributions to the Plan are made as stated under "WHO PAYS FOR THE COVERAGE" in the Certificate of Coverage.

## EMPLOYER'S RIGHT TO AMEND THE PLAN

The Employer reserves the right, in its sole and absolute discretion, to amend, modify, or terminate, in whole or in part, any or all of the provisions of the Plan (including any related documents and underlying policies), at any time and for any reason or no reason. Any amendment, modification, or termination must be in writing and endorsed on or attached to the Plan.

## EMPLOYER'S RIGHT TO REQUEST SUMMARY OF BENEFITS CHANGE

The Employer can request a Summary of Benefits change. Only an officer or registrar of Unum can approve a change. The change must be in writing and endorsed on or attached to the Summary of Benefits.

## MODIFYING OR CANCELLING THE SUMMARY OF BENEFITS OR A PLAN UNDER THE SUMMARY OF BENEFITS

The Summary of Benefits or a plan under the Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

Unum may cancel or modify the Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to the Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or
- the premium is not paid in accordance with the provisions of the Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger,

ADDLSUM-2 (1/1/2015) REV                               50

UA-CL-AD&D-000531

divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day grace period.

If Unum cancels or modifies the Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel the Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify the Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel the Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, the Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels the Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the Summary of Benefits or a plan is cancelled, the cancellation will not affect a payable claim.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your insurance certificate. To complete your claim filing, Unum must receive the claim information it requests from you (or your authorized representative), your attending physician and your Employer. If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

## CLAIMS PROCEDURES

In the event that your claim is denied, either in full or in part, Unum will notify you in writing within 90 days after your claim was filed. Under special circumstances, Unum is allowed an additional period of not more than 90 days (180 days in total) within which to notify you of its decision. If such an extension is required, you will receive a written notice from Unum indicating the reason for the delay and the date you may expect a final decision. Unum's notice of denial shall include:

- the specific reason or reasons for denial with reference to those Plan provisions on which the denial is based;
- a description of any additional material or information necessary to complete the claim and why that material or information is necessary; and
- a description of the Plan's procedures and applicable time limits for appealing the determination, including a statement of your right to bring a lawsuit under Section 502(a) of ERISA following an adverse determination from Unum on appeal.

UA-CL-AD&D-000532

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

If you or your authorized representative appeal a denied claim, it must be submitted within 90 days after you receive Unum's notice of denial. You have the right to:

- submit a request for review, in writing, to Unum;
- upon request and free of charge, reasonable access to and copies of, all relevant documents as defined by applicable U.S. Department of Labor regulations; and
- submit written comments, documents, records and other information relating to the claim to Unum.

Unum will make a full and fair review of the claim and all new information submitted whether or not presented or available at the initial determination, and may require additional documents as it deems necessary or desirable in making such a review. A final decision on the review shall be made not later than 60 days following receipt of the written request for review. If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension and the date by which the Plan expects to make a decision. If an extension is required due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the necessary information and the date by which you need to provide it to us. The 60-day extension of the appeal review period will begin after you have provided that information.

The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference, again, to those Summary of Benefits' provisions upon which the final decision is based. It will also include a statement describing your access to documents and describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the determination.

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

UA-CL-AD&D-000533

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

### Enforce Your Rights

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, if, for example, it finds your claim is frivolous.

### Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

UA-CL-AD&D-000534

## OTHER RIGHTS

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the Summary of Benefits. You agree that Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

## DISCRETIONARY ACTS

The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Once you are deemed to have exhausted your appeal rights under the Plan, you have the right to seek court review under Section 502(a) of ERISA of any benefit determinations with which you disagree. The court will determine the standard of review it will apply in evaluating those decisions.

UA-CL-AD&D-000535

**NOTICE OF PROTECTION PROVIDED BY**
**MISSOURI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION**

This notice provides a **brief summary** of the Missouri Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. This safety net was created under Missouri law, which determines who and what is covered and the amounts of coverage.

The Association was established to provide protection in the unlikely event that your life, annuity, or health insurance company becomes financially unable to meet its obligations and is taken over by its insurance department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Missouri law, with funding from assessments paid by other insurance companies.

The basic protections provided by the Association are as follows:

- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values

- Health Insurance
  - $500,000 in hospital, medical and surgical insurance benefits
  - $300,000 in disability insurance benefits
  - $300,000 in long-term care insurance benefits
  - $100,000 in other types of health insurance benefits

- Annuities
  - $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is as follows:

- $300,000 in aggregate for all types of coverage listed above, with the exception of basic hospital, medical, and surgical insurance or major medical insurance
- $500,000 in aggregate for basic hospital, medical, and surgical insurance or major medical insurance
- $5,000,000 to one policy owner of multiple nongroup policies of life insurance, whether the policy owner is an individual, firm, corporation, or other person, and whether the persons insured are officers, managers, employees, or other persons

**Note: Certain policies and contracts may not be covered or fully covered.** For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Missouri law.

To learn more about the above protections, as well as protections relating to group contracts or retirement plans, please visit the Association's website at www.mo-iga.org, or contact:

Missouri Life and Health Insurance
Guaranty Association
994 Diamond Ridge, Suite 102

Missouri Department of Insurance,
Financial Institutions and Professional
Registration

GUAR-1 (1/1/2015) REV

55

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000536

Jefferson City, Missouri 65109
(573) 634-8455
Fax: (573) 634-8488

301 West High Street, Room 530
Jefferson City, Missouri 65101
(573) 522-6115

**Insurance companies and agents are not allowed by Missouri law to use the existence of the Association or its coverage to encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and Missouri law, then Missouri law will control.**

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000537

LOCAL REGISTRAR
JACKSON COUNTY HEALTH DEPT
313 S LIBERTY ST
INDEPENDENCE MO 64050



MISSOURI DEPARTMENT OF HEALTH
AND SENIOR SERVICES
FEE RECEIPT
DEATH CERTIFICATION

REGISTRANT(S):

FLORAL HILLS FUNERAL HOME          KATHY RAE WILLIAMS
7000 BLUE RIDGE BLVD.              D9999-999999
KANSAS CITY MO  64133             1 COPY

MO 580-0699 (2-12)

| YOUR RECENT REQUEST HAS BEEN ACTED UPON AS INDICATED BELOW: | | | | |
|---|---|---|---|---|
| DATE RECEIVED | TOTAL AMOUNT | AMOUNT THIS REQUEST | PROCESSING FEE REQUIRED | REFUND |
| 05/08/2018 | 13.00 | 13.00 | 0.00 | 0.00 |

UNAPPLIED REMITTANCES ONLY VALID FOR ONE YEAR AFTER RECEIPT. When you inquire about your request, please return this receipt. If a refund is indicated, it will be mailed within 30 to 60 days.



## MISSOURI

### CERTIFICATION OF DEATH

DATE FILED: MAY 8, 2018          STATE FILE NUMBER:  124-18-014772

DECEDENT NAME:  KATHY RAE WILLIAMS          SEX:  FEMALE

DATE OF DEATH:  APRIL 27, 2018          COUNTY OF DEATH:  JACKSON

DATE OF BIRTH:  **Redacted**          MARITAL STATUS:  MARRIED          EVER IN ARMED FORCES:  NO

SOCIAL SECURITY NUMBER:  **Redacted**          RESIDENCE ADDRESS:  18216 E 51ST ST CT S INDEPENDENCE, MISSOURI

SURVIVING SPOUSE:
(IF WIFE, MAIDEN NAME):  GARY L WILLIAMS
FUNERAL HOME: FLORAL HILLS FUNERAL HOME
UNDERLYING CAUSE (ICD CODE):          MANNER: ACCIDENT
INTRACRANIAL HEMORRHAGE

## EXHIBIT 3

ISSUED ON BEHALF OF MO DEPT HEALTH & SENIOR SERVICES:JACKSON

THIS IS A TRUE CERTIFICATION OF NAME AND DEATH FACTS AS RECORDED BY THE BUREAU OF VITAL RECORDS, JEFFERSON CITY, MISSOURI

DATE ISSUED:  MAY 8, 2018

Craig B. Ward
State Registrar of Vital Statistics

THE REPRODUCTION OF THIS DOCUMENT IS PROHIBITED BY LAW.
ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATION

Claimant Name: Kathy Williams   Claim #: 14865987

**Jackson County Medical Examiner**
**Investigative Report**

950 E. 21st St.
Kansas City, MO 64108

(816)881-6600
FAX (816)881-6641

Dr. Diane Peterson
Chief Medical Examiner

## Investigative Report

### Call Information

| | | | |
|---|---|---|---|
| REPORT NUMBER: 18-03200 | AJ: Yes | AJ/DJ Reason: Violent | COUNTY: Jackson |
| NOTIFIED BY: Ofc. Jenne | | DATE / TIME: 04/27/2018 17:39 | |

### DECEDENT

| | |
|---|---|
| NAME: Kathy Rae Williams | AKA: |

| | | |
|---|---|---|
| AGE: 60 Years | SEX: Female | RACE: White |
| DATE OF BIRTH: Redacted | | MARITAL STATUS: Married |

RESIDENCE: 18216 E 51st St Ct S, Independence, Missouri 64055

### CONTACTS

| | |
|---|---|
| NAME: Gary Williams | RELATIONSHIP: Spouse |

ADDRESS: 18216 E 51st St Ct S, Independence, Missouri 64055

| | | |
|---|---|---|
| HOME PHONE: (816) 456-1247 | WORK PHONE: | CELL PHONE: |

### DEATH

| | |
|---|---|
| ADDRESS: 18216 E 51st St Ct S, Independence, Missouri 64055 | HOSPITAL: |
| DATE AND TIME: 04/27/2018 0:00 | WHO PRONOUNCED: |
| | PRN LOCATION: Dead on Scene |

### DEATH EVENT DATA

| | |
|---|---|
| DATE/TIME OF INJURY-ILLNESS-DISCOVERY: 04/27/2018 16:50 | PLACE OF INJURY: Residential |

LOCATION OF INJURY-ILLNESS-DISCOVERY: 18216 E 51st St Ct S, Independence, Missouri 64055

HOW INJURY OCCURED:

### MEDICAL HISTORY

| | |
|---|---|
| LAST KNOWN DATE/TIME: 04/28/2018 12:00 | HOSPITAL ADMIT DATE/TIME: |
| INFORMANT: Gary Williams | INFORMANT ADDRESS: , , |
| INFORMANT PHONE: | RELATIONSHIP: Spouse |
| PREGNANT IN LAST 90 Days: No | |

### PAST MEDICAL HISTORY

| Illness | Site |
|---|---|
| Vertigo | |
| EtOH Abuse | |

MEDICAL HISTORY NOTES:

SURGERY HISTORY NOTES:

SOCIAL AND DRUG HISTORY NOTES:

PSYCHOLOGICAL HISTORY NOTES:

SOCIAL HISTORY NOTES:

FAMILY HISTORY NOTES:

| | | |
|---|---|---|
| DEPART DATE/TIME: 04/27/2018 17:55 | ARRIVAL DATE/TIME: 04/27/2018 18:40 | SCENE TURN: 45 |
| SCENE PHOTOS: Yes | INSIDE TEMP: | OUTDOOR TEMP: |

EXHIBIT 4

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000539

**Jackson County Medical Examiner**
**Investigative Report**

(816)881-6600
FAX (816)881-6641

950 E. 21st St.
Kansas City, MO 64108

Dr. Diane Peterson
Chief Medical Examiner

| | | | |
|---|---|---|---|
| HUMIDITY: | RIGOR: No | | LIVOR TYPE: Blanching |
| INVESTIGATOR: Christina Hawkins | | | |
| GENERAL SCENE OBSERVATION: | | CLOTHING EFFECTS: | |
| TRAUMA: | | POSITION: | |
| DECOMPOSITION & ARTIFACTS: No | | OTHER OBSERVATIONS: | |

| INCIDENT | | |
|---|---|---|
| INV AGENCY ON SCENE: Independence PD | OFFICER ASSIGNED: Ofc. Jenne | |
| AGENCY PHONE: (816) 325-7300 | AGENCY FAX: | |
| INCIDENT AT WORK: No | EMPLOYER: | |
| EMPLOYER PHONE: | EMPLOYER ADDRESS: | |
| INCIDENT LOCATION: Single Family Home | INCIDENT ADDRESS: 18216 E 51st St Ct S Independence Missouri 64055 | |
| IMPLEMENT: | FIREARM TYPE: | CALIBER: |
| PROJECTILE TYPE: | AMMO BRAND: | BULLET SIZE: |
| BARREL LENGTH: | COMMENTS: | |
| SUICIDE NOTE FOUND: | SUICIDE WITNESSED: | HANDEDNESS: |
| WEAPON LOCATION | PRIOR ATTEMPTS: | |
| HISTORY OF MENTAL DISEASE: | | |
| DRUG PARAPHERNALIA FOUND: No | PARAPHERNALIA DESCRIPTION: | |

| MVA | | |
|---|---|---|
| MVA CLASSIFICATION: | WEAR SEATBELT: 0 | WEAR HELMET: 0 |
| AIRBAG DEPLOYED: 0 | DECEDENT EJECTED: 0 | SEAT POSITION: |
| | ROAD CONDITION: | VEHICLE TYPE: |
| MAKER: | MODEL: | YEAR: 0 |
| INFORMATION ON SECOND VEHICLE: | VEHICLE TYPE: | |
| MAKER: | MODEL: | YEAR: 0 |

| AUTOPSY | | |
|---|---|---|
| EXAM DATE/TIME: Apr 28 2018 12:00AM | STAFF PATHOLOGIST: Dr. B. Robert Pietak | EXAM TYPE: Investigator Exam |
| IMMEDIATE CAUSE: Intracranial hemorrhage | | |

| | | |
|---|---|---|
| DUE TO: | | |
| DUE TO: | | |
| DUE TO: | | |
| OTHER SIG CONDITIONS: | | |
| MANNER: Accident | | INJURY @ WORK: No |
| OTHER PROCEDURES AND PENDING: Other Procedure: Toxicology, Other Procedure: FTA Card, Other Procedure: Fingerprints | | |
| INCIDENT PLACE: Single Family Home | INCIDENT ADDRESS: 18216 E 51st St Ct S, Independence, Missouri 64055 | TIME OF DEATH: |

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000540



**Jackson County Medical Examiner**
**Investigative Report**

950 E. 21st St.
Kansas City, MO 64108

(816)881-6600
FAX (816)881-6641

Dr. Diane Peterson
Chief Medical Examiner

NARRATIVE: This is an AJ case- Sudden

On 04/27/2018 at 1739, I received a call from IPD in reference to the death of Kathy Williams, a 60-year-old white female. The subject had a medical history of vertigo and EtOH abuse. The subject was under the care of Dr. Dean Mundhenke with Blue River Medical Group. Medication found on scene included sertraline and gabapentin. The medication was photographed and collected by JCMEO.

On 04/27/2018 around 1650 the subject was found unresponsive by her spouse. The spouse last spoke to the subject on the phone around 1200. The spouse stated the subject has been drinking heavily the past year. The spouse tried to call the subject around 1500 but received no answer. When the spouse got off work he headed home to check on the subject. The residence was secure and the spouse found the subject at the bottom of the stairs. 911 was called. IPD and AMR EMS responded to the scene. EMS initiated the following interventions: ET tube, IO, IV lines and defib pads. EMS never regained any rhythmic activity and confirmed death on scene. IPD contacted JCMEO for further investigation.

On scene, I observed the subject lying supine on the basement floor. The subject was found in a prone position but moved for ACLS. The subject was clad in blue pajama pants, underwear, yellow plaid button up shirt and bra. The subject was warm to the touch. Rigor was absent. Lividity was posterior, purple and blanching. The subject's eyes were closed and corneas clear. Both eyes were congested. I observed a hole in the wall of the staircase. It appeared the subject was holding a glass as she was walking down the stairs. There was broken glass around the subject and broken glass located in the right hand. I observed multiple lacerations to the right hand and face. Blood was noted from the mouth and nose. The subject was placed in a white body bag with tag number 085417 and transported to JCMEO for further evaluation.

| MEDICAL INVESTIGATOR: Christina Hawkins<br><br>(SIGNATURE) | APPROVED BY:<br>(SIGNATURE) |
| --- | --- |

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000541



Children's Mercy Hospital
Department of Pathology and Laboratory Medicine
2401 Gillham Road
Kansas City, MO 64108
Phone: (816) 234-3835 Fax: (816) 983-6534

| Patient Name: | Williams, Kathy | Acct: | 433911500 |
| Location: | Lab Client | MRN: | 01914662 |
| Attending Provider: | Pietak,MD,Boguslaw R | DOB / Sex | Redacted / Female |
| Client | Jackson County Medical Examiner | Outreach ID: | 1803200 |

## Drug Screens/Toxicology

| | Collection Date | 4/28/2018 | | |
| | Collection Time | 10:50 CDT | | |
| Procedure | | | Reference Range | Units |
| Comp Autopsy Drug Screen Drug #1 | | Sertraline | | |
| Comp Autopsy Drug Screen Drug #2 | | Norsertraline | | |
| Comp Autopsy Drug Screen Drug #3 | | Caffeine | | |
| Comp Autopsy Drug Screen Comment | | See Below T1 | | |

**Textual Results**
T1:  4/28/2018 10:50 CDT (Comp Autopsy Drug Screen Comment)
Drugs reported positive are by a screening method only. We recommend that confirmation
should be requested on all positive drug of abuse results and other positives if indicated.

## Drug Levels & Confirmations/Toxicology

| | Collection Date | 4/28/2018 | 4/28/2018 | 4/28/2018 | | |
| | Collection Time | 10:50 CDT | 10:50 CDT | 10:50 CDT | | |
| Procedure | | | | | Reference Range | Units |
| Methanol Vitreous | | <10 | - | - | <=10 | mg/dL |
| Ethanol Vitreous | | 430 H R1 | - | - | <=10 | mg/dL |
| Isopropanol Vitreous | | <10 | - | - | <=10 | mg/dL |
| Acetone Vitreous | | <10 | - | - | <=10 | mg/dL |
| Methanol WB | | - | - | <10 | <=10 | mg/dL |
| Ethanol WB | | - | - | 337 C R2 | <=10 | mg/dL |
| Isopropanol WB | | - | - | <10 | <=10 | mg/dL |
| Acetone WB | | - | - | <10 | <=10 | mg/dL |
| Forensic Signature | | See Below T2 | - | - | | |
| Ref Lab Misc (Toxicology) | | See Below T3 | See Below T4 | - | | |

**Textual Results**
T2:  4/28/2018 10:50 CDT (Forensic Signature)
SUBCLAVIAN BLOOD USED FOR VOLATILE PANEL TESTING AND AUTOPSY DRUG SCREEN

Case #: 18-03200

Results reviewed and approved by: _____  6/5/18

T3:  4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))

Legend:     A=Abnormal     C=Critical     L=Low     H=High

| Report Request ID: | 91101226 | Print Date/Time: | 6/4/2018 14:36 CDT |
| Printed By: | Frazee,Clinton C | | |

Page 1 of 3

## EXHIBIT 5

Claimant Name: Kathy Williams #543 644 0803 5 ... FROM CMH MICROBIOLOGY

## Drug Levels & Confirmations/Toxicology

Textual Results
T3:     4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))
        ***SUBCLAVIAN BLOOD SERTRALINE AND METABOLITE QUANTITATION***

        SERTRALINE = 130 NG/ML                          RPT. LIMIT: 10 NG/ML
        DESMETHYLSERTRALINE = 680 NG/ML                 RPT. LIMIT: 20 NG/ML

        **REFERENCE COMMENTS (PERIPHERAL BLOOD):**

        1.  SERTRALINE IS A SELECTIVE SEROTONIN REUPTAKE INHIBITOR USED IN THE TREATMENT
            OF DEPRESSION. THE INITIAL ADULT DOSAGE IS 50 MG DAILY AND CAN BE INCREASED TO
            A MAXIMUM OF 200 MG DAILY. SERTRALINE IS SUBJECT TO SIGNIFICANT FIRST PASS
            METABOLISM WITH DESMETHYLSERTRALINE AS THE PRINCIPAL METABOLITE. OVERDOSE
            WITH SERTRALINE MAY CAUSE SLEEPINESS, NAUSEA, TACHYCARDIA, AND MYDRIASIS.
            FIFTEEN ADULTS TAKING 200 MG DAILY SERTRALINE HAD MEAN TROUGH SERUM
            CONCENTRATIONS OF 29 NG/ML (RANGE 9-82 NG/ML) SERTRALINE. THE BLOOD TO
            PLASMA RATIO FOR SERTRALINE IS APPROXIMATELY 1.2.

            IN A REPORT OF SEVEN POSTMORTEM CASES IN WHICH SERTRALINE WAS NOT RELATED
            TO THE CAUSE OF DEATH, SERTRALINE CONCENTRATIONS WERE 230-460 NG/ML IN HEART
            BLOOD. POSTMORTEM BLOOD SERTRALINE CONCENTRATIONS GREATER THAN 1,500
            NG/ML WERE CONSIDERED TO BE CONTRIBUTORY TO DEATH IN A REVIEW OF 75 CASES. A
            PATIENT SURVIVED AN ACUTE OVERDOSE WITH A SERUM CONCENTRATION OF 2,900
            NG/ML SERTRALINE. HER SYMPTOMS INCLUDED CONFUSION, AGITATION, FEVER AND
            SEIZURES.

        2.  DESMETHYLSERTRALINE IS THE PRINCIPAL METABOLITE OF SERTRALINE AND HAS
            ABOUT 10 TO 20 % OF THE PHARMACOLOGIC ACTIVITY OF THE PARENT COMPOUND.
            FIFTEEN ADULTS TAKING 200 MG DAILY SERTRALINE HAD MEAN TROUGH SERUM
            CONCENTRATIONS OF 87 NG/ML DESMETHYLSERTRALINE (RANGE 40-189 NG/ML). THE
            BLOOD TO PLASMA RATIO FOR DESMETHYLSERTRALINE IS NOT KNOWN.

            IN A REPORT OF SEVEN POSTMORTEM CASES IN WHICH SERTRALINE WAS NOT RELATED
            TO THE CAUSE OF DEATH, DESMETHYLSERTRALINE CONCENTRATIONS WERE 80-990
            NG/ML IN HEART BLOOD. A PATIENT SURVIVED AN ACUTE OVERDOSE WITH A SERUM
            CONCENTRATION OF 1700 NG/ML DESMETHYLSERTRALINE. HER SYMPTOMS INCLUDED
            CONFUSION, AGITATION, FEVER AND SEIZURES.

        **--ANALYSIS BY LC-MS/MS**

        **Testing Performed at:**

        National Medical Services
        3701 Welsh Rd.
        Willow Grove, PA 19090

T4:     4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))

                        Legend:     A=Abnormal      C=Critical      L=Low       H=High

        Patient Name:       Williams, Kathy                             Print Date/Time:  6/4/2018 14:36 CDT
        Report Request ID:  91101226                                    MRN:              01914662
                                            Page 2 of 3

## *Drug Levels & Confirmations/Toxicology*

Textual Results
T4:     4/28/2018 10:50 CDT (Ref Lab Misc (Toxicology))
        **\*\*\*EXPOSURE PANEL\*\*\***

        HBsAG Cadaver/Hemolyzed, S = Negative

        HCV Ab Cadaver/Hemolyzed Screen, S = Negative

        HIV-1/-2 Cadaver/Hemolyzed, S = Negative

        **Testing performed at:**

        Mayo Clinic Laboratories--Rochester Superior Drive
        3050 Superior Dr. NW
        Rochester, MN 55901
        *******************************************************

Result Comments
R1:     Ethanol Vitreous
        PERFORMED AT 2X DILUTION
R2:     Ethanol WB
        WHOLE BLOOD ETHANOL has been confirmed by an alternate technique utilizing an independent chemical
        principle.

Legend:     A=Abnormal     C=Critical     L=Low     H=High

Patient Name:      Williams, Kathy                        Print Date/Time:  6/4/2018 14:36 CDT
Report Request ID: 91101226                               MRN:              01914662

Claimant Name: Kathy Williams

UA-CL-AD&D-000544

The [illegible] [illegible], [illegible]
Toxicology Laboratory
[illegible]
List of Detectable Drugs in Blood

The following list of drugs represents those drugs which are commonly detected by our laboratory. It does not list all of the possible drugs which may be detected by our methodology (GC/MS).

| | | | |
|---|---|---|---|
| Acetaminophen | Doxylamine | Methaqualone | Procyclidine |
| Alprazolam | Duloxetine | Methsuximide | Promethazine |
| Amantadine | Ecgonine Methyl Ester | Methylone | Propofol |
| Amitriptyline | Ethotoin | Methylphenidate | Propoxyphene |
| Amobarbital | Fenfluramine | Methyprylon | Propranolol |
| Amoxapine | Flecainide | Metoclopramide | Protriptyline |
| Amphetamine | Fluconazole | Metoprolol | Pseudoephedrine |
| Atomoxetine | Fluoxetine | Metronidazole | Pyrilamine |
| Benztropine | Flurazepam | Mexiletine | Quetiapine metabolite |
| Bupivacaine | Fluvoxamine | Midazolam | Quinine |
| Bupropion | Gabapentin | Mirtazapine | Quinidine |
| Butabarbital | Glutethimide | Modafinil | Ranitidine |
| Butalbital | Guaifenesin | Morphine | Salicylates |
| Cannabinoids | Hydrocodone | Nicotine | Secobarbital |
| Carbamazepine | Imipramine | Nordiazepam | Sertraline |
| Carisoprodol | Ibuprofen | Norfluoxetine | Tapentadol |
| Chlordiazepoxide | Ketamine | Normeperidine | Temazepam |
| Chlorpheniramine | Levamisole | Norpropoxyphene | Theophylline |
| Chlorpromazine | Levetiracetam | Nortriptyline | Thiopental |
| Chlorprothixene | Lidocaine | Norvenlafaxine | Timolol |
| Citalopram | Loxapine | Olanzapine | Thioridazine |
| Clomipramine | Maprotiline | Orphenadrine | Tramadol |
| Clonazepam | MDA | Oxazepam | Trazodone |
| Clozapine | MDEA | Oxcarbazepine | Trifluoperazine |
| Cocaethylene | MDMA | Oxycodone | Trimethobenzamide |
| Cocaine | Meclizine | Papaverine | Trimethoprim |
| Codeine | Medazepam | Paroxetine | Trimipramine |
| Cyclobenzaprine | Meperidine | Pentazocine | Triprolidine |
| Desmethyltramadol | Mephenytoin | Pentobarbital | Valproic Acid |
| Desipramine | Mephobarbital | Phencyclidine | Venlafaxine |
| Dextromethorphan | Mepivacaine | Phenobarbital | Verapamil |
| Diazepam | Meprobamate | Phensuximide | Warfarin |
| Dihydrocodeine | Mesoridazine | Phentermine | Zolpidem |
| Diltiazem | Methadone | Phenyltoloxamine | Zonisamide |
| Diphenhydramine | Methohexital | Phenytoin | |
| Disopyramide | Methamphetamine | Phenylpropanolamine | |
| Doxepin | Methapyrilene | Procainamide | |

Note: This list does not include all drugs and/or their metabolites which may be detected. Some drugs may only be detectable at toxic or lethal concentrations. For information on detectable levels for a specific drug, please contact our laboratory.

Blooddrug list

Claimant Name: Kathy Williams      Claim #: 14865967

**BLAKEMAN LAW**

8383 Wilshire Blvd., Ste. 510
Los Angeles, California 90017



*Life Insurance, investment, and financial
elder abuse litigation*

Phone: 213-629-9922
Fax:    213-232-3230
email: ben@lifeinsurance-law.com

September 6, 2018

<u>**Via Facsimile 800-447-2498**</u>
Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158

Attention: Claims Specialist

> **Re:    Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

Dear Sir or Madam:

This office has been retained to represent Gary Williams in connection with the claim for accidental death benefits on the life of Kathy Williams.

Please be so kind as to forward the Trust Document (commonly known as the "Plan Document"), Summary Plan Description (SPD) (and any amendments thereto since the inception of the Plan), and Form 5500. The authority for this request is found at 29 U.S.C.A. §1024(b)(4).

In addition, I would like to know when and manner in which the SPD and amendments, if any, were provided to the Blue Scope employees.

Thank you for your anticipated cooperation with this request.

BLAKEMAN LAW

Benjamin Blakeman

cc: Gary Williams

**EXHIBIT 6**

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000546

**Medical review referral:**

Staples, Kristi-Lee, 07/17/2018 11:27:45 AM:
Consulting Medical Referral

---

**Cause & Date of Death/Dismemberment:** intracranial hemorrhage, 04/27/18

**EDOC (For TD only):** n/a

**Port Application Date (For Port Only):** n/a

**Pertinent medically related policy provisions:**

*WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?*
Your plan does not cover any accidental losses caused by, contributed to by, or
resulting from:
...
- the use of any prescription or non-prescription drug, poison, fume, or other
chemical substance unless used according to the prescription or direction of your
or your dependent's physician. This exclusion will not apply to you or your
dependent if the chemical substance is ethanol.
...
- disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the
latest edition of the Diagnostic and Statistical Manual of Mental Disorders.
- being intoxicated.
- bacterial infection. This exclusion does not apply to you or your dependent when the bacterial
infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war.

**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and
independently of all other cause.

**Questions:**
Based on the available toxicology results, what was the insured's blood alcohol concentration at the
time of the accident?

Based on the information provided, did her being intoxicated cause, contribute to or result in the
insured's death?

RESPONSE:

Webb, Marnie P, 07/20/2018 11:43:18 AM:
**Clmt:** Kathy Williams

# EXHIBIT 7

NL#: 14865967

**Data Reviewed:**
I have reviewed the Jackson County Medical Examiner's Investigative Report, Children's Mercy Hospital Toxicology Report, and the CDC.

**Summary of Clinical Findings:**
The insured, a 60-year-old with a history of vertigo and alcohol abuse (with reported heavy drinking in the past year), was found unresponsive, lying prone at the foot of a staircase in her home on 4/27/18 around 4:50 p.m. by her husband. Her husband reported he had spoken to the insured at 12 p.m. that day and had tried to call at 3 p.m. but received no answer. EMS responded but she reportedly never regained a heart rhythm. The medical examiner's investigator observed a hole in the wall of the staircase (no documentation that the age of the hole was confirmed) and noted it appeared the insured had been holding a glass in her hand as she was walking down the stairs because she was found with broken glass in her right hand and around her. The insured's body was warm to the touch, rigor was absent, and lividity was posterior with blanching. There were lacerations to the right hand and face and blood was coming from the mouth and nose.

Autopsy was not performed. Toxicology showed ethanol in blood at 0.337% and in vitreous at 0.430%. It also showed therapeutic levels of sertraline at 130 nanograms per milliliter (ng/mL) and its metabolite desmethylsertraline at 680 ng/mL.

The medical examiner opined cause of death was intracranial hemorrhage and manner of death was accident.

**LBS Questions:**
1. Based on the available toxicology results, what was the insured's blood alcohol concentration at the time of the accident?

-----Given that the fall was unwitnessed, the time of the fall is unclear, and therefore, the specific BAC at the time of the fall is unknown. The insured's BAC at the time of death was 0.337%, which is within the possibly fatal range (0.31% and higher). She had last been known alive at 12 p.m. and was found dead at 4:50 p.m. If the insured survived for a period of time in a comatose state, her alcohol level may have been higher or lower at the time of the fall, depending on whether she was in an absorptive or post-absorptive stage of alcohol metabolism and the time elapsed between the fall and death.

2. Based on the information provided, did her being intoxicated cause, contribute to or result in the insured's death?

-----Based on the available medical information, the cause of death of intracranial hemorrhage is an assumed cause of death based on scene findings. Although the circumstances of being found at the foot of a staircase with blood from the nose and mouth could indicate brain injury, blood from the nose and mouth could have been caused by non-fatal nose and mouth trauma without significant underlying brain injury. Neither autopsy nor diagnostic testing was performed to confirm that the insured sustained intracranial hemorrhage; therefore, the cause of death of intracranial hemorrhage cannot be confirmed. In addition, because an autopsy was not performed, neither disease of the body nor acute alcohol intoxication can be excluded as cause of death.

*Claimant Name: Kathy Williams     Claim #:  14865967*

Regardless of cause of death, given that the insured's BAC was extremely elevated at more than four times the level generally accepted as legal intoxication and within the possibly fatal range (0.31% plus), it is reasonable that being intoxicated contributed to, if not caused, the insured's death as supported by the analysis below.

- If the insured died immediately or within a short period of time after the fall, the BAC of 0.337% is a reasonable estimation of the BAC at the time of the fall. A BAC of 0.337% would result, at a minimum, in significant impairment in coordination, attention, reaction time, and balance that reasonably would have affected the insured's ability to navigate stairs safely, but alternatively could have resulted in a loss of consciousness that caused a fall or could have resulted in death in and of itself, resulting in terminal collapse with fall.

- If the insured sustained a brain injury, as assumed by the medical examiner, that was not severe enough to result in immediate death, and the insured survived for a period in a comatose state, it is reasonable that whether the BAC was increasing or decreasing during the comatose state, given the insured's extreme level of intoxication at time of death, the possibly fatal alcohol level at a minimum, contributed to any respiratory and circulatory depression caused by the assumed brain injury and, therefore, contributed to the insured's death, or alternatively, if the brain trauma was mild, the extreme level of intoxication resulted in respiratory and circulatory impairment that actually caused death.

- The insured had a history of heavy alcohol use and, therefore, could have had underlying disease of the body, including heart and/or liver disease. It is reasonable that the insured's extreme level of intoxication would have contributed to any cardiorespiratory dysfunction caused by any underlying disease of the body.

- The insured had a history of vertigo, which is disease of the body, and could have contributed to the fall. The medical examiner did not document the status of this condition and there are no past medical records available for review to determine if this condition contributed to death. This condition would not have been expected to result in death in and of itself; therefore, alcohol intoxication would have been expected to contribute to death, as detailed above, in this instance also.

Marnie Webb, RN, Sr. CC
7/20/18

**BLAKEMAN LAW**

**611 Wilshire Blvd., Ste. 1208**
**Los Angeles, California 90017**

*Life Insurance, and financial elder abuse litigation*

**Phone: 213-629-9922**
**Fax:  213-232-3230**
**web: www.lifeinsurance-law.com**

September 28, 2018

<u>**Via Facsimile 800-447-2498**</u>
Unum
Group Life/Special Risk Benefits
PO Box 100158
Columbia, SC 29202-3158

Attention: Kristi-Lee Staples

> **Re:   Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

Dear Ms. Staples:

On September 6, 2018, I faxed a letter of representation regarding the above-referenced matter and requested copies of the Trust Document (commonly known as the "Plan Document"), Summary Plan Description (SPD) (and any amendments thereto since the inception of the Plan), and Form 5500.

I also requested information as to when and manner in which the SPD and amendments, if any, were provided to the Blue Scope employees.

To date, I have received no response to those requests.

This morning, I called Unum to follow up. I was told you were the person in charge of this claim, but that you were unavailable and would call me back. You called back during my lunch hour and left a message, but you did not leave your extension number. When I tried to return your call, the voice response system informed me there would be a 15-minute wait to speak with a representative. I was on hold for over 17 minutes when I gave up. I then called back and left a callback number, but no one called me back.

I want you to understand I consider this to be a serious matter and I expect your company to treat it as such. Your failure to respond to my initial request for over three weeks and the fact that I am unable to reach you with reasonable efforts is very frustrating.

## EXHIBIT 8

At this point, we have been delayed considerably in filing the appeal we intend to file to Unum's denial of this claim, and we are requesting additional time for the appeal to compensate for this delay.

I look forward to your prompt reply to these requests.

BLAKEMAN LAW

_____
Benjamin Blakeman

cc: Gary Williams

| To: | **BENJAMIN BLAKEMAN** |
| | **BLAKEMAN LAW** |
| | **8383 WILSHIRE BLVD STE 510** |
| | **BEVERLY HILLS, CA 90211** |

| Fax: | **(213) 232-3230** |
| Re: | **Kathy Williams** | **# 14865967** |

| From: | **Maureen Turner** |
| Address: | Appeals Unit |
| | PO Box 9548 |
| | Portland, ME 04104-5058 |

| Fax: | 207-575-2354 | Phone: | **1-800-858-6843** |
| Number of Pages: | **2** | Date: | **October 3, 2018** |

**NOTICE REGARDING CONFIDENTIAL COMMUNICATION** – The information provided in this FAX is intended only for the addressee named above. The contents of this FAX and its attachments may include proprietary or otherwise privileged information and are considered private and confidential. If you are not the intended recipient of the FAX, please promptly deliver the FAX to the intended recipient and do not leave it in a location where it can be seen by others. You are also hereby notified that any other use, dissemination, distribution or reproduction of this information is strictly prohibited. If you received this FAX in error, please immediately notify the sender to determine the best means to resolve the situation.

**EXHIBIT 9**

*Claimant Name: Kathy  Williams      Claim #:  14865967*

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: 1-800-858-6843
Fax: 207-575-2354
www.unum.com



October 3, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:   Williams, Kathy
      Claim Number:      14865967
      Policy Number:     382480
      Unum Life Insurance Company of America

Dear Mr. Blakeman:

Thank you for sending us your letter dated September 28, 2018, stating that you disagree with the decision that has been made on the dependent Group Accidental Death Insurance claim submitted by Gary Williams for his wife Kathy Williams. In your letter, you outlined your intent to appeal that decision.

The decision letter dated July 24, 2018, outlined the process required to request an appeal. You will need to submit a written letter of appeal outlining the basis of your disagreement. Please include any additional information you would like considered with your letter of appeal. The timeframe for requesting an appeal is 90 days from the date your client received our decision letter or by November 01, 2018.

Mr. Blakeman, if you have questions about this claim, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

12.42-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy  Williams       Claim #:   14865967



OUR **PEOPLE**
OUR STRENGTH
*Strong benefits for employees*



BLUESCOPE

# 2018

BlueScope

# Benefits Guide

Look inside this guide for
helpful information about your
BlueScope Benefits.

**EXHIBIT 10**



Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000554

# Life and Accident Insurance

Life and accident insurance are an important part of your financial security, especially if others depend on you for support. BlueScope offers several insurance benefits through UNUM to help protect your family from financial hardship if you become injured in an accident, become terminally ill or die.

## Basic Life and AD&D Insurance

Life insurance pays your beneficiary if you die. AD&D insurance pays your beneficiary if you are seriously injured or die as a result of an accident. The company will provide Basic Life and Basic AD&D coverage up to 1x your annual salary for both benefits.

## Voluntary Life and AD&D Insurance

For additional income protection, you may choose to buy Voluntary Life Insurance and AD&D Insurance for yourself, your spouse and/or dependent children.

### Voluntary Employee Life Coverage

You may elect coverage for yourself at the following levels, up to a combined maximum of $1,000,000 for both Basic and Voluntary coverage:

- 1 x annual salary
- 2 x annual salary
- 3 x annual salary
- 4 x annual salary

### Voluntary Spouse Life Coverage

You may purchase Voluntary Spouse Life coverage in increments of $5,000. Your Spouse Life coverage may not exceed your combined Basic and Voluntary Life coverage.

### Voluntary Dependent Child(ren) Life Coverage

This coverage option provides a benefit of $10,000 for each of your dependent children. You do not need to elect Voluntary Employee Life Coverage to purchase Voluntary Dependent Child(ren) Life coverage.

### Voluntary Employee or Family AD&D Coverage

You may elect coverage for yourself or for yourself and your family members in increments of $25,000 up to a maximum of $600,000. If you elect the family option, the benefits for your family members are as follows:

- Spouse: 60% of the amount you elect for yourself
- Child(ren): 20% of the amount you elect for yourself for each dependent child

12



**EVIDENCE OF INSURABILITY**

An increase in voluntary life coverage requires completion of Evidence of Insurability (EOI).

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000555

## BLAKEMAN LAW



8383 Wilshire Blvd., Ste. 510
Beverly Hills, California 90211

*Life Insurance, investment, and financial
elder abuse litigation*

Phone: 213-629-9922
Fax:    213-232-3230
email: ben@lifeinsurance-law.com

**October 9, 2018**

<u>Via Email to: amy.hughes@bluescopesteel.com</u>
Amy Hughes
Director of Compensation
North America Group Office Human Resources
BlueScope Steel North America
1540 Genessee Street
Kansas City, MO 64102

      Re: Claim No. 14865967
      Policy No. 382480
      Participant: Gary L. Williams
      Insured: Kathy Rae Williams

Dear Ms. Hughes:

      First, let me thank you for the courtesy you demonstrated by returning my call and by the frankness and openness you displayed in our conversation. This letter is to follow up on the points we discussed relating to the accidental death plan for Blue Scope Steel ("Blue Scope") employees as you requested.

      The main issue I raised with you is that I believe Blue Scope's Employee Benefit Plan does not comply with the Employee Retirement Income Security Act (ERISA) as I interpret its provisions. As I understand it, the only document directly disseminated to employees that relates to the benefits for which they are eligible is the Benefit Guide. That document describes only the benefits of the Accidental Death and Dismemberment (ADD) plan. It does not list any of the exclusions, nor does it describe the administration of the plan.

      You indicated that the Summary Plan Description (SPD) was available online. I received a copy of that document from Unum Insurance Company which underwrote the ADD plan.

      As I pointed out to you in our telephone conversation, that document is 58 pages in length, and is virtually identical to the policy itself. It has a table of contents that does not refer to pages, but only to sections of the policy. Therefore, I argued, it is not fair for the company to expect employees to read or to be able to understand the benefits or

# EXHIBIT 11

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

limitations of this plan. You asserted that the company could not be expected to provide every detail of every benefit in its benefit manual.

However, ERISA imposes a "comprehensive set of 'reporting and disclosure' requirements," which is part of "an elaborate scheme ... for enabling beneficiaries to learn their rights and obligations at any time." *Curtiss-Wright Corp. v. Schoonejongen*, 514 US 73, at 83, 115 S.Ct., at 1230; see §§ 101-111, 29 U.S.C. §§ 1021-1031. What I would like Blue Scope to consider is whether your company complied with those requirements in this case.

Under 29 U.S.C.A. § 1021, employers are required to provide:

**(a) Summary plan description and information to be furnished to participants and beneficiaries**

The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title *to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan-*

**(1)** *a summary plan description* described in section 1022(a)(1) of this title; and
**(2)** the information described in subsection (f) and sections 1024(b)(3) and 1025(a) and (c) of this title.

29 U.S.C.A. § 1022 provides:

**(a)** A *summary plan description* of any employee benefit plan *shall be furnished* to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection *(b), shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.* A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title. [Italics and boldface added]

**(b)** The summary plan description shall contain the following information: The name and type of administration of the plan; in the case of a group health plan (as defined in section 1191b(a)(1) of this title), whether a health insurance issuer (as defined in section 1191b(b)(2) of this title) is responsible for the financing or administration (including payment of claims) of the plan and (if so) the name and address of such issuer; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the

UA-CL-AD&D-000557

administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title), and if the employer so elects for purposes of complying with section 1181(f)(3)(B)(i) of this title, the model notice applicable to the State in which the participants and beneficiaries reside.

29 U.S.C.A. § 1024 provides in relevant part:

"**(b) Publication of summary plan description and annual report to participants and beneficiaries of plan**

Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

**(1)** The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title--

**(A)** within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or
**(B)** if later, within 120 days after the plan becomes subject to this part."

The document provided to me and identified as the SPD was never sent to my client or his wife. Whether making a document available online to plan participants constitutes compliance with the statutory requirement that the plan administrator "furnish" the document is highly questionable. Much more important, however, is whether the *contents of the document* comply with the requirements of the statute.

UA-CL-AD&D-000558

The SPD is almost identical to the insurance policy itself. It is not a "summary". It is not "*written in a manner calculated to be understood by the average plan participant,*" nor does it suffice in my opinion to "*reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.*" It is a very lengthy electronic document with no bookmarks, with no usable table of contents, which must be searched page by page, to ferret out the provisions of the policy. Even the most determined plan participant would have a very tough time wading through it, let alone understanding what their rights and obligations are under the plan.

In addition, the SPD does not appear to contain all the information required by 29 U.S.C.A § 1022 (b). In short, I believe a court would conclude that this document fails to comply with the requirements of ERISA.

One case that addressed a similar situation was *Sunderlin v. First Reliance Standard Life Ins. Co.*, (W.D.N.Y.2002) 235 F.Supp.2d 222. In that case, a copy of an insurance policy that the plan sponsor provided to a participant in a long-term disability plan that was governed by ERISA, pursuant to participant's request for summary plan description (SPD), was not a SPD under ERISA; the policy did not contain the name of the plan, the name or address of person designated to receive service of legal process, or the name of the plan administrator, it did not mention or describe any remedies for seeking redress of denied claims, and the policy was not written in clear, easy-to-read manner.

What all this means, from my client's point of view, is that he and his wife did *not* have notice of the exclusions listed in the Accidental Death plan. Based on the documents he *did* receive (the Benefit Guide), he had a completely reasonable expectation that his wife's accidental death would be a covered loss. If he had been properly informed of the policy's limitations, he would have sought a policy that did not contain such restrictive provisions, and his claim would not have been denied.

This is by no means to be construed as an admission that the denial by Unum of this claim was justified. On the contrary, we believe that the denial of this claim was unjustified and was an abuse of discretion. The fact remains, however, that in the absence of such a broadly worded exclusion in the policy, there would have not have been the slightest excuse to deny this claim.

The failure of the plan sponsor to provide compliant SPDs for the benefits is a breach of the plan sponsor's fiduciary obligations.

In order to redress the plan sponsor's failure to provide an SPD in compliance with the statute, the United States Supreme Court has held that actions for fiduciary breach under §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2) (1988 ed.), the provisions of the Employee Retirement Income Security Act of 1974 (ERISA or Act) specifically designed for civil enforcement of fiduciary duties, must "be brought in a representative capacity on behalf of the plan as a whole." 473 U.S., at 142, n. 9, 105 S.Ct., at 3090, n. 9. *See also,*

UA-CL-AD&D-000559

dissenting opinion of Justice Thomas in *Varity Corp. v. Howe* (1996) 516 U.S. 489, 516 [116 S.Ct. 1065, 1079, 134 L.Ed.2d 130].

We would like to avoid having to bring such an action, and I assume Blue Scope would like to avoid the expense of defending one. Therefore, in accordance with our conversation, I would ask that the Blue Scope voluntarily pay the benefit Mr. Williams was reasonably expecting to receive, which was $360,000.

Please let me know your position on this as soon as possible, as we are facing a November 1, 2018 deadline to notify the carrier we are appealing the denial.

Thank you in advance for your thoughtful consideration of the issues set forth herein. Nothing contained in this letter is to be deemed a waiver of any of my client's rights, all of which are expressly reserved.

BLAKEMAN LAW

_____
**Benjamin Blakeman**

cc: Gary L. Williams

Annotations for 2018110207170138FA5F

--------------------------------------------------------------------------------
Created by: UP\#PS01MT on 12/04/2018 12:46:22
Last Updated: 12/04/2018 12:46:22
Page: 1
Note: pgs 1-64, denial ltr & policy
--------------------------------------------------------------------------------
Created by: UP\#PS01MT on 12/04/2018 12:46:22
Last Updated: 12/04/2018 12:46:22
Page: 65
Note: pg 65, CDC
--------------------------------------------------------------------------------
Created by: UP\#PS01MT on 12/04/2018 12:46:22
Last Updated: 12/04/2018 12:46:22
Page: 66
Note: pgs 66-68, ME investigative report
--------------------------------------------------------------------------------
Created by: UP\#PS01MT on 12/04/2018 12:46:22
Last Updated: 12/04/2018 12:46:22
Page: 69
Note: pgs 69-72, toxicology report
--------------------------------------------------------------------------------
Created by: UP\#PS01MT on 12/04/2018 12:46:22
Last Updated: 12/04/2018 12:46:22
Page: 73
Note: pgs 73-80, misc
--------------------------------------------------------------------------------
Created by: UP\#PS01MT on 12/04/2018 12:46:22
Last Updated: 12/04/2018 12:46:22
Page: 81
Note: pgs 81-82, benefits guide
--------------------------------------------------------------------------------
Created by: UP\#PS01MT on 12/04/2018 12:46:22
Last Updated: 12/04/2018 12:46:22
Page: 83
Note: pgs 83-87, atty ltr to ER

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000561

```
                          Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018110207181956FA5F

Entry Date: 11/02/2018 07:18:20

Received Date: 11/02/2018

Date Added to Claim: 11/02/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal- referenced legal cases

Work Notes:
```

739 F.3d 1176
United States Court of Appeals,
Eighth Circuit.

Sean NICHOLS, Plaintiff–Appellee
v.
UNICARE LIFE AND HEALTH
INSURANCE COMPANY, Defendant
Acxiom Corporation Life and
Accidental Death and Dismemberment
Insurance Plan, Defendant–Appellant.
Sean Nichols, Plaintiff–Appellee
v.
Unicare Life and Health Insurance
Company, Defendant–Appellant
Acxiom Corporation Life and
Accidental Death and Dismemberment
Insurance Plan, Defendant.

Nos. 12–4047, 13–1033.
|
Submitted: Sept. 25, 2013.
|
Filed: Jan. 16, 2014.

## Synopsis

**Background:** Husband of participant in accidental death and dismemberment insurance plan commenced action against underwriter of plan that also served as ERISA claims administrator, alleging wrongful denial of claim. The United States District Court for the Eastern District of Arkansas, Susan Webber Wright, J., 2012 WL 4060309, granted judgment for plaintiff, and awarded attorney fees to him, 2012 WL 5931682. Defendant appealed.

**Holdings:** The Court of Appeals, Beam, Circuit Judge, held that:

[1] denial of benefits was subject to de novo review;

[2] death of participant from mixed prescription drug intoxication was accidental;

[3] intoxication exclusion did not apply; and

[4] district court did not abuse its discretion in finding that attorney fee was warranted.

Affirmed.

West Headnotes (11)

**[1]    Labor and Employment**
      Effect of administrator's conflict of interest

When a conflict of interest exists because the ERISA plan administrator is both the decision-maker and the insurer, a court takes that conflict into account and gives it some weight in the abuse-of-discretion calculation. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

Cases that cite this headnote

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000563

**[2]    Labor and Employment**
⟜ De novo

Denial of benefits under accidental death and dismemberment insurance plan, was subject to de novo review, where claims provisions stated that "[a]ny benefits due under this plan shall be due once we have received proper, written proof of loss, together with such reasonably necessary information we may require to determine our obligation"; even if enrollment provision conferred discretion on administrator, decision challenged did not have anything to do with enrollment in plan, plan's language in claims section was lacking discretion-granting words, and there was not general grant of discretionary authority to administrator to construe all plan terms. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

1 Cases that cite this headnote

**[3]    Insurance**
⟜ Intoxication and substance abuse;overdose

**Labor and Employment**
⟜ Life and accidental death or dismemberment plans

Death of participant from mixed prescription drug intoxication was accidental, and thus payment of benefits under ERISA accidental death insurance plan was warranted absent applicable exclusion; although 12 hydrocodone pills were missing on night of her death, there is no information about when that prescription was filled, objective evidence tended to show that participant had been ingesting combination of prescribed medication for some time, autopsy report listed manner of death as "could not be determined," and evidence relevant to participant's state of mind, her relationships with family, and upcoming scheduled surgery otherwise supported conclusion that death was accidental. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

Cases that cite this headnote

**[4]    Insurance**
⟜ What constitutes accident

**Labor and Employment**
⟜ Life and accidental death or dismemberment plans

On a claim for benefits under an accidental death and dismemberment insurance plan that is subject to ERISA, an event is an accident if the decedent did not subjectively expect to suffer an injury similar in type or kind to that suffered and the suppositions

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000564

underlying that expectation were reasonable. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[5] **Insurance**
 What constitutes accident

**Labor and Employment**
 Life and accidental death or dismemberment plans

On a claim for benefits under an accidental death and dismemberment insurance plan that is subject to ERISA, the determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences; if the evidence is insufficient to determine the decedent's subjective expectation, the question is then whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[6] **Insurance**
 Intoxication and substance abuse;overdose

**Labor and Employment**
 Life and accidental death or dismemberment plans

Reasonable plan participant would have understood that intoxication exclusion under ERISA accidental death insurance plan was not intended to apply to situations where immediate cause of death was ingestion of lethal mixture of drugs that had been prescribed for use by decedent, and thus intoxication exclusion did not apply to death of participant from mixed prescription drug intoxication, and payment of benefits under accidental death insurance plan was warranted under ERISA, where Arkansas law applied and Arkansas defined intoxication with reference only to public offenses of drunk driving and public intoxication. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

2 Cases that cite this headnote

[7] **Insurance**
 Burden of proof

**Labor and Employment**
 Presumptions and burden of proof

Under ERISA, an insurer has the burden of proving that an

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000565

exclusion to coverage applies. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

2 Cases that cite this headnote

[8] **Insurance**

Reasonable persons

**Labor and Employment**

Plain meaning

Under ERISA, a court views the common and ordinary meaning of the insurance policy language as a reasonable person in the position of the plan participant would have understood the words to mean. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[9] **Labor and Employment**

Factors considered in general

When deciding whether to award fees in an ERISA case, a court considers (1) degree of bad faith; (2) ability to pay; (3) deterrence; (4) significance of the legal question; and (5) relative merits of the positions. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

3 Cases that cite this headnote

[10] **Labor and Employment**

Review

A district court's decision of whether to award fees in an ERISA case is reviewed for an abuse of discretion. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

2 Cases that cite this headnote

[11] **Labor and Employment**

Actions to recover benefits

District court did not abuse its discretion in finding that attorney fee was warranted in action brought by husband of beneficiary under accidental death and dismemberment insurance plan against underwriter of plan that also served as ERISA claims administrator, alleging wrongful denial of claim. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*1179** Thomas F.A. Hetherington, argued, Houston TX, (Troy A. Price, Daniel L. Herrington, Little Rock, AR, Blaire A. Bruns, Houston, TX, on the brief), for appellant.

Denise Reid Hoggard, argued, Little Rock, AR, (Leon Marks, Little Rock, AR, on the brief), for appellee.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 4

UA-CL-AD&D-000566

Before WOLLMAN, BEAM, and SMITH, Circuit Judges.

## Opinion

BEAM, Circuit Judge.

UniCare Life and Health Insurance Company ("Unicare") appeals the district court's[1] grant of summary judgment in favor of Sean Nichols in this Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq. case. We affirm.

[1]  The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

## I. BACKGROUND

Nichols is the surviving spouse of Dana Nichols. Dana was employed by Acxiom Corporation, and she was insured under the Acxiom Corporation Life and Accidental Death and Dismemberment Insurance Plan (the "plan"). The plan is funded by a policy underwritten by UniCare, and UniCare also serves as the claims administrator.

On May 3, 2010, Dana was found face down in bed, and upon being transported to a nearby hospital, she was pronounced dead. The autopsy report indicated that her manner of death (natural, accidental, etc.) "could not be determined," and her cause of death was mixed drug intoxication. The autopsy reported that "[t]oxicology detected multiple drugs in the blood to include citalopram/ escitalopram, hydrocodone, oxycodone and loratadine. The atropine detected is the result of terminal medical attention. No alcohol was detected." An insurance record documenting Dana's prescription claims during the last twelve months of her life show the following prescriptions and fill dates: Endocet 30–day prescription last filled on April 27, 2010; Ambien 30–day prescription last filled on April 3, 2010; levothyroxine, 30–day prescription last filled on April 3, 2010; apap/ codeine 2–day prescription last filled on December 29, 2009; diazepam 2–day prescription last filled on December 29, 2009; and sertraline, 30– day prescription last filled on October 12, 2009. Emergency personnel responding at the scene also reported a prescription bottle for hydrocodone on the night stand with 12 pills missing from it. As we read the administrative record, there is no information about when this prescription was filled.[2]

[2]  The district court noted that Dana's March 2010 car accident had exacerbated her back pain, and further observed that the insurer's list of medications in the administrative record would not include prescriptions filled without a corresponding medical insurance claim.

Nichols filed a claim for accidental death benefits under the plan. By letter dated February 9, 2011, UniCare denied Nichols' claim, stating that because the cause of death was listed as "could not be determined," it had "no choice" but to deny the claim. Nichols filed an administrative appeal and supplemented the record (which previously consisted only of the autopsy report) with medical and prescription records, as well as letters from himself and *1180 Dana's parents, recounting her recent medical problems and her social history. Nichols recounted that since Dana's March 2010 car

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000567

accident, she had difficulty sleeping, and was prescribed Ambien. He noted that while on Ambien, Dana had been sleepwalking throughout the house and would even eat something and not remember it in the morning. Dana's mother recounted that Dana was happily married with grown children; that Dana's son was newly married; and Dana's daughter was set to begin nursing school. Dana's mother also recounted that Dana was looking forward to a scheduled lap band surgery to assist her with weight loss and ease her back pain from the car accidents and that she was generally looking forward to the future. The letter from Dana's father reiterated Nichols' statements about Dana's sleepwalking behavior while on Ambien and her general good outlook for the future.

By letter dated September 2, 2011, UniCare denied Nichols' appeal, this time stating two reasons for the adverse decision: (1) the manner of death was listed on the death certificate as "could not be determined," and (2) the plan excludes benefits for death caused by intoxication. Nichols filed the instant action in district court pursuant to ERISA. Upon Nichols' motion for summary judgment, the district court, applying a de novo standard of review, found that Nichols was entitled to benefits because the cause of Dana's death was more likely than not an accident. The district court rejected UniCare's argument that its analysis of whether Dana's death was an accident satisfied the standard set forth in *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir.1990).

UniCare argued to the district court that under *Wickman,* Dana's consumption of numerous medications was an intentional act for which she would have subjectively expected death to be a highly likely outcome. In this regard, UniCare contended that since Dana had been consuming prescription medications for at least a year, a reasonable interpretation of the evidence was that Dana had established a tolerance to the medications she had been consuming in combination for years, and that she must have taken more than the prescribed dosages on the date of her death. The district court rejected this argument and noted that UniCare's analysis was flawed because it "provides no indication that UniCare attempted to ascertain Dana Nichols's subjective expectations or whether a reasonable person in her position would have viewed her death as highly likely to occur." J.A. at 32.

With regard to the intoxication exclusion, the district court concluded that the exclusion was not intended to cover Dana's situation. Because the plan defines "intoxicated" as "legally intoxicated as determined by the laws of the jurisdiction where the accident occurred," the district court found that a reasonable person in the position of a plan participant would understand that the exclusion for intoxication was intended to apply to death caused by committing acts, such as driving, while intoxicated, not to situations where the immediate cause of death is ingestion of a lethal mixture of prescription drugs. The district court cited *Sheehan v. Guardian Life Insurance Co.,* 372 F.3d 962, 967 (8th

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000568

Cir.2004) (finding that exclusion for loss resulting from being under the influence of a controlled substance was "intended to apply to death caused by, for example, driving while intoxicated, not to the accidental ingestion of a controlled substance"), in support of its conclusion. J.A. at 33–34.

UniCare appeals and argues that the standard of review should be abuse of discretion; that the district court impermissibly **\*1181** shifted the burden from Nichols having to prove entitlement to benefits to UniCare having to disprove Nichols' entitlement; and that the district court erroneously concluded that the intoxication exclusion did not preclude an award of accidental death benefits. UniCare also challenges the $22,220 attorney fee awarded to Nichols.

## II. DISCUSSION

### A. Standard of Review

[1] ERISA provides that an employee may bring a civil action to recover benefits due to him under the terms of an employee welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B). Although the statute does not specify the scope of judicial review applicable to ERISA claims, in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that a denial of benefits challenged under ERISA is subject to de novo review unless the terms of the benefit plan give the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. When a plan confers such discretionary authority,

the administrator's or fiduciary's decision is given deference and reviewed under an abuse-of-discretion standard. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). However, when a conflict of interest exists because the plan administrator is both the decision-maker and the insurer, "we take that conflict into account and give it some weight in the abuse-of-discretion calculation." *Carrow v. Standard Ins. Co.,* 664 F.3d 1254, 1259 (8th Cir.2012).

[2] The district court found that the plan did not confer discretionary authority on UniCare as the plan did not contain the necessary discretionary language. The district court focused on the language in the claims provisions, specifically the following: "[a]ny benefits due under this plan shall be due once we have received proper, written proof of loss, together with such reasonably necessary information we may require to determine our obligation." We have previously found that similar language did *not* confer discretionary authority on the administrator. *See Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan,* 476 F.3d 626, 629 (8th Cir.2007) (noting that policy language stating that benefits would be paid when "we determine that proof ... is satisfactory" was ambiguous and did not confer discretion on plan administrator).

UniCare, on the other hand, points us to *Ferrari v. Teachers Insurance and Annuity Ass'n,* 278 F.3d 801 (8th Cir.2002). In *Ferrari,* the claimant was initially awarded disability benefits, and in order to keep

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000569

receiving them on a long-term basis, was required to submit written proof of continued total disability. We noted that the plan language "that the employee must provide written proof of continued total disability at reasonable intervals to be determined by TIAA and that such proof must be satisfactory to TIAA" sufficiently conferred discretion on the administrator. *Id.* at 806. UniCare argues that its plan has the same language, albeit in the section addressing *enrollment* in the policy, not in the section addressing claims administration. UniCare contends that discretionary language anywhere in the plan confers upon it the discretion necessary to obtain an abuse-of-discretion standard of review for denial of claims. Nichols, on the other hand, contends that the discretionary language must address claims administration or must grant general discretion to construe plan terms in order for the plan to obtain an abuse-of-discretion standard of review.

We agree with Nichols that the plan does not grant UniCare discretion to determine eligibility for benefits or to generally **\*1182** construe the terms of the plan. *Ferrari* does not bear the weight UniCare places on it because the language from the plan in that case gave the administrator the discretion to make decisions about "continued total disability claims"—and the viability of a "continued total disability claim" was the decision being challenged on appeal. *Id.* at 805–06. In the instant case, the decision being challenged on appeal has nothing to do with Dana's enrollment in the plan. The challenged decision is the administrator's

denial of a claim for accidental death benefits. The plan's language in the claims section, which is lacking discretion-granting words according to our case law, *see Rittenhouse,* 476 F.3d at 629, is the most relevant. Nor is there a general grant of discretionary authority to UniCare to construe all plan terms. Accordingly, we hold that the district court correctly applied de novo review.[3]

3    Even if we were to hold that the plan granted UniCare discretion, the financial conflict of interest that exists in this case would be taken into account, somewhat ameliorating the abuse-of-discretion standard. *See Carrow,* 664 F.3d at 1259 (holding that when a conflict of interest exists because the plan administrator is both the decision-maker and the insurer, "we take that conflict into account and give it some weight in the abuse-of-discretion calculation").

### B. Accidental Death Claim

[3] Nichols argues UniCare erred in denying his claim for accidental death benefits with the stated rationale that the autopsy report listed the manner of death as "could not be determined." Nichols submitted proof of his claim for accidental benefits in the form of the death certificate, autopsy report, insurance medical records, prescriptions records, and evidence relevant to Dana's state of mind, her relationships with family, and an upcoming scheduled surgery.

[4] [5] As noted, in front of the district court, UniCare advanced the *Wickman* test as the vehicle for determining whether Dana's death was an accident, and asserted that the facts of this case, as placed in the *Wickman* rubric, indicated that the incident was *not* an accident. Under *Wickman,* an event is an accident if the

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000570

decedent did not subjectively expect to suffer "an injury similar in type or kind to that suffered" and the suppositions underlying that expectation were reasonable. 908 F.2d at 1088. "The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." *Id.* If the evidence is insufficient to determine the decedent's subjective expectation, the question is then whether "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.*

UniCare contends that there is insufficient subjective evidence of Dana's expectations, and the objective evidence suggests that Dana's consumption of numerous medications was an intentional act for which a reasonable person would have expected death as the outcome. UniCare surmises that since Dana had been taking this same combination of medications for several months, she became tolerant to that level of medicine and subsequently took more than the prescribed dosage on the night she died. UniCare argues that, objectively speaking, Dana would have viewed death as highly likely to occur in such a situation. This argument is strikingly similar to the one made by the plan administrator/insurer in the recent case of *McClelland v. Life Insurance Company of North America,* 679 F.3d 755 (8th Cir.2012).

**\*1183** In *McClelland,* under the deferential abuse-of-discretion standard of review, we held that the insurance company erroneously denied accidental death benefits to the widow of the insured decedent who died while driving a motorcycle at high speeds with an elevated blood alcohol level. As "evidence" of the deceased's state of mind, the insurance company offered that McClelland had been educated on the dangers of drinking and driving and should have known that death was highly likely to occur in his circumstances. We held that this reasoning was an abuse of the insurer's discretion, and a misapplication of the agreed-upon standard set forth in *Wickman,* because better and more concrete evidence of McClelland's subjective state of mind on the morning of the accident (submitted in the form of affidavits from family, friends and witnesses on the day of the accident), was that he had no intention to die and certainly did not think death was likely to occur as he went on a social mid-Saturday morning motorcycle ride. *Id.* at 760–61.

Like the insurance company in *McClelland,* UniCare ignores the subjective evidence submitted by Nichols, and instead makes leaps to get to the "objective" conclusion it desires. There was no evidence in the record that Dana had developed a tolerance to her medications or that she took all 12 of the missing hydrocodone pills on the night of her death. No evidence suggests that Dana was suicidal. Similar to the motorcycle driver in *McClelland* who had been successfully weaving in and out of traffic at a high rate of speed for over six miles and therefore

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000571

did not expect to die that day, Dana had been taking this combination of prescribed medications, as admitted by UniCare, for some period of time. There is no evidence whatsoever that Dana intended to kill herself or thought it likely she would die on May 3, 2010. The subjective evidence, in the form of letters and statements from her husband and parents, suggests otherwise. To the extent that her subjective mind set could still be viewed as uncertain, the objective evidence tended to show that Dana had been ingesting a combination of prescribed medication for some time, and under these circumstances, a reasonable person with Dana's characteristics would not have viewed death as highly likely to occur. Nor is there a medical determination that the death was "not accidental" as alleged by UniCare. Dana's death falls squarely within the meaning of accident, a word not otherwise defined in the policy, and as viewed under the *Wickman* mandate to consider the situation from the "perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." 908 F.2d at 1088. As the district court aptly stated, "[i]n sum, all of the evidence indicates that Dana's death was the unexpected result of ingesting prescribed medications."[4] J.A. **1184 at 33. Accordingly, due to all of the foregoing, we find that the district court correctly found that UniCare erred in denying coverage for accidental death benefits.

[4]     Our conclusion is bolstered by the presumption against suicide that the Eleventh Circuit has recognized in the context of an ERISA case, holding that "[b]oth the negative presumption against

suicide and the affirmative presumption of accidental death" advance ERISA's goals of protecting the interests of plan beneficiaries and uniformity in plan administration. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir.1998). The *Horton* court held that these goals were furthered by providing "uniform rules to resolve coverage questions where the evidence of how the insured died is inconclusive." *Id.* The court also noted that a majority of states recognize the presumption against suicide, *id.*, and Arkansas is one of those states. *See Wood v. Valley Forge Life Ins. Co.*, 478 F.3d 941, 947 (8th Cir.2007) (recognizing the Arkansas "strong" presumption against suicide). There would be nothing remarkable about applying such a presumption in an uncertain-cause-of-death ERISA case, as ERISA plan administrators are bound to follow federal common law, as informed by state common law, *Shipley v. Ark. Blue Cross & Blue Shield*, 333 F.3d 898, 902 (8th Cir.2003). However, we need not even rely on the presumption because as noted above, Nichols has met his burden to establish entitlement to Dana's accidental death benefits.

## C. Intoxication Exclusion

[6]   [7]   [8]   UniCare's final argument is that it can avoid paying benefits due to the plan's intoxication exclusion. The exclusion states that no benefit will be paid for a death that results from being intoxicated. "Intoxicated" is defined in the plan as "legally intoxicated as determined by the laws of the jurisdiction where the accident occurred." Because it is an exception to coverage, UniCare has the burden of proving that the exclusion applies. *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir.1992). We agree with the district court that UniCare did not meet this burden. Arkansas law defines intoxication with reference only to the public offenses of drunk driving and public intoxication. *Jones Truck Lines, Inc. v. Letsch*, 245 Ark. 982, 436 S.W.2d 282, 284 (1969). Dana's death involved neither. We view the common and ordinary meaning of the policy language as a reasonable person in the position of the

*Claimant Name: Kathy   Williams      Claim #:   14865967*

UA-CL-AD&D-000572

plan participant would have understood the words to mean. *Adams v. Cont'l Cas. Co.*, 364 F.3d 952, 954 (8th Cir.2004). A reasonable plan participant would have understood that the plan's intoxication exclusion is intended to apply to death caused by committing acts, such as driving, while intoxicated; not to situations where the immediate cause of death is ingestion of a lethal mixture of drugs that have been prescribed for use by the decedent. *See Sheehan*, 372 F.3d at 967 (finding that exclusion for loss resulting from being under the influence of a controlled substance was "intended to apply to death caused by, for example, driving while intoxicated, not to the accidental ingestion of a controlled substance"). The district court correctly found that UniCare had not proven that the exclusion should be used to deny coverage.

### D. Costs and Fees

**[9]  [10]  [11]**  In a separate order, the district court awarded Nichols filing fees, prejudgment interest and $22,220 in attorney fees. UniCare argues this was an abuse of the district court's discretion. In deciding whether to award fees in ERISA cases, we are guided by the five factors set forth in *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir.1984) (per curiam) ((1) degree of bad faith; (2) ability to pay; (3) deterrence; (4) significance of the legal question; and (5) relative merits of the positions). The district court's decision is reviewed for an abuse of discretion. *Id.* at 495. In analyzing the factors, the district court found that a fee was warranted, and we find that the district court did not abuse its discretion in so deciding. Further, the fee awarded was reasonable.

### III. CONCLUSION

We affirm the district court.

### All Citations

739 F.3d 1176, 57 Employee Benefits Cas. 1689

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*Claimant Name: Kathy  Williams        Claim #:  14865967*

UA-CL-AD&D-000573

549 F.3d 818
United States Court of Appeals,
Tenth Circuit.

Cherilyn KELLOGG, now known as
Cherilyn Worsley, Plaintiff–Appellant,
v.
METROPOLITAN LIFE INSURANCE
CO.; Pfizer Accidental Death
and Dismemberment Insurance
Plan, Defendants–Appellees.

No. 07–4213.
|
Dec. 4, 2008.

## Synopsis

**Background:** Surviving spouse of insured employee who had died from injuries sustained in single-car crash brought Employee Retirement Income Security Act (ERISA) suit against employee benefit plan's accidental death and dismemberment (AD & D) insurer, and against employer/administrator, after insurer denied coverage. The United States District Court for the District of Utah, Dale A. Kimball, J., 2007 WL 2684536, granted summary judgment for insurer, and spouse appealed.

**Holdings:** The Court of Appeals, Brisco, Circuit Judge, held that:

[1] spouse's attorney's letter to insurer constituted appeal of benefits denial within meaning of ERISA;

[2] de novo standard of review applied given insurer's failure to respond to attorney's appeal and information requests;

[3] insurer could not rely on lack of "accident" after relying solely on "physical illness" exclusion in initial benefits denial; and

[4] "physical illness" exclusion did not apply, since skull fracture had caused death.

Reversed and remanded.

West Headnotes (4)

[1] **Labor and Employment**
 ⸙ Filing of claim or appeal; notice to plan

Employee benefit plan beneficiary's attorney's letter to plan's accidental death and dismemberment (AD & D) insurer following denial of claim, stating that beneficiary was "appealing the decision to deny payment of benefits," constituted administrative appeal of benefits denial that triggered insurer's ERISA responsibility to provide attorney with copy of latest summary plan description (SPD) and plan documentation, and, ultimately, to issue decision on appeal, regardless of letter's statement that attorney was "not in a position to intelligently appeal [the] denial" because of

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000574

lack of knowledge of basis for it. Employee Retirement Income Security Act of 1974, § 104(b)(4), 29 U.S.C.A. § 1024(b)(4); 29 C.F.R. § 2560.503–1(i)(1)(i), (i)(4).

31 Cases that cite this headnote

**[2] Labor and Employment**
⊱ De novo

De novo standard of review applied on employee benefit plan beneficiary's ERISA challenge to plan's accidental death and dismemberment (AD & D) insurer's denial of benefits, where insurer had failed altogether to respond to beneficiary's attorney's appeal of initial denial and request for documentation. Employee Retirement Income Security Act of 1974, § 104(b)(4), 29 U.S.C.A. § 1024(b)(4); 29 C.F.R. § 2560.503–1.

23 Cases that cite this headnote

**[3] Insurance**
⊱ Assertion of other ground of forfeiture or defense
**Labor and Employment**
⊱ Actions to Recover Benefits

Employee benefit plan's accidental death and dismemberment (AD & D) insurer, which had relied solely on AD & D policy's "physical illness" exclusion in its letter denying beneficiary's benefits claim, could not, in beneficiary's

subsequent ERISA challenge to that denial, instead base its denial on lack of "accident." Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

10 Cases that cite this headnote

**[4] Insurance**
⊱ Diseases or Conditions; Medical Treatment
**Labor and Employment**
⊱ Life and accidental death or dismemberment plans

"Loss caused or contributed to by physical illness" exclusion of group accidental death and dismemberment (AD & D) insurance policy did not apply to bar coverage, in beneficiary's ERISA action against insurer, for fatal injuries sustained by insured employee in single-car crash, even though witness had reported that insured had appeared to be having "seizure" before crash; although physical illness may have caused or contributed to crash, skull fracture had caused death. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

20 Cases that cite this headnote

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000575

## Attorneys and Law Firms

**\*819** Brian S. King (James L. Harris, Jr. with him on the briefs), Salt Lake City, UT, for Plaintiff–Appellant.

Jack M. Englert, Jr. (James L. Barnett, Holland & Hart LLP, Salt Lake City, UT, with him on the brief), of Holland & Hart LLP, Greenwood Village, CO, for Defendants–Appellees.

Before BRISCOE, SEYMOUR, and PORFILIO, Circuit Judges.

## Opinion

BRISCOE, Circuit Judge.

Plaintiff Cherilyn Kellogg brought this action against defendants Metropolitan Life Insurance Company and Pfizer Accidental Death and Dismemberment Insurance Plan, claiming she was wrongly denied accidental death and dismemberment benefits under an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001–1461. Cherilyn Kellogg's deceased husband, Brad Kellogg, was a participant in the plan at issue. On the parties' cross-motions for summary judgment, the district court granted judgment in favor of the defendants. Kellogg now appeals the district court's decision. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court's grant of summary judgment in favor of defendants and remand with directions to enter summary judgment in favor of Kellogg. We also direct the district court, on remand, to consider Kellogg's requests for fees and prejudgment interest.

1.

*Brad Kellogg's fatal accident*

On September 6, 2004, Brad Kellogg was driving a 1993 Dodge Caravan eastbound on East Alexander Avenue in Merced, California. He purportedly stopped at a stop sign at the intersection **\*820** of East Alexander Avenue and Parsons Avenue, and then continued eastbound on East Alexander Avenue. As he proceeded eastbound, his minivan veered into the westbound lane, and then into a tree on the north side of East Alexander Avenue. A female resident who observed the crash called 911. Law enforcement and fire officials responded to the scene and found Brad Kellogg "hunched over in the driver's seat" of the minivan, "incoherent and bleeding from his face." App. at 170. After being extracted from his vehicle, Brad Kellogg was transported to a local hospital, where he died.

The woman who observed the crash and called 911 was questioned by a law enforcement officer and stated

that she had seen the vehicle with the subject in it make the stop eastbound on E. Alexander at Parsons. [She] said that once the vehicle had taken off from the stop sign at

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000576

Parsons, that she noticed that the driver appeared to be having a seizure. [She] said that the vehicle then veered into the tree on the northside of E. Alexander. [She] said that she noticed the subject did not even step on his brakes, as she did not see the brake lights, nor did she hear a skid.

*Id.*

On September 10, 2004, the Merced County (California) Sheriff's Department received a toxicology report that indicated that Brad Kellogg, at the time of his death, had detectable levels of five prescription and/or over-the-counter drugs in his system: acetaminophen (2.2mg/L), buproprion (2.29 mg/L), hydrocodone (0.23 mg/L), propoxyphene (0.08 mg/L), and norpropoxyphene (0.12mg/L).

On September 13, 2004, an autopsy report was prepared by a private pathologist for the Merced County Sheriff's Department Coroner's Division. The report's "CASE SUMMARY" section read as follows:

The cause of death in this case is considered to be extensive subarachnoid hemorrhage of the brain secondary to traumatic transverse basilar skull fracture. Post mortem toxicology studies revealed effective levels of acetaminophen,

hydrocodone, propoxyphene, and Norpropoxyphene. Levels of Bupropion far exceed therapeutic levels in this patient. Idiosyncratic reactions of this drug include: numerous neuropsychiatric phenomenon including psychoses, confusion, delusion, hallucinations, psychotic episodes, and paranoia. Whether excessive levels of this drug contributed to this subject's accidental and [sic] death is unknown.

*Id.* at 190.

On January 20, 2005, the Deputy Coroner for Merced County signed a "Physician/Coroner's Amendment." *Id.* at 85. That document indicated that Brad Kellogg suffered a "SUBARACHNOID HEMORRHAGE" and a "BASILAR SKULL FRACTURE" from a "SOLO MOTOR VEHICLE ACCIDENT." *Id.* The document further stated as follows:

THE DECEDENT WAS THE SAFETY BELT RESTRAINED DRIVER AND SOLE OCCUPANT OF A DODGE CARAVAN THAT HE WAS DRIVING EASTBOUND ON ALEXANDER AVENUE. THE

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000577

DECEDENT COMPLETED A STOP AT THE POSTED STOP SIGN AT THE INTERSECTION OF PARSONS AVENUE. HE THEN AGAIN PROCEEDED EASTBOUND AND AT THAT POINT, ACCORDING TO A WITNESS HE APPEARED TO HAVE A SEIZURE, LOST CONTROL OF THE VEHICLE AND RAN HEADON [sic] INTO A TREE LOCATED NEXT TO THE CURB OF THE WESTBOUND LANE OF ALEXANDER. THE DECEDENT *821 HAD A POST MORTEM BLOOD BUPROPION LEVEL OF 2.29 MG/L. THIS DRUG HAS A REPORTED RISK FACTOR OF SEIZURES.

*Id.*

*Brad Kellogg's coverage under the Plan*

At the time of his death, Brad Kellogg was employed by Pfizer Incorporated (Pfizer) as a pharmaceutical sales representative and was a participant in the Pfizer Life Insurance and Accidental Death and Dismemberment (AD & D) Insurance Plans (the Plan), which was an ERISA-regulated employee welfare benefit plan. The Plan automatically provided each participant life insurance coverage equal to two times their annual pay. The Plan further allowed each participant the opportunity to elect additional life insurance coverage and one of ten AD & D insurance coverage options. Brad Kellogg elected to pay for additional life insurance and AD & D coverage in amounts equal to "six times [his] annual pay," or approximately $438,000.00 each. *Id.* at 63.

The AD & D provisions of the Certificate of Insurance provided, in pertinent part, as follows:

> If You sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the Schedule of Benefits, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury.

> Direct and Sole Cause means that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes.

\* \* \*

EXCLUSIONS

We will not pay benefits under this section for any loss caused or contributed to by:

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000578

1. physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity....

*Id.* at 293.

The AD & D provisions of the Summary Plan Description (SPD) stated in similar, but not identical, fashion, that "[i]f you [the participant] die as a result of, and within 12 months after, an accident, your beneficiary will receive 100 percent of your AD & D insurance coverage." *Id.* at 68. The SPD also stated that "losses due to ... physical or mental illness" were excluded from AD & D coverage. *Id.* at 69.

### *Cherilyn Kellogg's claim for life and AD & D benefits*

On February 9, 2005, Kellogg's attorney submitted to Metropolitan Life Insurance Company (MetLife), the claims administrator, a formal claim for life and AD & D benefits under the Plan. On March 8, 2005, MetLife sent a letter to Kellogg's attorney stating that, "[i]n order for [it] to consider the claim for [AD & D] insurance benefits," it "require[d]" a "Copy of the Police Report," a "Copy of the Autopsy Report," a "Copy of the Toxicology Report," and "Newspaper clippings." *Id.* at 116.

On March 25, 2005, MetLife sent a letter to Stephen Morris, a deputy coroner with the Merced County Sheriff's Department, asking for "[a] written statement by

the medical examiner/coroner on their letterhead stating the manner of [Brad Kellogg's] death." *Id.* at 113. On March 30, 2005, Morris sent a letter back to MetLife, on Sheriff's Department letterhead, stating as follows:

Brad Kellogg (DOB 07/12/1968), expired on 09/06/2004 at Mercy Medical Center, Community Campus in the city of Merced in Merced County California.

**\*822** Mr. Kellogg's death is not the result of a homicide or suicide. He died as the result of traumatic injuries sustained in a solo motor vehicle accident. His death is considered to be accidental.

*Id.* at 109.

On May 10, 2005, MetLife approved Kellogg's claim for life insurance benefits under the Plan. On that same date, MetLife sent a letter to Kellogg's attorney addressing the issue of AD & D benefits and stating, in pertinent part:

In order for us to consider the claim for Accidental Death and Dismemberment Accidental insurance benefits, we will require the following:

• Copy of the Police Report

• Copy of the Autopsy Report

• Copy of the Toxicology Report/ Toxicology Report

• Newspaper clippings (if available)

*Id.* at 87.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000579

On June 9, 2005, Kellogg's counsel forwarded to MetLife "(i) the final Certificate of Death; (ii) a copy of the police report; (iii) a copy of the autopsy report; (iv) a copy of the toxicology report; and (v) the newspaper clippings that were in Mrs. Kellogg's possession." *Id.* at 166. Along with the documents, counsel sent a one-page letter to MetLife stating: "Now that you have the requested documentation, please consider this our formal request to pay the balance of the life insurance proceeds, representing the payment of accidental death and dismemberment proceeds, to Mrs. Kellogg." *Id.*

On June 22, 2005, MetLife personnel obtained information, via a web site called WebMDHealth, regarding the medications that the toxicology report found in Brad Kellogg's system at the time of his death. There is no indication in the administrative record that any medically-trained personnel were involved in this search or reviewed the search results.

On June 29, 2005, MetLife sent a letter to Kellogg's counsel stating as follows:

> We are writing in regard to the A D & D benefits that have been submitted.

> It will be necessary for us to evaluate this portion of the claim, therefore, completion of this claim will be delayed for a short period of time.

> When a decision has been made, we will notify you of our findings in a timely manner.

*Id.* at 156.

On July 6, 2005, Kellogg's counsel responded to MetLife's June 29, 2005 letter, stating in pertinent part:

> Thank you for your status letter dated June 29, 2005. Would it be possible for you to explain exactly what issues require further evaluation? Mr. Kellogg's death was determined to be an accident. What exclusions, if any in the policy, give your company reasons for concern?

> \* \* \*

> Please let me know what, if any, issues MetLife is concerned about.

*Id.* at 155.

MetLife did not, however, respond to Kellogg's counsel's request. On October 26, 2005, Kellogg's counsel sent another letter to MetLife expressing frustration with its delay in resolving the claim for AD & D benefits and threatening to file suit if MetLife did not reach a decision soon.

On November 17, 2005, MetLife sent a letter to Kellogg's counsel denying her claim for AD & D benefits. *Id.* at 129. The letter stated:

> We have evaluated your client's claim for the referenced benefits. For the reasons detailed below, we must deny your client's claim.

> **\*823** The plan is an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974,

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000580

as amended ("ERISA"), 29 U.S.C. § § 1001–1461. MetLife, as claim fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the plan.

The Plan states that Accidental Death and Dismemberment ("AD & D") benefits are payable if a plan participant dies as a result of an accident. Summary Plan Description at page 10. It goes on to state that, "The Pfizer AD & D Insurance Plan does not cover losses due to: ... physical ... illness." Summary Plan Description at page 12.

The police report submitted to us states that, according to a witness to the crash, after taking off from a stop sign, the decedent's vehicle veered into a tree. The witness stated that it appeared the decedent was having a seizure. She saw no attempt by the decedent to brake or avoid the tree. The police could find no other cause for the crash.

Under the terms of the plan, AD & D benefits are not payable if a loss is due to physical illness. The decedent's physical illness, the seizure, was the cause of the crash. Accordingly, we must deny your claim.

Under ERISA, your client has the right to appeal this decision within sixty (60) days after the receipt of this letter. To do so, you must submit a written request for appeal to MetLife at the address above. Please include in the appeal letter the reason(s) you believe the claim was improperly denied, and submit any

additional comments, documents, records or other information relating to your claim that you deem appropriate to enable MetLife to give your client's appeal proper consideration. Upon your written request, MetLife will provide you with a copy of the records and/or reports that are relevant to your client's claim.

MetLife will carefully evaluate all the information and advise you of its decision within sixty (60) days after the receipt of your client's appeal. If there are special circumstances requiring additional time to complete the review, we may take up to an additional sixty (60) days, but only after notifying you of the special circumstances in writing. In the event your client's appeal is denied in whole or in part, you have the right to bring a civil action under Section 502(a) of ERISA, 29 U.S.C. § 1132(a).

*Id.* at 129–30.

*Cherilyn Kellogg's attempt
to administratively appeal*

On January 13, 2006, Kellogg's counsel sent a letter to MetLife stating:

Please be advised that this law firm ... represent[s] Cherilyn Kellogg in connection with claims for payment of accidental death and dismemberment policy proceeds from MetLife as referenced above. We received Metropolitan Life's ("MetLife") November 17, 2005, letter and are appealing the decision to deny payment of benefits to Ms. Kellogg.

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000581

Having reviewed MetLife's November 17, 2005, letter, it appears that MetLife is basing its denial on an exclusion to coverage in the insurance policy. The letter references a police report in MetLife's possession which contains a witness statement to the effect that Mr. Kellogg "appeared" to be having a seizure. However, Mr. Kellogg had no history of seizure activity and there is no reason, other than the witness's statement, to believe that a seizure was the cause of the accident. It is our position that there is simply insufficient factual **\*824** and legal basis for MetLife to invoke the exclusion it refers to in the November 17, 2005, letter.

However, beyond making this statement, we are not in a position to intelligently appeal MetLife's denial. This is because the cause for Mr. Kellogg's accident are [sic] less than obvious. In addition, we do not know what information MetLife relied on in coming to its conclusion that Ms. Kellogg's claim is not valid. Finally, We [sic] are in need of additional documents and other information from MetLife. For these reasons, we ask for an extension of time in which to submit a complete appeal package for Ms. Kellogg.

In regards to the additional information we need, please send me a copy of MetLife's entire claim file in connection with Ms. Kellogg's claim. If MetLife obtained or relied on any reviews from individuals with medical training or other non-medical expertise as part of its investigation of Ms. Kellogg's claim, please provide a copy of that review

or report, together with identification of the expert and information about his or her qualifications. In addition, we need a complete copy of the accidental death and dismemberment policy in place for Mr. Kellogg at the time of his death, a copy of the AD & D Certificate of Coverage, Summary Plan Description, plan documents and any and all other documents under which the ERISA plan established by Mr. Kellogg's employer, Pfizer, was established or operated. We make the request for these documents based on 29 U.S.C. § 1024(b)(4) and 29 C.F.R. § 2560.503–1.

Because some of these documents may be in the possession of Pfizer and because, in all likelihood, Pfizer is the plan administrator for Mr. Kellogg's ERISA plan, we are sending a copy of this letter to Pfizer and asking for its response and cooperation in providing documents it has in its possession and in ensuring that MetLife provides this information to us.

We also request that we have sixty days following receipt of these documents and information to evaluate them and present additional information to MetLife regarding Ms. Kellogg's claim.

We appreciate your prompt production of the materials we have requested in this letter.

*Id.* at 134–35.

On May 2, 2006, Kellogg's counsel, having received no response from MetLife, telephoned MetLife "to ascertain the status

Claimant Name: Kathy Williams        Claim #: 14865967

UA-CL-AD&D-000582

of [the] request that [he] sent to Met Life on January 13, 2006." *Id.* at 132. During the conversation, a MetLife representative "acknowledged ... that MetLife [had] received a copy of th[e] [January 13, 2006] letter." *Id.* After finishing the telephone conversation, Kellogg's counsel drafted and sent to MetLife a letter stating, in pertinent part, as follows:

> We remain in need of additional documents and other information from MetLife. We do not know what information MetLife relied on in coming to its conclusion that Ms. Kellogg's claim is not valid.

> I again request that you send my law firm a copy of MetLife's entire claim file in connection with Ms. Kellogg's claim. If MetLife obtained or relied on any reviews from individuals with medical training or non-medical expertise as part of its investigation of Ms. Kellogg's claim, please provide a copy of that review or report, together with identification of the expert and information about his or her qualifications.

> In addition, we need a complete copy of the accidental death and dismemberment policy in place for Mr. Kellogg at **\*825** the time of his death, a copy of the AD & D Certificate of Coverage, Summary Plan Description, plan documents and any and all other documents under which the ERISA plan established by Mr. Kellogg's employer, Pfizer [sic]. We make the request for these documents based on 29 U.S.C. § 1024(b)(4) and 29 C.F.R. § 2560.503–1.

*Id.* at 132–33.

That same day (May 2, 2006), Kellogg's counsel also telephoned Pfizer. Following that telephone call, Kellogg's counsel faxed Pfizer copies of the January 13 and May 2, 2006 letters he had sent to MetLife. On May 10, 2006, Pfizer sent Kellogg's counsel "copies of the AD & D Summary Plan Description and Certificate of Coverage." *Id.* at 198.

MetLife never provided Kellogg's counsel with any documents, nor did it ever issue a decision regarding her appeal.

*District court proceedings*

On July 26, 2006, Kellogg filed this action against MetLife and the Plan. Kellogg's complaint alleged, in pertinent part, that defendants were responsible, pursuant to 29 U.S.C. § 1132(a)(1)(B), "to pay [her] the AD & D benefits due under the Plan together with attorney fees and costs incurred ... and pre and post-judgment interest to the date of payment of the unpaid benefits." *Id.* at 12.

On April 2, 2006, defendants moved for summary judgment based on the administrative record. On that same date, Kellogg filed a motion for partial summary judgment. On September 7, 2007, the district court issued a memorandum decision and order granting defendants' motion and denying Kellogg's motion. Kellogg has since filed a timely notice of appeal.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000583

## II.

### Standard of review—district court's grant of summary judgment

"We review de novo the district court's summary judgment decision, applying the same standard as the district court." *Butler v. Compton,* 482 F.3d 1277, 1278 (10th Cir.2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007). We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1181 (10th Cir.2006). Finally, we may affirm on any basis supported by the record, even though not relied on by the district court. *Felix v. Lucent Techs., Inc.,* 387 F.3d 1146, 1163 n. 17 (10th Cir.2004).

### Standard of review to be applied in reviewing MetLife's decision

In her first issue on appeal, Kellogg contends that the district court erred in applying a modified abuse of discretion standard, rather than a de novo standard, in reviewing MetLife's denial of benefits. A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the benefit plan gives the administrator such discretion, then, absent procedural irregularities, the denial of benefits is reviewed under an arbitrary and capricious standard. **\*826** *Fought v. UNUM Life Ins. Co.,* 379 F.3d 997, 1003 (10th Cir.2004). Such review is limited to "determining whether [the] interpretation [of the plan] was reasonable and made in good faith." *Id.*

The Plan at issue here named Pfizer as the "Plan Administrator" and MetLife as the "Claims Administrator." App. at 78. Further, the Plan afforded discretion to both Pfizer and MetLife:

> Benefits under these Plans will be paid only if the Plan Administrator or the Claims Administrator, as applicable, decides in its discretion that you are entitled to them. The Plan Administrator or the Claims Administrator, as applicable, shall make, in its sole discretion, all determinations arising in the administration, construction, or interpretation of these Plans, including the right to construe disputed or doubtful Plan terms and provisions, and any such

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000584

determination shall be conclusive and binding on all persons, to the maximum extent permitted by law.

*Id.*

[1] Kellogg acknowledges that these Plan provisions afforded MetLife "discretionary authority to interpret the terms of the insurance policy and to determine eligibility for benefits." Aplt. Br. at 18. She argues, however, that MetLife's failure to comply with the claims procedures set forth in the regulations implementing ERISA triggers de novo review. More specifically, she argues that MetLife's failure to ever issue a decision on her appeal results in there being "no timely discretionary act...to which [this] court can defer." *Id.* at 22.

Defendants, in response, contend that Kellogg's arguments are based "on an inaccurate assumption that there was an appeal on which MetLife could render a decision." Aplee. Br. at 24. "In fact," they contend, "Kellogg never submitted her final appeal." *Id.* In support of this contention, defendants note that "[i]n their letters, Kellogg's counsel state that they would submit Kellogg's appeal 60 days after they received the requested claim file documents," yet "Kellogg's counsel submitted neither the final appeal document nor any new evidence to support the appeal...." *Id.* Thus, defendants argue, "there was no appeal or new evidence before MetLife that required any action." *Id.* at 25.

We readily reject defendants' arguments. The January 13, 2006 letter that Kellogg's counsel sent to MetLife very clearly stated, in its opening paragraph: "We received Metropolitan Life's ... November 17, 2005, letter and *are appealing the decision to deny payment of benefits to Ms. Kellogg.*" App. at 134 (italics added). The letter then proceeded to outline the general basis for Kellogg's appeal:

> Having reviewed MetLife's November 17, 2005, letter, it appears that MetLife is basing its denial on an exclusion to coverage in the insurance policy. The letter references a police report in MetLife's possession which contains a witness statement to the effect that Mr. Kellogg "appeared" to be having a seizure. However, Mr. Kellogg had no history of seizure activity and there is no reason, other than the witness's statement, to believe that a seizure was the cause of the accident. It is our position that there is simply insufficient factual and legal basis for MetLife to invoke the exclusion it refers to in the November 17, 2005, letter.

*Id.*

To be sure, the letter also stated that Kellogg's counsel were "not in a position

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000585

to intelligently appeal MetLife's denial" because "the cause for Mr. Kellogg's accident [was] less than obvious," and because they "d[id] not know what information MetLife **827** relied on in coming to its conclusion that Ms. Kellogg's claim [wa]s not valid." *Id.* at 134–35. On those points, however, Kellogg's counsel specifically requested that MetLife send them "a copy of MetLife's entire claim file," including "a complete copy of the accidental death and dismemberment policy in place for Mr. Kellogg at the time of his death, a copy of the AD & D Certificate of Coverage, Summary Plan description, plan documents," and any reviews or reports prepared for MetLife "from individuals with medical training or other non-medical expertise." *Id.* at 135. In addition, Kellogg's counsel requested that they be given "sixty days following receipt of these documents and information to evaluate them and present *additional information* to MetLife regarding Ms. Kellogg's claim." *Id.* (italics added).

Considered as a whole, there can be no doubt that the January 17, 2006 letter provided MetLife with notice that Kellogg disagreed with and was appealing MetLife's decision to deny her AD & D benefits, and was also requesting from MetLife relevant documentation, including the SPD, Certificate of Insurance, and relevant medical and non-medical reports, in order to support her appeal. Thus, MetLife clearly had a responsibility under ERISA to provide Kellogg's counsel with a copy of the latest SPD and plan documentation, *see* 29 U.S.C. § 1024(b)(4), and, ultimately,

to issue a decision on Kellogg's appeal, *see* 29 C.F.R. §§ 2560.503–1(i)(1)(i) (requiring a plan administrator to issue a decision on an appeal within sixty days after receipt of the claimant's request for review), and 2560.503–1(i)(4) ("For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing."). According to the record on appeal, MetLife did neither. Nor did MetLife make any attempt to contact Kellogg or her attorneys to determine if they were going to submit any additional evidence or arguments.

Although defendants do not acknowledge, much less attempt to justify, MetLife's failure to respond in any manner to Kellogg's January 17, 2006 letter, they suggest that MetLife's failure effectively prevented Kellogg's appeal from ripening. That suggestion, however, clearly ignores the substance of Kellogg's January 17, 2006 letter, and is inconsistent with both the letter and spirit of ERISA and its implementing regulations. To conclude otherwise would provide plan administrators with an incentive to violate the provisions of ERISA by ignoring requests by plan participants and beneficiaries for plan documentation and other relevant information.

**[2]** The question, then, is what impact, if any, MetLife's failure to respond has on the standard of review to be applied by this

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000586

court. When a plan administrator fails to exercise its discretion and render a decision within the requisite administrative review period set forth in ERISA's implementing regulations, we have, to date, applied a "substantial compliance rule." *Finley v. Hewlett–Packard Co. Employee Benefits Org. Income Protection Plan,* 379 F.3d 1168, 1173 (10th Cir.2004) (internal quotation marks omitted). "Pursuant to this rule, a plan administrator is in substantial compliance with th[e] deadline if the delay is (1) 'inconsequential'; and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant." *Id.* at 1173–74 (quoting *Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625, 635 (10th Cir.2003)). If the **\*828** plan administrator is not in substantial compliance with the deadline, we have applied a de novo standard of review. *Id.*

We note, however, that our "substantial compliance" rule was issued in light of the then-controlling 1998 federal regulations implementing ERISA. *See id.* at 1176 n. 6 (discussing history of substantial compliance rule). In January 2002, amendments to the regulations took effect that have called into question the continuing validity of the substantial compliance rule. *Id.* At least one district court in this circuit has since held "that the substantial compliance doctrine is not applicable under the revised regulations," *Reeves v. UNUM Life Ins. Co.,* 376 F.Supp.2d 1285, 1293 (W.D.Okla.2005), and that " 'a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference.'

" *Id.* at 1294 (quoting 65 Fed.Reg. 70246, 70255 (Nov. 21, 2000)).

We find it unnecessary to conclusively decide the continuing validity of the "substantial compliance" rule because, even assuming its continued existence, there can be little doubt that MetLife was not in "substantial compliance" with the ERISA deadlines. Indeed, there was no compliance at all on MetLife's part; as noted, MetLife wholly ignored Kellogg's counsel's request for documentation and review of MetLife's decision to deny AD & D benefits. Thus, we shall proceed to apply a de novo standard in reviewing MetLife's initial decision.

### *Is MetLife precluded from arguing Brad Kellogg's death was not "accidental"?*

**[3]** In its motion for summary judgment, MetLife argued, in part, that Kellogg was not entitled to AD & D benefits under the Plan because Brad Kellogg's death was not "accidental." App. at 499. The district court agreed with MetLife. *Id.* at 786–87.

Kellogg argues on appeal, as she did below, that MetLife is precluded from "argu[ing] for the first time in [this] litigation that [her] claim fails because [Brad] Kellogg's death did not result from an accident, 'independent of other causes.' " Aplt. Br. at 38; *see* App. at 620. In support of this contention, Kellogg argues that MetLife's denial letter of November 17, 2005 "set[ ] forth only one specific reason for the denial of [her] claim: the exclusion of losses due to a physical illness." Aplt. Br. at 35. Further, Kellogg

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000587

argues that "the 'independent of other causes' language does not even appear in the Plan's SPD, the only document MetLife referred [her] to in its November 17, 2005 denial letter...." *Id.* at 38.

In support of her position, Kellogg points to our decision in *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.,* 491 F.3d 1180 (10th Cir.2007). In *Flinders,* we held that "[i]n reviewing a plan administrator's decision," we "may only consider the evidence and arguments that appear in the administrative record." 491 F.3d at 1190. "This means," we held, that we must "consider only the rationale asserted by the plan administrator in the administrative record...." *Id.*

Defendants do not dispute the *Flinders* holding, but instead take issue with Kellogg's interpretation of MetLife's November 17, 2005 denial letter as relying *solely* upon the physical illness exclusion. According to defendants, that letter first "stated that accidental death benefits are payable only 'if a plan participant dies as a result of an accident.' " Aplee. Br. at 31 (quoting App. at 129). Defendants contend that the letter then "noted that the Plan excludes accidental death coverage for 'losses due to ... physical ... illness.' " *Id.* In addition, defendants assert, "MetLife consistently referred to the event leading to the Decedent's death as a 'crash' rather than an 'accident' in accordance *829 with its view of the Decedent's death as not being accidental." *Id.* at 31–32. Lastly, defendants note that "MetLife also stated that based on the evidence in the record,

there was 'no other cause for the crash' than the Decedent's seizure, which, once again, indicated that there had not been an accident under the terms of the Plan." *Id.* at 32. In sum, defendants argue that "MetLife based its claim determination on both the lack of an 'accident' within the terms of the Plan and the physical illness exclusion." *Id.*

To resolve this issue, we return to the language of MetLife's November 17, 2005 denial letter. The key portion of that letter stated as follows:

> The Plan states that Accidental Death and Dismemberment ("AD & D") benefits are payable if a plan participant dies as a result of an accident. Summary Plan Description at page 10. It goes on to state that, "The Pfizer AD & D Insurance Plan does not cover losses due to: ... physical ... illness." Summary Plan Description at page 12.

> The police report submitted to us states that, according to a witness to the crash, after taking off from a stop sign, the decedent's vehicle veered into a tree. The witness stated that it appeared the decedent was having a seizure. She saw no attempt by the decedent to brake or avoid the tree. The police could find no other cause for the crash.

> Under the terms of the plan, AD & D benefits are not payable if a loss is due to physical illness. The decedent's physical illness, the seizure, was the cause of the crash. Accordingly, we must deny your claim.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000588

App. at 129.

Although it is true, as noted by defendants, that the letter makes reference to the Plan providing AD & D benefits in the event "a plan participant dies as a result of an accident," the remainder of the letter focuses exclusively on the "physical illness" exclusion. In particular, the letter first quotes the language of that exclusion, and then proceeds to conclude that, based on the available information, Brad Kellogg's "physical illness, the seizure, was the cause of the crash." *Id.* On that basis alone does MetLife deny Kellogg's claim for AD & D benefits. In other words, contrary to defendants' assertion, the letter cannot reasonably be interpreted as denying AD & D coverage on the basis that Brad Kellogg was not involved in, or injured as a result of, an "accident." Thus, it was error for the district court to have granted summary judgment in favor of MetLife on the grounds that Brad Kellogg did not die as a result of an "accident."

### *Was Brad Kellogg's death "caused" by his purported seizure?*

[4] The sole basis relied on by MetLife for denying Kellogg's claim for AD & D benefits was its conclusion that Brad Kellogg's "physical illness, the seizure, was the cause of the crash." App. at 129. Applying a de novo standard of review, however, we conclude that the car crash—not the seizure—caused the loss at issue, i.e., Brad Kellogg's death,

and therefore the exclusionary clause of the policy does not apply. [1]

[1] Given this conclusion, we find it unnecessary to determine whether Brad Kellogg's purported seizure constituted a "physical illness" within the meaning of the plan.

We have long held that insurance policies are interpreted according to their plain meaning. *See, e.g., Webb v. Allstate Life Ins. Co.,* 536 F.2d 336, 339 (10th Cir.1976) ("Terms of an insurance policy must be considered not in a technical but in a popular sense, and must be construed according **\*830** to their plain, ordinary and accepted sense in the common speech of men...."). [2] Furthermore, "[i]nsurance contracts, because of the inequality of the bargaining position of the parties, are construed strictly against the insurer." *Mutual of Omaha Ins. Co. v. Russell,* 402 F.2d 339, 345 n. 19 (10th Cir.1968).

[2] One of the most frequently cited cases in this regard is *Silverstein v. Metro. Life Ins. Co.,* 254 N.Y. 81, 171 N.E. 914, 915 (N.Y.1930), where Judge Cardozo wrote, "Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules." (internal citations and quotation marks omitted).

These rules of construction apply equally to ERISA cases governed by federal common law. *See Miller v. Monumental Life Ins. Co.,* 502 F.3d 1245, 1249 (10th Cir.2007) ("[A]pplying federal common law, we determine that the proper inquiry is not what [the insurer] intended a term to signify; rather, we consider the common and ordinary meaning as a reasonable person in the position of the [plan] participant

Claimant Name: Kathy Williams　　Claim #: 14865967

UA-CL-AD&D-000589

would have understood the words to mean.") (internal quotation marks and ellipsis omitted; third alteration in original); *see also Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 664 (6th Cir.2004) ("[F]ederal common law—from pre-Erie diversity cases to present day ERISA cases—focuses upon the expectations and intentions of the insured."). Likewise, the doctrine of *contra proferentem*, which requires us to construe all ambiguities against the drafter, applies here. *See Miller*, 502 F.3d at 1253 (adopting rule that *contra proferentum* applies to de novo review of ERISA plans).[3]

3    "Insurance contract language is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought." *Palkey v. Gen. Elec. Capital Assur. Co.*, 804 A.2d 385, 387 (Me.2002).

The First Circuit dealt with facts very similar to the instant case in *Vickers v. Boston Mutual Life Insurance Co.*, 135 F.3d 179 (1998) (applying ERISA). The insured suffered a heart attack while driving and died after crashing into a tree. *See id.* at 180. The accidental death policy excluded "loss resulting from ... sickness, disease or bodily infirmity." *Id.* The death certificate listed the cause of death as "[m]ultiple blunt force traumatic injuries secondary to motor vehicle accident precipitated by acute coronary insufficiency." *Id.*

The insurance company argued that "[t]he nexus between the heart attack and the bodily injuries suffered from the crash was immediate and should be viewed as one entire event even though the heart attack was not the physiological cause of the decedent's death[,]" *id.* at 181–82, to which the court responded, "[t]his is no answer when we are interpreting the word 'cause' in a layman's insurance policy[,]" *id.* at 182. The court explained that while the heart attack caused the crash, the crash was the sole cause of the death. *Id.* The court acknowledged that there would have been no crash (and therefore no loss) but for the insured's heart attack, but rejected the insurer's attempts to justify the exclusion through a complicated analysis of proximate cause. *Id.* at 181. The court instead emphasized the importance of viewing the policy as an ordinary policyholder would. *Id.* at 181–82.

We followed this approach in *Johnson v. Life Investors' Insurance Co.*, 98 Fed.Appx. 814 (10th Cir.2004) (unpublished opinion) (applying Utah law). While *Johnson* **\*831** is not binding precedent, we find it persuasive and adopt its reasoning here. In that case, the insured (who suffered from muscular dystrophy and had a history of falls) fell down his basement stairs and broke his neck. *Id.* at 815. After being admitted to the hospital, he developed pneumonia and died. *Id.* According to his physician, the immediate cause of death was "pneumonia due to, or as a consequence of, a cervical spine fracture, and the underlying cause of death [w]as myotonic dystrophy." *Id.* The policy at issue excluded coverage "for any *loss* resulting from any injury caused or contributed to by, or as a consequence of ... any sickness or infirmity." *Id.* at 818 (internal quotation marks omitted) (emphasis in original). Strictly construing the language against the insurer, we determined that "coverage is denied under

*Claimant Name: Kathy Williams      Claim #:  14865967*

UA-CL-AD&D-000590

this policy only where the illness causes the hospitalization and death ... and not where the illness causes an accident that causes the death...." *Id.* We noted that the insurer could have written the policy in such a way as to exclude accidents caused by illness (rather than *only* losses caused by illness). *Id.* We concluded, "[s]ince it is undisputed that the immediate cause of [the insured]'s loss was a fall, it is irrelevant under the terms of this policy whether the fall was caused by his myopic dystrophy." *Id.*

The Minnesota Supreme Court employed similar reasoning in *Orman v. Prudential Insurance Co.,* 296 N.W.2d 380 (1980). In that case, the insured lost consciousness due to the bursting of a cerebral aneurysm and fell into the bathtub and drowned. *Id.* at 381. The policy excluded losses "caused or contributed to by bodily infirmity or disease." *Id.* (internal ellipsis omitted). The court held for the insured. *See id.* at 383. Although the aneurysm was a disease under the policy, it did not cause the death and therefore was not excluded:

> It was a mere fortuity that the decedent stood over a bathtub full of water at the time the aneurysm burst and rendered her unconscious. In other words, the aneurysm may have contributed to the accident, but it did not contribute to the death. In such circumstances, the aneurysm is simply too remote to be deemed a

direct or contributing cause of death.

*Id.* at 382.

Similarly, in *National Life & Accident Insurance Co. v. Franklin,* 506 S.W.2d 765, 766 (Tex.App.1974), the insured, who had a history of epileptic seizures, was found dead in the bathtub; the cause of death was accidental death by drowning. The insurance policy covered losses resulting "directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means," and contained an exclusionary clause prohibiting payment for losses that "result[ ] from or [are] contributed to by any disease or mental infirmity." *Id.* The court assumed that even if the insured's epilepsy caused him to lose consciousness and fall into the bathtub, it did not cause death by drowning. *Id.* at 767. The court explained, "[t]he epilepsy was merely a cause of a cause and was therefore too remote to bar recovery." *Id.*

As these cases make clear, courts have long rejected attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness. As then-Judge Taft wrote in *Manufacturers' Accident Indemnity Co. v. Dorgan,* 58 F. 945, 954 (6th Cir.1893),

> [I]f the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning, in such case, would be

Claimant Name:  Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000591

the proximate and sole cause of the disability or death, unless it appeared that death would **\*832** have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause.

*See also Browning v. Equitable Life Assur. Soc.*, 94 Utah 532, 72 P.2d 1060, 1076 (Utah 1937) ("A sick man may be the subject of an accident which would not have befallen him but for his sickness. One may meet his death by falling into a place of danger in a faint or in a fit of epilepsy. But an event has usually been held to be the result of an accident, not of disease.").[4]

---

[4] Many cases that appear to have similar fact patterns but that hold for the insurer are actually cases where the loss was caused by the illness rather than the accident. *See, e.g., Crossnhite v. Reliance Standard Life Ins. Co.*, 259 F.Supp.2d 911, 918–19 (E.D.Mo.2003) (applying ERISA) (stroke, not motor vehicle accident, was the immediate cause of death and is therefore excluded); *Kolowski v. Metro. Life Ins. Co.*, 35 F.Supp.2d 1059, 1064 (N.D.Ill.1998) (applying Illinois law) (heart attack following stressful work and heavy lifting falls under policy exclusion for disease because it was the cause of death); *State v. Arbuckle*, 941 P.2d 181, 185 (Alaska 1997) (applying state law) (coverage excluded as the direct or indirect cause of death where heart attack occurred following heavy lifting).

---

In its explanation of the insurance plan to its employees, Pfizer's SPD stated, "If you die as a result of, and within 12 months after, an accident, your beneficiary will receive 100 percent of your AD & D coverage." App. at 68. The SPD advised

that the Plan "does not cover losses due to: ... physical or mental illness, or diagnosis or treatment for the illness." *Id.* at 69. MetLife's Certificate of Insurance worded the exclusion slightly differently: "We will not pay benefits under this section for any loss caused or contributed to by: [ ] physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity...." *Id.* at 293.

Here, the loss (Brad Kellogg's death) was caused by a skull fracture resulting from the car accident, not by physical or mental illness. *See id.* at 109 (Letter from Stephen Morris, Merced County Sheriff's Department's Deputy Coroner). While the seizure may have been the cause of the crash, it was not the cause of Brad Kellogg's death. The Plan does not contain an exclusion for losses due to accidents that were caused by physical illness, but rather excludes only losses caused by physical illness.[5] Because there is no evidence that the seizure caused Brad Kellogg's death, MetLife's argument fails.

---

[5] MetLife could have drafted the policy to exclude losses resulting from accidents caused by injury or illness. For examples of policies that contain such an exclusion, *see Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100 (5th Cir.1993) ("A loss that is the result of or contributed to by one of the following is not a covered loss even though it was caused by an accidental bodily injury: (1) A disease or infirmity of the mind or body."); *Sekel v. Aetna Life Insurance Co.*, 704 F.2d 1335, 1336–37 (5th Cir.1983) ("[N]o payment shall be made for ... any loss resulting from any injury caused or contributed to by, or as a consequence of, any of the following excluded risks, even though the proximate or precipitating cause of loss is accidental bodily injury: (a) bodily or mental infirmity; or (b) disease ...." (internal quotation marks omitted)).

---

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 19

UA-CL-AD&D-000592

The fact that the policy at issue here excludes losses that were caused *or contributed* to by physical illness does not change this analysis. A reasonable policyholder would understand this language to refer to causes contributing to the death, not to the accident.[6] *See Orman,* 296 N.W.2d at 382 (rejecting insurer's argument that "caused or contributed to" language excludes illnesses contributing to **\*833** the accident but not the death); *Franklin,* 506 S.W.2d at 768 ("The words 'contributed to' do not serve to allow us to look back along the chain of causation to a remote cause or a cause of a cause."). Notably, this understanding of the policy's plain meaning is supported by Pfizer's own interpretation of MetLife's coverage: the SPD describes the plan as excluding only losses "due to" physical illness. *See* App. at 69.

6    And, in any event, MetLife did not rely on the "contributed to" language in denying Kellogg's claim for benefits.

Having rejected the sole basis upon which MetLife grounded its denial of AD & D benefits, we must reverse the judgment of the district court and remand with directions to enter judgment in favor of Kellogg on the administrative record.

*Prejudgment interest and attorney fees*

In her final issue on appeal, Kellogg argues that, if we reverse the district court's judgment, we should instruct "the district court [on remand to] provide [her] with an award of prejudgment interest and attorney fees." Aplt. Br. at 49. Because the award of prejudgment interest and fees is a matter that lies within the discretion of the district court, *see* 29 U.S.C. § 1132(g)(1) (addressing fees); *Allison v. Bank One–Denver,* 289 F.3d 1223, 1243 (10th Cir.2002) (addressing prejudgment interest), we conclude that the better course is to direct the district court on remand to consider, in the first instance, whether Kellogg is entitled to fees or prejudgment interest.

The judgment of the district court is REVERSED and the case REMANDED with directions to enter judgment in favor of Cherilyn Kellogg. The district court is also directed on remand to consider whether Cherilyn Kellogg is entitled to attorney fees and prejudgment interest.

**All Citations**

549 F.3d 818, 45 Employee Benefits Cas. 2132

End of Document      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000593

3 F.Supp.3d 474
United States District Court, D. Maryland.

Terry FERGUSON
v.
UNITED OF OMAHA LIFE
INSURANCE COMPANY et al.

Civil Action No. WMN–12–1035.
|
Signed March 11, 2014.

**Synopsis**
**Background:** Estate of participant in group life and accidental death and dismemberment plan brought Employee Retirement Income Security Act (ERISA) action against plan claims administrator, challenging denial of accidental death and dismemberment benefits following participant's death. The parties filed cross motions for summary judgment.

**Holdings:** The District Court, William M. Nickerson, Senior District Judge, held that:

[1] participant's death by accidental drowning was covered by accidental death and dismemberment plan even if a seizure caused drowning;

[2] administrator was not obligated to produce physician consultant's medical review prior to issuing decision; and

[3] balancing of relevant factors weighed in favor of award of attorney fees.

Estate's motion granted; administrator's motion denied in part and granted in part.

West Headnotes (12)

[1] **Labor and Employment**
⮬ Discretion of administrator; good faith
When reviewing a denial of benefits under an ERISA-governed plan, district court must first determine whether relevant plan documents confer discretionary authority on plan administrator. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[2] **Labor and Employment**
⮬ Abuse of discretion
When an ERISA plan vests its administrator with discretionary authority to construe terms of plan and determine eligibility for benefits, plan's eligibility determination is subject to review only for abuse of discretion. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

1 Cases that cite this headnote

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000594

**[3]    Labor and Employment**
    ⟜ Effect of administrator's conflict of interest

Existence of a conflict of interest on part of ERISA plan administrator does not alter standard of review court employs in an ERISA action; rather, it is but one factor among many that a court should consider in evaluating administrator's decision, and once a conflict of interest has been identified, circumstances of particular case determine significance of factor to court's review of decision. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

1 Cases that cite this headnote

**[4]    Labor and Employment**
    ⟜ Presumptions and burden of proof

In ERISA cases, insured bears initial burden of establishing that claim falls within scope of coverage while insurer has burden of proving that an exclusion applies. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

2 Cases that cite this headnote

**[5]    Labor and Employment**
    ⟜ Record on review

In reviewing a plan's determination of coverage under deferential abuse of discretion standard in an ERISA action, a court is generally limited to evidence in administrative record before administrator when administrator made decision under review. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

**[6]    Insurance**
    ⟜ Diseases or Conditions; Medical Treatment

**Labor and Employment**
    ⟜ Life and accidental death or dismemberment plans

Under language of ERISA group accidental death and dismemberment plan stating that benefit would be paid "if an employee is injured as a result of an accident, and that injury is independent of sickness and all other causes," it was the injury, rather than accident, that had to be independent of sickness and other causes, even though plan defined accident as a "sudden, unexpected, unforeseeable and unintended event, independent of sickness and all other causes," and thus, even if plan participant who had been diagnosed with epilepsy had a seizure before drowning in a swimming pool, his death was covered by the plan, since cause

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    2

UA-CL-AD&D-000595

of death was accidental drowning, regardless of whether cause of drowning was a seizure or any other cause. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

2 Cases that cite this headnote

[7]     **Labor and Employment**
        ⟜ Presumptions and burden of proof
        Under rule that in ERISA cases, insured bears initial burden of establishing that claim falls within scope of coverage, while insurer has burden of proving that an exclusion applies, insurer and plan administrator of group accidental death and dismemberment plan had burden of proving that an epileptic seizure was not a cause of plan participant's death by drowning, for purposes of plan's definition of accident as a sudden, unexpected, unforeseeable and unintended event, independent of sickness and all other causes, since plan essentially defined scope of coverage by including an exclusion within definition of that coverage, in that while losses caused by accidents were covered, if sickness or any other cause contributed to that loss, coverage was excluded. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

3 Cases that cite this headnote

[8]     **Labor and Employment**
        ⟜ Record on review
        Under ERISA, judicial review is limited to whether rationale set forth in initial plan benefits denial notice is reasonable; therefore, district court may not and will not consider a new reason for claim denial offered for first time on judicial review. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

3 Cases that cite this headnote

[9]     **Labor and Employment**
        ⟜ Notice of Denial or Determination;Statement of Reasons
        Under ERISA, group accidental death and dismemberment plan administrator was not obligated to provide its physician consultant's medical review to estate of plan participant prior to issuing its benefit determination on estate's claim for benefits following participant's death. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

[10]    **Labor and Employment**

*Claimant Name:  Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000596

☞ Result or outcome of litigation

In an ERISA action, an attorney fee claimant need not be a prevailing party to be eligible for an attorney fees award; instead, a claimant may be entitled to fees if court can fairly call outcome of litigation some success on merits without conducting a lengthy inquiry into question of whether a particular party's success was substantial or occurred on a central issue. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

Cases that cite this headnote

[11] **Labor and Employment**

☞ Actions to recover benefits

Balancing of relevant factors weighed in favor of award of attorney fees under ERISA to estate of group accidental death and dismemberment plan participant who prevailed on claim in ERISA action against plan administrator following participant's death by drowning; although estate made some spurious arguments on other issues, it achieved significant success on merits by prevailing on its primary claim, administrator was able to satisfy attorney fee award, and administrator made questionable decision to assign review of claim to a person who was not a

forensic specialist and whose objectivity was questionable, and it disingenuously raised on judicial review a new alleged ground for denying the claim. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

Cases that cite this headnote

[12] **Labor and Employment**

☞ Factors considered in general

In deciding whether to exercise its discretion to grant attorney fees in an ERISA action, court must analyze following factors, which are general guidelines and not a rigid test: (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorney fees; (3) whether an award of attorney fees against opposing parties would deter other persons acting under similar circumstances; (4) whether parties requesting attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) relative merits of parties' positions. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

Cases that cite this headnote

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000597

## Attorneys and Law Firms

**\*476** Scott B. Elkind, Elkind & Shea, Silver Spring, MD, for Plaintiff.

Scott M. Trager, John S. Stanley, Jr., Semmes Bowen & Semmes PC, Baltimore, MD, for Defendant.

### *MEMORANDUM*

WILLIAM M. NICKERSON, Senior District Judge.

This action is brought under the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff Terry Ferguson, on behalf of the estate of his late brother, Plaintiff John Ferguson, [1] seeks to recover accidental death insurance benefits under a group policy issued by Defendant United of Omaha Life Insurance Company (United of Omaha). Ferguson was pulled, unconscious, from a public swimming pool on September 15, 2010, and died at a local **\*477** hospital on October 1, 2010, having never regained consciousness. United of Omaha denied Plaintiff's claim for accidental death benefits after concluding that Ferguson had experienced an epileptic seizure while swimming, which contributed to his death. In United of Omaha's view, Ferguson's death was not "independent of Sickness and all other causes" and thus, not covered under the policy.

[1] For clarity and ease of reference, Terry Ferguson will be referred to herein as Plaintiff and John Ferguson will be referred to simply as Ferguson.

Before the Court are cross motions for summary judgment, ECF No. 22 (Defendants') [2] and ECF No. 23 (Plaintiff's). The motions are ripe for review. Upon review of the briefing, the administrative record, and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Plaintiff's motion will be granted and Defendants' denied in part and granted in part.

[2] As explained, *infra,* in addition to United of Omaha, Plaintiff also named Ferguson's benefit plan, The ProObject, Inc. Group Life and Accidental Death and Dismemberment Benefit Plan (the ProObject Plan), as a defendant.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of his death, Ferguson was 39 years old and a frequent participant in marathons and triathlons. To train for these events, he swam regularly at the North Arundel Aquatic Center in Glen Burnie, Maryland. He had also been diagnosed with epilepsy several years prior and was receiving regular treatment for his epilepsy from his neurologist, Francis J. Mwaisela, M.D.

In February of 2010, Ferguson experienced a seizure while swimming that led to his near-drowning and a three-day hospitalization. On March 9, 2010, Ferguson had a follow up visit with Mwaisela and Mwaisela increased the dosage of his seizure medication. Ferguson inquired during that visit as to whether he could continue to swim and

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 5

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000598

Mwaisela told him he had "no problems in him doing so providing one of his colleagues will keep eye contact with him throughout the entire time he is in the water." AR 000220.[3] At a subsequent follow-up visit on July 26, 2010, Ferguson reported that he had no seizure-like episodes since the increased dosage of his medication. AR 000215.

[3]   Defendant submitted its Administrative Record (AR 000001 through AR 000778) as an exhibit to its motion.

On the evening of September 15, 2010, at least one life guard was on duty poolside at the North Arundel Aquatic Center and at least one other individual, Marc Womeldorf, was swimming in the pool at the same time as Ferguson. In a statement given on May 5, 2011, Womeldorf states that he observed Ferguson "porpoising," i.e., "letting himself drift to the bottom into a crouch position, stay there maybe a minimum of several seconds in a stopped position and then push off towards the surface." AR 000341. Womeldorf stated that he believed this was a training technique used to increase an athlete's tolerance for lack of oxygen. At one point, Womeldorf noticed Ferguson in a " 'prone on elbows position' with his hands clasped near or under his chin and stable, not moving." Id. While Womeldorf could not remember precisely how long Ferguson was in this position before he grew concerned and swam toward him, he stated it was between 25 and 70 seconds. Womeldorf swam to Ferguson, pulled him to the surface, "gave him at least 2 rapid breaths clearing his mouth out in between after which he threw up twice, passive, involuntary. He was not conscious." AR 000342.

With the assistance of a life guard, Ferguson was pulled from the pool and Womeldorf and a life guard started two person **\*478** CPR. An Anne Arundel County Fire Department Medic unit responded to the scene and continued CPR until he was transported by ambulance to the Baltimore Washington Medical Center (BWMC). An Anne Arundel County police officer who also responded to the scene stated in his Incident Report that he was advised that Ferguson was under water for approximately two minutes before he was pulled out of the water. The officer also states in his report that "[e]mployees of the aquatic center advised that Ferguson swims frequently and tells the staff that he suffers from epilepsy." AR 000085. When the officer arrived at BWMC, the charge nurse told him that Ferguson had been admitted in February 2010 after having a seizure at the aquatic center. The officer concludes his report by opining that "[i]t is believed that Ferguson had a seizure while swimming in the pool." Id.

Ferguson was intubated in the intensive care unit at BWMC where he was treated for about two and a half weeks but never regained consciousness. While at BWMC, he was examined by numerous physicians who consistently included in their notes the conclusion that Ferguson had a seizure that led to his drowning. See, e.g., AR 000087 (Discharge Summary of Dr. Ratnakar Mukherjee—"In summary, the patient was in a pool when he had a seizure episode. He subsequently went into respiratory distress ...."); AR 000105 (Consultation

Claimant Name: Kathy Williams      Claim #: 14865967

UA-CL-AD&D-000599

Note of Dr. Poorima Sharma—"This is a 38–year–old gentlemen with a history of seizure disorder on Tegretol[4] who, while swimming, developed a seizure episode leading to aspiration and drowning."); AR 000125 (Consultation Note of Dr. Sangjin Oh–Ferguson "presented to the hospital after a drowning episode secondary to seizure and then going into cardiac arrest."). As his condition continued to worsen, Ferguson's family decided that it was better to "terminally wean [ ] him off of the ventilator and [he] passed away with dignity." AR 000087.

4    Tegretol is a seizure medication.

At the time of his death, Ferguson was covered under a Group Term Life and AD & D (Accidental Death and Dismemberment) Policy, Policy No. GLUC-AE2C (the Policy), issued by United of Omaha to his employer, ProObject, Inc. In addition to a basic life insurance benefit, the Policy provided an "AD & D Benefit"[5] that, according to the Summary of Coverage, "is paid if an employee is injured as a result of an Accident, and that Injury is independent of Sickness and all other causes." AR 000017. The Policy Certificate (which constitutes the Summary Plan Description, *see* AR 000048), contains the following definitions.

5    The AD & D benefit paid in the case of death is an amount equal to twice the employee's annual salary. *See* AR 000017 (defining the Principal Sum as the benefit for a loss of life), AR FERGUSON–000023 (equating the amount of life insurance in force with the Principal Sum) and AR 000015 (defining the life insurance benefit as twice the employee's annual salary).

**Accident** means a sudden, unexpected, unforeseeable and unintended event, independent of Sickness and all other causes.

Accident does not include Sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, bacterial or viral infection, regardless of how contracted. Accident does not include bacterial infection that is the natural result of an accidental external bodily injury or accidental food poisoning.

AR 000038 (emphasis in original).

**Injury** means an accidental bodily injury which requires treatment by a Physician. **\*479** It must result in loss independently of Sickness and other causes.

AR 000051 (emphasis in original).

**Sickness** means a disease, disorder or condition, which requires treatment by a Physician.

*Id.* (emphasis in original).

The "Exclusion" provision of the Certificate contains the following exclusion: "We will not pay for any loss which ... (g) does not result from an Accident." AR 000040. The "A & D Exclusions" page of the Summary of Coverage repeats that same exclusion. AR 000018 ("We will not pay for any loss which ... does not result from an Accident.").

The beneficiaries under the Policy are Plaintiff and Ferguson's sister, Holly

*Claimant Name: Kathy Williams   Claim #: 14865967*

UA-CL-AD&D-000600

McGrath, and on or about October 19, 2010, Plaintiff and Ms. McGrath submitted a claim under the Policy. On November 24, 2010, United of Omaha approved the payment of $179,000 in Basic Life under the Policy. In a letter dated January 11, 2011, however, United of Omaha advised Plaintiff and Ms. McGrath that their claim for Accidental Death benefits was denied. AR 000079. After quoting the definition of "Accident" set out above, the letter stated, "According to the information received from the Anne Arundel County Police Department and the Baltimore Washington Medical Center, John's death was not independent of sickness and all other causes. Therefore, we are unable to allow accidental death benefits." *Id.*

Following that initial denial, counsel for Plaintiff sent several letters to United of Omaha challenging that decision and submitting various materials. In a July 18, 2011, letter, he summarized and submitted various medical articles about risk of death and injury for epileptics and also discussed various court decisions mandating the payment of accidental death benefits under facts similar to those presented here. AR 000411–000415. An August 5, 2011, letter forwarded additional medical articles about seizure disorders and inaccuracies in death certificates and determinations of causes of death, and also contained additional legal argument challenging the denial of accidental death benefits. AR 000376–388. In a September 19, 2011, letter, Plaintiff's counsel cited additional legal authority for his position. AR 000210–000211.

By letter dated November 11, 2011, United of Omaha informed Plaintiff's counsel that it had completed its review of the appeal and had determined that its previous decision was appropriate. AR 000200–AR 000202. The letter stated that the following materials were reviewed:

Statement of PolicyHolder or Group Administrator

Statements of Beneficiary or Other Claimant

Police Report dated September 15, 2010

Certificate of Death filed October 5, 2010

Medical records from [BWMC] dated September 12, 2010 through October 1, 2010

Medical records from Dr. Mwaisela dated March 9, 2010 through July 26, 2010

Letters from [Plaintiff's counsel] dated July 18, 2011, August 5, 2011 and September 19, 2011 and the information provided with those letters, including the information provided on CD–R

Reviews by our Physician Consultant.[6]

---

[6]   Plaintiff provides a litany of reasons as to why the reviews of United of Omaha's Physician Consultant, Dr. Thomas Reeder, should be discounted, including: Reeder is United of Omaha's Senior Vice-President and Medical Director and therefore, not in any sense independent; he has earned his livelihood from insurance defense practice for years, providing reviews as an expert for insurance companies in more than 50 decisions; his reviews were criticized and considered inadequate in two of those decisions,

*Claimant Name: Kathy Williams*    *Claim #: 14865967*

UA-CL-AD&D-000601

*Crespo v. Unum Life Ins. Co. of America*, 294 F.Supp.2d 980 (N.D.Ill.2003) and *Epling v. American United Life Ins. Co.*, Civ. No. 08–02, 2009 WL 129785 (E.D.Ky. Jan. 20, 2009); and, Reeder is an internist not certified in forensic pathology and, thus, not qualified to render an opinion as to cause of death. ECF No. 23 at 28–31. Plaintiff submitted various materials in support of these assertions, but United of Omaha argues that the Court cannot consider these "extra-record materials" because this Court's review is limited to the "evidence that was before the ERISA fiduciary when the claim was denied." ECF No. 24. One would hope that United of Omaha was well aware of, and took into consideration, Reeder's experience, areas of expertise, potential conflicts of interests, and criticisms of his previous reviews when it assigned him the task of reviewing this case. It would be troublesome, indeed, if this information was not "before the fiduciary" and considered by the fiduciary. Regardless, because the Court need not reach the issue on which Reeder opined, it need not determine if these materials can be considered here.

**\*480** AR 000200. After referencing: (1) Ferguson's medical history of seizures; (2) Mwaisela's instructions regarding his continued swimming; (3) the death certificate listing of the cause of death as "drowning due to (or as a consequence of) seizure disorder;" and, (4) the health care providers at BWMC opining that "the drowning was the result of a seizure," the letter concluded, "[i]n summary, Mr. Ferguson's death was not independent of sickness and other causes. Due to this, accidental death benefits are not payable." AR 000201.

Having exhausted his administrative appeals, Plaintiff timely filed this action.

## II. STANDARD OF REVIEW UNDER ERISA[7]

[7] While United of Omaha inserted in its motion two pages discussing the legal standard for a typical summary judgment motion, ECF No. 22–2 at 11–13, much of that standard is not particularly relevant to a review of a benefits determination under ERISA.

**[1]** **[2]** When reviewing a denial of benefits under an ERISA-governed plan, a district court must first determine "whether the relevant plan documents confer discretionary authority on the plan administrator." *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir.2011). When an ERISA plan vests its administrator with discretionary authority to construe the terms of the plan and determine eligibility for benefits, the plan's eligibility determination is subject to review only for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Policy here includes the following provision regarding the authority to interpret the Policy:

> The Policyholder has delegated to Us [United of Omaha] the discretion to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy. Benefits under the Policy will be paid only if We decide, after exercising Our discretion, that the Insured Person is entitled to them. In making any decision, We may rely on the accuracy and completeness of any information furnished by the Policyholder, and Insured Person or any other third parties.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000602

AR 000007. Thus, this Court applies an abuse of discretion standard to its review.

[3]  Under ERISA, the Fourth Circuit has instructed courts to consider a number of factors in determining whether an administrator has abused its discretion in denying a claim, including the administrator's "motives and any conflict of interest *481 it may have." *Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan,* 201 F.3d 335, 342–43 (4th Cir.2000). In *Glenn,* the Supreme Court clarified the role that this factor should play in a court's analysis. The existence of a conflict of interest does not alter the standard of review the court employs; rather, it is "but one factor among many" that a court should consider in evaluating the administrator's decision. *See* 554 U.S. at 116, 128 S.Ct. 2343. Once a conflict of interest has been identified, "the circumstances of the particular case" determine "the significance of the factor" to the court's review of the decision. *Id.* at 108, 128 S.Ct. 2343.

Here, United of Omaha has acknowledged that it was acting under a structural conflict of interest in that it was acting as both the insurer of the benefits and the claims administrator of said benefits. ECF No. 22–2 at 15. United of Omaha also argues, however, that its dual role " 'should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.' " ECF No. 24 at 6 (quoting *Glenn,* 554 U.S. at 117, 128 S.Ct. 2343). While United of Omaha suggests that the importance of its inherent conflict

"can be said [to have] diminished 'to the vanishing point,' " it is not clear to the Court what "active steps" United of Omaha took to reduce the potential bias. *Id.* [8] Regardless, because the weight given to this particular factor does not alter the Court's final conclusion, it need not determine how adequately United of Omaha has addressed its structural conflict.

[8]  United of Omaha suggests that its conflict of interest was "neutralized by its thorough investigation of the Plaintiff's claim and subsequent appeal." ECF No. 24 at 6. In light of the fact that United of Omaha assigned the review of the claim to its own in-house medical director who is not certified in forensic medicine and whose objectivity is subject to question, *see supra,* n. 6, the Court would not view that as an "active step" to reduce bias.

As to the interpretation of insurance policies under ERISA, the Fourth Circuit has held that "courts are to be guided by federal common law rules." *Johnson v. Gen. Am. Life Ins. Co.,* 178 F.Supp.2d 644, 650 (W.D.Va.2001) (internal citation omitted). In *Wheeler v. Dynamic Engineering, Inc.,* 62 F.3d 634, 638 (4th Cir.1995), the court held that ERISA plans are to be interpreted "under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense" and a court properly looks to "principles of state common law to guide [its] analysis." Similarly, "[a]lleged ambiguities should be reconciled, if possible, by giving language its ordinary meaning...." *Glocker v. W.R. Grace & Co.,* 974 F.2d 540, 544 (4th Cir.1992). The Fourth Circuit, however, has declined "to apply a strict interpretation of the policy language," where a "literal application of such policy language would nullify the benefits an insured could expect from a policy in a large number of

Claimant Name:  Kathy  Williams        Claim #:  14865967

UA-CL-AD&D-000603

instances." *Danz v. Life Ins. Co. of N. Amer.*, 215 F.Supp.2d 645, 651 (D.Md.2002) (citing *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794, 796 (4th Cir.1990)).

**[4]** In ERISA cases, the insured bears the initial burden of establishing that the claim falls within the scope of coverage while the insurer has the burden of proving that an exclusion applies. *Jenkins v. Montgomery Indus.*, 77 F.3d 740, 743 (4th Cir.1996). Specifically in the context of AD & D policies that, as here, require that covered injuries result "directly and independently of all other causes," the Fourth Circuit has refined a "two-step determination: first, whether there is a pre-existing disease, disposition, or susceptibility to injuries; and second, whether this **\*482** pre-existing condition, predisposition, or susceptibility substantially contributed to the disability or loss." *Quesinberry v. Life Ins. Co. of N. Amer.*, 987 F.2d 1017, 1028 (4th Cir.1993).

**[5]** Finally, in reviewing a plan's determination of coverage under the deferential abuse of discretion standard, a court is generally limited to the evidence in the administrative record before the administrator when the administrator made the decision under review. *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788–89 (4th Cir.1995); *Brodish v. Fed. Express Corp.*, 384 F.Supp.2d 827, 833 (D.Md.2005) ("Generally, the Fourth Circuit defines the administrative record as those facts known to the administrator at the time the administrator made the benefits eligibility determination.").

## III. DISCUSSION

### A. Was Ferguson's Seizure a Cause of His Death?

The parties devoted a large portion of their briefing to the issue of whether or not there was substantial evidence that Ferguson experienced a seizure while swimming on the evening of September 15, 2010, and thus, whether it was a seizure that caused him to drown. Although the health care providers appear to have quickly made the assumption that he had, there is no direct evidence of a seizure. Significantly, neither of the two individuals present at the pool at the time-Womeldorf nor the life guard on duty who was stationed at the pool-stated that they observed any signs of a seizure. Plaintiff represents that this is in sharp contrast to the "open and obvious seizure activity which was witnessed in February, 2010 at the same facility." ECF No. 23 at 18; *see also id.* at 3 (representing that the February, 2010 seizure was "obvious to all who were present").[9] Plaintiff also argues that multiple EEGs performed at BWMC "did not reveal any evidence of post-epileptic seizure activity" which, in Plaintiff's view, **"is irrefutable medical evidence that a seizure did not take place."** *Id.* at 3 (emphasis in original).[10]

[9] The Court notes that, while Plaintiff makes this representation regarding the February 2010 event, he cites nothing in the record supporting the obvious nature of that seizure event.

[10] Several of the interpretations of the Electroencephalograms, or EEGs, did state that the EEGs were not consistent with the diagnosis of status epilepticus. *See, e.g.,* AR 000149, AR 000151. As Defendant notes, however, these EEGs were taken

*Claimant Name: Kathy Williams        Claim #: 14865967*

UA-CL-AD&D-000604

> days after the drowning episode. Nothing in the record supports the conclusion that a seizure on September 15, 2010, would be reflected in EEGs taken days later.

It is fairly apparent from the record that, because the staff at the aquatic center and the staff at BWMC were aware that Ferguson previously had a drowning episode that was caused by a seizure, everyone simply made the assumption that this second drowning episode was also caused by a seizure. After being told by the aquatic center staff that Ferguson had told them that he suffers from epilepsy, and by the charge nurse that he was admitted in February 2010 after having a seizure while swimming, the police officer concluded his report by opining that *"[i]t is believed* that Ferguson had a seizure while swimming in the pool." AR 000085 (emphasis added). While the conclusion that Ferguson had a seizure episode that led to drowning and aspiration is repeated time and again in the medical notes, there is nothing in those notes to explain why the health care providers believed that he had experienced a seizure, other than his **\*483** history of epilepsy and the previous occurrence of a similar event. [11]

[11] The Court notes that this assumption is not necessarily unreasonable. Ferguson was a competitive athlete who swam regularly. Something unusual must have occurred to cause him to drown and, in light of his history, a seizure is a possible explanation.

Ultimately, however, the Court need not decide if it was reasonable for United of Omaha to conclude that a seizure *was a cause of the drowning,* because, in this Court's view, the relevant question under the Policy is whether Ferguson's seizure disorder *was a cause of his death.* Courts interpreting

the language of similar accidental death policies have treated these two questions independently, and have denied coverage only when the disease or pre-existing condition was a cause of the death or injury, not when it was simply the cause of the accident that led to a death or injury.

One of the leading cases highlighting the importance of this distinction is *Kellogg v. Metropolitan Life Insurance Company,* 549 F.3d 818 (10th Cir.2008). In *Kellogg,* a witness observed the insured appear to have a seizure immediately before the insured's car drove off of the road and crashed into a tree. The insured died of a brain hemorrhage, caused by a skull fracture sustained in the crash. The coroner also found that the insured had high post-mortem blood levels of a drug that has a reported risk factor of causing seizures.

At the time of his death, the insured was covered under an AD & D policy that provided benefits if the insured sustained an "accidental injury that is the Direct and Sole Cause of a Covered Loss." *Id.* at 821. "Direct and Sole Cause means that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes." *Id.* The Certificate of Insurance also contained an exclusion, "[w]e will not pay benefits under this section for any loss caused or contributed to by ... physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity." The Summary Plan Description stated that "losses due to ... 'physical or mental illness' were excluded" from coverage. *Id.*

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000605

The insurer initially denied the claim for accidental death benefits on the ground that "[u]nder the terms of the plan, AD & D benefits are not payable if the loss is due to a physical illness. The decedent's physical illness, the seizure, was the cause of the crash. Accordingly, we must deny your claim." *Id.* at 823. [12] The Tenth Circuit **\*484** rejected that rationale, concluding that "the car crash —not the seizure-caused the loss at issue, i.e., [the insured's] death, and therefore the exclusionary clause of the policy does not apply." *Id.* at 829. The court then cited and discussed numerous cases "reject[ing] attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness." *Id.* at 831.

[12] Before the district court, the insurer argued for the first time that the plaintiff's claim failed because the insured's death "did not result from an accident 'independent of other causes' " and the district court granted summary judgment for the insurer on that ground. The Tenth Circuit held that it was error for the district court to grant judgment on a ground not raised when initially denying the claim. This Court recognizes that the argument reached by the district court is closer to the argument advanced by Defendants in this action. The Tenth Circuit did not reach the merits of that decision and this Court respectfully disagrees with the reasoning of the district court. This Court also notes that the district court appears to have misread the language of the policy. The policy provided that covered AD & D benefits must arise from "an accidental injury that is the Direct and Sole Cause of a Covered Loss," and defines "Direct and Sole Cause" as "a direct result of the accidental *injury*, independent of other causes." *Kellogg v. Metro. Life Ins. Co.*, Civ. No. 06–610, 2007 WL 2684556, at \*7 (D.Utah Sept. 7, 2007) (emphasis added). In its holding, the district court inexplicably dropped the word "injury" and concluded that the insurer was entitled to judgment because the insurer's "death was not the direct result of an accident 'independent of other causes.' " *Id.*

One of those cases cited involved an epileptic seizure and drowning, *National Life & Accident Insurance Co. v. Franklin,* 506 S.W.2d 765 (Tex.App.1974). In *Franklin,* the insured, who had a history of epileptic seizures, was found dead in a bathtub. The insurance policy at issue covered losses resulting "directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means," and contained an exclusionary clause prohibiting payment for losses that "result [ ] from or [are] contributed to by any disease or mental infirmity." *Id.* at 766. The court held that, even if it was determined that the insured's epilepsy caused him to lose consciousness and fall into the bathtub, it did not cause the death. *Id.* at 767. The court explained, *"[t]he epilepsy was merely a cause of a cause* and was therefore too remote to bar recovery." *Id.* (emphasis added).

*Orman v. Prudential Insurance Co.,* 296 N.W.2d 380 (Minn.1980), also involved a fall into a bathtub caused by a disease, in this case, the bursting of a cerebral aneurysm which caused the insured to lose consciousness. While the policy at issue in *Orman* excluded losses "caused or contributed to by bodily infirmity or disease," *id.* at 381, and the aneurysm would be considered a disease under the policy, the court held that the exclusion did not apply because the aneurysm did not cause the death:

> It was a mere fortuity that the decedent stood over a bathtub full of water at the time the aneurysm

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000606

burst and rendered her unconscious. In other words, the aneurysm may have contributed to the accident, but *it did not contribute to the death.* In such circumstances, the aneurysm is simply too remote to be deemed a direct or contributing cause of death.

*Id.* at 382 (emphasis added).

The *Kellogg* court also quoted a decision written by President William Howard Taft when he served as a judge on the Sixth Circuit, *Manufacturers' Accident Indemnity Co. v. Dorgan,* 58 F. 945 (6th Cir.1893). In *Dorgan,* the insured went fishing and was found dead, submerged in a brook. There was some evidence that he had previously suffered from dizziness caused by a defect in his heart. In denying coverage, the insurer argued, *inter alia,* that the insured "died in consequence of disease, and that his death was not caused by any accident or accidental injury which was the proximate and sole cause of his death." Then–Judge Taft wrote:

> [I]f the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning, in such case, would be the proximate and sole cause of the disability or death, *unless it appeared that death* would have

been the result, even had there been no *water at hand to fall into.* The disease would be but the condition; the drowning would be the moving, sole, and proximate cause.

*Id.* at 954 (emphasis added).

Cases following *Kellogg* have come to similar conclusions. In *Pavicich v. Aetna Life Insurance Company,* Civ. No. 09–818, 2010 WL 3854733 (D.Colo. Sept. 27, 2010), a case brought under ERISA, the insured fell while having a seizure believed to be **\*485** caused by his anti-depression medications. He suffered a cervical spine injury as a result of the fall and underwent a C-spine fusion. After the surgery, he developed high fevers and other complications and he died in the hospital about a week after the fall. The insurer denied accidental death benefits, relying on language in the policy that provided: "This coverage is only for losses caused by accidents. No benefits are payable for a loss caused or contributed to by: a bodily or mental infirmity, a disease ... [or] medical treatment." *Id.* at \*5. The insurer reasoned: "the death was caused by complications resulting from a cervical spinal cord injury which resulted from a fall, that the fall was a direct result of a generalized tonic-clonic seizure likely related to medications to treat depression and bipolar disorder and, consequently, the loss was caused or contributed to by a bodily or mental infirmity and medical treatment." *Id.* at \*4.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000607

Reviewing the insurer's denial of coverage determination under an abuse of discretion standard, the court found that denial to be arbitrary and capricious. *Id.* at *10. The court concluded that:

> [the insured's] hospitalization and death were directly caused by an accident— his fall—which caused a severe cervical spine injury. Although the parties dispute whether the [insured's] fall was caused by a seizure and/or any medication that he may have been taking, *the Court finds that such dispute is not material.* Seizure activity or the taking of the prescribed medication were not but-for causes of [the insured's] hospitalization and subsequent death; rather, his accidental fall was....

> Further, the Plan does not exclude coverage for deaths *resulting from accidents* caused by "a bodily or mental infirmity" or "medical treatment," such as medication. Rather, the Plan excludes coverage for deaths *resulting from such infirmities or medical treatment.*

*Id.* (first emphasis added, other emphasis in original).[13]

[13] The court opined that, "[the d]efendant could have written the policy in such a way to exclude accidents caused by bodily or mental infirmities or medical treatments, but it did not." *Id.* While Defendant here may have attempted to write such a policy, for the reasons explained, *infra,* this Court concludes it also did not.

District courts in the Fourth Circuit addressing similar claims under ERISA have also looked to *Kellogg.* In *Genal v. Prudential Insurance Company of America,* Civ. No. 11–182, 2012 WL 2871777 (D.S.C. July 12, 2012), the insured had suffered from multiple sclerosis (MS) for approximately 25 years and was using a motorized scooter to ambulate. After he was found unresponsive on the ground in his back yard with his scooter nearby, it was determined that he died of environmental heat exposure. He apparently fell from the scooter and, because of his MS, was unable to get up or crawl into his house. The insured had an AD & D policy that provided an accidental death benefit if "[t]he person sustains an accidental bodily Injury while a Covered Person" and "[t]he Loss results directly from that Injury and from no other cause." *Id.* at *1. The policy also contained an exclusion which provided that "[a] Loss is not covered if it results from ... Sickness whether the Loss results directly or indirectly from the Sickness." *Id.* The insurer denied the beneficiary's accidental death claim, concluding: "it was the Decedent's MS, not an accidental bodily injury, that prevented him from getting up after he fell ... and, as a result, he was exposed to the heat for approximately two days, which caused his death. Therefore, **\*486** his death did result directly and/or indirectly from his multiple sclerosis, as sickness." *Id.* at *3.

In reversing the denial of benefits, the district court noted that "the evidence indicates that the cause of the Decedent's death was initially triggered by the fall from the scooter and not his illness. While the fall by itself may not have caused Decedent's death, but for the fall, Decedent would not have died." *Id.* at *4. The court also observed,

> but for the heat exposure, Decedent would also not

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000608

have died. If he had fallen inside his house, while his MS still may have prevented him from getting up, he would not have been subjected to the environmental heat exposure. The court concludes that Decedent's MS did not substantially contribute to his death.

*Id.* The court also concluded that the exclusion for losses resulting "from any Sickness whether the Loss results directly or indirectly from the Sickness" did not apply. In reaching that conclusion, the court quoted *Kellogg* for the proposition that " '[a] reasonable policyholder would understand this language to refer to *causes contributing to the death, not to the accident.*' " *Id.* at *5 (quoting *Kellogg,* 549 F.3d at 832) (emphasis added); *see also Chapman v. Life Ins. Co. of N. Am.,* Civ. No. 08–699, 2013 WL 1314541, at *2, *6 (M.D.N.C. Mar. 28, 2013) (quoting that same language from *Kellogg* in a decision interpreting an AD & D policy that defined "Covered Accident" as a "sudden, unforeseeable external event that results, directly and independently of all other causes" and that excluded losses which "directly or indirectly, in whole or in part, is caused by or results from ... Sickness, disease, bodily or mental infirmity").

**[6]** In light of this substantial line of cases, the question then becomes, in the case *sub judice,* whether the Policy excludes losses caused by a disease or losses caused by accidents that were caused by a disease. Before returning to the language of the Policy to resolve that question, the Court notes that United of Omaha makes no argument that Ferguson's seizure, if he had one, was a direct cause of his death. That is, there is no suggestion, and there is certainly not substantial evidence, that, had the alleged seizure not occurred while he was in the water, the seizure would have resulted in his death. Just as the insured in *Genal* had the misfortune of falling outside, which led to heat exposure, Ferguson, assuming he had a seizure, had the misfortune of having that seizure while swimming, which led to his drowning.

Turning to the language in the Policy, United of Omaha relies on the definition of "Accident" which excludes "sudden, unexpected, unforeseeable and unintended event[s]" that are "independent of Sickness *and all other causes.*" AR 000038 (emphasis added). As written, this definition would appear to eliminate the possibility of any event ever being considered an accident. If the insured slips and falls on an icy sidewalk, it would not be an accident under this language because the presence of ice on the sidewalk would be a cause of the event. Describing the efforts of insurance companies to manufacture reasons to deny accidental death coverage, the Fourth Circuit has opined that, "[a]t one extreme, insurance companies can be characterized as proffering an interpretation of policy provisions in which 'accidental death' coverage applies only on facts 'which [are] the equivalent of a truck dropping from the skies, striking squarely and killing instantly a perfectly fit human specimen clutching a just-issued physician's clean bill

*Claimant Name: Kathy Williams      Claim #:  14865967*

UA-CL-AD&D-000609

of health.' " *Hall v. Metro. Life Ins. Co.*, 259 Fed.Appx. 589, 594 (4th Cir.2007) (quoting *Collins v. Metro. Life Ins. Co.*, 729 F.2d 1402, 1404 (11th Cir.1984)). **\*487** Under United of Omaha's definition of "Accident," not even this extreme scenario would result in coverage because whatever caused the truck to fall from the sky would be deemed a cause of the event, excluding coverage.

[7]   The only reasonable interpretation of the Policy is the interpretation United of Omaha itself gave in its Summary of Coverage. According to that document, an AD & D Benefit "is paid if an employee is injured as a result of an Accident, *and that Injury is independent of Sickness and all other causes.*" AR 000017 (emphasis added). *See Kellogg,* 549 F.3d at 833 (noting that the plain meaning of the policy at issue was supported by the employer's own interpretation of the coverage in the Summary Plan Description). Under this language in the Summary of Coverage, the Injury, not the Accident, must be independent of Sickness and all other causes. This is also consistent with the definition of "Injury," which states that the Injury "must result in loss [in this case, death] independently of Sickness and other causes." AR 000051. In its letter denying benefits, the reason given by United of Omaha for that denial was that Ferguson's *"death* was not independent of sickness and all other causes," AR 000077 (emphasis added). It did not claim to base its decision on a conclusion that *the accident* was not independent of sickness. Significantly, after reciting the language of the Policy in their briefing, Defendants summarize: "Accordingly, the

Plaintiff has the burden of proving that his brother's pre-existing seizure disorder did not substantially contribute *to his death,"* not to his drowning. ECF No. 22–2 at 22. [14]

14    While United of Omaha places that burden on Plaintiff, Plaintiff contends that United of Omaha has the burden of establishing the applicability of an exception to coverage. The Court agrees that the burden properly falls on United of Omaha. The Policy has essentially defined the scope of coverage by including an exclusion within the definition of that coverage, i.e., while losses caused by accidents are covered, if Sickness or any other cause contributes to that loss, coverage is excluded. Here, however, where there is absolutely no evidence that Ferguson's seizure, if he had one, contributed to his death and not just to the accident, it is ultimately immaterial which party carries the burden.

Most of the cases relied upon by Defendants are distinguishable on their facts. The court in *Genal* specifically distinguished the case before it from *Danz v. Life Insurance Company of North America,* 215 F.Supp.2d 645 (D.Md.2002), the only case from this Circuit cited by Defendants that was decided on even remotely similar facts as those presented here. In *Danz,* the insured, a truck driver, suffered a heart attack while driving his rig, the rig drifted off the roadway, through a guardrail, down an embankment, and overturned in a ditch. The insured was found dead in the cab of his truck. The beneficiaries argued that the injuries suffered in the accident were the cause of his death. The insurer, however, denied the claim on the ground that his preexisting cardiac condition substantially contributed to his death and the policy at issue only covered "loss[es] from bodily injuries caused by an accident ... which, directly and from no other causes, result in a covered loss." *Id.* at 647–48. In support of this denial,

*Claimant Name: Kathy Williams        Claim #: 14865967*

UA-CL-AD&D-000610

the insurer's expert witness offered clear, cogent, and unimpeachable testimony that the insured "suffered sudden cardiac death while driving and that he was clinically dead at the time of impact." *Id.* at 653, 655. Thus, unlike Ferguson, whose seizure would not have killed him were he not swimming at the time, the insured in *Danz* would have died from his cardiac event even had he not been driving.

Several of the other cases on which Defendants rely are similarly distinguishable. **\*488** In *Honican v. Stonebridge Life Insurance Company*, 455 F.Supp.2d 662 (E.D.Ky.2006), a 75 year old insured fell, broke a hip, had successful surgery on the hip, but died of a massive stroke one day later. The court observed that, in this type of accidental death policy, there is no coverage " 'where death is due both to the accident and to the disease.' " 455 F.Supp.2d at 667 (quoting *Commonwealth Life Ins. Co. v. Byck*, 268 S.W.2d 922, 925 (Ky.1953)) (emphasis added in *Honican* ). The court upheld the denial of benefits based on compelling evidence that the insured's prior health problems, which included, "among other things, minor heart failure, possible pneumonia, a urinary tract infection, coronary artery disease, diabetes type II, hypertension, edema, dementia, and left-sided weakness from a stroke," had "played a part, if not a primary role, in her death." *Id.* at 663, 668. Defendants do not even argue that Ferguson's alleged seizure was a similar direct cause of death.

In *Puszkarewicz v. Prudential Insurance Company of America*, which was quoted at length by Defendants, the insured had an epileptic seizure while in the bathtub and was found dead with his head submerged, face down, in the water. 161 Pa.Super. 500, 55 A.2d 431, 431 (1947). It was conceded, however, that death was not from drowning. *Id.* The coroner testified that the seizure caused massive hemorrhages in the lungs which precluded their functioning. The family physician testified on direct that he believed the hemorrhaging was caused by the insured's attempt to breath under water while unconscious from the epileptic attack. On cross examination, however, the family physician admitted that the hemorrhaging could have been "induced by the violence of the seizure itself, (inferentially), without suffocation from the immersion of decedent's head in the water of the tub." *Id.* at 502. The court found the evidence was "in equal balance as to the occurrence or non-occurrence of an accident" and that the plaintiff had failed to meet her burden of proof. Here, there is no similar evidence that Ferguson's death was directly caused by anything other than drowning.

The Court is aware that other cases cited by Defendants would appear to support the conclusion that, to deny an accidental loss claim, United of Omaha need only show that a pre-existing condition caused the accident which caused the loss. *See, e.g., McGuire v. Reliance Standard Life Insurance Company*, 205 F.3d 1341 (6th Cir.2000) (table, unpublished disposition); *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98 (5th Cir.1993). To the extent that those cases stand for that proposition, this Court

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000611

finds them inconsistent with the teaching of the Fourth Circuit that insurance policies should not be so strictly interpreted that they nullify the benefits that the insured reasonably expects from such a policy. *See Danz*, 215 F.Supp.2d at 651 (citing *Adkins*, 917 F.2d at 796). Here, Ferguson died of an accidental drowning. Whether the cause of the drowning was a seizure, a slip and fall into a pool, being swept off a boat, or any other cause, is simply not material. *See Pavicich*, 2010 WL 3854733, at *10.

### B. Was Ferguson's Seizure an "Unexpected" or "Unforeseeable" Event?

In its motion for summary judgment, Defendants also argue that Plaintiff's claim was properly denied because Ferguson's death by drowning was "foreseeable." ECF No. 22–2 at 39–41. Although Defendants argue otherwise, this rationale for denying the claim was clearly not given in United of Omaha's initial letter denying coverage. AR 000077. The letter did recite the entire definition of "Accident," which is quoted above, and that definition **\*489** does include the word "unforeseeable." *Id.* Immediately following that definition, however, United of Omaha stated, "[a]ccording to the information received from the Anne Arundel County Police Department and the Baltimore Washington Medical Center, John's death was not independent of sickness and all other causes. Therefore, we are unable to allow accidental death benefits." *Id.* That is the sole reason given and United of Omaha included nothing in that letter to suggest that the claim was also being denied because the accident was somehow foreseeable.

**[8]** It is well established that, under ERISA, "judicial review [is] 'limited to whether the rationale set forth in the *initial* denial notice is reasonable.' " *Hall v. Metro. Life Ins. Co.*, 259 Fed.Appx. 589, 593 (4th Cir.2007) (quoting *Thompson v. Life Ins. Co. of N. Am.*, 30 Fed.Appx. 160, 164 (4th Cir.2002) and collecting cases) (emphasis added in *Hall* ). This rule is based upon the premise that to allow the insurer to present new arguments for the first time on judicial review would deny the insured the "full and fair" review procedural safeguards that ERISA and its implementing regulations require. *See Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 236–37 (4th Cir.1997). Therefore, this court "may not" and will not "consider a new reason for claim denial offered for the first time on judicial review." *Thompson*, 30 Fed.Appx. at 164.

### C. Is Plaintiff Entitled to Statutory Administrative Penalties?

In the Complaint, Plaintiff alleges that Plaintiff's counsel sent a request for "all summary plan documents, governing claims manual provisions or handling instructions under which this claim was reviewed," Compl. ¶ 18, and Defendants failed to produce those requested documents. *Id.* ¶ 19. Plaintiff then prayed for penalties in the amount of $110 per day pursuant to 29 C.F.R. § 2560.502–1(g) *et seq. Id.* ¶ 22. Defendants suggest that this failure to produce documents claim is the only reason that Ferguson's benefit plan, the ProObject Plan, was named as a defendant. In Defendants' motion, they observe that the administrative record

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000612

reveals that Plaintiff's counsel promptly received all of the documents that he requested. ECF No. 22–2 at 42–47.

**[9]** In his cross-motion and opposition to Defendants' motion, Plaintiff makes no direct response on this issue. He does complain that United of Omaha violated ERISA violations by failing to provide Reeder's medical review before denying the claim. ECF No. 23 at 32. In making that argument, Plaintiff relies, in part, on *Abram v. Cargill,* 395 F.3d 882 (8th Cir.2005).

To the extent that this is the basis for Plaintiff's administrative penalties claim, it fails. The holding in *Abram,* on which Plaintiff relies, was subsequently abrogated by changes in the regulations implementing ERISA. *See Midgett v. Washington Group Int'l Long Term Disability Plan,* 561 F.3d 887, 895 (8th Cir.2009). In recognizing that abrogation, the Eighth Circuit in *Midgett* looked to the reasoning of the Tenth Circuit in *Metzger v. UNUM Life Ins. Co. of Am.,* 476 F.3d 1161 (10th Cir.2007), where that court observed that " 'requiring a plan administrator to grant a claimant the opportunity to review and rebut medical opinions generated on administrative appeal 'would set up an unnecessary cycle of submission, review, resubmission, and re-review.' ... Such a cycle 'would undoubtedly prolong the appeal process....' " *Id.* (quoting *Metzger,* 476 F.3d at 1166).

This Court finds that United of Omaha was not obligated to produce Reeder's medical review prior to issuing its benefit **\*490** determination. Accordingly, the Court

concludes that Plaintiff is not entitled to administrative penalties. In addition, the ProObject Plan will be dismissed as a defendant.

### D. Is Plaintiff Entitled to Attorney's Fees?

**[10]** **[11]** Under ERISA, a district court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has clarified that a fee claimant need not even be a "prevailing party" to be eligible for an attorney's fees award under § 1132(g)(1). *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 252, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). Instead, a claimant may be entitled to fees "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' " *Id.* at 255, 130 S.Ct. 2149 (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 688, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). Here, Plaintiff has prevailed on his primary claim and, thus, has achieved significant success on the merits.

**[12]** In the Fourth Circuit, however, the court, in deciding whether to exercise its discretion to grant attorney's fees, must also analyze the factors set forth in *Quesinberry v. Life Insurance Company of North America,* 987 F.2d 1017, 1028–29 (4th Cir.1993), which are "general guidelines" and not a "rigid test." *See Williams v. Metro. Life Ins. Co.,* 609 F.3d 622, 635 (4th Cir.2010) (noting the continued viability of the *Quesinberry* approach after *Hardt* ). These factors are: "(1) [the] degree of

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000613

opposing parties' culpability or bad faith; (2) [the] ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Id.* (quoting *Quesinberry,* 987 F.2d at 1029).

The Court finds Plaintiff's entitlement to fees a close question. As to the first factor, United of Omaha's culpability or bad faith, the Court disagrees with Plaintiff's assertion that United of Omaha improperly withheld Reeder's medical review during the administrative process. On the other hand, United of Omaha's decision, in the first instance, to assign the review to an individual who is not a forensic specialist and is one with doubtful subjectivity was questionable, at best. Furthermore, the Court finds somewhat disingenuous United of Omaha's attempt to represent at this stage of the proceedings that it had denied coverage because Ferguson's drowning was "foreseeable." This factor weighs slightly in favor of awarding fees.

As to the second factor, there is no dispute that United of Omaha has the ability to satisfy the award.

As to the third factor, both sides acknowledge that this factor hinges on the first factor, in that, unless there is a finding

of some culpability or bad faith, there is no conduct to be deterred. Hopefully, the award of fees in this case would encourage United of Omaha to select a more appropriate medical reviewer in a case of this sort and to refrain from injecting post-hoc justifications for its determination when those determinations are challenged in court.

The Court finds that the fourth factor tips in neither direction. Plaintiff brought *491 this action primarily to obtain benefits for himself and his sister and not all plan participants. While there may be some incidental benefit to other participants, this was not the goal of this litigation.

The final factor, the relative merits, ultimately weighs in favor of Plaintiff, but not unconditionally. While the Court found merit in Plaintiff's arguments regarding the interpretation of the Policy, Plaintiff made some spurious arguments on some other issues. Most notably, Plaintiff, in his motion, appeared to fault United of Omaha for not conducting an autopsy as part of their benefit determination. ECF No. 23 at 2, 18. Defendants appropriately responded to that argument by noting that Ferguson died on October 1, 2010, and the claim for benefits was not submitted until October 19, 2010. Defendants opined that to suggest that United of Omaha was obligated to exhume the body to conduct an autopsy is "not only unreasonable, but highly outrageous and extremely insulting." ECF No. 24 at 9. Rather than concede the point, Plaintiff retorted that any argument relying on the fact that an autopsy would require exhuming the body "should fall on deaf ears" and

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000614

that Defendants were "utilizing drama for drama's sake in order to cover for their purposeful avoidance of acquiring evidence that undermines their position." ECF No. 25 at 6. While the Court finds this and other arguments advanced by Plaintiff to be of questionable merit, the Court believes that this should go not to whether Plaintiff is entitled to attorney's fees, but perhaps to the amount of fees that should be awarded.

On balance, the Court finds that the *Quesinberry* factors weigh in favor of the award of fees. Accordingly, the Court will instruct Plaintiff to submit a brief accompanied by affidavits and exhibits in support of a motion for reasonable attorney's fees within 14 days.[15] That motion can then be briefed consistent with Local Rule 105.2.

15   Plaintiff failed to submit a proposed order with his cross-motion for summary judgment. Plaintiff is instructed to also submit a proposed order with his motion for fees which addresses the amount of benefits due under the policy and any other issues related to interest or other recovery.

## IV. CONCLUSION

For the above stated reasons, the claims against Defendant ProObject will be dismissed, as will Plaintiff's claim for statutory administrative penalties. Defendants' motion will be otherwise denied and Plaintiff's motion for summary judgment will be granted. The Court finds that Plaintiff is entitled to accidental death benefits under the Policy. A separate order will issue.

## All Citations

3 F.Supp.3d 474, 57 Employee Benefits Cas. 2669

---

End of Document        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000615

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018110207194846FA5F

**Entry Date:** 11/02/2018 07:19:49

**Received Date:** 11/02/2018

**Date Added to Claim:** 11/02/2018

**Primary Doc Type: Appeals**

**Secondary Doc Type:** Other

**Medical Provider:**

**Document Notes: Appeals- email from atty**

**Work Notes:**

**Turner, Maureen**

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Thursday, November 01, 2018 4:07 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Corrected Appeal 14865967 |
| **Attachments:** | Appeal of Denial of Claim.pdf; EXHIBIT BINDER.pdf; APPENDIX OF CASES.pdf |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

There was an incorrect address on the first page of the previous attachment. This is a corrected version.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile: 213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

*Claimant Name: Kathy Williams      Claim #:  14865967*

UA-CL-AD&D-000617

--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018110207203849FA5F

**Entry Date:** 11/02/2018 07:20:39

**Received Date:** 11/02/2018

**Date Added to Claim:** 11/02/2018

**Primary Doc Type:** Appeals

**Secondary Doc Type:** Other

**Medical Provider:**

**Document Notes:** Corrected appeal letter- address

**Work Notes:**

UA-CL-AD&D-000618

**BLAKEMAN LAW**

8383 Wilshire Blvd., Ste. 510
Beverly Hills, California 90211

*Life Insurance, investment, and financial
elder abuse litigation*
web: www.lifeinsurance-law.com

Phone: 213-629-9922
Fax:    213-232-3230
email: ben@lifeinsurance-law.com



November 1, 2018

**Via Email to maturner@unum.com**
The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058

ATTN: Maureen Turner

> Re:  **Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

**To the Administrator:**

Claimant, Gary Williams, hereby appeals the denial of his claim for death benefits for
the accidental death of Kathy Williams, for the reasons set forth herein. Claimant
requests additional time within which to supplement this appeal with medical
expert testimony in response to the Medical Review Referral on which the denial
was based, which was provided to claimant on or about October 15, 2018.

The appeal is filed by email pursuant to the representation of the recipient that this
is acceptable.

## I. FACTUAL BACKGROUND

On April 27, 2018, Kathy Williams fell down a flight of stairs in her home and died as
the result of an intracranial hemorrhage according to the investigative report of the
Jackson County Medical Examiner. Her husband, Gary Williams, discovered her in a
comatose state at approximately 4:50 p.m. when he returned from work. He had last
spoken with her around noon of the same day. Emergency services (EMS) were

UA-CL-AD&D-000619

called and arrived on the scene. Ms. Williams was found at the bottom of the stairway with broken glass in her right hand. She had multiple lacerations to the right hand and face. Blood was noted from the mouth and nose. She was dressed in night clothes. EMS attempted to intervene but were unable to revive her.

She was placed in a body bag and transported to the Jackson County Medical Examiner's Office for evaluation.

A toxicology test apparently performed on April 28, 2018 at 10:50 CDT listed Ms. Williams' blood alcohol content of .337. Ms. Williams had a history of alcohol usage in the year prior to her death. She also had a history of vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk, sleepwalking, and lyme disease. She was on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision.

Her Death Certificate issued on May 8 listed the manner of death as "Accident" and the underlying cause as "Intracranial Hemorrhage". No contributing causes were listed. No autopsy was performed.

<div align="center">

## II. THE CLAIM

</div>

Her husband, claimant Gary Williams, filed a claim for accidental death benefits under a group accidental death policy issued through his employment at Blue Scope Steel. The plan administrator and claims payer was Unum Life Insurance Company of America ("Unum"). A copy of the claim was not provided in advance of this appeal. On July 24, 2018, Unum denied the claim on the ground that in their opinion, "her death was caused by, contributed to by or resulted from intoxication; it was not accidental and independent of any other cause." A copy of the denial letter is attached hereto as **Exhibit 1**.[1]

The denial letter stated under the heading "**The Claim Decision/Reasons for the Decision**":

> "Accidental Death benefits are not payable when the death is not accidental and independent of any other cause.

---

[1] All Exhibits are in a PDF binder and are bookmarked for convenience. A list of the exhibits appears on the first page of the binder.

UA-CL-AD&D-000620

In addition, there is an exclusion in the policy that applies to this claim.
The exclusion states that benefits are not payable when the loss was
caused by, contributed to by or resulted from intoxication.

At the time of your wife's fall, she had a blood alcohol content (SAC) of
0.337%. We have determined that based on the known impairments
caused by an elevated blood alcohol level, her death was caused by,
contributed to by or resulted from her intoxication; it was not
accidental and independent of any other cause."

Under the heading "**Information We Reviewed**", the letter continued:

"According to our medical review, a *non-tolerant individual* with a
blood alcohol content of 0.27% through 0.40% will likely experience
symptoms of stupor, which includes apathy; general inertia,
approaching paralysis; markedly decreased response to stimuli;
marked muscular incoordination; inability to stand or walk; vomiting;
incontinence of urine and feces; impaired consciousness; sleep or
stupor." (Emphasis added)

There is no evidence that the decedent had in fact suffered any of the symptoms
listed in this paragraph. It is important to note that the last paragraph quoted above
does not appear anywhere in the documents provided to counsel. It is unknown
where this information came from. Significantly, the decedent was not a "non-
tolerant individual" and any analysis based on the assumption that she was a "non-
tolerant individual" would likely be inaccurate.

The only information actually listed in the denial letter as having been reviewed
reviewed consisted of the Group Life and Accident Death Claim form, the Group Life
& Accidental Death policy, the Death Certificate, and the Jackson County Medical
Examiner's and Toxicology Report.

A copy of the version of the policy purportedly made available online to Blue Scope
employees is attached hereto as **Exhibit 2**. A copy of the Death Certificate is
attached as **Exhibit 3**. A copy of the Jackson County Medical Examiner Investigative
Report is attached as **Exhibit 4**. A copy of the Toxicology report is attached hereto
as **Exhibit 5.**

Significantly, Unum had the right to request an autopsy but did not do so (See
Exhibit 2 p. 12 and Exhibit 7 p. 2).

*Claimant Name: Kathy  Williams      Claim #:  14865967*

On September 6, 2018, claimant's counsel faxed a letter of representation to Unum and requested a copy of the Plan Document, Summary Plan Description ("SPD") and amendments, and Form 5500, and requested to know "when and [the] manner in which the SPD was provided to Blue Scope employees." A copy of the September 6, 2018 letter requesting these documents and information and stating the authority for the request is attached hereto as **Exhibit 6**.

No copy of the medical review was included with the denial letter, but a copy of a document entitled "Consulting Medical Referral" written by Marnie Webb, RN, Sr. CC on July 20, 2018 was provided to claimant's counsel upon his request on October 18, 2018 and is attached hereto as **Exhibit 7**.

In further response, Unum provided a copy of the policy and a copy of what it referred to as the SPD, a 58-page document without a usable table of contents (Exhibit 2). No separate document purporting to be the plan document of form 5500 were ever provided. A Unum representative told counsel for the claimant that it was up to the plan administrator to distribute the SPD to employees, and that he should contact Blue Scope directly.

On September 28, 2016, having not received the requested documents, counsel wrote a second letter which requested additional time for the appeal, which he was informed had to be filed by November 1, 2018. A copy of that letter is attached hereto as **Exhibit 8**. In response, counsel was told that we could add information to the appeal, but the appeal date could not be extended. On October 3, 2018, Maureen Turner of Unum sent a letter confirming that the last date for filing the appeal was November 1. A copy of that letter is attached hereto as **Exhibit 9**.

In a telephone conversation on October 9, 2018, Amy Hughes, the director of compensation for Blue Scope, told counsel that the plan description document had been made available online to the employees, but it was not distributed to them. The only document affirmatively distributed was a document entitled "Benefit Manual", which contains only a one-page description of the Accidental Death Benefit plan, does not describe any exclusions or limitations, and does not contain information regarding the plan administrator or the appeals process. A copy of the title page of the manual and the page that describes the accidental death plan is attached hereto as **Exhibit 10**. Ms. Hughes also stated subsequently that the only SPD ever made available to the employees was the one provided to counsel by Unum (Exhibit 2) that according to her was made available to plan participants online.

UA-CL-AD&D-000622

The table of contents of Exhibit 2 does not refer to page numbers. Anyone seeking to discover the exclusions in that document would have to go through it page by page. (The copy of the exhibit in the binder was bookmarked by counsel for the claimant.) This document does not appear to satisfy the ERISA requirement that a summary description of the plan that can be understood by the average employee.

Counsel emailed a letter to Blue Scope outlining his belief that the documents provided to employees regarding the accidental death benefit plan did not comply with the requirements of ERISA and the statutory and case law support for that position. A copy of that letter is attached hereto as **Exhibit 11**. Counsel did not receive any response to that letter.

The claimant has engaged a medical expert to review this case, but his report will not be available until after the appeal deadline has passed. Although Unum has stated they will permit claimant to add any further evidence to the appeal after the deadline, they have continued to refuse to extend the deadline itself. This may have the effect of not permitting claimant to include arguments in the appeal based on the medical opinion, which in turn could prejudice the result of the appeal.

The fact that counsel did not receive a legible copy of the medical referral document until nearly three months after the claim was denied, and the fact that counsel has still not received copies of the form 5500 requested in early September should have been more than an adequate justification for postponing the appeal date in this matter.

### III. Factual Bases of the Appeal

A. <u>The denial of the claim was based on incomplete and inaccurate information; it is therefore not substantially justified</u>

According to the denial letter, the denial was based in part upon the assumption that the decedent was a "non-tolerant" individual. It was assumed, apparently, that she experienced symptoms of "stupor, which includes apathy; general inertia, approaching paralysis; markedly decreased response to stimuli; marked muscular incoordination; inability to stand or walk; vomiting; incontinence of urine and feces; impaired consciousness; sleep or stupor." However, in the case of someone who consumes alcohol on a regular basis (i.e. a "tolerant" individual) the symptoms experienced are substantially different and considerably less severe. There is no evidence that this particular individual had any of the symptoms listed in the denial letter.

UA-CL-AD&D-000623

In addition, it was apparently assumed that Ms. Williams' fall was caused in significant part by her having been intoxicated. However, her medical records indicate that she also had a history of vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk, sleepwalking, and lyme disease; she was also on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision. The complete medical records were apparently never sought or reviewed.

Any one of these causes, none of which were excluded by the policy, or any combination of them, could have caused or significantly contributed to Ms. Williams' fall. The administrator did not obtain or review Ms. Williams medical records and therefore did no analysis of the extent to which the consumption of alcohol, as opposed to other causes, was (or were) the predominant cause of her fall.

Unum had the right to request an autopsy, but apparently did not do so according to the Medical Review. Exhibit 7 p. 2. We are therefore deprived of the information that would have been available if a full autopsy had been performed. It is virtually certain that such a procedure would have resulted in a much more information as to the cause of death. In any event, the Medical Examiner (ME) listed the immediate cause of death was an "Intracranial Hemorrhage", and the manner of death as "Accident" on the investigative report and on the Death Certificate. He did not list alcohol consumption or intoxication as a contributory cause or as a significant condition on either of these documents. The ME would obviously have the greatest opportunity to determine the cause of death and was presumptively qualified to make that determination. However, Unum's medical reviewer and claims administrator dismissed the ME's conclusions with virtual aplomb.

Unum's conclusion that the fall and/or Ms. Williams death was caused by intoxication was based solely on incomplete records, speculation by a medical reviewer, no autopsy, and is directly contrary to the conclusion of the ME. It is not justified and should be reversed.

### B. The policy language is ambiguous

The policy benefit is payable if an **accidental bodily injury** results in one or more of the covered losses listed below within 365 days from the date of the accident.

UA-CL-AD&D-000624

The plan "does not cover any accidental losses caused by, contributed to by, or resulting from:

...

- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. *This exclusion will not apply to you or your dependent if the chemical substance is ethanol.* [italics added.]

...

- being intoxicated." (Exhibit 2 p. 40)

....

"INTOXICATED means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred." (Exhibit 2 p. 46).

The confusion arises from the italicized language indicating that an accidental bodily injury caused by the ingestion of ethanol as opposed to other non-prescribed chemical or medication, *will be covered under the plan*. Since ethanol is the same substance that causes one to be intoxicated, it is not clear how ethanol as a cause can be covered, but an accident caused by or contributed by "being intoxicated" (resulting from ethanol) is not covered.

If being intoxicated at the time of any accident is an exclusion, then the language indicating the exclusion will not apply if the accident is caused by an unprescribed chemical and the chemical is ethanol becomes meaningless.

There is also a body of case law that calls into serious question whether the policy language excluding intoxication is enforceable as written. This issue will be discussed in a separate section of the appeal.

## C. The denial was not based on substantial evidence

The denial letter states:

"At the time of your wife's fall, she had a blood alcohol content (SAC) of 0.337%. We have determined that based on the known impairments caused by an elevated blood alcohol level, her death was caused by,

UA-CL-AD&D-000625

contributed to by or resulted from her intoxication; it was not
accidental and independent of any other cause.

**Information We Reviewed**

According to our medical review, a non-tolerant individual with a
blood alcohol content of 0.27% through 0.40% will likely experience
symptoms of stupor, which includes apathy; general inertia,
approaching paralysis; markedly decreased response to stimuli;
marked muscular incoordination; inability to stand or walk; vomiting;
incontinence of urine and feces; impaired consciousness; sleep or
stupor.

The medical examiner's report indicates that your wife had a history of
alcohol abuse with reported heavy drinking in the past year. At the
time of her passing, her BAC was more than four times the level
generally accepted as legal intoxication, and within the possibly fatal
range (0.31 % and higher).

We reviewed the following information in our evaluation of the claim:

• Group life and Accidental Death Claim form
• Bluescope Steel North America Corporation's Group life & Accidental
Death policy
• Certified Death Certificate
• Jackson County Medical Examiner's & Toxicology Report

There is no indication that Unum reviewed any medical records other than those
listed. The administrator nevertheless concluded that Ms. Williams' death was
caused by or contributed by her intoxication. Without anyone having witnessed the
accident, without an autopsy, and without knowing her complete medical history,
that conclusion amounts to no more than a guess.

Unum could have ordered an autopsy but did not do so. There can be little doubt
that a complete autopsy by a licensed pathologist would have far more detail and
certainty as to the cause of death than the analysis of Unum's medical reviewer, a
Registered Nurse, based only upon the incomplete information she reviewed.

Ms. Williams' medical history, as noted previously, included chronic vertigo, knee
problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk,

sleepwalking, and lyme disease, and that she was on medication including gabapentin, the side effects of which include sleepiness, dizziness, fatigue, clumsiness while walking, and visual changes, including double vision.

Any one of these causes, or any combination of them, could have caused or significantly contributed to the fall. The administrator did not obtain or review Ms. Williams medical records and therefore did no analysis of the extent to which the consumption of alcohol, as opposed to these other causes, was the predominant cause of her fall. The analysis was therefore based on speculation as to what the cause of death might have been, rather than any informed analysis of what it actually was.

The Medical Review (Exhibit 7) contains numerous instances of uncertainty that support our view that its conclusion was speculative, including the following:

> "2. Based on the information provided, did her being intoxicated cause, contribute to or result in the insured's death?
>
> -----Based on the available medical information, the cause of death of intracranial *hemorrhage is an assumed cause of death* based on scene findings. Although the circumstances of being found at the foot of a staircase with blood from the nose and mouth *could indicate* brain injury, blood from the nose and mouth *could have been caused* by non-fatal nose and mouth trauma without significant underlying brain injury. *Neither autopsy nor diagnostic testing was performed to confirm that the insured sustained intracranial hemorrhage*; therefore, the *cause of death of intracranial hemorrhage cannot be confirmed.* In addition, *because an autopsy was not performed, neither disease of the body nor acute alcohol intoxication can be excluded as cause of death.* (Exhibit 7 p. 2; italics added)

From this it appears that what the reviewer is downplaying the ME's conclusion by pointing out its uncertainty due to the fact that no autopsy was performed (something that Unum could have requested), and to introduce the possibility that acute alcohol intoxication *cannot be excluded.* But the conclusion that an excluded cause cannot be ruled out as a cause of death hardly rises to the level of certainty required to establish that it was the cause of death or even that it contributed to the death. It is speculation, not a considered opinion.

The review continued:

> "Regardless of cause of death, given that the insured's BAC was extremely elevated at more than four times the level generally accepted as legal intoxication and within the possibly fatal range (0.31% plus), it is reasonable that being intoxicated contributed to, if not caused, the insured's death as supported by the analysis below.
>
> • *If the insured died immediately or within a short period of time after the fall, the BAC of 0.337% is a reasonable estimation* of the BAC at the time of the fall. A BAC of 0.337% would result, at a minimum, in significant impairment in coordination, attention, reaction time, and balance that reasonably would have affected the insured's ability to navigate stairs safely, but alternatively could have resulted in a loss of consciousness that caused a fall or could have resulted in death in and of itself, resulting in terminal collapse with fall. (Italics added.)

Comment: This point starts out with "If the insured died immediately or within a short time", then her BAC would have affected her ability to navigate stairs or <u>could have</u> resulted in loss of consciousness. But clearly, none of these things is known. It is pure speculation. This point also confused the issue – the cause of death, as opposed to the cause of the fall, is what matters.

> • If the insured sustained a brain injury, as assumed by the medical examiner, that was not severe enough to result in immediate death, and the insured survived for a period in a comatose state, it is reasonable that whether the BAC was increasing or decreasing during the comatose state, given the insured's extreme level of intoxication at time of death, the possibly fatal alcohol level at a minimum, contributed to any respiratory and circulatory depression caused by the assumed brain injury and, therefore, contributed to the insured's death, or alternatively, if the brain trauma was mild, the extreme level of intoxication resulted in respiratory and circulatory impairment that actually caused death.

Comment: The Reviewer starts this point by speculating that *if* there was a brain injury, *and if* it was not severe enough to cause immediate death and the insured survived for a period of time, that alcohol contributed to respiratory and circulatory depression and contributed to death or caused death. <u>But none of the assumed facts are known</u>. The only things that are

UA-CL-AD&D-000628

<u>known</u> here are the fact that she fell down the stairs, which is an accident, and the fact that she died. This again is speculation.

> • The insured had a history of heavy alcohol use and, therefore, *could have had underlying disease* of the body, including heart and/or liver disease. It is reasonable that the insured's extreme level of intoxication would have contributed to any cardiorespiratory dysfunction caused by any underlying disease of the body.

Comment: Neither heart or liver disease was established in any way, nor was any cardiorespiratory dysfunction identified by anyone. This is pure speculation.

> • The insured had a history of *vertigo, which is disease of the body, and could have contributed to the fall*. The medical examiner did not document the status of this condition and there are no past medical records available for review to determine if this condition contributed to death. This condition would not have been expected to result in death in and of itself; therefore, alcohol intoxication would have been expected to contribute to death, as detailed above, in this instance also.

Comment: Here, the reviewer is again confusing contribution to the *fall* with contributing to the *death*. Vertigo, however, is <u>not an excluded cause,</u> and in any case, surely did not contribute to Ms. Williams death. If it *did contribute to her fall*, as we suggest it might have, the benefit should have been paid (see discussion of legal issues below).

Claimant will submit a medical opinion by an expert within the next two weeks in support of his position that the cause of death was the accident, and that the Medical Reviewer's analysis was speculation that forms an insufficient basis to deny the claim. The report is not available as of the deadline to submit this appeal, and therefore cannot be included.

## IV. LEGAL ISSUES PRESENTED

### D. The claimant relied on incomplete and erroneous information provided to him by the plan and was thereby prejudiced

Because the so-called SPD was never distributed to the claimant and because it was written in a manner that made it very difficult to understand, claimant was unaware

*Claimant Name: Kathy Williams        Claim #:  14865967*

UA-CL-AD&D-000629

of the limitations and exclusions buried within the language of the document. The only description he ever saw was Exhibit 10, which describes only the benefits of the plan. Since claimant knew of his wife's alcohol abuse, if he had known there was such an exclusion in the policy, he would have sought other insurance to cover the risk that she would be accidentally killed or disabled. Instead, he relied on Unum's plan, not suspecting that if he ever had to make a claim, he would be faced with such an obstacle. He was deprived of that opportunity because he was never provided with a summary plan description as required by the U.S. Code. The so-called SPD provided to counsel by Unum does not satisfy the requirements of ERISA. Under 29 U.S.C.A. §1021(a), employers are required to furnish to each participant covered under the plan a summary plan description written in a manner calculated to be understood by the average plan participant. See Exhibit 11, p. 2. This was simply never done.

### E. The claimant was given insufficient time to prepare and submit the appeal

The claim was denied on July 24, 2018. Claimant was not able to obtain legal representation until early September. Critical documents were not provided until October. Claimant was unable to locate a medical expert until mid-October. Given these delays, claimant's request for an extension of the time to appeal should have been granted but was not. As a result, this appeal is incomplete. In particular, it does not include analysis based on the conclusions of claimant's own medical expert, who has not yet completed his report.

### F. The policy definition was contrary to law. If the correct standard had been applied, the claim would have been granted

The federal courts have developed a significant body of law concerning the interpretation of insurance contracts and the administration of claim under ERISA since its enactment in 1974. It is well-established that the plan administrator and the claims administrator are plan fiduciaries who are obligated to deal fiduciarily and honestly with all plan members. *See, e.g. Kalda v. Sioux Valley Physician Partners, Inc.* (8th Cir. 2007) 481 F.3d 639. While the burden on the claimant is to provide evidence that the accident is covered, the administrator has to establish the existence of any exclusion that applies. *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658 (8th Cir.1992).

As the law has evolved, courts have interpreted the common language appearing in accidental death policies which states "if an employee is injured as a result of an

UA-CL-AD&D-000630

accident independent of all other causes" or similar language to mean that it is the injury, rather than the accident itself, that had to be independent of sickness and other causes. Thus, for example, a court found that even if a plan participant diagnosed with epilepsy had a seizure before drowning in a swimming pool, his death was covered by an accidental death plan, since the cause of death was accidental drowning, *regardless of whether the cause of the drowning itself was seizure or any other cause. Ferguson v. United of Omaha Life Ins. Co.* (2014) 3 F. Supp. 3d 474.

A 2008 case decided in the Tenth Circuit held that an insurer could not rely on the physical illness exclusion in a policy to deny an accidental death claim in a case where a seizure precipitated a car accident that resulted in the death of the participant, reasoning that it was a skull fracture that caused his death – even though a seizure had apparently caused the crash itself. *Kellogg v. Metropolitan Life Ins. Co.* (2008) 549 F. 3d 818 [45 Employee Benefits Cas. 2132].

A 2014 case decided by the Eighth Circuit held that the death of a plan participant from a mixed prescription drug intoxication was accidental and covered by an accidental death plan where the cause of death had been undetermined, based on the following ruling that the test of whether an injury is accidental is whether the decedent subjectively expected to suffer that injury. If he/she did not have such a subjective expectation, the injury suffered is deemed to be accidental. *Nichols v. Unicare Life and Health Ins. Co.* (2014) 739 F. 3d 1176. The Eighth Circuit Court of Appeals in *Nichols* cited to *McClelland v. Life Insurance Company of North America* (8th Cir. 2012), 679 F. 3d 755, in which the court overturned an administrative denial of a claim in which the insured decedent died driving a motorcycle at high speeds with an elevated blood alcohol level (.20) based on evidence of the insured's subjective state of mind (submitted in the form of affidavits from family, friends, and witnesses) that *he had no intention to die and did not believe death was likely to occur from his behavior from his motorcycle ride.*

The *Nichols* opinion reasoned that the intoxication exclusion should not apply for the following reasons:

### "C. Intoxication Exclusion

UniCare's final argument is that it can avoid paying benefits due to the plan's intoxication exclusion. The exclusion states that no benefit will be paid for a death that results from being intoxicated. "Intoxicated" is defined in the plan as "legally intoxicated as determined by the laws of

UA-CL-AD&D-000631

the jurisdiction where the accident occurred." Because it is an exception to coverage, UniCare has the burden of proving that the exclusion applies. *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658 (8th Cir.1992). We agree with the district court that UniCare did not meet this burden. Arkansas law defines intoxication with reference only to the public offenses of drunk driving and public intoxication. *Jones Truck Lines, Inc. v. Letsch,* 245 Ark. 982, 436 S.W.2d 282, 284 (1969). Dana's death involved neither. We view the common and ordinary meaning of the policy language as a reasonable person in the position of the plan participant would have understood the words to mean. *Adams v. Cont'l Cas. Co.,* 364 F.3d 952, 954 (8th Cir.2004). A reasonable plan participant would have understood that the plan's intoxication exclusion *is intended to apply to death caused by committing acts, such as driving, while intoxicated;* not to situations where the immediate cause of death is ingestion of a lethal mixture of drugs that have been prescribed for use by the decedent. *See Sheehan,* 372 F.3d at 967 (finding that exclusion for loss resulting from being under the influence of a controlled substance was "intended to apply to death caused by, for example, driving while intoxicated, not to the accidental ingestion of a controlled substance"). The district court correctly found that UniCare had not proven that the exclusion should be used to deny coverage." *Id.* at 1183-4.

As in *Nichols,* the claimant in this case met his burden to establish his entitlement to the accidental death benefit. Unum, on the other hand, has brought forth no evidence to show that Kathy Williams intended to harm herself. She was behaving in a manner similar to her usual custom over the past year prior to her death. She was found with a broken glass which she was apparently holding when she fell down the stairs. There is no reason whatsoever that could support the idea that she intended to harm herself that day.

An appendix including the *Nichols, Kellogg, and Ferguson* opinions is included with the brief and exhibit binder.

Both the decedent in the *Nichols* case and in this case were "intoxicated" as defined by their respective policies. But the critical issue courts have identified in these cases is the subjective state of mind of the decedent/insured, *not* whether they were legally intoxicated. The manner of death determined by the medical examiner on the Death Certificate was "accident". Exhibit 3. There is no substantial reason to conclude that Ms. Williams' death was caused by anything other than her fall.

UA-CL-AD&D-000632

**G. The ambiguity in policy language requires the policy to be interpreted as a reasonable person in the position of the plan participant would have understood it.**

The *Kellogg* case, cited above confirms the requirement under ERISA that where there is ambiguous language in the policy:

> "'[i]nsurance contracts, because of the inequality of the bargaining position of the parties, are construed strictly against the insurer.'
>
> ...the proper inquiry is not what [the insurer] intended a term to signify; rather, we consider the common and ordinary meaning as a reasonable person in the position of the [plan] participant would have understood the words to mean." *Kellogg, supra.* at p. 830.

The participant in this case had the right to assume based upon the information he was given and the ambiguous language contained in the exclusion section, discussed previously, that the accidental death plan covered his wife in the event she died as the result of an accident. Falling down stairs is an accident. The only reliable evidence is that Kathy Williams died as a result of falling down the stairs, that her fall was accidental, and that she would not have died except for that accident. The plan should therefore cover the death of Kathy Williams.

## V. CONCLUSION

For the reasons stated herein, the denial of this claim was arbitrary and not supported by substantial evidence. It was therefore unjustified, either factually or legally. It should be reversed, and the benefit paid.

BLAKEMAN LAW

_____
Benjamin Blakeman
Counsel for Claimant, Gary Williams

*Claimant Name: Kathy Williams    Claim #: 14865967*

```
                                  Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Direct Services          Name: RTC Request
Status: Completed
Original Notify Date: 11/01/2018
Notify Date: 11/01/2018
Due Date:
Subject: 326P CCC ATT 03 CB
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Turner, Maureen
Action:

Request Fields
------------------------------------------------------------------------
Request: Vollkommer-Haley, Ursula 11/01/2018 15:26:46: Claim Documentation Form
Call Received From      Benjamin Blakeman Attorney      Relationship to Insured

Telephone    CB 213 629 9922
Message    ATT CI to get an email address to send in appeal    IAC  that  I would
reach out to appeals specialist & mgr for assistance, appeals specialist & mgr
unavail so i would request a CB today    ATT sadi ok i guess that will have to do




Created By: Vollkommer-Haley, Ursula
Created Date: 11/01/2018 15:26:46          Create Site: Portland

Response Fields
------------------------------------------------------------------------
Response: Turner, Maureen 11/02/2018 11:46:13: returned call



Completed By: Turner, Maureen
Completed Date: 11/02/2018 11:46:13          Complete Site: Chattanooga
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000634

```
                                  Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 11/02/2018
Notify Date: 11/02/2018
Due Date:
Subject: OTC to Atty- left vmm
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
-----------------------------------------------------------------------
Request: Turner, Maureen 11/02/2018 12:06:35: OTC to Atty- left vmm

Created By: Turner, Maureen
Created Date: 11/02/2018 12:06:35      Create Site: Chattanooga

Response Fields
-----------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Attorney
Reason for Call: Ongoing Contact
Call Outcome: Left Message
Comments: Turner, Maureen 11/02/2018 12:06:35: 11/2/18, 11:54am-
Called Mr. Blakeman at 213-629-9922. Received his vm. Left a message confirming
receipt of his emails with appeal and attachments. I noted he is requesting
additional time to submit additional info. His appeal letter states he will submit
the additional info within the next 2 weeks. I will send a letter that will confirm
his request for an extension and we will allow an extension of 30 days to provide
additional info. Provided my number should he have any questions.


Maureen Turner




Completed By: Turner, Maureen
Completed Date: 11/02/2018 12:06:35      Complete Site: Chattanooga
```

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000635

```
                                    Activity
-------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Personal          Name: General
Status: Completed
Original Notify Date: 11/02/2018
Notify Date: 11/02/2018
Due Date:
Subject: New appeal request
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Folsom, Sharon
Action:

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 11/02/2018 07:28:06: Please set up a new appeal with a
received date of 11/1/18 and send ack letters. EE is attorney represented.
Thank you,
Maureen

Created By: Turner, Maureen
Created Date: 11/02/2018 07:28:06        Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Folsom, Sharon 11/02/2018 12:07:18: Appeal entered & assigned to LAS.
Per call from LAS,  no appeal acknowledgment letter will need to be sent via
Support Staff...LAS will send letter instead.


Completed By: Folsom, Sharon
Completed Date: 11/02/2018 12:07:18      Complete Site: Chattanooga
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000636

```
                              Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeals ERISA Extension Letter - Attorney

Status: Final

Date: 2018-11-02

Notes: Appeal Ext- atty requests

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018110212224869291E
Delivery Date: 11/02/2018 15:15:06
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018110212224869291E
Delivery Date: 11/02/2018 12:25:37
Delivery Status: Fax: Sent; Success
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000637

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



November 2, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:    Williams, Kathy
       Claim Number:      14865967
       Policy Number:     382480
       Unum Life Insurance Company of America

Dear Mr. Blakeman:

Thank you for your letter of November 01, 2018 concerning the appeal of your client's Group Accidental Death Insurance claim submitted for Kathy Williams. We approve your request for an extension to submit additional information.

We are approving an extension until December 02, 2018 to submit additional information. Our appeal review period will begin the day after the deadline or after we receive all additional information, whichever occurs first.

If you have questions, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy Williams      Claim #:  14865967

UA-CL-AD&D-000638

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018112707074267C54D

Entry Date: 11/27/2018 07:07:43

Received Date: 11/27/2018

Date Added to Claim: 11/27/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal- email from atty w/info

Work Notes:

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000639

**Turner, Maureen**

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Wednesday, November 21, 2018 2:50 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Supplement to Williams Appeal |
| **Attachments:** | Supplement to Appeal of Denial of Claim.pdf |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Turner: Attached hereto please find the Supplement to the Appeal of Unum's denial of the claim of Kathy Williams, including the medical opinion report of Dr. Ken Starr. The report and Dr. Starr's CV are bookmarked for convenience. Please confirm your receipt of this material and that you are able to access the file. Thank you for your cooperation in this matter.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

8383 Wilshire Blvd., Ste. 510
Beverly Hills, CA 90211
Telephone: 213-629-9922
Facsimile: 213-232-3230
Email: ben@lifeinsurance-law.com
Website: www.lifeinsurance-law.com

Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000640

```
                              Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018112707090118C54D

Entry Date: 11/27/2018 07:09:02

Received Date: 11/27/2018

Date Added to Claim: 11/27/2018

Primary Doc Type: Medical

Secondary Doc Type: Supplemental Proof

Medical Provider:

Document Notes: Appeal supplement

Work Notes:
```

UA-CL-AD&D-000641

**BLAKEMAN LAW**

8383 Wilshire Blvd., Ste. 510
Beverly Hills, California 90211



*Life Insurance, investment, and financial*
*elder abuse litigation*
web: www.lifeinsurance-law.com

Phone: 213-629-9922
Fax:    213-232-3230
email: ben@lifeinsurance-law.com

November 21, 2018

**Via Email to maturner@unum.com**
The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058

ATTN: Maureen Turner

> **Re:   Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

**To the Administrator:**

As a supplement to the appeal filed previously in this matter, we are submitting
herewith the Medical Opinion Report of Ken Starr, M.D. dated November 12, 2018
(attached hereto). As you will see from this report, Dr. Starr is board certified in
Addiction Medicine and Emergency Medicine and is the founder and president of
Ken Starr MD Wellness Group, a leading provider of outpatient drug and alcohol
treatment services. As such, Dr. Starr is extremely well-qualified to render an expert
opinion in this matter.

Dr. Starr reviewed all available medical reports on Kathy Williams, including the
review submitted by Marnie Webb RN upon which UNUM based its denial of the
claim. Contrary to that review, Dr. Starr believes that it is extremely unlikely and
unreasonable to assume that the alcohol level itself contributed to Ms. Williams
death. He further concludes that the opinion that respiratory depression induced
from alcohol caused Ms. Williams death to be gross speculation with no medical
basis. With respect to Nurse Webb's statement that alcohol use caused heart or liver
disease, and that that disease may have caused 'cardiorespiratory dysfunction'

UA-CL-AD&D-000642

resulting in death, Dr. Starr points out that there was no evidence of anemia or liver dysfunction, and no factual evidence to support Nurse Webb's assumptions that these organs were diseased. Dr. Starr also believed that as to Nurse Webb's conclusion that alcohol must have caused Ms. Williams' death, there was 'no reasonable medical foundation on which to make this statement.'

It was Dr. Starr's opinion that with a reasonable degree of medical certainty, Kathy Williams died as a result of injuries sustained from her fall, and that she did not die from alcohol intoxication or from medical problems related to alcoholism.

It is therefore evident that the denial of this claim was based either entirely or in significant part upon a very questionable medical opinion rendered by someone with far fewer qualifications than those of Dr. Starr. Dr. Starr's opinion should be therefore entitled to carry considerable weight, and that opinion further supports the arguments previously submitted in support of reversing the previous denial of this claim.

We therefore again request that Unum reverse its denial of this claim.

Dated: November 21, 2018          Respectfully submitted,

                                  BLAKEMAN LAW

                                  _____
                                  Benjamin Blakeman
                                  Counsel for Claimant, Gary Williams

Ken Starr M.D, FACEP, ABAM

Medical Opinion Report

Date: 11/12/18

RE: Kathy Williams Death Redacted DOD 4/27/18

Dear Mr. Blakeman,

Thank you for the opportunity to provide a medical opinion regarding your case involving Kathy Williams.

Attached is a recent CV illustrating my qualifications for rending the following medical opinions. I attest to the fact that I have an unrestricted medical license in the State of California. I am in full-time active practice and Board Certified in both Addiction Medicine and Emergency Medicine. I currently operate an outpatient Drug and Alcohol Treatment facility as well as work in the Emergency Department as an attending physician.

At your request, I have reviewed the above matter. In my review, I have had the opportunity to inspect the following materials:

**Documents Reviewed:**
1. Neurology consultation note Dr. Rowe 12/8/15
2. Medical Review by Marnie Webb RN
3. Jackson County Death Certificate
4. Midwest Sleep Specialist Note 1/18/18
5. Jackson County Medical Examiner Investigative Report
6. Children's Mercy Hospital Drug Toxicology Report
7. Internal Medicine Progress Note by Dean Mundhenke MD
8. Ambulatory Summary; unknown date
9. Quest Lab Results 8/14/09 & 11/09/09

**Brief Summary:**

Kathy Rae Williams was a 60-year-old female resident of Independence, Missouri. She had been under the care of Dr. Dean Mundhenke of Blue Springs Internal Medicine, Dr. Steven Hull of Midwest Sleep Specialists, and Dr. Vernon Rowe of Consultants in Neurology. Ms. Williams's chronic medical problems and recent medications are outlined below.

On April 27th of 2018 at approximately 16:50, Ms. Williams was found dead, lying supine at the bottom of a staircase in her home. There was evidence of a fall injury as noted by facial trauma,

1

UA-CL-AD&D-000644

broken glass and lacerations to her right hand. Additionally, there was a hole noted in the staircase wall.

Her husband had last spoken to her around noon that day. She did not answer the phone at approximately 3 pm when he called the house. There was no mention of the patient being ill or injured during the noon conversation.
Laboratory studies performed the next day showed a blood alcohol level of 337 mg/dl, and a drug screen remarkable for Sertraline (Antidepressant), Norsertraline (a breakdown product of Sertraline) and Caffeine

No autopsy was performed. However, the cause of death was listed as an "Accident" with the immediate cause of death being " Intracranial Hemorrhage".

**Cause for Action:**
The cause for legal action is an Accidental Death Policy from Unum that was in place at the time of Mrs. Williams' death that contains an exclusion if the cause of death was *"caused by, contributed to, or resulted from .. being intoxicated."*


**Kathy Williams' Brief Medical History as documented in the provided records is outlined below.**

**Documented Past Medical History**:
Headaches
Dizziness: *onset date 4/06*
Obesity
Vertigo
Obstructive Sleep Apnea
Brachial Neuritis
Dizziness: *onset date of 4/06*
Concussion without loss of Consciousness
Incoordination: *date of onset 5/07*
Chronic Neck & Back Pain
Cervical and Lumbar Spondylosis
Paresthesias: *date of onset 6/07*


**Social History**:
Never smoked or used smokeless tobacco
Regular Alcohol Drinker (Heavier Drinker in the past year according to Husband)
Married

2

UA-CL-AD&D-000645

**Medications Documented:**
Vitamin D3: 1000 units daily
Vitamin B12: 1000 mcg daily
Vitamin A and Vitamin D2
Gabapentin: 100mg capsule. 200mg three times daily
Ibuprofen: 200mg every 6 hours as needed
Zoloft: 100mg tablet
Multivitamins
Lorazepam 1mg tablet
Celecoxib 200mg tablet
Sertraline 50mg tab

**Opinion on the Review submitted by Marnie Webb RN**

1. Ms. Webb first concludes that the alcohol level itself may have resulted in a loss of consciousness or death alone based solely on the blood alcohol level. This is extremely unlikely and unreasonable to assume. Regular and heavy drinkers can comfortably tolerate this level and are at no imminent risk of death or loss of consciousness from this level alone. In this situation, Mrs. Williams would have had to ambulate to the top of the stairs, then suddenly have her alcohol level abruptly render her unconscious. This is highly improbable.

2. In Ms. Webb's second example, she contends that the alcohol may have contributed to Mrs. Williams' death in the event she was rendered comatose from her fall, then the alcohol could have caused respiratory depression. And it was this respiratory depression induced from her alcohol intoxication that caused her death. This gross speculation has no medical basis. If the patient was walking, then fell and died from a closed head injury, it was the head injury that was the proximate cause of her death.

3. Ms. Webb's third example pertains to the possibility that alcohol use caused heart and/or liver disease. It was this underlying disease that may have caused "cardiorespiratory dysfunction" resulting in her death. There is no factual evidence in the medical record to support these assumptions. In fact, all relevant blood work from September of 2015 was normal. There was no evidence of anemia or liver dysfunction. "Extreme level of intoxication" does not cause underlying diseases of the body without measurable abnormalities which were not present.

4. In the last example, Ms. Webb states vertigo would not have caused the death, therefore alcohol must have. There is no reasonable medical foundation on which to make this statement. This is nonsensical and has no scientific or medical basis.

3

UA-CL-AD&D-000646

**Summary and Medical Opinion:**

I . Kathy William suffered from a number of chronic medical conditions, as well as took prescribed medications, and drank alcohol regularly. All of these factors may individually or in combination have caused or contributed to her accident.

II . The insured had a documented history of "dizziness", "Vertigo", and "incoordination". These diseases of the central nervous system are associated with a higher risk of falling. The risk of falling would reasonably increase in the setting of navigating stairs. These medical problems can affect balance, coordination, gait and the perception of movement.

III. The insured had a documented history of taking medications which used alone or in combination could contribute to sedation and difficulties with ambulation. Lorazepam is a benzodiazepine central nervous system depressant. Gabapentin is a GABA analog which is used for a multiple of reasons. Gabapentin decreases nerve pain, relieves anxiety, and also causes sedation. Like lorazepam, Gabapentin is a central nervous system depressant. A side effect of these types of medications is sedation.

IV . The blood alcohol level at the time of death was 337 mg/dl. A level of 337 mg/dl is markedly elevated. A level this high is known to impair gait, balance, and coordination. (M. Nieschalk. Effects of alcohol on body-sway patterns in human subjects. *Int J Legal Med* (1999) 112. 253-260). ( P Michele da Silva. Alcoholism: effects on the cochleo-vestibular apparatus. *Braz Journal Otorhinolaryngology.* 2010.76(2): 148-55.)

V . A blood alcohol level in this range in a regular drinker is not fatal. In fact, depending on tolerance, a person with this blood alcohol level may not even act or appear intoxicated. (J Brick. Intoxication Is Not Always Visible. *Alcoholism: Clinical and Experimental Research.* Vol 33 No. 9. Sept 2009).

VI . With a reasonable degree of medical certainty, it can be assumed Kathy Williams died from injuries sustained from her fall. The cause of death may have been from an intracranial hemorrhage as noted by the Medical Examiner. However, The cause of death could have been from any number of traumatic injuries or medical events. Traumatic causes could include cervical spine fracture, solid organ injury, or internal bleeding. Medical problems, for example, could have included stroke, or myocardial infarction, or simply a syncopal episode resulting in the fall.

VII . The proximate cause of the accident cannot be determined with any degree of medical certainty. Multiple factors may have been involved which caused or contributed to her fall. It is

4

UA-CL-AD&D-000647

accurate to attest to the fact that Ms. Williams did not die from alcohol intoxication or from medical problems directly related to alcoholism.

My opinions are within a reasonable degree of medical certainty and are based on the materials I have reviewed. If you have any questions please feel free to contact me.

Sincerely,

Ken Starr MD FACEP ABAM

5

UA-CL-AD&D-000648

Ken Starr M.D. FACEP ABAM
Ken Starr MD Wellness Group
107 Nelson Street
Arroyo Grande, CA 93420
ken@kenstarrmd.com
805-242-1360

**Professional
Experience:**

Founder and President of Ken Starr MD Wellness Group
107 Nelson Street
Arroyo Grande, CA                Sept 2012-Present
Kenstarrmd.com
Leading Provider of Outpatient Drug and Alcohol Treatment Services on the
California Central Coast. The clinic is a state licensed and CARF accredited
facility providing Intensive Medical Detox, PHP, IOP and Outpatient addiction
care in addition to wellness infusions and IV Therapies.

Founding Medical Director of "The Haven at Pismo"
https://www.thehaven.com/  2/16-11/17
The Haven is a Joint Commission accredited residential recovery program on
the Central California Coast offering both inpatient and outpatient levels of care.
Original founding Medical Director.

Marian Medical Center-Dignity Health
1400 East Church Street
Santa Maria, CA 93454
*Addiction Medicine Consultant* 8/17-Present. I provide inpatient physician
consultations, coordinate discharge planning for addiction patients, and
participate in family practice residency training in addiction medicine.

Arroyo Grande Community Hospital-Dignity Health
345 S Halcyon Rd
Arroyo Grande, CA 93420
*Addiction Medicine Consultant* 8/17-Present. I provide inpatient physician
consultations and assist with discharge planning for addiction patients.

French Hospital Medical Center-Dignity Health
1911 Johnson Ave.
San Luis Obispo, CA 93401
*Addiction Medicine Consultant* 8/17-Present. I provide inpatient physician
consultations and assist with discharge planning for addiction patients. Currently
developing and implementing an initiative on buprenorphine induction for
hospitalized and Emergency Department patients.

Santa Ynez Valley Cottage Hospital
2050 Viborg Road
Solvang, CA 93463 1/17-Present
*Emergency Medicine Physician*-Part Time

Central Coast Emergency Physicians
Sierra Vista Hospital in San Luis Obispo, CA
Twin Cities Hospital in Templeton, CA
105 S Main St. *Emergency Medicine Physician*
Templeton, CA 93465      Dates 9/10-Present

UA-CL-AD&D-000649

Department of Veterans Affairs
Roseburg VA Medical Center
913 NW Garden Valley Blvd
Roseburg, Oregon 97471
Attending Emergency Department  Dates: 4/10-12/12

Oregon Health & Sciences University School of Medicine
Affiliate Assistant Professor Department of Emergency Medicine
November 1, 2009 to 2010. Clinical Instructor

Eugene Emergency Physicians
Sacred Heart Medical Center
PO BOX 5920
Eugene, OR 97405              Dates: 9/01-8/31/10
Full-Time Attending Physician

Lebanon Community Hospital
525 N. Santiam Hwy.
Lebanon, OR 97355             Dates: 7/00-9/01
Full-Time Attending Physician

| | |
|---|---|
| **Board Certification:** | **Board Certified in Addiction Medicine**<br>The American Board of Addiction Medicine 11/2014-2024<br>**Board Certified in Emergency Medicine**<br>The American Board of Emergency Medicine 2001-2011<br>Recertification 12/11-12/21 |
| **Presentations:** | *The NAD+ Infusion Solution for Detox and Early Recovery.* Poster Presentation 2017 NAADAC Annual Conference. Denver Colorado 9/17<br><br>IV Nutritional Therapy for Physicians. Clinical Applications and Advanced Topics of IV Nutrient Therapies. Addiction and Chronic Neurological Disease. October 2017. *NAD and Addiction Management.*<br><br>*The Opiate Epidemic: Past, Present, and Future.* Central Coast Trauma, Critical Care & Emergency Medicine Series. November 2016. French Hospital |
| **Residency:** | Texas Tech University Health Sciences Center<br>Department of Emergency Medicine<br>Thomason Hospital<br>4815 Alameda Ave.<br>El Paso, TX 79905              Dates: 7/97-6/00 |
| **Medical School:** | Texas Tech University Health Sciences Center<br>School of Medicine<br>3601 4th Street<br>Lubbock, TX 79430            Dates: 8/93-5/97 |
| **Undergraduate:** | University Of Colorado<br>Boulder, CO<br>B.A Molecular, Cellular, and Developmental Biology Dates: 8/88-5/92 |

UA-CL-AD&D-000650

**State Licensure:**

| | | |
|---|---|---|
| **California Medical License   A105044** | **issued 7/30/08** | **expires 10/19** |
| Oregon Medical License   MD2232 | issued 4/00 | expired12/13 |
| Hawaii Medical License MD-1005 | issued 4/17/00 | expired 1/31/10 |
| Texas Medical License K5407 | issued 8/22/98 | expired 2/28/02 |

**Professional Memberships:**

| | |
|---|---|
| American College of Emergency Physicians 1/96-06/18 | |
| American Board of Emergency Medicine | 4/01-Present |
| American Society of Addiction Medicine | 9/12-Present |
| California Society of Addiction Medicine | 9/12-Present |

**Civic Activities:** Member of the San Luis Obispo County Opioid Coalition, Medication Assisted Treatment Team and Safe Prescribing Committee. 12/16-Present

Contracted County Provider of Medication Assisted Treatment Services 8/17-Present

San Luis Obispo Elks Club

UA-CL-AD&D-000651

```
                                        Activity
        ----------------------------------------------------------------------------
        Checked/Unchecked Indicator: No
        Type: Phone Call          Name: Phone Call Details
        Status: Completed
        Original Notify Date: 11/27/2018
        Notify Date: 11/27/2018
        Due Date:
        Subject: OTC to atty - left vmm
        Upon Completion Notify Linked Claim Owner(s): No
        Mark As Priority: No
        Activity Owner: Turner, Maureen
        Action:

        Request Fields
        --------------------------------------------------------------------
        Request: Turner, Maureen 11/27/2018 11:22:32: OTC to atty - left vmm

        Created By: Turner, Maureen
        Created Date: 11/27/2018 11:22:32        Create Site: Chattanooga

        Response Fields
        --------------------------------------------------------------------
        Call Type: Placed Call To
        Person Contacted: Attorney
        Reason for Call: Ongoing Contact
        Call Outcome: Left Message
        Comments: Turner, Maureen 11/27/2018 11:22:32: 11/27/18, 11:20am-
        Called Mr. Blakeman (213-629-9922) to confirm receipt of his email and supplemental
        info for the appeal. Received vm- left a message.

        Maureen Turner


        Completed By: Turner, Maureen
        Completed Date: 11/27/2018 11:22:32        Complete Site: Chattanooga
```

UA-CL-AD&D-000652

```
                                    Activity
-----------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Appeal        Name: Extension
Status: Completed
Original Notify Date: 12/03/2018
Notify Date: 12/03/2018
Due Date:
Subject: Appeal Ext- atty requests
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
------------------------------------------------------------------------
Begin Date: 11/01/2018
Request: Turner, Maureen 11/02/2018 12:08:21: provided atty with a 30-day ext to
submit additional info; appeal timeframe will begin after info is rec'd or after
timeframe expires; whichever comes first

Created By: Turner, Maureen
Created Date: 11/02/2018 12:08:21       Create Site: Chattanooga

Response Fields
------------------------------------------------------------------------
End Date: 11/21/2018
Response: Turner, Maureen 12/04/2018 10:06:47: info rec'd from atty 11/21/18;
appeal review period begins 11/22/18 and will end on 1/20/19


Completed By: Turner, Maureen
Completed Date: 12/04/2018 10:06:47       Complete Site: Chattanooga
```

```
                              Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeals ERISA Extension Letter - Attorney

Status: Final

Date: 2018-12-04

Notes: Appeals ltr; appeal time begins 11/22/18

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018120410114205292E
Delivery Date: 12/04/2018 12:23:40
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018120410114205292E
Delivery Date: 12/04/2018 10:15:40
Delivery Status: Fax: Sent; Success
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



December 4, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:   Williams, Kathy
      Claim Number:      14865967
      Policy Number:     382480
      Unum Life Insurance Company of America

Dear Mr. Blakeman:

We are writing about the appeal on your client's Group Accidental Death Insurance claim. We previously provided you with an extension of time to submit additional information to be considered on appeal.

The additional information you wanted to submit was received on November 21, 2018. Therefore, our appeal review period started on November 22, 2018 and will end on January 20, 2019.

When we complete our appeal review, we will send you our decision in writing.

If you have questions, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

Claimant Name: Kathy  Williams     Claim #:   14865967

------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Legal          Name: Atty-Client Privileged Consult-Other
Status: Completed
Original Notify Date: 12/04/2018
Notify Date: 12/04/2018
Due Date:
Subject: Atty-Client Privileged Consult
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Kirby, Kyle
Action:

# Attorney-Client Privileged

Created By: Turner, Maureen
Created Date: 12/04/2018 13:33:58          Create Site: Chattanooga

# Attorney-Client Privileged

Claimant Name: Kathy  Williams     Claim #:  14865967



# Attorney-Client Privileged

Completed By: Kirby, Kyle
Completed Date: 12/04/2018 15:16:18      Complete Site: Portland

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018121014535444C54D

**Entry Date:** 05/22/2018 12:07:05

**Received Date:** 05/22/2018

**Date Added to Claim:** 12/10/2018

**Primary Doc Type:** Medical

**Secondary Doc Type:** Death Certificate

**Medical Provider:**

**Document Notes:** CDC

**Work Notes:**

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000658

LOCAL REGISTRAR
JACKSON COUNTY HEALTH DEPT
313 S LIBERTY ST
INDEPENDENCE MO 64050



MISSOURI DEPARTMENT OF HEALTH
AND SENIOR SERVICES
FEE RECEIPT
DEATH CERTIFICATION

REGISTRANT(S):

FLORAL HILLS FUNERAL HOME          KATHY RAE WILLIAMS
7000 BLUE RIDGE BLVD.              D9999-999999
KANSAS CITY MO  64133             1 COPY

MO 580-0698 (2-12)

## YOUR RECENT REQUEST HAS BEEN ACTED UPON AS INDICATED BELOW:

| DATE RECEIVED | TOTAL AMOUNT | AMOUNT THIS REQUEST | PROCESSING FEE REQUIRED | REFUND |
|---|---|---|---|---|
| 05/08/2018 | 10.00 | 13.00 | 0.00 | 0.00 |

**UNAPPLIED REMITTANCES ONLY VALID FOR ONE YEAR AFTER RECEIPT.** When you inquire about your request, please return this receipt. If a refund is indicated, it will be mailed within 30 to 60 days.

---

### MISSOURI

## CERTIFICATION OF DEATH

**DATE FILED:** MAY 8, 2018          **STATE FILE NUMBER:** 124-18-014772

**DECEDENT NAME:** KATHY RAE WILLIAMS          **SEX:** FEMALE

**DATE OF DEATH:** APRIL 27, 2018          **COUNTY OF DEATH:** JACKSON

**DATE OF BIRTH:** Redacted          **MARITAL STATUS:** MARRIED          **EVER IN ARMED FORCES:** NO

**SOCIAL SECURITY NUMBER:** Redacted          **RESIDENCE ADDRESS:** 18216 E 51ST ST CT S INDEPENDENCE, MISSOURI

**SURVIVING SPOUSE:**
**(IF WIFE, MAIDEN NAME):** GARY L WILLIAMS
**FUNERAL HOME:** FLORAL HILLS FUNERAL HOME
**UNDERLYING CAUSE (ICD CODE):**          **MANNER:** ACCIDENT
INTRACRANIAL HEMORRHAGE

ISSUED ON BEHALF OF MO DEPT HEALTH & SENIOR SERVICES: JACKSON

THIS IS A TRUE CERTIFICATION OF NAME AND DEATH FACTS AS RECORDED BY THE BUREAU OF VITAL RECORDS, JEFFERSON CITY, MISSOURI.

**DATE ISSUED:** MAY 8, 2018

Craig B. Ward
State Registrar of Vital Statistics

THE REPRODUCTION OF THIS DOCUMENT IS PROHIBITED BY LAW.
ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATION.

---

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000659

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018121111580079DA48

**Entry Date:** 12/11/2018 11:58:00

**Received Date:** 12/11/2018

**Date Added to Claim:** 12/11/2018

**Primary Doc Type:** Medical Records Request

**Secondary Doc Type:** Medical Records Request

**Medical Provider:**

**Document Notes:** Midwest sleep spec- auth needed

**Work Notes:**

---

*Claimant Name: Kathy Williams    Claim #:  14865967*

UA-CL-AD&D-000660

| From: | MRU |
|---|---|
| Sent: | Tue, 11 Dec 2018 11:55:47 -0500 |
| To: | PegaAutomation - PPK68SN4 |
| Subject: | FW: Unum ID: 14865967 - ACTION REQUIRED: Authorization Request |
| Attachments: | autho18327005.pdf |
| Importance: | High |

From: Med Recs - Unum
Sent: Tuesday, December 11, 2018 11:55:23 AM (UTC-05:00) Eastern Time (US & Canada)
To: MRU
Subject: Unum ID: 14865967 - ACTION REQUIRED: Authorization Request

Name: WILLIAMS, KATHY
Policy/Claim/Cert: 14865967
Ins. Co: Unum Life Insurance Company of America
Provider Zip Code: MIDWEST SLEEP SPECIALISTS

Req By: Maureen Turner

Please note that the record retrieval on this patient has been suspended because the medical provider has requested a signed Facility-Specific HIPAA authorization form.

A copy of the form is attached for your reference. When you receive the signed HIPAA authorization, you can either forward it to MRU by emailing it to authos@releasepoint.com or uploading it via the RPNet website.

Thank you.

---------------------------------------------------------------------------------------

The information contained in this electronic mail message is intended solely for the addressee stated above and may contain information that is confidential, privileged, or otherwise protected from disclosure under applicable law. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this electronic mail transmission is strictly prohibited.

*Claimant Name: Kathy Williams    Claim #: 14865967*

 **ùnùm**®

The Benefits Center
P.O. Box 100158          4801601
Columbia, SC 29202-3158
Toll-free: 1-800-858-6843   Fax: 1-800-447-2498
Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time)

Please sign and return this authorization to The Benefits Center at the address above. You are entitled to receive a copy of this authorization. This authorization is designed to comply with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule.

### Authorization to Collect and Disclose Information
### *(Not for FMLA Requests)*

**I authorize the following persons:** health care professionals, hospitals, clinics, laboratories, pharmacies and all other medical or medically related providers, facilities or services, rehabilitation professionals, vocational evaluators, health plans, insurance companies, third party administrators, insurance producers, insurance service providers, consumer reporting agencies including credit bureaus, GENEX Services, LLC, The Advocator Group and other Social Security advocacy vendors, professional licensing bodies, employers, attorneys, financial institutions and/or banks, and governmental entities;

**To disclose information,** whether from before, during or after the date of this authorization, about my health, including HIV, AIDS or other disorders of the immune system, use of drugs or alcohol, mental or physical history, condition, advice or treatment (except this authorization does not authorize release of psychotherapy notes), prescription drug history, earnings, financial or credit history, professional licenses, employment history, insurance claims and benefits, and all other claims and benefits, including Social Security claims and benefits ("My Information");

**To Unum Group and its subsidiaries,** Unum Life Insurance Company of America, Provident Life and Accident Insurance Company, The Paul Revere Life Insurance Company, and persons who evaluate claims for any of those companies ("Unum");

**So that Unum may evaluate and administer my claims, including providing assistance with return to work.** For such evaluation and administration of claims, this authorization is valid for two years, or the duration of my claim for benefits (to include any subsequent financial management and/or benefit recovery review), whichever is shorter. I understand that once My Information is disclosed to Unum, any privacy protections established by HIPAA may not apply to the information, but other privacy laws continue to apply. Unum may then disclose My Information only as permitted by law, including, state fraud reporting laws or as authorized by me.

**I also authorize Unum to disclose My Information to the following persons** (for the purpose of reporting claim status or experience, or so that the recipient may carry out health care operations, claims payment, administrative or audit functions related to any benefit, plan or claim): any employee benefit plan sponsored by my employer; any person providing services or insurance benefits to (or on behalf of) my employer, any such plan or claim, or any benefit offered by Unum; or, the Social Security Administration. Unum will not condition the payment of insurance benefits on whether I authorize the disclosures described in this paragraph. For the purposes of these disclosures by Unum, this authorization is valid for one year or for the length of time otherwise permitted by law.

If I do not sign this authorization or if I alter or revoke it, except as specified above, Unum may not be able to evaluate or administer my claim(s), which may lead to my claim(s) being denied. I may revoke this authorization at any time by sending written notice to the address above. I understand that revocation will not apply to any information that Unum requests or discloses prior to Unum receiving my revocation request.

_____          _____
Insured's Signature                                                              Date Signed

WILLIAMS, KATHY
_____          _____
Printed Name                                                                      Social Security Number

I signed on behalf of the Insured as _____ (Relationship). If Power of Attorney Designee, Guardian, or Conservator, please attach a copy of the document granting authority.

Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries.

CL-1088 (10/16)

*Claimant Name: Kathy  Williams      Claim #:  14865967*

```
                          Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 201812112064080D4CE

Entry Date: 12/11/2018 12:06:40

Received Date: 12/11/2018

Date Added to Claim: 12/11/2018

Primary Doc Type: Medical Records Request

Secondary Doc Type: Medical Records Request

Medical Provider:

Document Notes: Blue River Med Grp- auth needed

Work Notes:
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000663

| From: | MRU |
| Sent: | Tue, 11 Dec 2018 12:05:04 -0500 |
| To: | PegaAutomation - PPK68SN4 |
| Subject: | FW: Unum ID: 14865967 - ACTION REQUIRED: Authorization Request |
| Attachments: | autho18327198.pdf |
| Importance: | High |

From: Med Recs - Unum
Sent: Tuesday, December 11, 2018 12:04:47 PM (UTC-05:00) Eastern Time (US & Canada)
To: MRU
Subject: Unum ID: 14865967 - ACTION REQUIRED: Authorization Request

Name: WILLIAMS, KATHY
Policy/Claim/Cert: 14865967
Ins. Co: Unum Life Insurance Company of America
Provider Zip Code: BLUE RIVER MEDICAL GROUP, LLC

Req By: Maureen Turner

Please note that the record retrieval on this patient has been suspended because the medical provider has requested a signed Facility-Specific HIPAA authorization form.

A copy of the form is attached for your reference. When you receive the signed HIPAA authorization, you can either forward it to MRU by emailing it to authos@releasepoint.com or uploading it via the RPNet website.

Thank you.

-----------------------------------------------------------------------------------

The information contained in this electronic mail message is intended solely for the addressee stated above and may contain information that is confidential, privileged, or otherwise protected from disclosure under applicable law. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this electronic mail transmission is strictly prohibited.

*Claimant Name: Kathy  Williams     Claim #:  14865967*

 The Benefits Center
P.O. Box 100158        4801604
Columbia, SC 29202-3158
Toll-free: 1-800-858-6843   Fax: 1-800-447-2498
Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time)

Please sign and return this authorization to The Benefits Center at the address above. You are entitled to receive a copy of this authorization. This authorization is designed to comply with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule.

### Authorization to Collect and Disclose Information
### *(Not for FMLA Requests)*

**I authorize the following persons:** health care professionals, hospitals, clinics, laboratories, pharmacies and all other medical or medically related providers, facilities or services, rehabilitation professionals, vocational evaluators, health plans, insurance companies, third party administrators, insurance producers, insurance service providers, consumer reporting agencies including credit bureaus, GENEX Services, LLC, The Advocator Group and other Social Security advocacy vendors, professional licensing bodies, employers, attorneys, financial institutions and/or banks, and governmental entities;

**To disclose information,** whether from before, during or after the date of this authorization, about my health, including HIV, AIDS or other disorders of the immune system, use of drugs or alcohol, mental or physical history, condition, advice or treatment (except this authorization does not authorize release of psychotherapy notes), prescription drug history, earnings, financial or credit history, professional licenses, employment history, insurance claims and benefits, and all other claims and benefits, including Social Security claims and benefits ("My Information");

**To Unum Group and its subsidiaries,** Unum Life Insurance Company of America, Provident Life and Accident Insurance Company, The Paul Revere Life Insurance Company, and persons who evaluate claims for any of those companies ("Unum");

**So that Unum may evaluate and administer my claims, including providing assistance with return to work.** For such evaluation and administration of claims, this authorization is valid for two years, or the duration of my claim for benefits (to include any subsequent financial management and/or benefit recovery review), whichever is shorter. I understand that once My Information is disclosed to Unum, any privacy protections established by HIPAA may not apply to the information, but other privacy laws continue to apply. Unum may then disclose My Information only as permitted by law, including, state fraud reporting laws or as authorized by me.

**I also authorize Unum to disclose My Information to the following persons** (for the purpose of reporting claim status or experience, or so that the recipient may carry out health care operations, claims payment, administrative or audit functions related to any benefit, plan or claim): any employee benefit plan sponsored by my employer; any person providing services or insurance benefits to (or on behalf of) my employer, any such plan or claim, or any benefit offered by Unum; or, the Social Security Administration. Unum will not condition the payment of insurance benefits on whether I authorize the disclosures described in this paragraph. For the purposes of these disclosures by Unum, this authorization is valid for one year or for the length of time otherwise permitted by law.

If I do not sign this authorization or if I alter or revoke it, except as specified above, Unum may not be able to evaluate or administer my claim(s), which may lead to my claim(s) being denied. I may revoke this authorization at any time by sending written notice to the address above. I understand that revocation will not apply to any information that Unum requests or discloses prior to Unum receiving my revocation request.

---

Insured's Signature _____   Date Signed _____

WILLIAMS, KATHY
Printed Name _____   Social Security Number _____

I signed on behalf of the Insured as _____ (Relationship). If Power of Attorney Designee, Guardian, or Conservator, please attach a copy of the document granting authority.

Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries.

CL-1088 (10/16)

UA-CL-AD&D-000665

```
                              Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018121112111927D4CF

Entry Date: 12/11/2018 12:11:19

Received Date: 12/11/2018

Date Added to Claim: 12/11/2018

Primary Doc Type: Medical Records Request

Secondary Doc Type: Medical Records Request

Medical Provider:

Document Notes: Rowe Neuro, auth needed

Work Notes:
```

| From: | MRU |
|---|---|
| Sent: | Tue, 11 Dec 2018 12:09:55 -0500 |
| To: | PegaAutomation - PPK68SN4 |
| Subject: | FW: Unum ID: 14865967 - ACTION REQUIRED: Authorization Request |
| Attachments: | autho18327254.pdf |
| Importance: | High |

From: Med Recs - Unum
Sent: Tuesday, December 11, 2018 12:09:24 PM (UTC-05:00) Eastern Time (US & Canada)
To: MRU
Subject: Unum ID: 14865967 - ACTION REQUIRED: Authorization Request

Name: WILLIAMS, KATHY
Policy/Claim/Cert: 14865967
Ins. Co: Unum Life Insurance Company of America
Provider Zip Code: ROWE NEUROLOGY INSTITUTE

Req By: Maureen Turner

Please note that the record retrieval on this patient has been suspended because the medical provider has requested a signed Facility-Specific HIPAA authorization form.

A copy of the form is attached for your reference. When you receive the signed HIPAA authorization, you can either forward it to MRU by emailing it to authos@releasepoint.com or uploading it via the RPNet website.

Thank you.

---------------------------------------------------------------------------------------

The information contained in this electronic mail message is intended solely for the addressee stated above and may contain information that is confidential, privileged, or otherwise protected from disclosure under applicable law. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this electronic mail transmission is strictly prohibited.

*Claimant Name: Kathy Williams     Claim #: 14865967*

 The Benefits Center
P.O. Box 100158          4801606
Columbia, SC 29202-3158
Toll-free: 1-800-858-6843   Fax: 1-800-447-2498
Monday through Friday, 8 a.m. to 8 p.m. (Eastern Time)

Please sign and return this authorization to The Benefits Center at the address above. You are entitled to receive a copy of this authorization. This authorization is designed to comply with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule.

## Authorization to Collect and Disclose Information
### (Not for FMLA Requests)

**I authorize the following persons:** health care professionals, hospitals, clinics, laboratories, pharmacies and all other medical or medically related providers, facilities or services, rehabilitation professionals, vocational evaluators, health plans, insurance companies, third party administrators, insurance producers, insurance service providers, consumer reporting agencies including credit bureaus, GENEX Services, LLC, The Advocator Group and other Social Security advocacy vendors, professional licensing bodies, employers, attorneys, financial institutions and/or banks, and governmental entities;

**To disclose information,** whether from before, during or after the date of this authorization, about my health, including HIV, AIDS or other disorders of the immune system, use of drugs or alcohol, mental or physical history, condition, advice or treatment (except this authorization does not authorize release of psychotherapy notes), prescription drug history, earnings, financial or credit history, professional licenses, employment history, insurance claims and benefits, and all other claims and benefits, including Social Security claims and benefits ("My Information");

**To Unum Group and its subsidiaries,** Unum Life Insurance Company of America, Provident Life and Accident Insurance Company, The Paul Revere Life Insurance Company, and persons who evaluate claims for any of those companies ("Unum");

**So that Unum may evaluate and administer my claims, including providing assistance with return to work.** For such evaluation and administration of claims, this authorization is valid for two years, or the duration of my claim for benefits (to include any subsequent financial management and/or benefit recovery review), whichever is shorter. I understand that once My Information is disclosed to Unum, any privacy protections established by HIPAA may not apply to the information, but other privacy laws continue to apply. Unum may then disclose My Information only as permitted by law, including, state fraud reporting laws or as authorized by me.

**I also authorize Unum to disclose My Information to the following persons** (for the purpose of reporting claim status or experience, or so that the recipient may carry out health care operations, claims payment, administrative or audit functions related to any benefit, plan or claim): any employee benefit plan sponsored by my employer; any person providing services or insurance benefits to (or on behalf of) my employer, any such plan or claim, or any benefit offered by Unum; or, the Social Security Administration. Unum will not condition the payment of insurance benefits on whether I authorize the disclosures described in this paragraph. For the purposes of these disclosures by Unum, this authorization is valid for one year or for the length of time otherwise permitted by law.

If I do not sign this authorization or if I alter or revoke it, except as specified above, Unum may not be able to evaluate or administer my claim(s), which may lead to my claim(s) being denied. I may revoke this authorization at any time by sending written notice to the address above. I understand that revocation will not apply to any information that Unum requests or discloses prior to Unum receiving my revocation request.

| | |
|---|---|
| _____ | _____ |
| Insured's Signature | Date Signed |
| WILLIAMS, KATHY | |
| _____ | _____ |
| Printed Name | Social Security Number |

I signed on behalf of the Insured as _____ (Relationship). If Power of Attorney Designee, Guardian, or Conservator, please attach a copy of the document granting authority.

Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries.

CL-1088 (10/16)

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000668

----------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Authorization Request

Status: Final

Date: 2018-12-13

Notes: Authorization Request

Signoff By:

Signoff Status:

-------------- Deliveries ---------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018121314542436291E
Delivery Date: 12/13/2018 15:16:00
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2018121314542436291E
Delivery Date: 12/13/2018 14:58:36
Delivery Status: Fax: Sent; Success

UA-CL-AD&D-000669

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



December 13, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:   Williams, Kathy
      Claim Number:      14865967
      Policy Number:     382480
      Unum Life Insurance Company of America

Dear Mr. Blakeman:

We are writing about the appeal on the Group Accidental Death Insurance claim submitted for
Kathy Williams. We have determined that we require additional information to fairly evaluate
your client's eligibility for these benefits.

We have requested copies of Ms. Williams' medical records from Midwest Sleep Specialists,
Blue River Medical Group and Rowe Neurology Institute. These facilities require a signed
authorization to be completed by Mr. Williams to release the requested information.

Please have Mr. Williams sign and date the enclosed Authorization so we can continue our
evaluation of the claim. This completed form gives permission to these facilities to release
information to us. Please send the completed form to the address noted above or fax it to 1-800-
447-2498 by December 20, 2018.

Mr. Blakeman, if you have questions about this claim or this process, our Contact Center is
staffed with experienced representatives who can be contacted at 1-800-858-6843.  We will
identify the claim by Ms. Williams' Social Security number, so please have this number available
when you call.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

Enclosures:      Life and Accidental Death Claim Authorization (CL-1098)

1242-03       UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy  Williams       Claim #:   14865967

UA-CL-AD&D-000670

```
                              Document Detail
------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018121407335502FC46

Entry Date: 12/14/2018 07:33:55

Received Date: 12/14/2018

Date Added to Claim: 12/14/2018

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal- email from atty

Work Notes:
```

UA-CL-AD&D-000671

**Turner, Maureen**

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Thursday, December 13, 2018 8:05 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Kathy Williams appeal |
| **Attachments:** | Response to request for authorization 2018.12.13.pdf; Doctor Hull records.pdf; Dr Mundhenke business cards.pdf; Kathy last medical check up.pdf; kathy_williams_AmbulatorySummary_2018-10-13_1690687.pdf; Rowe office visit summary.pdf |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Turner,

Please see the attached in response to your fax.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile:  213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments.  Please notify us and delete the email.**

*Claimant Name: Kathy  Williams    Claim #:  14865967*

UA-CL-AD&D-000672

Document Detail
--------------------------------------------------------------------------------
**Checked/Unchecked Indicator: No**

**Document ID: 2018121407362933FC46**

**Entry Date: 12/14/2018 07:36:30**

**Received Date: 12/14/2018**

**Date Added to Claim: 12/14/2018**

**Primary Doc Type: Appeals**

**Secondary Doc Type: Other**

**Medical Provider:**

**Document Notes: ltr from atty- response to req for auth**

**Work Notes:**

UA-CL-AD&D-000673

## BLAKEMAN LAW

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, California 90211**

*Life Insurance, investment, and financial*
*elder abuse litigation*
web: www.lifeinsurance-law.com

**Phone: 213-629-9922**
**Fax:    213-232-3230**
**email: ben@lifeinsurance-law.com**



**December 13, 2018**

**Via Email to maturner@unum.com**
Maureen Turner
The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058

> **Re:    Claim No. 14865967**
> **Policy No. 382480**
> **Insured: Kathy Williams**
> **Claimant: Gary Williams**

Dear Ms. Turner:

We received your request that Mr. Williams sign an authorization so that UNUM can obtain medical records from Midwest Sleep Specialists, Blue River Medical Group, and Rowe Neurology Institutes. While we recognize the fact that Unum may need additional medical information to make its final determination, we must unfortunately decline this request. The authorization you provided goes far beyond the request for medical records from these institutions or any need to evaluate this claim.

It authorizes all health care professionals, hospitals, clinics, laboratories, pharmacies, emergency medical service agencies, and all other medical or medically related providers, facilities or services, medical examiner's offices, coroner's offices, health plans, insurance companies, third party administrators, insurance producers, insurance service providers, *credit bureaus, professional licensing bodies, law enforcement agencies, consumer reporting agencies, employers, attorneys, financial institutions and/or banks, and governmental entities* to disclose information which not only includes health information, but also *earnings, financial or credit history, professional licenses, employment history, or incident reports of any kind,*

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

*insurance claims and benefits, and all other claims and benefits of the deceased.*

The only question at issue in this appeal is whether Kathy Williams died as the result of an accident. We cannot see how any of the information in the possession of the italicized providers or any of the information other than health information listed in the authorization form could reasonably impact the determination of that question or the proper evaluation of the appeal, and you have not stated any need for such information in your letter.

Further, the authorization form authorizes Unum to disclose information to any employee benefit plan sponsored by my employer; any person providing services or insurance benefits to or on behalf of [claimant's] employer, any such plan or claim, or any benefit offered by Unum.

The ostensible purpose of this authorization is "So that Unum may evaluate and administer the claim." This authorization form authorizes the disclosure of information that could not possibly be necessary to evaluate and administer the claim. It appears not only to violate the privacy rights of the appellant and the deceased, but also the spirit and purpose of these proceedings.

Therefore, recognizing Unum's need for additional medical records to evaluate this claim, we are attaching to this email, all the medical records from the institutions mentioned in your letter in the possession of Mr. Williams. In addition, Mr. Williams will verify that the records provided herewith are all the records available from these institutions or providers concerning the decedent, and if any further records can be obtained, he will obtain them, and we will send them to you.

If you believe you need further medical records, please provide an appropriate form limiting the authorization to those records actually needed and limiting the use of records obtained to the consideration of this appeal.

BLAKEMAN LAW

Benjamin Blakeman
Counsel for Claimant, Gary Williams

*Claimant Name: Kathy Williams      Claim #:  14865967*

```
                           Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2018121407375867FC46

Entry Date: 12/14/2018 07:37:59

Received Date: 12/14/2018

Date Added to Claim: 12/14/2018

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider: Mundhenke, Dean

Document Notes: (IM) 9/1/17 ovn

Work Notes:
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000676

**Blue Springs**
**Internal Medicine**

205 NW R.D. Mize Road, Suite 400
Blue Springs, MO 64014

KANSAS CITY
MO 640
28 AUG '18
PM 6 L

Kathy Williams
18216 E 51st street lt 5
Indiep MO 64055

64055-65851S

UA-CL-AD&D-000677

## Progress Notes Info

| Author | Note Status | Last Update User |
|---|---|---|
| Dean Mundhenke, MD | Signed | Dean Mundhenke, MD |
| Last Update Date/Time: 9/1/2017  4:33 PM | | |

# Williams, Kathy R
MRN: 103979604

**Progress Notes** Encounter Date: 9/1/2017

## Dean Mundhenke, MD
Internal Medicine

Expand All   Collapse All

**History and Physical - Internal Medicine - PCP:** Dean Mundhenke, MD
Kathy R Williams 59 y.o. ⌈Redacted⌉ BLUE SPRINGS INTERNAL MEDICINE MRN: 103979604

### HPI

**Chief Complaint:** Cough and Neck Pain

Kathy R Williams is a 59 y.o. female who Arrives following upper respiratory symptoms now with bronchitis. Some muscle spasm in her neck. This may be aggravated by her stopping gabapentin

### Review of Systems

General: No severe distress, no change in mental status
HEENT: Initially runny nose with improving sore throat. No stridor and denies severe headache
Cardiac: Denies chest pain or palpatations.
Pulmonary: No severe SOB. Cough is Occasionally producing colored phlegm. Wheezing denied.
GI: No distention or pain and no changes or bleeding.
Ext: no rash or increasing edema
Other: Denies rigor, chills, confusion, extreme lethargy

### PMH

No past medical history on file.

No past surgical history on file.
No family history on file.
No family status information on file.

Social History
Substance Use Topics
 • Smoking status:                    Never Smoker
 • Smokeless tobacco:            Never Used
 • Alcohol use                         Yes

No Known Allergies

### Physical Examination

BP: (!) **135/105** Heart Rate: 67 Resp: 16   Weight: (!) **101 kg (223 lb)**
There is no height or weight on file to calculate BMI.
**Const:** Generally healthy-appearing

Claimant Name: Kathy Williams        Claim #: 14865967

UA-CL-AD&D-000678

**Head:** Atraumatic
**Eyes:** Normal Conjunctiva
**ENT:** Nasal exam shows swollen mucosa with clear secretions . Throat is non- injected and there is no colored drainage. Ears are unremarkable. No neck mass, JVD or lymphadenopathy noted.
**Neck:** Full range of motion. No meningismus.
**Resp:** Chest exam reveals scattered rhonchi with wheezes. No consolidation or rales
**Cards:** Regular rate and rhythm, no murmur
**Abd:** Soft, non tender, non distended. Normal bowel sounds
**Skin:** No petechiae or rashes
**Back:** No midline or flank tenderness
**Ext:** No cyanosis, rash or edema
**Neur:** Awake and alert
**Psych:** Normal Mood and Affect

## Data

Recent Labs:

## Medications

No current outpatient prescriptions on file prior to visit.

No current facility-administered medications on file prior to visit.

Current Outpatient Prescriptions:
- cholecalciferol (VITAMIN D3) 1000 units tablet, Take 1,000 Units by mouth daily., Disp: , Rfl:
- cyanocobalamin 1000 MCG tablet, Take 100 mcg by mouth daily., Disp: , Rfl:
- gabapentin (NEURONTIN) 100 MG capsule, Take 200 mg by mouth 3 (three) times a day., Disp: , Rfl:
- ibuprofen (ADVIL,MOTRIN) 200 MG tablet, Take 200 mg by mouth every 6 (six) hours as needed for mild pain (1-3)., Disp: , Rfl:
- sertraline (ZOLOFT) 100 MG tablet, Take 200 mg by mouth 3 (three) times a day., Disp: , Rfl:
- Vitamins/Minerals (THERA-M) TABS, Take 1 tablet by mouth daily., Disp: , Rfl:

There are no discontinued medications.

## Assessment / Plan

**Assessment: URI now with Bronchitis and muscle spasm**

Current Diagnosis:
   No diagnosis found.

**Plan: She will restart gabapentin. Patient warned about side effects to medication. ER if worse. Fluids, avoid dehydration. Discussed OTC remedies like Tylenol and Ibuprofen. Can use Zyrtec for drainage if needed and discussed OTC cough syrups. She has follow-up scheduled. The patient was warned about side effects of medication. They will contact me if the problem does not resolve completely in 1 week or becomes recurrent. Otherwise**

Claimant Name: Kathy Williams    Claim #: 14865957

UA-CL-AD&D-000679

**follow-up as scheduled. They should call if any problems or concerns. Total time with patient less than 15 minutes.**

New Medications Ordered This Visit
Medications
- gabapentin (NEURONTIN) 100 MG capsule
  Sig: Take 200 mg by mouth 3 (three) times a day.
- sertraline (ZOLOFT) 100 MG tablet
  Sig: Take 200 mg by mouth 3 (three) times a day.
- ibuprofen (ADVIL,MOTRIN) 200 MG tablet
  Sig: Take 200 mg by mouth every 6 (six) hours as needed for mild pain (1-3).
- Vitamins/Minerals (THERA-M) TABS
  Sig: Take 1 tablet by mouth daily.
- cholecalciferol (VITAMIN D3) 1000 units tablet
  Sig: Take 1,000 Units by mouth daily.
- cyanocobalamin 1000 MCG tablet
  Sig: Take 100 mcg by mouth daily.

No orders of the defined types were placed in this encounter.

Dean Mundhenke, MD

*Please note that the chart has also been partially dictated, and there may be clerical errors. The note may not reflect the date known because of improper importation*
Electronically signed by Dean Mundhenke, MD at 9/1/2017 4:33 PM

Office Visit
on 9/1/2017

Claimant Name: Kathy Williams　　Claim #: 14865987

UA-CL-AD&D-000680

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018121407403978FC46

**Entry Date:** 12/14/2018 07:40:40

**Received Date:** 12/14/2018

**Date Added to Claim:** 12/14/2018

**Primary Doc Type:** Medical

**Secondary Doc Type:** Records

**Medical Provider:** Hull, Steven

**Document Notes:** (Sleep med) 5/31/07-1/18/18

**Work Notes:**

Location
Midwest Sleep Specialists
10590 Barkley St
Suite 204
Overland Park, KS 66212.

Referred here
Dean L Mundhenke M.D. : 4911 S Arrowhead Dr Suite 101 : Independence, MO 64055.

Reason for Visit
Meds.
Follow up sleep issues.

History of present illness
　　Williams is a 59 year old female.
Kathy returns to the sleep clinic today with her husband follow-up her obstructive sleep apnea syndrome, chronic insomnia, and somnambulism. She is currently taking lorazepam 1-2 mg at bedtime to treat her insomnia and somnambulism. She does not report any episodes of sleep walking lately, but has noticed that her current dose of lorazepam is not effective as it used to be. She states at 2 mg will sometimes help her sleep, but she continues to wake up a few times a night despite taking the medication. She does admit that she is having an increased amount of stress due to the health of her mother and that this has affected her sleep as well. She also takes gabapentin during the day for chronic pain of her left knee. She believe she will need a knee replacement surgery sometime in the future. She also reports a history of weight gain, dry skin, and thinning of hair, along with fatigue. Her last thyroid blood tests were over 2 years ago. She does have a family history of hypothyroidism. She believe she is averaging about 4-5 hours of sleep per night. Review of her compliance data over the last 90 days shows 79% usage of her AutoPap with an average use of 4 hours and 38 minutes at night. She is currently on settings of 4 cm to 12 cm water pressure, and her 95th percentile pressure is 7.2 cm water. Her 95th percentile leak is only 6.3 L/m and her residual apnea hypopnea index is 0.7 from a baseline of 10. Her respiratory disturbance index was 56 pre-treatment. Between October 30 and November 28 the patient has documented compliance with treatment at 70% greater than 4 hours per night. Her Epworth Sleepiness Scale score today is normal and reported as 5. She has been as high as 14 in the past.

FlowSheets
　　Flow Sheet Data:

## Sleep Vitals

| Date | ESS | Neck circumference (inches) |
|---|---|---|
| 5/10/2016 | 14.00 | 14 |
| 9/6/2016 | 2.00 | 14 |

Current medication
LORazepam 1 mg tablet take 1 (one) Tablet by Oral route at bedtime as needed
celecoxib 200 mg capsule take 1 (one) Capsule by Oral route daily
gabapentin 100 mg capsule take 1 (one) Capsule by Oral route three times per day
sertraline 50 mg tablet take 1 (one) Tablet by Oral route daily.

Allergies
Sulfa (Sulfonamide Antibiotics) (Drug Category)
latex (Drug Category).

Physical findings

Vital Signs:
Vital Signs/Measurements Value Normal Range Date

Williams, Kathy
**Redacted**

DOS: 1/18/2018
LPOWEL ~ 8/22/2018 10:04 AM

1 Of 2

PR 65 bpm (50 to 100) 1/18/2018
Blood pressure 173/107 mmHg (100-120/56-80) 1/18/2018
Height 63 in (59.843 to 68.11) 1/18/2018

Standard Measurements:
Patient was observed to be obese.

General Appearance:
Alert, well developed, well nourished, and in no acute distress. The patient did not appear uncomfortable.

Abdomen:
Visual Inspection: The abdomen was not distended.

Neurological:
Motor: No tremor was seen.
Gait And Stance: Gait and stance were normal.

Psychiatric:
Appearance: The clothing was appropriate and the grooming was normal.
Mood: The mood was not depressed. The mood was anxious. The mood was not irritable.
Thought Processes: Thought processes were not impaired.

Skin:
The skin general appearance was normal and no skin lesions.

Tests

Laboratory Studies:
Pulse Oximetry: Value Normal Range Date
Oxygen saturation 98% (93 to 100) 1/18/2018

Assessment
   The doctor made the following assessments
      1. Obstructive sleep apnea
   2. Organic insomnia due to medical condition

Plan
Kathy has documented efficacy and compliance with AutoPap treatment for her OSA. She also has chronic insomnia and anxiety along with somnambulism. I believe she has developed some tolerance to her lorazepam and we discussed next steps for treatment. She would like to increase her lorazepam up to 3 mg nightly to see if this will improve her symptoms of anxiety and stress along with her chronic insomnia. Some of her fatigue and daytime symptoms could well be due to the fact she is just wearing her machine a little over 4-1/2 hours per night. This can also affect her blood pressure and therefore I encouraged her to wear her machine at least 6 hours a night if possible. I also recommended obtaining a TSH level to see if she has hypothyroidism. She reports signs and symptoms suggestive of the disorder and has a strong family history of this condition. We will contact her with the results of her TSH once they become available. Otherwise, I will plan to see her back on an annual basis, sooner if needed. She was instructed to call us should she have any additional questions or concerns regarding her diagnoses and/or recommendations for evaluation/treatment.
Follow up in 1 Year and As Needed.

Counseling/Education
   The doctor performed the following counseling:
      1. Lose weight
   2. Discussed safety practices /risk counseling regarding driving while sleepy
   3. Patient education Reviewed with the patient the pathophysiology of sleep apnea, treatment options, and confounding factors
I have discussed with the patient the use of sedative hypnotic agents including potential side effects and problems with benzodiazepines producing tachyphylaxis, dosage escalation, rebound insomnia, and withdrawal.

Signatures
Electronically Signed By: Steven G. Hull, M.D. on 01/18/18 12:44:22.

Williams, Kathy
**Redacted**

DOS: 1/18/2018
LPOWEL ~ 8/22/2018 10:04 AM

2 Of 2

Claimant Name: Kathy Williams        Claim #: 14865967

UA-CL-AD&D-000683

Location
Midwest Sleep Specialists
10590 Barkley St
Suite 204
Overland Park, KS 66212.

Referred here
Dean L Mundhenke M.D. : 4911 S Arrowhead Dr Suite 101 : Independence, MO 64055.

Reason for Visit
3 month.
Follow up sleep apnea.

History of present illness
    Kathy Williams is a 58 year old female.
Kathy returns to the sleep clinic today with her husband a follow-up her obstructive sleep apnea syndrome. She states she has had difficulty using her machine because she has developed nasal sores from using nasal pillows. However, she wishes to continue using nasal pillows as she does not believe she will be able to tolerate a nasal mask or fullface mask. She is started to treat the nasal sores and has noticed improved compliance over the past week but overall her compliance is less than 40%. Review of her data does show a 95th percentile pressure of 7.6 cm water and her 95th percentile leak of only 8.2 L/m. Her residual apnea hypopnea index when she uses her machine is 0.9. She states she has benefited from use of the AutoPap and is willing to improve her compliance so that she can continue to use the device. Her Epworth Sleepiness Scale score today is normal and reported as 2. She voices no other complaints.

FlowSheets
    Flow Sheet Data:

## Sleep Vitals

| Date | ESS | Neck circumference (inches) |
|------|-----|------------------------------|
| 5/10/2016 | 14.00 | 14 |
| 9/6/2016 | 2.00 | 14 |

Current medication
Celecoxib 200 mg capsule take 1 (one) Capsule by Oral route daily
gabapentin 100 mg capsule take 1 (one) Capsule by Oral route three times per day
sertraline 50 mg tablet take 1 (one) Tablet by Oral route daily.

Allergies
Sulfa (Sulfonamide Antibiotics) (Drug Category)
latex (Drug Category).

Physical findings

Standard Measurements:
Patient was observed to be obese.

General Appearance:
Alert, well developed, well nourished, and in no acute distress. The patient did not appear uncomfortable.

Head:
Injuries: No evidence of a head injury.
Appearance: Head normocephalic.
Face: No retrognathia was observed.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000684

Neck:

Suppleness: The neck demonstrated no decrease in suppleness.

Nose:

General/bilateral:

Cavity: Nasal septum normal.

Abdomen:

Visual Inspection: The abdomen was not distended.

Neurological:

Gait And Stance: Gait and stance were normal.

Psychiatric:

Appearance: The clothing was appropriate and the grooming was normal.

Mood: The mood was not depressed, was not anxious, and was not irritable.

Thought Processes: Thought processes were not impaired.

Skin:

The skin general appearance was normal and no skin lesions.

Assessment

The doctor made the following assessments
1. Obstructive sleep apnea
2. Organic insomnia due to medical condition

Plan

Ordered 30 day download of PAP device.

Kathy has documented improved compliance over the last week but does not meet criteria for compliance as of this date. I advised her that it will be important for her to become compliant with therapy if she wishes to continue to have the device covered through her insurance company. She states she is willing to become compliant and will continue to use the machine as she has done over the last 6 days. She has clearly benefited from treatment when she is able to use it and still needs Pap therapy to treat her underlying obstructive sleep apnea syndrome. Additionally, she has chronic insomnia and some claustrophobia, and has done well with lorazepam at night. I've increased her dose to 1 mg at bedtime she believes 0.5 mg dose is no longer effective as it once was. I will plan to see her back on an annual basis, sooner if needed. I'm going to request a download of her device within the next 30 days to reassess compliance with treatment. She was instructed to contact our office should she have any questions or concerns regarding her treatment and/or diagnosis. Follow up in 1 Year and As Needed.

Counseling/Education

The doctor performed the following counseling:
1. Lose weight
2. Discussed safety practices /risk counseling regarding driving while sleepy
3. Patient education Reviewed with the patient the pathophysiology of sleep apnea, treatment options, and confounding factors

I have discussed with the patient the use of sedative hypnotic agents including potential side effects and problems with benzodiazepines producing tachyphylaxis, dosage escalation, rebound insomnia, and withdrawal.

Signatures

Electronically Signed By: Steven G. Hull, M.D. on 09/06/16 13:16:56.


Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000685

Location
Midwest Sleep Specialists
3470 Ralph Powell Road
Suite B
Lee's Summit, MO 64064.

Referred here
SELF REFERRED : : ,

Reason for Visit
INITIAL.
Sleep issues.

History of present illness
    Kathy Williams is a 58 year old female.
Kathy is a very pleasant 58-year-old white female who presents to the sleep clinic today with multiple sleep issues. She states her chief complaint is that of difficulty initiating and maintaining sleep long with nonrestorative sleep. She states she has had insomnia for years with a history of waking up early, frequent nocturnal awakenings, and frequent body position changes during sleep. She also has a history of sleepwalking and sleep talking, along with depression and anxiety. Additionally, she has a history of sleep-related bruxism and what sounds like TMJ. Additionally, she is a loud snorer who has been witnessed to stop breathing by her husband. She has had 3 prior sleep studies including one in 2007 and 2 last year. Her most recent study was performed on October 23, 2015 and was consistent with her other previous studies. Her apnea hypopnea index was 10 with a respiratory effort-related arousal index of 56. Oxygen saturation was 85%, but she did not have any desaturations of significance below 89% for any length of time. Her overall arousal index was 69 but she did not have any periodic limb movements of sleep and denies restless legs syndrome symptoms. She states that she is anxious and does take Zoloft regular basis. Her other medications include gabapentin for anxiety and Celebrex for chronic knee pain. Her Epworth Sleepiness Scale score today is elevated and noted to be 14. She typically goes to bed around 11 PM and arises around 6 AM. She states she will frequently wake up between 1:30 AM and 5:00 AM.

FlowSheets
    Flow Sheet Data:

# Sleep Vitals

Selected date range: ( 5/10/2016 to 5/10/2016 )

| Date | ESS | Neck circumference (inches) |
|------|-----|------------------------------|
| 5/10/2016 | 14.00 | 14 |

.

Current medication
Celecoxib 200 mg capsule take 1 (one) Capsule by Oral route daily
gabapentin 100 mg capsule take 1 (one) Capsule by Oral route three times per day
sertraline 50 mg tablet take 1 (one) Tablet by Oral route daily.

Allergies
Sulfa (Sulfonamide Antibiotics) (Drug Category)
latex (Drug Category).

Review of systems
Systemic: Feeling tired (fatigue).
No recent weight gain in the past 12 months.
No recent weight loss in the past 12 months.

Claimant Name: Kathy Williams        Claim #: 14865967

UA-CL-AD&D-000686

Head: No frequent headache and no sinus pain.
Eyes: No blurry vision.
Otolaryngeal: No watery nasal discharge.
No nasal passage blockage (stuffiness).
Cardiovascular: No palpitations.
Pulmonary: No dyspnea, no orthopnea, no cough - chronic, and no wheezing.
Gastrointestinal: No heartburn.
Genitourinary: No nocturia.
Endocrine: No muscle weakness.
Musculoskeletal: No leg pain, no calf muscle cramps, and no localized soft tissue swelling in both legs. Pain localized to one or more joints.
Neurological: No memory lapses or loss, no tremor, and no ataxia.
Psychological: No emotional lability /mood swings, no depression, with no feelings of hopelessness, and not thinking about suicide.
Past Medical: No thyroid disease and no kidney disease. No recent episode(s) of angina.
Oral Cavity: The patient did not wear dentures.

Physical findings

Vital Signs:
Vital Signs/Measurements Value Normal Range Date
PR 55 bpm (50 to 100) 5/10/2016
Blood pressure 123/98 mmHg (100-120/56-80) 5/10/2016
Weight 218 lbs (98 to 183) 5/10/2016
Body mass index 38.6 kg/m2 (18 to 25) 5/10/2016
Height 63 in (59.843 to 68.11) 5/10/2016

Standard Measurements:
Patient was observed to be obese.
Standard Measurements: Value Normal Range Date
Body surface area 2.1 m2 5/10/2016

General Appearance:
Alert, well developed, well nourished, and in no acute distress. The patient did not appear uncomfortable.

Head:
Injuries: No evidence of a head injury.
Appearance: Head normocephalic.
Face: No retrognathia was observed.

Neck:
Suppleness: The neck demonstrated no decrease in suppleness.

Nose:
General/bilateral:
Cavity: Nasal septum was deviated. Nasal mucosa normal and the nasal turbinate showed no abnormalities.

Oral Cavity:
Teeth: Dental no abnormalities and the patient did not wear dentures.
Buccal Mucosa: The buccal mucosa was moist.
Tongue: Examination of the tongue showed no abnormalities.
Palate: The hard palate was normal.

Pharynx:
The posterior pharynx was normal.
Oropharynx: Mallampati class 2 airway. The soft palate was normal, the right tonsil was not enlarged, and not on the left.

Lungs:
Lungs clear to auscultation and no decrease in breath sounds was heard. No wheezing was heard, no rhonchi were heard, and no rales/crackles were heard.

Cardiovascular:
Heart Rate And Rhythm: Heart rate and rhythm normal.
Heart Sounds: Heart sounds normal.
Murmurs: No murmurs were heard.
Edema: Edema not present.

Williams, Kathy
DOB: Redacted
DOS: 5/10/2016
LPOWEL ~ 8/22/2018 9:48 AM
2 Of 3

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000687

Abdomen:
Visual Inspection: The abdomen was not distended.

Musculoskeletal System:
Fingers:
General/bilateral: No cyanosis of the fingers.
Other:
General/bilateral: No asymmetrical musculoskeletal abnormality was seen.

Neurological:
Motor: No tremor was seen.
Gait And Stance: Gait and stance were normal.

Psychiatric:
Appearance: The clothing was appropriate and the grooming was normal.
Mood: The mood was not depressed. The mood was anxious. The mood was not irritable.
Thought Processes: Thought processes were not impaired.

Skin:
The skin general appearance was normal and no skin lesions.

Nails:
No clubbing of the fingernails.

Tests

Laboratory Studies:
Pulse Oximetry: Value Normal Range Date
Oxygen saturation 93% (93 to 100) 5/10/2016

Assessment

    The doctor made the following assessments
        1.Obstructive sleep apnea
    2.  Generalized anxiety disorder
    3.  Nonorganic sleepwalking disorder /Sleep Terror Disorder
    4.  Organic insomnia due to medical condition

Plan

    The doctor ordered the following therapy
        1.Continuous positive airway pressure ventilation: Auto
Ordered C-PAP Supplies.
Kathy has several sleep issues which need to be addressed. She does have obstructive sleep apnea syndrome that is severe when you count her respiratory disturbance index. She has severe sleep fragmentation with an arousal index of 69 and I suspect is a large contributor to her insomnia. We discussed potential treatment options and she has agreed to try AutoPap with a range of 4 cm to 12 cm water pressure. Additionally, she has a history of sleepwalking and sleep talking, along with increased anxiety at night, and therefore I have added lorazepam 0.5 mg to take at bedtime. We also discussed sleep hygiene in detail. I will plan to see her back in 3 months to assess efficacy and compliance with treatment.
Follow up in 3 Months and As Needed.

Counseling/Education

    The doctor performed the following counseling:
        2.Lose weight
    2.  Discussed safety practices /risk counseling regarding driving while sleepy
    3.  Patient education Reviewed with the patient the pathophysiology of sleep apnea, treatment options, and confounding factors
I have discussed with the patient the use of sedative hypnotic agents including potential side effects and problems with benzodiazepines producing tachyphylaxis, dosage escalation, rebound insomnia, and withdrawal.

Signatures
Electronically Signed By: Steven G. Hull, M.D. on 05/10/16 13:38:03.

Williams, Kathy
DOB: [Redacted]

DOS: 5/10/2016
LPOWEL ~ 8/22/2018 9:48 AM

3 Of 3

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000688


Rowe
Neurology
Institute

Our Patient ID: 34857

Consultants in Neurology, PA.
[illegible]
[illegible]
[illegible]

Headache Center

Sleep Center
[illegible]
[illegible]

Multiple Sclerosis Center
[illegible]
[illegible]

Memory Loss Center

Infusion Center

Imaging Center
[illegible]
[illegible]
[illegible]

11/13/2015

Dear Dr. Dyck,

Kathy Williams was recently seen in our American Academy of Sleep Medicine
accredited Sleep Center. Attached is a narrative report, which includes details on
our observations.

Kathy will be seen in follow-up in our clinic for any sleep disorders identified, and
we will be happy to coordinate with the appropriate DME provider for their care if
necessary.

Thank you for the confidence you have displayed in sending this patient to our
accredited Sleep Center.

Sincerely,

Vernon D. Rowe, M.D.
Diplomate, American Board of Sleep Medicine
www.neurokc.com
VDR/ernv/11/13/2015

Attachment

(T)913.894.1500  (T)913.894.1502 (Infusion)  (F)913.827.0298 (Toll Free)  www.neurokc.com

Imaging Center
10 East Cambridge Circle, Suite 110
Kansas City, KS 66103

Headquarters
8550 Marshall Drive, Suite 100
Lenexa, KS 66214

RNI North
5844 NW Oak Trafficway, Suite 202
Kansas City, MO 64118

WILLIAMS, KATHY R (id #34857, dob: 02/03/1958)

POLYSOMNOGRAM REPORT

**RNI** Rowe Neurology Institute

PATIENT: Williams, Kathy     Patient Number: 34857

DATE OF STUDY: 10/23/2015     DOB: Redacted

PHYSICIAN: Rowe/Dyck, David

RECORDING TECH: Natalie Brattin RPSGT

SCORING TECH: S. Miller RRT, RPSGT

HISTORY/INDICATIONS: Kathy is a 57 year-old female who stands 63 inches and weighs 200 pounds, and has a BMI of 35.4, with a neck circumference of 15 inches. The patient's major complaints on the day of this study include an Epworth Sleepiness Scale of 6, with snoring, fatigue, chronic pain, stress, teeth grinding, depression, anxiety, difficulty with sleep initiation and maintenance, frequent body position changes, sleep talking, sleep walking, waking up too early, frequent awakenings, night sweats, claustrophobia, and non-restorative sleep. This patient answered N/A to questions one and two, with affirmative to questions three and four on the International Restless Leg Syndrome questionnaire. Current medications include multivitamin, and Vitamin D*2. This patient was scheduled for overnight polysomnography to investigate the possibility of a sleep disorder.

SLEEP: Overnight polysomnography was performed on 10/23/2015. During this study the patient was monitored for a total of 5.8 hours, with a sleep period time of 5.2 hours. Sleep efficiency was recorded at 77%, with a total sleep time of 4.5 hours. Sleep latency was recorded at 27 minutes with a REM latency observed at 167 minutes. Sleep stage distribution reflected Stage N1 24.5%, Stage N2 60.5%, N3 0.1%, and REM 5.9%. This patient was tested in the lateral and supine positions. A total of 310 arousals/awakenings were scored, yielding a significantly elevated arousal index of 69 per hour. No evidence of periodic limb movement disorder or restless leg syndrome was noted.

RESPIRATORY: During this study, 2 obstructive apneas, 0 central apneas, 0 mixed apneas, 44 hypopneas, and 256 RERAs were scored. Moderate snoring was noted during this recording. Mean arterial oxygen saturation levels were noted to be 94%. Modest arterial oxygen desaturations were observed with a nadir of 85%; the patients SAO2 was at or below 89% for 5% of the total recording time. Apnea/Hypopnea Index (AHI) was noted to be 10 events per hour, with a supine AHI of 2 events per hour, a REM AHI of 4 events per hour and a Total Respiratory Effort Related Arousal (RERA) Count of 256, for a RERA Index of 56 events per hour.

CARDIAC: The patient presented with an average heart rate of 64 beats per minute, while morning blood pressure was noted to be 160/105 (heart rate 59).

INTERPRETATION: Obstructive Sleep Apnea (G47.33) was observed, associated with marked sleep fragmentation, and arterial oxygen desaturations. This patient did not meet criteria for split night study with application and titration of nasal CPAP per AASM guidelines. A sleep medicine consult is recommended to review results of this test and possible recommendations.

Kenneth VanOwen, M.D.
ABPN diplomate in Sleep Medicine
www.neurokc.com
KRV/omv/11/13/2015

(T)913.894.1500   (F)913.894.1507 (Tinnev)   (T)913.647.0295 (Tinnev)   www.neurokc.com

Imaging Center
10 East Cambridge Circle, Suite 115
Kansas City, KS 66103

Headquarters
8550 Marshall Drive, Suite 100
Lenexa, KS 66214

PM North
5500 College Boulevard, Suite 200
Kansas City, MO 64110



**MIDAMERICA
NEUROSCIENCE
INSTITUTE**

913-642-0646
913-894-8902
www.neurokc.com

Vernon D. Rowe, MD
EG County, ABPN
Nomebal/Steep & Jana

George R. Maraig, MD
Neurologist

Sam Wieegabier, OO
Neurologist

H. Todd Keister, PsyD
Sleep psychologist

Doug Schell, MSW, LCSW
Clinical Nurse Specialist
MV Clinic Director

Miriam Ingle, ARNP
Nurse Practitioner

Abby Reynolds, ARNP
Nurse Practitioner

John A. Hoedler, PsyD
Seminar Coordinator

Joy Walter Ellis, LMSW
Associate Administrator

Dave Cittit
Community Liaison

Lori Abercrom, RS, RPSGT
Manager

Dianna Horne, RPSGT
Lynn Weber, RPSGT

John Christianson, CRT, RPSGT
DME Coordinator
Respiratory Therapist

Amanda Heppang, BA
Sleep Consultant

## POLYSOMNOGRAM REPORT

**PATIENT:** Williams, Kathy      **Patient Number:** 34857
**DATE OF STUDY:** 05/31/07      **DOB:** [Redacted]
**PHYSICIAN:** Rowe
**RECORDING TECH:** Paul Joyce, PSGT
**SCORING TECH:** Deanna Horne, CRT, RPSGT

**HISTORY/INDICATIONS:** Kathy is a 49 year-old female who stands 5'3" and weighs 180 pounds by report. The patient's major complaints include excessive daytime sleepiness with an Epworth Sleepiness Score of 14, sleep talking, sleep walking, and difficulty staying asleep. Her current medications include Ibuprofen. She also has a history of arthritis, chicken pox, surgical procedure for ankle cyst, sinus surgery, ataxia, low back pain, neck pain, colon/intestinal disorder not other wise specified, congenital abnormality affecting the right leg and foot, disequilibrium affecting her ability to walk, numbness in the bottoms of both feet, and occasionally numbness in the fingers of her right hand. This patient was scheduled for overnight polysomnography to investigate the possibility of a sleep disorder.

**SLEEP:** Overnight polysomnography was performed on 05/31/07. During this study the patient was monitored for a total of 7 hours. Sleep efficiency was recorded at 75%, with a total sleep time of 5.2 hours. Sleep onset was recorded in 30 minutes, while latency to REM sleep was observed at 134 minutes. Sleep stage distribution reflected Stage 1—11%, Stage 2—75%, SWS—0%, and REM—14% during the sleep period time. A total of 185 arousals/awakenings were scored, yielding a markedly elevated arousal index of 36 per hour. No significant evidence of periodic limb movements was observed.

**RESPIRATORY:** During this study, a total of 48 obstructive hypopneas were scored. The mean duration of these events was 28 seconds. Baseline arterial oxygen saturation levels were noted to be 93%. Arterial oxygen desaturations were observed with a nadir of 84%. Moderate snoring was observed during this recording. The patient was tested in the lateral, supine, and prone positions with NREM + REM stage sleep noted. Combined Respiratory Disturbance Index (RDI) was noted to be 9 events per hour. Supine RDI was noted to be 14 events per hour.

**CARDIAC:** An average heart rate of 62 beats per minute was noted during the night. Evening blood pressure was noted to be 145/92, while morning blood pressure was noted to be 138/86.

**INTERPRETATION:** Obstructive Sleep Apnea Syndrome (327.23) was noted associated with sleep fragmentation, markedly elevated arousal index, and oxygen desaturations. A repeat polysomnogram with all night CPAP titration is recommended. Arrangements will be made for this further testing to be carried on.

Vernon D. Rowe M.D.
Diplomate, American Board of Sleep Medicine
www.neurokc.com
VDR/dmh/06/04/07

```
                              Document Detail
----------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018121407415813FC46

Entry Date: 12/14/2018 07:41:58

Received Date: 12/14/2018

Date Added to Claim: 12/14/2018

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider:

Document Notes: Ambulatory Summary

Work Notes:
```

UA-CL-AD&D-000692

# Ambulatory Summary for Kathy R Williams

**Table of Contents**

    Allergies
    Medications
    Problems
    Procedures
    Lab Results
    Past Encounters
    Social History
    Vaccine List
    Plan of Care
    Vitals
    Demographics
    Care Team Members

## Allergies

| Code | Code System | Name | Reaction | Severity | Status | Onset |
|------|-------------|------|----------|----------|--------|-------|
| NKDA | | | | | | |

## Medications

| Name | Status | Start Date | Stop Date |
|------|--------|-----------|-----------|
| cyanocobalamin (vit B-12) 1,000 mcg/mL injection solution INJECT 1 ML (1,000 mcg) MONTHLY AS DIRECTED | Unknown | | Not available |
| Multi Vitamin daily | Active | | Not available |
| vitamin A qd | Active | | Not available |
| Vitamin D2 1000mg daily | Active | | Not available |

## Problems

| Name | Status | Onset Date | Source |
|---|---|---|---|
| Neck Pain | Active | 04/12/2006 | |
| Dizziness | Active | 04/12/2006 | |
| Headache | Active | 04/27/2006 | |
| Incoordination | Active | 05/23/2007 | |
| Backache | Active | 06/08/2007 | |
| Paresthesia | Active | 06/08/2007 | |
| Brachial Neuritis | Active | 06/08/2007 | |
| Disorder of Trunk | Active | 06/08/2007 | |
| Obstuctive Sleep Apnea Syndrome | Active | 06/13/2007 | |
| Cervical Spondylosis without Myelopathy | Active | 06/03/2008 | |
| Thoracic Spondylosis without Myelopathy | Active | 06/03/2008 | |
| Lumbosacral Spondylosis without Myelopathy | Active | 06/03/2008 | |
| Overweight | Active | 06/27/2008 | |
| Vitamin B Deficiency | Active | | Encounter |
| Obstuctive Sleep Apnea of Adult | Active | | Encounter |
| Parasomnia | Active | | Encounter |
| Low Back Pain | Active | | Encounter |
| Vertigo | Active | | Encounter |
| Abnormal Reflex | Active | | Encounter |
| Concussion with Loss of Consciousness | Active | | Encounter |

**Notes:** concussion/ vertigo

## Procedures

| Date | Name | Performed by |
|------|------|--------------|
| | Knee<br>Notes: 12/2009 | Information not available |
| 09/10/2015 | X-ray, Cervical Spine | Rowe Neurology Institute<br>8550 Marshall Dr Ste. 100<br>Lenexa, KS 66214-9836<br>(913) 894-1500 (Work Place) |
| 09/10/2015 | MRI, C-spine | Rowe Neurology Institute<br>8550 Marshall Dr Ste. 100<br>Lenexa, KS 66214-9836<br>(913) 894-1500 (Work Place) |
| 09/10/2015 | X-ray, Lumbar Spine | Rowe Neurology Institute<br>8550 Marshall Dr Ste. 100<br>Lenexa, KS 66214-9836<br>(913) 894-1500 (Work Place) |
| 09/10/2015 | MRI, Lumbar Spine | Rowe Neurology Institute<br>8550 Marshall Dr Ste. 100<br>Lenexa, KS 66214-9836<br>(913) 894-1500 (Work Place) |
| 09/10/2015 | MRI, Brain | Rowe Neurology Institute<br>8550 Marshall Dr Ste. 100<br>Lenexa, KS 66214-9836<br>(913) 894-1500 (Work Place) |
| 09/10/2015 | Diagnostic Sleep Study - Full | Rowe Neurology Institute<br>8550 Marshall Dr Ste. 100<br>Lenexa, KS 66214-9836<br>(913) 894-1500 (Work Place) |

**Notes:** hernia

UA-CL-AD&D-000695

## Lab Results

| Date | Name | Specimen | Result | Interpretation | Description | Value | Range | Status | Address |
|------|------|----------|--------|----------------|-------------|-------|-------|--------|---------|
| 09/30/2015 | CMP, Serum or Plasma | | High | | Glucose | 108 mg/dL | 65-99 mg/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Urea Nitrogen (BUN) | 15 mg/dL | 7-25 mg/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Creatinine | 0.79 mg/dL | 0.50-1.05 mg/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | eGFR Non-afr. American | 83 mL/min/1.73m2 | > or = 60 mL/min/1.73m2 | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | eGFR African American | 96 mL/min/1.73m2 | > or = 60 mL/min/1.73m2 | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | | | BUN/creatinine Ratio | not applicable (calc) | 6-22 (calc) | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Sodium | 139 mmol/L | 135-146 mmol/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Potassium | 4.1 mmol/L | 3.5-5.3 mmol/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Chloride | 103 mmol/L | 98-110 mmol/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Carbon Dioxide | 19 mmol/L | 19-30 mmol/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Calcium | 9.5 mg/dL | 8.6-10.4 mg/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Normal | | Protein, Total | 7.1 g/dL | 6.1-8.1 g/dL | Final | Quest Diagnostics - St. Louis: 11636 |

Claimant Name: Kathy Williams     Claim #: 14865967

| Date | Test | Status | Component | Result | Reference Range | | Lab |
|------|------|--------|-----------|--------|-----------------|---|-----|
| | | | | | | | Administration, Saint Louis |
| | | Normal | Albumin | 4.8 g/dL | 3.6-5.1 g/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Normal | Globulin | 2.3 g/dL (calc) | 1.9-3.7 g/dL (calc) | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Normal | Albumin/globulin Ratio | 2.1 (calc) | 1.0-2.5 (calc) | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Normal | Bilirubin, Total | 0.8 mg/dL | 0.2-1.2 mg/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Normal | Alkaline Phosphatase | 106 U/L | 33-130 U/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Normal | Ast | 18 U/L | 10-35 U/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Normal | Alt | 11 U/L | 6-29 U/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 | Erythrocyte Sedimentation Rate by Westergren Method | Normal | Sed Rate by Modified Westergren | 4 mm/h | < or = 30 mm/h | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 | CBC W/ Auto Diff | Normal | White Blood Cell Count | 5.8 thousand/uL | 3.8-10.8 thousand/uL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Normal | Red Blood Cell Count | 4.21 million/uL | 3.80-5.10 million/uL | Final | Quest Diagnostics - St. Louis: |

| | | | | | 11636 Administration, Saint Louis |
|---|---|---|---|---|---|
| Normal | Hemoglobin | 14.3 g/dL | 11.7-15.5 g/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Hematocrit | 42.3 % | 36.0-46.0 % | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| High | Mcv | 100.6 fL | 80.0-100.0 fL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| High | Mch | 33.9 pg | 27.0-33.0 pg | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Mchc | 33.7 g/dL | 32.0-36.0 g/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Rdw | 13.9 % | 11.0-15.0 % | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Platelet Count | 234 thousand/uL | 140-400 thousand/uL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Mpv | 9.1 fL | 7.5-11.5 fL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Absolute Neutrophils | 4176 cells/uL | 1500-7800 cells/uL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Absolute Lymphocytes | 1288 cells/uL | 850-3900 cells/uL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Normal | Absolute Monocytes | 302 cells/uL | 200-950 cells/uL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| Low | Absolute Eosinophils | 6 cells/uL | 15-500 cells/uL | Final | Quest Diagnostics - St. Louis: 11636 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | Administration, Saint Louis |
| | Normal | Absolute Basophils | 29 cells/uL | 0-200 cells/uL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | Normal | Neutrophils | 72.0 % | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | Normal | Lymphocytes | 22.2 % | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | Normal | Monocytes | 5.2 % | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | Normal | Eosinophils | 0.1 % | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | Normal | Basophils | 0.5 % | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 ANA (Antinuclear Antibodies) Screen, Ifa, Serum | Normal | ANA Screen, Ifa | negative | negative | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 Folate, Serum | Normal | Folate, Serum | 12.7 NG/mL | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 T3, Total, Serum | Normal | T3, Total | 103 NG/dL | 76-181 NG/dL | Final | Quest Diagnostics - St. Louis: |

| Date | Test | Result Status | Analyte | Value | Reference Range | Status | Lab |
|---|---|---|---|---|---|---|---|
| | | | | | | Final | 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 | T4, Free, Serum | Normal | T4, Free | 1.0 NG/dL | 0.8-1.8 NG/dL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 | TSH, Serum or Plasma | Normal | Tsh | 3.01 mIU/L | 0.40-4.50 mIU/L | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 | Vitamin B12, Serum | Normal | Vitamin B12 | 360 pg/mL | 200-1100 pg/mL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| 09/30/2015 | Vitamin D, 1,25- Dihydroxy, Serum | | Vitamin D, 1,25 (Oh)2, Total | 50 pg/mL | 18-72 pg/mL | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Vitamin D3, 1,25 (Oh)2 | 50 pg/mL | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Vitamin D2, 1,25 (Oh)2 | <8 pg/mL | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |

| 09/30/2015 | RPR (Rapid Plasma Reagin), Serum | Normal | RPR (DX) W/refl Titer and Confirmatory Testing | non-reactive | non-reactive | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |
| | | | Copy(ies) Sent to: | | | Final | Quest Diagnostics - St. Louis: 11636 Administration, Saint Louis |

## Past Encounters

12/08/2015
Vertigo; Obstructive Sleep Apnea of Adult; Lumbosacral Spondylosis without Myelopathy; Cervical Spondylosis without Myelopathy
Vernon D Rowe, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

10/23/2015
Obstructive Sleep Apnea Syndrome
Kenneth Vanowen, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

09/20/2015
Obstructive Sleep Apnea Syndrome
Kenneth Vanowen, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

09/10/2015
Vertigo; Concussion with Loss of Consciousness; Headache; Obstructive Sleep Apnea of Adult; Parasomnia; Neck Pain; Fall; Low Back Pain; Abnormal Reflex
Vernon D Rowe, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

06/27/2008
Dizziness and Giddiness; Overweight
George R. Moreng, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

06/03/2008
Dizziness and Giddiness; Obstructive Sleep Apnea (Adult)(Pediatric); Cervical Spondylosis without Myelopathy; Thoracic Spondylosis without Myelopathy
Vernon D Rowe, MD: 5500 N Oak Trafficway, Suite 203, Kansas City, MO 64118-4688, Ph. (913) 894-1600
--------------------------------------------------------------------------------

07/05/2007
Obstructive Sleep Apnea (Adult)(Pediatric)
Arlene O'Shea, APRN: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

06/13/2007
Obstructive Sleep Apnea (Adult)(Pediatric); Dizziness and Giddiness
George R. Moreng, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

06/08/2007
Brachial Neuritis or Radiculitis Nos; Thoracic or Lumbosacral Neuritis or Radiculitis, Unspecified; Backache, Unspecified; Disturbance of Skin Sensation
Vernon D Rowe, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

05/23/2007
Dizziness and Giddiness; Lack of Coordination
George R. Moreng, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

04/27/2006
Dizziness and Giddiness; Headache
George R. Moreng, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600
--------------------------------------------------------------------------------

04/12/2006
Dizziness and Giddiness; Cervicalgia
Vernon D Rowe, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1600

## Social History
**Smoking Status**                                    Never Smoker

## Vaccine List

None recorded.

## Plan of Care

| Reminders | | Provider |
|---|---|---|
| Appointments | None recorded. | |
| Lab | None recorded. | |
| Referral | None recorded. | |
| Procedures | None recorded. | |
| Surgeries | None recorded. | |
| Imaging | None recorded. | |

## Vitals

12/08/2015 09:15AM FOLLOW UP WITH VR

| Height | Weight | BMI | Blood Pressure |
|---|---|---|---|
| 5 ft 3 in | 217 lbs | 38.4 kg/m2 | 183/94 mm[Hg] |

10/23/2015 08:30PM SLEEP STUDY

| Height | Weight | BMI | Blood Pressure |
|---|---|---|---|
| 5 ft 3 in | 200 lbs | 35.4 kg/m2 | 160/105 mm[Hg] |

09/20/2015 09:15PM SLEEP STUDY

| Height | Weight | BMI | Blood Pressure |
|---|---|---|---|
| 5 ft 3 in | 200 lbs | 35.4 kg/m2 | 153/100 mm[Hg] |

09/10/2015 01:00PM NEW WRKUP NOT SEEN X 3 YRS 30m

| Height | Weight | BMI | Blood Pressure |
|---|---|---|---|
| 5 ft 3 in | 209 lbs | 37 kg/m2 | 162/83 mm[Hg] |

## Demographics

| | | | |
|---|---|---|---|
| Sex: | Female | Ethnicity: | Not Hispanic or Latino |
| DOB: | Redacted | Race: | White |
| Preferred language: | English | Marital status: | Married |

Contact:     18216 E 51st Ct S, Independence, MO 64055, Ph. tel:+1-816-3508817

## Care Team Members

### Primary Care Provider

RONALD D NICHOL DO (ST LUKE'S     12541 FOSTER ST, STE 300, OVERLAND PARK, KS 66213, Ph. tel:+1-913-3173200
MEDICAL GROUP SOUTHRIDGE)

### Referring Provider

DR. DAVID D. DYCK     19550 E 39TH ST STE 230B, INDEPENDENCE, MO 64057, Ph. tel:+1-816-7958200

--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018121407425794FC46

**Entry Date:** 12/14/2018 07:42:59

**Received Date:** 12/14/2018

**Date Added to Claim:** 12/14/2018

**Primary Doc Type:** Medical

**Secondary Doc Type:** Records

**Medical Provider:**

**Document Notes:** Dr. Mundhenke business cards

**Work Notes:**

UA-CL-AD&D-000703

 **Blue River Medical Group**

**Dean L. Mundhenke, MD**

816 373-3006
816-373-3087 fax

4911 S. Arrowhead Drive, Suite 101
Independence, MO 64055

 Blue Springs Internal Medicine

**Dean Mundhenke, MD**
*Board Certified Internal Medicine*

816-228-9841
816-228-8667 fax

205 NW R.D. Mize Road, Suite 400
Blue Springs, MO 64014

---

*Claimant Name: Kathy Williams     Claim #: 14865967*

```
                              Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2018121407440508FC46

Entry Date: 12/14/2018 07:44:05

Received Date: 12/14/2018

Date Added to Claim: 12/14/2018

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider: Rowe, Vernon

Document Notes: (Neurology) 12/8/15 ovn

Work Notes:
```

**Rowe Neurology Institute**

Vernon D. Rowe, MD, *Neurologist/Sleep Medicine/NeuroImaging*
George R. Moreng, MD, *Neurologist/NeuroImaging*
Dana M. Winegarner, DO, *Neurologist/Headache*
Kenneth R. VanOwen, MD, *Neurologist/Sleep Medicine/EMG-EEG*
Amelia B. Winsby, PsyD, *Neuropsychologist*

Doug Schell, APRN, MSCN, *Clinical Nurse Specialist*
Arlene O'Shea, APRN, *Nurse Practitioner*
Shane Jackson, DPT, *Physical Therapist*
Kelli Wong, DPT, *Physical Therapist*

Consultants in Neurology, P.A.
8550 Marshall Drive Suite 100
LENEXA, KS 66214-9836
Phone: (913) 894-1500, Fax: (913) 894-1502

Date: 12/08/2015

Dear Kathy Williams,

The following is a summary of your visit today. If you have any questions, please contact our office.

Sincerely,

VERNON D. ROWE, MD

# Patient Care Summary for Kathy R Williams

## Most Recent Encounter

12/08/2015 Vernon D Rowe: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. tel:~1-913-8941500

## Reason for Visit

None recorded.

## Assessment and Plan

The following list includes any diagnoses that were discussed at your visit.

1. Vertigo
--------
2. Obstructive sleep apnea of adult
--------
3. Lumbosacral spondylosis without myelopathy
--------
4. Cervical spondylosis without myelopathy

Discussion Note: None recorded.

Patient educational handouts: No information available.

## Plan of Care

| Reminders | | Provider |
|-----------|--------------|----------|
| Appointments | None recorded. | |
| Lab | None recorded. | |
| Referral | None recorded. | |
| Procedures | None recorded. | |
| Surgeries | None recorded. | |
| Imaging | None recorded. | |

Claimant Name: Kathy Williams     Claim #:  14865967

## Current Medications

Your medical record indicates you are on the following medicine. If this list is not consistent with the medications you are currently taking, or if you are taking additional over-the-counter medicines, please inform your provider.

| Name | Prescribed Date | Start Date |
|---|---|---|
| Multi Vitamin daily | | |
| vitamin A qd | | |
| Vitamin D2 1000mg daily | | |

## Medications Administered

None recorded.

## Vitals

| Height | Weight | BMI | Blood Pressure |
|---|---|---|---|
| 5 ft 3 in | 217 lbs | 38.4 | 183/94 |

| Pulse |
|---|
| 64 bpm |

## Lab Results

None recorded.

## Allergies

Please review your allergy list for accuracy. Contact your provider if this list needs to be updated.

| Name | Reaction | Severity | Onset |
|---|---|---|---|
| NKDA | | | |

## Problems

| Name | Status | Onset Date | Source |
|------|--------|-----------|--------|
| Neck Pain | Active | 04/12/2006 | |
| Dizziness | Active | 04/12/2006 | |
| Headache | Active | 04/27/2006 | |
| Incoordination | Active | 05/23/2007 | |
| Backache | Active | 06/08/2007 | |
| Paresthesia | Active | 06/08/2007 | |
| Brachial Neuritis | Active | 06/08/2007 | |
| Disorder of Trunk | Active | 06/08/2007 | |
| Obstructive Sleep Apnea Syndrome | Active | 06/13/2007 | |
| Cervical Spondylosis without Myelopathy | Active | 06/03/2008 | |
| Thoracic Spondylosis without Myelopathy | Active | 06/03/2008 | |
| Lumbosacral Spondylosis without Myelopathy | Active | 06/03/2008 | |
| Overweight | Active | 06/27/2008 | |
| Vitamin B Deficiency | Active | | Encounter |
| Obstructive Sleep Apnea of Adult | Active | | Encounter |
| Parasomnia | Active | | Encounter |
| Low Back Pain | Active | | Encounter |
| Vertigo | Active | | Encounter |
| Abnormal Reflex | Active | | Encounter |
| Concussion with Loss of Consciousness | Active | | Encounter |

Notes: concussion/ vertigo

## Procedures

| Date | Name | Performed by |
|------|------|-------------|
| | Knee | Information not available |
| | Notes: 12/2009 | |

Notes: hernia

## Vaccine List

Here is a copy of your most up-to-date vaccination list.

None recorded.

## Smoking Status

| Smoking Status | Never Smoker |
|----------------|--------------|

## Past Encounters

12/08/2015
Vertigo; Obstructive Sleep Apnea of Adult; Lumbosacral Spondylosis without Myelopathy; Cervical Spondylosis without Myelopathy
Vernon D Rowe, MD: 8550 Marshall Drive, Suite 100, Lenexa, KS 66214-9836, Ph. (913) 894-1500

## Demographics

| | | | |
|---|---|---|---|
| Sex: | Female | Ethnicity: | Not Hispanic or Latino |
| DOB: | Redacted | Race: | White |
| Preferred language: | English | Marital status: | Married |

Contact:  18216 E 51st Ct S, Independence, MO 64055, Ph. tel:+1-816-3508817

## Care Team Members

**Primary Care Provider**

Ronald D Nichol DO (St Luke's       12541 Foster St, Ste 300, Overland Park, KS 66213, Ph. tel:+1-913-3173200
Medical Group Southridge)

**Referring Provider**

Dr. David D. Dyck       19550 E 39th St Ste 230b, Independence, MO 64057, Ph. tel:+1-816-7958200

---

Note: Patients are solely responsible for maintaining the privacy and security of all information printed from the
Patient Portal.

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

```
                              Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Personal        Name: General
Status: Completed
Original Notify Date: 12/14/2018
Notify Date: 12/18/2018
Due Date:
Subject: f/u on records request
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 12/10/2018 14:58:00: - Mundhenke, IM
- Hull, sleep med
- Rowe, neurology

Created By: Turner, Maureen
Created Date: 12/10/2018 14:58:00      Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Turner, Maureen 12/12/2018 14:48:16: requests suspended as auths are
needed; msg sent to RPNet cust service on 12/11/18 asking them to send requests to
the facilities with the CDC.
               ---------------------------------------------------
               Turner, Maureen 12/13/2018 14:32:56: 9:07am-
Received a vm message from Janine with RPNet. All 3 facilities require an auth;
they need signed auth from spouse before they can proceed with requests
               ---------------------------------------------------
               Turner, Maureen 12/13/2018 14:54:36: auth request sent to atty; f/u
               ---------------------------------------------------
               Turner, Maureen 12/14/2018 13:35:52: atty will not sign auth; he will
provide records if available


Completed By: Turner, Maureen
Completed Date: 12/14/2018 13:35:52      Complete Site: Chattanooga
```

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000710

Activity
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Phone Call          Name: Phone Call Details
Status: Completed
Original Notify Date: 12/14/2018
Notify Date: 12/14/2018
Due Date:
Subject: OTC to atty
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
--------------------------------------------------------------------------
Request: Turner, Maureen 12/14/2018 13:52:22: OTC to atty

Created By: Turner, Maureen
Created Date: 12/14/2018 13:52:22          Create Site: Chattanooga

Response Fields
--------------------------------------------------------------------------
Call Type: Placed Call To
Person Contacted: Attorney
Reason for Call: Specific Question
Call Outcome: Contact Successful
Comments: Turner, Maureen 12/14/2018 13:52:22: 12/14/18, 1:25pm-
Called Mr. Blakeman (213-629-9922) to discuss appeal. I stated that I received his
email and wanted to confirm that the medical records he provided are all the
available records. I noted Dr. Rowe's record is from 12/8/15 and appears to be an
incomplete ovn. We also discussed that he noted medical records were not
considered, were referenced in Dr. Starr's report, and we have tried to obtain but
he will not complete the auth that will allow us to obtain the records. He said he
was advised by an ERISA advisor not to sign the auth. I offered that he could cross
out the financial statements of the auth but he again stated he was advised to not
have his client complete the auth.
He said that Mr. Williams is going to request all the records again and if there
are more records available, then they will send them. We discussed timeframe and he
said he believes he should have the records or a response to me within 3 weeks.
I stated I will provide him with 3 weeks to submit additional info. Our appeal
timeframe will continue when we receive the additional info, or the 3-week
timeframe expires.
He asked if I alone make the appeal decision. I stated I utilize resources as
needed to make a decision and will communicate the decision once we have completed
the evaluation.
No other questions, and we ended our call.

Maureen Turner


Completed By: Turner, Maureen
Completed Date: 12/14/2018 13:52:22          Complete Site: Chattanooga

*Claimant Name: Kathy Williams     Claim #:  14865967*

```
                              Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeals ERISA Extension Letter - Attorney

Status: Final

Date: 2018-12-14

Notes: Appeals Extension Letter - Attorney

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To     Addressee Name: Blakeman, Benjamin
Relationship: Attorney     Document ID: 2018121414041077253E
Delivery Date: 12/14/2018 15:13:31
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To     Addressee Name: Blakeman, Benjamin
Relationship: Attorney     Document ID: 2018121414041077253E
Delivery Date: 12/14/2018 14:08:19
Delivery Status: Fax: Sent; Success
```

UA-CL-AD&D-000712

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



December 14, 2018

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:     Williams, Kathy
        Claim Number:      14865967
        Policy Number:     382480
        Unum Life Insurance Company of America

Dear Mr. Blakeman:

This letter is a follow-up to our conversation on December 14, 2018 concerning the Group
Accidental Death Insurance claim submitted for Kathy Williams.

As discussed, we are providing you with an extension of three weeks, or to January 04, 2019, to
submit additional information. Our appeal review period will continue the day after the deadline
or after we receive all additional information, whichever occurs first.

If you have questions, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

1242-03     UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy Williams     Claim #:  14865967

Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Auto-generated         Name: Medical Records Request
Status: Cancelled
Original Notify Date: 01/24/2019
Notify Date: 01/24/2019
Due Date:
Subject: Dr. Steven Hull Midwest Sleep Specialist
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Medical Records Request Tracking Id: 4801601
Request: Turner, Maureen 12/10/2018 14:57:15: Medical or Care Provider: Dr. Steven
Hull Midwest Sleep Specialists
Records Needed: All records, Appeals
Records From: 4/1/2017
Records To: Present
R & L's: No
Signed Auth Linked: No
Insuring Entity: Unum Life Insurance Company of America
Text Request for Provider: N/A
Instructions for MR Processing Team: N/A
Forms Needed: N/A
Linked Images:
    Medical - Death Certificate
    5/22/2018
    CDC


Created By: Turner, Maureen
Created Date: 12/10/2018 14:57:15       Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Turner, Maureen 12/14/2018 14:22:18: cancel- atty will not return
completed auth


Completed By: Turner, Maureen
Completed Date: 12/14/2018 14:22:18       Complete Site: Chattanooga

--------------------------------------------------------------------------------

Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Auto-generated          Name: Medical Records Request
Status: Cancelled
Original Notify Date: 01/24/2019
Notify Date: 01/24/2019
Due Date:
Subject: Dr. Dean Mundhenke Blue Springs Internal
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
-----------------------------------------------------------------------
Medical Records Request Tracking Id: 4801604
Request: Turner, Maureen 12/10/2018 14:57:28: Medical or Care Provider: Dr. Dean
Mundhenke Blue Springs Internal Medicine
Records Needed: All records, Appeals
Records From: 4/1/2017
Records To: Present
R & L's: No
Signed Auth Linked: No
Insuring Entity: Unum Life Insurance Company of America
Text Request for Provider: N/A
Instructions for MR Processing Team: N/A
Forms Needed: N/A
Linked Images:
     Medical - Death Certificate
     5/22/2018
     CDC


Created By: Turner, Maureen
Created Date: 12/10/2018 14:57:28       Create Site: Chattanooga

Response Fields
-----------------------------------------------------------------------
Response: Turner, Maureen 12/14/2018 14:22:27: cancel- atty will not return
completed auth



Completed By: Turner, Maureen
Completed Date: 12/14/2018 14:22:27      Complete Site: Chattanooga

---

UA-CL-AD&D-000715

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Auto-generated          Name: Medical Records Request
Status: Cancelled
Original Notify Date: 01/24/2019
Notify Date: 01/24/2019
Due Date:
Subject: Dr. Vernon Rowe MidAmerica Neuroscience
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
------------------------------------------------------------------------
Medical Records Request Tracking Id: 4801606
Request: Turner, Maureen 12/10/2018 14:57:38: Medical or Care Provider: Dr. Vernon
Rowe MidAmerica Neuroscience Institute Attn: Medical Records
Records Needed: All records, Appeals
Records From: 4/1/2017
Records To: Present
R & L's: No
Signed Auth Linked: No
Insuring Entity: Unum Life Insurance Company of America
Text Request for Provider: N/A
Instructions for MR Processing Team: N/A
Forms Needed: N/A
Linked Images:
    Medical - Death Certificate
    5/22/2018
    CDC


Created By: Turner, Maureen
Created Date: 12/10/2018 14:57:38       Create Site: Chattanooga

Response Fields
------------------------------------------------------------------------
Response: Turner, Maureen 12/14/2018 14:22:36: cancel- atty will not return
completed auth



Completed By: Turner, Maureen
Completed Date: 12/14/2018 14:22:36      Complete Site: Chattanooga

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2018121907231476C5F9

**Entry Date:** 12/19/2018 07:23:16

**Received Date:** 12/19/2018

**Date Added to Claim:** 12/19/2018

**Primary Doc Type:** Appeals

**Secondary Doc Type:** Other

**Medical Provider:**

**Document Notes:** Appeals- email from atty

**Work Notes:**

UA-CL-AD&D-000717

**Turner, Maureen**

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Tuesday, December 18, 2018 1:19 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Kathy Williams appeal |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Gary Williams has requested all the records from Rowe Neurology and we will forward them to you as soon as they are received. There are no additional records from the other two providers.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile:  213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments.  Please notify us and delete the email.**

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000718

```
                              Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2019010407313101C5C4

Entry Date: 01/04/2019 07:31:31

Received Date: 01/04/2019

Date Added to Claim: 01/04/2019

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal- email from atty w/info

Work Notes:
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000719

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Thursday, January 03, 2019 5:32 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Supplement to Kathy Williams appeal |
| **Attachments:** | Rowe 1 of 4.pdf; Rowe 2 of 4.pdf; Rowe 3 of 4.pdf; Rowe 4 of 4.pdf |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Maureen,

Attached hereto are the additional medical records obtained from Rowe Neurology. We plan to have our medical expert review these records and update his opinion which was previously provided to you. We would like Unum's consent to submit this additional opinion after the present deadline.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510
Beverly Hills, CA 90211
Telephone: 213-629-9922
Facsimile: 213-232-3230
Email: ben@lifeinsurance-law.com
Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

*Claimant Name: Kathy Williams    Claim #:  14865967*

UA-CL-AD&D-000720

```
                              Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2019010407330097C5C4

Entry Date: 01/04/2019 07:33:01

Received Date: 01/04/2019

Date Added to Claim: 01/04/2019

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider:

Document Notes: submitted by atty; 1 of 4

Work Notes:
```

*Claimant Name: Kathy Williams    Claim #:  14865967*

## Medical Records - CONFIDENTIAL

**FROM:** KS - Consultants in Neurology
Donita B
8550 Marshall Drive, LENEXA, KS 66214-9836
Phone: (913) 894-1500
Fax: (913) 894-1502

**TO:**

**Name: WILLIAMS, KATHY R**

DOB: **Redacted**

**Date Range: to 12/17/2018**

This document contains the following records of the patient:
- Encounters and Procedures
- Imaging Results
- Lab Results

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

if you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation. [ID:34857-A-583]

Claimant Name: Kathy Williams     Claim #: 14865967

WILLIAMS, KATHY R (id #34857, dob: Redacted

## Encounters and Procedures

Clinical Encounter Summaries
**Encounter Date: 12/08/2015**
Patient

| | | | |
|---|---|---|---|
| Name | WILLIAMS, KATHY (57, F) ID# 34857 | **Appt. Date/Time** | 12/08/2015 09:15AM |
| DOB | 02/03/1958 | **Service Dept.** | Lenexa Office |
| Provider | VERNON D. ROWE, MD | | |
| Insurance | Med Primary: BCBS-MO: ANTHEM BCBS | | |

    Insurance # : BAK977A23537
    Policy/Group # : 230017MFAB
    Referring Provider Name : DYCK, DAVID D
    Employer Name : RAYTOWN SCHOOL DISTRICT
    Prescription: check now

### Problems

- Vitamin B deficiency
- Overweight - Onset: 06/27/2008
- Obstructive sleep apnea syndrome - Onset: 06/13/2007
- Obstructive sleep apnea of adult
- Parasomnia
- Cervical spondylosis without myelopathy - Onset: 06/03/2008
- Thoracic spondylosis without myelopathy - Onset: 06/03/2008
- Lumbosacral spondylosis without myelopathy - Onset: 06/03/2008
- Neck pain - Onset: 04/12/2006
- Low back pain
- Backache - Onset: 06/08/2007
- Dizziness - Onset: 04/12/2006
- Vertigo
- Incoordination - Onset: 05/23/2007
- Paresthesia - Onset: 06/08/2007
- Headache - Onset: 04/27/2006
- Abnormal reflex
- Concussion with loss of consciousness
- Brachial neuritis - Onset: 06/08/2007
- Disorder of trunk - Onset: 06/08/2007

concussion/ vertigo

### Chief Complaint

None recorded.

### HPI

The patient returns today with her husband to go over the test results. She is getting evaluated for worsening of vertigo and tinnitus following head concussion sustained from a fall in June 2015.

MRI of the brain with and without contrast showed white matter signal changes potentially reflecting mild sequelae of atherosclerotic microangiopathy and mild cortical and cerebellar atrophy. There is no evidence of hemorrhage, hydrocephalus, or leptomeningeal enhancement.

MRI of the cervical spine with and without contrast showed reduced cervical lordosis, uncovertebral ridging at C5 to C6 with mild right foraminal narrowing and multilevel degenerative disc desiccation. The study was compared to 06/05/2008 study and current study reflects some interval progression. The patient reports occasional numbness in her right hand. X-ray of the cervical spine with flexion and extension views showed mild grade 1 anterolisthesis of C2 to C3. The anterolisthesis slightly increases during flexion.

MRI of the lumbar spine with and without contrast showed thoracolumbar scoliosis, L3 to L4 grade 1 anterolisthesis, and multilevel facet joint and ligamentum flavum hypertrophy leading to multilevel foraminal narrowing and some canal stenosis, none of which appear severe in the neutral study position. X-ray of the lumbar spine with flexion and extension views showed mild levoscoliosis centered at L3 with L3 to L4 mild grade 1 anterolisthesis during flexion and extension and degenerative disc disease with degenerative changes.

Laboratory studies included CMP, CBC, folate, TFT, B12, RPR, vitamin D, ANA, and sed rate. Abnormal findings were glucose of 108, but lab draw was nonfasting. MCV was a little elevated at 100.6 and vitamin B12 was 360.

Diagnostic polysomnogram was completed on 09/20/2015 and this showed AHI of 11 and RERA of 42, but that because of environmental concerns, this was repeated on 10/23/2015, which showed AHI of 10 and respiratory effort related arousal idex of 56. The patient's retropharyngeal space was measured at 5 to 6 mm on the cervical spine MRI.

The patient continues to feel dizzy described as "when I move my head, I can hear and feel something sloshing around." She is somewhat reluctant to try CPAP therapy because she has tried and failed this in the past and in addition, she saw how her husband struggled with the use of CPAP.

## WILLIAMS, KATHY R (id #34857, dob: Redacted

## Vitals

**BP:** 183/94 sitting L arm
12/08/2015 09:17 am

**Pulse:** 64 bpm 12/08/2015
09:17 am

**Ht:** 5 ft 3 in 12/08/2015
09:07 am

**Wt:** 217 lbs 12/08/2015
09:17 am

**BMI:** 38.4 12/08/2015 09:17
am

## Medications

Reviewed Medications

**Multi Vitamin**
daily

09/10/15  entered

**vitamin A**
qd

12/08/15  entered

**Vitamin D2**
1000mg daily

09/10/15  entered

## Allergies

Reviewed Allergies
NKDA

## Past Medical History

Headaches: **Y**
Knocked out / Head injury: **Y**
Sleep disorder: **Y**
Depression or Anxiety: **Y**
Lyme disease: **Y**
Total Number of Pregnancies: **Y - 2**
B-12 Deficiency: **Y**
Vitamin D deficiency: **Y**
Eye Glasses or Contact Lens: **Y**

## Surgical History

Knee - 12/2009

hernia

## Family History

Father                              - Cerebrovascular accident
                                    - Malignant neoplastic disease
Mother                              - Cerebrovascular accident
father is deceased age 76 cause of death heart attack / mother is alive

## Social History

Reviewed Social History
**1 Neurology and Neurology, Epworth & Headache Questionnaire**
NEUROLOGY SOCIAL HISTORY: 09/10/2015
Occupation: homemaker
Education: 2 Year College
Marital status: Married
Number of children: 2
Ethnicity: White
Handedness: Right
Smoking Status: Never smoker
Caffeine intake: Occasional
Alcohol intake: Occasional
Illicit Drug Use: No
Foreign Travel: N
Exposure to Toxins?: N
EPWORTH SCALE: 09/10/2015
Sitting and reading?: 1=Slight Chance
Watching TV?: 2=Moderate Chance
Sitting, inactive in a public place:: 2=Moderate Chance
As a passenger in a car, for an hour without a break:: 1=Slight Chance

Claimant Name: Kathy  Williams          Claim #:  14865967

**WILLIAMS, KATHY R (id #34857, dob:** Redacted

Lying down to rest in the afternoon:: 0=Never
Sitting and talking to someone:: 0=Never
Sitting quietly after lunch, without alchol:: 0=Never
In a car while stopped, for a few minutes in traffic:: 0=Never
Epworth Total Score=: 5
HEADACHE QUESTIONNAIRE: 09/10/2015
How often get headaches bad enough to interfere with daily activities and how long do they last:: pressure
How often get milder headaches and how long do they last:: pressure all of the time
Age of first headache:: 12
Significant change in headaches recently:: Y (Notes: pressure all of the time)
How often miss work or social activities due to headaches:: I just live with it
How often takes headache relievers or pain pills:: I don't take pain pills for headaches, I take pain pills for knee pain occasionally
Headaches sometimes accompanied by:: nausea, sensitivity to light, sound and odor
Headaches sometimes associated with:: seeing zig zag lines, things look to big or too small
Is your headache pain sometimes:: made worse with movement/activity, pressure
Any of the following with headaches:: ringing ears, neck pain
Any mental status changes?: confusion, disorientation, sudden forgetfulness, easily agitated
Have an walking problems or clumsiness?: Y
Headaches accompanied by:: nasal stuffiness, redness of eyes, drooping eyelids, easily agitated
Headache onset after or during strenous physical exercise or sex:: Y
Headaches produced (not just worsened) by straining, such as with a bowel movement?: Y
Recent changes in pattern of headache?: N
Headaches worsened over the last 4 weeks despite medications that have previously worked: N
Do the headaches occur with a sudden onset?: N
History of brain swelling?: N
History of head trauma within the past year?: Y
Headaches frequently awaken patient at night?: N

ROS

None recorded.

Physical Exam

None recorded.

Assessment / Plan

ASSESSMENT
1. Persistent chronic vertigo and tinnitus, which has increased following head concussion sustained from a fall on 06/05/2015. MRI of the brain showed white matter changes suggestive of atherosclerotic microangiopathy. This is unlikely contributory to her symptoms. There were no other abnormalities noted on the brain MRI to explain her vertigo, but she does untreated sleep apnea, which can sometimes cause dizziness.
2. Cervical and lumbar spondylosis.
3. Obstructive sleep apnea.

PLAN
1. She will try to get an oral appliance through her dentist. We also gave her a list of sleep medicine board certified for oral appliance therapy consultation. She was made aware that she would need a sleep study in six weeks after initiation of oral appliance therapy.
2. She is also interested in getting evaluated for CSF leak. We provided her with the name of a surgeon at Cedars-Sinai Hospital in California.
3. I offered physical therapy for low back and neck pain, which she declined at this time.
4. Follow up in two to three months.

**1. Vertigo**
    R42: Dizziness and giddiness

**2. Obstructive sleep apnea of adult**
    G47.33: Obstructive sleep apnea (adult) (pediatric)

**3. Lumbosacral spondylosis without myelopathy**
    M47.817: Spondylosis without myelopathy or radiculopathy, lumbosacral region

**4. Cervical spondylosis without myelopathy**
    M47.812: Spondylosis without myelopathy or radiculopathy, cervical region

Return to Office
● to see Vernon D. Rowe, MD at Lenexa Office on or around 02/08/2016

Encounter Sign-Off
Encounter signed-off by Vernon D. Rowe, MD, 12/14/2015.

---

## WILLIAMS, KATHY R (id #34857, dob: Redacted )

Encounter performed by Vernon D. Rowe, MD
Encounter scribed for Vernon D. Rowe, MD by Arlene O'Shea, APRN
Encounter reviewed & signed by Vernon D. Rowe, MD on 12/14/2015 at 5:18pm

**Encounter Date: 09/10/2015**

Patient

| | | | |
|---|---|---|---|
| Name | WILLIAMS, KATHY (57, F) ID# 34857 | Appt. Date/Time | 09/10/2015 01:00PM |
| DOB | Redacted | Service Dept. | Lenexa Office |
| Provider | VERNON D. ROWE, MD | | |
| Insurance | Med Primary: BCBS-MO: ANTHEM BCBS | | |

         Insurance # : BAK977A23537
         Policy/Group # : 230017MFAB
         Referring Provider Name : DYCK, DAVID D
         Employer Name : RAYTOWN SCHOOL DISTRICT
         Prescription: check now

## Problems

- Vitamin B deficiency
- Overweight - Onset: 06/27/2008
- Obstructive sleep apnea syndrome - Onset: 06/13/2007
- Obstructive sleep apnea of adult
- Parasomnia
- Cervical spondylosis without myelopathy - Onset: 06/03/2008
- Thoracic spondylosis without myelopathy - Onset: 06/03/2008
- Lumbosacral spondylosis without myelopathy - Onset: 06/03/2008
- Neck pain - Onset: 04/12/2006
- Low back pain
- Backache - Onset: 06/08/2007
- Dizziness - Onset: 04/12/2006
- Vertigo
- Incoordination - Onset: 05/23/2007
- Paresthesia - Onset: 06/08/2007
- Headache - Onset: 04/27/2006
- Abnormal reflex
- Concussion with loss of consciousness
- Brachial neuritis - Onset: 06/08/2007
- Disorder of trunk - Onset: 06/08/2007

concussion/ vertigo

## Chief Complaint

"Concussion and vertigo."

## HPI

Ms. Williams is a 57-year-old married white right-handed female. She is accompanied by her husband. She was referred by Dr. David Dyck for evaluation of posttraumatic headache.

Ms. Williams is known to our practice. She was seen from 2006 to 2008. Her last office visit was June 27, 2008. She was evaluated and treated for headache, neck pain, sleep apnea, vertigo, and paresthesia.

WORSENING VERTIGO
The patient suffers from chronic vertigo, which started in 2002. At that time, she had a removal of maxillary cyst, but it did not help with the vertigo. Shortly after that, she had a lumbar puncture because one of her employees at that time had meningitis. She experienced low CSF headache following the lumbar puncture and she was treated with a blood patch. We did not find any neurologic cause of her vertigo. We did diagnose her with sleep apnea, but she refused CPAP therapy. She had worsening of vertigo following a head concussion sustained from a fall on June 5, 2015. She slipped at the bottom of the stairs and hit her hand on a cabinet. She lost consciousness for an unknown amount of time. This occurred in the middle of the night. In addition to the vertigo, she also developed constant head pressure, which is relieved when she lies down. When she bends over she notices clear rhinorrhea. Currently, she is doing vestibular and speech therapy and she is improving, but she said she could hear her neck move. She also has chronic tinnitus, which has worsened following the concussion. She has also been getting dry eyes where it hurts to close her eyes. She was evaluated by an ophthalmologist and she said at one time she had conjunctivitis. She has had CT scans of the brain recently, but we do not have the images nor any of the formal reports.

She had a weight gain of 29 pounds since she was diagnosed with sleep apnea in 2007. She says she also sleepwalks and sleep talks.

## Vitals

09/10/2015 01:19 pm

        **BP:** 162/83 sitting L arm        **Pulse:** 58 bpm        **Ht:** 5 ft 3 in

**WILLIAMS, KATHY R (id #34857, dob:** Redacted

Wt: 209 lbs                                    BMI: 37                                    NC: 15 in

## Medications

### Reviewed Medications

| Name | Date |
| --- | --- |
| **Multi Vitamin**<br>daily | 09/10/15   entered |
| **Vitamin D2**<br>1000mg daily | 09/10/15   entered |

## Allergies

Reviewed Allergies
NKDA

## Past Medical History

Headaches: **Y**
Knocked out / Head injury: **Y**
Sleep disorder: **Y**
Depression or Anxiety: **Y**
Lyme disease: **Y**
Total Number of Pregnancies: **Y - 2**
B-12 Deficiency: **Y**
Vitamin D deficiency: **Y**
Eye Glasses or Contact Lens: **Y**

## Surgical History

Knee - 12/2009

hernia

## Family History

| Father | - Cerebrovascular accident |
| --- | --- |
| | - Malignant neoplastic disease |
| Mother | - Cerebrovascular accident |

father is deceased age 76 cause of death heart attack / mother is alive

## Social History

Reviewed Social History
**1 Neurology and Neurology, Epworth & Headache Questionnaire**
NEUROLOGY SOCIAL HISTORY: 09/10/2015
Occupation: homemaker
Education: 2 Year College
Marital status: Married
Number of children: 2
Ethnicity: White
Handedness: Right
Smoking Status: Never smoker
Caffeine Intake: Occasional
Alcohol Intake: Occasional
Illicit Drug Use: No
Foreign Travel: N
Exposure to Toxins?: N
EPWORTH SCALE: 09/10/2015
Sitting and reading?: 1=Slight Chance
Watching TV?: 2=Moderate Chance
Sitting, inactive in a public place:: 2=Moderate Chance
As a passenger in a car, for an hour without a break:: 1=Slight Chance
Lying down to rest in the afternoon:: 0=Never
Sitting and talking to someone:: 0=Never
Sitting quietly after lunch, without alchol:: 0=Never
In a car while stopped, for a few minutes in traffic:: 0=Never
Epworth Total Score=: 6
HEADACHE QUESTIONNAIRE: 09/10/2015
How often get headaches bad enough to interfere with daily activities and how long do they last:: pressure
How often get milder headaches and how long do they last:: pressure all of the time
Age of first headache:: 12

_Claimant Name: Kathy  Williams      Claim #:  14865967_

```
                              Document Detail
-------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2019010407341880C5C4

Entry Date: 01/04/2019 07:34:19

Received Date: 01/04/2019

Date Added to Claim: 01/04/2019

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider:

Document Notes: submitted by atty; 2 of 4

Work Notes:
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

# WILLIAMS, KATHY R (id #34857, dob: Redacted)

Significant change in headaches recently:: Y (Notes: pressure all of the time)
How often miss work or social activities due to headaches:: I just live with it
How often takes headache relievers or pain pills:: I don't take pain pills for headaches, I take pain pills for knee pain occasionally
Headaches sometimes accompanied by:: nausea, sensitivity to light, sound and odor
Headaches sometimes associated with:: seeing zig zag lines, things look to big or too small
Is your headache pain sometimes:: made worse with movement/activity, pressure
Any of the following with headaches:: ringing ears, neck pain
Any mental status changes?: confusion, disorientation, sudden forgetfulness, easily agitated
Have an walking problems or clumsiness?: Y
Headaches accompanied by:: nasal stuffiness, redness of eyes, drooping eyelids, easily agitated
Headache onset after or during strenuous physical exercise or sex:: Y
Headaches produced (not just worsened) by straining, such as with a bowel movement?: Y
Recent changes in pattern of headache?: N
Headaches worsened over the last 4 weeks despite medications that have previously worked: N
Do the headaches occur with a sudden onset?: N
History of brain swelling?: N
History of head trauma within the past year?: Y
Headaches frequently awaken patient at night?: N

## ROS

Patient reports **problems going to sleep, problems staying asleep, and loud snoring** but reports no excessive daytime sleepiness, no falling asleep when you shouldn't, and no legs moving restlessly. She reports **memory problems, numbness, headaches, and dizziness** but reports no loss of smell, no loss of taste, no facial weakness, good concentration, no difficulty walking, no passing out, no slurred speech, no difficulty swallowing, no lost ability to speak, no lost ability to read, no lost ability to write, no explained spells, and no tremors/shaking. She reports **blurred vision, double vision, red eyes, and inflammation** but reports no colorblindness, no tearing, no swollen eyelids, no droopy eyelids, pupils normal size, equal pupils, and no worsened vision. She reports **ringing in the ears and vertigo** but reports no deafness, no discharge from the ears, no ear pain, no mouth pain, no dental problems, no congestion, and no difficulty hearing. She reports **leg pain and low back pain** but reports no joint pain, no swelling in hands, no swelling in feet, no stiffness, no muscle weakness, no muscle shrinkage, no arm pain, no neck pain, and no thoracic pain. She reports **depression, anxiety, and insomnia** but reports no irritability, no bizarre behavior, no need for psychiatric medications, and no drug addiction. She reports **intolerance to heat or cold** but reports no increase in the size of the hands or feet, no excessive thirst, no impotence, no excessive facial hair, blood pressure controlled, and no thyroid problems. She reports **weight gain** but reports no fever, no chills, no weight loss, and no fatigue. She reports **nausea and abdominal pain** but reports no increased appetite, no decreased appetite, no vomiting, no change in color of stool, no hemorrhoids, no blood in stool, no black tarry stools, no incontinence of bowels, no diarrhea, and no constipation. She reports no palpitations, no racing of the heart, no chest pain, no shortness of breath, no blue extremities, no swollen extremities, and no cold extremities. She reports no wheezing, no dry cough, no productive cough, no coughing up blood, no night sweats, no chest pain with breathing, no shortness of breath, no blue extremities, and no need for oxygen. She reports no urinary incontinence, no blood in the urine, no increased urinary frequency, not up all night going to the bathroom, no frequent urinary tract infections, not going to the bathroom too often, and no change in color in urine. She reports no change in color of skin, no change in skin stiffness, no itching skin, no dry skin, no changes in hair, no changes in nails, no rashes, no sores, and no lumps. She reports no anemia, no easy bleeding, and no swollen lymph nodes.

## Physical Exam

Patient is a 57-year-old female.

**Constitutional:** Weight: **obese.** Ambulation: ambulates independently.

**Head:** Size/Trauma: **Mallampati IV Friedman IV with webbing of soft palate**

**Mental Status:** Orientation **alert and oriented.** Spoken Language spontaneous speech normal and comprehension normal. Mood/Affect: appropriate mood and affect.

**Skin:** Arterial Pulses Left: **2+ radial pulses with normal upstroke.**

**Cranial Nerves:** CN II Left: pupil normal size and reactive to light and accomodation and fundoscopic exam grossly normal and no papilledema; of the left eye; **visual acuity intact bilat.** CN II Right: pupil normal size and reactive to light and accomodation and fundoscopic exam grossly normal and no papilledema; of the right eye. CN III, IV, VI Left: versions normal, vergence normal, ductions normal, nystagmus absent, and no ptosis of the left eye; **palpebral fissure>right.** CN III, IV, VI Right versions normal, vergence normal, ductions normal, nystagmus absent, and no ptosis. CN V Left: **decreased sensation in a V3 distribution.** CN VII Left: normal facial expression. no weakness. CN VII Right: normal facial expression. no weakness. CN IX, X: Left normal palatal movement. CN IX, X: Right normal palatal movement. CN XII Left: tongue protrudes midline. CN XII Right: tongue protrudes midline.

**Spine:** Cervical Spine: **tenderness, left muscle spasm present, and right muscle spasm present** and FROM; C7 spinous process prominence, shoulders are internally rotated. suboccipital tenderness, patient feels crepitance with ACROM.

**Motor Exam:** Left Knee: **patellar lateral tracking.** Left Great Toe Strength **EHL 5/5.** Right Great Toe Strength **EHL 4+.**

**Reflexes:** Reflexes Left: **hamstring 1 and achilles 1/4** and biceps 2/4, triceps 2/4, brachial radialis 2/4, and patellar 2/4 **finger flexion DTRs 2+ bilat.** Reflexes Right: **biceps 0/4, hamstring 1,** and **achilles 1/4** and triceps 2/4, brachial radialis 2/4, and patellar 2/4. Plantar Reflex Left: response downgoing. Plantar Reflex Right: response downgoing. Gait/Posture: tiptoe normal, heel walk normal, and gait normal; **tandem gait and blind reverse tandem gait intact**

## Assessment / Plan

Claimant Name: Kathy Williams        Claim #:  14865967

## WILLIAMS, KATHY R (id #34857, dob: [Redacted])

1. Worsening chronic vertigo and tinnitus since head concussion sustained from a fall on June 5, 2015. Findings on clinical examination reveals cervical paraspinous muscle spasm and tenderness and upper and lower extremity deep tendon reflexes changes suggestive of right C6 and bilateral L5-S1 radiculopathy. The patient also endorses low back pain as a major quality life issue for her.
2. Untreated obstructive sleep apnea, somniloquy, and somnambulism.

PLAN
1. MRI of the brain, cervical, and lumbar spine with and without contrast to check for evidence of leptomeningeal enhancement, tumor, hemorrhage, infarction, hydrocephalus, disk herniation, spinal stenosis, fistula (given her history of low CSF headache treated with a blood patch) and other causes of nerve root impingement.
2. Obtain blood work.
3. Diagnostic polysomnogram to assess its current status.
4. X-ray of the cervical and lumbar spine to check for hypermobility.

**1. Vertigo**
  780.4: Dizziness and giddiness
  - CMP, SERUM OR PLASMA
  - FOLATE, SERUM
  - MRI, BRAIN - Note to Imaging Facility: checking for tumor, lesions, infarction, hydrocephalus, hemorrhage or leptomeningeal enhacement.
  Contrast (MRI): With and          Height (ft.): 5 ft 3
  Without                           in

  Weight (lbs): 209
  - VITAMIN B12, SERUM
  - RPR (RAPID PLASMA REAGIN), SERUM
  - ESR (ERYTHROCYTE SEDIMENTATION RATE), BLOOD - Note to Lab: SED Rate
  - CBC W/ AUTO DIFF
  - TSH, SERUM
  - T4, FREE, SERUM
  - T3, TOTAL, SERUM
  - ANA (ANTINUCLEAR ANTIBODIES) SCREEN, SERUM
  - VITAMIN D3, 25-HYDROXY, SERUM

**2. Concussion with loss of consciousness**
  850.5: Concussion with loss of consciousness of unspecified duration

**3. Headache**
  784.0: Headache
  - HEADACHE: AFTER YOUR VISIT

**4. Obstructive sleep apnea of adult**
  327.23: Obstructive sleep apnea (adult)(pediatric)
  - DIAGNOSTIC SLEEP STUDY - FULL - Note to Imaging Facility: to evaluate excessive daytime sleepiness or to check for sleep disorder breathing.

**5. Parasomnia**
  307.46: Sleep arousal disorder

**6. Neck pain**
  723.1: Cervicalgia
  - X-RAY, CERVICAL SPINE
  Views (X-RAY, CERVICAL SPINE): AP, Lateral, Flexion & Extension
  - MRI, C-SPINE - Note to Imaging Facility: checking for demyelination, disk herniation or stenosis.
  Contrast (MRI): With and          Height (ft.): 5 ft 3
  Without                           in

  Weight (lbs): 209
  - NECK PAIN: AFTER YOUR VISIT

**7. Fall**
  E888.9: Unspecified fall

**8. Low back pain**
  724.2: Lumbago
  - GETTING BACK TO NORMAL AFTER LOW BACK PAIN: AFTER YOUR VISIT
  - LEARNING ABOUT RELIEF FOR BACK PAIN
  - X-RAY, LUMBAR SPINE - Note to Imaging Facility: Supine: AP, Cross-Table Lateral, Obliques; Standing for 5 minutes-Flexion & Extension

UA-CL-AD&D-000730

**WILLIAMS, KATHY R (id #34857, dob:** Redacted **)**

- MRI, LUMBAR SPINE - Note to Imaging Facility: checking for demyelination, disk herniation or stenosis.

Contrast (MRI): With and
Without

Height (ft.): 5 ft 3
in

Weight (lbs): 209

- BACK CARE AND PREVENTING INJURIES: AFTER YOUR VISIT

**9. Abnormal reflex**
796.1: Abnormal reflex

Return to Office
- BED 2 for SLEEP STUDY at Sleep Center Lenexa on 09/20/2015 at 09:15 PM
- IMAGING CENTER for MRI CERVICAL SPINE -/+ at Imaging Center on 09/21/2015 at 04:30 PM
- X-RAY for X-Ray C-Spine 4-5 Views at Imaging Center on 09/21/2015 at 02:45 PM
- IMAGING CENTER for MRI, BRAIN -/+ at Imaging Center on 09/21/2015 at 03:30 PM
- Vernon D. Rowe, MD for FOLLOW UP WITH VR at Lenexa Office on 10/08/2015 at 01:45 PM

Encounter Sign-Off
Encounter signed-off by Vernon D. Rowe, MD, 09/14/2015.

Encounter performed by Vernon D. Rowe, MD
Encounter scribed for Vernon D. Rowe, MD by Arlene O'Shea, APRN
Encounter reviewed & signed by Vernon D. Rowe, MD on 09/14/2015 at 1:06pm

**Encounter Date: 06/27/2008**
Encounter performed and documented by
Encounter reviewed & signed by ATHENA on 10/15/2008 at 12:14am

**Encounter Date: 06/03/2008**
Encounter performed and documented by
Encounter reviewed & signed by ATHENA on 10/15/2008 at 12:14am

**Encounter Date: 07/05/2008**
Encounter performed and documented by
Encounter reviewed & signed by ATHENA on 10/18/2008 at 12:31am

**Encounter Date: 06/13/2007**
Encounter performed and documented by
Encounter reviewed & signed by ATHENA on 10/15/2008 at 12:14am

**Encounter Date: 05/23/2007**
Encounter performed and documented by
Encounter reviewed & signed by ATHENA on 10/15/2008 at 12:14am

**Encounter Date: 04/27/2006**
Encounter performed and documented by
Encounter reviewed & signed by ATHENA on 10/15/2008 at 12:14am

**Encounter Date: 04/12/2006**
Encounter performed and documented by
Encounter reviewed & signed by ATHENA on 10/15/2008 at 12:14am

**Imaging Results**



Rowe
Neurology
Institute

Our Patient ID: 34857

**Consultants in Neurology, PA.**
*Dedicated to the care of neurological disorders*

**Headache Center**

**Sleep Center**
*Accredited by the American Academy of Sleep Medicine*

**Multiple Sclerosis Center**
*Proud member of the Consortium of Multiple Sclerosis Centers*

**Memory Loss Center**

**Infusion Center**

**Imaging Center**
*Accredited by The Intersocietal Commission for the Accreditation of Magnetic Resonance Laboratories*

Vernon D. Rowe, MD
*Fellow, AAN, Diplomate, ABSM Neurologist/Sleep Medicine*

George M. Dravnieks, MD
*Neurologist/Neuromuscular*

Dana M. Weingartner, DO
*Neurologist/Headache Medicine*

Kennedy R. Mac Owiti, MD
*Neurologist/Sleep Medicine*

Doug Schulz, ARNP, MSCN
*Clinical Nurse Specialist, MS Certified Nurse*

Edward O'Brien, ARNP
*Nurse Practitioner*

Carolyn R. Kerr, LPN
*Research Manager*

Thomas Sullivan, DPT
*Director Physical Therapy*

Amy Lewicki, DPT
*Physical Therapist*

Patti Young, DPT
*Physical Therapist*

Steve A. Hunter, PhD
*Administrator*

Elizabeth Rowe, PhD, MBA
*Senior Advisor*

Nellie Yugmos, BHA
*Clinic Manager*

Aaron Seacat, RBFA
*Business Development*

11/13/2015

Dear Dr. Dyck,

Kathy Williams was recently seen in our American Academy of Sleep Medicine accredited Sleep Center. Attached is a narrative report, which includes details on our observations.

Kathy will be seen in follow-up in our clinic for any sleep disorders identified, and we will be happy to coordinate with the appropriate DME provider for their care if necessary.

Thank you for the confidence you have displayed in sending this patient to our accredited Sleep Center.

Sincerely,

Vernon D. Rowe, M.D.
Diplomate, American Board of Sleep Medicine
www.neurokc.com
VDR/omv/11/13/2015

Attachment

(T)913.894.1900   (F)913.894.1902 (Clinical)   (F)913.647.0295 (Billing)   www.neurokc.com

| Imaging Center | Headquarters | RNI North |
|---|---|---|
| 16 East Cambridge Circle, Suite 115 | 8550 Marshall Drive, Suite 100 | 5500 N. Oak Trafficway, Suite 203 |
| Kansas City, KS 66103 | Lenexa, KS 66214 | Kansas City, MO 64118 |

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000732

WILLIAMS, KATHY R (id #34857, dob: [ Redacted ]

## POLYSOMNOGRAM REPORT

**PATIENT: Williams, Kathy**          **Patient Number: 34857**

**DATE OF STUDY: 10/23/2015**          **DOB:** [ Redacted ]

**PHYSICIAN: Rowe/Dyck, David**

**RECORDING TECH: Natalie Brattin RPSGT**

**SCORING TECH: S. Miller RRT, RPSGT**

**RNI Rowe Neurology Institute**

Consultants in Neurology, PA
Nationally Recognized
of Neurological Imaging
Neurological Disorders

Headache Center

Sleep Center
Accredited by the American
Academy of Sleep Medicine

Multiple Sclerosis Center
Regional member of the Consortium
of Multiple Sclerosis Centers

Memory Loss Center

Infusion Center

Imaging Centers
Accredited and The International
Commission for the Accreditation
of Magnetic Resonance
Laboratories

Kenneth D. Irene, MD.
Fellow, AAN Fellow the ABPN
Neurologist/Sleep Medicine

George G. Murray, MD.
Neurologist/Neuroimaging

Dave B. Wing ervine, PhD.
Neurologist/Headache Medicine

Kenneth R. Van Owen, MD.
Neurologist/Sleep Medicine

Doug Schied, MPAS, MSCS
Clinical Nurse Specialist
MS Certified Nurse

Steven O'Brien, APRN
Nurse Practitioner

Sandra A. Fair, PhD.
Neuropsychologist

Stacie Jackson, DPT
Director Physical Therapy

Angel Rhodes, LPT
Physical Therapist

Kelli Bray, LSPT
Physical Therapist

John A. Hanson, PsyD.
Administrator

Elizabeth Rowe, RDN, MBA
Senior Advisor

Kellie Ogburn, RMA
Clinic Manager

Karen Seward, MBA
Business Development

**HISTORY/INDICATIONS:** Kathy is a 57 year-old female who stands 63 inches and weighs 200 pounds, and has a BMI of 35.4, with a neck circumference of 15 inches. The patient's major complaints on the day of study include an Epworth Sleepiness Scale of 6, with snoring, fatigue, chronic pain, stress, teeth grinding, anxiety, difficulty with sleep initiation and maintenance, frequent body position changes, sleep talking, sleep walking, waking up too early, frequent awakenings, night sweats, claustrophobia, and non-restorative sleep. This patient answered N/A to questions one and two, with affirmative to questions three and four on the International Restless Leg Syndrome questionnaire. Current medications include: multivitamin, and Vitamin D12. This patient was scheduled for overnight polysomnography to investigate the possibility of a sleep disorder.

**SLEEP:** Overnight polysomnography was performed on 10/23/2015. During this study the patient was monitored for a total of 5.8 hours, with a sleep period time of 5.2 hours. Sleep efficiency was recorded at 77%, with a total sleep time of 4.5 hours. Sleep latency was recorded at 27 minutes with a REM latency observed at 167 minutes. Sleep stage distribution reflected Stage N1 24.5%, Stage N2 60.5%, N3 9.1%, and REM 5.9%. This patient was tested in the lateral and supine positions. A total of 310 **arousals/awakenings were scored, yielding a significantly elevated arousal index of 69 per hour.** No evidence of periodic limb movement disorder or restless leg syndrome was noted.

**RESPIRATORY:** During this study, 2 obstructive apneas, 0 central apneas, 0 mixed apneas, 44 hypopneas, and 259 RERAs were scored. Moderate snoring was noted during this recording. Mean arterial oxygen saturation levels were noted to be 94%. Modest arterial oxygen desaturations were observed with a nadir of 85%; the patient's SAO2 was at or below 88% for 0% of the total recording time. Apnea/Hypopnea Index (AHI) was noted to be 10 events per hour, with a supine AHI of 2 events per hour, a REM AHI of 4 events per hour and a Total Respiratory Effort Related Arousal (RERA) Count of 259, for a RERA Index of 56 events per hour.

**CARDIAC:** The patient presented with an average heart rate of 64 beats per minute, while morning blood pressure was noted to be 160/105 (heart rate 59).

**INTERPRETATION: Obstructive Sleep Apnea (G47.33)** was observed associated with marked sleep fragmentation, and arterial oxygen desaturations. This patient did not meet criteria for split night study with application and titration of nasal CPAP per AASM guidelines. A sleep medicine consult is recommended to review results of this test and possible recommendations.

*Kenneth VanOwen MD*

Kenneth VanOwen, M.D.
ABPN diplomate in Sleep Medicine
www.neurokc.com
KRV/omv/11/13/2015

(T) 913.894.1500   (F) 913.894.1502 (Clinical)   (F) 913.647.0295 (Admin)   www.neurokc.com

Imaging Center
50 East Cambridge Circle, Suite 115
Kansas City, KS 66103

Headquarters
8550 Marshall Drive, Suite 100
Lenexa, KS 66214

RNI North
5500 N. Oak Trafficway, Suite 203
Kansas City, MO 64118

**Claimant Name: Kathy Williams          Claim #: 14865967**

UA-CL-AD&D-000733



### Rowe Neurology Institute
### Sleep Disorders Center
8550 Marshall Drive, Suite 100, Lenexa, Kansas 66214
Phone: (913) 894-1500, Fax: (913) 894-1502

#### Diagnostic Polysomnogram Report

| | | | | | |
|---|---|---|---|---|---|
| **Patient:** | Williams, Kathy | **Study Date:** | 10/23/2015 | **MR#:** | 34857 |
| **DOB:** | Redacted | **BMI:** | 35.4 | **Rec ID:** | KW102315-21165 |
| **Height:** | 63.0 inches | **Age:** | 57 Years | **Tech:** | Natalie Brattin RPSGT |
| **Weight:** | 200.0 lbs. | **Gender:** | Female | **Scorer:** | S. Miller RRT, RPSGT |
| | | | | **ESS:** | 6 |
| **Referring Physician:** | Dyck, David | | | **Neck Size:** | 15 |
| **Interpreting Physician:** | Rowe | | | | |

**SLEEP SUMMARY**

| | |
|---|---|
| Lights Out (Clock Time) | 0:20:09 |
| Lights On (Clock Time) | 6:09:39 |
| Total Recording Time: (Lights Out to Lights On) | 349.5 min |
| Total Sleep Time: | 269.5 min |
| Sleep Period Time: | 312.5 min |
| Percent Sleep Efficiency: | 77.1 % |
| Sleep Latency: (Lights Out to first epoch of sleep) | 28.5 min |
| Stage R Latency: (Sleep Onset to first epoch of R) | 166.5 min |
| Number of Awakenings (NW): | 31.0 |



% TST

**SLEEP STAGE SUMMARY**

| STAGE | Duration (min) | % SPT | %TST |
|---|---|---|---|
| Stage W | 80.0 | • | • |
| WASO | 55.5 | • | • |
| Wake During Sleep (WDS) | 45.0 | 14.4 | • |
| Stage N1 | 66.0 | 20.5 | 24.5 |
| Stage N2 | 163.0 | 52.2 | 60.5 |
| Stage N3 | 24.5 | 7.8 | 9.1 |
| Stage R | 16.0 | 5.1 | 5.9 |
| Total NREM | 253.5 | 80.5 | 94.1 |
| Supine | 50.5 | 16.2 | 18.7 |
| Supine REM | 0.0 | 0.0 | 0.0 |
| Supine NREM | 50.5 | 16.2 | 18.7 |
| Non-Supine | 219.0 | 70.1 | 81.3 |
| Non-Supine REM | 16.0 | 5.1 | 5.9 |
| Non-Supine NREM | 203.0 | 65.0 | 75.3 |



Adult Hypnogram

Page 1 of 3 Pages

CONSULTANTS IN NEUROLOGY, PA · 8900 Anndell Street, LENEXA KS 66214 2886

**WILLIAMS, KATHY R (id #34857, dob: Redacted)**

| Patient: | Williams, Kathy | MR#: | 34857 | Study Date: | 10/23/2015 |
|---|---|---|---|---|---|

## RESPIRATORY DISTURBANCE SUMMARY

AHI: 10.2

| | Apnea | | | Hypopnea | Total | |
|---|---|---|---|---|---|---|
| | # Obst. | # Central | # Mixed | # | # | Index |
| REM Events | 2 | 0 | 0 | 15 | 17 | 3.8 |
| Supine | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Non-Supine | 2 | 0 | 0 | 15 | 17 | 3.8 |
| NREM Events | 0 | 0 | 0 | 29 | 29 | 6.5 |
| Supine | 0 | 0 | 0 | 2 | 2 | 0.4 |
| Non-Supine | 0 | 0 | 0 | 27 | 27 | 6.0 |
| REM RERAs | | | | | 2 | 8 |
| Supine | | | | | 0 | 0 |
| Non-Supine | | | | | 2 | 8 |
| NREM RERAs | | | | | 248 | 59 |
| Supine | | | | | 50 | 59 |
| Non-Supine | | | | | 198 | 59 |
| TOTAL EVENTS | 2 | 0 | 0 | 44 | 46 | 10.2 |
| REM+NREM Event Total | 2 | 0 | 0 | 29 | 46 | 10.2 |
| Supine Event Total (Sleep + Wake) | 0 | 0 | 0 | 2 | 2 | 2.4 |
| Non-Supine Event Total (Sleep + Wake) | 2 | 0 | 0 | 42 | 44 | 12.1 |

| | | | | |
|---|---|---|---|---|
| Apnea Index | 0.4 | | **APNEA + HYPOPNEA INDEX (AHI)** | **10.2** |
| Hypopnea Index | 9.8 | | | |
| OA Index | 0.4 | | RERA Count | 250 |
| CA Index | 0.0 | | RERA Index | 55.7 |
| MA Index | 0.0 | | WERE Index | -- |

| | | | | |
|---|---|---|---|---|
| Occurrence of Cheyne Stokes breathing | No | | Cheyne Stokes Breathing Events | 0 |
| Longest consecutive Cheyne Stokes Breathing duration (min) | | | * must be > 10 minutes. | 0 min |

### AROUSAL SUMMARY

| | Count | Index |
|---|---|---|
| Apnea | 0 | 0.0 |
| Hypopnea | 0 | 0.0 |
| Snore | 0 | 0.0 |
| Desaturation | 0 | 0.0 |
| Spontaneous | 304 | 67.7 |
| Limb Movement | 5 | 1.1 |
| Periodic Limb Movement | 1 | 0.2 |
| Respiratory RLM | 0 | 0.0 |
| TOTAL | 310 | 69.0 |

### LIMB MOVEMENT SUMMARY

| | Count | Index |
|---|---|---|
| Limb Movements | 2 | 0.4 |
| Periodic Limb Movements | 0 | 0.0 |
| Respiratory Related LLM | 0 | 0.0 |
| TOTAL | 2 | 0.4 |

### BEHAVIOR DISORDER

| | |
|---|---|
| Tonic/Phasic RBD | No |
| Bruxism | No |
| Rhythmic Movement | No |

### OXYGEN SATURATION SUMMARY

| | Mean | Min |
|---|---|---|
| Sleep | 93.6 | 84.0 |
| REM | 91.1 | 84.0 |
| NREM | 93.7 | 90.0 |
| Wake | 95.2 | 73.0 |
| All Stages | 93.9 | 73.0 |

| | Count | Index |
|---|---|---|
| Desaturations 3% or > | 23 | 5.1 |
| NREM Desaturations | 6 | 1.4 |
| REM Desaturations | 7 | 26.3 |
| Wake Desaturations | 10 | 7.5 |
| Nadir (All Stages): | | 85.0% |

| | | | |
|---|---|---|---|
| Minutes TRT SaO2 < 88%: | 1.0 | % TRT SaO2 < 88%: | 0.3 |

Page 2 of 3 Pages

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000735

# WILLIAMS, KATHY R (id #34857, dob:  Redacted )

| Patient: | Williams, Kathy | MR#: | 34857 | Study Date: | 10/23/2015 |
|----------|-----------------|------|-------|-------------|------------|

## ECG SUMMARY

|  | Mean |
|--|------|
| Sleep | 62.1 |
| REM | 70.4 |
| NREM | 61.8 |
| Wake | 66.2 |
| All Stages | 63.6 |

| | |
|--|--|
| Bradycardia: | No |
| Asystole: | No |
| Sinus tachycardia during sleep: | No |
| Narrow complex tachycardia: | No |
| Wide complex tachycardia: | No |
| Atrial fibrillation: | No |
| Occurrence of other Arrhythmias: | No | If yes, list |

| 0.0 | Longest Paus |

## HYPOPNEA CRITERIA:

1. Recommended criteria-50% decrease with Nasal pressure sensor, 10 second duration, >/=3%desat OR ending in arousal, 90% of event has 50% amplitude drop.

## CHEYNES STOKES BREATHING RULE:

Score Cheynes Stokes breathing if there are at least 3 consecutive cycles of cyclical crescendo and decrescendo change in breathing amplitude and at least 1 of the following:

1. Five or more central apneas or hypopneas per hour of sleep.
2. The cyclic crescendo and decrescendo change in breathing amplitude has duration of at least 10 consecutive minutes.

## PARAMETERS:

Channel name
F3, F4, C3, C4, T3, T4, Cz, O1, O2, M1, M2, REF X1, LOC, ROC, Chin X2, Chin X3, Chin X4
L LEG3, R LEG4, SNORE5, EKG2, PSNORE, PFLOW, TFLOW8, CHEST, ABDM, CHEST6, ABDM7
SAO2, HEARTRATE, PLESMO, CFLOW, CPRESS (not used), Gravity X, Gravity Y, Vt
LEAK, EtCO2, M1 + M2, XFlow, XSum, RR

## SCORING INFORMATION:

Electroencephalogram (EEG) Derivation: F3, F4, C3, C4, T3, T4, Cz, O1, O2, M1, M2, REF X1
Electrooculogram (EOG) Derivation: LOC, ROC
Electromyogram (EMG) Derivation: Chin X2, Chin X3, Chin X4, L LEG3, R LEG4
Airflow parameters: Nasal Air Pressure Transducer (PFLOW), Oronasal Thermal Sensor (TFLOW)
Effort parameters: Calibrated Respiratory Inductance Plethysmography

## SCORING COMMENTS:

Page 3 of 3 Pages

UA-CL-AD&D-000736

WILLIAMS, KATHY R (id #34857, dob: Redacted)

Recording Code KW10231c-21185    Patient Name: Williams, Kathy
Recording Date 10/23/2015    Birth Date: 2/31858  ModRec: 34857



1. Stage
2. SaO2
3. Position
4. Resp. Class
9. Resp Events
10. RERAS
11. Hypopnea -- AASM
12. Limb Movements
13. Desat
14. Arousals
15. Night markers
16. Time Scale

REMbrandt - Analysis Manager 9.1.0.192

CONSULTANTS IN NEUROLOGY, PA • 8550 Marshall Drive, LENEXA KS 66214 913.894.9636

**WILLIAMS, KATHY R (id #34857, dob:** [ Redacted ]
# BRAIN WITHOUT AND WITH CONTRAST
(#1158855, Final, 09/21/2015 4:22pm)


Rowe
Neurology
Institute

8550 Marshall Drive, Suite 100
Lenexa, KS 66214
Phone: (913) 894-1500
www.neuroke.com

**PATIENT:**KATHY WILLIAMS
**DOB:**[ Redacted ]          **REFERRED BY:**Vernon Rowe, MD
**EXAM DATE:**09/21/2015      **PATIENT #:**34857

**MRI BRAIN WITHOUT AND WITH CONTRAST**

**CLINICAL INDICATION FOR STUDY:**Dizzy

**COMPARISON STUDIES:**5 June 2008

**TECHNIQUE:**This study consists of sagittal and axial SE T1, axial FSE T2, axial T2 GRE, axial Diffusion, and post-contrast axial FLAIR images, and axial and coronal SE T1 images of the brain utilizing a Hitachi Airis Elite 0.3T system. 9.5 cc IV Gadavist.

**FINDINGS:**
Biparietal deep white matter T2 hyperintensities without mass effect, hemosiderin deposition or restricted diffusion do not enhance. These are nonspecific but potentially reflect mild sequelae of atherosclerotic microangiopathy and could prompt risk factor investigation. Appearance is probably stable since the 2008 study. Some motion artifact is present degrading all sequences including FLAIR sequences. A few scattered punctate T2 hyperintensities elsewhere in the deep white matter are not excluded.

Subarachnoid spaces over the high convexities and around cerebellar folia are consistent with mild atrophy. This also appears stable since the prior study.

Unremarkable brainstem and sella. No unusual enhancement. Unremarkable internal carotid and basilar flow voids, orbits and paranasal sinuses.

**IMPRESSION:**1. White matter signal changes potentially reflecting mild sequelae of atherosclerotic microangiopathy. See details above.

2. Mild cortical and cerebellar atrophy.


Thank you for entrusting your patient's care to us.

Electronically signed by:

George R. Moreng, MD
*Fellowship Trained MRI Brain/Spine*
*ASN Certified, MRI/CT*

(Sep 22, 2015 08:07:02)

CONSULTANTS IN NEUROLOGY, PA • 8550 Marshall Drive, LENEXA KS 66214-1656

**WILLIAMS, KATHY R (id #34857, dob:** ⟨Redacted⟩
CERVICAL SPINE WITHOUT AND WITH CONTRAST
(#1159397, Final, 09/21/2015 3:32pm)



8550 Marshall Drive, Suite 100
Lenexa, KS 66214
Phone: (913) 894-1500
www.neuroke.com

PATIENT:KATHY WILLIAMS
DOB: ⟨Redacted⟩
EXAM DATE:09/21/2015

REFERRED BY:Vernon Rowe, MD
PATIENT #:34857

**MRI CERVICAL SPINE WITHOUT AND WITH CONTRAST**

**CLINICAL INDICATION FOR STUDY:**Cervicalgia

**COMPARISON STUDIES:**5 June 2008

**TECHNIQUE:**The study consists of sagittal FSE T2, sagittal and axial T2 weighted GRE, and pre- and postcontrast sagittal and axial SE T1 weighted images of the cervical spine on a Hitachi Airis Elite 0.3T system. 9.5 cc IV Gadavist.

**FINDINGS:**
Interval reduced cervical lordosis.

Interval worsening of uncovertebral ridging at C5-C6 with mild right foraminal narrowing in the current study. Uncovertebral ridging is minimal at C4-C5.

The spinal canal remains generous throughout. Intervertebral discs demonstrate low signal consistent with desiccation which has also progressed since the prior study. No disc protrusions are present. The spinal cord and region of the foramen magnum appear unremarkable.

**IMPRESSION:**1. Reduced cervical lordosis.

2. Uncovertebral ridging at C5-C6 with mild right foraminal narrowing.

3. Multilevel degenerative disc desiccation. Disc heights are well maintained.

4. The above findings reflect some interval progression since the prior study.

Thank you for entrusting your patient's care to us.

Electronically signed by:

George R. Moreng, MD
*Fellowship Trained MRI Brain/Spine*
*ASN Certified, MRI/CT*

(Sep 22. 2015 14:18:56)



Rowe
Neurology
Institute

8550 Marshall Drive, Suite 100
Lenexa, KS 66214
Phone: (913) 894-1500
www.neuroke.com

**PATIENT:**KATHY WILLIAMS
**DOB:** Redacted
**EXAM DATE:**09/21/2015

**REFERRED BY:**Vernon Rowe, MD
**PATIENT #:**34857

**X-RAY C-SPINE 4-5 VIEWS**

**HISTORY:**

**COMPARISON STUDIES:**None available.

**FINDINGS:**
Straightening of the cervical lordosis with C4-5 slight anterolisthesis. Anterolisthesis increases slightly during flexion, with additional C2-3 mild grade 1 anterolisthesis.

Preserved vertebral bodies and disc space heights with mild endplate degenerative remodeling. Mild facet arthrosis.

**IMPRESSION:**Straightening of the cervical lordosis with spondylolisthesis as above.

Thank you for entrusting your patient's care to us.

Electronically signed by: Jeffrey Hellinger MD (Sep 25, 2015 14:33:13)

Addendum by Jeffrey Hellinger MD (JD: 1861443350) on Fri, 25 September 2015 14:33:36 CDT.
ADDENDUM: History: Neck pain

Electronically signed by: Jeffrey Hellinger MD (Sep 25, 2015 14:33:36)

---

*Claimant Name: Kathy Williams     Claim #: 14865967*

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2019010407352425C5C4

Entry Date: 01/04/2019 07:35:25

Received Date: 01/04/2019

Date Added to Claim: 01/04/2019

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider:

Document Notes: submitted by atty; 3 of 4

Work Notes:

UA-CL-AD&D-000741



Rowe
Neurology
Institute

8550 Marshall Drive, Suite 100
Lenexa, KS 66214
Phone: (913) 894-1500
www.neurokc.com

**PATIENT:** KATHY WILLIAMS
**DOB:** Redacted
**EXAM DATE:** 09/21/2015

**REFERRED BY:** Vernon Rowe, MD
**PATIENT #:** 34857

**X-RAY C-SPINE 4-5 VIEWS**

**HISTORY:**

**COMPARISON STUDIES:** None available.

**FINDINGS:**
Straightening of the cervical lordosis with C4-5 slight anterolisthesis. Anterolisthesis increases slightly during flexion, with additional C2-3 mild grade 1 anterolisthesis.

Preserved vertebral bodies and disc space heights with mild endplate degenerative remodeling. Mild facet arthrosis.

**IMPRESSION:** Straightening of the cervical lordosis with spondylolisthesis as above

Thank you for entrusting your patient's care to us.

Electronically signed by: Jeffrey Hellinger MD (Sep 25, 2015 14:33:13)

---

Claimant Name: Kathy Williams     Claim #: 14865967



Rowe
Neurology
Institute

Consultants in Neurology, PA,
Dedicated to the practice
of Neurology and Teaching
New Physician's Neurology

Headache Center

Sleep Center
Accredited by the American
Academy of Sleep Medicine

Multiple Sclerosis Center
Local member of the Consortium
of Multiple Sclerosis Center

Memory Loss Center

Infusion Center

Imaging Center
Accredited by The International
Commission for the Accreditation
of Magnetic Resonance
Laboratories

Vernon D. Rowe, MD
Fellow, AAN Diplomate, ABPN
Neurology / Sleep Medicine

George D. Hinojosa, MD
Neurologist / Neuromuscular

Dana M. Winegarner, DO
Neurologist / Medicine Medicine

Kenneth R. Van Sweden, MD
Neurologist / Sleep Medicine

Doug Schell, APRN, NP, CN
Chronic Nerve Specialist
MS Certified Nurse

Mimo O'Neck, APRN
Nurse Practitioner

Carolyn A. Ban, PhD
Neuropsychologist

Diana Hobson, DO
Director, Physical Therapy

Toni Nichols, DPT
Physical Therapist

Kelli Wood, DPT
Physical Therapist

John A. Hunter, Jr.
Administrator

Elizabeth Rowe, PhD, MPH
Senior Advisor

Kalie Sczavnka, MHA
Clinic Manager

Aaron Seguin, MBA
Business Development

Our Patient ID: 34857

9/28/2015

Dear Dr. Dyck,

Kathy Williams was recently seen in our American Academy of Sleep Medicine accredited Sleep Center. Attached is a narrative report, which includes details on our observations.

Kathy will be seen in follow-up in our clinic for any sleep disorders identified, and we will be happy to coordinate with the appropriate DME provider for their care if necessary.

Thank you for the confidence you have displayed in sending this patient to our accredited Sleep Center.

Sincerely,

Vernon D. Rowe, M.D.
Diplomate, American Board of Sleep Medicine
www.neurokc.com
VDR/omw/9/28/2015

Attachment

(T) 913.894.1900    (F) 913.894.1902 (Clinical)    (F) 913.647.0295 (Imaging)    www.neurokc.com

Imaging Center
70 East Cambridge Circle, Suite 115
Kansas City, KS 66103

Headquarters
8550 Marshall Drive, Suite 100
Lenexa, KS 66214

RNI North
5099 N. Oak Trafficway, Suite 203
Kansas City, MO 64118

WILLIAMS, KATHY R (id #34857, dob:  Redacted )

POLYSOMNOGRAM REPORT

RNI Rowe Neurology Institute

**PATIENT: Williams, Kathy**   Patient Number: 34857

**DATE OF STUDY:** 9/20/2015   **DOB:** Redacted

**PHYSICIAN:** Rowe/Dyck, David

**RECORDING TECH:** Damian Wilson, RST

**SCORING TECH:** S.Miller RPSGT

Consultants in Neurology, PA,
dedicated to the improvement
of diagnosing and treating
neurological disorders.

Headache Center

Sleep Center
Accredited by the American
Academy of Sleep Medicine

Multiple Sclerosis Center
Recommended and by the Consortium
of Multiple Sclerosis Centers

Memory Loss Center

Infusion Center

Imaging Center
Accredited by The International
Society for the Accreditation
of Magnetic Resonance
Laboratories

Robert D. Rowe, MD
Editor, RNN, Diplomate, ABSM
Neurologist/Sleep Medicine

George R. Murray, MD
Neurologist/Neuroradiology

Bana M. Whitegrove, DO
Neurologist/Vascular Medicine

Kenneth R. VanOwen, MD
Neurologist/Sleep Medicine

Doug Schell, ARNP, MSCS
Clinical Nurse Specialist
MS Certified Nurse

Monica Hinds, ARNP
Nurse Practitioner

Jocelyn A. Gee, PhD
Neuropsychologist

Teresa Belcher, PhD
Director/Research Manager

Jennifer Lewis, PhD
Clinical Therapist

Kelli Dove, LSCSW
Clinical Therapist

John E. Hunter, PsyD
Administrator

Elizabeth Rowe, PhD, MFA
Senior Advisor

Nellie Swanson, MBA
Clinic Manager

Renee Swanson, MBA
Research Development

**HISTORY/INDICATIONS:** Kathy is a 57 year-old female who stands 63 inches and weighs 209 pounds, and has a BMI of 37, with a neck circumference of 15 inches. The patient's major complaints on the day of this study include an Epworth Sleepiness Scale of 6, with snoring, fatigue, chronic pain, stress, teeth grinding, depression, anxiety, difficulty with sleep initiation and maintenance, frequent body position changes, sleep talking, waking up too early, frequent awakenings, night sweats, and claustrophobia. This patient answered N/A to questions one and two with affirmative to questions three and four on the International Restless Leg Syndrome questionnaire. Current medications include: multi vitamin, Vitamin D2. This patient was scheduled for overnight polysomnography to investigate the possibility of a sleep disorder.

**SLEEP:** Overnight polysomnography was performed on 9/20/2015. During this study the patient was monitored for a total of 7.4 hours, with a sleep period time of 6.8 hours. Sleep efficiency was recorded at 84%, with a total sleep time of 6.2 hours. Sleep latency was recorded at 29 minutes with a REM latency observed at 148 minutes. Sleep stage distribution reflected Stage N1—%, Stage N2—%, N3—%, and REM—20%. This patient was tested in the lateral and supine positions. **A total of 354 arousals/awakenings were scored, yielding a significantly elevated arousal index of 57 per hour.** No evidence of periodic limb movement disorder or restless leg syndrome was noted.

**RESPIRATORY:** During this study, 1 obstructive apneas, 0 central apneas, 0 mixed apneas, 70 hypopneas, and 260 RERAs were scored. Moderate snoring was noted during this recording. Mean arterial oxygen saturation levels was noted to be 93%. Modest arterial oxygen desaturations were observed with a nadir of 81%; the patient's SAO2 was at or below 88% for 2% of the total recording time. Apnea/Hypopnea Index (AHI) was noted to be 11 events per hour, with a supine AHI of 13 events per hour, a REM AHI of 8 events per hour and a Total Respiratory Effort Related Arousal (RERA) Count of 260, for a RERA Index of 42 events per hour.

**CARDIAC:** The patient presented with an average heart rate of 66 beats per minute. Evening blood pressure was recorded at 153/100 (heart rate 76).

**INTERPRETATION: Obstructive Sleep Apnea (327.23)** was observed associated with marked sleep fragmentation, and arterial oxygen desaturations. This patient did not meet criteria for split night study with application and titration of nasal CPAP per AASM guidelines. A repeat polysomnogram with full night CPAP/CFLEX titration is recommended to improve this patient's symptoms and overall quality of sleep. Arrangements will be made for this further testing to be carried out.

*Kenneth VanOwen md*

Kenneth VanOwen, M.D.
ABPN diplomate in Sleep Medicine
www.neurokc.com
KRV/omv/9/28/2015

(T) 913.894.1500   (F) 913.894.1502 (Clinical)   (F) 913.647.0295 (Almont)   www.neurokc.com

Imaging Center
10 East Cambridge Circle, Suite 115
Kansas City, KS 66103

Headquarters
8550 Marshall Drive, Suite 100
Lenexa, KS 66214

RNI North
6560 N. Oak Trafficway, Suite 203
Kansas City, MO 64118

UA-CL-AD&D-000744

**WILLIAMS, KATHY R (id #34857, dob:** Redacted



**Rowe Neurology Institute**
**Sleep Disorders Center**
8550 Marshall Drive, Suite 100, Lenexa, Kansas 66214
Phone: (913) 894-1500, Fax: (913) 894-1502

### Diagnostic Polysomnogram Report

| | | | | | | |
|---|---|---|---|---|---|---|
| Patient: | Williams, Kathy | Study Date: | 9/20/2015 | MR#: | | 34857 |
| DOB: | Redacted | BMI: | 37.0 | Rec ID: | | KW092015-21394 |
| Height: | 63.0 inches | Age: | 57 Years | Tech: | | Damian Wilson, RST |
| Weight: | 209.0 lbs. | Gender: | Female | Scorer: | | S.Miller RPSGT |
| | | | | ESS: | | 6 |
| Referring Physician: | Dyck, David | | | Neck Size: | | 15 |
| Interpreting Physician: | Rowe | | | | | |

#### SLEEP SUMMARY

| | |
|---|---|
| Lights Out: (Clock Time) | 23:05:06 |
| Lights On: (Clock Time) | 6:28:06 |
| Total Recording Time: (Lights Out to Lights On) | 443.0 min |
| Total Sleep Time: | 374.0 min |
| Sleep Period Time: | 408.5 min |
| Percent Sleep Efficiency: | 84.4 % |
| Sleep Latency: (Lights Out to first epoch of sleep) | 29.0 min |
| Stage R Latency: (Sleep Onset to first epoch of R) | 147.5 min |
| Number of Awakenings (NW): | 30.0 |

**% TST**



#### SLEEP STAGE SUMMARY

| STAGE | Duration (min) | % SPT | %TST |
|---|---|---|---|
| Stage W | 66.5 | * | * |
| WASO | 41.0 | * | * |
| Wake During Sleep (WDS) | 35.5 | 8.7 | * |
| Stage N1 | 83.0 | 20.1 | 22.2 |
| Stage N2 | 170.5 | 41.7 | 45.6 |
| Stage N3 | 45.0 | 11.0 | 12.0 |
| Stage R | 75.5 | 18.5 | 20.2 |
| Total NREM | 298.5 | 72.8 | 79.8 |
| Supine | 229.5 | 56.2 | 61.4 |
| Supine REM | 37.5 | 9.2 | 10.0 |
| Supine NREM | 192.0 | 47.0 | 51.3 |
| Non-Supine | 144.5 | 35.4 | 38.6 |
| Non-Supine REM | 38.0 | 9.3 | 10.2 |
| Non-Supine NREM | 106.5 | 26.1 | 26.5 |



Adult Hypnogram

Page 1 of 3 Pages

---

*Claimant Name: Kathy Williams     Claim #: 14865967*

WILLIAMS, KATHY R (Id #34857, dob: Redacted )

| Patient: | Williams, Kathy | MR#: | 34857 | Study Date: | 9/20/2015 |
|---|---|---|---|---|---|

**RESPIRATORY DISTURBANCE SUMMARY**

| AHI | 11.4 |
|---|---|

| | Apnea | | | Hypopnea | Total | |
| | # Obst. | # Central | # Mixed | # | # | Index |
|---|---|---|---|---|---|---|
| REM Events | 1 | 0 | 0 | 50 | 51 | 8.2 |
|     Supine | 1 | 0 | 0 | 30 | 31 | 5.0 |
|     Non-Supine | 0 | 0 | 0 | 20 | 20 | 3.2 |
| NREM Events | 0 | 0 | 0 | 20 | 20 | 3.2 |
|     Supine | 0 | 0 | 0 | 18 | 18 | 2.9 |
|     Non-Supine | 0 | 0 | 0 | 2 | 2 | 0.3 |
| REM RERAs | | | | | 13 | 10 |
|     Supine | | | | | 6 | 10 |
|     Non-Supine | | | | | 7 | 11 |
| NREM RERAs | | | | | 247 | 50 |
|     Supine | | | | | 146 | 46 |
|     Non-Supine | | | | | 101 | 57 |
| TOTAL EVENTS | 1 | 0 | 0 | 70 | 71 | 11.4 |
|   **REM+NREM Event Total** | 1 | 0 | 0 | 20 | 71 | 11.4 |
|   Supine Event Total (Sleep + Wake) | 1 | 0 | 0 | 48 | 49 | 12.8 |
|   Non-Supine Event Total (Sleep + Wake) | 0 | 0 | 0 | 22 | 22 | 9.1 |

| Apnea Index | 0.2 | | APNEA + HYPOPNEA INDEX (AHI) | | 11.4 |
|---|---|---|---|---|---|
| Hypopnea Index | 11.2 | | | | |
| OA Index | 0.2 | | RERA Count | | 260 |
| CA Index | 0.0 | | RERA Index | | 41.7 |
| MA Index | 0.0 | | WERE Index | | - |

| Occurrence of Cheyne Stokes breathing | No | Cheyne Stokes Breathing Events | 0 | |
|---|---|---|---|---|
| Longest consecutive Cheyne Stokes Breathing duration (min) | | * must be > 10 minutes | 0 min | |

**AROUSAL SUMMARY**

| | Count | Index |
|---|---|---|
| Apnea | 0 | 0.0 |
| Hypopnea | 0 | 0.0 |
| Snore | 0 | 0.0 |
| Desaturation | 0 | 0.0 |
| Spontaneous | 354 | 56.8 |
| Limb Movement | 0 | 0.0 |
| Periodic Limb Movement | 0 | 0.0 |
| Respiratory RLM | 0 | 0.0 |
| **TOTAL** | 354 | 56.8 |

**LIMB MOVEMENT SUMMARY**

| | Count | Index |
|---|---|---|
| Limb Movements | 0 | 0.0 |
| Periodic Limb Movements | 0 | 0.0 |
| Respiratory Related LLM | 0 | 0.0 |
| **TOTAL** | 0 | 0.0 |

**BEHAVIOR DISORDER**

| Tonic/Phasic RBD | No |
|---|---|
| Bruxism | No |
| Rhythmic Movement | No |

**OXYGEN SATURATION SUMMARY**

| | Mean | Min |
|---|---|---|
| Sleep | 92.8 | 81.0 |
| REM | 91.9 | 81.0 |
| NREM | 93.0 | 87.0 |
| Wake | 94.4 | 83.0 |
| All Stages | 93.1 | 81.0 |

| | Count | Index |
|---|---|---|
| Desaturations 3% or > | 63 | 10.1 |
| NREM Desaturations | 14 | 2.6 |
| REM Desaturations | 43 | 34.2 |
| Wake Desaturations | 6 | 5.3 |
| Nadir (All Stages): | | 81.0% |

| Minutes TRT SaO2 < 88%: | 7.2 | | % TRT SaO2 < 88%: | 1.6 |
|---|---|---|---|---|

Page 2 of 3 Pages


| Patient: | Williams, Kathy | MR#: | 34857 | Study Date: | 9/20/2015 |

### ECG SUMMARY

| | Mean |
|---|---|
| Sleep | 64.0 |
| REM | 65.0 |
| NREM | 63.B |
| Wake | 78.0 |
| All Stages | 66.4 |

| | |
|---|---|
| Bradycardia: | No |
| Asystole: | No |
| Sinus tachycardia during sleep: | No |
| Narrow complex tachycardia: | No |
| Wide complex tachycardia: | No |
| Atrial fibrillation: | No |
| Occurrence of other Arrhythmias: | No   if yes, list: |

| 0.0 | Longest Paus |

### HYPOPNEA CRITERIA:

1. Recommended criteria-50% decrease with Nasal pressure sensor, 10 second duration, >/=3%desat OR ending in arousal, 90% of event has 50% amplitude drop.

### CHEYNES STOKES BREATHING RULE:

Score Cheynes Stokes breathing if there are at least 3 consecutive cycles of cyclical crescendo and decrescendo change in breathing amplitude and at least 1 of the following:

1. Five or more central apneas or hypopneas per hour of sleep.
2. The cyclic crescendo and decrescendo change in breathing amplitude has duration of at least 10 consecutive minutes.

### PARAMETERS:

Channel name
F3, F4, C3, C4, T3, T4, Cz, O1, O2, M1, M2, REF X1, LOC, ROC, Chin X2, Chin X3, Chin X4
L LEG3, R LEG4, SNORE5, EKG2, PSNORE, PFLOW, TFLOW6, CHEST, ABDM, CHEST6, ABDM7
SAO2, HEARTRATE, PLESMO, CFLOW, CPRESS (not used), Gravity X, Gravity Y, Vt
LEAK, EtCO2, M1 + M2, XFlow, XSum, RR

### SCORING INFORMATION:

Electroencephalogram (EEG) Derivation: F3, F4, C3, C4, T3, T4, Cz, O1, O2, M1, M2, REF X1
Electrooculogram (EOG) Derivation: LOC, ROC
Electromyogram (EMG) Derivation: Chin X2, Chin X3, Chin X4, L LEG3, R LEG4
Airflow parameters: Nasal Air Pressure Transducer (PFLOW), Oronasal Thermal Sensor (TFLOW)
Effort parameters: Calibrated Respiratory Inductance Plethysmography

### SCORING COMMENTS:

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000747



CONSULTANTS IN NEUROLOGY, PA • 8550 Marshall Drive • LENEXA KS 6621 • 9886

**WILLIAMS, KATHY R (id #34857, dob:** Redacted )
LUMBAR SPINE WITHOUT AND WITH CONTRAST
(#1155028, Final, 09/10/2015 6:57pm)



8550 Marshall Drive, Suite 109
Lenexa, KS 66214
Phone: (913) 894-1500
www.neuroke.com

PATIENT:KATHY WILLIAMS
DOB: Redacted            REFERRED BY:Vernon Rowe, MD
EXAM DATE:09/10/2015     PATIENT #:34857

**MRI LUMBAR SPINE WITHOUT AND WITH CONTRAST**

**CLINICAL INDICATION FOR STUDY:**Lumbago

**COMPARISON STUDIES:**None.

**TECHNIQUE:**This study consists of sagittal and axial FSE T2 and pre- and postcontrast sagittal and axial SE T1 weighted images of the lumbar spine on a Hitachi Airis Elite 0.3T system. 9.5 cc IV Gadavist.

**FINDINGS:**
Mild thoracolumbar scoliosis.

Mild listhesis, grade 1 of L3 anteriorly over L4.

Lipo-hemangiomatous type signal involving the right lateral aspect of L4, and minimally L3.

Intervertebral discs demonstrate low signal consistent with desiccation.

Multilevel facet joint and ligamentum flavum hypertrophy.

**L5-S1:**No significant canal stenosis. Bilateral mild foraminal narrowing due to facet joint and ligamentum flavum hypertrophy.

**L4-L5:**Mild canal stenosis and mild bilateral foraminal narrowing due to facet joint and ligamentum flavum hypertrophy.

**L3-L4:**Grade 1 anterolisthesis. Mild to moderate canal stenosis. Mild bilateral foraminal narrowing.

**L2-L3:**Mild canal stenosis due to facet joint and ligamentum flavum hypertrophy. No significant foraminal narrowing.

**L1-L2:**Seen in sagittal view alone and appears otherwise unremarkable.

The above findings are based on L5 being the lowest most lumbar appearing vertebral body. This places the conus at L1.

**IMPRESSION:**1. Thoracolumbar scoliosis.

2. Multilevel facet joint and ligamentum flavum hypertrophy leading to multilevel foraminal narrowing and some canal stenosis, none of which appears severe in the neutral study position.

3. L3-L4 grade 1 anterolisthesis.

Thank you for entrusting your patient's care to us.

Electronically signed by:

_Claimant Name:  Kathy   Williams     Claim #:   14865967_

WILLIAMS, KATHY R (id #34857, dob: Redacted )

George R. Moreng, MD
*Fellowship Trained MRI Brain/Spine*
*ASN Certified, MRI/CT*

(Sep 14, 2015 09:32:05)

UA-CL-AD&D-000750



8550 Marshall Drive, Suite 100
Lenexa, KS 66214
Phone: (913) 894-1500
www.neuroke.com

PATIENT:KATHY WILLIAMS
DOB: Redacted
EXAM DATE:09/10/2015

REFERRED BY:Vernon Rowe, MD
PATIENT #:34857

**X-RAY L-SPINE 6 VIEWS**

**HISTORY:**Back pain

**COMPARISON STUDIES:**None available.

**FINDINGS:**
5 lumbar type vertebral bodies are of normal height and density. Mild levoscoliosis centered at L3. L5-S1 mild disc space height loss. Other disc space heights are preserved. Mild multilevel facet arthropathy. There may be foraminal stenosis at L5-S1, bilaterally.

During flexion and extension, mild grade 1 anterolisthesis at L3-4. Bilateral sacroiliac joint mild degenerative changes. Negative for osseous lesions, erosion, and acute abnormalities

**IMPRESSION:**Lumbar spine mild levoscoliosis centered at L3 with L3-4 mild grade 1 anterolisthesis during flexion and extension

Lumbar spine degenerative disc disease with degenerative changes and possible foraminal stenoses

Thank you for entrusting your patient's care to us.

Electronically signed by: Jeffrey Hellinger MD (Sep 14, 2015 12:56:03)

UA-CL-AD&D-000751

## RPR (DX) W/REFL TITER AND CONFIRMATORY TESTING 10/04/2015 (#1165123,
Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS) William Becker D.O., MPH 10101 Renner Blvd Lenexa, KS 66219-9752 Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| RPR (DX) W/REFL TITER AND CONFIRMATORY TESTING | NON-REACTIVE | NON-REACTIVE | | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |
| | WILLIAMS KATHY 18216 E 51ST ST CT S INDEPENDENCE, MO 64055 | | | | | |
| NOTE FROM LAB | FASTING:YES | | | | | |

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2019010407374785C5C4

Entry Date: 01/04/2019 07:37:48

Received Date: 01/04/2019

Date Added to Claim: 01/04/2019

Primary Doc Type: Medical

Secondary Doc Type: Records

Medical Provider:

Document Notes: submitted by atty; 4 of 4

Work Notes:

**WILLIAMS, KATHY R (id #34857, dob:** Redacted

## VITAMIN D, 1,25 DIHYDROXY 10/04/2015 (#1165122, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Nichols Valencia (SLI)<br>Basel Keahlan MD,FCAP<br>27027 Tourney Rd<br>Valencia, CA 91355-5386<br><br>Account ID: 7167460 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| VITAMIN D, 1,25 (OH)2, TOTAL | 50 | 18-72 | pg/mL | | Final | SLI |
| VITAMIN D3, 1,25 (OH)2 | 50 | | pg/mL | | Final | SLI |
| VITAMIN D2, 1,25 (OH)2 | <8 | | pg/mL | | Final | SLI |
| | Vitamin D2, 1,25 (OH)2: Reference ranges are established for total 1,25-dihydroxy vitamin D. Values for subcomponents D2 (derived from plant or fungal sources) and D3 (derived from human or animal sources) are provided for informational purposes only. This test(s) was developed and its performance characteristics have been determined by Quest Diagnostics Nichols Institute, Valencia, CA. Performance characteristics refer to the analytical performance of the test. | | | | | |
| COPY(IES) SENT TO: | | | | | Final | |
| | WILLIAMS KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE, MO<br>64055 | | | | | |
| NOTE FROM LAB | FASTING:YES | | | | | |

UA-CL-AD&D-000754

**WILLIAMS, KATHY R (id #34857, dob:** | Redacted |

## VITAMIN B12 10/04/2015 (#1165121, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br><br>Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| VITAMIN B12 | 360 | 200-1100 | pg/mL | Normal | Final | KS |

Please Note: Although the reference range for vitamin B12 is 200-1100 pg/mL, it has been reported that between 5 and 10% of patients with values between 200 and 400 pg/mL may experience neuropsychiatric and hematologic abnormalities due to occult B12 deficiency; less than 1% of patients with values above 400 pg/mL will have symptoms.

| COPY(IES) SENT TO: | | | | | Final | |
|---|---|---|---|---|---|---|
| | WILLIAMS, KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE,MO<br>64055 | | | | | |
| NOTE FROM LAB | FASTING:YES | | | | | |

## TSH 10/04/2015 (#1165120, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br><br>Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| TSH | 3.01 | 0.40-4.50 | mIU/L | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |
| | WILLIAMS KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE,MO<br>64055 | | | | | |
| NOTE FROM LAB | FASTING:YES | | | | | |

**WILLIAMS, KATHY R (id #34857, dob:** Redacted **)**

## T4, FREE 10/04/2015 (#1165119, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br><br>Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| T4, FREE | 1.0 | 0.8-1.8 | ng/dL | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |
| | | WILLIAMS KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE, MO<br>64055 | | | | |
| NOTE FROM LAB | | FASTING:YES | | | | |

## T3, TOTAL 10/04/2015 (#1165118, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br><br>Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| T3, TOTAL | 103 | 76-181 | ng/dL | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |
| | | WILLIAMS KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE, MO<br>64055 | | | | |
| NOTE FROM LAB | | FASTING:YES | | | | |

**WILLIAMS, KATHY R (id #34857, dob:** Redacted **)**

## FOLATE, SERUM 10/04/2015 (#1165117, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br><br>Account ID: 7167400 |
| --- | --- | --- | --- | --- |
| Specimen/Accession ID | KS992550F | | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | | |

| Report | Result | Ref. Range | Units | △ | Status | Lab |
| --- | --- | --- | --- | --- | --- | --- |
| FOLATE, SERUM | 12.7 | | ng/mL | Normal | Final | KS |
| | | | Reference Range<br>Low: &lt;3.4<br>Borderline: 3.4-5.4<br>Normal: &gt;5.4 | | | |
| COPY(IES) SENT TO: | | | | | Final | |
| | | WILLIAMS KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE,MO<br>64055 | | | | |
| NOTE FROM LAB | FASTING:YES | | | | | |

## ANA SCREEN, IFA, W/REFL TITER AND PATTERN 10/04/2015 (#1165116, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br><br>Account ID: 7167400 |
| --- | --- | --- | --- | --- |
| Specimen/Accession ID | KS992550F | | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | | |

| Report | Result | Ref. Range | Units | △ | Status | Lab |
| --- | --- | --- | --- | --- | --- | --- |
| ANA SCREEN, IFA | NEGATIVE | NEGATIVE | | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |
| | | WILLIAMS KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE,MO<br>64055 | | | | |
| NOTE FROM LAB | FASTING:YES | | | | | |

**WILLIAMS, KATHY R (id #34857, dob:** Redacted

## CBC (INCLUDES DIFF/PLT) 10/04/2015 (#1165115, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br>Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | △ | Status | Lab |
|---|---|---|---|---|---|---|
| WHITE BLOOD CELL COUNT | 5.8 | 3.8-10.8 | Thousand/uL | Normal | Final | KS |
| RED BLOOD CELL COUNT | 4.21 | 3.80-5.10 | Million/uL | Normal | Final | KS |
| HEMOGLOBIN | 14.3 | 11.7-15.5 | g/dL | Normal | Final | KS |
| HEMATOCRIT | 42.3 | 35.0-45.0 | % | Normal | Final | KS |
| **MCV** | **100.6** | **80.0-100.0** | **fL** | **High** | **Final** | **KS** |
| **MCH** | **33.9** | **27.0-33.0** | **pg** | **High** | **Final** | **KS** |
| MCHC | 33.7 | 32.0-36.0 | g/dL | Normal | Final | KS |
| RDW | 13.9 | 11.0-15.0 | % | Normal | Final | KS |
| PLATELET COUNT | 234 | 140-400 | Thousand/uL | Normal | Final | KS |
| MPV | 9.1 | 7.5-11.5 | fL | Normal | Final | KS |
| ABSOLUTE NEUTROPHILS | 4176 | 1500-7800 | cells/uL | Normal | Final | KS |
| ABSOLUTE LYMPHOCYTES | 1288 | 850-3900 | cells/uL | Normal | Final | KS |
| ABSOLUTE MONOCYTES | 302 | 200-950 | cells/uL | Normal | Final | KS |
| **ABSOLUTE EOSINOPHILS** | **6** | **15-500** | **cells/uL** | **Low** | **Final** | **KS** |
| ABSOLUTE BASOPHILS | 29 | 0-200 | cells/uL | Normal | Final | KS |
| NEUTROPHILS | 72.0 | | % | Normal | Final | KS |
| LYMPHOCYTES | 22.2 | | % | Normal | Final | KS |
| MONOCYTES | 5.2 | | % | Normal | Final | KS |
| EOSINOPHILS | 0.1 | | % | Normal | Final | KS |
| BASOPHILS | 0.5 | | % | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |

| | WILLIAMS KATHY<br>16216 E 51ST ST CT S<br>INDEPENDENCE, MO<br>64055 |
|---|---|
| NOTE FROM LAB | FASTING:YES |

**WILLIAMS, KATHY R (id #34857, dob:** Redacted

## SED RATE BY MODIFIED WESTERGREN 10/04/2015 (#1165114, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS)<br>William Becker D.O., MPH<br>10101 Renner Blvd<br>Lenexa, KS 66219-9752<br><br>Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| SED RATE BY MODIFIED WESTERGREN | 4 | < OR = 30 | mm/hr | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |
| | | WILLIAMS KATHY<br>18216 E 51ST ST CT S<br>INDEPENDENCE, MO<br>64055 | | | | |
| NOTE FROM LAB | | FASTING:YES | | | | |

**WILLIAMS, KATHY R (id #34857, dob:** Redacted )

## COMPREHENSIVE METABOLIC PANEL 10/04/2015 (#1165113, Final, 09/30/2015 11:03am)

| Ordering Provider | ARLENE O'SHEA, APRN | Performing Lab | Quest Diagnostics-Lenexa (KS) William Becker D.O., MPH 10101 Renner Blvd Lenexa, KS 66219-9752 Account ID: 7167400 |
|---|---|---|---|
| Specimen/Accession ID | KS992550F | Specimen Source | |
| Specimen Coll. Date | 09/30/2015 11:03 | Result Status | Final |
| Specimen Rec. Date | 09/30/2015 11:07 | Report Status | |
| Specimen Reported Date | 10/03/2015 23:35 | | |

| Report | Result | Ref. Range | Units | ⚠ | Status | Lab |
|---|---|---|---|---|---|---|
| **GLUCOSE** | 108 | 65-99 | mg/dL | High | Final | KS |
| | | Fasting reference interval | | | | |
| UREA NITROGEN (BUN) | 15 | 7-25 | mg/dL | Normal | Final | KS |
| CREATININE | 0.79 | 0.50-1.05 | mg/dL | Normal | Final | KS |
| | For patients >49 years of age, the reference limit for Creatinine is approximately 13% higher for people identified as African-American. | | | | | |
| EGFR NON-AFR. AMERICAN | 83 | > OR = 60 | mL/min/1.73m2 | Normal | Final | KS |
| EGFR AFRICAN AMERICAN | 96 | > OR = 60 | mL/min/1.73m2 | Normal | Final | KS |
| BUN/CREATININE RATIO | NOT APPLICABLE | 6-22 | (calc) | | Final | KS |
| SODIUM | 139 | 135-146 | mmol/L | Normal | Final | KS |
| POTASSIUM | 4.1 | 3.5-5.3 | mmol/L | Normal | Final | KS |
| CHLORIDE | 103 | 98-110 | mmol/L | Normal | Final | KS |
| CARBON DIOXIDE | 19 | 19-30 | mmol/L | Normal | Final | KS |
| CALCIUM | 9.5 | 8.6-10.4 | mg/dL | Normal | Final | KS |
| PROTEIN, TOTAL | 7.1 | 6.1-8.1 | g/dL | Normal | Final | KS |
| ALBUMIN | 4.8 | 3.6-5.1 | g/dL | Normal | Final | KS |
| GLOBULIN | 2.3 | 1.0-3.7 | g/dL (calc) | Normal | Final | KS |
| ALBUMIN/GLOBULIN RATIO | 2.1 | 1.0-2.5 | (calc) | Normal | Final | KS |
| BILIRUBIN, TOTAL | 0.8 | 0.2-1.2 | mg/dL | Normal | Final | KS |
| ALKALINE PHOSPHATASE | 108 | 33-130 | U/L | Normal | Final | KS |
| AST | 18 | 10-35 | U/L | Normal | Final | KS |
| ALT | 11 | 6-29 | U/L | Normal | Final | KS |
| COPY(IES) SENT TO: | | | | | Final | |
| | WILLIAMS KATHY 18216 E 51ST ST CT S INDEPENDENCE,MO 64055 | | | | | |
| NOTE FROM LAB | FASTING:YES | | | | | |

Claimant Name: Kathy Williams     Claim #: 14865967

CONSULTANTS IN NEUROLOGY, PA • 8550 Marshall Drive, STE #A KS 66214-9836

**WILLIAMS, KATHY R (id #34857, dob:** Redacted

HISTORICAL LABS 10/05/2015 (#1165278, 09/30/2015)

  Page 1 of 4     10/05/2015   08:22:30 AM

**Report Status: Final - Courtesy Copy**

**WILLIAMS, KATHY**

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **WILLIAMS, KATHY**<br><br>**DOB:** Redacted **AGE:** 57<br>Gender: F<br>Phone: 816.350.8817<br>Patient ID: 2711555<br>Health ID: 8573002274994249 | Specimen: KS992550F<br>Requisition: 0009752<br><br>Collected: 09/30/2015 / 11:03 CDT<br>Received: 10/01/2015 / 08:00 CDT<br>Faxed: 10/05/2015 / 08:16 CDT<br>(* A Copy Sent To) | Client #: 7167400   MAH 992<br>O'SHEA, ARLENE<br>CONSULTANTS IN NEUROLOGY<br>Attn: KELLIE SCARROW<br>8550 MARSHALL DR STE 300<br>OVERLAND PARK, KS 66214-9836 |

**COMMENTS:**     FASTING:YES

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| COMPREHENSIVE METABOLIC PANEL | | | | KS |
| GLUCOSE | | 108 H | 65-99 mg/dL | |
| | | | Fasting reference interval | |
| UREA NITROGEN (BUN) | 15 | | 7-25 mg/dL | |
| CREATININE | 0.79 | | 0.50-1.05 mg/dL | |
|    For patients >49 years of age, the reference limit for Creatinine is approximately 13% higher for people identified as African-American. | | | | |
| eGFR NON-AFR. AMERICAN | 83 | | > OR = 60 mL/min/1.73m2 | |
| eGFR AFRICAN AMERICAN | 96 | | > OR = 60 mL/min/1.73m2 | |
| BUN/CREATININE RATIO | NOT APPLICABLE | | 6-22 (calc) | |
| SODIUM | 139 | | 135-146 mmol/L | |
| POTASSIUM | 4.1 | | 3.5-5.3 mmol/L | |
| CHLORIDE | 103 | | 98-110 mmol/L | |
| CARBON DIOXIDE | 19 | | 19-30 mmol/L | |
| CALCIUM | 9.5 | | 8.6-10.4 mg/dL | |
| PROTEIN, TOTAL | 7.1 | | 6.1-8.1 g/dL | |
| ALBUMIN | 4.8 | | 3.6-5.1 g/dL | |
| GLOBULIN | 2.3 | | 1.9-3.7 g/dL (calc) | |
| ALBUMIN/GLOBULIN RATIO | 2.1 | | 1.0-2.5 (calc) | |
| BILIRUBIN, TOTAL | 0.8 | | 0.2-1.2 mg/dL | |
| ALKALINE PHOSPHATASE | 106 | | 33-130 U/L | |
| AST | 18 | | 10-38 U/L | |
| ALT | 11 | | 6-28 U/L | |
| TSH | 3.01 | | 0.40-4.50 mIU/L | KS |
| T4, FREE | 1.0 | | 0.8-1.8 ng/dL | KS |
| T3, TOTAL | 103 | | 76-181 ng/dL | KS |
| SED RATE BY MODIFIED WESTERGREN | 6 | | < OR = 30 mm/h | KS |
| CBC (INCLUDES DIFF/PLT) | | | | KS |
| WHITE BLOOD CELL COUNT | 5.5 | | 3.8-10.8 Thousand/uL | |
| RED BLOOD CELL COUNT | 4.21 | | 3.80-5.10 Million/uL | |
| HEMOGLOBIN | 14.3 | | 11.7-15.5 g/dL | |
| HEMATOCRIT | 42.3 | | 35.0-45.0 % | |
| MCV | | 100.6 H | 80.0-100.0 fL | |
| MCH | | 33.9 H | 27.0-33.0 pg | |
| MCHC | 33.7 | | 32.0-36.0 g/dL | |
| RDW | 13.9 | | 11.0-15.0 % | |
| PLATELET COUNT | 234 | | 140-400 Thousand/uL | |
| MPV | 9.1 | | 7.5-11.5 fL | |
| ABSOLUTE NEUTROPHILS | 4196 | | 1500-7800 cells/uL | |
| ABSOLUTE LYMPHOCYTES | 1288 | | 850-3900 cells/uL | |
| ABSOLUTE MONOCYTES | 302 | | 200-950 cells/uL | |
| ABSOLUTE EOSINOPHILS | | 6 L | 15-500 cells/uL | |
| ABSOLUTE BASOPHILS | 29 | | 0-200 cells/uL | |
| NEUTROPHILS | 72.0 | | % | |
| LYMPHOCYTES | 22.2 | | % | |
| MONOCYTES | 5.2 | | % | |

CLIENT SERVICES: 866.697.8378     SPECIMEN: KS992550F     PAGE 1 OF 4

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

---

*Claimant Name: Kathy Williams     Claim #: 14865967*

UA-CL-AD&D-000761

# WILLIAMS, KATHY R (id #34857, dob: Redacted)

 

Page 2 of 4     10/05/2015   08:22:30 AM

**Report Status: Final - Courtesy Copy**
**WILLIAMS, KATHY**

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **WILLIAMS, KATHY** | Specimen: KS992550F | Client #: 7167400 |
| DOB: Redacted   AGE: 57 | Collected: 09/30/2015 / 11:03 CDT | O'SHEA, ARLENE |
| Gender: F | Received: 10/01/2015 / 08:00 CDT | |
| Patient ID: 2711555 | Faxed: 10/05/2015 / 08:16 CDT | |
| Health ID: 85730022740J4249 | (* A Copy Sent To) | |

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| EOSINOPHILS | 0.1 | | % | |
| BASOPHILS | 0.5 | | % | |
| VITAMIN B12 | 360 | | 200-1100 pg/mL | KS |

Please Note: Although the reference range for vitamin B12 is 200-1100 pg/mL, it has been reported that between 5 and 10% of patients with values between 200 and 400 pg/mL may experience neuropsychiatric and hematologic abnormalities due to occult B12 deficiency; less than 1% of patients with values above 400 pg/mL will have symptoms.

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| FOLATE, SERUM | 12.7 | | ng/mL | KS |
| | | | Reference Range | |
| | | | Low: <3.4 | |
| | | | Borderline: 3.4-5.4 | |
| | | | Normal: >5.4 | |
| RPR (DX) W/REFL TITER AND CONFIRMATORY TESTING | NON-REACTIVE | | NON-REACTIVE | KS |

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000762

CONSULTANTS IN NEUROLOGY, PA • 8300 Winnetka Drive, LENEXA KS 66214-9856

**WILLIAMS, KATHY R (id #34857, dob: Redacted**

 

Report Status: Final - Courtesy Copy
**WILLIAMS, KATHY**

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **WILLIAMS, KATHY**<br><br>DOB: Redacted  AGE: 57<br>Gender: F<br>Patient ID: 2711555<br>Health ID: 8573002274994249 | Specimen: KS992550F<br>Collected: 09/30/2015 / 11:03 CDT<br>Received: 10/01/2015 / 08:00 CDT<br>Faxed: 10/05/2015 / 08:16 CDT<br>(* A Copy Sent To) | Client #: 7167400<br>O'SHEA, ARLENE |

### Endocrinology

| Test Name | Result | Reference Range | Lab |
|---|---|---|---|
| VITAMIN D, 1,25 DIHYDROXY  LC/MS/MS | | | SLI |
| VITAMIN D, 1,25 (OH)2,  TOTAL | 50 | 19-72 pg/mL | |
| VITAMIN D3, 1,25 (OH)2 | 50 | pg/mL | |
| VITAMIN D2, 1,25 (OH)2 | <8 | pg/mL | |

Vitamin D2, 1,25 (OH)2: Reference ranges are established for
total 1,25-dihydroxy vitamin D. Values for subcomponents D2
(derived from plant or fungal sources) and D3 (derived from human
or animal sources) are provided for informational purposes only.
This test(s) was developed and its performance characteristics
have been determined by Quest Diagnostics Nichols Institute,
Valencia, CA. Performance characteristics refer to the analytical
performance of the test.

Physician Comments:

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000763

 Page 4 of 4 

10/05/2015    08:22:30 AM

Report Status: Final - Courtesy Copy
WILLIAMS, KATHY

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **WILLIAMS, KATHY**<br><br>DOB: Redacted  AGE: 57<br>Gender:   F<br>Patient ID: 2711555<br>Health ID: 8573002274994249 | Specimen:   KS992550F<br>Collected:   09/30/2015 / 11:03 CDT<br>Received:   10/01/2015 / 08:08 CDT<br>Faxed:   10/05/2015 / 08:16 CDT<br>(* A Copy Sent To) | Client #: 7167400<br>O'SHEA, ARLENE |

### RHEUMATOID ARTHRITIS REPORT

**ANA IFA SCREEN W/REFL TO TITER AND PATTERN, IFA**                    Lab: KS

| Test Name | Results | Reference Range |
|---|---|---|
| ANA SCREEN, IFA | NEGATIVE | NEGATIVE |

**PERFORMING SITE:**

KS     QUEST DIAGNOSTICS LENEXA, 10101 RENNER BLVD, LENEXA, KS 66219-9752 Laboratory Director: WILLIAM BECKER DO,MPH, CLIA#:17D0648226
SJ.C    QUEST DIAGNOSTICS NICHOLS VALENCIA, 27027 TOURNEY ROAD, VALENCIA, CA 91355-5386 Laboratory Director: HARIL KASIB ,M.D.,MDT,CAP, CLIA# 05D0593987

* Copy To Client: WILLIAMS KATHY

CLIENT SERVICES: 866.697.8378         SPECIMEN: KS992550F                    PAGE 4 OF 4

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

Claimant Name: Kathy  Williams    Claim #:  14865967

UA-CL-AD&D-000764

```
                          Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeals ERISA Extension Letter - Attorney

Status: Final

Date: 2019-01-04

Notes: Appeals Ext ltr- atty req

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2019010407482516253E
Delivery Date: 01/04/2019 11:01:55
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2019010407482516253E
Delivery Date: 01/04/2019 07:51:10
Delivery Status: Fax: Sent; Success
```

UA-CL-AD&D-000765

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



January 4, 2019

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:    Williams, Kathy
       Claim Number:    14865967
       Policy Number:    382480
       Unum Life Insurance Company of America

Dear Mr. Blakeman:

Thank you for your correspondence of January 03, 2019 concerning the Group Accidental
Death Insurance claim submitted for Kathy Williams. We approve your request for an extension
to submit additional information.

We are providing you with an extension until January 18, 2019 to submit additional information.
Our appeal review period will continue the day after the deadline or after we receive all
additional information, whichever occurs first.

When we complete our appeal review, we will send you our decision in writing.

If you have questions, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

Claimant Name: Kathy Williams    Claim #:  14865967

```
                         Document Detail
----------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2019011414085908DB7C

Entry Date: 01/14/2019 14:09:01

Received Date: 01/14/2019

Date Added to Claim: 01/14/2019

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeals- email from atty w/info

Work Notes:
```

UA-CL-AD&D-000767

**Turner, Maureen**

| | |
|---|---|
| **From:** | Benjamin Blakeman <ben@lifeinsurance-law.com> |
| **Sent:** | Friday, January 11, 2019 3:26 PM |
| **To:** | Turner, Maureen |
| **Subject:** | Kathy Williams appeal |
| **Attachments:** | Followup letter from Starr.pdf |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Turner, attached hereto is a follow up letter from our expert, Dr. Ken Starr.

Benjamin Blakeman

BLAKEMAN LAW

*PLEASE NOTE WE HAVE MOVED. OUR NEW ADDRESS IS:*

**8383 Wilshire Blvd., Ste. 510**
**Beverly Hills, CA 90211**
**Telephone: 213-629-9922**
**Facsimile: 213-232-3230**
**Email: ben@lifeinsurance-law.com**
**Website: www.lifeinsurance-law.com**

**Notice to recipient: The contents of this email are confidential and intended only for the individual or individuals to whom it is addressed. If you receive this email in error, please do not print out or save the email or any attachments. Please notify us and delete the email.**

1

*Claimant Name: Kathy Williams      Claim #:  14865967*

Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2019011414103248DB7C

Entry Date: 01/14/2019 14:10:33

Received Date: 01/14/2019

Date Added to Claim: 01/14/2019

Primary Doc Type: Medical

Secondary Doc Type: Outside Consultant Review/IME

Medical Provider:

Document Notes: Outside medical opinion; from atty

Work Notes:

UA-CL-AD&D-000769

Ken Starr M.D, FACEP, ABAM

Medical Opinion Report

Date: 1/10/18

RE: Kathy Williams Death DOB [Redacted] DOD 4/27/18

Dear Mr. Blakeman,

I've reviewed the new documents provided to me on January 3rd, 2019. The documents were composed of neurology records from Dr. Vernon Rowe dated 12/8/15 and 9/10/15, a sleep study and imaging results including MRI of the brain and cervical spine. Also included were plain radiographic results of the cervical spine, and laboratory studies.

The medical problem list outlined in the neurology note is not significantly different from the previous records reviewed. However, new historical information is interesting.

In the History of Present Illness (HPI) section of the note Dr. Rowe described worsening vertigo for which he had ordered the ensuing workup of radiology and laboratory studies. In the final assessment he described increasing vertigo and a history of a concussion sustained in a previous fall. In June of 2015 Kathy Williams slipped at the bottom of stairs striking her head on a cabinet and losing consciousness. She sustained a significant head injury.

**Conclusion:**

Mrs. Williams demonstrated a history of chronic and progressive vertigo that had previously caused her to become dizzy, fall and hit her head. Despite a through neurology consultation and extensive workup her vertigo, headaches and balance problems continued to progress.

Ms. Williams underlying health problems may have caused or contributed to her fall down the stairs. There is still not enough information to accurately determine the precise cause of death. I still believe the most likely cause of death was either from traumatic injuries she sustained when she fell, or from a medical event triggered by injuries from her fall.

Sincerely,

Ken Starr MD
Board Certified Emergency
Medicine Board Certified Addiction
Medicine

1

UA-CL-AD&D-000770

```
                              Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2019011414203330DB7C

Entry Date: 01/14/2019 14:20:34

Received Date: 01/14/2019

Date Added to Claim: 01/14/2019

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeals- email from NCM

Work Notes:
```

UA-CL-AD&D-000771

**Turner, Maureen**

| | |
|---|---|
| **From:** | Turner, Maureen |
| **Sent:** | Monday, January 14, 2019 2:20 PM |
| **To:** | Ashley, Kimberly E; Johnson, Jeffery R |
| **Subject:** | RE: Bluescope Steel #382480 |

The appeal review is ongoing at this time.

Maureen Turner
Lead Appeals Specialist, Appeals
Unum Life Insurance Company of America
Phone: 423-294-1307
Fax: 423-209-4533

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 2:16 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Cc:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

**Could you let me know how this appeal shook out?**

**Kim Ashley**
**National Client Manager**
**4001 W. 114th Street**
**Suite 100**
**Leawood, KS 66211**

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com

1

UA-CL-AD&D-000772

**From:** Moody, Kris
**Sent:** Monday, January 14, 2019 12:53 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

Maureen Turner is handling the appeal

Kris Moody
Lead Life Benefits Specialist
1-800-445-0402, ext. 5-8738
Unum Life Insurance Company of America
kmoody@unum.com
Unum is pleased to offer an e-mail transmission service for your convenience in communicating information regarding your Unum policy. By using this service, the customer understands and agrees that these e-mail transmissions may contain personal and confidential data and that the transmission of such data via e-mail does not ensure or warrant the security or integrity of any information when sent via e-mail. Further, the customer assumes all risk associated with the use of this e-mail transmission and agrees that Unum Corporation shall not be liable for any loss, claim, or damage that may result from the customer's decision to transmit data to Unum Corporation via e-mail.

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 1:27 PM
**To:** Moody, Kris <KMoody@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

Did we ever pay this claim?  I know it went to appeals but I can't for the life of me remember who was handling it there.  Could you let me know?

This was an AD&D only claim, $360k dep SP. EE was Gary Williams, wife Kathy- died 04/27/18. Claim was submitted under Bluescope Buildings (Kansas City, MO) by HR Manager Molly Cisco.

THANKS!

**From:** Ashley, Kimberly E
**Sent:** Monday, October 01, 2018 12:18 PM
**To:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Subject:** FW: Bluescope Steel #382480

FYI on that ad&d claim that we denied due to the alcohol exclusion.

2

Claimant Name: Kathy   Williams      Claim #:   14865967

**Kim Ashley**
**National Client Manager**
4001 W. 114th Street
Suite 100
Leawood, KS 66211

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com

**From:** Staples, Kristi-Lee
**Sent:** Monday, October 01, 2018 12:16 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

Kim,

I wanted to loop back around on this. I just spoke with the attorney and he is working on submitting an appeal. Just as an FYI in case you hear from the admin – he wanted specific info as to how/when the EEs are provided access to any and all plan documents & summaries. I directed him to contact BlueScope to see what their specific process is and what resources their EEs are provided when it comes to enrollment. He is arguing that his client was not made aware of any exclusions in the AD&D policy. I did provide him with the policy and SPD that we have but he is looking for more specifics.

I advised him that I would contact the PH and let him know ahead of time that he is requesting this additional info. He was reasonable to speak with so I don't think this will escalate further- I just want to give the PH a heads up.

The most recent email we have for Amy at Bluescope is amy.hughes@bluescopesteelna.com. Is she still our corporate contact? And is this still a valid email for her?

Thanks-
Kristi

3

Claimant Name: Kathy  Williams     Claim #:  14865967

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
**ph: (800) 445-0402 | fax: (800) 447-2498**
kstaples@unum.com
unum

4

Claimant Name: Kathy Williams    Claim #:  14865967

UA-CL-AD&D-000775

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator:** No

**Document ID:** 2019011414434604DB7C

**Entry Date:** 01/14/2019 14:43:46

**Received Date:** 01/14/2019

**Date Added to Claim:** 01/14/2019

**Primary Doc Type:** Appeals

**Secondary Doc Type:** Other

**Medical Provider:**

**Document Notes:** Appeal- email w/NCM

**Work Notes:**

UA-CL-AD&D-000776

**Turner, Maureen**

| | |
|---|---|
| **From:** | Turner, Maureen |
| **Sent:** | Monday, January 14, 2019 2:43 PM |
| **To:** | Ashley, Kimberly E; Johnson, Jeffery R |
| **Subject:** | RE: Bluescope Steel #382480 |

We expect to complete our review by 2/18/19. Please call me if you have any other questions.

Thank you,
Maureen

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 2:31 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

What is the timeframe to next steps?

**From:** Turner, Maureen
**Sent:** Monday, January 14, 2019 1:20 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

The appeal review is ongoing at this time.

Maureen Turner
Lead Appeals Specialist, Appeals
Unum Life Insurance Company of America
Phone: 423-294-1307
Fax: 423-209-4533

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 2:16 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Cc:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

1

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000777

Could you let me know how this appeal shook out?

Kim Ashley
National Client Manager
4001 W. 114th Street
Suite 100
Leawood, KS 66211

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com

**From:** Moody, Kris
**Sent:** Monday, January 14, 2019 12:53 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

Maureen Turner is handling the appeal

Kris Moody
Lead Life Benefits Specialist
1-800-445-0402, ext. 5-8738
Unum Life Insurance Company of America
kmoody@unum.com

Unum is pleased to offer an e-mail transmission service for your convenience in communicating information regarding your Unum policy. By using this service, the customer understands and agrees that these e-mail transmissions may contain personal and confidential data and that the transmission of such data via e-mail does not ensure or warrant the security or integrity of any information when sent via e-mail. Further, the customer assumes all risk associated with the use of this e-mail transmission and agrees that Unum Corporation shall not be liable for any loss, claim, or damage that may result from the customer's decision to transmit data to Unum Corporation via e-mail.

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 1:27 PM

2

Claimant Name: Kathy Williams    Claim #: 14865967

**To:** Moody, Kris <KMoody@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

Did we ever pay this claim?  I know it went to appeals but I can't for the life of me remember who was handling it there.  Could you let me know?

This was an AD&D only claim, $360k dep SP. EE was Gary Williams, wife Kathy- died 04/27/18. Claim was submitted under Bluescope Buildings (Kansas City, MO) by HR Manager Molly Cisco.

THANKS!

**From:** Ashley, Kimberly E
**Sent:** Monday, October 01, 2018 12:18 PM
**To:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Subject:** FW: Bluescope Steel #382480

FYI on that ad&d claim that we denied due to the alcohol exclusion.


Kim Ashley
**National Client Manager**
4001 W. 114th Street
Suite 100
Leawood, KS 66211

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com



**From:** Staples, Kristi-Lee
**Sent:** Monday, October 01, 2018 12:16 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

3

UA-CL-AD&D-000779

Kim,

I wanted to loop back around on this. I just spoke with the attorney and he is working on submitting an appeal. Just as an FYI in case you hear from the admin – he wanted specific info as to how/when the EEs are provided access to any and all plan documents & summaries. I directed him to contact BlueScope to see what their specific process is and what resources their EEs are provided when it comes to enrollment. He is arguing that his client was not made aware of any exclusions in the AD&D policy. I did provide him with the policy and SPD that we have but he is looking for more specifics.

I advised him that I would contact the PH and let him know ahead of time that he is requesting this additional info. He was reasonable to speak with so I don't think this will escalate further– I just want to give the PH a heads up.

The most recent email we have for Amy at Bluescope is amy.hughes@bluescopesteelna.com. Is she still our corporate contact? And is this still a valid email for her?

Thanks-
Kristi

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000780

```
                               Letter Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeals ERISA Extension Letter - Attorney

Status: Final

Date: 2019-01-16

Notes: Appeals Ext/Status letter

Signoff By:

Signoff Status:

------------- Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2019011607470118248E
Delivery Date: 01/16/2019 11:00:41
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2019011607470118248E
Delivery Date: 01/16/2019 07:49:30
Delivery Status: Fax: Sent; Success
```

UA-CL-AD&D-000781

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



January 16, 2019

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211

RE:   Williams, Kathy
     Claim Number:    14865967
     Policy Number:    382480
     Unum Life Insurance Company of America

Dear Mr. Blakeman:

We are writing about the appeal on the Group Accidental Death Insurance clam submitted for
Kathy Williams. We previously provided you with an extension to submit additional information
to be considered on appeal.

The additional information you wanted to submit was received on January 11, 2019. Therefore,
our appeal timeframe continued on January 12, 2019 and will end on February 18, 2019.

When we complete our appeal review, we will send you our decision in writing.

If you have questions, please contact me at 1-800-858-6843, extension 41307.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Claimant Name: Kathy Williams    Claim #:  14865967

Activity
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Appeal          Name: Extension
Status: Completed
Original Notify Date: 01/07/2019
Notify Date: 01/21/2019
Due Date:
Subject: Appeal Ext to atty
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Begin Date: 12/14/2018
Request: Turner, Maureen 12/14/2018 14:06:26: providing atty 3 weeks, or to 1/4/19
to potentially submit additional info for consideration; appeal timeframe will
continue after info is rec'd, or after timeframe expires, whichever comes first

Created By: Turner, Maureen
Created Date: 12/14/2018 14:06:26          Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
End Date: 01/11/2019
Response: Turner, Maureen 01/04/2019 07:49:35: records submitted by atty; he also
requested additional time to have his medical expert review the records and update
his opinion; approved additional 2 week extension
          ----------------------------------------------------------
          Turner, Maureen 01/16/2019 07:48:06: info rec'd from atty 1/11/19; appeal
timeframe continues as of 1/12/19 and will end 2/18/19 (60th day).


Completed By: Turner, Maureen
Completed Date: 01/16/2019 07:48:06          Complete Site: Chattanooga

_Claimant Name: Kathy  Williams     Claim #:  14865967_

```
                                    Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Legal          Name: Atty-Client Privileged Consult-Other
Status: Completed
Original Notify Date: 01/16/2019
Notify Date: 01/16/2019
Due Date:
Subject: Atty-Client Privileged Consult
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Kirby, Kyle
Action:
```

# Attorney-Client Privileged

```
Created By: Turner, Maureen
Created Date: 01/16/2019 08:12:58       Create Site: Chattanooga
```

# Attorney-Client Privileged

```
Completed By: Kirby, Kyle
Completed Date: 01/16/2019 09:24:43       Complete Site: Portland
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000784

Checked/Unchecked Indicator: No
Type: Appeal          Name: Medical File Discussion
Status: Completed
Original Notify Date: 01/22/2019
Notify Date: 01/22/2019
Due Date:
Subject: CC/OSP MFD
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Bartlett, Chris
Action:

Request Fields
----------------------------------------------------------------------

Created By: Grover, Susan L
Created Date: 01/22/2019 15:15:10          Create Site: Portland

Response Fields
----------------------------------------------------------------------
Clinical Rep: Grover, Susan L (C7S7G)
Doctoral Rep: Bartlett, Chris  (AZC09)
Discussion:
Appeals OSP Consult


Claimant Name:                    Kathy  Williams
Claimant Number:                  14865967
Completion Date:                  1/22/19

Claim Synopsis
Ms. Williams, 60 y/o, passed away on 4/27/18. CDC lists cause of death as
intracranial hemorrhage and manner of death as accident. Ms. Williams was found
deceased at the bottom of the basement stairs in her home, after an apparent fall
that occurred sometime between noon and 4:50 pm on 4/27/18.


Medical Questions:
The extent to which the insured's medical conditions or medications may have
contributed to her fall or death (including a review of the conclusions set forth
in Dr. Starr's reports).

While the insured has a remote history of vertigo and other underlying health
problems, available medical data does not show any visits between 2015 and date of
death in 2018 for dizziness, vertigo, falls, or LOC.  Her vertigo is quiescent
according to best  available records.
Her conditions could certainly contribute to dizziness, but there is no data to
support that her vertigo had been severe or symptomatic for years.
Gabapentin, sertraline, and lorazepam can have a side effect of drowsiness, but
there is no mention of any issues related to side effects of her medications in the
medical records 2015-2018.


2.   The likely impact of her intoxication on her motor function, given that she
was a regular and perhaps even heavy drinker.

While it is true that most heavy drinkers develop some tolerance over time, this is
not the same process for each individual.  It is highly dependent upon their own

physiology, the regularity and quantity of alcohol consumed, the health of their liver, and other variables such as body weight and food consumption.

Blood levels four times higher than the legal limit to operate a motor vehicle would reasonably cause some diminution in motor function and balance in any individual.

The insured's toxicology report shows ethanol in blood at 0.337%. This level is four times the level generally accepted as legal intoxication and falls within the possibly fatal range of 0.31% plus.

A BAC at this level would reasonably result in impaired consciousness, depressed or absent reflexes, general inertia approaching paralysis, markedly decreased response to stimuli, marked muscular incoordination, and inability to stand or walk and possible death.

Additionally, alcohol of this level could reasonably cause sudden death from Cardiac dysrhythmias, emesis and aspiration, GI bleeding, and falls with trauma to head or other body parts.

As such, it is medically reasonable her alcohol intoxication caused or contributed to her death.

Chris Bartlett, MD
Medical Consultant, Unum
Medical Licensure in Maine
Board Certified in Family Practice

Next Steps: to CC

Completed By: Bartlett, Chris
Completed Date: 01/22/2019 15:58:39          Complete Site: Portland

---

Checked/Unchecked Indicator: No
Type: Appeal          Name: CC Medical File Review
Status: Completed
Original Notify Date: 01/16/2019
Notify Date: 01/16/2019
Due Date:
Subject: Appeal CC MFR
Upon Completion Notify: Claim Owner
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Grover, Susan L
Action:

Request Fields
--------------------------------------------------------------------------------
Request: Turner, Maureen 01/16/2019 11:11:51: Request is for CC MFR with OSP
comment

APPEALS FORUM/CC MFR REFERRAL          APPEALS SPECIALIST / EXT:  Maureen Turner /
x41307

Insured:  Kathy Williams
Claim Number:  14865967
Other Relevant Claim #s:  n/a
Number of Pages:  788
ERISA/NON-ERISA/Pre-ERISA 2002 & Due Date:  ERSIA; Due 2/18/19

Operational Reviewers Associated with Adverse Decision:  Marnie Webb, RN

Medical Reviews on Appeal by (Specify current or prior appeal):  n/a

Peer Contact Information:  n/a

File Includes (please select all that apply):  n/a

DMO Review        IME/FCE        Personal Visit
Surveillance      Paper portion       BRI

Claim Synopsis / Decision:
Ms. Williams, 60 y/o, passed away on 4/27/18. CDC lists cause of death as
intracranial hemorrhage and manner of death as accident. Ms. Williams was found
deceased at the bottom of the basement stairs in her home, after an apparent fall
that occurred sometime between noon and 4:50 pm on 4/27/18. The BC denied AD&D
benefits based on a policy exclusion (being intoxicated).

A review of the available file info noted that given Ms. Williams' BAC was
extremely elevated at more than four times the level generally accepted as legal
intoxication and within the possibly fatal range (0.31% plus), it is reasonable
that being intoxicated contributed to, if not caused, her death.

Appeal Synopsis / Reason for Appeal:
Attorney noted the following on appeal:
-    The decision referenced impairments for a non-tolerant individual with a BAC
of 0.27% through 0.40%. However, in the case of someone who consumes alcohol on a
regular basis, the symptoms experienced are substantially different and
considerably less severe.

-    Ms. Williams' medical records indicate that she also had a history of vertigo,
knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of
trunk, sleepwalking, and lyme disease. She was also on medications which produced

--------------------------------------------------------------------------------
       _Claimant Name: Kathy  Williams     Claim #:  14865967_

side effects. Any one of these causes, or any combination, could have caused or significantly contributed to her fall.

-   Unum's conclusion that the fall and/or Ms. Williams' death was caused by intoxication was based solely on incomplete records, speculation by a medical reviewer, no autopsy and is directly contrary to the conclusion of the ME.

Additional information submitted on appeal included an outside medical opinion (Dr. Ken Starr), who concluded it is accurate to attest to the fact that Ms. Williams did not die from alcohol intoxication or from medical problems directly related to alcoholism. We also received additional records and a supplemental report from Dr. Starr. He concluded that Ms. Williams demonstrated a history of chronic and progressive vertigo and her underlying health problems may have caused or contributed to her fall down the stairs.

Questions:
Please review the available file information and address the following:

1.   The extent to which Ms. Williams' medical conditions or medications may have contributed to her fall or death (including a review of the conclusions set forth in Dr. Starr's reports).

2.   The likely impact of Ms. Williams' intoxication on her motor function, given that she was a regular and perhaps even heavy drinker.

Please call me to discuss further or if you have any questions.
Thank you,
Maureen, x41307

Created By: Turner, Maureen
Created Date: 01/16/2019 11:11:51          Create Site: Chattanooga

Response Fields
-----------------------------------------------------------------------
Response: Grover, Susan L 01/22/2019 16:23:45: Clinical Review Response with MAC Template (Appeals)

Claimant Name: Kathy Williams
Claim Number: 14865967

Clinical Analysis: Ms. Williams, 60 y/o, passed away on 4/27/18. CDC lists cause of death as intracranial hemorrhage and manner of death as accident. Ms. Williams was found deceased at the bottom of the basement stairs in her home, after an apparent fall that occurred sometime between noon and 4:50 pm on 4/27/18. The BC denied AD&D benefits based on a policy exclusion (being intoxicated). A review of the available file info noted that given Ms. Williams' BAC was extremely elevated at more than four times the level generally accepted as legal intoxication and within the possibly fatal range (0.31% plus), it is reasonable that being intoxicated contributed to, if not caused, her death.

The attorney noted the following on appeal: The decision referenced impairments for a non-tolerant individual with a BAC of 0.27% through 0.40%; however, in the case of someone who consumes alcohol on a regular basis, the symptoms experienced are substantially different and considerably less severe. Ms. Williams' medical records indicate that she also had hx of vertigo, knee problems, OSA, incoordination, spondylosis, disorder of trunk, sleepwalking, and Lyme disease. Atty notes she was also on medications which produced side effects and any one of these causes, or any combination, could have caused or significantly contributed to her fall. He notes Unum's conclusion that the fall and/or Ms. Williams' death was caused by

UA-CL-AD&D-000788

intoxication was based solely on incomplete records, speculation by a medical reviewer, no autopsy and is directly contrary to the conclusion of the ME. Additional information submitted on appeal included an outside medical opinion (Dr. Ken Starr), who concluded it is accurate to attest to the fact that Ms. Williams did not die from alcohol intoxication or from medical problems directly related to alcoholism. We also received additional records and a supplemental report from Dr. Starr. He concluded that Ms. Williams demonstrated a history of chronic and progressive vertigo and her underlying health problems may have caused or contributed to her fall down the stairs.

Vernon Rowe MD (sleep med/neurology):
OVN on 12/8/15 reports persistent chronic vertigo and tinnitus, which has increased following head concussion sustained from a fall on 6/5/15. MRI of the brain showed white matter changes suggestive of atherosclerotic microangiopathy. This is unlikely contributory to her symptoms. There were no other abnormalities noted on brain MRI to explain her vertigo, but she does have untreated sleep apnea, which can sometimes cause dizziness. Other dx include cervical/lumbar spondylosis and OSA. She will try to get an oral appliance. She is also interested in getting evaluated for CSF leak. Offered PT for low back and neck pain, which she declined at this time.

On 9/1/17 Dr. Mundhenke (internal med) reports upper respiratory symptoms now with bronchitis and some muscle spasms in her neck. This may be aggravated by her stopping gabapentin. BP 135/105. Assessment: URI now with bronchitis and muscle spasm. She will restart gabapentin.

Steven Hull MD (sleep med):
There are medical records by this provider dated 2007 through 1/18/18. On 1/18/18 he reports she has documented efficacy and compliance with AutoPap tx for OSA. She also has chronic insomnia and anxiety along with somnambulism. She would like to increase her lorazepam up to 3mg nightly to see if this will improve her symptoms of anxiety and stress along with her chronic insomnia. Some of her fatigue and daytime symptoms could well be due to the fact she is just wearing her machine a little ever 4.5 hrs/night. This can also affect her blood pressure (173/107) and she was encouraged to wear her machine at least 6 hrs/night.

Medical Examiner's investigator reports the insured had medical hx of vertigo and ETOH abuse and was under the care of Dr. Mundhenke. Medication found on scene included sertraline and gabapentin. On 4/27/18 around 1650 she was found unresponsive by her spouse. The spouse last spoke to her on the phone around 1200. The spouse stated the subject has been drinking heavily the past year. The spouse tried to call the subject around 1500 but received no answer. When the spouse got off work he headed home to check on her. The residence was secure and the spouse found her at the bottom of the stairs. 911 was called and IPD and AMR EMS responded to the scene. EMS never regained any rhythmic activity and confirmed death on scene. He observed the subject lying supine on the basement floor in a prone position but moved for ACLS. Rigor was absent. He observed a hole in the wall of the staircase. it appeared she was holding a glass as she was walking down the stairs. There was broken glass around the subject and broken glass located in the R hand. He observed multiple lacerations to R hand and face. Blood was noted from the mouth and nose.

Toxicology report shows ethanol in blood at 0.337% and in vitreous at 0.430%. It also showed therapeutic levels of sertraline at 130 nanograms per milliliter (ng/mL), which is the therapeutic range and its metabolite desmethylsertraline at 680 ng/mL. Autopsy was not performed.

Death Certificate reports underlying cause of death is intracranial hemorrhage and manner of death is accident.

Evaluation by Ken Starr MD (addiction/emergency med) dated 11/12/18 reports on 4/27/18 at approximately 16:50, the insured was found dead, lying supine at the bottom of a staircase in her home. There was evidence of a fall injury as noted by

UA-CL-AD&D-000789

facial trauma, broken glass and lacerations to R hand. Additionally, there was a hole noted in the staircase wall. Her husband had last spoken to her around noon that day. She did not answer the phone at approximately 3 pm when he called the house. There was no mention of her being ill or injured during the noon conversation. Lab studies performed the next day showed a blood alcohol level of 337 mg/dl, and a drug screen remarkable for Sertraline (Antidepressant), Norsertraline (a breakdown product of Sertraline) and Caffeine. No autopsy was performed. However, the cause of death was listed as an "Accident" with the immediate cause of death being "Intracranial Hemorrhage." Cause for Action: The cause for legal action is an Accidental Death Policy from Unum that was in place at the time of the insured's death that contains an exclusion if the cause of death was "caused by, contributed to, or resulted from... being intoxicated." He notes PMH of HAs, dizziness (onset 4/06), obesity, vertigo, OSA, brachial neuritis, concussion w/o LOC, incoordination (onset 5/07), chronic neck and back pain, cervical/lumbar spondylosis, and paresthesias (onset 6/07). Medications documented: Vitamin D3, Vitamin B12, Vitamin A and D2, Gabapentin, Ibuprofen, Zoloft, Multivitamins, Lorazepam 1mg, Celecoxib 200mg tablet, and Sertraline 50mg tab.

Dr. Starr's Opinion: He reports she suffered from a number of chronic medical conditions, as well as took prescribed medications, and drank alcohol regularly. All of these factors may individually or in combination have caused or contributed to her accident. The insured had a documented history of "dizziness", "vertigo', and "incoordination". These diseases of the central nervous system are associated with a higher risk of falling. The risk of falling would reasonably increase in the setting of navigating stairs. These medical problems can affect balance, coordination, gait, and the perception of movement. The insured had a documented hx of taking medications, which used alone or in combination could contribute to sedation and difficulties with ambulation. Lorazepam is a benzodiazepine central nervous system depressant. Gabapentin is a GABA analog which is used for a multiple of reasons. Gabapentin decreases nerve pain, relieves anxiety, and also causes sedation. Like lorazepam, gabapentin is a central nervous system depressant. A side effect of these types of medications is sedation. The blood alcohol level at the time of death was 337 mg/dl. A level of 337 mg/dl is markedly elevated. A level this high is known to impair gait, balance, and coordination. A blood alcohol level in this range in a regular drinker is not fatal. In fact, depending on tolerance, a person with this blood alcohol level may not even act or appear intoxicated. He reports that with a reasonable degree of medical certainty, it can be assumed that the insured died from injuries sustained from her fall. The cause of death may have been from an intracranial hemorrhage as noted by the Medical Examiner. However, the cause of death could have been from any number of traumatic injuries or medical events. Traumatic causes could include cervical spine fracture, solid organ injury, or internal bleeding. Medical problems, for example, could have included stroke, or myocardial infarction, or simply a syncopal episode resulting in the fall. He reports it is "accurate to attest to the fact that Ms. Williams did not die from alcohol intoxication or from medical problems directly related to alcoholism."

Opinion on 1/10/18 by Dr. Starr reports he has reviewed Dr. Rowe's records. Conclusion: The insured demonstrated hx of chronic and progressive vertigo that had previously caused her to become dizzy, fall, and hit her head. Despite a thorough neurology consultation and extensive w/u, her vertigo, HAs, and balance problems continued to progress. He reports that her underlying health problems may have caused or contributed to her fall down the stairs. He notes there is still not enough information to accurately determine the precise cause of death and he still believes the most likely cause of death was either from traumatic injuries she sustained when she fell, or from a medical event triggered by injuries from her fall.

Referral Questions and Answers:
Please review the available file information and address the following:

1.The extent to which Ms. Williams' medical conditions or medications may have contributed to her fall or death (including a review of the conclusions set forth in Dr. Starr's reports).

---

The insured does have hx of vertigo, dizziness, and "incoordination". These conditions can affect balance and gait, making someone more high risk for a fall, but there has been no documentation of any issues related to these symptoms or resulting falls since 2015. She also has OSA and chronic insomnia causing fatigue. The most recent medical record in the file on 1/18/18 by Dr. Hull reports the insured is taking the following medications: lorazepam 1 mg at HS as needed, celecoxib 200 mg daily, gabapentin 100mg tid, and sertraline 50 mg daily. She is asking to increase the lorazepam to 3 mg nightly due to anxiety and insomnia, but it is not clear if her dose was increased. Medication found on scene included sertraline and gabapentin, but lorazepam is not mentioned. There is also no mention in the toxicology report of lorazepam being detected. Gabapentin, sertraline, and lorazepam can have a side effect of drowsiness, but there is no mention of any issues related to side effects of her medications in the medical records.

2.The likely impact of Ms. Williams' intoxication on her motor function, given that she was a regular and perhaps even heavy drinker.

The insured's toxicology report shows ethanol in the blood at 0.337% and in the vitreous fluid at 0.430%. This level is four times the level generally accepted as legal intoxication and falls within the possibly fatal range of 0.31% plus. A BAC at this level can result in impaired consciousness, depressed or absent reflexes, general inertia approaching paralysis, markedly decreased response to stimuli, marked muscular incoordination, and inability to stand or walk.

Next Steps: Return to LAS for further claim management.

Certification: I have reviewed all medical and clinical evidence provided to me by the Company personnel bearing on the impairment(s) which I am by training and experience capable to assess.

CC Name & Credentials: Susan Grover BSN, RN, CRRN

Completed By: Grover, Susan L
Completed Date: 01/22/2019 16:23:45          Complete Site: Portland

*Claimant Name: Kathy  Williams       Claim #:  14865967*

```
                              Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2019012510111534C5C9

Entry Date: 01/25/2019 10:11:16

Received Date: 01/25/2019

Date Added to Claim: 01/25/2019

Primary Doc Type: Policy

Secondary Doc Type: Enrollment Info

Medical Provider:

Document Notes: ER 2018 benefits guide

Work Notes:
```



OUR **PEOPLE**
OUR STRENGTH
*Strong benefits for employees*



**BLUESCOPE**

# 2018

BlueScope

# Benefits Guide



Look inside this guide for
helpful information about your
BlueScope Benefits.

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000793

# Enrollment Action List

| ACTION | LEARN MORE |
|--------|------------|
| **Learn About Your BlueScope Benefits** | See page |
| View a list of all BlueScope benefits | 4 |
| Review the options for your health care, disability coverage, life insurance, vacation purchase and EAP | 5—35 |
| Talk to your Human Resources team if you have questions | |
| **Enroll** | |
| Make all enrollments online at https://portal.adp.com | 36 |

# Table of Contents

1. Your BlueScope Benefits Program ........................................................................... 1
2. What's Inside Your Enrollment Guide ...................................................................... 3
3. Your 2018 Benefits at-a-Glance ............................................................................. 4
4. Medical and Prescription Drug Coverage ................................................................ 5
5. LiveHealth Online .................................................................................................. 20
6. HealthEquity HSA & FSA Administration ............................................................... 22
7. Flexible Spending Accounts (FSAs) ....................................................................... 23
8. BlueScope Wellbeing Program .............................................................................. 24
9. Dental Coverage .................................................................................................... 29
10. Vision Coverage ................................................................................................... 30
11. Short-Term and Long-Term Disability and FMLA ................................................. 32
12. Life and Accident Insurance ................................................................................. 33
13. Vacation Purchase Plan ........................................................................................ 34
14. Employee Assistance Program (EAP) .................................................................... 35
15. How to Enroll in Your Benefits ............................................................................. 36
16. BlueScope Employee Savings Trust (BEST 401K) ................................................ 38
17. Benefit Eligibility .................................................................................................. 40
18. HSA's and Secondary Coverage ........................................................................... 41
19. Important Notices ................................................................................................. 42
20. Enrollment Worksheet .......................................................................................... 53
21. Key Contacts ........................................................................................................ 54
22. Glossary of Terms ................................................................................................. 55

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000794

# BlueScope Benefits Program



BlueScope is committed to offering competitive benefits to our employees. Our program provides comprehensive benefits that enable you to protect you and your family.

In this enrollment guide, you'll learn how to take full advantage of your health care benefits: not only *medical care* for illness, but also *preventive care* to protect your health.

The BlueScope benefits program has been designed with you and your family's health and safety in mind. Our benefits program provides you:

- Improved tools to learn about and manage your health and well-being
- Wellbeing program offerings
- Information about your benefits that's easy to access and understand

Learn more in the pages that follow about what *you can do* ... and what your BlueScope benefits can *do for you* and *your family*.

To ensure that you choose the benefits that best meet your and your family's needs, please review the information in this guide carefully.

Once you enroll, you can make certain changes to your elections only if you have a qualifying life event, such as marriage, divorce, birth, etc. (see page 40 for more information).

Take action to manage your health better.



ENROLL...

...to take advantage of the great benefits offered by BlueScope

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000795

# What's new for 2018

- Eye glass allowance increases from $120 to $130
- MetLife Dental plan now includes providers in the PDP Plus network
- Type C dental benefits eligible for 50% coinsurance
- Introduction of the Orthopedic Center of Excellence—restricted to in-network facility charges for neck, spine and hip surgery (see flyer for additional information)
- Spousal Surcharge of $150 per month for spouses covered by the medical plan with access to alternative creditable coverage
- Deductible and Out-of-Pocket limits increased in accordance with IRS guidelines
- Introduction of Castlight as a transparency pricing tool for Anthem plans
- Availability of Omada wellness program for qualifying employees and spouses

# Privacy Policy

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) requires health plans to notify plan participants and beneficiaries about its policies and practices to protect the confidentiality of their health information.

The privacy policy and practices of the BlueScope Steel Plan protects confidential health information that identifies you or could be used to identify you and relates to a physical or mental health condition or the payment of your health care expenses. This individually identifiable health information is known as "protected health information" (PHI). Your PHI will not be used or disclosed without a written authorization from you, except as described in the Privacy Notice or as otherwise permitted by federal and state health information privacy laws.



If you believe your privacy rights under this policy have been violated, you may file a written complaint with the Corporate Human Resources Department at the address listed below. Alternatively, you may complain to the Secretary of the U.S. Department of Health and Human Services, generally, within 180 days of when the act or omission complained of occurred.

> North America Group Office Human Resources
> BlueScope Steel North America
> 1540 Genessee Street
> Kansas City, MO 64102
> Telephone Number (866) 880-3301

To obtain a full copy of the Privacy Notice, contact your local HR Representative.

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000796

# What's Inside Your Enrollment Guide

 2

This enrollment guide is an important tool to assist you with enrolling and getting the most out of your benefits. It describes each of the benefit plans that require an election, outlines your options and provides some tools to help you think through your decisions.

This guide is designed to:

▪ Make it easy for you to find and understand information about your benefits

▪ Give you the confidence to decide which options are right for you and your family

As you carefully consider your benefit needs and think through your benefit elections, please refer to this guide along with your other enrollment materials and online tools.

Key pages in this guide to help you learn about your benefits:

*Pages 12 and 13—Medical plan comparison*

*Pages 24 through 28—Wellbeing overview*

*Pages 36 and 37—How to enroll in benefits*

*Pages 38 and 39—BEST 401(k) plan highlights*

*Page 54—Key Contacts*

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000797



# Your 2018 Benefits at-a-Glance

**3**

While there are many advantages to being a BlueScope employee, this guide focuses on the benefits that support your *health,* provide you *income protection,* and also provide you the tools to manage a better *work/life balance.* Enrolling in these benefits generally occurs only once per year during Open Enrollment.

| HEALTH BENEFITS | INCOME PROTECTION |
|---|---|
| ◦ Medical<br>  — HRA<br>  — HSA Plus<br>  — HSA Basic<br>◦ 100% preventive care coverage<br>◦ Prescription drug coverage<br>◦ LiveHealth Online<br>◦ Quest Biometric Screenings<br>◦ Castlight<br>◦ Omada Health<br>◦ Dental<br>◦ Vision<br>◦ Health Care FSA | ◦ Dependent Care FSA<br>◦ Short-term disability coverage (or salary continuation)<br>◦ Long-term disability coverage<br>◦ Basic life and accident insurance<br>◦ Voluntary employee life insurance<br>◦ Voluntary accident insurance<br>◦ Voluntary dependent life insurance<br>◦ BEST Retirement Plan |
| | **WORK / LIFE BALANCE** |
| | ◦ Vacation purchase<br>◦ Employee Assistance Program (EAP) |

4

UA-CL-AD&D-000798

# Medical and Prescription Drug Coverage

 4

Medical coverage is an important part of supporting a healthy lifestyle. It encourages you to obtain preventive care on a regular basis, helps you when you're ill and protects you from catastrophic financial effects of a serious illness or injury. As part of your medical plan, you also receive prescription drug coverage.

The BlueScope medical plan offers you three options:

- Health Reimbursement Account (HRA)
- Health Savings Account Plus (HSA Plus)
- Health Savings Account Basic (HSA Basic)

All plans are PPO's that blend two components to give you greater control over how you spend your health care dollars:

- **Comprehensive medical coverage from a provider you choose.** You can choose any doctors and hospitals, but you receive a higher level of benefits when you use providers that participate in the Anthem BlueCross BlueShield network. Eligible preventive care from an Anthem network provider is covered at 100%.
- **A health care account.** You can use the HRA or HSA account to help pay for your share of eligible expenses, such as your deductible and coinsurance. Any money left over at the end of the year carries forward, and you can use it in a following year.

**WHAT IS A PPO?**

PPO stands for Preferred Provider Organization and refers to a network of hospitals and doctors. PPOs offer the freedom to see any provider but pay higher benefits when network providers are used.

 **NO UPFRONT COPAYS FOR OFFICE VISITS**

The BlueScope medical plans (HRA and both HSAs) do not require copays for routine office visits.

- In-network office visits for preventive care (including one annual eye exam) are covered at 100% — you pay nothing.
- Office visits for non-preventive care can be paid from your HRA or HSA — you pay nothing out-of-pocket if you have a balance in your HRA or HSA.

- If your HRA or HSA no longer has a balance and you've met your deductible, in-network office visits for non-preventive care are paid at 80%. See pages 7, 9 and 11 for details.

While the plan does not require up-front payment, you may be asked to make a payment up-front for medical procedures subject to deductible and co-insurance at the provider's discretion. In these cases, ask your provider to consider your available HRA or HSA balance.

5

---

*Claimant Name: Kathy  Williams      Claim #:  14865967*

UA-CL-AD&D-000799

Choose the
PPO Plan
that will work
best for you

## SPOUSAL SURCHARGE

Spouses or domestic partners that are eligible for alternative creditable medical coverage, but choose to enroll in BlueScope's medical plan will be assessed a $150 monthly surcharge. The surcharge will be taken through payroll deductions and added to the bi-weekly medical premium.

Alternative creditable medical coverage can be considered group health insurance sponsored by another employer. Medicare, Medicaid, or Other State Coverage are not considered "alternative creditable coverage". Spouses not eligible for alternative creditable medical coverage may remain covered and will not be assessed a surcharge.

# MEDICAL PLAN OPTION 1: HRA

### Health Reimbursement Account

With the HRA option, you and BlueScope share the cost of health care coverage. Your share comes from payroll deductions (see rate sheet for premiums). BlueScope's share comes from an annual HRA allocation based on your coverage level (e.g., single or family).

You can use the HRA allocation to pay for eligible medical expenses. This gives you the ability to manage health care costs by:

- Seeking preventive care and managing health risks
- Choosing better-performing providers
- Minimizing the use of unnecessary services
- Register with Castlight to have access to the tools necessary to manage your medical and prescription costs. See page 26 for additional information.

The employer HRA allocation meets part of your deductible. You are responsible for meeting the remainder of the deductible. After you meet the deductible, you and BlueScope share the cost of your health care through your Traditional Health Coverage coinsurance.

See the illustration on the next page to learn more about the PPO with HRA option.

*Opt Out Notice:*

*The Affordable Care Act (ACA) requires that BlueScope notify employees enrolled in the BlueScope HRA+PPO Plan that is integrated with the Health Reimbursement Arrangement (HRA) how this coverage affects an individual's ability to receive subsidized coverage through the public exchange, also known as the Health Insurance Marketplace, and how enrolled employees may opt out of HRA coverage on an annual basis and upon termination of employment.*

*Under the ACA, HRAs are considered minimum essential coverage. As a result, anyone enrolled in an HRA is typically disqualified from receiving subsidized coverage through the public exchange. Because the HRA is integrated with the BlueScope HRA+PPO Plan current ACA rules require employers to provide an annual opt-out option from HRA coverage. Opting out of HRA coverage means that you will waive future reimbursements from the HRA for the upcoming plan year. More information about this opt-out is available in IRS Notice 2013-54, which can be accessed here: www.irs.gov/pub/irs-drop/n-13-54.pdf.*

*Under the terms of the plan, an employee decision to revoke or waive an election for medical coverage or otherwise terminate medical coverage under the BlueScope HRA+PPO Plan constitutes that employee's decision to opt out of HRA coverage automatically for the upcoming plan year.*

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000800

## PPO PLAN WITH HRA

### Preventive Care

- 100% coverage from network providers.
- Encourages you to get the care you need to prevent illness and stay healthy.
- Does not reduce your HRA balance.

### Health Reimbursement Account (HRA)

- BlueScope covers a portion of your annual plan deductible by making an allocation to your account on January 1 of every year. Mid-year enrollments receive a pro-rated allocation.
- Non-preventive medical expenses that count toward the deductible are automatically withdrawn from your HRA.
- Unused balance in your HRA at year-end is rolled over for use in the following year, provided you are still enrolled in the HRA.
- If you leave BlueScope, your HRA balance is forfeited.
- Your HRA allocation can only be used for in-network medical claims. You may not use your HRA allocation for dental or pharmacy claims or out of network medical claims.

### Annual Deductible

- Your HRA funds, including any unused balance from prior years, can be used to pay towards your deductible.
- Your deductible is made up of in-network medical visits only, not prescription expenses.
- Should you use up your entire HRA balance, you pay the remainder of your deductible from your own pocket (or from your elected Health Care FSA — see page 23).

### Traditional Health Coverage

- Once you meet the deductible, you and BlueScope share the cost of services through coinsurance.
- Once you reach the out-of-pocket maximum, the Plan pays 100% of eligible medical and pharmacy expenses for the remainder of the year.

### Preventive Care

Covered at 100% for In-Network claims

### Deductible

Your HRA allocation may be used towards your annual deductible

### Traditional Health Coverage

Begins after the deductible is met, with an 80/20 coinsurance for in-network claims

7

UA-CL-AD&D-000801

## MEDICAL PLAN OPTION 2: HSA PLUS


### Health Savings Account Plus

With the HSA Plus option, you and BlueScope share the cost of health care coverage. Your share comes from payroll deductions (see rate sheet for premiums). BlueScope's share comes from an annual HSA allocation based on your coverage level (e.g., single or family).

In addition to the employer contributions to your Health Savings Account

Important! If you have secondary medical coverage such as Medicare Part A and B, Medicaid, TRICARE, state-sponsored medical programs, or coverage through a spouse's or parent's plan, you may not be eligible to contribute to a Health Savings Account. See page 41 for additional information.

(HSA), you can also elect to contribute extra pre-tax monies into your HSA account through payroll deductions. This allows you a tax advantage by contributing to your account pre-tax, while also earning tax-free interest on your HSA balance. This money is to be used for the payment of your eligible medical expenses, including dental, vision and pharmacy expenses. If you leave BlueScope, your HSA belongs to you, and you can use it to pay for future health care expenses.

**Note: If you enroll in the HSA, you are not eligible to enroll in the BlueScope Health Care Flexible Spending Plan, but can participate in the Dependent Care Flexible Spending Plan.**

As with the HRA option, you can manage health care costs by:

- **Seeking preventive care and managing health risks**
- **Choosing better-performing providers**
- **Minimizing the use of unnecessary services**
- **Register with Castlight to have access to the tools necessary to manage your medical and prescription costs. See page 26 for additional information.**

After you meet your annual deductible (through HSA funds or from your pocket), you and BlueScope will share the cost of your in-network health care with an 80/20 coinsurance through Traditional Health Coverage.

See the illustration on the next page to learn more about the HSA Plus option.

---

### IRS HSA Contribution Limits for 2018:

Individual: $3,450

Family: $6,900

If you are 55 or over, you can contribute an additional $1,000 annually.

BlueScope will contribute $250 for individual or $500 for dependent coverage to your HSA Plus Plan at the beginning of the plan year. Mid-year enrollments will receive a pro-rated contribution.

### SPOUSAL SURCHARGE

Spouses or domestic partners that are eligible for alternative creditable medical coverage, but choose to enroll in BlueScope's medical plan will be assessed a $150 monthly surcharge. The surcharge will be taken through payroll deductions and added to the bi-weekly medical premium.

Alternative creditable medical coverage can be considered group health insurance sponsored by another employer. Medicare, Medicaid, or Other State Coverage are not considered "alternative creditable coverage". Spouses not eligible for alternative creditable medical coverage may remain covered and will not be assessed a surcharge.

8

---

Claimant Name: Kathy Williams     Claim #:  14865967

## PPO WITH HSA PLUS

### Preventive Care

- 100% coverage from network providers.
- Encourages you to get the care you need to prevent illness and stay healthy.
- Does not reduce your HSA balance.

### Health Savings Account (HSA)

- Once enrolled in the HSA Plus plan, an HSA will automatically be set up for you through HealthEquity. You can elect to fund the account through pre-tax payroll deductions. (Pre-tax payroll deductions are not available for HSA's at other institutions.)
- Once your account is setup with HealthEquity, BlueScope will contribute $250 for employees enrolled in individual coverage and $500 for employees enrolled in dependent coverage. Mid-year enrollments receive a pro-rated contribution.
- You can make tax-free contributions to your HSA up to the IRS allowed amount.
- You can use your HSA to pay for eligible health care expenses; including dental, vision and pharmacy expenses.
- Your unused balance in your HSA at year-end, rolls over and is available for use in future years.
- You keep all employee and employer contributions in your HSA should you leave BlueScope.

### Annual Deductible

- For non-preventive care, you pay the full cost of medical services, not to exceed the allowed amount for in-network claims, up to the annual plan deductible.
- Your HSA monies, including any unused balance from prior years, can be used to pay towards your deductible.
- Your deductible is made up of medical and prescription co-pays/co-insurance.

### Traditional Health Coverage

- Once you meet the deductible, you and BlueScope share the cost of services through coinsurance.
- Once you reach the out-of-pocket maximum, the Plan pays 100% of eligible medical and pharmacy expense for the remainder of the year.

**Preventive Care**

Covered at 100% for In-Network claims

**Deductible**

Can be paid out of your pocket or with funds in your HSA account

**Traditional Health Coverage**

Begins after the deductible is met, with an 80/20 coinsurance for in-network claims



9

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000803

## IRS HSA Contribution Amounts for 2018:

Individual: $3,450

Family: $6,900

If you are 55 or over, you can contribute an additional $1,000 annually.

## MEDICAL PLAN OPTION 3: HSA BASIC



### Health Savings Account Basic

With the HSA Basic option, you and BlueScope share the cost of health care coverage (see rate sheet for premiums).

You can elect to contribute extra pre-tax monies into your HSA account through payroll deductions. This allows you a tax advantage by contributing to your account pre-tax, while also earning tax-free interest on your HSA balance. This money is to be used for the payment of your eligible medical expenses, including dental, vision and pharmacy expenses. If you leave BlueScope, your HSA belongs to you, and you can use it to pay for future health care expenses.

Important! If you have secondary medical coverage such as Medicare Part A and B, Medicaid, TRICARE, state-sponsored medical programs, or coverage through a spouse's or parent's plan, you may not be eligible to contribute to a Health Savings Account. See page 39 for additional information.

## SPOUSAL SURCHARGE

Spouses or domestic partners that are eligible for alternative creditable medical coverage, but choose to enroll in BlueScope's medical plan will be assessed a $150 monthly surcharge. The surcharge will be taken through payroll deductions and added to the bi-weekly medical premium.

Alternative creditable medical coverage can be considered group health insurance sponsored by another employer. Medicare, Medicaid, or Other State Coverage are not considered "alternative creditable coverage". Spouses not eligible for alternative creditable medical coverage may remain covered and will not be assessed a surcharge.

Note: If you enroll in the HSA, you are not eligible to enroll in the BlueScope Health Care Flexible Spending Plan, but can participate in the Dependent Care Flexible Spending Plan.

As with the PPO Plan with HRA option, you can manage health care costs by:

- Seeking preventive care and managing health risks
- Choosing better-performing providers
- Minimizing the use of unnecessary services
- Register with Castlight to have access to the tools necessary to manage your medical and prescription costs. See page 26 for additional information.

After you meet your annual deductible (through HSA funds or from your pocket), you and BlueScope will share the cost of your in-network health care with a 60/40 coinsurance through Traditional Health Coverage.

See the illustration on the next page to learn more about the PPO with HSA Basic option.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000804

## PPO WITH HSA BASIC

### Preventive Care

- 100% coverage from network providers.
- Encourages you to get the care you need to prevent illness and stay healthy.
- Does not reduce your HSA balance.

### Health Savings Account (HSA)

- Once enrolled in the PPO plan, an HSA will automatically be set up for you through HealthEquity. You can elect to fund it through pre-tax payroll deductions. (Pre-tax payroll deductions are not available for HSA's at other institutions.)
- You can make tax-free contributions to your HSA up to the IRS allowed amount.
- You can use your HSA to pay for eligible health care expenses; including dental, vision, and pharmacy expenses.
- Your unused balance in your HSA at year-end, rolls over and is available for use in future years.
- You keep all contributions in your HSA should you leave BlueScope.

### Annual Deductible

- For non-preventive care, you pay the full cost of medical services, not to exceed the allowed amount for in-network claims, up to the annual plan deductible.
- Your HSA monies, including any unused balance from prior years, can be used to pay towards your deductible.
- Your deductible is made up of medical and prescription co-pays/co-insurance.

### Traditional Health Coverage

- Once you meet the deductible, you and BlueScope share the cost of services through coinsurance.
- Once you reach the out-of-pocket maximum, the Plan pays 100% of eligible medical and pharmacy expense for the remainder of the year.

### Preventive Care

Covered at 100% for In-Network claims

### Deductible

Can be paid out of your pocket or with funds in your HSA account

### Traditional Health Coverage

Begins after the deductible is met, with a 60/40 coinsurance for in-network claims

11

UA-CL-AD&D-000805

# Medical Plan — Side by Side Comparison

| | HRA | HSA PLUS |
|---|---|---|
| Preventive Care | ▪ 100% covered (in-network)<br>▪ 60% covered (out-of-network) | ▪ 100% covered (in-network)<br>▪ 60% covered (out-of-network) |
| Deductible | ▪ $1,350 Individual ($2,700 out-of-network)<br>▪ $2,700 Individual + Spouse ($5,400 out-of-network)<br>▪ $2,700 Individual + Child(ren) ($5,400 out-of-network)<br>▪ $4,050 Family ($8,100 out-of-network)<br><br>*Imbedded Deductible: A member must only meet the individual deductible before the plan pays co-insurance for that member. Once the full deductible is met, the plan pays co-insurance for all covered members.* | ▪ $1,350 Individual ($2,700 out-of-network)<br>▪ $2,700 Individual + Spouse ($5,400 out-of-network)<br>▪ $2,700 Individual + Child(ren) ($5,400 out-of-network)<br>▪ $2,700 Family ($5,400 out-of-network)<br><br>*IRS rules do not allow imbedded deductible. One member may meet the full family deductible.* |
| Annual Allocation | Employer-Owned Account<br>▪ $250 Individual<br>▪ $500 Individual + Spouse<br>▪ $500 Individual + Child(ren)<br>▪ $500 Family<br><br>▪ Rollover from prior year is available January 1st<br>▪ No cap on HRA balance<br>▪ Mid-year enrollments receive a pro-rated HRA contribution<br>▪ HRA allocation and rollover may be used to meet your annual deductible and out-of-pocket max<br>▪ HRA balances are forfeited if you leave the company<br>▪ HRA monies can only be used for in-network medical claims; not prescriptions or dental | Employee-Owned Account<br>▪ $250 Individual<br>▪ $500 Individual + Spouse<br>▪ $500 Individual + Child(ren)<br>▪ $500 Family<br><br>▪ HSA will be opened automatically by HealthEquity upon enrollment with Anthem<br>▪ Mid-year enrollments receive a pro-rated employer HSA contribution<br>▪ 2018 annual IRS maximum contribution is $3,450 for individual or $6,900 for family—company contribution counts towards maximum<br>▪ Those 55 and over can contribute an additional catch-up contribution of $1,000<br>▪ HSA balances are portable and are not forfeited if you leave the company |
| Coinsurance | ▪ 80% (in-network)<br>▪ 60% (out-of-network) | ▪ 80% (in-network)<br>▪ 60% (out-of-network) |
| Physician Office Visits | ▪ 80% (in-network)<br>▪ 60% (out-of-network) | ▪ 80% (in-network)<br>▪ 60% (out-of-network) |
| Inpatient Hospital | ▪ 80% (in-network)<br>▪ 60% (out-of-network)<br>*out-of-network Orthopedic facility charges not covered | ▪ 80% (in-network)<br>▪ 60% (out-of-network)<br>* out-of-network Orthopedic facility charges not covered |
| Annual Out-of-Pocket Max (includes deductible) | ▪ $3,400 Individual ($6,800 out-of-network)<br>▪ $6,800 Individual + Spouse ($13,600 out-of-network)<br>▪ $6,800 Individual + Child(ren) ($13,600 out-of-network)<br>▪ $7,500 Family ($15,000 out-of-network) | ▪ $3,400 Individual ($6,800 out-of-network)<br>▪ $6,800 Individual + Spouse ($13,600 out-of-network)<br>▪ $6,800 Individual + Child(ren) ($13,600 out-of-network)<br>▪ $6,900 Family ($13,600 out-of-network) |

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000806

| | HSA BASIC |
|---|---|
| Preventive Care | ▪ 100% covered (in-network) |
| | ▪ 50% covered (out-of-network) |
| Deductible | ▪ $2,100 Individual ($4,200 out-of-network) |
| | ▪ $4,200 Individual + Spouse ($8,400 out-of-network) |
| | ▪ $4,200 Individual + Child(ren) ($8,400 out-of-network) |
| | ▪ $4,200 Family ($8,400 out-of-network) |
| | *IRS rules do not allow imbedded deductible. One member may meet the full family deductible.* |
| Annual Allocation | **Employee-Owned Account** |
| | ▪ No employer allocation, unless you participate in the Wellbeing Program. |
| | ▪ HSA will be opened automatically by HealthEquity upon enrollment with Anthem |
| | ▪ 2018 annual IRS maximum contribution is $3,450 for individual or $6,900 for family—company contribution counts towards maximum |
| | ▪ Those 55 and over can contribute an additional catch-up contribution of $1,000 |
| | ▪ HSA balances are portable and are not forfeited if you leave the company |
| Coinsurance | ▪ 60% (in-network) |
| | ▪ 50% (out-of-network) |
| Physician Office Visits | ▪ 60% (in-network) |
| | ▪ 50% (out-of-network) |
| Inpatient Hospital | ▪ 60% (in-network) |
| | ▪ 50% (out-of-network) |
| | *out-of-network Orthopedic facility charges not covered |
| Annual Out-of-Pocket Max (includes deductible) | ▪ $3,525 Individual ($7,050 out-of-network) |
| | ▪ $7,050 Individual + Spouse ($14,100 out-of-network) |
| | ▪ $7,050 Individual + Child(ren) ($14,100 out-of-network) |
| | ▪ $7,050 Family ($14,100 out-of-network) |

## HSA's Empower Health Savings

HSA users save in several ways:

▪ Lower monthly premiums

▪ Contributions are not taxed

▪ Earn tax-free interest on your balance

▪ Funds used for qualified medical expenses are not taxed

13

UA-CL-AD&D-000807

# Prescription Drug Coverage

## Prescription Drug Coverage

If you enroll in the BlueScope medical plan, you automatically have pre-scription drug coverage. Our prescription drug coverage is managed through **Express Scripts**. You can use the same Anthem BCBS ID card for your medical and prescription coverage.

There are two ways to get your prescriptions filled:

- **Retail pharmacy:** By showing your Anthem BCBS ID card at a network pharmacy, you can obtain up to a 31-day prescription after paying your coinsurance. **Most major and independent pharmacies participate in the Express Scripts network, with the exception of Walgreens.** To find a pharmacy close to you, go to:

    www.express-scripts.com/bluescope.

- **Mail-order service:** Express Scripts Home Delivery fills your prescrip-tions through a convenient and cost-effective mail-order service. By completing a mail-order form (available at **www.express-scripts.com/bluescope**), you can receive a 90-day supply of your prescription drug at a reduced cost. NOTE: In the HRA option, you must use the mail-order service after receiving two 31-day refills of the same prescription at retail.





### Express Scripts App

Download the Express Scripts App on your Smartphone for access to helpful tools.

Scan this QR code to download the Express Scripts app from your mobile device's app store or visit Express-Scripts.com/mobileapp



Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000808

# Pharmacy Benefit Comparison

One of the major differentiators between the three medical plans is pharmacy coverage. Below is a summary of how the pharmacy plan works for the HRA, HSA Plus and HSA Basic.

If you would like to price a medication, you may go to www.express-scripts.com/bluescope or calling Express Scripts at 877-791-1179.

| PRESCRIPTION DRUG BENEFIT | HRA | | HSA PLUS | | HSA BASIC | |
|---|---|---|---|---|---|---|
| | Retail | Mail Order | Retail | Mail Order | Retail | Mail Order |
| Tier 1 Generic | 10% Minimum $10 Maximum $20 | 10% Minimum $20 Maximum $40 | Preventive medications are subject to tiered co-pay same as HRA* | | Preventative and Non-Preventative Prescriptions are subject to medical deductible and out-of-pocket maximums. | |
| Tier 2 Formulary Brand | 20% Minimum $20 Maximum $40 | 20% Minimum $40 Maximum $80 | | | | |
| Tier 3 Non-formulary Brand | 30% Minimum $40 Maximum $80 | 30% Minimum $80 Maximum $160 | Non-preventive medications are subject to Medical Deductible, then tiered co-pay same as HRA | | Once deductible is met, employee pays 40% of cost for all prescriptions. | |
| Tier 4 Specialty Drugs—limited to 31-day supply through the Specialty Pharmacy | N/A | $50 co-pay | | | | |
| Employer Allocation | HRA allocation cannot be used for prescription expenses | | HSA allocation can be used for prescription expenses | | No employer allocation unless earned through the Wellbeing program. HSA funds can be used for prescription. | |
| Mail Order | Important! Maximum of two, 31-day prescription fills at the retail level for the same prescription per calendar year. After this, mail order through Express Scripts is required. | | Use of Express Scripts Mail Order is optional | | Use of Express Scripts Mail Order is optional | |
| Summary | Prescriptions apply to out-of-pocket maximum After meeting your out-of-pocket maximum, all drugs are covered at 100% | | Prescriptions apply to deductible and out-of-pocket maximum After meeting your out-of-pocket maximum, all drugs are covered at 100% | | Prescriptions apply to deductible and out-of-pocket maximum After meeting your out-of-pocket maximum, all drugs are covered at 100% | |
| ACA Preventive Medications | To the extent required by the Patient Protection and Affordable Care Act of 2010, some preventive medications are available at no cost to you. | | | | | |

## *Preventive Rx for HSA Plus

As mentioned above, preventive medications are eligible for co-insurance and not subject to the HSA deductible for the HSA Plus medical plan. Preventive medications include anticoagulants, cholesterol lowering agents, contraceptives, prenatal vitamins, antidiabetic agents, anti-hypertensive, anti-estrogen, gout agents, RSV agents, and other cardiovascular agents used for angina and congestive heart failure. Please contact Express Scripts for a full list of medications covered as preventive.

Claimant Name: Kathy  Williams     Claim #:  14865967

UA-CL-AD&D-000809

# Which Plan is Right for You?

All medical plan options (either the HRA or an HSA) offer different advantages. When deciding which option to choose for you and your family, consider the following questions:

| QUESTION | HRA | HSA PLUS |
|---|---|---|
| How do I pay for coverage? | ⊠ You pay your share through payroll deductions<br>⊠ Premiums are higher than the HSA Plus and HSA Basic | ⊠ You pay your share through payroll deductions<br>⊠ Premiums are lower than the HRA |
| How does BlueScope share the cost of coverage? | ⊠ BlueScope makes an annual allocation to your HRA depending on your coverage (single vs. dependents)<br>⊠ If you meet your annual deductible, you and BlueScope pay for Traditional Health Coverage through coinsurance | ⊠ BlueScope makes an annual contribution into your HealthEquity HSA depending on your coverage (single vs. dependents)<br>⊠ If you meet your annual deductible, you and BlueScope pay for Traditional Health Coverage through co-coinsurance |
| How do I meet the annual deductible? | ⊠ Eligible medical expenses paid from your HRA go towards your deductible<br>⊠ If you use all of your HRA allocation, you pay the remaining deductible out of pocket | ⊠ Eligible expenses can be paid from your HSA or out of your own pocket |
| If I don't use up my account this year, will funds roll over? | ⊠ Yes; you can apply rollover funds to next year | ⊠ Yes; you can pay for eligible expenses or let the money grow in your account |
| Does my account earn interest? | ⊠ No | ⊠ Yes; you can also earn investment returns if you use the investment options |
| Can I take my account with me if I leave BlueScope? | ⊠ No; you forfeit any funds remaining in your HRA if you leave BlueScope | ⊠ Yes; you own all employee and employer contributions, and can use it to pay for eligible health expenses in the future |
| Who is responsible for record keeping? | ⊠ Recordkeeping generally is the responsibility of Anthem and BlueScope | ⊠ To receive the tax advantages of the HSA, you are required by the IRS to keep receipts and maintain your own records |
| Do I receive a tax advantage? | ⊠ Neither the amount BlueScope contributes to your HRA, nor the payments from your HRA are subject to income taxes | ⊠ You can fund your HSA with pre-tax payroll deductions<br>⊠ You pay no income taxes on interest or investment earnings in the account, or on qualified reimbursements, unless the funds are used for non-medical expenses |
| How does the account work with other benefits? | ⊠ HRA funds can be used only for eligible medical expenses — not for prescription, dental, vision or out-of-network expenses<br>⊠ Preventative and non-preventative prescription co-pays count only towards your out-of-pocket maximum<br>⊠ Once your out-of-pocket is met, all eligible medical and pharmacy expenses are paid at 100%<br>⊠ You can elect the HRA along with the Health Care and Dependant Care FSA | ⊠ HSA funds can be used only for qualified health care expenses, as defined by the IRS — including prescription, dental and vision expenses<br>⊠ Preventative and non-preventative prescription co-pays and co-insurance count towards deductible and out-of-pocket maximum<br>⊠ Non-preventative prescriptions are not eligible for co-pay/co-insurance, but are paid in full out of your pocket until your deductible has been met. Eligible prescription costs go towards your deductible and out-of-pocket maximum<br>⊠ You cannot elect both the HSA and the Health Care FSA, but you can elect the Dependent Care FSA<br>⊠ If you elect family coverage, the family deductible must be met before Traditional Health Coverage starts |

16

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000810

| QUESTION | HSA BASIC |
|----------|-----------|
| How do I pay for coverage? | ▪ You pay your share through payroll deductions<br>▪ Premiums are lower than the HRA and HSA Plus |
| How does BlueScope share the cost of coverage? | ▪ If you meet your annual deductible, you and BlueScope pay for Traditional Health Coverage through co-coinsurance<br>▪ No Employer Contribution unless you participate in the WellBeing program |
| How do I meet the annual deductible? | ▪ Eligible expenses can be paid from your HSA or out of your own pocket |
| If I don't use up my account this year, will funds roll over? | ▪ Yes; you can pay for eligible expenses or let the money grow in your account |
| Does my account earn interest? | ▪ Yes; you can also earn investment returns if you use the investment options |
| Can I take my account with me if I leave BlueScope? | ▪ Yes; you own your account and can use it to pay for eligible health expenses in the future |
| Who is responsible for record keeping? | ▪ To receive the tax advantages of the HSA, you are required by the IRS to keep receipts and maintain your own records |
| Do I receive a tax advantage? | ▪ You can fund your HSA with pre-tax payroll deductions<br>▪ You pay no income taxes on interest or investment earnings in the account, or on qualified reimbursements, unless the funds are used for non-medical expenses |
| How does the account work with other benefits? | ▪ HSA funds can be used only for qualified health care expenses, as defined by the IRS — including prescription, dental and vision expenses<br>▪ Preventative and non-preventative prescriptions are not eligible for co-pay/co-insurance, but are paid in full out of your pocket until your deductible is met. Eligible prescription costs go towards your deductible and out-of-pocket maximum<br>▪ You cannot elect both the HSA and the Health Care FSA, but you can elect the Dependent Care FSA<br>▪ If you elect family coverage, the family deductible must be met before Traditional Health Coverage starts |

# HealthEquity™
Building Health Savings™

HealthEquity is the Plan Administrator for the HSA and the Medical and Dependent FSAs.

If you would like to know more about HSA plans, determine how much money you could save, or how much money you should set aside per pay period, please visit the link below for powerful tools to help you make this important decision.

http://healthequity.com/ed/anthembcbs-hsa/

17

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000811

## 100% Preventive Care Coverage—Making a Commitment to Your Health

An important way to manage health care costs is by preventing health problems before they arise, and detecting and treating health conditions before they become major problems. Both medical plan options fully cover all of your eligible preventive care services from network providers — you do not even pay office-visit copays.

An annual eye exam is covered at 100% as part of preventive care in the medical plan.

## Recommended Preventive Care

Visit **www.anthem.com** for the complete preventive care guidelines, including an immunization schedule. Be sure to schedule regular exams for you and your child(ren). Ask your doctor which exams, tests and immunizations are right for you, as well as when you should receive them and how often.

## Anthem BlueCross BlueShield

Anthem is a member of the BlueCross BlueShield family with the largest national network of providers. Members may access any provider in the National BlueCard PPO network for in-network benefits. The BlueCard network provides access to 94% of hospitals and 84% of physicians nationally.

Employees living in the **Kansas City** and **St. Joseph** areas will use the Preferred- Care Blue (KC) (Alternate Network) network to receive full in-network benefits in the Kansas City area and the BlueCard PPO network when traveling outside of the area. Employees living in **Wisconsin** will use the Blue Preferred POS (Alternate Network) to receive full in-network benefits in the state and the BlueCard PPO network when traveling outside of Wisconsin.

BlueCross BlueShield also provides access to over 1600 Blue Distinction Centers of Excellence for quality care in the areas of Cardiac Care, Bariatric Surgery, Transplants, treatment of Complex and Rare Cancers, Knee and Hip Replacement and Spine Surgery. Consider looking for a Center of Excellence near you.

### Choosing a Network Doctor or Hospital

To find a network provider, visit **www.anthem.com**. Click "Find a Doctor". Enter the appropriate search criteria. If you reside in Kansas City, St. Joseph or Wisconsin—enter the appropriate network in the "Select a plan/network" section. Click the "Select and Continue" button. You can also find a provider or request a paper copy of the provider directory by calling Anthem at **866-545-8991** during normal business hours.

---

### MAKE THE MOST OF YOUR PREVENTIVE CARE BENEFIT

- Schedule preventive care appointments in accordance with the recommended preventive care guidelines. If you don't have a doctor, you can visit www.anthem.com and click on "Find a Doctor" or call Anthem at 866-545-8991.
- Learn the preventive care services appropriate for your age and gender.
- When you schedule your appointment, explain that it's for preventive care.
- Make a list of questions to ask your doctor, noting any health concerns
- Take your Anthem BCBS health card to your visit. If you are seeing a network doctor, you will not pay any money upfront — no copays.
- During your visit, confirm with your provider's staff that the visit is coded as "preventive."

---

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000812

## Anthem Online Tools and Resources

Anthem offers you a wealth of online tools and resources to manage your healthcare and your health costs. You can:

▪ Determine if your provider belongs to the Anthem network

▪ Learn more about how the HRA and HSA plans work

▪ **To login for the first time, visit www.anthem.com and click on "Register Now." You will need your Anthem Member ID Number, which will be listed on your Anthem health card. You will then be asked to create a User Name and Password.**

▪ **Once you've registered, you can login by simply visiting www.anthem.com.** You will need to enter your User Name and Password. If you forget them, simply follow the instructions on the home page.

▪ **Check www.anthem.com to keep track of expenses paid from your HRA, HSA and your own pocket.** You can also view your claims activity on the statements you receive from Anthem.

**WHAT IF?**

▪ You have a qualified emergency (generally a situation where immediate treatment is needed to save your life or limb), expenses will be covered at the in-network benefit level, even if you have to use an out-of-network provider.

▪ You receive network hospital care but do not have the choice of selecting network anesthesiologists, pathologists, radiologists or other similar providers, expenses will be covered at the in-network benefit level.



Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000813

# 5 ◆ LiveHealth Online 

Nothing can replace the relationship that you have with your Primary Care Physician, but if you or your family members are in need of basic medical care and you can't make it to your doctor, you can still receive quality medical services from board-certified doctors through LiveHealth Online (LHO).

LiveHealth Online offers you the ability to visit with a physician via two-way video chat using your smart phone, tablet or computer. You don't even have to leave your home or office! Using LiveHealth Online, you can see a doctor who can answer questions, make a diagnosis, and even prescribe basic medications when needed. *See the map for participating states.*

## What are the qualifications of the doctors you can choose from on LiveHealth Online?

They are board-certified and average 15 years of practicing medicine. Most of them are primary care physicians that have been specially trained for online visits.

## When can you use LiveHealth Online?

As always, you should call 911 with any emergency. Otherwise, you can use LiveHealth Online whenever you have a health concern and your own doctor isn't available. Doctors are available 24/7/365. Also, if you are traveling in the United States, on vacation or have a child away at college and cannot get to your Primary Care Physician, this offers a great alternative to traditional care. Please note: LHO is only offered in some states. You must be physically located in a participating state at time of use in order to receive the benefits of LHO. See map for additional information.

## Common reasons to use LiveHealth Online:

- **Cold or flu symptoms**
- **Sinus infections**
- **Allergies**
- **Rashes**
- **Urinary tract infections**



## NurseLine

Did you know that in addition to LiveHealth Online BlueScope employees and their dependents also have **free** access to a NurseLine through Anthem?

You can consult with a registered nurse by phone 24 hours a day, seven days a week, and receive instant health care information!

If you find yourself facing a non-urgent medical need and you are just not sure what to do, or may-be it is the middle of the night and you are looking for some medical guidance, reach out to NurseLine. And remember, this service is completely free!

NurseLine: 866-800-8780

LiveHealth Online: 855-603-7985

 

 

apple.com     play.google.com/store

Scan with your smartphone to download LiveHealth Online.
Search for LiveHealth Online on the App Store℠ or Google Play™.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000814

## Get Started and Register!

- Name
- Date of Birth
- Gender
- Zip Code
- State*
- E-Mail Address
- Insurance ID number
- Credit Card

1. Activate your account at livehealthonline.com or download the app by scanning the QRC code on page 20.

2. Set up your profile. You will be asked to enter the following information.

*When setting up your profile, select your home state. If you need to see a doctor when you're traveling, and you are in a state that participates in LHO, remember to change the state next to *My Location* on the *See a Doctor Now* screen.

3. Connect with a doctor with little or no wait time!

## What is the cost of a visit?

The cost for a visit is $49, subject to your deductible. Once your deductible is met, 20% coinsurance applies. Participants enrolled in the HRA plan may use available HRA funds towards the visit. HSA, FSA, Visa, MasterCard, American Express or Discover are other valid forms of payment.

# LiveHealth Online Psychology

Mental health is an important part of a persons overall wellbeing. LiveHealth Online has expanded their services to include online psychology visits. This service provides the ability to speak to a licensed psychologist or social worker online from the comfort of your own home.

Not only are adults eligible for this benefit, but children ages 10-17 can participate with parental assistance.

Psychology Online differs from Medical Online as you do not have access to a provider immediately. Instead, you log into LiveHealth Online, select Psychology, and review the list of available therapists. Once you select a provider, you can schedule a visit during a date and time that works best for you. The cost for a Psychology visit varies, but is clearly noted when scheduling an appointment.

To sign up for this benefit, you will follow the same instructions noted above under Get Started and Register!

## Questions?

Visit livehealthonline.com to learn more or call 1-855-603-7985, 24/7.

LiveHealth Online Psychology allows you the ability to speak to a licensed Psychologist or Social Worker via your computer or smart phone.

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000815

# 6 HealthEquity— HSA & FSA Administration

HealthEquity is the administrator for your HSA and Flexible Spending Plans. The change to HealthEquity will allow you to manage all of your accounts in one place, through the integrated member portal at Anthem.com. As an additional convenience, after your medical, dental, prescription and vision claims have been processed by each vendor, they will be transmitted to HealthEquity so you can manage the payment of your portion of the claim directly from your HSA or FSA. The online integration provides you the convenience of maintaining one login to manage your health claims along with your HSA and FSA.

Benefits provided by HealthEquity:

- Your HSA account will be set up automatically once you are enrolled in the HSA Plan
- A Welcome Kit and Debit Card will be sent to you once enrolled
- Claims management is available online or from a smart phone
- Integrated portal for claims, eligibility and contributions
- The ability to invest your HSA dollars through the HealthEquity website
- Set up automatic bill pay to your medical providers for medical expenses
- Pay claims or reimburse yourself for qualified medical expenses

HealthEquity is available 24/7/365

Online: www.anthem.com or www.healthequity.com

Toll Free: 877-713-7712

Your Smart Phone: HealthEquity App



Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000816

# Flexible Spending Accounts

 7

Flexible Spending Accounts (FSAs) are a great way to save on income taxes, and they can help you budget for health care and dependent care expenses. These accounts let you set aside pre-tax dollars to pay for qualified health care and dependent care expenses. You may contribute a minimum of $120 up to $2,650 for a Health Care FSA or up to $5,000 for a Dependent Care FSA. For those enrolled in the HSA Plus or HSA Basic, you may not enroll in the medical FSA, but you may participate in the dependent care FSA.

- The Health Care Spending Account is for medical, dental, vision and prescription drug expenses not paid by another plan. Based on IRS rules, employees who enroll in the HSA Plus or Basic Plans are *not* eligible for this account.

- The Dependent Care Spending Account is for dependent care expenses — such as for child daycare or elder care — incurred while you work (and, if you are married, while your spouse works or attends school full-time). IRS rules do not allow use of a debit card for dependent care expenses.

Step 1   Elect your contribution amount for each FSA during Open Enrollment.

Step 2   Contributions are deducted from your pay before taxes and placed into the appropriate account.

Step 3   When you incur an eligible medical expense, you can either use an FSA debit card or pay out-of-pocket. (Even if you pay by debit card, save your receipts for your tax records.)

Step 4   If using a claim form, you are reimbursed with tax-free money from your FSA.

### Instant Access to Your Health Care FSA — Debit Card

For added convenience, you will receive a Welcome Kit and Debit Card from HealthEquity when you enroll in the Health Care FSA. This gives you a hassle -free way to pay for eligible expenses. Your debit card draws money directly from your Health Care FSA. However, to meet IRS guidelines, documentation may still be required.

### Cut Your Out-of-Pocket Expenses

The most valuable advantage of FSAs is their tax-free feature. Contributions you make to your FSA are taken out of your paycheck before federal and state (and sometimes local) income taxes and Social Security taxes are withheld. You also do not pay taxes on the amounts reimbursed to you for eligible expenses.

### IMPORTANT REMINDER

The Patient Protection and Affordability Care Act (PPACA) and Health Care and Education Reconciliation Act changed the rules for Health Care Spending Accounts.

- As of January 1, 2011 you may NOT use your FSA to purchase over-the-counter medications.

- The health care FSA maximum is $2,650.

IMPORTANT—IRS rules do not permit automatic substantiation of claims for over-the-counter medicines or drugs covered by a prescription. You will be required to provide a receipt to HealthEquity to substantiate all claims for these types of transactions.

Non-over-the-counter prescriptions are still eligible for purchase through an FSA or HSA and may be auto substantiated.

23

UA-CL-AD&D-000817



# BlueScope Wellbeing Program

Many of us know what we *should* be doing to live a healthy lifestyle. But it isn't always easy, which is why we want to help.

Quest Diagnostics is an industry leader in the collection of biometric data. BlueScope has partnered with Quest to allow free screenings of all BlueScope employees. Additionally, spouses and domestic partners that are enrolled in a BlueScope Anthem plan are eligible for this free screening as well. The Quest screening provides valuable information regarding cholesterol and glucose levels as well as BMI and blood pressure.

Should you find that your Quest results show that you have a BMI of 25.0 or greater and a fasting blood glucose of 100mg/dl or greater you may be eligible for the Omada program. This program is free also to Anthem employees and spouses and domestic partners that qualify and will provide them the tools to make changes to their health that can last a lifetime!

## How to Complete Your Wellness Screening



**IMPORTANT**

**SPOUSES AND DOMESTIC PARTNERS:** When registering for Quest make sure to enter your unique ID as the employee number + S (ex. 1234S).

Spouse and Employee email addresses must be different!

### At a Patient Service Center (PSC)
**Quest Diagnostics has 2,200 convenient PSC locations across the country.**



Schedule a PSC appointment at **My.QuestForHealth.com**

- All Employees are eligible
- Spouses and domestic partners enrolled in an Anthem medical plan are eligible
- Registration Key- bluescope
- Returning users login with your username and password
- Be Tobacco Free, select the optional cotinine test to possibly earn credits towards health insurance premiums or cash.
- Fast 9-12 hours prior to screening; take any regularly scheduled medications as usual; drinking water is permissible and recommended during the fasting period
- You will receive an email when your results are ready to view online
- Your printed report will arrive in the mail 2-3 weeks after your screening

### With a Physician
**If you are unable to make an onsite or PSC appointment, have your physician complete a Physician Results Form.**



Download a Physician Results Form at **My.QuestForHealth.com**

- All Employees are eligible
- Spouses and domestic partners enrolled in an Anthem medical plan are eligible
- Registration Key- bluescope
- Returning users login with your username and password
- Use Registration Key: bluescope
- Ask your doctor to complete it using recent lab results. Your doctor may charge a fee to complete the form.
- Form needs to include all required screening values and signatures.
- Make sure your doctor faxes the form to Quest Diagnostics
- Your printed report will arrive in the mail 2-3 weeks after your screening.

24

UA-CL-AD&D-000818

# THREE STEPS TO RECEIVE PREMIUM CREDITS

## 1: Complete a Biometric Screening

| | |
|---|---|
| What | Anthem employees, complete a Biometric Screening to be eligible for premium credits—$10 per bi-weekly pay period. All other employees, earn a one-time $50 cash incentives for the completion of a Biometric Screening. |
| Why | Knowing your numbers is an important step in the wellbeing journey. Results of a biometric screening can help recognize various diseases or health problems, and allows you to work with your physician to lower health risks for certain conditions. |
| How | Employees may use a Physicians Result Form to complete the testing with a personal physician OR contact Quest Diagnostics at 855-623-9355 or My.QuestForHealth.com to complete the testing at a Quest Patient Service Center. |

## 2: Be Tobacco Free

| | |
|---|---|
| What | For Anthem employees, be Tobacco Free to be eligible for a $10 bi-weekly premium credit. All other employees, earn a one-time $50 cash incentives for being Tobacco Free. Employee must be Tobacco Free and pass a cotinine test to earn credits towards health insurance premiums or cash. Spouses are not eligible for this screening. *Note: tobacco users may still earn this portion of the premium credit by completing a tobacco cessation course.* |
| Why | Tobacco use is the leading cause of preventable illness and death in the United States. It causes many different cancers as well as chronic lung diseases, heart disease, pregnancy problems and many other serious health problems. |
| How | Employees may use a Physicians Result Form to complete the testing with a personal physician OR contact Quest Diagnostics at 855-623-9355 or My.QuestForHealth.com to complete the testing at a Quest Patient Service Centers. |

## 3: Register for Castlight

| | |
|---|---|
| What | Anthem employees and spouses MUST register with Castlight to receive Premium Credits. Castlight registration does not apply to non-Anthem members. |
| Why | Castlight allows employees to become better consumers of their medical and pharmacy spend. With Castlight, employees and spouses and even dependents ages 18 and over on the Anthem plan, are able to search for quality medical providers and pharmacies that offer the same services, but at a lower price. Castlight also provides helpful wellness reminders, and access to unlimited |
| How | Register at MyCastlight.com/BlueScope or download the Castlight app<br> |

## Incentive Summary

| | |
|---|---|
| What | Anthem employees will be eligible for $10 per bi-weekly pay period for completing step 1 and $10 bi-weekly for completing step 2; up to $520 per year. Conditional upon completing step 3!<br><br>Non-Anthem employees will receive a one-time $50 cash incentive on their paycheck for step 1 |

Claimant Name: Kathy  Williams       Claim #:  14865967

UA-CL-AD&D-000819



# castlight

## Take the mystery out of your healthcare

**Castlight is your personalized healthcare assistant.**
We'll help you get more out of your health plan and benefits so you can experience healthcare in a whole new way.

Use Castlight to:



Get peace of mind

Find doctors you'll love

Feel great about your benefits

### Register for Castlight at


mycastlight.com/bluescope

 omada

**HERE'S WHAT MAKES US DIFFERENT:** We combine the science of behavior change with unwavering personal support, so you can make changes that actually stick. It's an approach shown to reduce risk factors for type 2 diabetes and heart disease.



**HEALTH COACH ON YOUR SIDE**
Your professional health coach is there for added support — on your best days and your worst.



**TOOLS TO MOTIVATE YOU**
We'll mail you smart technology to track your progress, and reveal what is (and isn't) working for you.



**WILLPOWER COMES INCLUDED**
You can't do this alone. You'll gain the support of a small group of peers just like you for encouragement and empathy at every step.



**INFORMATION BECOMES INSIGHT**
Each week, you'll learn rules for better eating, fitness, sleep, and stress management that will have an immediate impact on the choices you make.

Health & Wellness |  Quest

**GREAT NEWS:** BlueScope will be offering Omada—a new and innovative online program—in partnership with Quest Diagnostics. Omada surrounds you with the tools and support you need to build healthy habits and reduce the risk of type 2 diabetes and heart disease. What's more, our published results show the average participant loses over 10 pounds along the way.

**MORE GREAT NEWS:** BlueScope will cover the entire cost of the program for employees, spouses, and domestic partners who meet Omada's clinical eligibility criteria and are enrolled in the BlueScope Anthem medical plan.

**TO FIND OUT IF YOU QUALIFY:**

Register for a Quest Diagnostics biometric screening at My.QuestForHealth.com

Get your biometric screening at one of Quest Diagnostics's onsite events starting in September, or at your local Quest Diagnostics Patient Services Center.

If your Quest Diagnostics biometric screening results indicate you'd be a good fit for the Omada program (BMI of 25.0 or greater, AND fasting blood glucose of 100mg/dL or greater), you'll receive emails from the Omada team inviting you to apply. It may take a few weeks after you get your screening results before you begin to receive emails from Omada.

26

# Wellness Program Notices

## HIPAA Notice of Reasonable Alternative Standards

Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at 866-880-3301 and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

## EEOC Notice Regarding Wellness Program



BlueScope Wellbeing is a voluntary wellness program available to all employees. The program is administered according to federal rules permitting employer-sponsored wellness programs that seek to improve employee health or prevent disease, including the Americans with Disabilities Act of 1990, the Genetic Information Nondiscrimination Act of 2008, and the Health Insurance Portability and Accountability Act, as applicable, among others. If you choose to participate in the wellness program you will be asked to complete a biometric screening, which will include a blood test for glucose and cholesterol levels. You are not required to participate in the blood test or other medical examinations.

Spouse's and Domestic Partners enrolled in the Anthem plans are eligible for a free biometric screening through Quest Diagnostics!

Participating in the Quest screening can also make you eligible for the Omada program!

However, employees who choose to participate in the wellness program will receive an incentive of premium credits for completing the biometric screening, being Tobacco Free and registering for Castlight. Although you are not required to participate in the biometric screening, only employees who do so will be eligible to receive premium credits.

If you are unable to participate in any of the health-related activities or achieve any of the health outcomes required to earn an incentive, you may be entitled to a reasonable accommodation or an alternative standard. You may request a reasonable accommodation or an alternative standard by contacting BlueScope HR at 866-880-3301.

The results from your biometric screening will be used to provide you with information to help you understand your current health and potential risks, and may also be used to offer you services through the wellness program, such as Omada, Castlight and other Wellness initiatives. You also are encouraged to share your results or concerns with your own doctor.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000821

## Protections from Disclosure of Medical Information

We are required by law to maintain the privacy and security of your personally identifiable health information. Although the wellness program and BlueScope may use aggregate information it collects to design a program based on identified health risks in the workplace, BlueScope Wellbeing will never disclose any of your personal information either publicly or to the employer, except as necessary to respond to a request from you for a reasonable accommodation needed to participate in the wellness program, or as expressly permitted by law. Medical information that personally identifies you that is provided in connection with the wellness program will not be provided to your supervisors or managers and may never be used to make decisions regarding your employment.

Your health information will not be sold, exchanged, transferred, or otherwise disclosed except to the extent permitted by law to carry out specific activities related to the wellness program, and you will not be asked or required to waive the confidentiality of your health information as a condition of participating in the wellness program or receiving an incentive. Anyone who receives your information for purposes of providing you services as part of the wellness program will abide by the same confidentiality requirements. The only individual(s) who will receive your personally identifiable health information is (are) Quest Diagnostics, Truven and Omada Health in order to provide you with services under the wellness program.

> Quest Screenings and the Omada program are voluntary and confidential. BlueScope adheres to all HIPAA privacy and security laws.

In addition, all medical information obtained through the wellness program will be maintained separate from your personnel records, information stored electronically will be encrypted, and no information you provide as part of the wellness program will be used in making any employment decision. Appropriate precautions will be taken to avoid any data breach, and in the event a data breach occurs involving information you provide in connection with the wellness program, we will notify you immediately.

You may not be discriminated against in employment because of the medical information you provide as part of participating in the wellness program, nor may you be subjected to retaliation if you choose not to participate.

If you have questions or concerns regarding this notice, or about protections against discrimination and retaliation, please contact BlueScope Corporate HR at 866-880-3301.

28

UA-CL-AD&D-000822

# MetLife Dental Coverage

Regular dental care is important to your overall health. To encourage you to get the dental care you need, BlueScope's dental coverage covers 100% of preventive services (such as exams, cleanings, x-rays or fluoride) with no deductible.

After a deductible, the Plan covers 80% of charges for basic services (such as fillings, crowns and root canals) and 50% of major services (such as bridgework, implants or dentures), up to the annual maximum benefit. In addition, the Plan includes coverage for orthodontia.

The following information summarizes the dental coverage available:

| COVERAGE TYPE | PDP and PDP Plus IN-NETWORK FEES | OUT-OF-NETWORK R&C FEES |
|---|---|---|
| Type A — cleanings, oral examinations | 100% | 100% |
| Type B — fillings | 80% | 80% |
| Type C — bridges and dentures | 50% | 50% |
| Type D — orthodontia | 80% | 80% |
| Deductible: | In-Network | Out-of-Network |
| Individual | $75 | $75 |
| Family | $225 | $225 |
| Annual Maximum Benefit: | In-Network | Out-of-Network |
| Per Person | $1,500 | $1,500 |
| Orthodontia Lifetime maximum | In-Network | Out-of-Network |
| Per Person | $1,500 | $1,500 |

You do not need an ID card when you go to the dentist. Provide your name, SSN and group number — 300138. It's that easy! If you prefer to carry something with you, feel free to cut out the card below to take with you.

## SMILE AND SAVE WITH NETWORK DENTISTS!

Unlike the medical plan, your dental coverage is not based on whether you visit a network dentist. However, network dentists have agreed to offer discounts, so you'll pay less when you visit a dentist who participates in the MetLife network. To find a network dentist visit: www.metlife.com/mybenefits or call: 800-942-0854

## PDP AND R&C — WHAT DO THEY MEAN?

**PDP and PDP Plus Fees**

- Stands for MetLife's Preferred Dentist Programs
- PDP fees refer to the fees that participating PDP and PDP Plus dentists have agreed to accept as payment in full, subject to any copayments, deductibles, cost sharing and benefits maximums

**R&C Fees**

Refers to the Reasonable and Customary charge, which is based on the lowest of:

- The dentist's actual charge
- The dentist's usual charge for the same or similar services, or
- The charge of most dentists in the same geographic area for the same or similar services as determined by MetLife

---

**MetLife**
**PDP NETWORK**

| Employee Name | Employee ID |
|---|---|
| **BlueScope Steel North America** | **300138** |
| Group Name | Group Number |

This card is not a guarantee of coverage or eligibility. See reverse side for important plan information.

**www.metlife.com/mybenefits**

- Locate a participating dentist.
- Verify eligibility and plan design information.
- Review claim status and claim history for your entire family.
- View and print processed claims with one click.
- Obtain claims forms and educational information (including interactive risk assessment).
- Get instant answers to Frequently Asked Questions.
- Access trained customer service representatives.

**1-800-942-0854**

- Virtually 24 hours a day, 7 days a week to confirm eligibility, order claim forms or request dentist directories
- Monday-Friday, 8 a.m. to 11 p.m., Eastern Time, to speak with a live customer service representative
- MetLife Dental Claims P.O. Box 981282 El Paso, TX 79998-1282
- For International Dental Travel Assistance call 1-312-356-5970 (collect)

---

UA-CL-AD&D-000823

# 10 EyeMed Vision Coverage

**NEED CONTACT LENSES?**



Go to
www.contactsdirect.com.



Your contact lens
allowance will
apply right in the
shopping cart.



Make your purchase,
contact lenses will ship in
the blink of an eye, after
the prescription is verified.



Shipping is free.*

Eye exams can detect conditions that if untreated, could impact not just your eyesight, but your overall health. For example, eye exams can identify early signs of conditions like heart disease, diabetes and high blood pressure. That's why BlueScope encourages all employees to obtain a preventive eye exam every year. An annual eye exam is covered 100% as part of preventative care through the medical plan, however, the preventative eye exam does not cover contact lens fittings. Depending on the coverage you elect, the EyeMed vision coverage can help pay for exams, eyeglasses and contacts.

You can choose from two EyeMed plan options:

- Materials Only option — helps pay only for eyeglasses and contacts according to a schedule of benefits. Since BlueScope's medical plans cover 100% of the cost of annual eye exams provided by a network doctor, employees who enroll in a medical plan can save money on vision coverage by choosing this plan.

- Exam and Materials option — covers the cost of annual eye exams provided by a network doctor with a $10 copay, and helps pay for eyeglasses and contacts according to a schedule of benefits. Employees who do not enroll in a BlueScope medical plan, wear contacts or who desire additional vision coverage, should consider enrolling in this vision plan.

Both plans are part of the Access Network administered by EyeMed Vision Care, which offers a nationwide network of thousands of independent and retail providers — including LensCrafters, Pearle Vision, Sears, Target and JC Penney.

You also have the option of choosing an out-of-network provider, but you will not have the advantage of network discounts. In addition, you'll be required to pay the full cost out-of-pocket, and EyeMed will reimburse you the amount that would have been paid to a network provider.

Additional benefits when you are enrolled in either EyeMed plan:

- Contacts Direct — EyeMed members now have the ability to purchase contact lenses online and apply their contact lens benefit at the same time when using ContactsDirect. You must have an unexpired prescription to use this benefit. For additional information visit: www.contactsdirect.com

*ContactsDirect will abide by state laws that pertain to contact lens. There are some temporary limitations in Kansas and Arkansas that ContactsDirect is working through.

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000824

Here are some highlights of each vision option:

| | EXAM AND MATERIALS | | MATERIALS ONLY | |
| --- | --- | --- | --- | --- |
| | In-network | Out-of-network | In-network | Out-of-network |
| Examination with Dilation as Necessary | You pay a $10 copay | Plan pays up to $35 | N/A | N/A |
| Standard Contact Lens Fit and Follow-Up | $0 copay. Paid-in-full fit and two follow-up visits | N/A | N/A | N/A |
| Premium Contact Lens Fit and Follow-Up | 10% off Retail | N/A | N/A | N/A |
| Eyeglass Lenses (Standard Plastic) | You pay a $10 copay for most lenses | Plan pays $25 to $55, depending on type of lenses | You pay a $10 copay for most lenses | Plan pays $25 to $55, depending on type of lenses |
| Frames: Any available frame at provider location | Plan pays up to $130 and 20% of a balance over $130 | Plan pays up to $60 | Plan pays up to $130 and 20% of a balance over $130 | Plan pays up to $60 |
| Lens Options | You pay a $15 – $45 copay, depending on lens options | N/A | You pay a $15 – $45 copay, depending on lens options | N/A |
| Frequency | Exam—Once every Calendar Year | | Exam—Not covered | |
| | Lenses or Contact Lenses—Once every Calendar Year | | Lenses or Contact Lenses—Once every Calendar Year | |
| | Frames—Once every Calendar Year | | Frames—Once every Calendar Year | |
| Contact Lenses (In place of eyeglass lenses and frame) | | | | |
| Medically necessary | No charge: Plan pays 100% | Plan pays up to $200 | No charge: Plan pays 100% | Plan pays up to $200 |
| Conventional | Plan pays up to $120 and 15% of a balance over $120 | Plan pays up to $96 | Plan pays up to $120 and 15% of a balance over $120 | Plan pays up to $96 |
| Disposable | Plan pays up to $120 | Plan pays up to $96 | Plan pays up to $120 | Plan pays up to $96 |
| Vision Card | Use EyeMed vision card for eye exams, glasses and contacts | | Use EyeMed vision card only for glasses and contacts. If covered under a BlueScope medical plan, use Anthem BCBS health card for eye exams. | |

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000825

# 11 ◆ Short-Term and Long-Term Disability

Disability coverage provides your family with a source of income if you are unable to work due to a non-work-related illness or injury. BlueScope offers two types of disability coverage:

### Short-Term Disability

Following one year of active employment, employees working 32 hours or more a week are eligible for Short-term disability benefits. Short-term disability protects your income if you are disabled for a short period of time. The company will provide coverage up to 100% of your base salary for up to eight weeks in the event you are sick or injured and unable to work. If you are unable to return to work after eight weeks, the company will continue coverage at 75% of your base salary for an additional four weeks, and 60% of base salary thereafter. Benefits are not to exceed twenty-six weeks within a rolling year. This benefit requires certification from a medical professional and is subject to approval from UNUM disability. Short-Term Disability is offset by any state disability payments you receive. Please refer to the policy for additional details.



Protect your income with disability coverage.

### Long-Term Disability

Long-term disability coverage typically begins after the short-term disability period ends. It pays up to 60% of the base pay you were earning at the time your disability began, until you return to work or reach normal retirement age up to a maximum period of payment, dependent upon the age at which you become disabled. Long-term disability benefits will be reduced by the amount of other income you may receive, such as Social Security or worker's compensation. If you elect this coverage, the company will pay 50% of your cost for long-term disability coverage.

# Filing a Short-Term Disability or Family Medical Leave (FMLA) Request

You will initiate all short-term disability and FMLA requests through the UNUM benefits center. The number is 877-339-7454. UNUM will review your request and approve or deny in conjunction with company policy, and State and Federal laws. They will base their decision on the information you provide in addition to information they may request from your health care provider. UNUM will notify the appropriate HR personnel of the determination. Please refer to the UNUM Filing Brochure available from HR. Full details of FMLA guidelines are documented in the policy available from your local HR representative.

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000826

# Life and Accident Insurance

Life and accident insurance are an important part of your financial security, especially if others depend on you for support. BlueScope offers several insurance benefits through UNUM to help protect your family from financial hardship if you become injured in an accident, become terminally ill or die.

## Basic Life and AD&D Insurance

Life insurance pays your beneficiary if you die. AD&D insurance pays your beneficiary if you are seriously injured or die as a result of an accident. The company will provide Basic Life and Basic AD&D coverage up to 1x your annual salary for both benefits.

## Voluntary Life and AD&D Insurance

For additional income protection, you may choose to buy Voluntary Life Insurance and AD&D Insurance for yourself, your spouse and/or dependent children.

### Voluntary Employee Life Coverage

You may elect coverage for yourself at the following levels, up to a combined maximum of $1,000,000 for both Basic and Voluntary coverage:

- 1 x annual salary
- 2 x annual salary
- 3 x annual salary
- 4 x annual salary



**EVIDENCE OF INSURABILITY**

An increase in voluntary life coverage requires completion of Evidence of Insurability (EOI).

### Voluntary Spouse Life Coverage

You may purchase Voluntary Spouse Life coverage in increments of $5,000. Your Spouse Life coverage may not exceed your combined Basic and Voluntary Life coverage.

### Voluntary Dependent Child(ren) Life Coverage

This coverage option provides a benefit of $10,000 for each of your dependent children. You do not need to elect Voluntary Employee Life Coverage to purchase Voluntary Dependent Child(ren) Life coverage.

### Voluntary Employee or Family AD&D Coverage

You may elect coverage for yourself or for yourself and your family members in increments of $25,000 up to a maximum of $600,000. If you elect the family option, the benefits for your family members are as follows:

- Spouse: 60% of the amount you elect for yourself
- Child(ren): 20% of the amount you elect for yourself for each dependent child

**33**

UA-CL-AD&D-000827

# 13 ◆ Vacation Purchase Plan

We will once again offer vacation purchase in 8 hour increments with a minimum of 40 hours and a maximum of 80 hours. (Note—should there be a variation from this offer—your local Human Resource team will advise. Employees eligible for 5 weeks of vacation are limited to purchasing 40 hours.)

The cost for this plan is equal to a percentage of your base per pay period salary and is dependent upon the number of hours you purchase. The deduction is pro-rated for mid-year enrollments. Deductions will be taken on a pre-tax basis.

Vacation purchase hours will be tracked separately from company provided vacation - but used in accordance with the company vacation policy.

## Vacation Purchase Earnings

Vacation purchase earnings are excluded when calculating your 401(k) contribution, the company contribution to your 401(k), and from any bonus calculation.

Please note that if you terminate from BlueScope with a vacation purchase balance (deductions must be greater than vacation used), you will be reimbursed for the balance. If you have a negative vacation purchase balance, BlueScope will deduct the amount you owe from your final paycheck.

The IRS requires that all company vacation be taken before any purchased vacation can be taken. As of December 31st, you must have a company vacation balance of zero if you have used vacation purchase during the year. We will review this usage on an annual basis. If you have a company vacation balance and no vacation purchase balance at year end, we will adjust the vacation usage appropriately.

Vacation purchase must be used in the same calendar year as purchased. Unused vacation purchase must be paid out in the same calendar year - it cannot be carried forward or paid out in the next calendar year. You must notify HR by December 8th if you do not intend to use all of your vacation purchase before the end of the calendar year. You will be paid your unused balance on your last paycheck of the year.

Claimant Name: Kathy Williams    Claim #:  14865967

UA-CL-AD&D-000828

# Employee Assistance Program (EAP)

Anthem's Employee Assistance Program (EAP) provides counseling referral services, crisis assistance, legal and financial consultations, and care resources 24 hours a day, 365 days a year for you and your eligible household members. You do not have to be enrolled in the medical plan to take advantage of EAP services.

The EAP can also refer you to a licensed professional in your area for a face-to-face consultation. All EAP services are at no additional cost to you. Your participation is voluntary and confidential.

**To access the EAP:**

- Call toll-free (866-621-0554) and speak to a representative
- Log on anytime of the day or night to the new Anthem EAP Member Center (www.anthemEAP.com). It is easier than ever to access EAP information online!

**Some of the EAP Services Provided:**

| Parenting | Mental Health |
|---|---|
| Adoption | Depression |
| Child-Care Provider | Addiction and Recovery |
| Adult Care Givers | Travel and Leisure |
| Adults with Disabilities | Pet Care |
| Grief and Loss | Stress Management |
| Healthy Living | Career Development |
| Eating Right | Legal Forms and Wills |

**REGISTER FOR SERVICES AT anthemEAP.COM**

Sign up for services.

Find a local Anthem EAP provider.

Get recommendations, resources and tools.

- Go to www.anthemEAP.com.
- Select the "Employees" tab at the top of the screen.
- Select the "Login to EAP services" link.
- Enter "BlueScope Steel" in the company name box. Click "Login".

**Confidential and Discreet** — There's no need to worry about your privacy and confidentiality when you use any of the EAP services; either online or through the website. No one but you will know what services you've signed up for and are using.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000829

# 15 ◆ How to Enroll in Your Benefits



1. Enter https://portal.adp.com in your web browser.
2. If you are new to the site or forgot your username and password, first complete the steps outlined on page 37.
3. Enter your User name and Password and click "SIGN IN".
4. Click the "Benefits" tab and then select "Health & Welfare". (Note—If you are a manager, you will first need to switch from "Manager" to "Employee" view using the drop down on the top left of the screen.)
5. You will be directed to the Benefits Enrollment site where you can initiate a change in benefits under "Report an Event". If you have an opportunity to enroll, you will see a link under the Enrollment section. For example—open enrollment will have a link during the enrollment period "Annual Enrollment—1/1/20XX".
6. You will see your defaulted enrollments based on your eligibility and current elections (if applicable).
7. You make changes for each benefit choice listed on the left side of the screen.
8. When your elections are complete, click the "Confirm Elections" button. Read the Certification Statement and click "I Agree".
9. Enter your work or personal email address if you wish to receive an email confirmation statement.
10. You will receive a confirmation screen which includes a confirmation number in RED at the top of the screen. You may select the print button at the bottom of the screen for a printout of your elections.

### If you forgot your User ID and/or Password....

1. Navigate to https://portal.adp.com
2. Click the "Forgot User ID/Password?" link
3. Enter the requested information. Important! The information you enter must be exactly how it appears on your pay voucher.
4. Password must be at least 8 characters and contain at least 1 letter and 1 number. Passwords are also case sensitive. You will receive confirmation that your password has changed.
5. You may now login to the portal using your User ID and Password.

**Important!**



2018 open enrollment changes may be made November 6-20, 2017.

All new hire and life event changes must be made within 31-days of event.

You will have access to view your benefit elections throughout the year. Simply log into https://portal.adp.com and select the Benefits tab.

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000830

## ADP Portal Registration—NEW USERS

Follow these registration instructions if you are new to the ADP Portal.

1. Click the "SIGN UP" button
2. Enter the Registration Pass Code "BLUESCOPE-ADP" and then click "Next"
3. When prompted "Do you want to setup an account with BLUESCOPE STEEL?", select "YES"
4. Enter the required information including "First Name", "Last Name", "Last 4 Digits of SSN" and "Date of Birth". Then select "I'm not a robot" and click "Next".

> **IMPORTANT!** Your First Name and Last Name must match your pay voucher EXACTLY. Please refer to the spelling and punctuation on your pay voucher if you have trouble registering.

5. Choose from one of two options:
   1– To get a personal registration code, click "GET CODE". ADP will send you an email containing an automated access code. Enter this code into the "Personal registration code" field and click "Next". OR
   2—Select the "I want to answer identity questions instead" check box and click "Next".
6. Enter your primary email address (required). Enter a secondary email address and mobile phone number (optional). If you would like ADP to send you text messages, you may confirm by clicking the check box.
7. Your user ID has been automatically generated. Choose a unique password.
8. If you selected to answer security questions, select and answer security questions and select "REGISTER NOW".
9. Congratulations! You will receive confirmation that your registration is complete.

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000831

# 16 BlueScope Employee Savings Trust (BEST) 401(k)

Are you saving for retirement? Do you know that some people spend more time planning a vacation than they do planning for retirement? Did you know that according to some studies 401(k) plan participants need an average of 13.5% in contributions to retire without reducing their standard of living?

Saving early, often, and as much as you can gives your money time to potentially grow. Contributing to the BEST 401(k) is one way to do that. Your contributions help reduce your taxable income today and your money can potentially grow tax deferred until you withdraw it.

## Building Your Savings

You can build your retirement savings in the following ways:

- **Personal Contributions** – You decide how much you wish to contribute. You can increase or decrease your personal contributions in 1% increments from 1% to 50%. Personal contributions are automatically deducted from your paycheck before taxes are taken out. This lowers your taxable income and the amount of tax you pay. The maximum contribution limit is $18,500 for the 2018 plan year.

- **Catch-up Contributions** – If you are age 50 or over, you can make an additional catch-up contribution each year. The maximum catch up contribution is $6,000 for the 2018 plan year.

- **BlueScope Matching Contributions** – BlueScope will match 50% up to the first 6% of your personal contribution.

- **BlueScope Discretionary Contributions** – BlueScope may make safe harbor and discretionary contributions to your BEST 401(k) account each pay period. BlueScope makes this contribution no matter how much you contribute, and even if you don't contribute.

Don't Delay...
Contact Fidelity Today!

Fidelity NetBenefits offers a range of retirement tools to help plan retirement.

1. Go to: www.401k.com
   If you are a first time user, click "Register".
   ...OR...
2. Call Fidelity at:
   800-835-5092

Consider contributing 6% to your retirement account to get the full company match. It's like getting "free" money! Go for the max if you can.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000832

## How do I choose investments for my retirement savings?

Diversifying your mix of investments is important. Even if some of your investments decline in value, some may be growing and that may be able to help reduce the overall impact of poor market performance. There are three key steps:

1. Have a target asset mix – Based on your investing goals, determine the appropriate mix of stocks, bonds, and short term investments. Your financial situation, tolerance for risk and volatility, and when you expect to use the money will help you determine this.
2. Choose investments – Diversify within the assets categories (U.S. and international stocks, bonds, and short term investments).
3. Monitor your asset mix – Monitor your asset mix and rebalance at least annually, or whenever your personal or financial circumstances change. The Plan offers an automatic rebalance feature in which you can choose to enroll or Fidelity has a Portfolio Review tool to help you manage your own investments.

## Growing Your Savings

Building your tax-deferred savings in your BEST 401(k) account is just the first step. To make sure your savings grow enough to provide a secure retirement income, you need to invest your money wisely. Making the right investment choices can protect your savings from inflation and investment losses. You have to find the right balance for you. You can use the modeling tools on Fidelity NetBenefits by going to www.401k.com. The Plan offers two different approaches to investing:

- Fidelity Freedom K Funds, or
- Directing your own investments

The Fidelity Freedom K Funds are target date funds which allocate assets according to your retirement date. You simply select a fund with a target retirement date closest to when you retire. The fund managers choose funds that provide a balance of risk and potential return that is appropriate for the amount of time before your target retirement date. Generally, funds with later target dates have greater equity exposure and more risk than those with earlier target retirement dates.

The BEST 401(k) Plan also offers you the chance to invest in a range of other funds offered. Each fund invests in a particular investment type, such as bonds, stocks of large companies with potential high rates of growth, or stocks of international companies. Each fund offers different levels of risk. Before making any investment decision, you should carefully consider the investment objectives, risks, charges, and expenses. Keep in mind that investing involves risk. The value of your investment will fluctuate over time and you may gain or lose money. It is your responsibility to select and monitor your investments to make sure they continue to reflect your financial situation, risk tolerance, and time horizon. Most investment professionals suggest that you review your investment strategy at least annually or when your situation changes. You may also want to consult with an investment advisor regarding your specific situation.

Protect Yourself and Your Retirement. Make Sure to Name a Beneficiary!

1. Go to: www.401k.com
2. Enter your Username and Password
3. Click on "Menu"
4. Click on "Profile"
5. Click on "Beneficiaries"
6. Scroll down to the Beneficiary section to confirm or edit your Primary and Contingent Beneficiaries.

Claimant Name: Kathy Williams      Claim #: 14865967

UA-CL-AD&D-000833

## 17 ◆ Benefit Eligibility

### Benefit Eligibility

Your BlueScope benefits are designed to provide coverage for:

* **You** — as an employee of BlueScope regularly scheduled to work at least 30 hours a week are eligible for medical coverage. To be eligible for all other ancillary benefits, you need to be scheduled to work 32 hours or more per week.

* **Your spouse** — defined as your lawful spouse or domestic partner.

  – Domestic partner means a person of the same or opposite sex who has signed the Domestic Partner Affidavit certifying that he or she is your sole domestic partner and has been for 24 months or more. If you and your same sex domestic partner becme legally married, please notify HR so that you may be exempt from imputed income.

  – Legally separated individuals or divorced spouses are not eligible.

* **Your children** — including natural, legally-adopted, legal guardian, domestic partner children and stepchildren. Children must be under the age of 26, or be permanently and totally disabled. Note: Children age 19 to 25 are only eligible for dependent life and AD&D if they are un-married, full-time students.

Proof of dependency (a marriage or birth certificate, legal guardian or adoption papers, court order or university confirmation) is required. In all cases, BlueScope will adhere to all court orders in determining dependent status, such as in a divorce settlement.

### Benefit Changes Allowed by Qualifying Life Events

Your elections remain in effect for the entire calendar year unless you experience a qualifying life event and notify your HR representative *within 31 days* of the event (no exceptions).

Examples of qualifying life events include:

During this 31-day window, you can add or delete dependent(s) from your coverage. For medical, dental and vision coverage, you may change your coverage level but not your plan. For example, if you get married, you can change from Individual coverage level to Individual + Spouse coverage. You will have the opportunity to change plans during the next Open Enrollment.

To make a benefits change, you will be required to provide support documentation (e.g., marriage certificate, birth record or a divorce decree).

* *Marriage*
* *Birth of a Child / Adoption*
* *Divorce or legal separation*
* *Dependent Gains or Loses Other Coverage*

---

**IMPORTANT INFORMATION ABOUT DEPENDENT COVERAGE**

Please verify that your dependents meet all eligibility criteria. BlueScope reserves the right to audit dependent coverage at any time. Coverage of an ineligible dependent will result in termination of benefits and an assessment of all benefits paid for the ineligible member.

40

UA-CL-AD&D-000834

# HSA's and Secondary Coverage

 **18**

**Q. Can I be enrolled in a BlueScope HSA plan if I am enrolled in secondary medical coverage?**

A. You can be enrolled in a HSA Plan, but you cannot receive the benefit of pre-tax (or even post-tax) contributions into your HSA if your secondary plan is not a high-deductible health plan. So you cannot receive any employer contributions, including Wellbeing incentives, or contribute yourself into an HSA.

**Q. Do I have to enroll in Medicare A when I become eligible at age 65?**

A. No. If you are employed and have medical insurance through your employer, you can decline Medicare Part A until you retire, unless you are already receiving Social Security or Railroad Retirement benefits. In that case, Medicare Part A is automatic when you turn age 65. For more information, please refer to the CMS Medicare & You Handbook: www.medicare.gov/pubs/pdf/10050.pdf. With each person's needs being different, we encourage you to speak to your local Medicare/Social Security office as well as your tax advisor to discuss your individual needs.

**Q. If my spouse is enrolled in a secondary medical plan (but I am not), can I still participate in the HSA plan?**

A. Yes. Employees can still participate in the HSA Medical plan and also receive the benefit of pre-tax payroll HSA contributions and employer HSA contributions. Your HSA contribution limit will continue to be based on your HSA Medical plan coverage tier (self-only or family).

**Q. If I am a veteran and receive benefits from the Veterans Administration, is that considered secondary coverage?**

A. The IRS states that VA benefits are not considered secondary coverage; however, they also state that you cannot make any HSA contributions or receive employer HSA contributions within three months of receiving VA benefits. For example, if you go to a VA hospital on January 1st, then you cannot receive or make contributions to your HSA until April.

**Q. Can I enroll in the HSA Medical plan if I have coverage through my spouse's employer or through my parent's plan?**

A. If you have coverage through a spouse's or parent's _HSA plan,_ you may enroll in the BlueScope HSA Medical plan. However, married couples' combined HSA contributions cannot exceed the IRS limit. If your spouse's or parent's plan is not an HSA-compatible HDHP, you can be enrolled in the HSA Medical plan, but you cannot receive the benefit of pre-tax (or even post-tax) contributions to your HSA if the secondary medical coverage is not a high-deductible health plan (HDHP). So you can enjoy the reduced premiums and plan design of the HSA Medical plan, but you will not be able to make any HSA contributions or receive any employer HSA contributions, including Wellbeing Quarterly Incentives.

---

## Important!

If you are enrolled in a secondary medical coverage such as Medicare part A and B, Medicaid, TRICARE, state-sponsored medical program, or have coverage through a spouse's or parent's plan, please review the questions to the left to see if you are eligible to participate in an HSA plan.

BlueScope encourages all employees to discuss their individual medical status with their Tax Advisor, Social Security Administration or other benefit plan carrier before electing coverage.

---

**41**

Claimant Name: Kathy Williams    Claim #: 14865967

UA-CL-AD&D-000835

# 19 ◆ IMPORTANT NOTICES

## COBRA

**COBRA NOTICE**

Under a Federal law known as "COBRA", most employers sponsoring group health plans are required to offer employees and their families the opportunity for a temporary extension of health coverage (called "Continuation Coverage") at group rates in certain instances where coverage under the plan would otherwise end due to certain "qualifying events". This notice is intended to inform you (and any spouse and covered dependents), in a summary fashion of your rights and obligations under the Continuation Coverage provisions of the law. Both you and your spouse (if you are married) should take the time to read this notice carefully.

### COBRA Qualifying Events

If you are an employee covered by the BlueScope Steel Medical and/or Dental Care Plans (hereinafter referred to as the "Health Plan"), you have a right to choose this Continuation Coverage if you lose your Health Plan coverage because of a reduction in your hours of employment or the termination of your employment (for reasons other than gross misconduct on your part). If you are a retired covered employee you may elect Continuation Coverage if you were to lose Health Plan coverage due to the bankruptcy of your employer.

If you are the spouse of an employee covered by the Health Plan, you have the right to choose Continuation Coverage for yourself if you lose group coverage under the Health Plan for any of the following 5 reasons:

- The death of your spouse; or
- A termination of your spouse's employment (for reasons other than gross misconduct) or reduction in your spouse's hours of employment; or
- Divorce or legal separation from your spouse; or
- Your spouse becomes entitled to Medicare (Part A or B); or
- Your spouse's employer starts bankruptcy proceedings, and your spouse is a covered retired employee.

In the case of a dependent child of an employee covered by the Health Plan, he or she has the right to Continuation Coverage under the Health Plan for any of the following 6 reasons:

- The death of a parent employee; or
- The termination of the parent/employee's employment (for reasons other than gross misconduct) or reduction in the parent/employee's hours of employment with BlueScope Steel; or
- Parents' divorce or legal separation; or
- A parent who is employed with BlueScope Steel, becomes entitled to Medicare Part A or B; or
- The dependent ceases to be an eligible dependent child under the Health Plan; or
- A parent's employer starts bankruptcy proceedings, and the parent is a covered retired employee.

If you are a child born or placed for adoption with a covered employee during the Continuation Coverage period, you may also elect Continuation Coverage. Your coverage period will be determined according to the date of the qualifying event that gave rise to the covered employee's COBRA coverage.

An increase in the premium or contribution that you must pay (or your spouse or covered dependents must pay) for coverage under the Health Plan that results from one of the above qualifying events constitutes a "loss of coverage".

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000836

## COBRA Notification

Under the law, the employee or a family member has the responsibility to inform the employee's Human Resource Representative of a divorce, legal separation, or child losing "dependent" status under the Plan within 31 days of the later of the event or the date coverage under the Plan would be lost because of the event.

If this notification is not made in a timely fashion, you (and your spouse and covered dependents) will loose any right to Continuation Coverage. BlueScope Steel has the responsibility of informing you (and your spouse and covered dependents if applicable) of your continuation rights in the event of your termination of employment, a reduction in hours, death, or Medicare entitlement.

When your Human Resource Representative is notified by you or by the Company that one of these qualifying events has occurred, the covered individuals (known as "qualified beneficiaries") will be notified of their right to choose Continuation Coverage. Each qualified beneficiary has an independent right to elect Continuation Coverage and will have 60 days from the date coverage would be lost because of one of the events described above, or from the date of notification, to contact the Human Resource Representative and elect Continuation Coverage.

If you or another qualified beneficiary does not choose Continuation coverage within the 60-day period, Health Plan coverage and any continuation rights will end as of the date you and your dependents cease to be eligible for coverage.

If a qualifying beneficiary does elect to continue coverage and pays the applicable premium, then the Company will provide the qualified beneficiary with coverage that is identical to the coverage provided under the Plan to similarly situated non-COBRA beneficiaries, including the opportunity to choose among options during an open enrollment period. If coverage is changed or modified for similarly situated non-COBRA beneficiaries, then Continuation Coverage may be similarly changed and/or modified.

## Eligibility, Premiums and Conversion Rights

You do not have to show that you are insurable to elect Continuation Coverage. However, you must be covered under the Health Plan at the time of a qualifying event in order to be eligible to elect Continuation Coverage (except for children born or placed for adoption with a covered employee during the Continuation Coverage period). BlueScope Steel reserves the right to verify eligibility and terminate Continuation coverage retroactively if you are determined to be ineligible or if there has been a material misrepresentation of the facts.



A qualified beneficiary must pay all of the applicable premium plus a 2% administration charge for Continuation Coverage. These premiums may be adjusted in the future if the applicable premium amount changes. In addition, if the continuation period is extended beyond 18 months due to a Social Security Administration determination of disability. The Company will charge 150% of the applicable premium during the extended period for the disabled qualified beneficiary and any nondisabled qualified beneficiaries in the disabled beneficiary's coverage group. There is a grace period of 30 days for the regularly scheduled monthly premiums. This is the maximum grace period under the Plan.

At the end of the Continuation Coverage period, a qualified beneficiary will be given the option to enroll in an individual conversion health plan under the Health Plan within 180 days, if such conversion plan is available.

Claimant Name: Kathy Williams      Claim #: 14865967

UA-CL-AD&D-000837

## Length of COBRA Coverage

If the event causing a loss of coverage is an employee's termination of employment (other than for reasons of gross misconduct) or reduction in hours, each qualified beneficiary will be afforded the opportunity to maintain Continuation Coverage for 18 months from the date of the qualifying event. A termination that follows a reduction in hours is not a separate qualifying event.

The 18 months of Continuation Coverage may be extended to 29 months if the Social Security Administration determines that, a qualified beneficiary was disabled during the first 60 days of Continuation Coverage, or in the case of a child born to or placed for adoption with a covered employee during a COBRA coverage period, during the first 60 days after a child's birth or placement for adoption. All qualified beneficiaries with respect to the same qualifying event as the disabled qualified beneficiary are entitled to the extension. It is the qualified beneficiary's responsibility to obtain this disability determination from the Social Security Administration, and the responsibility of any of the related qualified beneficiaries to provide a copy of the determination letter to your Human Resource Representative within 60 days of the date of determination and before the original 18 months of Continuation Coverage ceases. If there is a final determination that the qualified beneficiary is no longer disable, your Human Resource Representative must be notified within 30 days of the determination by the qualified beneficiary, and any coverage extended beyond the maximum that would otherwise apply will be terminated for all qualified beneficiaries.

If the original qualifying event causing the loss of coverage was the death of the employee, divorce, legal separation, Medicare entitlement, or loss of "dependent status" of a dependent child under the Health Plan, then each qualified beneficiary will have the opportunity to elect 36 months of Continuation Coverage from the date of the qualifying event.

Claimant Name: Kathy  Williams      Claim #:  14865967

UA-CL-AD&D-000838

## Termination of Continuation Coverage

Under the law, Continuation Coverage that has been elected and paid for will be terminated prior to the maximum continuation period for any of the following reasons:

- BlueScope Steel ceases to provide group health coverage to any of its employee;
- Any premium is not paid in a timely fashion;
- A qualified beneficiary becomes covered after the date of which COBRA was elected, under another group health plan, including a governmental plan, that does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary other than an exclusion or limitation which does not apply to, or has been satisfied under, the Health Insurance Portability and Accountability Act of 1996 (HIPPA);
- A qualified beneficiary becomes entitled to Medicare on a date after the date of the COBRA election;
- A qualified beneficiary who has extended coverage due to a disability is determined by the Social Security Administration to be no longer disabled;
- A qualified beneficiary notifies the COBRA administrator that he/she wishes to cancel Continuation Coverage;
- For cause, such as fraudulent claim submission, on the same basis that coverage could terminate for similarly situated non-COBRA beneficiaries.

If you have any questions about this law, please contact the Human Resource Representative at your location. Also, if you have changed marital status, or, if you or your spouse has changed address, please notify your Human Resource Representative.

The right to verify eligibility and terminate Continuation Coverage retroactively if you are determined to be ineligible or if there has been a material misrepresentation of the facts.

A qualified beneficiary must pay all of the applicable premium plus a 2% administration charge for Continuation Coverage. These premiums may be adjusted in the future if the applicable premium amount changes. In addition, if the continuation period is extended beyond the 18 months due to a Social Security Administration determination of disability. The Company will charge 150% of the applicable premium during the extended period for the disabled qualified beneficiary and any nondisabled qualified beneficiaries in the disabled beneficiary's coverage group. There is a grace period of 30 days for the regularly scheduled monthly premiums. This is the maximum grace period under the Plan.

At the end of the Continuation Coverage period, a qualified beneficiary will be given the option to enroll in an additional conversion health plan under the Health Plan within 180 days, if such conversion plan is available.

**The Taben Group**

COBRA administration is handled through The Taben Group. They may be reached at (800) 675-7341.

IMPORTANT! Make sure you first notify Human Resources for qualifying COBRA events.

Claimant Name: Kathy Williams        Claim #: 14865967

UA-CL-AD&D-000839



# Medicaid and Children's Health Insurance Program (CHIP) Special Enrollment

If you have declined enrollment in BlueScope Steel North America Corporation's health plan for you or your dependents (including your spouse) because of other health insurance coverage, you or your dependents may be able to enroll in some coverages under this plan without waiting for the next open enrollment period, provided that you request enrollment within 30 days after your other coverage ends. In addition, if you have a new dependent as a result of marriage, birth, adoption, or placement for adoption, you may be able to enroll yourself and your dependents, provided that you request enrollment within 30 days after the marriage, birth, adoption, or placement for adoption.

Effective April 1, 2009, BlueScope Steel North America Corporation allows a special enrollment opportunity if you or your eligible dependents either:

- lose Medicaid or Children's Health Insurance Program (CHIP) coverage because you are no longer eligible, or
- become eligible for a state's premium assistance program under Medicaid or CHIP.

For these new enrollment opportunities, you will have 60 days – instead of 30 – from the date of the Medicaid/CHIP eligibility change to request enrollment in the BlueScope North America Corporation's group health plan. Note that this new 60-day extension doesn't apply to enrollment opportunities other than the Medicaid/CHIP eligibility change.

# Premium Assistance Under Medicaid and the Children's Health Insurance Program (CHIP)

If you or your children are eligible for Medicaid or CHIP and you're eligible for health coverage from your employer, your state may have a premium assistance program that can help pay for coverage, using funds from their Medicaid or CHIP programs. If you or your children aren't eligible for Medicaid or CHIP, you won't be eligible for these premium assistance programs but you may be able to buy individual insurance coverage through the Health Insurance Marketplace. For more information, visit www.healthcare.gov.

If you or your dependents are already enrolled in Medicaid or CHIP and you live in a State listed below, contact your State Medicaid or CHIP office to find out if premium assistance is available.

Claimant Name: Kathy Williams    Claim #:  14865967

UA-CL-AD&D-000840

If you or your dependents are NOT currently enrolled in Medicaid or CHIP, and you think you or any of your dependents might be eligible for either of these programs, contact your State Medicaid or CHIP office or dial **1-877-KIDS NOW** or **www.insurekidsnow.gov** to find out how to apply. If you qualify, ask your state if it has a program that might help you pay the premiums for an employer-sponsored plan.

If you or your dependents are eligible for premium assistance under Medicaid or CHIP, as well as eligible under your employer plan, your employer must allow you to enroll in your employer plan if you aren't already enrolled. This is called a "special enrollment" opportunity, and you must request coverage within 60 days of being determined eligible for premium assistance. If you have questions about enrolling in your employer plan, contact the Department of Labor at www.askebsa.dol.gov or call 1-866-444-EBSA (3272).

If you live in one of the following states, you may be eligible for assistance paying your employer health plan premiums. The following list of states is current as of January 31, 2016. Contact your State for more information on eligibility.

| Alabama 855-692-5447 | Alaska 866-251-4861 (Outside of Anchorage) 907-465-2680 (Anchorage) | Arizona 877-764-5437 (Outside of Maricopa County) 602-417-5437 (Maricopa County) | Colorado 800-221-3943 |
|---|---|---|---|
| Florida 877-357-3268 | Georgia 404-656-4507 | Idaho 800-926-2588 | Indiana 877-438-4479 800-403-0864 |
| Iowa 888-346-9562 | Kansas 785-296-3512 | Kentucky 800-635-2570 | Louisiana 888-342-6207 |
| Maine 800-442-6003 | Massachusetts 800-462-1120 | Minnesota 800-657-3739 | Missouri 573-751-2005 |
| Montana 800-694-3084 | Nebraska 855-632-7633 | Nevada 800-992-0900 | New Hampshire 603-271-5218 |
| New Jersey 609-631-2392 (Medicaid) 800-701-0710 (CHIP) | New York 800-541-2831 | North Carolina 919-855-4100 | North Dakota 844-854-4825 |
| Oklahoma 888-365-3742 | Oregon 800-699-9075 | Pennsylvania 800-692-7462 | Rhode Island 401-462-5300 |
| South Carolina 888-549-0820 | South Dakota 888-828-0059 | Texas 800-440-0493 | Utah 877-543-7669 |
| Vermont 800-250-8427 | Virginia 800-432-5924 (Medicaid) 855-242-8282 (CHIP) | Washington 800-562-3022 X15473 | West Virginia 877-598-5820 |
| Wisconsin 800-362-3002 | Wyoming 307-777-7531 | US Department of Labor—Employee Benefits Security Administration 866-444-3272 | US Department of Health and Human Services Centers for Medicare and Medicaid 877-267-2323 x61565 |



# Individual Creditable Coverage Notice Disclosure

## Important Notice from BlueScope Steel North America Corporation About Your Prescription Drug Coverage and Medicare

Please read this notice carefully and keep it where you can find it. This notice has information about your current prescription drug coverage with BlueScope Steel North America Corporation and about your options under Medicare's prescription drug coverage. This information can help you decide whether or not you want to join a Medicare drug plan. If you are considering joining, you should compare your current coverage, including which drugs are covered at what cost, with the coverage and costs of the plans offering Medicare prescription drug coverage in your area. Information about where you can get help to make decisions about your prescription drug coverage is at the end of this notice.

There are two important things you need to know about your current coverage and Medicare's prescription drug coverage:

1. Medicare prescription drug coverage became available in 2006 to everyone with Medicare. You can get this coverage if you join a Medicare Prescription Drug Plan or join a Medicare Advantage Plan (like an HMO or PPO) that offers prescription drug coverage. All Medicare drug plans provide at least a standard level of coverage set by Medicare. Some plans may also offer more coverage for a higher monthly premium.

2. BlueScope Steel North America Corporation has determined that the prescription drug coverage offered by the Group Insurance Plan of BlueScope Steel North America Corporation is, on average for all plan participants, expected to pay out as much as standard Medicare prescription drug coverage pays and is therefore considered Creditable Coverage. Because your existing coverage is Creditable Coverage, you can keep this coverage and not pay a higher premium (a penalty) if you later decide to join a Medicare drug plan.

*If you or your family members are not currently covered by Medicare and will not become covered by Medicare in the next 12 months, you can disregard this notice.*

*Claimant Name: Kathy Williams       Claim #:  14865967*

UA-CL-AD&D-000842

## When Can You Join A Medicare Drug Plan?

You can join a Medicare drug plan when you first become eligible for Medicare and each year from November 15th through December 31st.

However, if you lose your current creditable prescription drug coverage, through no fault of your own, you will also be eligible for a two (2) month Special Enrollment Period (SEP) to join a Medicare drug plan.

## What Happens To Your Current Coverage If You Decide to Join A Medicare Drug Plan?

If you decide to join a Medicare drug plan, your current BlueScope Steel North America Corporation coverage will not be affected. Please refer to the summary of benefits or Summary Plan Description for additional details on the prescription drug benefit BlueScope offers.

## When Will You Pay A Higher Premium (Penalty) To Join A Medicare Drug Plan?

You should also know that if you drop or lose your current coverage with BlueScope Steel North America and don't join a Medicare drug plan within 63 continuous days after your current coverage ends, you may pay a higher premium (a penalty) to join a Medicare drug plan later.

If you go 63 continuous days or longer without creditable prescription drug coverage, your monthly premium may go up by at least 1% of the Medicare base beneficiary premium per month for every month that you did not have that coverage. For example, if you go nineteen months without creditable coverage, your premium may consistently be at least 19% higher than the Medicare base beneficiary premium. You may have to pay this higher premium (a penalty) as long as you have Medicare prescription drug coverage. In addition, you may have to wait until the following November to join.

## For More Information About This Notice Or Your Current Prescription Drug Coverage...

Contact the person listed below for further information. NOTE: You'll get this notice each year. You will also get it before the next period you can join a Medicare drug plan, and if this coverage through BlueScope Steel North America Corporation changes. You also may request a copy of this notice at any time.

## For More Information About Your Options Under Medicare Prescription Drug Coverage....

More detailed information about Medicare plans that offer prescription drug coverage is in the "Medicare & You" handbook. You'll get a copy of the handbook in the mail every year from Medicare. You may also be contacted directly by Medicare drug plans.

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000843

For more information about Medicare prescription drug coverage:

- Visit www.medicare.gov
- Call your State Health Insurance Assistance Program (see the inside back cover of your copy of the "Medicare & You" handbook for their telephone number) for personalized help
- Call 1-800-MEDICARE (1-800-633-4227). TTY users should call 1-877-486-2048.

If you have limited income and resources, extra help paying for Medicare pre- scription drug coverage is available. For information about this extra help, visit Social Security on the web at www.socialsecurity.gov, or call them at 1-800-772-1213 (TTY 1-800-325-0778).

---

**Remember: Keep this Creditable Coverage notice. If you decide to join one of the Medicare drug plans, you may be required to provide a copy of this notice when you join to show whether or not you have maintained creditable coverage and, therefore, whether or not you are required to pay a higher pre- mium (a penalty).**

---

**Date:** November 1, 2017
**Name of Entity/Sender**: BlueScope North America Corporation
**Contact**: Christine Wilson
**Address**: 1540 Genessee Street, Kansas City, MO 64102
**Phone Number**: 866-880-3301

UA-CL-AD&D-000844

# Newborns and Mothers Health Protection Notice



Group health plans and health insurance issuers generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and issuers may not, under Federal law, require that a provider obtain authorization from the plan or the insurance issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000845



# Women's Health and Cancer Rights Act of 1998 Annual Notice

On October 21, 1998, Congress enacted the Women's Health and Cancer Rights Act of 1998. This notice explains the most important provisions of the Act. Please review this information carefully. If your spouse is covered under the BlueScope Steel North America Corporation's Group Health Plan, please make certain that she or he also has the opportunity to review this information.

The Woman's Health and Cancer Rights Act of 1998 requires that all group health plans that provide medical and surgical benefits for a mastectomy also must provide coverage for:

- Reconstruction of the breast on which the mastectomy has been performed;

- Surgery and reconstruction of the other breast to produce a symmetrical appearance; and

- Prostheses and treatment of physical complications for all stages of a mastectomy, including lymphedamus (swelling associated with the removal of lymph nodes).

The Act requires that coverage be provided in a manner that is consistent with other benefits under the Plan. The coverage may be subject to annual deductibles and coinsurance provisions.

The Act prohibits any group health plan from:

- Denying a participant or a beneficiary eligibility to enroll or renew coverage under the plan in order to avoid the requirements of the Act.

- Penalizing, reducing or limiting reimbursement to the attending provider (i.e., physician, clinic or hospital) to induce the provider care inconsistent with the Act; and

- Providing monetary or other incentives to an attending provider to induce the provider care inconsistent with the Act.

The Women's Health and Cancer Rights Act of 1998 will apply to the BlueScope Steel North America Corporation's Health Plan on the effective date of coverage.

Please keep this information with your other group health plan documents. If you have any questions about this Plan's coverage of mastectomies and reconstructive surgeries, please call the health plan using the telephone number on your ID card.

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000846

# Is the HSA Right for Me?

20

**Use this worksheet as a guide to compare estimated costs for each of the 2018 medical plans.**

|  | HRA | HSA Plus | HSA Basic |
|---|---|---|---|
| Annual Premiums |  |  |  |
| Subtract Wellness Credit If Eligible | - | - | - |
| Deductible |  |  |  |
| Subtract Employer Contribution | - | - | - |
| Preventive Care | No out-of-pocket expenses, covered at 100% | No out-of-pocket expenses, covered at 100% | No out-of-pocket expenses, covered at 100% |
| Estimated Prescription Cost<br><br>*Price a medication at: https://www.express-scripts.com/bluescope* | *(Tiered co-pay)* | *(Preventive Rx – Tiered co-pay, Non-Preventive Rx - Subject to medical deductible)* | *(All prescriptions are subject to deductible)* |
| Estimated Non-Preventive costs *(ER visits, physician visits, lab work, etc.)* |  |  |  |
| Estimated Annual Out-Of-Pocket Expenses |  |  |  |
| TOTAL Estimated Annual Medical Costs | = | = | = |

Claimant Name: Kathy Williams     Claim #:  14865967

UA-CL-AD&D-000847

# 21 ◆ Key Benefit Resources

## BlueScope Contacts

To get help and answers to your benefits questions, contact your local HR department or contact BlueScope HR at **866-880-3301** or email **NABlueScopeBenefits@bluescopesteel.com.**

## BENEFIT PROVIDERS

| Benefit Provider | What's Available | Phone | Group Number / Website |
|---|---|---|---|
| Medical Plan Anthem | Customer service for pre-cert, claim review, and more! | 866-545-8991 | 230017 www.anthem.com |
| NurseLine Anthem | Consult with a registered nurse by phone 24/7/365 | 866-800-8780 | |
| LiveHealth Online | Consult with a board-certified provider using your smart phone, tablet or computer | 855-603-7985 | https://livehealthonline.com |
| Prescription Drugs Express-Scripts | Online prescription refills and order status, pharmacy search, drug list and cost estimator | 877-791-1179 | BSSNARX www.express-scripts.com/ bluescope |
| Omada | Pre-diabetes wellness program | 888-409-8687 | https://go.omadahealth.com/ |
| Castlight | Find a doctor or hospital, review hospital quality ratings, price prescription drugs, review claims and more! | 888-722-0483 | mycastlight.com/bluescope |
| Dental MetLife | Eligibility, benefits levels, claim status and dentist search | 800-942-0854 | 300138 www.metlife.com/mybenefits |
| Vision EyeMed Vision | Provider directory and benefit plan details | 866-723-0513 (enrolled members only) 866-723-0596 (Open Enrollment only) | Materials Only: 9831223 Exam + Materials: 9831413 www.eyemedvisioncare.com |
| HSA & FSA Admin HealthEquity | Account balances and status of claims processing | 877-713-7712 | www.anthem.com www.healthequity.com |
| EAP Anthem 360° Health | Employee Assistance Program information | 866-621-0554 | www.anthemEAP.com |
| STD and FMLA UNUM | File a claim Check the status of a claim | 877-339-7454 | www.unum.com |
| Retirement Fidelity | Increase your 401(k) deferral, change your investments | 800-835-5092 | www.401k.com |

Claimant Name: Kathy Williams    Claim #:  14865967

| Term | Definition |
|------|-----------|
| Brand Name | A drug that is produced and sold under the original manufacturer's brand name |
| BEST | BlueScope Employee Savings Trust |
| CDHP | Both the HRA and HSA medical plans are Consumer Driven Health Plans. They give you the freedom to manage your healthcare spending accounts and provide 100% coverage for preventive care with in-network providers. |
| Deductible | The amount of money you pay up front before traditional health coverage begins. Your HRA or HSA may be used towards your annual deductible |
| EAP | EAP stands for Employee Assistance Program. The EAP provides free services to you and all household members. Services include up to 6 free mental health visits, financial and legal counseling, and much more. |
| EOB | EOB or Explanation of Benefits is the summary you receive from the benefit provider after a claim has processed. The EOB will provide details regarding how much the plan has paid the provider in addition to the amount you may owe. |
| EOI | EOI is Evidence of Insurability. If you do not elect life or disability during your initial eligibility period, the insurance carrier requires that you complete an EOI to determine if you are eligible for enrollment. |
| Formulary | A list of preferred drugs covered by the prescription drug plan |
| FSA | A Flexible Spending Account is an account that allows you to set aside pre-tax dollars to pay for qualified medical or dependent care expenses. |
| Generic | A drug that is produced to be therapeutically equivalent to a brand name drug and are typically available at a lower cost |
| HRA | A Health Reimbursement Account is an account established by the company to fund your medical expenses. The HRA may be used for eligible medical plan expenses towards your deductible or co-insurance and any unused funds rollover to the following year. HRA accounts are forfeited in the event you leave the company or terminate coverage from the plan. |
| HSA | A Health Savings Account is an account you establish to fund your medical expenses. Money in a health savings account may be contributed tax-free, earn interest tax-free and used tax-free for qualified medical expenses. This account is yours to keep should you leave the company or terminate coverage. |
| Imbedded Deductible | The amount of deductible a single member may meet before the plan pays co-insurance for that member. The HRA plan does not require one member to meet the family deductible. |
| Initial Eligibility | When you first become eligible to participate in the BlueScope benefit program |
| Non-formulary | Non-preferred drugs covered by the prescription drug plan at a higher cost |
| OOP | OOP refers to Out-of-Pocket. OOP is the expense the member is responsible for towards claims. There is a maximum OOP on the medical plan which includes the deductible. Your HRA may contribute towards your OOP responsibility. |
| Open Enrollment | An annual event that allows an employee to enroll or change benefit coverage for themselves or eligible dependents |
| PDP | PDP stands for MetLife's Preferred Dentist Program. PDP fees refer to the fees that participating PDP dentists have agreed to accept as payment in full, subject to any copayments, deductibles, cost sharing and benefits maximums |
| PPO | PPO stands for Preferred Provider Organization and refers to a network of hospitals and doctors. PPO's offer the freedom to see any provider but pay higher benefits when network providers are used. |
| R&C | R&C refers to the Reasonable and Customary charge, which is based on the lowest of: The providers actual charge, the providers usual charge for the same or similar services, or the charge of most providers in the same geographic area for the same or similar services. R&C is used when determining in-network benefits for out-of-network providers—such as emergency services or the MetLife PDP plan. |
| SPD | SPD or Summary Plan Description provides detailed information regarding what is covered by the plan. |
| Specialty Medication | Medication that must be ordered through the Specialty Pharmacy. |
| Traditional Health Coverage | Refers to 80/20 co-insurance after deductible and 100% coverage after member meets out-of-pocket maximum. |

*Claimant Name: Kathy Williams      Claim #: 14865967*

UA-CL-AD&D-000849

**BLUESCOPE**

About This Guide

The information in this guide is intended to provide a high-level summary. The programs are governed by official plan documents that set forth the benefit levels and eligibility requirements that apply in the case of discrepancy. All programs are subject to change at any time by the company. This guide does not constitute an offer of employment nor a contract or guarantee of any kind.

Claimant Name: Kathy Williams    Claim #: 14865967

Document Detail
--------------------------------------------------------------------------------

**Checked/Unchecked Indicator: No**

**Document ID: 2019012510222592C5C9**

**Entry Date: 01/25/2019 10:22:26**

**Received Date: 01/25/2019**

**Date Added to Claim: 01/25/2019**

**Primary Doc Type: Appeals**

**Secondary Doc Type: Other**

**Medical Provider:**

**Document Notes: Appeal- email to/from ER w/guide book**

**Work Notes:**

---

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000851

**Turner, Maureen**

| | |
|---|---|
| **From:** | Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com> |
| **Sent:** | Friday, January 25, 2019 10:03 AM |
| **To:** | Turner, Maureen |
| **Cc:** | Hughes, Amy E. |
| **Subject:** | FW: Information Request |
| **Attachments:** | BS_Guide_2018_FINAL.pdf |

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Maureen,

Attached is the 2018 Guide Book. I wanted to point out that Gary has been an employee since 1989 and had enrolled in spouse life not long after his hire date.

Let us know if there is anything else we can provide.

Thank you,



**Christine P. Wilson** | Benefits Analyst
**P** (816) 968-3845   **F** (816) 627-8937
**E** Christine.Wilson@BlueScopeSteelNA.com | **W** www.bluescope.com
**A** P.O. Box 419917 | Kansas City, MO | 64141
**A** 1540 Genessee Street | Kansas City, MO | 64102

**From:** Hughes, Amy E. <Amy.Hughes@bluescopesteelna.com>
**Sent:** Friday, January 25, 2019 8:48 AM
**To:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Subject:** Fwd: Information Request

> **From:** "Turner, Maureen" <MATurner@unum.com>
> **Date:** January 25, 2019 at 8:05:59 AM CST
> **To:** "Amy.Hughes@bluescopesteelna.com" <Amy.Hughes@bluescopesteelna.com>
> **Subject: Information Request**
>
> Hello Amy,
> I am working on an appeal request concerning an accidental death insurance claim submitted by Gary
> Williams for his wife. We have been forwarded a partial copy of the 2018 benefits guide. Can you please
> email me a complete copy of this? Please let me know if you have any questions.
> Thank you,
> Maureen

Claimant Name: Kathy  Williams    Claim #:  14865967

UA-CL-AD&D-000852

Maureen Turner
Lead Appeals Specialist, Appeals
Unum Life Insurance Company of America
Phone: 423-294-1307
Fax: 423-209-4533

---

NOTICE – This message and any attached files may contain information that is confidential, legally privileged or proprietary. It is intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error. Any dissemination, copying, use or re-transmission of this message or attachment, or the disclosure of any information therein, is strictly forbidden. BlueScope Steel Limited does not represent or guarantee that this message or attachment is free of errors, virus or interference.

If you have received this message in error please notify the sender immediately and delete the message. Any views expressed in this email are not necessarily the views of BlueScope Steel Limited

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000853

```
                                    Activity
------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Management          Name: Other
Status: Completed
Original Notify Date: 01/29/2019
Notify Date: 01/29/2019
Due Date:
Subject: Letter Review-Uphold (2/18/19)
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Sullivan, Marie
Action: Agree

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 01/29/2019 13:25:29: Marie,
Please review letter. Proposed decision code is UIN.
Thank you,
Maureen

Created By: Turner, Maureen
Created Date: 01/29/2019 13:25:29       Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Sullivan, Marie 01/30/2019 12:49:18: Agree with decision, letter content
and coding.

Marie Sullivan, AQCC


Completed By: Sullivan, Marie
Completed Date: 01/30/2019 12:49:18       Complete Site: Portland
```

UA-CL-AD&D-000854

```
                              Letter Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

NaviLink Claim No.: 14865967

Name: Appeal Uphold

Status: Final

Date: 2019-01-30

Notes: Appeal Uphold

Signoff By:

Signoff Status:

------------- Deliveries ---------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2019013013145290253E
Delivery Date: 01/30/2019 15:09:14
Delivery Status: Mail: Sent from Central Print

To/CC/MCC: To      Addressee Name: Blakeman, Benjamin
Relationship: Attorney      Document ID: 2019013013145290253E
Delivery Date: 01/30/2019 13:21:05
Delivery Status: Fax: Sent; Success
```

UA-CL-AD&D-000855

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



January 30, 2019

BENJAMIN BLAKEMAN
BLAKEMAN LAW
8383 WILSHIRE BLVD STE 510
BEVERLY HILLS, CA 90211


RE:     Williams, Kathy
        Claim Number:      14865967
        Policy Number:     382480
        Unum Life Insurance Company of America


Dear Mr. Blakeman:

Please extend our sincere condolences to Mr. Williams for the loss of his wife, Kathy Williams.
This letter is to inform you that Unum Life Insurance Company of America (referred to as Unum)
has completed the appeal review on the Group Accidental Death Insurance claim submitted for
Mrs. Williams.

Please read the following pages carefully, as they will help you understand how we reached our
decision.

This letter includes the following:

- Initial Claim Decision

- The Appeal Decision

- Information that supports the Appeal Decision

- Policy Provisions that apply to the Appeal Decision

- Next steps available to you

If you would like me to review with you the information we have and how this decision was
made, please call me at 1-800-858-6843, extension 41307.

1242-03     UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

**Initial Claim Decision:**

The group life and accidental death and dismemberment insurance policy issued to BlueScope Steel North America Corporation provides an accidental death benefit when death is the direct result an accidental bodily injury and not related to any other cause.

In addition, the policy states, "Your plan does not cover any accidental losses caused by, contributed to by, or resulting from...being intoxicated". The policy further states that, "Intoxicated means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred."

Mrs. Williams was found deceased at the bottom of basement stairs in her home, after an apparent fall that occurred sometime between noon and 4:50 p.m. on April 27, 2018. Her death certificate lists her cause of death as intracranial hemorrhage and the manner of death as accident. Toxicology results showed Mrs. Williams' blood alcohol concentration (BAC) at the time of her death was 0.337%, which was more than four times the limit generally accepted as legal intoxication, and within the possibly fatal range (0.31% and higher).

The Benefits Center concluded that based on the known impairments caused by an elevated blood alcohol level, her death was caused by, contributed to by, or resulted from her intoxication. Therefore, accidental death benefits were not payable based on application of the policy exclusion.

**Appeal Decision:**

We have determined the decision on this claim is correct.

We have concluded that Mrs. Williams' death was caused by, contributed to by, or resulted from her intoxication. Since a policy exclusion is applicable, accidental death benefits are not payable.

**Information that Supports our Decision:**

On appeal, you stated the following:

- Unum's conclusion that Mrs. Williams' fall, and death was caused by intoxication, was based solely on incomplete records, speculation by a medical reviewer, no autopsy and is directly contrary to the conclusion of the medical examiner.

- The summary plan description (SPD) was never distributed to Mr. Williams and was written in a manner that made it very difficult to understand. In addition, the benefits manual provided to Mr. Williams by the employer does not describe any exclusions or limitations.

- There is no evidence Mrs. Williams experienced any of the symptoms related to an elevated BAC for a non-tolerant individual. In the case of someone who consumes alcohol on a regular basis, the symptoms experienced are substantially different and considerably less severe.

---

*Claimant Name: Kathy Williams      Claim #: 14865967*

- Mrs. Williams' medical history includes vertigo, knee problems, obstructive sleep apnea, incoordination, spondylosis, disorder of trunk, sleepwalking and Lyme disease. She was also on medications which cause side effects. Any of these causes, or any combination of them, could have caused or significantly contributed to the fall.

- The policy language is ambiguous concerning language referencing ethanol and being intoxicated.

Concerning your statements that Unum had the right to request an autopsy but did not do so, Mrs. Williams passed away on April 27, 2018, and Unum did not receive notification of the claim until May 22, 2018, which was after her funeral services had been held on May 03, 2018.

Concerning the information available to Mr. Williams about his coverage, although you stated the SPD was not distributed to Mr. Williams, you did confirm with the employer that the SPD was made available online to the employees. The benefits guide provided to employees provides an overview of coverages and is not intended to include all policy provisions, definitions and exclusions.

While the life and accident insurance section of the benefits guide does not list policy exclusions, employees are encouraged (under the "What's Inside Your Enrollment Guide") to refer to the guide along with other enrollment materials and online tools, such as the SPD that the employer confirmed is available online to employees. The benefits guide also includes the following statement:

> "The information in this guide is intended to provide a high-level summary. The programs are governed by official plan documents that set forth the benefit levels and eligibility requirements that apply in the case of discrepancy. All programs are subject to change at any time by the company. The guide does not constitute an offer of employment nor a contract of guarantee of any kind."

The governing policy includes an exclusion for accidental losses that are caused by, contributed to by, or resulting from being intoxicated. We disagree that the policy language is ambiguous. The policy provides a list of what accidental losses are not covered under the plan. The reference to ethanol pertains to one of the listed exclusions concerning the use of prescription or non-prescription drug, poison, fume, or other chemical substance. However, listed separately and applicable, is an exclusion for "being intoxicated".

On appeal, you provided copies of Mrs. Williams' medical records and a medical opinion report (along with a supplemental report) from Dr. Ken Starr, FACEP, ABAM. Dr. Starr concluded that Mrs. Williams demonstrated a history of chronic and progressive vertigo that had previously caused her to become dizzy, fall and hit her head. Despite a thorough neurology consultation and extensive workup, her vertigo, headaches and balance problems continued to progress.

Her underlying health problems may have caused or contributed to her fall down the stairs. There is not enough information to accurately determine the precise cause of death. He believes the most likely cause of death was either from traumatic injuries she sustained when she fell, or from a medical event triggered by injuries from her fall.

UA-CL-AD&D-000858

On appeal, a physician board certified in family practice completed an independent review of all the available medical data in the claim file. Based on a review of the available medical data, it is medically reasonable that Mrs. Williams' alcohol intoxication caused, contributed to, or resulted in her death.

While most heavy drinkers develop some tolerance over time, this is not the same process for each individual. Blood levels four times higher than the legal limit to operate a motor vehicle would reasonably cause some diminution in motor function and balance in any individual.

Mrs. Williams' BAC of 0.337% would reasonably result in impaired consciousness, depressed or absent reflexes, general inertia approaching paralysis, markedly decreased response to stimuli, marked muscular incoordination and inability to stand or walk, and possible death. Additionally, alcohol of this level could reasonably cause sudden death from cardiac dysrhythmias, emesis and aspiration, GI bleeding and falls with trauma to head or other body parts.

We acknowledge the accidental nature of Ms. Williams' death and we do not dispute the medical examiner's finding of cause of death (intracranial hemorrhage) nor Dr. Starr's conclusion that Mrs. Williams' death was from traumatic injuries she sustained when she fell or medical event trigged by her injures from her fall. However, accidental death benefits are not payable when an exclusion is applicable. The available information supports that her fall (which caused her death) was caused by, contributed to by, or resulting from her level of intoxication.

Concerning other medical conditions, while Mrs. Williams had a remote history of vertigo and other underlying health problems, available medical data does not show any visits between 2015 and her death of death on April 27, 2018 for dizziness, vertigo, falls or loss of consciousness. While her conditions could contribute to dizziness, there is no data to support that her vertigo had been severe or symptomatic for years. In addition, there is no mention of any issues related to side effects (such as drowsiness) of her medications in the available medical records from 2015-2018.

In addition, the policy does not cover any accidental losses caused by, contributed to by, or resulting from disease of the body or diagnostic, medical or surgical treatment.

We have completed a full, fair and thorough review on appeal. We reviewed the claim file and the fact pattern and policy provisions governing your client's accidental death insurance claim. The facts, policies and issues surrounding the legal analyses provided with your appeal may not be entirely relevant to the circumstances of this claim.

Based on the available information and as outlined above, we have determined that given the known impairments to an individual's motor function caused by an elevated blood alcohol level, Ms. Williams' death was caused by, contributed to by or resulted from being intoxicated. Therefore, the referenced policy exclusion is applicable and the decision to deny accidental death benefits is appropriate.

**Policy Provisions that Apply to the Appeal Decision:**

We relied upon your client's policy when making our decision, including the provisions listed below, and the Company reserves its right to enforce other provisions of the policy.

"**ACCIDENTAL BODILY INJURY** means bodily harm resulting from accident and independently of all other cause."

Claimant Name: Kathy Williams     Claim #: 14865967

"**WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?**

Your plan does not cover any accidental losses caused by, contributed to by, or resulting from:

- Suicide while sane or intentionally self-inflicted injury while sane.
- active participation in a riot.
- an attempt to commit or commission of a crime.
- the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol.
- service on full-time active duty in the Armed Forces of any country or international authority.
- travel or flight in any vehicle or device for aerial navigation, including boarding or alighting from it while:
  - it is being used for test or experimental purposes;
  - you or your dependent is operating, learning to operate or serving as a member of the crew;
  - it is being operated by or for or under the direction of any military authority.
  This exclusion does not apply to:
  - transport type aircraft operated by the Military Airlift Command of the United States; or
  - similar air transport service of any other country.
- travel or flight in any aircraft or device for aerial navigation, including boarding or alighting from it, owned or leased by or on behalf of your Employer.
- disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.
- being **intoxicated**.
- bacterial infection. This exclusion does not apply to you or your dependent when the bacterial infection is due directly to an accidental cut or wound.
- war, declared or undeclared, or any act of war."

"**INTOXICATED** means that your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred."

**Next Steps Available to your client:**

You are entitled to receive, upon request and without charge, reasonable access to or copies of all documents, records or other information that are relevant to your benefit determination.

You should also know that if your client disputes this determination, you have a right to bring a civil suit under section 502 (a) of the Employee Retirement Income Security Act of 1974.

If you have any questions, please contact me at 1-800-858-6843, extension 41307.

| Spanish: To obtain assistance in Spanish, call 1-800-858-6843. | Para obtener asistencia en Español, llame al 1-800-858-6843. |
|---|---|
| Chinese: To obtain assistance in Chinese, call 1-800-858-6843. | （中文）：如果需要中文的帮助，请拨打这个号码：1-800-858-6843. |

*Claimant Name: Kathy Williams     Claim #:   14865967*

| Tagalog: To obtain assistance in Tagalog, call 1-800-858-6843. | Kung kailangan ninyo ng tulong sa Tagalog, tumawag sa 1-800-858-6843. |
| Navajo: To obtain assistance in Dine, call 1-800-858-6843. | Dinek`ehgo shika at`ohwol ninisingo, kwijigo holne` 1-800-858-6843. |

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

UA-CL-AD&D-000861

```
                              Letter Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

NaviLink Claim No.: 14065967

Name: Life Appeal-Decision to Policyholder

Status: Final

Date: 2019-01-30

Notes: Life Appeal-Decision to Policyholder

Signoff By:

Signoff Status:

------------ Deliveries --------------
Email Contacts Overridden:

To/CC/MCC: To      Addressee Name: Hughes, Amy
Relationship: Employer      Document ID: 2019013013215860291E
Delivery Date: 01/30/2019 13:24:59
Delivery Status: Fax: Sent; Success
```

*Claimant Name: Kathy  Williams    Claim #:  14865967*

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: **1-800-858-6843**
Fax: **207-575-2354**
www.unum.com



January 30, 2019

AMY HUGHES
BLUESCOPE STEEL
P/C
1540 GENESSEE ST
KANSAS CITY, MO 64102

RE:    Williams, Kathy
       Claim Number:    14865967
       Policy Number:    382480
       Unum Life Insurance Company of America

Dear Ms. Hughes:

This letter is to inform you of the appeal decision we have made on the Group Accidental Death Insurance claim submitted by Gary Williams for his wife Kathy Williams.

We have determined Mr. Williams is not eligible to receive accidental death benefits for Mrs. Williams under the policy.

Mr. Williams has been notified of our appeal decision. We are committed to the privacy of our customer information; as such, we are unable to provide you with a copy of that exact communication.

Please contact me at 1-800-858-6843, extension 41307 with any questions.

Sincerely,

*Maureen Turner*

Maureen Turner
Lead Appeals Specialist

Claimant Name: Kathy Williams    Claim #:  14865967

```
                                  Activity
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Personal          Name: General
Status: Completed
Original Notify Date: 01/14/2019
Notify Date: 02/12/2019
Due Date:
Subject: 55-Day Flup
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 12/04/2018 10:12:35: 60th day is 1/20/19

Created By: Turner, Maureen
Created Date: 12/04/2018 10:12:35        Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Turner, Maureen 01/16/2019 07:49:32: provided ext to atty; appeal
timeframe suspended during ext time provided to atty; 60th day is now 2/18/19
          ---------------------------------------------------------
          Turner, Maureen 01/30/2019 13:22:16: appeal review completed and decision
communicated


Completed By: Turner, Maureen
Completed Date: 01/30/2019 13:22:16       Complete Site: Chattanooga
```

*Claimant Name: Kathy Williams    Claim #: 14865967*

UA-CL-AD&D-000864

```
                                    Activity
-------------------------------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Personal         Name: General
Status: Completed
Original Notify Date: 01/04/2019
Notify Date: 02/15/2019
Due Date:
Subject: 30-day status letter due
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Turner, Maureen
Action:

Request Fields
----------------------------------------------------------------------
Request: Turner, Maureen 12/04/2018 10:12:01: status letter

Created By: Turner, Maureen
Created Date: 12/04/2018 10:12:01       Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Turner, Maureen 01/16/2019 07:49:50: letter sent 1/16/19



Completed By: Turner, Maureen
Completed Date: 01/30/2019 13:22:28       Complete Site: Chattanooga
```

UA-CL-AD&D-000865

--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Appeal          Name: Review – Appeals Staff Use Only
Status: Completed
Original Notify Date: 11/02/2018
Notify Date: 11/02/2018
Due Date: 12/17/2018
Subject: New Appeal 11/1/18
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: Yes
Activity Owner: Turner, Maureen
Action: UIN – Upheld w/new info/inv – could not have been obtained

Request Fields
------------------------------------------------------------------------
Area Rendering Decision: Other
Request: Folsom, Sharon 11/02/2018 12:03:27: New Appeal

Created By: Folsom, Sharon
Created Date: 11/02/2018 12:03:27          Create Site: Chattanooga

Response Fields
------------------------------------------------------------------------
Secondary Decision Code: NOT REQUIRED
Appeal Date: 11/01/2018
Type of Mgmt/AQCC Review: Letter Review AQCC
Appeal Type: Appeal
Insuring Entity/Company Fund: Unum Life Insurance Company of America
Claim Number(s): 14865967
ERISA: ERISA 2002
Attorney Name: Blakeman, Benjamin
Appeal Specialist: Turner, Maureen
Response: Folsom, Sharon 11/02/2018 12:03:27: Appeal received via fax from
Attorney.  Referred by LAS.  **IA previously handled by M. Turner, LAS**  DBS:
Kristi-Lee Staples; IU – AD& D.
Eligibility – 1: NA
Disability – 1: NA
Financial – 1: NA
Policy Limit/Exclusion – 1: Drug/Intoxication


Completed By: Turner, Maureen
Completed Date: 01/30/2019 13:23:05          Complete Site: Chattanooga

--------------------------------------------------------------------------------

*Claimant Name: Kathy  Williams     Claim #:  14865967*

Document Detail
--------------------------------------------------------------------------------
**Checked/Unchecked Indicator:** No

**Document ID:** 2019020513584523C391

**Entry Date:** 02/05/2019 13:58:45

**Received Date:** 02/05/2019

**Date Added to Claim:** 02/05/2019

**Primary Doc Type: Appeals**

**Secondary Doc Type: Other**

**Medical Provider:**

**Document Notes:** Emails with NCM

**Work Notes:**

UA-CL-AD&D-000867

| | |
|---|---|
| **From:** | Turner, Maureen |
| **Sent:** | Tuesday, February 05, 2019 1:57 PM |
| **To:** | Ashley, Kimberly E |
| **Subject:** | RE: Bluescope Steel #382480 |

No, there has not.

**From:** Ashley, Kimberly E
**Sent:** Tuesday, February 05, 2019 1:55 PM
**To:** Turner, Maureen <MATurner@unum.com>
**Subject:** RE: Bluescope Steel #382480

Has there been any follow up from the bene?

**From:** Turner, Maureen
**Sent:** Tuesday, February 05, 2019 12:53 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

A notification letter was sent to the employer. Not a copy of the decision letter.

**From:** Ashley, Kimberly E
**Sent:** Tuesday, February 05, 2019 1:52 PM
**To:** Turner, Maureen <MATurner@unum.com>
**Subject:** RE: Bluescope Steel #382480

Ok, I assume a copy of the letter went to the employer?

**From:** Turner, Maureen
**Sent:** Tuesday, February 05, 2019 12:51 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

Hi Kim,
We completed our appeal review and upheld The Benefits Center's adverse claim decision on 1/30/19.

**From:** Ashley, Kimberly E
**Sent:** Tuesday, February 05, 2019 1:42 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

Just checking in, know we have until the 18th but wondered if there's any update.

**From:** Turner, Maureen
**Sent:** Monday, January 14, 2019 1:43 PM

1

UA-CL-AD&D-000868

**To:** Ashley, Kimberly E <KAshley@UNUM.COM>; Johnson, Jeffery R <jjohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

We expect to complete our review by 2/18/19. Please call me if you have any other questions.

Thank you,
Maureen

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 2:31 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

What is the timeframe to next steps?

**From:** Turner, Maureen
**Sent:** Monday, January 14, 2019 1:20 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

The appeal review is ongoing at this time.

Maureen Turner
Lead Appeals Specialist, Appeals
Unum Life Insurance Company of America
Phone: 423-294-1307
Fax: 423-209-4533

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 2:16 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Cc:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

Could you let me know how this appeal shook out?

Kim Ashley
National Client Manager
4001 W. 114th Street
Suite 100
Leawood, KS 66211

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com

2

UA-CL-AD&D-000869

**From:** Moody, Kris
**Sent:** Monday, January 14, 2019 12:53 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

Maureen Turner is handling the appeal

Kris Moody
Lead Life Benefits Specialist
1-800-445-0402, ext. 5-8738
Unum Life Insurance Company of America
kmoody@unum.com
Unum is pleased to offer an e-mail transmission service for your convenience in communicating information regarding your Unum policy. By using this service, the customer understands and agrees that these e-mail transmissions may contain personal and confidential data and that the transmission of such data via e-mail does not ensure or warrant the security or integrity of any information when sent via e-mail. Further, the customer assumes all risk associated with the use of this e-mail transmission and agrees that Unum Corporation shall not be liable for any loss, claim, or damage that may result from the customer's decision to transmit data to Unum Corporation via e-mail.

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 1:27 PM
**To:** Moody, Kris <KMoody@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

Did we ever pay this claim? I know it went to appeals but I can't for the life of me remember who was handling it there. Could you let me know?

This was an AD&D only claim, $360k dep SP. EE was Gary Williams, wife Kathy- died 04/27/18. Claim was submitted under Bluescope Buildings (Kansas City, MO) by HR Manager Molly Cisco.


THANKS!

**From:** Ashley, Kimberly E
**Sent:** Monday, October 01, 2018 12:18 PM
**To:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Subject:** FW: Bluescope Steel #382480

FYI on that ad&d claim that we denied due to the alcohol exclusion.


Kim Ashley
National Client Manager
4001 W. 114th Street
Suite 100
Leawood, KS 66211

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com


3

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000870

Kim,

I wanted to loop back around on this. I just spoke with the attorney and he is working on submitting an appeal. Just as an FYI in case you hear from the admin – he wanted specific info as to how/when the EEs are provided access to any and all plan documents & summaries. I directed him to contact BlueScope to see what their specific process is and what resources their EEs are provided when it comes to enrollment. He is arguing that his client was not made aware of any exclusions in the AD&D policy. I did provide him with the policy and SPD that we have but he is looking for more specifics.

I advised him that I would contact the PH and let him know ahead of time that he is requesting this additional info. He was reasonable to speak with so I don't think this will escalate further– I just want to give the PH a heads up.

The most recent email we have for Amy at Bluescope is amy.hughes@bluescopesteelna.com. Is she still our corporate contact? And is this still a valid email for her?

Thanks-
Kristi

*Kristi Staples*

Senior Life Benefits Specialist – AD&D
Unum Life Insurance Company of America
ph: (800) 445-0402 | fax: (800) 447-2498
kstaples@unum.com
unum

UA-CL-AD&D-000871

```
                              Document Detail
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 2019020514073694C391

Entry Date: 02/05/2019 14:07:37

Received Date: 02/05/2019

Date Added to Claim: 02/05/2019

Primary Doc Type: Appeals

Secondary Doc Type: Other

Medical Provider:

Document Notes: Appeal- email w/NCM

Work Notes:
```

UA-CL-AD&D-000872

| | |
|---|---|
| **From:** | Ashley, Kimberly E |
| **Sent:** | Tuesday, February 05, 2019 2:04 PM |
| **To:** | Turner, Maureen |
| **Subject:** | RE: Bluescope Steel #382480 |

Thank you very much!!

**From:** Turner, Maureen
**Sent:** Tuesday, February 05, 2019 1:04 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

The decision letter was mailed and faxed to the representing attorney on 1/30/19. Please call me if you have any other questions.
Thank you,
Maureen

Maureen Turner
Lead Appeals Specialist, Appeals
Unum Life Insurance Company of America
Phone: 423-294-1307
Fax: 423-209-4533

**From:** Ashley, Kimberly E
**Sent:** Tuesday, February 05, 2019 1:59 PM
**To:** Turner, Maureen <MATurner@unum.com>
**Subject:** RE: Bluescope Steel #382480

Did we just send them a letter, so it's possible that don't even know yet?

**From:** Turner, Maureen
**Sent:** Tuesday, February 05, 2019 12:57 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

No, there has not.

**From:** Ashley, Kimberly E
**Sent:** Tuesday, February 05, 2019 1:55 PM
**To:** Turner, Maureen <MATurner@unum.com>
**Subject:** RE: Bluescope Steel #382480

Has there been any follow up from the bene?

**From:** Turner, Maureen
**Sent:** Tuesday, February 05, 2019 12:53 PM

1

UA-CL-AD&D-000873

**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

A notification letter was sent to the employer. Not a copy of the decision letter.

**From:** Ashley, Kimberly E
**Sent:** Tuesday, February 05, 2019 1:52 PM
**To:** Turner, Maureen <MATurner@unum.com>
**Subject:** RE: Bluescope Steel #382480

Ok, I assume a copy of the letter went to the employer?

**From:** Turner, Maureen
**Sent:** Tuesday, February 05, 2019 12:51 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

Hi Kim,
We completed our appeal review and upheld The Benefits Center's adverse claim decision on 1/30/19.

**From:** Ashley, Kimberly E
**Sent:** Tuesday, February 05, 2019 1:42 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

Just checking in, know we have until the 18th but wondered if there's any update.

**From:** Turner, Maureen
**Sent:** Monday, January 14, 2019 1:43 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>; Johnson, Jeffery R <jjohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

We expect to complete our review by 2/18/19. Please call me if you have any other questions.

Thank you,
Maureen

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 2:31 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

What is the timeframe to next steps?

**From:** Turner, Maureen
**Sent:** Monday, January 14, 2019 1:20 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>; Johnson, Jeffery R <JJohnson5@unum.com>
**Subject:** RE: Bluescope Steel #382480

The appeal review is ongoing at this time.

2

*Claimant Name: Kathy Williams     Claim #:  14865967*

UA-CL-AD&D-000874

Maureen Turner
Lead Appeals Specialist, Appeals
Unum Life Insurance Company of America
Phone: 423-294-1307
Fax: 423-209-4533

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 2:16 PM
**To:** Turner, Maureen <MATurner@unum.com>; Johnson, Jeffery R <JJohnson5@unum.com>
**Cc:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

Could you let me know how this appeal shook out?


**Kim Ashley**
**National Client Manager**
**4001 W. 114th Street**
**Suite 100**
**Leawood, KS 66211**

**913-638-9537 (m)**
**913-982-2386 (p)**
**913-982-2350 (f)**
kashley@unum.com




**From:** Moody, Kris
**Sent:** Monday, January 14, 2019 12:53 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Subject:** RE: Bluescope Steel #382480

Maureen Turner is handling the appeal

Kris Moody
Lead Life Benefits Specialist
1-800-445-0402, ext. 5-8738
Unum Life Insurance Company of America
kmoody@unum.com

Unum is pleased to offer an e-mail transmission service for your convenience in communicating information regarding your Unum policy. By using this service, the customer understands and agrees that these e-mail transmissions may contain personal and confidential data and that the transmission of such data via e-mail does not ensure or warrant the security or integrity of any information when sent via e-mail. Further, the customer assumes all risk associated with the use of this e-mail transmission and agrees that Unum Corporation shall not be liable for any loss, claim, or damage that may result from the customer's decision to transmit data to Unum Corporation via e-mail.

**From:** Ashley, Kimberly E
**Sent:** Monday, January 14, 2019 1:27 PM
**To:** Moody, Kris <KMoody@UNUM.COM>
**Subject:** FW: Bluescope Steel #382480

3

Claimant Name: Kathy Williams     Claim #: 14865967

UA-CL-AD&D-000875

Did we ever pay this claim? I know it went to appeals but I can't for the life of me remember who was handling it there. Could you let me know?

This was an AD&D only claim, $360k dep SP. EE was Gary Williams, wife Kathy- died 04/27/18. Claim was submitted under Bluescope Buildings (Kansas City, MO) by HR Manager Molly Cisco.


THANKS!

**From:** Ashley, Kimberly E
**Sent:** Monday, October 01, 2018 12:18 PM
**To:** Wilson, Christine P. <Christine.Wilson@bluescopesteelna.com>
**Subject:** FW: Bluescope Steel #382480

FYI on that ad&d claim that we denied due to the alcohol exclusion.


Kim Ashley
National Client Manager
4001 W. 114th Street
Suite 100
Leawood, KS 66211

913-638-9537 (m)
913-982-2386 (p)
913-982-2350 (f)
kashley@unum.com


**From:** Staples, Kristi-Lee
**Sent:** Monday, October 01, 2018 12:16 PM
**To:** Ashley, Kimberly E <KAshley@UNUM.COM>
**Cc:** NCG MW Service Requests <NCGMWSR@unum.com>
**Subject:** RE: Bluescope Steel #382480

Kim,

I wanted to loop back around on this. I just spoke with the attorney and he is working on submitting an appeal. Just as an FYI in case you hear from the admin – he wanted specific info as to how/when the EEs are provided access to any and all plan documents & summaries. I directed him to contact BlueScope to see what their specific process is and what resources their EEs are provided when it comes to enrollment. He is arguing that his client was not made aware of any exclusions in the AD&D policy. I did provide him with the policy and SPD that we have but he is looking for more specifics.

I advised him that I would contact the PH and let him know ahead of time that he is requesting this additional info. He was reasonable to speak with so I don't think this will escalate further- I just want to give the PH a heads up.

The most recent email we have for Amy at Bluescope is amy.hughes@bluescopesteelna.com. Is she still our corporate contact? And is this still a valid email for her?

4

UA-CL-AD&D-000876

Thanks-
Kristi

*Kristi Staples*

**Senior Life Benefits Specialist – AD&D**
**Unum Life Insurance Company of America**
**ph: (800) 445-0402 | fax: (800) 447-2498**
kstaples@unum.com
unum

UA-CL-AD&D-000877

```
                              Claim Document
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Type: Legal

Subject: Litigation pending

Priority: No

Status: Completed

Notes: Litigation pending as of 4/8/19. Please do not perform any activity without
out contacting Michael Parker in the PTL legal dept.

L. Michaud

Created By: Michaud, Lydia
Created Date: 04/09/2019 - 11:03:14
Create Site: Portland

Completed By: Turner, Maureen
Completed Date: 04/09/2019 - 11:07:44
Complete Site: Chattanooga
```

*Claimant Name: Kathy  Williams     Claim #:  14865967*

UA-CL-AD&D-000878

```
                          Claim Folder Print Summary
-------------------------------------------------------------------------------

  Processing Status:  Claim folder is complete
```

UA-CL-AD&D-000879